ACCEPTED
01-14-00870-cv
FIRST COURT OF APPEALS
HOUSTON, TEXAS
4/8/2015 12:33:22 PM
CHRISTOPHER PRINE
CLERK

**No. 01-14-00870-CV**

In the Court of Appeals
For the First District of Texas
Houston, Texas

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

4/8/2015 12:33:22 PM

CHRISTOPHER A. PRINE
Clerk

Elishah Sawyers; Pax Freight & Crate, Inc.;
and Robin Sawyers,

Appellants

vs.

Mark Carter and Sally Carter,

Appellees

Appeal from the 506th Judicial District Court of
Waller County, Texas
Trial Court Cause No. 14-07-22604

**APPELLEES' BRIEF**

Mr. Bruce C. Tough
State Bar No. 20151500
Tough Law Firm, PLLC
819 Crossbridge Drive
Spring, Texas 77373
btough@toughlawfirm.net
telephone: (281) 681-0808
telecopier: (281) 281-0809
*Lead Counsel for Appellees*
*Mark Carter and Sally Carter*

# Table of Contents

Table of Contents ................................................................................................. ii

Index of Authorities .............................................................................................. iv

Statement of the Case.............................................................................................1

Statement Regarding Oral Argument ......................................................................2

Statement of Issues Presented.................................................................................2

Statement of Facts..................................................................................................3

Summary of Argument ...........................................................................................6

Argument.................................................................................................................8

First Issue Presented

THE APPELLATE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THE NOTICE OF APPEAL WAS UNTIMELY AND THE RESTRICTED NOTICE OF APPEAL WAS UNTIMELY AND IMPERMISSIBLE…………………………….8 - 15

Second Issue Presented

THE ISSUANCE OF PROCESS, SERVICE OF PROCESS, AND RETURN OF SERVICE WERE VALID………………………15 -27

Third Issue Presented

THE JUDGMENT IS FINAL AND APPEALABLE, NOT INTERLOCUTORY…………………………………………27 - 34

Fourth Issue Presented

FACTUAL AND LEGAL SUFFICIENCY SUPPORTS THE AWARD OF ATTORNEY'S FEES AND MONETARY DAMAGES…………………………………………………..34 - 38


Prayer…………………………………………………………………...38

Certificate of Compliance…………………………………………………39

Certificate of Service…………………………………………………...40

Appendix…………………………………………………………...ante

# Index of Authorities

Cases                                                                    Page

*Adjust Video v. Nueces County,*
996 S.W.2d 245
(Tex. App.-Corpus Christi 1999, no pet.)……………………………................30

*Cockrell v. Estevez*,
737 S.W.2d 138
(Tex. App.--San Antonio 1987, no writ)……………………………………….23

*Color Smart, Inc. v. Little,*
No. 04-00-00294-CV, 2001 WL 1230526, at *2
(Tex. App. – San Antonio, Oct. 17, 2001, no pet.)………………………………..15

*Cont'l Cas. Co. v. Guzman,*
No 04-07-00589-CV, 2009 WL 136926, at *5
(Tex. App. –San Antonio Jan. 21, 2009, pet. denied)…………………………….22

*Cotton Patch Cafe, Inc. v. McCarty,*
2006 WL 563307, at *6
(Tex. App. -- Fort Worth Mar. 9, 2006, no pet.)…………………………...16, 24

*Daniel v. Fort Worth & Rio Grande Ry. Co.*,
72 S.W. 578
(Tex. 1902)……………………………………………………………………..36

*Davis v. McCray Refrigerator Sales Corp.*,
150 S.W.2d 377
(Tex. 1941)……………………………………………………………………..30

*Day v. Tripp*,
1999 WL 546869
(Tex. App. -- Austin July 29, 1999)…………………………………………36

*Dezso v. Harwood*,
926 S.W.2d 371
(Tex. App.--Austin 1996, writ denied)………………………………………16

*Fluor Daniel, Inc. v. H.B. Zachary Co., Inc.,*
2005 WL 2559773, *3
(Tex. App. – Corpus Christi Oct. 13, 2005, pet. denied) (mem. op.)……………..32

*Fresh Coat, Inc. v. Life Forms, Inc.*
125 S.W.3d 765
(Tex. App. – Houston [1st Dist.] 2003, no pet.)…………………...……………33

*Garcia v. Kastner Farms, Inc.,*
774 S.W.2d 668
(Tex.1989)………………………………………………………………………...13

*Gardner v. U.S. Imaging, Inc.,*
274 S.W.3d 669
(Tex. 2008)……………………………………………………………………..36

*Gilstrap v. Calley,*
2004 WL 2812881
(Tex. App. Houston [14th Dist.] Dec. 9, 2004)………………………………………13

*Ginn v. Forrester,*
282 S.W.3d 430
(Tex. 2009)……………………………………………………………………..13

*Grondona v. Sutton,*
991 S.W.2d 90
(Tex. App. – Austin 1998, pet. denied) (per curiam)……………………………….12

*Herbert v. Greater Gulf Coast Enters., Inc.,*
915 S.W.2d 866
(Tex. App.--Houston [1st Dist.] 1995, no writ)………………………………...16

*Higginbotham v. General Life & Accident Ins. Co.,*
796 S.W.2d 695
(Tex. 1990)……………………………………………………………………..15

*Holt Atherton Indus., Inc. v. Heine*,
835 S.W.2d 80
(Tex. 1992)………………………………………………………………….…34

*Hunt Oil Co. v. Moore*,
639 S.W.2d 459
(Tex. 1982)…………………………………………………………………………..29

*In re Bokeloh*.
21 S.W. 3d 784
(Tex. App. – Houston [14th Dist.] 2000, no pet.)…………………………………11

*In re Griffith*,
2003 WL 21508337, at *1
(Tex. App.-- San Antonio July 2, 2003, mandamus denied)………………….27, 28

*Irlbeck v. John Deere Co.*,
714 S.W.2d 54
(Tex. App. -- Amarillo 1986, no writ)...……………………………………………..37

*John v. Marshall Health Servs., Inc.*
58 S.W.3d 738
(Tex. 2001)…………………………………………………………………………..11

*Jones v. Griege,*
803 S.W.2d 486
(Tex. App.--Dallas 1991, no writ)……………………………………………...29

*Jones v. Rabson & Broocks, LLC,*
2003 WL 302439, at *3
(Tex. App. – Houston [1st Dist.] Feb. 13, 2003, no pet.) (mem. op.)……………..32

*Lefton v. Griffith,*
136 S.W.3d 271
(Tex. App. San Antonio 2004, no pet.)………………………………………26, 36

*Lehmann v. Har-Con Corp.*,
39 S.W.3d 191
(Tex. 2001)…………………………………………………………27, 32, 33, 36

*LEJ Dev. Corp. v. Sw. Bank,*
407 S.W.3d 863
(Tex. App. – Fort Worth 2013, no pet.)………………………………………...16

*Lucas v. Clark*,
347 S.W.3d 800
(Tex. App.—Austin 2011, pet. denied)……………………………………………...34

*Marquez v. Greig ex rel. Texas Stars Cheerleading*,
2012 WL 3228710, No. 01-10-01118-CV, op. at 3
(Tex. App. –Houston [1st Dist.] 2012, no pet.) (mem. op.)………………………25

*McClain v. USA Today Newspaper*,
2010 Tex. App. 2010 WL 2404651
(Tex. App. --Dallas June 17, 2010)………………………………………………….14

*McDonald v. Newmyer*,
775 S.W.2d 652
(Tex. App.--Houston [1st Dist.] 1989, writ denied)……………………………..9

*Mem'l Hosp. v. Gillis*,
741 S.W.2d 364
(Tex. 1987)…………………………………………………………………………..11

*Ortiz v. Avante Villa at Corpus Christi, Inc.*,
926 S.W.2d 608
(Tex. App.--Corpus Christi 1996, writ denied)………………………….........15, 23

*Payne & Keller Co. v. Word*,
732 S.W.2d 38
(Tex. App.--Houston [14th Dist.] 1987,writ ref'd n.r.e.)……………………...15, 23

*Pena v. McDowell,*
201 S.W.3d 665
(Tex. 2006)…………………………………………………………………………..14

*Priest v. Texas Animal Health Comm'n*,
780 S.W.2d 874
(Tex. App.-Dallas 1989, no writ)……………………………………………………29

*Primate Construction, Inc. v. Silver*,
884 S.W.2d 151
(Tex. 1994)…………………………………………………………………………..26

vii

*Quaestor Invs., Inc. v. State of Chiapas*,
997 S.W.2d 226
(Tex. 1999)…………………………………………………………………………9

*Ragsdale v. Progressive Voter League*,
*801 S.W.2d 880*
(Tex. 1990)……………………………………………………………………..35

*Reed Elsevier, Inc. v. Carrollton-Farmers Branch Indep. Sch. Dist.*,
180 S.W.3d 903
(Tex. App. – Dallas 2005, pet. denied)………………………………………….22

*Regalado v. State*,
934 S.W.2d 852
(Tex. App.--Corpus Christi 1996, no writ)…………………………………15, 16

*Rosedale Partners v. 131st Judicial Dist. Court*,
869 S.W.2d 643
(Tex. App. -- San Antonio 1994)…………………………………………...28, 29

*Sheik Tehuti v. Barrett Daffin Frappier Turner & Engel, LLP*,
2011 WL 3964573
(Tex. App. Dallas Sept. 9, 2011)……………………………………………….29

*Sherman Acquisition II LP v. Garcia*,
229 S.W.3d 802
(Tex. App. -- Waco 2007, no pet.)……………………………………………..37

*Southwestern Bell Mobile Sys. v. Franco*,
971 S.W.2d 52
(Tex. 1997) (per curiam)……………………………………………………….37

*Stephenson v. Corporate Servs., Inc.*,
650 S.W.2d 181
(Tex. App. –Tyler 1983, writ ref'd n.r.e.)……………………………………...21

*Sutton v. Hisaw & Assocs. Gen. Contrs., Inc.*,
65 S.W.3d 281
(Tex. App. –Dallas 2001, pet. denied)………………………………………….37

*Texas Commerce Bank, Nat'l Ass'n v. New*,
 3 S.W.3d 515
(Tex. 1999)……………………………………………………..34, 35, 37

*Verburgt v. Domer,*
 959 S.W.2d 615
(Tex. 1997)………………………………………………………..12

*Whitaker v. Rose*,
218 S.W.3d 216
(Tex App.—Houston [14th Dist.] 2007, no pet.)………………………………….34

*Williams v. Williams*,
150 S.W.3d 436
(Tex. App. –Austin 2004, pet. denied)…………………………………………..15, 16

*Zamarripa v. Sfuentes,*
929 S.W.2d 655
(Tex. App. – San Antonio 1996, no writ)…………………………………………28

*Zepeda v. Giraud*,
880 S.W.2d 833
(Tex. App. – San Antonio 1994)……………………………………………...9

*Zhao v. Lone Star Engine Installation Ctr*.,
No. 05-09-01055-CV, 2009 WL 3177578, at *1
(Tex. App. –Dallas Oct. 6, 2009, pet. denied)…………………………………12

Statutes and Rules                                                Page

TEX. R. APP. P.4.2 ……………………………………………7, 8, 11, 13, 14
TEX. R. APP. P. 4.2(a)(1).....................................................................10
TEX. R. APP. P. 4.2(c)……………………………………………………...11
TEX. R. APP. P. 26.1…………………………………………….. 6, 8
TEX. R. APP. P. 26.1(a)……………………………………………………..10
TEX. R. APP. P. 26.1(c)………………………………………………7, 8, 9
TEX. R. APP. P. 26.3……………………………………………….7, 8, 12
TEX. R. APP. P. 30……………………………………………………...9
TEX. CIV. PRAC. & REM 38.004…………………………………………36
TEX. R. CIV. P. 99(b)………………………………………………...16, 19
TEX. R. CIV. P. 99(b)(4)……………………………………………………25
TEX. R. CIV. P. 99(b)(8)…………………………………………………21
TEX. R. CIV. P. 106 ………………………………………………………...26
TEX. R. CIV. P. 106(a)(2)…………………………………………….....20, 26
TEX. R. CIV. P. 107(b)……………………………………………….20, 25, 26
TEX. R. CIV. P. 107(b)(4)………………………………………………….20
TEX. R. CIV. P. 107(b)(6)………………………………………………….23
TEX. R. CIV. P. 107(h)……………………………………………26, 27
TEX. R. CIV. P. 306(a)……………………………………………….......10, 11
TEX. R. CIV. P. 306(a)(4)……………………………………………………7
TEX. R. CIV. P. 306(a)(5)………………………………… 6, 7, 8, 10, 11, 13, 14
TEX. R. CIV. P. 683…………………………………………………...30, 31

**No. 01-14-00870-CV**

In the Court of Appeals
For the First District of Texas
Houston, Texas

Elishah Sawyers; Pax Freight & Crate, Inc.;
and Robin Sawyers,

Appellants

vs.

Mark Carter and Sally Carter,

Appellees

Appeal from the 506th Judicial District Court of
Waller County, Texas
Trial Court Cause No. 14-07-22604

**APPELLEES' BRIEF**

TO THE HONROABLE FIRST COURT OF APPEALS:

STATEMENT OF THE CASE

This was a suit for permanent injunctive relief and private nuisance

damages. CR 2-29. After Appellees Mark and Sally Carter obtained a final default

judgment on September 12, 2014 (CR 50-51), Appellants Elishah and Robyn

Sawyer and Pax Crate and Freight, Inc. filed a late notice of appeal and, recently,

a late notice of restricted appeal. (CR 60-61) The late notices fail to invoke

1

Appellate Court subject matter jurisdiction and, therefore, this Court must dismiss Appellants' appeal irrespective of any merit of the points of error raised by Appellants. Notwithstanding the absence of jurisdiction, service was proper, the default judgment is a final judgment and appealable, and sufficient legal and factual evidence has been presented via affidavits in support of the default judgment. In summary, the trial court judgment should be confirmed.

## STATEMENT REGARDING ORAL ARGUMENT

Appellee intends to participate in any oral hearing.

## STATEMENT OF ISSUES PRESENTED

ISSUE ONE:      THE APPELLATE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THE NOTICE OF APPEAL WAS UNTIMELY AND THE RESTRICTED NOTICE OF APPEAL WAS UNTIMELY AND IMPERMISSIBLE.

In the event the Appellate Court decides it has subject matter jurisdiction and hears the appeal, Appellees present the following issues:

ISSUE TWO: THE ISSUANCE OF PROCESS, SERVICE OF PROCESS, AND RETURN OF SERVICE WERE VALID.

(Germane to Appellants' Issues Two through Nine)

A review of the record shows that the proper defendants, Appellants herein, were served.

2

ISSUE THREE:   THE DEFAULT JUDGMENT IS A FINAL JUDGMENT AND APPEALABLE.

(Germane to Appellants' Issue One)

The language of the judgment, the record as a whole, and the conduct of the parties confirm the disposition of all parties and claims and, therefore, the judgment is final.

ISSUE FOUR:   FACTUAL AND LEGAL SUFFICIENCY SUPPORTS THE AWARD OF ATTORNEY'S FEES AND MONETARY DAMAGES

(Germane to Appellant's Issues 1 and 3)

Evidence in the form of affidavits attached to Appellees' petition supports the trial court's judgment.

STATEMENT OF FACTS

As a matter of background, Mark and Sally Carter, Appellees in this matter (also, the "Carters"), had been living on their twenty-two acres of rural land located in Hockley, Texas since 2000 when, in September of 2013, Appellants, husband and wife, Elishah and Robyn Sawyers (also, the "Sawyers"), purchased the thirteen-acre property adjoining the Carters' property. CR 2 – 29. Shortly thereafter, large amounts of dirt fill were hauled onto the Sawyers' property to construct a semi-professional dirt bike track. CR 2-29. Thereafter, dirt bike activity regularly produced excessively loud, high-pitched noise that could be heard clearly on any part of the Sawyers' property, including inside their home. CR 2-29. The dirt bike activity also produced large clouds of dust, which traveled onto the

3

Sawyers' property, coating their buildings, yards, vehicles, animals and anyone outside in dust. CR 2 – 29. The regular dirt bike riding deteriorated the quality of life of the Appellees.  CR 2 – 29.

Appellee Mark Carter informed Appellant Elishah Sawyers of the harm being caused by the dirt bike riding and requested that the dirt bikes be limited to smaller, quieter bikes. Appellant Elishah Sawyers refused Mr. Carter's request and added that the Sawyers intended to move their business, Appellant Pax Crate & Freight, Inc., which business uses loud air guns in its regular course of business, to their Sawyer property along the Carters' fence line. CR 2 – 29.

The Carters listed their property for sale to escape the noise and dust that had invaded their property and destroyed their quality of life that they had enjoyed for approximately fourteen years.  CR. 2 – 29. Although the Carters found a serious buyer, the nuisance caused by the dirt bike racing activities on the Sawyers' property directly caused that potential buyer to revoke the offer. CR 2 – 29.

Appellees filed their petition and request for permanent injunctive relief on July 1, 2014 seeking to recover damages in the amount of $480,000 and a permanent injunction against (1) the use of excessively loud dirt bikes or other ATV's on the Sawyers' property and (2) the construction of Pax Crate & Freight, Inc. on the Sawyers' property. CT 2-29.

The Appellants acknowledge that they timely e-filed answers to the petition on August 4, 2014; however, the purported answers are not a part of the trial clerk's record. Appellees filed a motion for default judgment on August 21, 2014 that included a request for an oral hearing; Appellees then filed an amended motion for default judgment on September 3, 2014 and a notice of submission on September 4, 2014. CR 36 – 49. The notice of submission advised that the motion would be presented on September 11, 2014 without the necessity of an oral hearing unless demand for one was made. CR 49.

The motion for default judgment was supported by affidavits, as well as default admissions, which resulted in the trial court signing a default judgment on September 12, 2014 that awarded permanent injunctive relief and the amount of $480,000.00 in damages, plus costs of court, post-judgment interest, and attorney's fees. CR 50-51. The damages award stemmed from the fact that the Carters incurred personal damages as well as property damages, including the loss of a serious buyer who retracted an offer to purchase the Carters' property, and damages for discomfort and annoyance in the amount of $480,000.00 because of the nuisance created by the Sawyers' dirt bike racing activities. CR 51.

On October 27, 2014, Appellants filed their notice of appeal. CR 60. On November 24, 2014, this Court instructed the Sawyers to file a reasonable explanation for their untimely filing of notice of appeal. On December 14, 2014,

the Sawyers filed a Response to the Court's Inquiry Regarding Jurisdiction (also, "Response") that concedes that the court does *not* have jurisdiction and blames their late filing of the notice of appeal on the trial clerk for the failure to send a notice of the default judgment to Appellants. *See* Response, pp. 2-3, 8 – 10, 17 – 19 and the Affidavits attached to the Response. (also, "Response Affidavits")

In the Affidavits to their Response, Appellants Robyn and Elishah Sawyers acknowledge that they e-filed an answer in a timely manner on August 4, 2014 to the July 1, 2014 petition in their pro se status and attached a copy to their Affidavit of the answer that they purportedly e-filed, but the answers are not part of the record, hence the default judgment. Both Robyn and Elishah Sawyers also acknowledge that had they learned of the default judgment within thirty (30) days of it being signed, they would have timely filed a post-judgment motion or notice of appeal. *See* Affidavits attached to the Response.

Appellants did not file a post-judgment motion or a Texas Rule of Civil Procedure 306(a)(5) motion in the trial court. Appellants also filed a notice of restricted appeal on March 18, 2015.

## SUMMARY OF ARGUMENT

The Appellate Court lacks subject matter jurisdiction of this appeal and must dismiss it because Appellants did not file their notice of appeal timely pursuant to Texas Rules of Appellate Procedure 26.1 or provide a "reasonable explanation" for

6

their late filing of the notice of appeal pursuant to Texas Rules of Appellate Procedure 26.3, nor did Appellants certify in the trial court the date on which they acquired actual notice of the default judgment pursuant to Texas Rules of Appellate Procedure 4.2 and Texas Rules of Civil Procedure 306(a)(4), a jurisdictional prerequisite.

Their "reasonable explanation" for their late filing of the notice of appeal, to wit – they acquired knowledge of the default judgment too late to timely file a motion for new trial or notice of appeal within 30 days of the default judgment - should have been presented at the trial court in a Texas Rules of Civil Procedure 306(a)(5) hearing *prior* to filing their notice of appeal. The Texas Rules of Civil Procedure 306(a)(5) hearing is a *prerequisite* to subject matter jurisdiction of the appellate court.

Appellants also filed their notice of restricted appeal late pursuant to Texas Rules of Appellate Procedure 26.1(c) and did so without first abandoning their ordinary appeal.

The legal missteps of Appellants cannot be excused because of their pro se status. However, should the appellate court decide that it has subject matter jurisdiction, the default judgment should nevertheless be confirmed:   (1) the service of process should not be invalidated for defective service because the record as a whole, including the petition, citation, and return, shows that citation

was indeed served on the proper defendants ( "Appellants" herein) in the suit; (2) after Appellants' recognition and treatment of the default judgment as final by their filing of a notice of appeal, and restricted notice of appeal, Appellants have now reversed their opinion and claim that the judgment is interlocutory, but a review of the default judgment, record and conduct of the parties provides a distinct mark of finality to the default judgment and all parties and claims were disposed of in the default judgment; and, (3) the affidavit evidence attached to Appellees' petition is legally and factually sufficient to support the amounts awarded as damages and attorney's fees.

## ARGUMENT

### FIRST ISSUE PRESENTED

### THE APPELLATE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THE NOTICE OF APPEAL WAS UNTIMELY AND THE RESTRICTED NOTICE OF APPEAL WAS UNTIMELY AND IMPERMISSIBLE.

This Court does not have subject matter jurisdiction to hear Appellants' case and must dismiss the appeal. Appellants are not entitled to additional time to file their notice of appeal because they did not satisfy the jurisdictional prerequisites of Texas Rules of Appellate Procedure 4.2, 26.1, 26.1(c), 26.3 and Texas Rules of Civil Procedure 306(a)(5). Irrespective of the reversibility of the default judgment on the basis of any other points of error asserted by Appellants, this Court simply does not have authority to entertain the appeal because it was not timely perfected

and, therefore, must grant Appellees' motion to dismiss. *See McDonald v. Newmyer*, 775 S.W.2d 652, 653 (Tex. App.--Houston [1st Dist.] 1989, writ denied).

Restricted Notice of Appeal:    In addition to their filing of a notice of appeal on October 27, 2014, the Appellants have now also filed a restricted notice of appeal. However, the restricted notice of appeal was required to be filed no later than 6 months after the default judgment was signed on September 12, 2014. *Tex. R. Civ. P.* 26.1(c). The six-month time limit is mandatory and jurisdictional. *Quaestor Invs., Inc. v. State of Chiapas*, 997 S.W.2d 226, 227 (Tex. 1999)[1]. The deadline for the filing of the restricted notice of appeal was March 12, 2015,   six months after the date on which the judgment was signed on September 12, 2014. Appellants did not file their restricted notice of appeal until March 27, 2014. As such, regardless of the reversibility of the default judgment on the basis of any other points of error, the Appellate Court does not have jurisdiction over this appeal and can do nothing but dismiss the appeal.   *McDonald v. Newmyer*, 775 S.W.2d at 653. Furthermore, Appellants were required to first abandon their ordinary appeal as both an ordinary appeal and restricted appeal may not be pursued simultaneously. *Zepeda v. Giraud*, 880 S.W.2d 833, 834 - 835 (Tex. App.

---

[1] *This case* concerned a writ of error proceeding filed in 1996 under the former Texas Rules of Appellate Procedure. "Writ of error" appeals have been replaced by "restricted" appeals under the current Texas Rules of Appellate Procedure. *See Tex. R. App. P.* 30.

San Antonio 1994) (An appeal by writ of error from a default judgment in a civil suit was dismissed for want of jurisdiction because appellant had previously perfected an ordinary appeal, which was dismissed by the court and not abandoned by appellant.) Because of the late notice of restricted appeal, even the abandonment of the ordinary appeal would not preserve this appeal.

Notice of Appeal: The timely filing of a notice of appeal is jurisdictional. A notice of appeal must be timely filed within thirty days after a judgment is signed unless the appellant files a motion for new trial, motion to modify the judgment, motion to reinstate, or request for findings of fact and conclusions of law. *Tex. R. App. P.* 26.1 (a). The Appellants did not file a post-judgment motion to extend the plenary power of the trial court.

The default judgment in this case was signed on September 12, 2014. CR 50- 51. Because Appellants did not file a motion for new trial, the trial court's plenary jurisdiction therefore ended on October 12, 2014 and their notice of appeal was due on October 12, 2014. Appellants filed their notice of appeal on October 27, 2014. CR 60.

Texas Rules of Appellate Procedure. 4.2(a) (1) allows post-judgment deadlines to be extended if the requirements of Texas Rules of Civil Procedure 306(a) are met. Rule 306(a)(5) provides that a party who did not have notice or knowledge of a judgment or order may be afforded 30 days from the date he

10

acquired such notice or knowledge in order to invoke the trial court's plenary jurisdiction, provided that he can prove in the trial court, on sworn motion and notice, the date on which the party or his attorney first either received a notice of the judgment or acquired actual knowledge of the signing and that this date was more than twenty days after the judgment was signed. *Tex. R. Civ. P.* 306(a)(5). After hearing the motion, the trial court must sign a written order that certifies the date when the party or the party's attorney first either received notice or acquired actual knowledge the judgment was entered. *Id.; see John v. Marshall Health Servs., Inc.,* 58 S.W.3d 738, 741 (Tex. 2001); *see also Tex. R. App. P.* 4.2(c).

Appellants did not comply with the required Texas Rules of Appellate Procedure 4.2 that requires compliance with the Texas Rules of Civil Procedure 306(a)(5) to extend the start of the appellate timetable. *Id.* Compliance with the provisions of rule 306a is a jurisdictional prerequisite. *Mem'l Hosp. v. Gillis*, 741 S.W. 2d 364, 366 (Tex. 1987). "Rule 306a plainly requires that this proof be made in the trial court, ***not the court of appeals***. [Italics added.]" *Id.*

The record herein does not indicate that Appellants requested a rule 306a hearing nor does it contain a written order; consequently, Appellants are not entitled to receive an extension of time for perfecting an appeal under rule 4.2 of the Texas Rules of Appellate Procedure. *See In re Bokeloh,* 21 S.W.3d 784, 793

(Tex. App. – Houston [14th Dist.] 2000, no pet.); *Grondona v. Sutton,* 991 S.W.2d 90, 92 (Tex. App. – Austin 1998, pet. denied) (per curiam).

The Appellants also did not file a motion in the Appellate Court pursuant to Texas Rules of Appellate Procedure 26.3, to *extend* the 30-day period by the 15-day grace period to file the notice of appeal. In order to benefit from the 15 day extension, a motion for extension of time must be filed; however, such motion will be "necessarily implied" when the appellant has filed the notice of appeal within that 15 day grace period. *Verburgt v. Domer,* 959 S.W.2d 615, 617-18 (1997). The motion must provide a "reasonable explanation" for the failure to file the notice of appeal. *Id.*

Appellants herein filed their notice of appeal within the 15-day grace period but failed to file the companion motion for extension. Following this Court's denial of Appellees' motion to strike the late-filed notice of appeal, this Court instructed Appellants to provide a "reasonable explanation" for why the notice was filed late.

The Texas Supreme Court has defined "reasonable explanation" to mean "'any plausible statement of circumstance indicating that failure to file within the [required] period was not deliberate or intentional, but was the result of inadvertence, mistake, or mischance.'" *Zhao v. Lone Star Engine Installation Ctr*., No. 05-09-01055-CV, 2009 WL 3177578, at *1 (Tex. App.—Dallas Oct. 6, 2009,

pet. denied) (quoting *Garcia v. Kastner Farms, Inc.*, 774 S.W.2d 668, 670 (Tex.1989)).

Appellants acknowledge that their "reasonable explanation" for filing the notice of appeal after the 30-day period was because of the trial clerk's failure to provide notice of the default judgment. *See* Response, pp. 2-3, 8 – 10, 17 – 19 and the Affidavits of Appellants attached to the Response.[2] Appellants cannot rely as their "sufficient explanation" on their late notice of default because they failed to first file a motion in the trial court to certify the date of their actual notice of default judgment pursuant to Texas Rules of Civil Procedure 306(a)(5) and Texas Rules of Appellate Procedure 4.2. This was a jurisdictional prerequisite. Appellants improperly seek a second bite at the apple by their assertion of this explanation *now* in this Court, instead of the trial court[3], which is prohibited. *Gilstrap v. Calley,* 2004 WL 2812881 (Tex. App. Houston [14th Dist.] Dec. 9, 2004).

Appellants' suggestion that their mistake should be excused because they are pro se litigants cannot overcome the jurisdictional prerequisite of complying with

---

[2] The absence on the clerk's docket sheet of the required notice of a default judgment does not result in an inference of error and is not reversible error anyway. *Ginn v. Forrester,* 282 S.W.3d 430 (Tex. 2009) (clerk's notation in record indicating the inability to locate documents that notice was sent could not be construed as affirmative evidence that trial court failed to provide notice.)

[3] Not to mention their attempt for a third bite of the apple by filing the notice of restricted appeal, *infra,* on March 27, 2015.

Texas Rules of Civil Procedure 4.2 and Texas Rules of Civil Procedure 306(a)(5). Appellees were entitled to offer controverting evidence of the date on which notice of the judgment was received by Appellants, i.e. an affidavit of the trial court clerk. Appellants' attempt to bypass this hearing in the trial court ignores the clear jurisdiction in this Court. Pro se litigants are held to the same standards of licensed counsel. *Id.*; *Pena v. McDowell,* 201 S.W.3d 665, 667 (Tex. 2006). "To do otherwise would give a pro se litigant an unfair advantage over a litigant who is represented by counsel. *McClain v. USA Today Newspaper,* 2010 WL 2404651 (Tex. App. --Dallas June 17, 2010).

The Appellants' wish to now cast themselves as inexperienced defendants who did not know what they were doing is quickly dispelled by their acknowledgement that they would have filed a post-judgment motion or a timely notice of appeal had they received notice of the default judgment within 30days of the judgment, the clear inference being that they would not have filed the requisite hearing in the trial court under Texas Rules of Appellate Procedure 4.2 and Texas Rules of Civil Procedure 306(a)(5) or a request for findings of fact. *See* Response Affidavits.

The Court of Appeals has no choice but to dismiss for lack of subject matter jurisdiction based on the failure of Appellants to either timely file their notice of appeal or obtain a motion in the trial court to certify the date on which they

acquired knowledge of the default judgment to extend the plenary power of the trial court and, hence, the time within which to file a notice of appeal.

THE ISSUANCE OF PROCESS, SERVICE OF PROCESS, AND RETURN OF SERVICE WERE VALID.

Appellees do not dispute the well-established requirement of strict compliance with the rules governing service of citation involving default judgments; however, strict compliance with the rules does not require 'obeisance to the minutest detail.' *Ortiz v. Avante Villa at Corpus Christi, Inc.*, 926 S.W.2d 608, 613 (Tex. App.--Corpus Christi 1996, writ denied). Further, as long as the record as a whole, including the petition, citation, and return, shows that the citation was served on the *proper* defendant in the suit, service of process will not be invalidated. *Regalado v. State*, 934 S.W.2d 852, 854 (Tex. App.--Corpus Christi 1996, no writ); *Ortiz v. Avante Villa at Corpus Christi, Inc.*, 926 S.W.2d at 613; *Payne & Keller Co. v. Word*, 732 S.W.2d 38, 41 (Tex. App.--Houston [14th Dist.] 1987,writ ref'd n.r.e.). *Williams v. Williams*, 150 S.W.3d 436, 444 (Tex. App. Austin 2004, pet. denied) (There was no confusion about whether the correct party was actually served); *see also Higginbotham v. General Life & Accident Ins. Co.*, 796 S.W.2d 695, 696-97 (Tex. 1990) (although return did not recite method of service as required, record demonstrated strict compliance with valid method of service); *Color Smart, Inc. v. Little,* No. 04-00-00294-CV, 2001 WL 1230526, at

*2 (Tex. App. – San Antonio, Oct. 17, 2001, no pet.) (not designated for publication) ("Spelling errors, too minor to raise any doubt that the correct person was served, are insufficient to invalidate service."); *LEJ Dev. Corp. v. Sw. Bank,* 407 S.W.3d 863, 866 (Tex. App. – Fort Worth 2013, no pet.); *Herbert v. Greater Gulf Coast Enters., Inc.*, 915 S.W.2d 866, 871 (Tex. App.--Houston [1st Dist.] 1995, no writ)).

Notwithstanding this requirement of strict adherence to rules governing service, courts distinguish those cases holding that otherwise problematic service of process will not be invalidated so long as the citation and return show with reasonable certainty that citation was served on the **proper** defendant. *See Cotton Patch Cafe, Inc. v. McCarty*, 2006 WL 563307, at *6 (Tex. App. -- Fort Worth Mar. 9, 2006, no pet.); *citing Regalado v. State*, 934 S.W.2d at 854; *Dezso v. Harwood*, 926 S.W.2d 371, 374 (Tex. App.--Austin 1996, writ denied) (upholding default judgment even though wrong person was sued because record clearly showed proper defendant received service and knew she was intended defendant.)

In *Williams, supra,* the court of appeals held that even though the citation omitted the name of the petitioner and was not directed to a sheriff or constable, clearly not minor omissions, it otherwise complied with the requirements for proper service of citation under Texas Rules of Civil Procedure 99(b). *Williams v. Williams*, 150 S.W.3d at 444-445. The *Williams* court of appeals based their

16

holding on the appellant's testimony at her motion for new trial that she had been served, that she had carefully read all of the papers served on her, and that, although she had drafted an answer, she had not mailed it until after the default judgment was rendered. *Id*. Because the appellant's testimony left *no question* that the correct defendant had been properly served, the court of appeals held that the trial court did not err in assuming personal jurisdiction of appellant. *Id.* The court explained that the purpose of requiring strict adherence to the rules governing service of citation is to ensure that there is *no* question about whether the proper party has been served before a default judgment is rendered. *Id.* at 444. "As long as the record as a whole, including the petition, citation, and return, shows that the citation was served on *the defendant in the suit*, service of process will not be invalidated [italics added]." *Id.*

A similar review herein of the record, including the petition, citations, and returns, also leaves no question that *before* the default judgment was rendered, the proper party defendants had been served. Further, both Elishah Sawyer and Robin Sawyer acknowledge in their Affidavit that they "thought" they had timely e-filed an answer on August 4, 2014 for the three Appellants, the irrefutable inference being that Appellants, without stating in so many words, had been served and did not dispute the propriety of service of process on them:

"After I found out that Mark Carter and Sally Carter filed the Lawsuit through their attorney, Jaclyn D. Patton, I took steps to make sure that an

17

answer was filed in the lawsuit for myself (Elishah Sawyers), Robin Sawyers, and Pax Crate & Freight, Inc. I formed the belief by reading the citation that the answer of Elishah Sawyers, Robin Sawyers and Pax Crate & Freight, Inc., was due to be filed with the Clerk of the Waller County District Court on or before August 4, 2014. [Para.] I believed that a pro se answer had been e-filed on behalf of Elishah Sawyers, Robin Sawyers and Pax Crate & Freight, Inc. in the lawsuit on August 4, 2014. . . .”

The Affidavits clearly establish that the proper Defendants were served with citation and thought they had filed a timely answer, albeit there is no record of an answer, hence the request for a default judgment. Appellants' Affidavit testimony that "after [they] found out [that Appellees filed the petition], they took steps to make sure that an answer was filed [on August 4, 2014]" seems to be a disingenuous exercise to avoid stating the obvious, that the petition had been "served" on Appellants before they "attempted" to e-file an answer. Appellants' testimony that they would have filed a motion for new trial within 30 days of receiving notice of the default judgment further reinforces their recognition of the service of process as proper and not defective. Therefore, this Court should overrule Appellants' eight assertions of error (issues two through nine) because there is no question that the proper parties were served.

Nevertheless, in the event that this Court disagrees with the foregoing argument for proper service, in the alternative, Appellees assert the following argument: Despite the various errors asserted in issues two through nine, a review of the record, citations, returns and petition show strict adherence to the

18

requirements for proper service of citation under Texas Rules of Civil Procedure 99(b), as follows:

a.      In the second issue, Appellants argue that error is apparent on the face of the record because of the absence of Elishah Sawyer's signature on the certified mail return receipt. The record, including the petition and affidavits attached to the petition, establishes or raises a presumption that Appellant Robin Sawyers is Elishah Sawyers' wife (CR 4 -25, 30) who signed, as his agent, the certified mail return receipt for the service of process and petition that were addressed to Elishah Sawyers at their last known address of 23658 Margerstadt Road, Hockley, Texas 77447. CR 43. The signature box on the return indicated that Robin Sawyers was signing either as the "addressee" or "agent" of the addressee, depending on which box was checked. CR 34. Since Robin Sawyers is not the "addressee", then it is reasonable that the trial court, not presented with controverting evidence, presumed that she intended to sign as her husband's agent. Furthermore, nowhere in the record or in Appellant Elishah Sawyer's Affidavit has he disputed his wife's authority to sign as his authorized agent. Thus, this Court should overrule this second issue.

b.      In the third issue, Appellants argue that error is apparent on the face of the record because the two returns of service addressed to Elishah

Sawyers and Robin Sawyers  fail to state the date and time that the process was received for service as required by Texas Rules of Civil Procedure 107(b)(4).

Rule 106 (a) (2) of the Texas Rules of Civil Procedure allows as a valid method service by certified mail, return receipt requested with a copy of the citation and petition attached.  Rule 107(b) requires eleven items to be included in "the return, *together with any documents to which it is attached* (italics added)." *Tex. R. Civ. P.* 107 b.  A review of the record shows that the Appellees requested that citations be issued on July 9, 2014 and then again on July 10, 2014, both file-stamped by the Waller County District Clerk. The return of service together with the documents attached thereto indicate the date and time that the Waller County District Clerk's office issued the process for service on July 11, 2014 and the date that the certified mail was served on Appellants on July 14, 2014, as indicated on the green cards (CR 30 – 34).  It is irrefutable that the clerk delivered the service documents to the US Mail Service between July 11th and 14th. Therefore, based on the foregoing and the absence in Appellants' brief of a denial that the clerk performed this step, the Appellate Court should overrule this issue.

c.    In the fourth issue, Appellants argue that error is apparent on the face of the record because the citation issued to Appellant Pax Crate &

Freight, Inc. omitted the "Inc." in violation of Texas Rules of Civil Procedure 99(b)(8).

Because a review of the record, the citation, petition, and return of service shows that the correct name of the Appellant with the "Inc." included has been served (CR 3 -4), the omission of "Inc." after "Pax Crate & Freight" in the citation should not invalidate service of process. The purpose of citation of service is to give notice to a defendant that he has been sued, by whom, and for what so that due process may be effected and the defendant may appear and defend the claims against him. *See Stephenson v. Corporate Servs., Inc.,* 650 S.W.2d 181, 182-183 (Tex. App. – Tyler 1983, writ ref's n.r.e.) ("[O]mission of a corporate designation from the return of service did not invalidate service when the citation and attached petition both fully named the defendant with the proper designation." Therefore, this issue should be overruled.

d.      In the fifth issue, Appellants argue that error is apparent on the face of the record because the return of service addressed to Pax Crate & Freight was served on Elishah Sawyer and not on Pax Crate & Freight, Inc.

Service was made on the Pax Freight & Crate, Inc.'s authorized agent, Elishah Sawyer, whose agency relationship with that entity is established in the petition.  CR 3 - 4. "A recital in a petition that names a person or entity

21

as the registered agent for service on the defendant is prima facie evidence of that fact [citations omitted]." *Cont'l Cas. Co. v. Guzman,* No 04-07-00589-CV, 2009 WL 136926, at *5 (Tex. App. –San Antonio Jan. 21, 2009, pet. denied).

Service on Appellant Pax Crate & Freight, Inc. was proper because the record, including the citation, petition and return, properly names the corporate Appellant and shows service upon its authorized agent: the petition properly names "Defendant Pax Crate & Freight, Inc. [that] may be served with citation in this cause by serving its registered agent for service, Elishah Sawyers"; the citation is directed to "Pax Crate & Freight, by serving its authorized agent Elishah Sawyer", and the return names "Elishah Sawyer". CR 3 - 4, 35.

Appellants cited as authority *Reed Elsevier, infra,* in arguing improper service on Pax Crate & Freight based on the return indicating service only on "Elishah Sawyer". However, that case is distinguishable. The record in the current case, unlike the record in *Reed Elsevier*, describes the relationship between Pax Crate & Freight, Inc. and the person served, "Elishah Sawyer", as the registered agent for the corporation. CR 3 -4. *See Reed Elsevier, Inc. v. Carrollton-Farmers Branch Indep. Sch. Dist.,* 180

S.W.3d 903, 905-06 (Tex. App. – Dallas 2005, pet. denied). Therefore, the Appellate Court should overrule the fifth issues.

      e.     In the sixth issue, Appellants argue that error is apparent on the face of the record because the returns of service pertaining to Elishah and Robin Sawyers fail to correctly state the address served in violation of 107(b)(6) because of an "(s)" that is randomly placed after the zip code of the address on the returns. The return receipts (the "green cards") have the correct address. CR 34. Appellees assume that Appellants are referring to the "(s)" following the zip code on the "certificate of delivery by mail" located at the bottom of the same page as the citation. CR 32 – 33.

As stated above, strict compliance with the rules does not require 'obeisance to the minutest detail.' *Ortiz v. Avante Villa at Corpus Christi, Inc.*, 926 S.W.2d at 613 (omission of accent mark and of corporate designation and substitution of symbol " at " for word "at" are defects that do not invalidate service); *see also Cockrell v. Estevez*, 737 S.W.2d 138, 140 (Tex. App.--San Antonio 1987, no writ) (misspelling of defendant's name in citation did not invalidate service); *Payne & Keller Co. v. Word*, 732 S.W.2d 38, 41 (Tex. App. Houston [14th Dist.] 1987, writ ref'd. n.r.e.) (judgment upheld where petition and citation reflected registered agent as "Philippe Petitfrere," and return reflected "Philipee Petitfreere").

In another case involving service of process and a questionable zip code, the court of appeals held that service of citation was not defective based on an incorrect digit in the zip code on the return. *Cotton Patch Cafe, Inc. v. McCarty*, 2006 WL 563307 (Tex. App. Fort Worth Mar. 9, 2006, no pet.). "[T]he return clearly complies with the requirements of Rule 107, but simply contains an incorrect final numeral in the registered agent's zip code. The zip code in McCarty's petition correctly states that the registered agent's zip code is "75063," the citation contains the correct zip code on the same page as the officer's return, and Cotton Patch does not argue that it was not served." *Id.*

Rule 107 (b) requires the eleven required items to be included in "the return, *together with any documents to which it is attached* (italics added)." *Tex. R. Civ. P.* 107 (b). A review of the record herein shows that but for the "(s)" after the zip code in the "certificate of delivery by mail", the addresses of Appellants Elishah and Robin Sawyer are identical on the petition, citation, and return receipts, all which omit any "(s)" after the zip code. Similar to *Cotton Patch, supra,* the petition and citation state the correct zip code and there is a slight discrepancy in the address in a different section of the record.

Appellants' citation to *Marquez v. Greig ex rel. Texas Stars Cheerleading,* 2012 WL 3228710, No. 01-10-01118-CV, op. at 3 (Tex. App. –Houston [its Dist.] 2012, no pet.) (mem. op.) should be rejected as authority. That case is distinguishable. In addition to the presence of a minor discrepancy in the service address, the return was marked "unclaimed".

Thus, because Appellants do not claim in their brief that they did not receive service, and because the citation and petition show that citation was actually served on Appellants at the correct address with the correct zip code, the trial court should not be deprived of jurisdiction because of the minor discrepancy of the addition of the "(s)" after the zip code.

f.  In the seventh and eighth issues, Appellants argue that error is apparent on the face of the record because the returns of service and citations, respectively, fail to provide an accurate description of what pleading was served as required by Texas Rules of Civil Procedure 107(b)(3) and Texas Rules of Civil Procedure 99(b)(4).  Rule 107(b) requires eleven items to be included in "the return, *together with any documents to which it is attached* (italics added)." *Tex. R. Civ. P.* 107 (b). A review of the record shows that the citation, return of service, and petition provide the required description of the pleading served as "Plaintiffs' Original Petition and Request for Permanent Injunction".  The Supreme Court case submitted

by Appellants is distinguishable because, unlike in the current case, the petition attached to the return was a *prior* version that had omitted the name of the defendant. *Primate Construction, Inc. v. Silver,* 884 S.W.2d151 (Tex. 1994). The Appellate Court should overrule this eighth issue.

g.     In the ninth issue, Appellants assert as error that the returns of service do not indicate a clerk's file mark indicating proof of service and, therefore, it is not possible to show that the proof of service was on file for ten days, exclusive of the day of filing and the day of judgment as required by Texas Rules of Civil Procedure 107(h). However, rule 107(h) provides that the proof of service that is required to be on file with the clerk of the court for the ten day period is to be "*as ordered by the court* in the event citation is executed by an alternative method under Rule 106." The alternative method under Rule 106 (a) (2) refers to service by certified mail, as was done in this case.  In the current case, the citation instructs that  the return must be attached to the citation pursuant to Rule 106 (a) (2) and the return receipts that are attached as instructed show that Elishah and Robin Sawyer were served on July 14, 2014 (CR 33 – 34).  Since the default judgment was granted almost two months later on September 12, 2014. CR 50 – 51, the required 10-day period was met. *See Lefton v. Griffith,* 136 S.W.3d 271 (Tex. App. San Antonio 2004, no pet.).  The presumption that

the procedure and method of service followed by the trial court clerk to deliver citation of service by certified mail was "as ordered by the court" has not been rebutted in Appellants' brief. Accordingly, the return of service was on file for the ten day period required under Texas Rules of Civil Procedure 107(h) before the default judgment was granted. Therefore, the Court should overrule this issue.

## THIRD ISSUE PRESENTED

## THE JUDGMENT IS FINAL AND APPEALABLE, NOT INTERLOCUTORY.

"A judgment issued without a conventional trial on the merits is final for purposes of appeal if and only if either it actually disposes of all claims and parties then before the court, *regardless of its language*, or it states with unmistakable clarity that it is a final judgment as to all claims and parties. [Italics added.]" *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192-93 (Tex. 2001). "[It is necessary to] divine the intention of the trial court from the language of the decree and the record as a whole, aided on occasion by the conduct of the parties." *In re Griffith*, 2003 WL 21508337, at *1 (Tex. App.--San Antonio July 2, 2003, mandamus denied). "An order can be a final judgment for appeal purposes even though it does not purport to be if it actually disposes of all claims still pending in the case." *Lehmann v. Har-Con Corp.*, 39 S.W.3d at 204. The absence of a Mother Hubbard recital is not determinative. *Id.* at 199-200. "The standard Mother Hubbard clause

27

is used in interlocutory orders so frequently that it cannot be taken as any indicator of finality." *Id.* at 204; *Zamarripa v. Sfuentes*, 929 S.W.2d 655, 657 (Tex. App.-San Antonio 1996, no writ).

A review of the record in this case when considered in conjunction with the conduct of the parties confirms the finality of the judgment because it disposes of all claims – in effect, the judgment has a "distinct stamp of finality." *See In re Griffith,* 2003 WL 21508337 at \*4. Contrary to Appellants' claim that the default judgment failed to dispose of the request for prejudgment interest and injunctive relief, Appellees' request for prejudgment interest was abandoned and the judgment disposes of the request for injunctive relief.

Pre-judgment Interest: Appellants cite to *Rosedale Partners v. 131st Judicial Dist. Court*, 869 S.W.2d 643, 648 (Tex. App. San Antonio 1994) for authority for their claim that the absence of an award for prejudgment interest renders the default judgment an interlocutory judgment. In fact, this case additionally serves as authority for the Appellees' claim that they *abandoned* their claim for prejudgment interest. The appeals court in *Rosedale, supra*, held that the judgment was interlocutory, in part, because the default judgment failed to include an award of prejudgment interest. The *Rosedale* court of appeals stated that "it [was] crucial for us to know when Rosedale decided to abandon or waive its remaining requests [for prejudgment interest]." *Id. Because nothing in the record*

28

*indicated the date on which the claim was abandoned, the court was unable to consider whether or not the claim for prejudgment interest was abandoned. Id., see also Jones v. Griege,* 803 S.W.2d 486, 487-88 (Tex. App.--Dallas 1991, no writ) ("Griege's notice to the appellate court of his decision to waive the request for punitive damages established that the judgment was now final and the appellate court had jurisdiction over the appeal." )

Unlike *Rosedale, supra*, in the current case, there is a date on which the claim was abandoned – September 23, 2014, the date on which the trial clerk prepared abstracts of judgment upon the implied request of the Appellees. CR 52 - 55.[4] Therefore, the absence of an award of prejudgment interest does not negate the finality of the default judgment.

Injunctive Relief:   As to Appellants' claim that the judgment is interlocutory because it did not dispose of the request for injunctive relief, their argument has no merit. In an appeal from a permanent injunction, the standard of review is whether the trial court committed a clear abuse of discretion. *Priest v. Texas Animal Health Comm'n*, 780 S.W.2d 874, 875 (Tex. App.-Dallas 1989, no writ).

---

[4]     The other two cases cited to by Appellants on the issue of the award of prejudgment interest are also distinguishable from the current case: in *Hunt Oil Co. v. Moore*, 639 S.W.2d 459 (Tex. 1982), there was no argument presented for the abandonment of the claim for prejudgment interest; in *Sheik Tehuti v. Barrett Daffin Frappier Turner & Engel, LLP*, 2011 WL 3964573 (Tex. App. Dallas Sept. 9, 2011), the appellant had been requested to brief the issue of the finality of the judgment from the standpoint of the pending claim of prejudgment interest, but appellants addressed a different issue instead, omitting to brief the issue of finality, leaving the court no choice but to dismiss as an interlocutory judgment.

29

Texas Rules of Civil Procedure 683 requires that every order granting an injunction shall do the following: (1) set forth the reasons for its issuance, (2) be specific in terms, (3) describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained, (4) be binding only on the parties to the actions and their agents and those persons in active concert or participation with them who receive actual notice of the order. *See Tex. R. Civ. P*. 683; *see also Adjust Video v. Nueces County,* 996 S.W.2d 245, 249 (Tex. App.-Corpus Christi 1999, no pet.) (If a plaintiff seeks injunctive relief that is ancillary to other relief sought, Rule 683 applies to permanent injunctions.) "It is not essential that the judgment in express terms specifically dispose of each issue. That it does dispose of a particular issue may be inferred from other provisions thereof, provided such an inference follows as a necessary implication." *Davis v. McCray Refrigerator Sales Corp*., 150 S.W.2d 377, 377-78 (Tex. 1941).

In this case, the injunction language in the default judgment complies with Texas Rules of Civil Procedure 683 or that compliance may be inferred from other provisions in the default judgment that follow as a necessary implication. The first order of injunctive relief is an "injunction against unreasonable and excessive noise and dust created by the riding of large dirt bikes on Defendants' property". CR 50 – 51. The second order of injunctive relief is an "injunction against moving

30

Defendants' crating business, Pax Crate and Freight, Inc., to Defendants' Margerstadt Road property". CR 50 – 51.

Regarding the first injunction, the reason for its issuance is incorporated in the injunction itself – to wit, "the unreasonable and excessive noise and dust created by the riding of large dirt bikes".  CR 50 – 51. The specificity of the "property" may be inferred from reading both injunctions together that the "property" referred to in the first injunction is  the property of Elishah and Robin Sawyers on Margerstadt Road; the injunction language describes in reasonable detail the activity sought to be restrained - the riding of large dirt bikes on the Defendants Sawyers' Margerstadt property,  and it is clear that the restricted activity is binding on Defendants Sawyers and anyone on their Margerstadt Road property. CR 50 – 51. The second injunction is also in compliance as the required information is either clear or can be naturally implied that Defendant  Pax Crate and Freight, Inc. is prohibited from being moved to the Margerstadt property of Defendants Elishah and Robin Sawyers.  CR 50 – 51. As the two injunctions are in compliance with Texas Rules of Civil Procedure 683, the trial court did not abuse its discretion in disposing of the request for injunctive relief. CR 50 – 51.

Appellants now would have this Court treat the judgment as interlocutory despite their treatment of the default judgment as final by filing a notice of appeal, albeit untimely. CR 60 – 61. A further indicator of their recognition of the

31

judgment as final is found in the Affidavits where they acknowledge that had they acquired actual notice of the default judgment within 30 days of the signing of the default judgment, they would have filed a motion for new trial, the irrefutable inference being that they would have treated the default judgment as a final judgment. And, lastly, they also filed the notice of appeal indicating their treatment of the judgment as final. CR 60 – 61. *See also Fluor Daniel, Inc. v. H.B. Zachary Co., Inc.,* 2005 WL 2559773, *3 (Tex. App. – Corpus Christi Oct 13, 2005, pet. denied) (mem. op.) (*citing Lehmann v. Har-Con Corp.,* 39 S.W.3d at 203); *see also Jones v. Rabson & Broocks, LLC,* 2003 WL 302439, at *3 (Tex. App. – Houston [1sst Dist.] Feb. 13, 2003, no pet.)(mem. op.) (The appellate court considered the defendant's treatment of the judgment as final by the filing of a motion for new trial and notice of appeal in its decision to confirm the lower court summary judgment as a final judgment.)

In addition to the foregoing, the following indicators reinforce the finality of the default judgment: (1) the judgment awarded court costs and postjudgment interest which, by definition, cannot begin to accrue until after a final judgment; (2) when construed with the award of postjudgment interest and costs, and the disposition of all claims and parties as shown hereinabove, the judgment's recitation that the judgment is available for execution, although not determinative, reinforces the court's intent that the judgment is final; (3) the absence of a Mother

32

Hubbard clause is not determinative; and (4) the trial court clerk recognized the judgment as final based on her issuance of abstracts of judgment and the preparation of a writ of execution. CR 50 – 51.

It is patently clear from the judgment and conduct of the trial court and the parties that the default judgment is final and appealable. Even if, arguendo, the default judgment awards more relief that that to which Appellees are entitled, the judgment is still final, not interlocutory as argued by Appellants. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d at 204 ("Granting more relief than the movant is entitled to makes the judgment reversible, but not interlocutory [citations omitted].")

Based on the foregoing argument and authorities, the errors asserted by Appellants regarding whether or not the default judgment is final and appealable should be overruled. A review of the record, the judgment itself, the actions of the district trial clerk, the treatment of the default judgment as final by the Appellants, and the indication of abandonment of the request for prejudgment interest by Appellants all lend a "distinct mark of finality" to the default judgment.

However, in the alternative, should this Court be uncertain about the trial court's intent as to the finality of the judgment, the Court may "abate the appeal to permit clarification by the trial court." *Id.* at 206; *see also Fresh Coat, Inc. v. Life Forms, Inc.,* 125 S.W.3d 765, 768 (Tex. App. – Houston [1ˢᵗ Dist.] 2003, no pet.)

("[T]he Texas Supreme Court has suggested that, in a case in which we are uncertain about the trial court's intent in signing a judgment, we may abate the appeal to permit clarification by the trial court.").

FOURTH ISSUE PRESENTED

FACTUAL AND LEGAL SUFFICIENCY SUPPORTS THE
AWARD OF ATTORNEY'S FEES AND MONETARY DAMAGES.

In Appellants' tenth point of error, they contend that the trial court erred by awarding unliquidated damages without an evidentiary hearing. However, this Court should overrule Appellants' point of error because Appellees' claims for attorney's fees and damages were properly pled and probative admissible evidence in the form of affidavit testimony was properly considered by the trial court.

When a no-answer default judgment is entered against a party on an unliquidated claim, the non-answering party is deemed to have admitted all facts properly pleaded, except for the amount of damages. *Texas Commerce Bank, Nat'l Ass'n v. New*, 3 S.W.3d 515, 516 (Tex. 1999); *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992); *Whitaker v. Rose*, 218 S.W.3d 216, 220 (Tex. App.—Houston [14th Dist.] 2007, no pet.). "After a default judgment occurs, unliquidated damages must be proven to the trial court." *Lucas v. Clark*, 347 S.W.3d 800, 803 (Tex. App.—Austin 2011, pet. denied). Unliquidated damages can be proved up to the trial court through an evidentiary hearing *or with affidavits*.

34

*Texas Commerce Bank, Nat'l Ass'n v. New*, 3 S.W.3d at 515 - 517 (A trial court does not err when it considers affidavits in rendering a default judgment.)

Attorney's Fees:   "An uncontested affidavit that establishes a prima facie case for attorney's fees is legally sufficient to support an attorney's fees award." *Texas Commerce Bank, Nat'l Ass'n v. New*, 3 S.W.3d at 515. Clear, direct, and uncontroverted evidence of attorney's fees is taken as true as a matter of law, particularly when the opposing party does not rebut the evidence. *See Ragsdale v. Progressive Voters League,* 801 S.W.2d 880, 881-82 (Tex. 1990).

In this case, Appellees' attorney submitted an affidavit of necessary and reasonable attorney's fees that serves as admissible evidence and was before the trial court.  She testified that she is a duly licensed attorney who is familiar with the usual and customary attorney's fees in Waller County, and that $10,000.00 was a reasonable and customary fee for prosecuting this claim based on her knowledge of the services rendered to the Carters in this case.  *Texas Commerce Bank, Nat'l Ass'n v. New*, 3 S.W.3d at 515 - 518.   Appellees' attorney's uncontroverted affidavit is sufficient to support the award of attorney's fees.  CR 45 – 48.

Appellants also do not dispute the reasonableness and necessity in their Brief; they merely oppose the absence of an oral hearing.  However, an oral hearing is not mandatory where affidavit testimony is before the court, as in the current case.  *Id.*   And, "[t]he court may take judicial notice of the usual and

35

customary attorney's fees and the contents of the case file without receiving further evidence in … a proceeding before the court." *See Tex. Civ. Prac. & Rem* § 38.004; *Lefton v. Griffin,* 136 S.W.3d, 271, 279 − 80 (Tex. App.-San Antonio 2004, no pet.) (holding in a nonjury case that an appellate court may presume that the trial court took judicial notice even if the judge did not announce that he was doing so). Thus, the judgment for attorney's fees herein finds support factually and legally.

<u>Monetary damages:</u>     In this case, the court granted damages without identifying the theory of liability on which the damages were granted. CR 51. However, it is not necessary for a judgment to identify on which theory it granted damages, particularly in a default context where liability has already been established on all theories of recovery. *See Gardner v. U.S. Imaging, Inc.* 274 S.W.3d 669, 671 (Tex. 2008); *Lehmann v. Har-Con Corp.*, 39 S.W.3d at 204 ("Granting more relief than that to which a movant is entitled makes the order reversible, but not interlocutory.")

In a nuisance action, a plaintiff may recover damages for a personal injury caused by the nuisance, such as discomfort, annoyance, and injury to health, in addition to damages to property.[5] *Day v. Tripp*, 1999 WL 546869 (Tex. App. Austin July 29, 1999); *see also Daniel v. Fort Worth & Rio Grande Ry. Co.,* 72

---

[5] The plaintiff may recover damages for discomfort and annoyance even absent depreciation of the real property caused by the nuisance. *Day v. Tripp*, 1999 WL 546869.

S.W.578 (Tex. 1902). The measure of damages for discomfort and annoyance is the amount of money necessary to provide the plaintiff reasonable and fair compensation for such personal injury. *Id.* at 579.

Appellees' affidavits constitute sufficient uncontroverted evidence of personal injury caused by the nuisance that is sufficient factually and legally to support the award of damages. It is error for a trial court to not consider the affidavits. *Sherman Acquisition II LP v. Garcia*, 229 S.W.3d 802, 811(Tex. App. Waco 2007, no pet.). Hearsay is even admissible to support a default judgment for attorney's fees and damages. *Texas Commerce Bank, Nat'l Ass'n v. New*, 3 S.W.3d at 517, *citing Irlbeck v. John Deere Co*., 714 S.W.2d 54 (Tex. App. Amarillo 1986, no writ).

When challenging the legal sufficiency of the evidence on an issue, the party without the burden of proof on that issue must show that there is "no evidence" in support of the default judgment. *Sutton v. Hisaw & Assocs. Gen. Contrs., Inc.*, 65 S.W.3d 281, 284 (Tex. App. Dallas 2001, pet. denied). The court considers only the evidence and inferences tending to support the trial court's finding, and disregards all evidence and inferences to the contrary. *Southwestern Bell Mobile Sys. v. Franco*, 971 S.W.2d 52, 54 (Tex. 1997) (per curiam). If more than a scintilla of evidence supports the judgment, the judgment will be upheld. *Sutton v. Hisaw & Assocs. Gen. Contrs., Inc.*, 65 S.W.3d at 284.

37

The testimony of Appellees is probative on their personal injury damages and more than a scintilla of evidence has been presented by the affidavits that they suffered personal and property damages as a result of the private nuisance created by Appellants. CR 2 – 18. The affidavits of Appellees (CR 8 – 18) are factually and legally sufficient to support the trial court's findings that the monetary damages of Appellees are reasonable and fair compensation to Appellees. CR 8 – 18. If, arguendo, this Court finds otherwise, the Court may remand the issue of damages to the trial court.

## PRAYER

Based on the foregoing, Appellees Mark and Sally Carter pray that the Appellate Court dismiss this appeal for lack of subject matter jurisdiction. In the alternative, Appellees pray that this Court confirms the default judgment. In the event this Court seeks further clarification regarding the finality of the judgment, Appellees pray that this Court abate the appeal to seek clarification in the trial court as to the finality of the default judgment. In the event this Court finds error regarding the award of attorney's fees and damages, Appellees pray that this Court remand the issue of damages to the trial court.

Respectfully submitted,

**TOUGH LAW FIRM, PLLC**

_/s/ Bruce C. Tough_
**Bruce C. Tough**
btough@toughlawfirm.net email
State Bar No. 20151500
819 Crossbridge Drive
Spring, Texas 77373
(281) 681-0808 telephone
(281) 681-0809 telecopy
**Lead Counsel for Appellees**
**Mark Carter and Sally Carter**

### Certificate of Compliance

Based upon the word counting function of Windows, this Brief of Appellees contains 9,106 words excluding the portions of the brief excluded in Texas Rule of Appellate Procedure 9.4(i)(1).

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing document has been forwarded by e-filing and e-service to all lead counsel of record, on this 8th day of April, 2015, as follows:

Scott Rothenberg
LAW OFFICES OF SCOTT ROTHENBERG
2777 Allen Parkway, Suite 1000
Houston, Texas 77019-2165
(713) 667-0052 telecopier
scott@rothenberglaw.com email
**_Counsel for Appellants_**
**_Elishah Sawyers; Pax Freight &_**
**_Crate, Inc.; and Robin Sawyers_**

   /s/  Bruce C. Tough
Bruce C. Tough

# *Adust Video v. Nueces County*

Court of Appeals of Texas, Thirteenth District, Corpus Christi

May 20, 1999, Delivered ; May 20, 1999, Filed

NUMBER 13-95-239-CV

**Reporter**

996 S.W.2d 245; 1999 Tex. App. LEXIS 3790

ADUST VIDEO, Appellant, v. NUECES COUNTY, TEXAS, Appellee.

**Prior History:** [**1] On appeal from the 105th District Court of Nueces County, Texas.

**Disposition:** As modified, AFFIRMED.

## Core Terms

injunction, premises, inspection, sexual activity, patrons, theater, nuisance, warning, booths, conditions, warrantless, issuance, disease, notice, rights, sexual, permanent injunction, restrained, adult, unsanitary condition, public health, requires, violates, safety code, trial court, peep show, restrictions, visibility, operators, temporary

## Case Summary

### Procedural Posture

Appellant sought review of judgment which issued an injunction on the basis of a public nuisance under Tex. Health & Safety Code Ann. §§ 341 and 343 (Vernon 1992 & Supp. 1999), in appellee's favor in the 105th District Court of Nueces County (Texas).

### Overview

Appellant adult store owner challenged an injunction issued in appellee public health department's favor for a public nuisance under Tex. Health & Safety Code Ann. §§ 341 and 343 (Vernon 1992 & Supp. 1999). Appellee contended that unsanitary conditions that occurred through sexual activity on appellant's premises created a public health nuisance. The court rejected the argument that the injunction violated civil procedure by failing to define what unsanitary conditions existed. The court explained the detailed explanation provision did not apply to a permanent injunction which was the sole relief sought. The court further found that the injunction was reasonably specific. The court determined that the injunction did not violate appellant's patrons' free speech rights when the time, place, and manner restrictions imposed were justifiable without reference to the content of regulated speech and were narrowly tailored and left ample alternative communication channels. The court struck the injunction provision that required patrons' identification because it exerted an impermissible inhibitory effect. The court also struck the entry receipt requirement as unreasonable.

### Outcome

The court affirmed as modified a permanent injunction in appellee's favor, because the injunction was reasonably specific and sought protection of the public from a public health nuisance. The court struck reporting, random inspection, patron entry receipt, and identification requirements because they were not reasonably related to the public health nuisance and had an impermissible inhibitory affect upon patrons' free speech.

## LexisNexis® Headnotes

Civil Procedure > Appeals > Reviewability of Lower Court Decisions > Preservation for Review

**HN1** The party who seeks appellate review of a particular point is responsible for presenting a complete record on that point because it has the burden of proving error.

Civil Procedure > Remedies > Injunctions > Permanent Injunctions

**HN2** The court presumes the evidence supports injunctive relief.

Civil Procedure > Remedies > Injunctions > Permanent Injunctions

**HN3** *Tex. R. Civ. P. 683*, provides: every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained.

Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions

**HN4** The Tex. R. Civ. P., provision compelling a detailed explanation of the reason for the injunction's issuance is held only to apply to temporary injunctions or suits requesting ancillary injunctive relief.

Civil Procedure > Remedies > Injunctions > Permanent Injunctions

**HN5** A permanent injunction should not be more comprehensive or restrictive than justified by the pleadings, evidence, and usages of equity.

Civil Procedure > Remedies > Injunctions > Permanent Injunctions

**HN6** An injunction decree must be as definite, clear, and precise as possible and when practicable it should inform the defendant of the acts he is restrained from doing, without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further hearing.

Public Health & Welfare Law > Healthcare > Public Health Security > Communicable Diseases

**HN7** "Sanitary" is defined as a condition of good order and cleanliness that precludes the probability of disease transmission under *Tex. Health & Safety Code Ann. §341.001(7)* (Vernon 1992).

Civil Procedure > Remedies > Injunctions > Permanent Injunctions

**HN8** When the purpose of an injunction is to protect the public, the test of required specificity is reasonableness, and in framing the decree, doubt should be resolved against the violator.

Civil Procedure > ... > Justiciability > Standing > General Overview

**HN9** A party may only assert a violation of its own rights.

Civil Procedure > ... > Justiciability > Standing > General Overview

Constitutional Law > ... > Fundamental Freedoms > Freedom of Speech > General Overview

Constitutional Law > ... > Fundamental Freedoms > Freedom of Speech > Scope

**HN10** In the *U.S. Const. amend. I* context, litigants are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.

Constitutional Law > ... > Fundamental Freedoms > Freedom of Speech > Scope

Constitutional Law > ... > Fundamental Freedoms > Judicial & Legislative Restraints > Overbreadth & Vagueness of Legislation

Constitutional Law > ... > Fundamental Freedoms > Judicial & Legislative Restraints > Time, Place & Manner Restrictions

**HN11** Restrictions merely on the time, place, or manner of exercise of free speech rights violate no constitutional protections if sufficiently justified and narrowly enough drawn.

Constitutional Law > ... > Fundamental Freedoms > Judicial & Legislative Restraints > Time, Place & Manner Restrictions

**HN12** The government may impose reasonable restrictions of the time, place, or manner of protected speech, provided restrictions are [1] justified without reference to the content of the regulated speech, that they are [2] narrowly tailored to serve a significant governmental interest, and that they [3] leave open ample alternative channels for communication of the information.

Civil Procedure > Remedies > Injunctions > Permanent Injunctions

**HN13** Where the acts of the parties are divisible regarding lawful and unlawful conduct, an injunction may not be framed so broadly so as to prohibit the enjoyment of lawful rights.

Constitutional Law > ... > Fundamental Freedoms > Judicial & Legislative Restraints > Time, Place & Manner Restrictions

**HN14** A city has a substantial interest in regulating sexually-oriented businesses.

> Civil Procedure > Remedies > Injunctions > Permanent Injunctions

> Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

> Civil Procedure > ... > Standards of Review > Harmless & Invited Errors > General Overview

> Civil Procedure > Appeals > Standards of Review > Prejudicial Errors

**HN15** The standard of review when a trial court grants or denies a permanent injunction is limited to whether the trial court clearly abused its discretion.

> Criminal Law & Procedure > ... > Sex Crimes > Obscenity > General Overview

**HN16** Sexual activity in public places is prohibited by the Texas Penal Code. See *Tex. Penal Code Ann. §§21.07*, *21.08* (Vernon 1994). Theaters and retail shops open to the public are public places.

> Constitutional Law > ... > Fundamental Rights > Search & Seizure > Scope of Protection

**HN17** Patrons of adult video theaters have no right to anonymity in viewing films.

> Constitutional Law > ... > Fundamental Freedoms > Freedom of Speech > Scope

**HN18** The *U.S. Const. amend. I* also protects against government inhibition as well as prohibition.

> Constitutional Law > ... > Fundamental Freedoms > Freedom of Speech > Scope

**HN19** An identification requirement exerts an inhibitory effect and therefore raises *U.S. Const. amend. I* issues comparable to those raised by direct government imposed prohibitions.

> Constitutional Law > ... > Fundamental Rights > Search & Seizure > Warrants

> Criminal Law & Procedure > Search & Seizure > Search Warrants > General Overview

**HN20** A warrant is generally required for authorities to search portions of a commercial enterprise that are not open to the public.

> Criminal Law & Procedure > Search & Seizure > Warrantless Searches > General Overview

**HN21** A warrantless search of commercial premises may be reasonable when the business is closely regulated. In such a case the privacy interests of the owner are weakened and the government interest in regulating are higher.

> Constitutional Law > ... > Fundamental Rights > Search & Seizure > Scope of Protection

> Criminal Law & Procedure > Search & Seizure > Expectation of Privacy

**HN22** The expectation of privacy that the owner of commercial property enjoys may, in certain circumstances, be adequately protected by regulatory schemes authorizing warrantless inspections.

> Constitutional Law > ... > Fundamental Rights > Search & Seizure > Scope of Protection

> Business & Corporate Compliance > ... > Occupational Safety & Health > Administrative Proceedings > Citations & Inspections

**HN23** Where congress has authorized inspection but made no rules governing the procedures that inspectors must follow, the *U.S. Const. amend. IV*, and its various restrictive rules apply.

> Constitutional Law > ... > Fundamental Rights > Search & Seizure > Warrants

> Criminal Law & Procedure > Search & Seizure > Search Warrants > General Overview

**HN24** The regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to law and has a properly defined scope, and it must limit the discretion of the inspecting officers.

**Counsel:** FOR APPELLANT: John J. Fahle, III, Attorney at Law, San Antonio, TX.

FOR APPELLEE: Walter D. Bryan, Assistant County Attorney, Sandra Huhn, Nueces County Attorney's Office, Annette L. Smith, Assistant District Attorney, Carl Lewis, County Attorney, Corpus Christi, TX.

**Judges:** Before Chief Justice Seerden and Justices Dorsey and Hinojosa. Opinion by Justice Dorsey.

**Opinion by:** J. BONNER DORSEY

## Opinion

[*248] OPINION

Opinion by Justice Dorsey

This action was initiated by the Nueces County Attorney at the behest of the Nueces County Public Health Department against Adust Video, appellant, for violations of the Texas Health and Safety Code. [1] Following the issuance of a temporary restraining order and an agreed temporary injunction, the County sought and received a permanent injunction. The trial court found a public health nuisance existed and issued an injunction which, among other things, prohibits "sexual activity" on the Adust Video premises. Adust appeals by three points of error, challenging the lack of specificity of the findings of fact, the injunction's failure to afford notice of what specific acts it prohibits, and violation of appellant's First Amendment right to free speech.

[**2] As there is no statement of facts, we rely on the parties' briefs for the applicable facts. Adust Video owns and operates an adult book and video store in Nueces County. In addition to displays of adult literature and video tapes for sale and rent, the store also offered its patrons eight private, coin-operated viewing booths and a sixteen-seat theater for on-site screening of adult movies. During December 1994, Nina Sisley, an inspector for the county heath agency, twice inspected appellant's business premises and, on both occasions, discovered conditions she described as "unsanitary." Specifically, Sisley found urine and seminal fluid on the seats, floor, and walls of the restroom, booths, and theater. The County asserts these conditions create a high risk for the transmission of diseases, including sexually transmitted diseases such as syphilis, gonorrhea, and AIDS.

The health department notified Adust of its findings and afforded Adust an opportunity to clean up the premises. The County concluded Adust made no effort to correct these conditions so, pursuant to *health and safety code sections 341.012* and *343.013*, sought and obtained a temporary restraining order, followed by [**3] a temporary [*249] injunction, and finally, after a trial before the court, a permanent injunction.

The trial court's order, in the name of abating a public health nuisance, enjoined "sexual activity" on Adust's premises. In addition to provisions requiring a general increase in lighting throughout the establishment, the order required verbal and written notices and posted signs warning all who entered that sexual activity was strictly forbidden within. The trial court ordered that any person desiring entry into a booth or the theater must sign an individualized written warning which must include their printed name, phone number, address, and driver's license number. Adust is required to maintain the original of these receipts for random, warrantless inspection by the County. The management must refuse entry to the booths or theater to any person refusing to sign and, if they enter anyway, must call the police to report the trespass. "Sexual activity," when discovered, must be halted and reported to the police. Adust was also required to modify the building so that the staff would "have a clear view at all times of all events occurring within the premises." If the court's intentions were [**4] in any way unclear, the order went on to permanently enjoin Adust from permitting sexual activity within its premises by any person; from maintaining an unsanitary condition; from tolerating a nuisance; from refusing to comply with the injunction; or from refusing to consent to random warrantless inspections by the State.

Our review of appellant's arguments is seriously limited because there is no statement of facts. *See Brockette v. Sosa, 675 S.W.2d 807, 809* (Tex. App.--Corpus Christi 1984, no writ). **HN1** The party who seeks appellate review of a particular point is responsible for presenting a complete record on that point because it has the burden of proving error. *Simon v. York Crane & Rigging Co., Inc., 739 S.W.2d 793, 795 (Tex. 1987)*; *Brockette, 675 S.W.2d at 809*. **HN2** We presume the evidence supports injunctive relief.

## I. THE RULES GOVERNING INJUNCTIONS

In its first point of error, Adust contends the trial court's order violates the rules of civil procedure because it does not define what unsanitary conditions exist on appellant's premises.

**HN3** *Rule of civil procedure 683* provides:

Every order granting an injunction and every restraining order shall set forth the reasons [**5] for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other

---

[1] TEX. HEALTH & SAFETY CODE ANN. §§ 341, 343 (Vernon 1992 & Supp. 1999).

document, the act or acts sought to be restrained . . . .

*TEX. R. CIV. P. 683*.

Though the rule on its face applies to *every order* granting an injunction, **HN4** the provision compelling a detailed explanation of the reason for the injunction's issuance has been held only to apply to temporary injunctions or suits requesting ancillary injunctive relief. *City of Houston v. Morgan Guar. Intern. Bank, 666 S.W.2d 524, 536* (Tex. App.--Houston [1st Dist.] 1983, writ ref'd n.r.e.); *Gasperson v. Madill Nat'l Bank, 455 S.W.2d 381, 398* (Tex. Civ. App.--Fort Worth 1970, writ ref'd n.r.e.); *Texas Liquor Control Bd. v. Bacon, 443 S.W.2d 312, 317* (Tex. Civ. App.--Austin 1969), *rev'd on other grounds*, *456 S.W.2d 891 (Tex. 1970)*; *Alexander Schroeder Lumber Co. v. Corona, 288 S.W.2d 829, 835* (Tex. Civ. App.--Galveston 1956, writ ref'd n.r.e.). We are persuaded that *rule 683*'s requirement for detailed explanations of reasons for the issuance of the injunction does not apply to a permanent injunction that is the sole relief sought by the action. The **[**6]** rule does apply to injunctive relief that is ancillary to other relief sought in the action. In *Schroeder*, the Galveston court expressly held: "We reach the conclusion that [*rule 683*] applies only to ancillary injunctive relief and not to final judgments in suits, the sole object of which is to obtain a perpetual injunction." *Schroeder, 288 S.W.2d at 835*.

**[*250]** The *Schroeder* rule was applied in *Gasperson:* "such rule [683] only applies to ancillary injunctive relief and not to final judgments." *Gasperson, 455 S.W.2d at 398*. The rule was also applied, although modified, in *Bacon* (in affirming the issuance of a permanent injunction) where the court said, "It has been held that *Rule 683* . . . does not apply to permanent injunctions insofar as it provides that the order shall state reasons for its issuance." *Bacon, 443 S.W.2d at 317*. We likewise hold that where the injunction is not ancillary to other relief sought, *rule 683*'s provision requiring the injunction to state the reasons for its issuance in specific terms does not apply. [2]

 **[**7]** However, even should that provision of *rule 683* apply, we hold that the order sufficiently apprized Adust of the reason for its issuance. The order prohibits appellant from permitting itself to operate as a public

health nuisance. Specifically, the trial court found that Adust permitted its patrons to engage in sexual activity which resulted in an unsanitary condition constituting a public health nuisance. We hold the order satisfactorily states the reasons for its issuance. Appellant's first point of error is overruled.

Adust also attacks the trial court's order by way of *rule 683* in its second point of error, claiming the order does not sufficiently specify what appellant is restrained from doing. Specifically, Adust challenges the order's language that it is prohibited from "maintaining an unsanitary condition," and from "tolerating a nuisance to occur within its premises."

*Rule 683*'s requirement that orders be specific in terms and describe in reasonable detail the acts to be restrained applies to permanent injunctions. **HN5** A permanent injunction should not be more comprehensive or restrictive than justified by the pleadings, evidence, and usages of equity. *Thompson v. Thompson* **[**8]** *Air Conditioning & Heating, Inc., 884 S.W.2d 555, 559* (Tex. App.--Texarkana 1994, no writ). The Texas Supreme Court held:

**HN6** An injunction decree must be as definite, clear and precise as possible and when practicable it should inform the defendant of the acts he is restrained from doing, without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further hearing. (Citation omitted). But obviously the injunction must be in broad enough terms to prevent repetition of the evil sought to be stopped, whether the repetition be in form identical to that employed prior to the injunction or (what is far more likely) in somewhat different form calculated to circumvent the injunction as written.

*San Antonio Bar Ass'n v. Guardian Abstract & Title Co., 156 Tex. 7, 15, 291 S.W.2d 697, 702 (1956)*.

The order before us contains nine specific instructions to appellant regarding lighting, signage, and its duties regarding patrons wishing to use the theater and booths. Following these nine detailed instructions are five general instructions that are apparently intended to anticipate repetition of the behavior lending itself to **[**9]**

---

[2]   *State v. Cook United, Inc.*, 464 S.W.2d 105, 107 (Tex. 1971), held that it was not necessary to state in a *temporary injunction* why the applicant would be endangered by probable injury, holding that the statute itself declares the injury, by making sales on Saturday and Sunday a public nuisance. Chief Justice Calvert concurred, but stated the requirement of Rule 683 was mandatory. He was recognizing an exception in cases involving injunctive orders restraining statutorily declared public nuisances.

creation of a public health nuisance in, as the supreme court observed, "somewhat different form calculated to circumvent the injunction." *Id.*

Adust's complaint focuses on two of these general instructions. Specifically, it cites orders number two and three which prohibit Adust "from maintaining an unsanitary condition within its premises at its [*251] place of business" and from permitting "a nuisance to occur on its premises."

The health and safety code defines *HN7* "sanitary" as a condition of good order and cleanliness that precludes the probability of disease transmission." *See TEX. HEALTH & SAFETY CODE ANN. § 341.001(7)* (Vernon 1992). Similarly, *section 341.011* itemizes twelve conditions that constitute public health nuisances, including: (5) sewage, human excreta, . . . or other organic wastes deposited . . . or exposed in such a way as to be a potential instrument or medium in disease transmission to a person or between persons; . . . and (12) an object, place or condition that is possible and probable medium of disease transmission to or between humans." *TEX. HEALTH & SAFETY CODE ANN. § 341.011* (Vernon 1992).

*HN8* When the purpose of an injunction is to protect the public, [**10] the test of required specificity is reasonableness, and in framing the decree, doubt should be resolved against the violator. *Lloyd A. Fry Roofing Co. v. State, 541 S.W.2d 639, 646* (Tex. Civ. App.--Dallas 1976, writ ref'd n.r.e.); *Davies v. Unauthorized Practice Comm. of State Bar of Tex., 431 S.W.2d 590, 595* (Tex. Civ. App.--Tyler 1968, writ ref'd n.r.e.). Given the definitions supplied by statute of "nuisance" and "sanitary conditions," we hold the injunction is reasonably specific.

We overrule appellant's second point of error.

## II. CONSTITUTIONAL ATTACKS

In its third point of error, Adust challenges the injunction as a violation of its right to free speech under the *First Amendment to the U.S. Constitution*. [3] It argues that the constraints imposed by the injunction have a "chilling effect" both on its ability to convey its constitutionally protected message and the right of its customers to receive it. By so doing, Adust is asserting the First Amendment rights of its customers to view adult films.

[**11] The general rule is that *HN9* a party may only assert a violation of its own rights. "However, *HN10* in the First Amendment context, 'litigants . . . are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'" *Virginia v. American Booksellers Ass'n, 484 U.S. 383, 394, 98 L. Ed. 2d 782, 108 S. Ct. 636 (1988)* (quoting *Secretary of State of Md. v. J.H. Munson Co., 467 U.S. 947, 956-57, 81 L. Ed. 2d 786, 104 S. Ct. 2839 (1984))*.

We review an injunction on First Amendment grounds under the same rule as a statute. Adust may assert the constitutionally protected rights of its patrons. [4]

[**12] The State concedes, and we so presume for the purposes of this opinion, that the materials appellant seeks to exhibit are presumptively protected by the *First Amendment to the United States Constitution*. [*252] Appellant argues that the conditions imposed by the trial court infringe upon its free speech rights and those of its customers.

*HN11* Restrictions merely on the time, place, or manner of exercise of free speech rights violate no constitutional protections if sufficiently justified and narrowly enough drawn. The Supreme Court in *Ward v. Rock Against Racism, 491 U.S. 781, 105 L. Ed. 2d 661, 109 S. Ct. 2746 (1989)*, set out the appropriate standard for reviewing restrictions on the time, place or manner of speech:

---

[3] Adust's brief refers to Article I, section 8 of the Texas Constitution, but its argument focuses solely on the ***First Amendment of the United States Constitution***. Consequently, we do not consider the extent to which Article I, section 8 provides an independent basis for the protection of Adust's rights. *See Tilton v. Moye, 869 S.W.2d 955, 958 n.2 (Tex. 1994)*. Points of error not briefed are waived. *Paramount Nat'l. Life Ins. Co. v. Williams*, 772 S.W.2d 255, 263 (Tex. App.--Houston [14th Dist.] 1989, writ denied); *Parker v. TXO Prod. Corp.*, 716 S.W.2d 644, 648 (Tex. App.--Corpus Christi 1986, no writ).

[4] The right to speak freely is meaningless without the corresponding right of a listener to hear what is spoken. The listener's right to receive information is also protected by the First Amendment. *See Kleindienst v. Mandel, 408 U.S. 753, 762, 33 L. Ed. 2d 683, 92 S. Ct. 2576 (1972)*; *Red Lion Broad. v. F.C.C.*, 395 U.S. 367, 390, 23 L. Ed. 2d 371, 89 S. Ct. 1794 (1969); *Thomas v. Collins*, 323 U.S. 516, 534, 89 L. Ed. 430, 65 S. Ct. 315 (1945).

*HN12* The government may impose reasonable restrictions of the time, place, or manner of protected speech, provided restrictions "are [1] justified without reference to the content of the regulated speech, that they are [2] narrowly tailored to serve a significant governmental interest, and that they [3] leave open ample alternative channels for communication of the information."

*Id. at 791* (quoting *Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293,* [**13] *82 L. Ed. 2d 221, 104 S. Ct. 3065 (1984))*. Because the injunction places restrictions on appellant's ability to display presumptively protected materials to its customers, we review the provisions of the injunction under that analysis.

*HN13* Where the acts of the parties are divisible regarding lawful and unlawful conduct, an injunction may not be framed so broadly so as to prohibit the enjoyment of lawful rights. *Kulkana v. Braeburn Valley W. Civic Ass'n, 880 S.W.2d 277, 278* (Tex. App.--Houston [14th Dist.] 1994, no writ). Since appellant presumably has the guaranteed constitutional right to exhibit these materials to adult patrons, the injunction should not prohibit or unduly restrict appellant's free enjoyment of that right.

In addition to the government's interest in sanitation, the government has a significant interest in preventing the spread of sexually-transmitted diseases. *HN14* A city has a substantial interest in regulating sexually-oriented businesses. *City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 89 L. Ed. 2d 29, 106 S. Ct. 925 (1986)*. The State has a significant interest in preventing the spread of sexually transmitted disease through sexual activity on appellant's [**14] premises. *See John Doe v. City of Minneapolis, 898 F.2d 612, 617 (8th Cir. 1990)* (holding that the ordinance at issue in that case advanced the significant governmental interest in combating the spread of the AIDS virus).

*HN15* The standard of review when a trial court grants or denies a permanent injunction is limited to whether the trial court clearly abused its discretion. *Morris v. Collins, 881 S.W.2d 138, 139-40* (Tex. App.--Houston [1st Dist.] 1994, writ denied). We consider whether the trial court could reasonably have reached only one decision, and whether its decision was so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *See Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992)*; *AIG Risk Mgmt., Inc. v. Motel 6 Operating*

*L.P., 960 S.W.2d 301, 308 (Tex. App.--Corpus Christi 1997, no writ)*.

## III. PARTICULAR PROVISIONS

### A. Visibility and lighting

Adust complains about particular requirements of the injunction that apply to visibility of activities on the premises and the adequacy of lighting to assure visibility. Those provisions are the following:

1. Any employee or agent of the Defendant operating or managing [**15] the business shall have a clear view at all times of all events occurring within the premises.

2. The theater shall have adequate lighting at all times that said business is open to the public.

3. The business shall have adequate running lights on the floor of the theater common to commercial theaters.

[*253] 4. The business shall have a lighting system of appropriate degree to allow a sufficient measure of visibility so that, if sexual activity occurs or is about to occur within the premises, whether such activity is by a person alone or with another, such conduct would be obvious and visible to any person managing the business.

The purpose of the injunction is to prevent the unsanitary conditions that have been repeatedly found on the premises. Those conditions are the result of sexual activities throughout the business. By preventing sexual contacts from occurring, it is hoped the areas will be kept sanitary. This paragraph, requiring all areas to be visible to management, is to prevent sexual activity from occurring. Adust argues that sexual activity taking place behind the closed doors of a room, however small, is not illegal. Although that may be correct, such is not speech protected [**16] by the First Amendment. Adust has a right to exhibit films and sexually oriented material under the Constitution, but such right is unrelated to another person's right, if any, to engage in sexual conduct.

*HN16* Sexual activity in public places is prohibited by the Texas Penal Code. *See TEX. PENAL CODE ANN. §§ 21.07*, *21.08* (Vernon 1994). Peep show booths have been held to be public places. *Liebman v. State, 652 S.W.2d 942, 944-45 (Tex. Crim. App. 1983)*. Theaters and retail shops open to the public are public places.

The United States Supreme Court has concluded *HN17* patrons of adult video theaters have no right to anonymity in viewing films. *Paris Adult Theatre v. Slaton, 413 U.S. 49, 65, 37 L. Ed. 2d 446, 93 S. Ct. 2628 (1973)*. In cases dealing with substantially similar issues, similar provisions have withstood challenge. *See Bamon v. City of Dayton, 923 F.2d 470, 473 (6th Cir. 1991); FW/PBS, Inc. v. City of Dallas, 837 F.2d 1298 (5th Cir. 1978)*. This requirement does not affect Adust's ability to sell or lease its films nor its patrons' right to view them. There is nothing improper in those portions of the injunction.

### B. Mandatory Warnings

The next three paragraphs [**17] deal with mandatory warnings to Adust's patrons:

5. The management, including any operators and employees of the Defendant, shall be under a continuing obligation and duty to give verbal notice to any person who enters the premises that any sexual activity, whether by that person alone or with another, is absolutely prohibited.

6. The management, including any operators and employees of the Defendant, shall post and permanently maintain notice in the following locations: on the exterior of the entrance door, at the place where payment is made, at the entrance area to the theater, at the entrance to the peep show booth, on the interior wall of each peep show booth, on each interior wall of the theater, on each interior wall of the business, on the entrance door to each restroom premises [sic], and on each interior wall of each restroom; which shall state that no sexual activity by any person, whether alone or with another, is permitted, allowed or tolerated. The notice shall be sufficient if it substantially states the following:

"WARNING!

No Sexual Activity By Any Person,

Whether Alone Or With Any Other Person,

Is Permitted, Allowed, or Tolerated In or About the Premises.

[**18] Violators Will Be Removed From the Premises,

Will Be Denied Future Entry Onto the Premises And

Will Be Referred To The Police For Criminal Prosecution."

Adust argues that such warnings are bound to have a chilling effect on the [*254] store's patrons, particularly the unsophisticated, and that the warnings do not promote sanitary conditions. The purpose of the injunction is to prohibit the unsanitary conditions that resulted from sexual conduct on the Adust premises. With a view towards eliminating the occasions for sexual conduct, the warning advises the public that such activities are prohibited. These notices do not affect either the ability of Adust to sell or rent its materials or its patrons to purchase them. We find the paragraphs are reasonably designed to further the government's legitimate health interests.

### C. **THE IDENTIFICATION ORDER**

The next paragraph provides:

7. The management, including the operators and all employees of the Defendant, shall give to each person wanting to enter the theater or any peep show booth a written notice that no sexual activity by any person, whether alone or with another, is permitted, allowed or tolerated.

. . .

ENTRY RECEIPT

[**19] I have received written notice of the above Warning. I understand the warning.

The entry receipt requires the potential patron to sign the notice, print his name, and divulge his address, phone and driver's license number. Adust is to maintain the originals on file for no-notice inspection by "appropriate law enforcement authorities." No person is to be allowed into the theater or peep show booth who refuses to sign the entry receipt, and all who enter without signing are to be advised they are committing a trespass. Adust's management is ordered to immediately call law enforcement authorities to enforce the warning and receipt requirements.

While this order does not directly prohibit the exercise of Adust's or its patrons' freedom of speech, *HN18* the First Amendment also protects against government inhibition as well as prohibition. *Lamont v. Postmaster Gen., 381 U.S. 301, 309, 14 L. Ed. 2d 398, 85 S. Ct. 1493 (1965)* (Brennan, J., concurring). *HN19* An identification requirement exerts an inhibitory effect, *Talley v. California, 362 U.S. 60, 64-65, 4 L. Ed. 2d 559,*

*80 S. Ct. 536 (1960)*, and therefore raises First Amendment issues comparable to those raised by direct government imposed **[\*\*20]** prohibitions. *Fabulous Assocs. v. Pennsylvania Pub. Util. Comm'n, 896 F.2d 780, 785 (3d Cir. 1990)*.

The State cites *Pollard v. Cockrell, 578 F.2d 1002, 1015-16 (5th Cir. 1978)*, for authority that obtaining and keeping such permits is rationally related to protecting public health, in that, if contaminants are found, it may be necessary to locate and notify patrons of possible exposure to disease. But Pollard involved a massage parlor and the requirement that a detailed "appointment book" be maintained. The aims of such a list is to keep minors from using such establishments and in preventing patrons from soliciting proscribed sexual contacts. *Id. at 1016*.

The main purpose of such a requirement for Adust is to inhibit potential customers from viewing the sexually-oriented films by their loss of anonymity. The requirement is not a reasonable restriction on Adust's business and it has no rational relationship to the prevention of disease, sexually transmitted or otherwise. The County has not borne its heavy burden of demonstrating that the compelling state interest could not be served by restrictions that are less intrusive on protected forms of expression. *See Sable Communications* **[\*\*21]** *v. F.C.C., 492 U.S. 115, 126, 106 L. Ed. 2d 93, 109 S. Ct. 2829 (1989)*.

Adust's point is sustained and we strike the requirement that patrons complete an entry receipt, giving their names, addresses, and other personal information, as a condition of entry to the theater and peep show booths.

**[\*255]** Because we have stricken the requirement that Adust collect patrons' identification information, we need not consider Adust's complaint that the provision for warrantless inspection of these receipts is improper.

D. **Reporting Requirement**

Adust next complains of the injunction's requirement that:

9. The management, including any operators and employees of the Defendant, upon suspecting or seeing any sexual activity within the premises by any person, whether alone or with another, shall immediately cause the person or persons to stop, cease and desist such activity, and shall immediately call law enforcement authorities to report the commission of such activity.

Adust complains this language requires it to report suspected sexual activity. We agree the paragraph as written is confusing and, to the extent that it imposes a requirement to report suspicions, overly broad. We find the **[\*\*22]** requirement to report violations of the injunction's prohibitions appropriate, however, and cannot conclude this paragraph is not reasonably designed to further the County's interests.

Appellant's point is sustained. The first portion of the paragraph is changed to read, "The management, including any operators and employees of the Defendant, upon detecting any sexual activity within the premises by any person, . . . ."

E. **Random Inspections**

The order requires Adust to "consent to random inspection by the appropriate law enforcement authorities of the State." Adust challenges this provision under the First and Fourth Amendments, to the extent that it authorizes warrantless searches.

*HN20* A warrant is generally required for authorities to search portions of a commercial enterprise that are not open to the public. *See v. City of Seattle, 387 U.S. 541, 543, 18 L. Ed. 2d 943, 87 S. Ct. 1737 (1967)*. *HN21* A warrantless search of commercial premises may be reasonable when the business is "closely regulated." In such a case the privacy interests of the owner are weakened and the government interest in regulating are higher. *New York v. Burger, 482 U.S. 691, 700, 96 L. Ed. 2d 601,* **[\*\*23]** *107 S. Ct. 2636 (1987)*. *HN22* The expectation of privacy that the owner of commercial property enjoys may, in certain circumstances, be adequately protected by regulatory schemes authorizing warrantless inspections. *United States v. Biswell, 406 U.S. 311, 316, 32 L. Ed. 2d 87, 92 S. Ct. 1593 (1972)*.

The Supreme Court has recognized this exception in four industries. *See Burger, 482 U.S. at 703-04* (automobile junkyards); *Donovan v. Dewey, 452 U.S. 594, 598-99, 69 L. Ed. 2d 262, 101 S. Ct. 2534 (1981)* (coal mining)*; Biswell, 406 U.S. at 316* (firearm and ammunition sales); *Colonnade Catering Corp. v. United States, 397 U.S. 72, 25 L. Ed. 2d 60, 90 S. Ct. 774 (1970)* (liquor industry). Lower federal courts and some

state courts have extended the exception to other industries. [5]

[**24] [*256] In *Marshall v. Barlow's, Inc., 436 U.S. 307, 98 S. Ct. 1816, 56 L. Ed. 2d 305 (1978)*, the Court struck down the administrative search provision of section 8(a) of the Occupational Safety and Health Act of 1970 because it failed to tailor the scope and frequency of the inspections to the particular health and safety concerns posed. *Id. at 323*. Also the Act did not provide any standards to guide inspectors in the exercise of their authority to search. *Id.* "**HN23** Where Congress has authorized inspection but made no rules governing the procedures that inspectors must follow, the Fourth Amendment and its various restrictive rules apply." *Colonnade, 397 U.S. at 77*. In such cases, a warrant may be necessary to protect the owner from the "unbridled discretion [of] executive and administrative officers," *Barlow's, 436 U.S. at 323*, by assuring him that reasonable legislative or administrative standards for conducting an inspection are satisfied with respect to a particular establishment. *Camara v. Municipal Ct. of San Francisco, 387 U.S. 523, 538, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967)*.

"**HN24** The regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial [**25] premises that the search is being made pursuant to law and has a properly defined scope, and it must limit the discretion of the inspecting officers."

*Burger, 482 U.S. at 703*.

This provision of the injunction requires appellant to "consent" to random inspections. The vagueness of the order raises certain problems. The order does not limit the "consent" to inspections to be conducted at any time, the scope of the inspection, the area to be inspected, whether the inspection is limited to the business premises of appellant or could extend to other places, or whether appellant's business records are to be included. The absence of conditions on the inspections violates the constitutional requirements for such administrative searches. The injunction must have "a properly defined scope, and it must limit the discretion of the inspecting officers." *Id.* We conclude the provision requiring appellant to consent to inspections by law enforcement officers violates its Fourth Amendment rights. That provision is stricken from the injunction. Adust's point of error is sustained.

We sustain Adust's third point of error, MODIFY the injunction and, as modified, AFFIRM.

J. BONNER DORSEY,

Justice

Opinion [**26] delivered and filed this 20th day of May, 1999.

---

[5]   Warrantless administrative searches have been upheld in the following contexts: commercial fishing, *United States v. Raub, 637 F.2d 1205 (9th Cir. 1980)*; *State v. Mach, 23 Wash. App. 113, 594 P.2d 1361 (1979)*; shipping, *United States v. Espinosa-Cerpa, 630 F.2d 328, 333-34 (5th Cir. 1980)*; pleasure boating, *United States v. Whitmire, 595 F.2d 1303, 1312-13 & n.22 (5th Cir. 1979)*, *cert. denied*, *448 U.S. 906, 65 L. Ed. 2d 1136, 100 S. Ct. 3048 (1980)*; *but cf. United States v. Piner, 608 F.2d 358 (9th Cir. 1979)* (Coast Guard's warrantless safety inspections of small pleasure vessels must be limited to daylight hours unless there is articulable cause for nighttime boarding); water pollution-related activities, *In re State Dep't of Envirl. Protec., 177 N.J. Super. 304, 426 A.2d 534* (N.J. Super., App. Div. 1981); food and drug dealers, *United States v. Schiffman, 572 F.2d 1137 (5th Cir. 1978)*; mining and mineral extraction, *Marshall v. Texoline Co., 612 F.2d 935 (5th Cir. 1980)*; licensed automobile dismantlers, used parts dealers, and second-hand goods dealers, *People v. Woolsey, 90 Cal. App. 3d 994, 153 Cal. Rptr. 746, 749-51 (4th Dist. 1979)*; *State v. Barnett, 389 So. 2d 352 (La. 1980)*; *People v. Tinneny, 99 Misc. 2d 962, 417 N.Y.S.2d 840, 845-46 (1979)*; taverns, *State v. Williams, 84 N.J. 217, 417 A.2d 1046, 1048-50 (1980)* (dictum); and massage parlors, *Pollard v. Cockrell, 578 F.2d 1002, 1014 (5th Cir. 1978)*.

Courts have struck down warrantless administrative inspections in the following contexts: trucking, *United States v. Shaefer, 637 F.2d 200 (3d Cir. 1980)*; residential real estate, *Hometown Co-Op. Apts. v. City of Hometown, 495 F. Supp. 55 (N.D. Ill. 1980)* (point-of-sale inspection); adult book stores, *State v. Huddleston, 412 A.2d 1148, 1156-57 (Del. Super. Ct. 1980)*; and physicians' offices or clinics, *Margaret S. v. Edwards, 488 F. Supp. 181, 214-17 (E.D. La. 1980)*; *Hawaii Psychiatric Soc'y v. Ariyoshi, 481 F. Supp. 1028, 1045-50 (D. Hawaii 1979)*.




Caution
As of: Mar 30, 2015

**Everett Cockrell, Appellant v. Jose Estevez, Appellee**

**No. 04-87-00206-CV**

**COURT OF APPEALS OF TEXAS, Fourth District, San Antonio**

*737 S.W.2d 138*; *1987 Tex. App. LEXIS 8440*

**September 16, 1987, Decided**
**September 16, 1987, Filed**

**PRIOR HISTORY:** [**1] Appeal from the 131st District Court of Bexar County, Trial Court No. 86-CI-18182, Honorable Raul Rivera, Judge Presiding.

**COUNSEL:** Lance E. Houghtling, Attorney for Appellant.

Steven M. Gross, Attorney for Appellee.

**JUDGES:** Rudy Esquivel, Associate Justice, Alfonso Chapa, Associate Justice, Shirley W. Butts, Associate Justice.

**OPINION BY:** BUTTS

**OPINION**

[*139] This is an appeal by writ of error from a default judgment in favor of plaintiff, Juan Estevez. The judgment granted specific performance on a contract to purchase real estate and awarded attorney's fees. In two points of error plaintiff challenges service of process and failure of the default judgment to conform to the pleadings.

Plaintiff's petition misstated the name "Cockrell" as "Cockrall." The name "Cockrell" was properly spelled in the Earnest Money Contract being sued upon which was attached to the petition and incorporated in it by reference. The citation contains the same misspelling of defendant's name but was personally served on him with the petition attached. The defendant failed to answer or appear, and the default judgment was entered.

The judgment referred to the Earnest Money Contract between the [**2] parties as "dated September 18, 1986," when, in fact, the escrow agent dated the instrument on September 16, 1986, and the contract was *executed* on October 15, 1986. The pleadings of the plaintiff set out the date of *execution* as October 15, 1985. The default judgment also referred to and incorporated by reference the original Earnest Money Contract which has the agent's date as well as the correct date of execution.

Almost four months after the judgment was originally signed, an order nunc pro tunc was granted on plaintiff's motion to correct the spelling of the defendant's name.

Plaintiff argues in his first point of error that the default judgment is invalid because the petition, citation and judgment misspelled defendant's name "Everett Cockrall," when the correct spelling is "Everett Cockrell." The second point is that error resulted because of non-conformity between the pleadings and the judgment and that the pleadings describe an earnest money contract dated October 15, 1985, while the judgment describes an earnest money contract dated September 18, 1986.

A petition should serve its designed purpose "to define the issues at trial." *Murray v. O & A Express, Inc.* [**3] *, 630 S.W.2d 633, 636 (Tex. 1982).* In this case the earnest money contract is incorporated and attached

to the petition; it therefore accurately identifies the parties and provides the defendant "information sufficient to enable him to prepare a defense." *Roark v. Allen, 633 S.W.2d 804, 810 (Tex. 1982)*. In addition, we will apply the rule of *idem sonans* [1] because the two spellings [*140] of the name "Cockrell" appear to be nearly indistinguishable by their sounds when pronounced.

> 1 The rule of *idem sonans* is that absolute accuracy in spelling a name is not required in a legal document or proceedings, either civil or criminal; that if a name, as spelled in the document, though different from the correct spelling thereof, conveys to the ear, when pronounced according to the commonly accepted method, a sound practically identical to the correct name as commonly pronounced the name thus given is a sufficient identification of the individual referred to, and no advantage can be taken of the clerical error. *Dingler v. State, 705 S.W.2d 144, 145 (Tex. Crim. App. 1984)*.

[**4] The Texas Supreme Court has approved in practice, the application of the rule of *idem sonans* in civil cases. *Adams v. Grogan-Cochran Lumber Co., 181 S.W.2d 582, 588-89 (Tex. Civ. App. -- Amarillo 1944), aff'd, 186 S.W.2d 677, 143 Tex. 490 (1945)*. When an intended defendant is sued under an incorrect name, jurisdiction is proper after service on the defendant under the misnomer, but it must be clear that no one was misled. *Orange Grove Independent School District v. Rivera, 679 S.W.2d 482, 483 (Tex. 1984), Adams v. Consolidated Underwriters, 133 Tex. 26, 124 S.W.2d 840, 841 (1939)*.

A misnomer of a defendant does not render a judgment based on personal service, even one by default, void, provided the intention to sue the defendant actually served with citation is so evident from the pleadings and process that the defendant could not have been misled. R. McDONALD, TEX. CIV. PRACTICE § 6.04.1 (1982).

It is significant that the defendant does not raise an issue of mistake in identity or lack of service or of improper service under the rules but raises only the claim that the improper spelling of his name voids the citation. The fact that defendant was personally [**5] served with citation distinguishes the case at hand from the cases relied upon by him. Two of those cases dealt not with personal citation but with citation by publication and citation by mail. *Mega v. Anglo Iron & Metal Co. of Harlingen, 601 S.W.2d 501 (Tex. Civ. App. -- Corpus Christi 1980, no writ); Fleming v. Hernden, 564 S.W.2d 157 (Tex. Civ. App. -- El Paso 1978, writ ref'd n.r.e.)*. In *Nail v. Gene Biddle Feed Co., Inc., 347 S.W.2d 830 (Tex. Civ. App. -- Beaumont 1961, no writ)*, two different individuals were involved, a father and a son, the

citation named the son but the father was served. *Zimmerman v. First National Bank of Bowie, 235 S.W.2d 720 (Tex. Civ. App. Fort Worth 1950, writ ref'd n.r.e.)* concerned a writ of garnishment issued under a different name from the judgment upon which it was based. Again, substantially different situations from that of the present case.

The purpose of citation is to give the court proper jurisdiction of the parties and to provide notice to the defendant that he has been sued and by whom and for what so that due process will be served and he will have an opportunity to appear and defend the action. *Sgitcovich v. Sgitcovich* [**6] *, 150 Tex. 398, 241 S.W.2d 142, 146 (1951), cert. denied, 342 U.S. 903, 72 S. Ct. 291, 96 L. Ed. 676 (1952), Stephenson v. Corporate Services, Inc., 650 S.W.2d 181, 184 (Tex. App. -- Tyler 1983, writ ref'd n.r.e.), Bozeman v. Arlington Heights Sanitarium, 134 S.W.2d 350, 351-52 (Tex. Civ. App. -- Dallas 1939, writ ref'd)*. We hold that the misspelling of the defendant's name in the citation does not invalidate service of process. If defendant's misspelled name in the citation or return does not invalidate service of process, neither does such error require reversal of a default judgment. *Salazar v. Tower, 683 S.W.2d 797, 799 (Tex. App. -- Corpus Christi 1984, no writ); Popkowsi v. Gramza, 671 S.W.2d 915, 917-18 (Tex. App. -- Houston [1st Dist.] 1984, no writ)*.

As discussed above, there is no issue raised of lack of service of citation on the intended defendant "Everett Cockrell," nor does defendant claim he was misled by the misspelling of his name in this case. Since defendant was the proper one to be served with citation and was not misled by the error in the spelling of his name, the record does not reflect invalid service of process. *Consolidated Underwriters,* [**7] *supra, 124 S.W.2d at 841*. Appellant's first point of error is overruled.

We find that the judgment in this case properly conforms to the pleadings, from which the court can determine the elements of plaintiff's cause of action and identify the relief sought. Mere formalities, minor defects, or technical insufficiencies will not invalidate a default judgment [*141] where the petition states a cause of action and gives "fair notice" to the opposing party of the relief sought. *Stoner v. Thompson, 578 S.W.2d 679, 682-83 (Tex. 1979)*. In a similar case it was held that discrepancies in dates were clerical errors and could not have surprised the defendant or prejudiced his rights. *Pace Sports, Inc. v. Davis Brothers Publishing Co., 508 S.W.2d 493, 494 (Tex. Civ. App. -- Waco 1974), aff'd, 514 S.W.2d 247 (Tex. 1974)*.

The earnest money contract for which specific performance was sought in this case was attached to plaintiff's petition and was incorporated in the petition and

also in the judgment by reference. When an inspection of an exhibit referred to in the pleadings shows facts contradictory to the pleadings, the exhibit, not the allegation of the pleadings, [**8] must control. *Paul v. Houston Oil Co. of Texas, 211 S.W.2d 345, 353-54* (Tex. Civ. App. -- Waco 1948, writ ref'd n.r.e.). The agent's date on the earnest money contract, appears to be September 16, 1986. It is obviously this date to which the judgment refers when describing the contract as dated on September 18, 1986. The same reasoning applies as to the discrepancy in the date of execution. Although the trial court did not act on the matter of the dates, the error is merely clerical and is subject to correction by the court at any time. *See Universal Underwriters Ins. Co. v. Fergu-son, 471 S.W.2d 28 (Tex. 1971), Williams v. Pitts, 251 S.W.2d 148, 151 Tex. 408 (1952).* The court did enter an order nunc pro tunc correcting the spelling of the defendant's name almost four months after the original judgment. This was within the trial court's authority. Since both the petition and the judgment reference the earnest money contract, and since the petition seeks and the judgment orders specific performance on the contract and attorney's fees, there is no variance between the petition and the judgment. The second point of error is overruled.

The judgment in the trial court is [**9] affirmed.



1 of 1 DOCUMENT


Caution
As of: Mar 30, 2015

**COLOR SMART, INC. and Rodrigo Garcia, Individually, Appellants v. Larry LITTLE, Jr., Appellee**

**No. 04-00-00294-CV**

**COURT OF APPEALS OF TEXAS, FOURTH DISTRICT, SAN ANTONIO**

*2001 Tex. App. LEXIS 6913*

**October 17, 2001, Delivered**
**October 17, 2001, Filed**

**NOTICE:** [*1] PURSUANT TO THE TEXAS RULES OF APPELLATE PROCEDURE, UNPUBLISHED OPINIONS SHALL NOT BE CITED AS AUTHORITY BY COUNSEL OR BY A COURT.

**PRIOR HISTORY:** From County Court at Law No. 3, Bexar County, Texas. Trial Court No. 254616. Honorable Irene Rios, Judge Presiding.

**DISPOSITION:** Affirmed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellants, a lessee and his company, filed a restricted appeal from a default judgment for $ 58,390 plus $ 4,000 attorney's fees rendered against them, arising out of a suit for breach of a lease agreement brought by appellee, lessor, in County Court at Law No. 3, Bexar County, Texas.

**OVERVIEW:** The lessee contended the trial court erred in rendering a default judgment because (1) citation was not served by a person authorized under *Tex. R. Civ. P. 103*; (2) the return of citation was defective because the verifications were defective; and (3) the return of citation was defective because his last name was misspelled on it. The parties did not dispute lessee's entitlement to bring a restricted appeal but disagreed regarding whether he was properly served. Because the list of authorized private process servers was on file with the clerks of the district and county courts, the appellate court took judicial notice of it and considered it to be part of the papers on file in the appeal. The returns were properly acknowledged before a notary public, thus they were not defective. The lessee's name was not actually misspelled, but the last letter was cut off. It was inconsequential.

**OUTCOME:** The default judgment was affirmed.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pretrial Judgments > Default > Default Judgments*
*Civil Procedure > Appeals > Records on Appeal*
[HN1] A restricted appeal is a direct attack on a judgment. A direct attack on a judgment must: (1) be brought within six months after the trial court signs the judgment; (2) by a party to the suit; (3) who did not participate in the actual trial; and (4) the error complained of must be apparent from the face of the record. The face of the record consists of all the papers on file in the appeal, including the statement of facts. For a default judgment to withstand a direct attack, strict compliance with the Texas Rules of Civil Procedure regarding the issuance of citation, the manner and mode of service, and the return of process must be shown on the face of the record. No presumptions in favor of valid issuance, service, and

return are made, and the record must affirmatively show strict compliance with the rules.

*Civil Procedure > Pleading & Practice > Service of Process > General Overview*
[HN2] *Tex. R. Civ. P. 107* provides that the return of citation by an authorized person "shall be verified" but does not specify the manner of verification. "Verified" for purposes of *rule 107* is defined as acknowledgment of the instrument before a notary public.

*Civil Procedure > Pleading & Practice > Service of Process > General Overview*
[HN3] Strict compliance does not require "obeisance to the minutest detail." Spelling errors too minor to raise any doubt that the correct person was served are insufficient to invalidate service.

**COUNSEL:** APPELLANT ATTORNEY: Kelly K. McKinnis, Attorney At Law, McAllen, TX. Ruben Ramirez, Law Office Of Ruben Ramirez, McAllen, TX.

APPELLEE ATTORNEY: J. Philip Collier, Law Offices Of J. Philip Collier, San Antonio, TX.

**JUDGES:** Opinion by: Catherine Stone, Justice. Sitting: Alma L. Lopez, Justice, Catherine Stone, Justice, Karen Angelini, Justice.

**OPINION BY:** Catherine Stone

**OPINION**

This is a restricted appeal from a default judgment for $ 58,390.61 plus $ 4,000 attorney's fees rendered against appellants Color Smart, Inc. and Rodrigo Garcia (collectively, Garcia) arising out of a suit for breach of a lease agreement brought by appellee Larry Little.

[HN1] A restricted appeal is a direct attack on a judgment. *Bautista v. Bautista, 9 S.W.3d 250, 251* (Tex. App.--San Antonio 1999, no pet.). A direct attack on a judgment must: (1) be brought within six months after the trial court signs the judgment; (2) by a party to the suit; (3) who did not participate in the actual trial; and (4) the error complained of must be apparent from the face of the record. *Norman Communications v. Texas Eastman Co., 955 S.W.2d 269, 270 (Tex. 1997).* [*2] The face of the record consists of all the papers on file in the appeal, including the statement of facts. *Id.* For a default judgment to withstand a direct attack, strict compliance with the Texas Rules of Civil Procedure regarding the issuance of citation, the manner and mode of service, and the return of process must be shown on the face of the

record. *Bautista, 9 S.W.3d at 251*. No presumptions in favor of valid issuance, service, and return are made, and the record must affirmatively show strict compliance with the rules. *Id.*

In three points of error, Garcia contends the trial court erred in rendering a default judgment because (1) citation was not served by a person authorized under *Rule 103 of the Rules of Civil Procedure*; (2) the return of citation was defective because the verifications were defective; and (3) the return of citation on Rodrigo Garcia was defective because it shows citation was served on Rodrigo "Garci." The parties do not dispute Garcia's entitlement to bring a restricted appeal [1] but disagree regarding whether he was properly served.

> 1    It is evident from the record that Garcia is a party to the appeal, did not appear or file any motions, and brought the restricted appeal within six months after the judgment was signed.

[*3]   In point of error one, Garcia contends the person who served him was not authorized by law. Service is permitted by any person "authorized by law or by written order of the court who is not less than eighteen years of age." *TEX. R. CIV. P. 103(2)*. He contends there is error on the face of the record because the record does not contain a written order authorizing Beatrice Cantu to serve process. Little refers this court to the approved list of process servers on file with the Bexar County District Clerk and Bexar County Clerk; Beatrice Cantu's name appears on this list. Little contends there is no authority requiring that the record in each case must independently establish the authority of the private process server, and that *Rule 103* does not require it. We agree, and decline to impose such a condition. Because the list of authorized private process servers is on file with the clerks of the district and county courts, we take judicial notice of it and consider it to be part of the papers "on file in the appeal." *See Norman Communications, 955 S.W.2d at 270.*

We overrule point of error one.

In point of error two, Garcia challenges the manner in which the returns [*4] of citation are verified, arguing they are defective because there is no basis to show how the person verifying the return has personal knowledge of its facts, nor is there any mention of the name of the person who is verifying the return. [HN2] *Rule 107* provides that the return of citation by an authorized person "shall be verified" but does not specify the manner of verification. *See TEX. R. CIV. P. 107.* "Verified" for purposes of *Rule 107* is defined as "acknowledgment of the instrument before a notary public." *See Bautista, 9 S.W.3d at 251*. The returns of service

here are properly acknowledged before a notary public, thus they are not defective in this regard.

We overrule point of error two.

In point of error three, Garcia contends that service was ineffective because one service was directed to "Rodrigo Garcia" but was served on "Color Smart, Inc. to registered agent Rodrigo Garcia" and the other was directed to "Rodrigo Garcia" but served on "Rodrigo Garci." The authority cited by Garcia is distinguishable because, unlike the case before us, the defendants were not personally served with citation. The petition served with the citation shows Color Smart, Inc. and [*5] Rodrigo Garcia as the defendants. We see no error in directing service to Color Smart's registered agent, Rodrigo Garcia, as was done here. We also see no error in the return showing personal service on Rodrigo "Garci." The margins of original papers are frequently cut off when copies are made; that appears to be what happened here--i.e.,

the final "a" in Garcia was cut off. Even if the original return actually shows "Garci" we are not persuaded this is error. Rodrigo Garcia's name is correctly spelled in the petition and in the notice of citation; it is only misspelled, if at all, in the return. [HN3] Strict compliance does not require "obeisance to the minutest detail." *Herbert v. Greater Gulf Coast Enters., Inc., 915 S.W.2d 866, 871* (Tex. App.--Houston [1st Dist.] 1995, no writ). Spelling errors too minor to raise any doubt that the correct person was served are insufficient to invalidate service. *Ortiz v. Avante Villa at Corpus Christi, Inc., 926 S.W.2d 608, 613* (Tex. App.--Corpus Christi 1996, writ denied); *McDonough v. Williamson, 742 S.W.2d 737, 740* (Tex. App.--Houston [14th Dist.] 1987, no writ).

We overrule point of error [*6] three.

We affirm the default judgment.

Catherine Stone, Justice

## *Cont'l Cas. Co. v. Guzman*

Court of Appeals of Texas, Fourth District, San Antonio

January 21, 2009, Delivered; January 21, 2009, Filed

No. 04-07-00589-CV

**Reporter**

2009 Tex. App. LEXIS 338; 2009 WL 136926

CONTINENTAL CASUALTY COMPANY, Appellant v. Rudolph GUZMAN, Appellee

**Subsequent History:** Petition for review denied by *Cont'l Cas. Co. v. Guzman, 2009 Tex. LEXIS 606 (Tex., Aug. 21, 2009)*

**Prior History:** [*1] From the 45th Judicial District Court, Bexar County, Texas. Trial Court No. 2006-CI-07475. Honorable John D. Gabriel, Jr., Judge Presiding.

**Disposition:** AFFIRMED.

## Core Terms

default judgment, bill of review, amended petition, workers' compensation, original petition, face of the record, registered agent, requirements, damages, pet, trial court, jurisdictional, allegations, proceedings, diligence, contends, notice

## Case Summary

### Procedural Posture

Appellant insurance carrier filed a restricted appeal to challenge a decision from the 45th Judicial District Court, Bexar County, Texas, which granted a bill of review to appellee benefit claimant after a default judgment was entered in favor of the carrier in a workers' compensation case.

### Overview

A no-answer default judgment reversed and set aside a decision in a workers' compensation case. The claimant then filed a petition for a bill of review, but no answer was filed. A default judgment was entered, and the carrier then filed a restricted appeal. In affirming, the appellate court determined that there were four elements that had to be met for a restricted appeal under *Tex. R. App. P. 30*. There was no error on the face of the record because service of an amended petition was not required since no new causes of action were pled. The claimant did not have to show the element of due diligence in relation to his bill of review because he was contending that substituted service was invalid. There was sufficient proof in the record that the carrier was served and that the trial court had jurisdiction. Also, the claimant was required to file his bill of review petition in the same court where the default judgment was taken. The trial court did not err in failing to hear evidence before granting a default in favor of the claimant, and he was not required to comply with *Tex. Lab. Code Ann. §§ 410.258*, *410.253(b)* (2006). Finally, the return of citation did not have to be verified.

### Outcome

The decision was affirmed.

## LexisNexis® Headnotes

Civil Procedure > Appeals > Notice of Appeal

Civil Procedure > Appeals > Reviewability of Lower Court Decisions > Timing of Appeals

*HN1* In order to prevail in a restricted appeal, a party must establish the following: (1) it filed notice of the restricted appeal within six months after the final judgment was signed; (2) it was a party to the underlying litigation; (3) it did not participate in the underlying proceedings and did not timely file any post-judgment motions; and (4) error is apparent on the face of the record. *Tex. R. App. P. 26.1(c)*, *30*.

Civil Procedure > ... > Pleadings > Amendment of Pleadings > General Overview

Civil Procedure > ... > Pleadings > Service of Process > General Overview

Civil Procedure > ... > Default & Default Judgments > Default Judgments > Entry of Default Judgments

*HN2* In the context of a default judgment, Caprock follows the general rule that only an amended petition that seeks a more onerous judgment requires new service.

Civil Procedure > Judgments > Relief From Judgments > Bills of Review

*HN3* In order to prevail on a bill of review, a petitioner must prove (1) a meritorious defense (2) that he was prevented from making by fraud, accident, or wrongful act of the opposing party or official mistake (3) without any fault or negligence of his own. However, a defendant who is not served with process is entitled to a bill of review without a further showing, because the Constitution discharges the first element, and lack of services establishes the second and third. And, traditionally, a petitioner must also show he exercised due diligence to pursue all adequate legal remedies against a former judgment. But, while diligence is required from properly served parties or those who have appeared, those who have not been served have no duty to act, diligently or otherwise.

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Default Judgments

*HN4* A default judgment on an unliquidated claim admits all allegations of fact alleged in the petition except the amount of damages.

Civil Procedure > Preliminary Considerations > Jurisdiction > General Overview

Civil Procedure > ... > Service of Process > Proof of Service > General Overview

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Default Judgments

Civil Procedure > Appeals > Record on Appeal

*HN5* Jurisdictional facts must affirmatively appear on the face of the record for a default judgment to withstand scrutiny. For jurisdictional facts to affirmatively appear on the face of the record, the record must show the following: (1) the pleadings must allege facts that, if true, would make the defendant responsible to answer; and (2) there must be proof in the record that the defendant was, in fact, served in the manner required by statute. However, when a defendant has not answered, a trial court acquires jurisdiction solely on proof of proper service. *Tex. R. Civ. P. 107* prohibits the rendition of a default judgment unless proof of service and return have been on file with clerk for ten days. Further, the majority of courts of appeals have held that a recital in a petition that names a person or entity as the registered agent for service on the defendant is prima facie evidence of that fact.

Civil Procedure > Preliminary Considerations > Venue > Special Venue

Workers' Compensation & SSDI > Administrative Proceedings > Judicial Review > General Overview

*HN6* The statutory venue requirements set forth in the Texas Workers' Compensation Act provide that suit for judicial review of a Texas Workers Compensation Commission decision must be filed in the county where the employee resided at the time of injury. *Tex. Lab. Code Ann. § 410.252(b)(1)* (2006).

Civil Procedure > Preliminary Considerations > Jurisdiction > General Overview

Civil Procedure > Preliminary Considerations > Venue > General Overview

Civil Procedure > Judgments > Relief From Judgments > Bills of Review

*HN7* A bill of review is a direct attack on a previous trial court's judgment. And, a direct attack, which is brought for the purpose of correcting a presumably incorrect former judgment, may only be brought in the court rendering the judgment. This is a jurisdictional requirement, not merely a matter of venue.

Civil Procedure > ... > Default & Default Judgments > Default Judgments > Entry of Default Judgments

*HN8* *Tex. R. Civ. P. 241* and *243* set forth the evidentiary requirements for default judgment proceedings. *Rule 241* provides that when a default judgment is rendered, and the claim is liquidated and proved by an instrument in writing, the court shall assess damages. There is no requirement under *Rule 241* for an evidentiary hearing to be held. *Rule 243* provides that when a cause of action is unliquidated or not proved by an instrument in writing, the court shall hear evidence as to damages.

Workers' Compensation & SSDI > Administrative Proceedings > Judicial Review > General Overview

*HN9* See *Tex. Lab. Code Ann. § 410.258(a)*, *(f)* (2006).

Workers' Compensation & SSDI > Administrative Proceedings > Judicial Review > General Overview

**HN10** *Tex. Lab. Code Ann. § 410.258* states that the Texas Workers Compensation Commission should receive advance notice of the attack on its decision so that the Commission may have thirty days to intervene in the judicial proceedings. *§ 410.258(c)*.

Workers' Compensation & SSDI > Administrative Proceedings > Judicial Review > General Overview

**HN11** The Court of Appeals of Texas, Fourth District, San Antonio, interprets *Tex. Lab. Code Ann. § 410.258* to mean that only a party who has initiated a proceeding under the Texas Labor Code is subject to its filing requirements.

Evidence > Inferences & Presumptions > Presumptions

Governments > Legislation > Interpretation

**HN12** In interpreting a statute, courts must look to its plain and common meaning and presume that the legislature intended the plain meaning of its words.

Workers' Compensation & SSDI > Administrative Proceedings > Judicial Review > General Overview

**HN13** See *Tex. Lab. Code Ann. § 410.253*.

Workers' Compensation & SSDI > Administrative Proceedings > Judicial Review > General Overview

**HN14** *Tex. Lab. Code Ann. § 410.253* applies only to a party seeking judicial review of a final Texas Workers Compensation Commission decision.

Governments > Courts > Clerks of Court

Governments > Local Governments > Employees & Officials

**HN15** District clerks, like sheriffs and constables, are considered "officers" -- persons who, by virtue of their offices, are not required to verify returns.

**Counsel:** For APPELLANT: Deanne C. Ayers, Julie B. Tebbets, Ayers & Ayers, Colleyville, TX.

For APPELLEE: Israel M. Reyna, Texas Riogrande Legal Aid, Inc., Laredo, TX.

**Judges:** Opinion by: Karen Angelini, Justice. Sitting: Karen Angelini, Justice Phylis J. Speedlin, Justice Steven C. Hilbig, Justice.

**Opinion by:** Karen Angelini

# Opinion

### MEMORANDUM OPINION

AFFIRMED

This is a restricted appeal arising out of a default judgment that was entered in a bill of review case. We affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Rudolph Guzman filed a workers' compensation claim, asserting he had sustained an injury in the course of his employment. After holding hearings, the Texas Workers Compensation Commission ("TWCC") determined Guzman had indeed sustained a compensable injury for which Continental Casualty Company is liable. Continental then appealed the TWCC decision to a Bexar County district court. Continental then obtained a no-answer default judgment against Guzman that reversed and set aside the TWCC decision entitling Guzman to workers' compensation benefits. After [*2] discovering a default judgment had been taken against him, Guzman filed an "Original Petition for Bill of Review" in the Bexar County district court seeking to set aside the default judgment against him. Guzman served Continental through the CT Corporation, which Guzman alleged in his original petition to be Continental's registered agent for service. Continental did not file an answer to the suit. Thereafter, Guzman filed a "First Amended Original Petition for Bill of Review"; however, he did not serve Continental with the amended petition. Guzman then filed a motion for default judgment, which was granted by the trial court based upon the amended petition. Continental did not participate in the proceedings, nor were the proceedings recorded by a court reporter. Upon discovering that a default judgment had been taken against it, Continental filed this restricted appeal.

### RESTRICTED APPEAL

*A. Standard of Review*

**HN1** In order to prevail in its restricted appeal, Continental must establish the following: (1) it filed notice of the restricted appeal within six months after the final judgment was signed; (2) it was a party to the underlying litigation; (3) it did not participate in the

underlying [*3] proceedings and did not timely file any post-judgment motions; and (4) error is apparent on the face of the record. *TEX. R. APP. P. 26.1(c)*, *30*; *Alexander v. Lynda's Boutique, 134 S.W.3d 845, 848 (Tex. 2004)*. The only issue in this restricted appeal concerns whether error is apparent on the face of the record.

### B. Service of Amended Petition

Continental contends that the failure of Guzman to serve it with the amended petition amounts to error apparent on the face of the record. To support this contention, Continental relies on *Caprock Construction Co. v. Guaranteed Floorcovering, Inc., 950 S.W.2d 203 (Tex. App.--Dallas 1997, no writ)*. In *Caprock*, as in this case, the plaintiff served the defendant with the original petition, but did not serve the defendant with the amended petition before taking a default judgment. *Id. at 204*. The Dallas Court of Appeals concluded that, in order for the default judgment to be upheld, the plaintiff was required to serve the defendant with the amended petition. *Id. at 205*. In so holding, the court noted that the amended petition named an additional plaintiff, thus exposing the defendant to additional liability. *Id.*

Later-decided cases have distinguished *Caprock's* [*4] holding and refused to set aside default judgments where the amended petition did not expose the defendant to additional liability. In *Rose v. Rose, 117 S.W.3d 84, 91 (Tex. App.--Waco 2003, no pet.)*, the Waco Court of Appeals noted that **HN2** *Caprock* followed the general rule that only an amended petition that seeks a more onerous judgment requires new service. And, in *Palomin v. Zarsky Lumber Co., 26 S.W.3d 690, 694 (Tex. App.--Corpus Christi 2000, pet. denied)*, the Corpus Christi Court of Appeals similarly distinguished *Caprock*, by explaining that service was held to be improper in *Caprock* because the amended pleading exposed the defendant to additional liability.

In this case, Continental argues that Guzman's amended petition adds allegations of extrinsic fraud, failure to execute official duties, and lack of adequate legal remedy. Although the amended petition did, in fact, contain these additional factual allegations, no new causes of action were pled. Thus, the amended petition did not seek a more onerous judgment than the original petition. Both the original petition and the amended petition requested that the trial court grant the petition for bill of review, order a new trial, and [*5] set aside the default judgment against Guzman. Therefore,

Guzman was not required to serve the amended petition on Continental before taking the default judgment.

### C. Bill of Review Elements

Continental argues that Guzman did not meet all elements of a bill of review. More particularly, Continental contends the record does not show Guzman exercised due diligence.

**HN3** In order to prevail on a bill of review, a petitioner must prove (1) a meritorious defense (2) that he was prevented from making by fraud, accident, or wrongful act of the opposing party or official mistake (3) without any fault or negligence of his own. *Ross v. Nat'l Ctr. for the Employment of the Disabled, 197 S.W.3d 795, 797 (Tex. 2006)*. However, "a defendant who is not served with process is entitled to a bill of review without a further showing, because the Constitution discharges the first element, and lack of services establishes the second and third." *Id*. And, traditionally, a petitioner must also show he exercised due diligence to pursue all adequate legal remedies against a former judgment. *King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003)*. But, while diligence is required from properly served parties or those [*6] who have appeared, those who have not been served have no duty to act, diligently or otherwise. *Ross, 197 S.W.3d at 798*.

**HN4** A default judgment on an unliquidated claim admits all allegations of fact alleged in the petition except the amount of damages. *Morgan v. Compugraphic Corp., 675 S.W.2d 729, 731 (Tex. 1984)*. Because Continental failed to answer the bill of review petition and Guzman was awarded a default judgment, all assertions made in the petition are thus admitted as fact. Guzman pled in the bill of review proceeding that the substituted service in the underlying workers' compensation suit filed by Continental violated his right to constitutional due process because he was not properly served. Guzman also alleged that he was not properly served because Continental either fraudulently or mistakenly misinformed the court regarding Guzman's street addresses for the purpose of serving him in the underlying suit. Thus, the substituted service was invalid, and Guzman's default judgment on his amended petition stands without proof of the other elements of the bill of review. *See id*. And, because the record shows that Guzman did not know of the suit or the default judgment in time to [*7] file an answer, a motion for new trial, or an appeal, he had no duty to act

diligently. *See Ross, 197 S.W.3d at 798*.

*D. Jurisdiction*

Continental alleges jurisdiction is not shown because Guzman's original petition did not plead that Continental is the workers' compensation carrier for Guzman or that it engaged in business in Texas. Continental also complains that there was no evidence that C.T. Corporation was the registered agent for service for Continental or that C.T. Corporation forwarded the service to Continental.

*HN5* Jurisdictional facts must affirmatively appear on the face of the record for a default judgment to withstand scrutiny. *McKanna v. Edgar, 388 S.W.2d 927, 929-30 (Tex. 1965)*. For jurisdictional facts to affirmatively appear on the face of the record, the record must show the following: (1) the pleadings must allege facts that, if true, would make the defendant responsible to answer; and (2) there must be proof in the record that the defendant was, in fact, served in the manner required by statute. *Whitney v. L & L Realty Corp., 500 S.W.2d 94, 95-96 (Tex. 1973)*. However, when a defendant has not answered, a trial court acquires jurisdiction solely on proof of proper service. [*8] *Furst v. Smith, 176 S.W.3d 864, 868 (Tex. App.--Houston [1st Dist.] 2005, no pet.)*; *see TEX. R. CIV. P. 107* (prohibiting rendition of default judgment unless proof of service and return have been on file with clerk for ten days). Further, the majority of courts of appeals have held that a recital in a petition that names a person or entity as the registered agent for service on the defendant is prima facie evidence of that fact. *See, e.g., Conseco Fin. Servicing v. Klein Indep. Sch. Dist., 78 S.W.3d 666, 672 (Tex. App.--Houston [14th Dist.] 2002, no pet.)*; *K-Mart Apparel Fashions Corp. v. Ramsey, 695 S.W.2d 243, 246 (Tex. App.--Houston [1st Dist.] 1985, writ ref'd n.r.e.)*; *Cox Mktg. v. Adams, 688 S.W.2d 215, 218 (Tex. App.--El Paso 1985, no writ)*.

We find sufficient proof in the record that Continental was served properly and that the court had jurisdiction. In his original petition for bill of review, Guzman alleged that Continental "is a corporation authorized to engage in the business of workers compensation insurance as defined by the Texas Workers' Compensation Act and as allowed by the State Agency." And, Guzman alleged that Continental had filed suit in Bexar County against him, [*9] claiming the TWCC's final decision that he, a workers' compensation claimant, was entitled to workers' compensation benefits should be reversed.

Further, Guzman pled that an improper default judgment had been taken against him. Guzman also set forth that Continental "may be served with process by serving its registered agent as follows: CT Corporation System, 350 North St. Paul Street, Dallas, Texas 75201."

The record contains a notice and citation, with accompanying petition for bill of review, issued by the Bexar County District Clerk, that was directed to CT Corporation System as registered agent of Continental. The record further shows that the notice and citation were served on Continental through its registered agent, CT Corporation System, by certified mail, return receipt requested. The officer's return indicates the citation was executed. We conclude that Guzman's allegations and the proof of service contained in the record are sufficient to satisfy the jurisdictional requirements.

*E. Venue*

Continental contends that Guzman was required to comply with *HN6* the statutory venue requirements set forth in the Texas Workers' Compensation Act, which provide that suit for judicial review [*10] of a TWCC decision must be filed in the county where the employee resided at the time of injury. *See TEX. LAB. CODE ANN. § 410.252(b)(1)* (Vernon 2006). And, according to Continental, because the face of the record does not establish that Guzman resided in Bexar County at the time of injury, the bill of review default judgment should be reversed.

*HN7* A bill of review, however, is a direct attack on a previous trial court's judgment. *Pursley v. Ussery, 937 S.W.2d 566, 567 (Tex. App.--San Antonio 1996, no writ)*. And, a direct attack, which is brought for the purpose of correcting a presumably incorrect former judgment, may only be brought in the court rendering the judgment. *Id. at 567-68*. This is a jurisdictional requirement, not merely a matter of venue. *Id. at 568*.

Significantly, we note that the initial suit involving this workers' compensation claim, which was an appeal of the TWCC decision in Guzman's favor, was filed by Continental in Bexar County. Because, as a jurisdictional matter, Guzman was required to file his bill of review petition in the same court in which the default judgment was taken, there is no need for the face of the record to reflect Guzman's county of residence [*11] at the time of the injury.

*F. Sufficiency of the Record*

Continental also argues that the record from the bill of review proceeding is incomplete and, therefore, amounts to reversible error. Specifically, Continental complains that no reporter's record was taken during the proceeding, and the clerk's record contains no affidavits or evidence supporting the granting of Guzman's bill of review.

*HN8* *Texas Rules of Civil Procedure 241* and *243* set forth the evidentiary requirements for default judgment proceedings. *See* *TEX. R. CIV. P. 241*, *243*. *Rule 241* provides that when a default judgment is rendered, and the claim is liquidated and proved by an instrument in writing, the court shall assess damages. *TEX. R. CIV. P. 241*. There is no requirement under *Rule 241* for an evidentiary hearing to be held. *Rule 243* provides that when a cause of action is unliquidated or not proved by an instrument in writing, the court shall hear evidence as to damages. *See* *TEX. R. CIV. P. 243*. Guzman's petition did not seek relief for damages, but rather requested that the default judgment rendered against him be set aside and vacated and that a new trial be granted. The judgment entered in Guzman's favor granted the **[*12]** relief requested. Thus, this case is akin to a suit for liquidated damages as opposed to unliquidated damages for which an evidentiary hearing would be required; therefore, the trial court did not err in failing to hear evidence before granting default judgment in Guzman's favor.

*G. Compliance with Labor Code*

Continental argues that Guzman's failure to produce evidence of compliance with *Section 410.258 of the Texas Labor Code* renders the trial court's judgment granting the bill of review void. *Section 410.258* provides, in part, the following:

> *HN9* (a) *The party who initiated a proceeding under this subchapter or Subchapter G* must file any proposed judgment . . ., including a proposed default judgment, with the division not later than the 30th day before the date on which the court is scheduled to enter the judgment . . . .
>
> (f) A judgment entered . . . without complying with the requirements of this section is void.

*TEX. LAB. CODE ANN. § 410.258(a)*,*(f)* (Vernon 2006) (emphasis added). *HN10* *Section 410.258* also states that the TWCC should receive advance notice of the attack on its decision so that the commission may have

thirty days to intervene in the judicial proceedings. *Id*. *§ 410.258(c)*; *see* *Casillas v. State Office of Risk Mgmt., 146 S.W.3d 735, 738 (Tex. App.--El Paso 2004, no pet.)* **[*13]** .

*HN11* We interpret *Section 410.258* to mean that only a party who has initiated a proceeding under the Labor Code is subject to its filing requirements. *See* *Nat'l Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527 (Tex. 2000)* (holding that *HN12* in interpreting a statute, courts must look to its "plain and common meaning" and "presume that the Legislature intended the plain meaning of its words."). Here, it was Continental, not Guzman, that "initiated a proceeding" under the statute when it filed its appeal of the TWCC decision in the district court. There is nothing in the statute requiring a party seeking review of a default judgment in a bill of review proceeding to notify the TWCC of the attack on the trial court's action. Guzman's bill of review does not attack the TWCC decision, but rather requests that the default judgment entered in favor of Continental be set aside so the parties may return to the trial court to resolve Continental's initial appeal of the TWCC decision. Thus, Guzman's bill of review was not an initiation of a proceeding under the Labor Code, and he was not required to comply with *Section 410.258*.

Similarly, **[*14]** Continental contends the trial court lacked jurisdiction to enter the default judgment against it in the bill of review proceeding because Guzman failed to comply with *Section 410.253 of the Texas Labor Code*. That section provides the following:

> *HN13* A party may not seek judicial review under Section 410.251 unless the party has provided written notice of the suit to the division as required by this section.

*TEX. LAB. CODE ANN. § 410.253(b)* (Vernon 2006). We again interpret *HN14* *section 410.253* to apply only to a party seeking judicial review of a final TWCC decision. Because it was Continental, not Guzman, seeking judicial review, Guzman was not required to comply with *Section 410.253(b) of the Texas Labor Code*.

*H. Validity of Service of Process*

Finally, Continental contends service of citation is defective because the return of citation is not verified as required by *Rule 107 of the Texas Rules of Civil Procedure*. Verification, however, was not required in

this instance. Service was accomplished by certified mail, and the return was signed by the district clerk. **HN15** District clerks, like sheriffs and constables, are considered "'officers' -- persons who, by virtue of their offices, are not required **[*15]** to verify returns." *Ins. Co. v. Lejeune, 261 S.W.3d 852, 859 (Tex. App.--Texarkana 2008, pet. filed)*. Thus, Continental's assertion is without merit.

**CONCLUSION**

We find no error in the trial court's granting of Guzman's bill of review. We, therefore, affirm the trial court's judgment.

Karen Angelini, Justice





Cited
As of: Mar 30, 2015

**COTTON PATCH CAFE, INC., APPELLANT v. CARL McCARTY, APPELLEE**

**NO. 2-05-082-CV**

**COURT OF APPEALS OF TEXAS, SECOND DISTRICT, FORT WORTH**

*2006 Tex. App. LEXIS 1833*

**March 9, 2006, Delivered**

**PRIOR HISTORY:** [*1] FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In a restricted appeal, appellant restaurant challenged a judgment of the 67th District Court of Tarrant County (Texas), which entered a no-answer default judgment against it in a suit brought by appellee patron for injuries sustained in a trip and fall accident.

**OVERVIEW:** Although the trial court indicated that it was awarding the patron $ 50,000 for past and future medical expenses and $ 100,000 for past and future pain and suffering, physical impairment, and mental anguish, it did not thereafter itemize the latter award. The court held that the evidence was legally insufficient to support the award for past and future medical expenses because the patron neither offered an affidavit in compliance with *Tex. Civ. Prac. & Rem. Code Ann. § 18.001* (1997) nor proved that his medical expenses were reasonable and necessary through expert testimony. However, the patron's undisputed testimony, including that he fell and injured his knee, that he had sharp pain in his lower back and legs, that his foot swelled when he walked, that he now used a walker to move around his home, and that he was unable to have surgery to address his injuries resulting from the fall, constituted legally sufficient evidence to support the trial court's award of some monetary damages for pain and suffering, physical impairment, and mental anguish, as well as factually sufficient evidence to support the trial court's award; thus, the award of $ 100,000 was not excessive.

**OUTCOME:** The court affirmed the trial court's award of $ 100,000 for past and future pain and suffering, physical impairment, and mental anguish damages, but reversed the award of $ 50,000 for past and future medical expenses. The court suggested a remittitur of $ 50,000. Unless a voluntary remittitur was filed, the court reversed the trial court's judgment and remanded the case to the trial court for a new trial on the issue of unliquidated damages.

**LexisNexis(R) Headnotes**

*Civil Procedure > Appeals > Reviewability > General Overview*
*Civil Procedure > Appeals > Standards of Review > Substantial Evidence > Sufficiency of Evidence*
[HN1] A restricted appeal is a direct attack on a trial court's judgment that affords an appellant the same scope of review as an ordinary appeal, that is, review of the entire case. A direct attack on a judgment by restricted appeal must (1) be brought within six months after the trial court signs the judgment (2) by a party to the suit (3) who did not participate in the actual trial, and (4) the error complained of is apparent from the face of the rec-

ord. *Tex. R. App. P. 30*. The face of the record, for purposes of restricted appeal review, consists of all the papers on file in the appeal, including the reporter's record. Appellate review thus covers legal and factual sufficiency claims.

*Civil Procedure > Remedies > Damages > General Overview*
*Civil Procedure > Appeals > Standards of Review > Substantial Evidence > Sufficiency of Evidence*
[HN2] In deciding a legal sufficiency challenge, an appellate court considers only the evidence and inferences which, when viewed in the light most favorable to the judgment, tend to support the judgment; the court disregards all evidence and inferences to the contrary and will overrule the challenge if more than a scintilla of evidence supports the finding. An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. The court is required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding. In determining whether damages are excessive, the court applies the same test as for any factual insufficiency question, examining all the evidence in the record to determine whether sufficient evidence supports the damage award, remitting only if some portion is so factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust.

*Civil Procedure > Pretrial Judgments > Default > Entry of Default Judgments*
*Civil Procedure > Appeals > Standards of Review > Substantial Evidence > Sufficiency of Evidence*
*Evidence > Testimony > Lay Witnesses > General Overview*
[HN3] A default judgment that is taken against a non-answering defendant on an unliquidated claim operates as an admission of all facts set out in the plaintiff's petition except for the amount of damages. A causal nexus between the defendant's conduct and the event sued upon, or liability, is thus established in such a case, but proof of a causal nexus between the event sued upon and the plaintiff's injuries is still required. A challenge to the legal and factual sufficiency of the evidence to show this causal nexus is examined using the same standards applicable to any sufficiency challenge. Lay testimony is adequate to prove causation in those cases in which general experience and common sense will enable a layman to determine, with reasonable probability, the causal relationship between the event and the condition.

*Civil Procedure > Pretrial Judgments > Default > Entry of Default Judgments*
*Civil Procedure > Remedies > Damages > General Overview*
[HN4] When a trial court does not itemize damages in its default judgment, it is impossible to determine what portion of the damages were ascribed to each ground of recovery claimed by a plaintiff.

*Civil Procedure > Appeals > Standards of Review > Substantial Evidence > Sufficiency of Evidence*
*Evidence > Procedural Considerations > Burdens of Proof > General Overview*
*Torts > Damages > Compensatory Damages > Medical Expenses*
[HN5] A claim for medical expenses must be supported by evidence that such expenses were reasonably necessary for the plaintiff to incur as a result of her injuries. A plaintiff may prove that medical expenses are reasonable and necessary (1) by presenting expert testimony on the issues of reasonableness and necessity or (2) by presenting an affidavit prepared and filed in compliance with *Tex. Civ. Prac. & Rem. Code Ann. § 18.001* (1997). Proof of amounts charged or paid is not proof of reasonableness, and evidence that medical expenses are reasonable and customary is no evidence that the medical expenses were reasonably necessary. *Section 18.001* provides in part that, unless a controverting affidavit is filed as provided by *§ 18.001*, an affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary.

*Civil Procedure > Pretrial Judgments > Default > Relief From Default*
*Civil Procedure > Remedies > Damages > General Overview*
*Civil Procedure > Appeals > Remands*
[HN6] When an appellate court sustains a no evidence point after an uncontested hearing on unliquidated damages following a no-answer default judgment, the appropriate disposition is a remand for a new trial on the issue of unliquidated damages. But the court may also suggest a voluntary remittitur of this amount. *Tex. R. App. P. 46.5*. If the court finds that part of a damages verdict lacks sufficient evidentiary support, its proper course is to suggest a remittitur of that part of the damages.

*Torts > Damages > Compensatory Damages > Pain & Suffering > Award Calculations*
[HN7] The process of awarding damages for amorphous, discretionary injuries such as pain and suffering or mental anguish is inherently difficult because the alleged injury is a subjective, unliquidated, nonpecuniary loss. The presence or absence of pain, either physical or mental, is an inherently subjective question because the process is not readily susceptible to objective analysis. Accordingly, the trier of fact is given broad discretion when determining such damages.

*Torts > Damages > Compensatory Damages > Pain & Suffering > Emotional & Mental Distress > Evidence*
[HN8] An award for mental anguish damages must be supported either by direct evidence of the nature, duration, and severity of the plaintiff's mental anguish, thereby establishing a substantial interruption in the plaintiff's daily routine, or by circumstantial evidence of a high degree of mental pain and distress that is greater than mere worry, anxiety, vexation, embarrassment, or anger. Damages for future mental anguish are recoverable if there is a reasonable probability that they will be suffered in the future.

*Evidence > Procedural Considerations > Burdens of Proof > General Overview*
*Torts > Damages > Compensatory Damages > Pain & Suffering > Loss of Enjoyment*
[HN9] In order to recover for physical impairment, a plaintiff must show that the effect of the physical impairment is substantial and extends beyond any pain, suffering, mental anguish, lost wages, or earning capacity. Damages for physical impairment are meant to compensate a plaintiff for an impairment of the capacity to enjoy life.

*Torts > Damages > Compensatory Damages > Pain & Suffering > Award Calculations*
[HN10] Once the existence of some pain, mental anguish, and impairment has been established, there is no objective way to measure the adequacy of the amount awarded as compensation, which is generally left to the discretion of the fact-finder. The process of awarding damages for amorphous; discretionary injuries such as pain and suffering is inherently difficult because the alleged injury is a subjective, unliquidated, nonpecuniary loss. The amounts awarded for such damages are necessarily speculative, and each case must be judged on its own facts. Even though each case must be judged on its own unique facts, it is proper to consider other approved awards in similar cases to determine if an award for pain and suffering is excessive.

*Civil Procedure > Pleading & Practice > Service of Process > Summons > Content & Form*
*Civil Procedure > Pretrial Judgments > Default > Relief From Default*
[HN11] Strict compliance with the rules of service of citation must affirmatively appear in the record in order for a default judgment to withstand a direct attack. When the attempted service of process is invalid, the trial court acquires no personal jurisdiction over the defendant, and the default judgment is void. There are no presumptions in favor of valid issuance, service, and return of citation in the face of a direct attack on a default judgment, but strict compliance does not require obeisance to the minutest detail. *Tex. R. Civ. P. 107* requires a return to state when the citation was served, to state the manner of service, to be signed by the officer officially or by the authorized person, and to be verified if the return is by an authorized person. *Tex. R. Civ. P. 107.*

**COUNSEL:** For APPELLANT: Paul A. Bezney, Tracy L. Stoker, ADKERSON, HAUDER & BEZNEY, P.C., Dallas, TX.

For APPELLEE: Scott Nichol, MAUERHAN & ASSOCIATES, P.C., Azle, TX.

**JUDGES:** PANEL B: LIVINGSTON, GARDNER, and WALKER, JJ.

**OPINION BY:** SUE WALKER

**OPINION**

**MEMORANDUM OPINION**

1 *See TEX. R. APP. P. 47.4.*

**I. INTRODUCTION**

The trial court entered a no-answer default judgment against Appellant Cotton Patch Cafe, Inc. (Cotton Patch) in a suit brought by Appellee Carl McCarty for injuries sustained in a trip and fall accident. Cotton Patch brings this restricted appeal and complains in two points that the evidence is legally and factually insufficient to show a causal nexus between McCarty's trip and fall and his injuries and damages, that the evidence is insufficient to support the awards for past and future medical expenses, pain and suffering, physical impairment, and mental anguish, and that the trial court lacked jurisdiction because of an error on the return of citation. We will affirm [*2]

in part and reverse and remand in part, subject to a voluntary remittitur.

## II. FACTUAL AND PROCEDURAL BACKGROUND

McCarty sued Cotton Patch on June 7, 2004, alleging that he suffered injuries and incurred damages caused by Cotton Patch's negligence. McCarty served Cotton Patch on June 23, 2004, but Cotton Patch did not file an answer. On August 27, 2004, the trial court held a hearing on McCarty's request for a default judgment. A portion of the evidence at the default judgment hearing shows that McCarty and his wife entered the Cotton Patch Restaurant in Lake Worth on July 5, 2003. As the hostess was leading them to a table, McCarty tripped over a dustpan and fell on his right knee. McCarty went to a hospital the next day, received X-rays, and was referred back to his family physician. A subsequent MRI indicated that McCarty had a torn meniscus in his knee, and McCarty's doctor recommended that he have surgery on his knee and lower back. Through medical invoices, McCarty offered evidence that he has incurred medical expenses up until the time of the default judgment hearing totaling about $ 7,000. McCarty also offered evidence in the form of an estimate from a medical [*3] office indicating that the cost of future surgery for his knee would total about $ 14,677. McCarty testified that the back surgery would could cost about $ 25,000 and that he would likely need physical therapy after his knee surgery, which would cost "anywhere from several hundred dollars up." McCarty also described the extent to which the accident and injuries have affected him, which we detail in our sufficiency analysis below.

The trial court ultimately entered an August 27, 2004 final default judgment awarding McCarty $ 50,000 for past and future medical expenses; $ 100,000 for past and future pain and suffering, physical impairment, and mental anguish; prejudgment and postjudgment interest; and costs. Cotton Patch filed a supersedeas bond on January 18, 2005, and a notice of restricted appeal on February 25, 2005.

## III. RESTRICTED APPEAL

[HN1] A restricted appeal is a direct attack on the trial court's judgment that affords an appellant the same scope of review as an ordinary appeal, that is, review of the entire case. *In re E.K.N., 24 S.W.3d 586, 590 (Tex. App.--Fort Worth 2000, no pet.)*. A direct attack on a judgment by restricted appeal must (1) be brought [*4] within six months after the trial court signs the judgment (2) by a party to the suit (3) who did not participate in the actual trial, and (4) the error complained of is apparent from the face of the record. *See TEX. R. APP. P. 30*; *Norman Commc'ns v. Tex. Eastman Co., 955 S.W.2d 269, 270, 41 Tex. Sup. Ct. J. 83 (Tex. 1997)*; *E.K.N., 24*

*S.W.3d at 590*. The face of the record, for purposes of restricted appeal review, consists of all the papers on file in the appeal, including the reporter's record. *Norman Commc'ns, 955 S.W.2d at 270*. Our review thus covers legal and factual sufficiency claims, including the amount of damages awarded and Cotton Patch's causal nexus claim. *See id.*; *Morgan v. Compugraphic Corp., 675 S.W.2d 729, 731-32, 27 Tex. Sup. Ct. J. 501 (Tex. 1984)*. Cotton Patch meets the first three requirements for a restricted appeal; only the fourth requirement is at issue--whether Cotton Patch demonstrated on the face of the record that the trial court erroneously entered a default judgment against it.

## IV. Sufficiency Challenges

In its first issue, Cotton Patch argues that the evidence is legally and factually insufficient [*5] (1) to show a causal nexus between McCarty's trip and fall and his injuries and damages and (2) to support the trial court's award for unliquidated damages.

### A. Standards of Review

[HN2] In deciding a legal sufficiency challenge, we consider only the evidence and inferences which, when viewed in the light most favorable to the judgment, tend to support the judgment; we disregard all evidence and inferences to the contrary and will overrule the challenge if more than a scintilla of evidence supports the finding. *Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 84, 35 Tex. Sup. Ct. J. 881 (Tex. 1992)*. An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *Garza v. Alviar, 395 S.W.2d 821, 823, 9 Tex. Sup. Ct. J. 76 (Tex. 1965)*. We are required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding. *Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07, 41 Tex. Sup. Ct. J. 683 (Tex.), cert. denied, 525 U.S. 1017, 142 L. Ed. 2d 450, 119 S. Ct. 541 (1998)*. [*6] In determining whether damages are excessive, we apply the same test as for any factual insufficiency question, examining all the evidence in the record to determine whether sufficient evidence supports the damage award, remitting only if some portion is so factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust. *Torrington Co. v. Stutzman, 46 S.W.3d 829, 851, 44 Tex. Sup. Ct. J. 225 (Tex. 2000)*; *Larson v. Cactus Util. Co., 730 S.W.2d 640, 641, 30 Tex. Sup. Ct. J. 331 (Tex. 1987)*; *Pope v. Moore, 711 S.W.2d 622, 624, 29 Tex. Sup. Ct. J. 412 (Tex. 1986)*.

### B. Causal Nexus

Generally, [HN3] a default judgment that is taken against a nonanswering defendant on an unliquidated claim operates as an admission of all facts set out in the plaintiff's petition except for the amount of damages. *Heine, 835 S.W.2d at 83*; *see also  Argyle Mechanical, Inc. v. Unigus Steel, Inc., 156 S.W.3d 685, 687 (Tex. App.--Dallas 2005, no pet.).* A causal nexus between the defendant's conduct and the event sued upon, or liability, is thus established in such a case, but proof of a causal nexus between the event sued upon and the plaintiff's injuries [*7]  is still required. [2]  *Morgan, 675 S.W.2d at 731- 32*;  *Jackson v. Gutierrez, 77 S.W.3d 898, 902 (Tex. App.--Houston [14th Dist.] 2002, no pet.).* A challenge to the legal and factual sufficiency of the evidence to show this causal nexus is examined using the same standards applicable to any sufficiency challenge. *Jackson, 77 S.W.3d at 902*. "Lay testimony is adequate to prove causation in those cases in which general experience and common sense will enable a layman to determine, with reasonable probability, the causal relationship between the event and the condition." *Morgan, 675 S.W.2d at 733*.

2    In *Morgan*, the supreme court stated,

> The causal nexus between the event sued upon and the plaintiff's injuries is strictly referable to the damages portion of the plaintiff's cause of action. Even if the defendant's liability has been established, proof of this causal nexus is necessary to ascertain the amount of damages to which the plaintiff is entitled. This is true because the plaintiff is entitled to recover damages only for those injuries caused by the event made the basis of suit; that the defendant has defaulted does not give the plaintiff the right to recover for damages which did not arise from his cause of action.

*Morgan, 675 S.W.2d at 732*

[*8] Here, Cotton Patch contends that McCarty's testimony at the default judgment hearing did not establish that his knee and lower back injuries were "caused by" or "a result of" the trip and fall. McCarty's petition states that he "suffered severe injuries as a proximate result of [Cotton Patch's] negligence" and that "as a result of [McCarty's] injuries, [he] suffered . . . damages." McCarty testified that he never had any "knee problems" before the accident and that he had only a "minor back

problem" twenty-five years earlier that required therapy, not surgery. McCarty testified that he fell and injured his knee and lower back. He testified that "as a result of [the trip and fall]," he went to the hospital, he received X-rays, he underwent an MRI of his knee and back, he needs surgery on his knee and back, he now uses a walker to help move about his house, and he has pain (back and both legs) from his injures that affect his "state of mind." We hold that the evidence is legally and factually sufficient to establish a causal nexus between McCarty's trip and fall (the event sued upon) and his injuries and damages. *See  Morgan, 675 S.W.2d at 731-32*;  *Jackson, 77 S.W.3d at 902.* [*9]

### C. Unliquidated Damages

Although the trial court indicated at the conclusion of the default judgment hearing that it was awarding McCarty $ 50,000 for past and future medical expenses and $ 100,000 for past and future pain and suffering, physical impairment, and mental anguish, it did not thereafter itemize the latter award. [HN4] When the trial court does not itemize damages in its default judgment, it is impossible to determine what portion of the damages were ascribed to each ground of recovery claimed by the plaintiff. *Dawson v. Briggs, 107 S.W.3d 739, 749 (Tex. App.--Fort Worth 2003, no pet.).* We will therefore examine the record to determine whether legally sufficient evidence exists to establish each element of damage and whether the amount--a $ 100,000 global award for the total of all of these elements of damage--is excessive. *Tagle v. Galvan, 155 S.W.3d 510, 518 (Tex. App.--San Antonio 2004, no pet.)* (recognizing that when trial court awards lump sum damage award, appellants are limited to challenging damage award as a whole);  *Pentes Design, Inc. v. Perez, 840 S.W.2d 75, 80 (Tex. App.--1992, writ denied).*

### 1. Legal  [*10]    Sufficiency

### A. Medical Expenses

[HN5] A claim for medical expenses must be supported by evidence that such expenses were reasonably necessary for the plaintiff to incur as a result of her injuries. *Jackson, 77 S.W.3d at 902*; *see also  Walker v. Ricks, 101 S.W.3d 740, 746 (Tex. App.--Corpus Christi 2003, no pet.).* A plaintiff may prove that medical expenses are reasonable and necessary (1) by presenting expert testimony on the issues of reasonableness and necessity or (2) by presenting an affidavit prepared and filed in compliance with *section 18.001 of the Texas Civil Practice and Remedies Code.* [3]  *Jackson, 77 S.W.3d at 902*;  *Rodriguez- Narrea v. Ridinger, 19 S.W.3d 531, 532 (Tex. App.--Fort Worth 2000, no pet.).* Proof of amounts charged or paid is not proof of reasonableness, and evidence that medical expenses are reasonable and customary is no evidence that the medical expenses were

reasonably necessary. *Jackson, 77 S.W.3d at 902*; *Rodriguez-Narrea, 19 S.W.3d at 532*.

3  *Section 18.001* provides in relevant part:

(b) Unless a controverting affidavit is filed as provided by this section, an affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary.

*TEX. CIV. PRAC. & REM. CODE ANN. § 18.001* (Vernon 1997).

[*11]  Here, the trial court awarded McCarty $ 50,000 for past and future medical expenses, but McCarty neither offered an affidavit in compliance with *civil practice and remedies code section 18.001* nor proved that his medical expenses were reasonable and necessary through expert testimony. The trial court admitted invoices indicating that McCarty had incurred $ 7,000 in medical expenses and an estimate from a medical office showing that surgery on McCarty's knee would cost over $ 14,000, and McCarty testified that back surgery would cost about $ 25,000. This evidence is not proof of the reasonableness of these charges. *See   Smith v. Sw. Bell Tel. Co., 101 S.W.3d 698, 703 (Tex. App.--Fort Worth 2003, no pet.)* (reasoning that medical bill records do not establish that medical expenses listed therein were reasonable). No evidence exists that McCarty's past medical expenses were reasonable or that the estimates for the suggested future surgeries were reasonable. Accordingly, we sustain Cotton Patch's first issue to the extent it argues that the evidence is legally insufficient to support the trial court's award for past and future medical expenses.

The supreme court has instructed [*12]  that [HN6] "when an appellate court sustains a no evidence point after an uncontested hearing on unliquidated damages following a no-answer default judgment, the appropriate disposition is a remand for a new trial on the issue of unliquidated damages." *Heine, 835 S.W.2d at 86*; *see also   Lefton v. Griffith, 136 S.W.3d 271, 280 (Tex. App.--San Antonio 2004, no pet.)* (remanding for new trial on economic damages and mental anguish damages, but affirming attorney fee award). But we may also suggest a voluntary remittitur of this amount. *TEX. R. APP.*

*P. 46.5*; *Formosa Plastics Corp. v. Presidio Eng'rs, 960 S.W.2d 41, 51, 41 Tex. Sup. Ct. J. 289 (Tex. 1998)* (recognizing two means by which a remittitur may be effected on appeal, including by suggestion by a court of appeals in lieu of ordering a new trial). If we find that part of a damages verdict lacks sufficient evidentiary support, our proper course is to suggest a remittitur of that part of the damages. *Larson, 730 S.W.2d at 641*; *Pope, 711 S.W.2d at 624*. Accordingly, we suggest a remittitur of $ 50,000, the amount the trial court awarded for past and future medical [*13]   expenses.

**B. Pain and Suffering**

[HN7] The process of awarding damages for amorphous, discretionary injuries such as pain and suffering or mental anguish is inherently difficult because the alleged injury is a subjective, unliquidated, nonpecuniary loss. *Dollison v. Hayes, 79 S.W.3d 246, 249 (Tex. App.--Texarkana 2002, no pet.)*. The presence or absence of pain, either physical or mental, is an inherently subjective question because the process is not readily susceptible to objective analysis. *Dawson, 107 S.W.3d at 751*. Accordingly, the trier of fact is given broad discretion when determining such damages. *Sw. Tex. Coors, Inc. v. Morales, 948 S.W.2d 948, 951-52 (Tex. App.--San Antonio 1997, no writ)*. In this case, McCarty testified that he never had knee problems in the past and that he had only one episode of back problems twenty-five years ago. He testified that he fell on his right knee, causing injury to his knee and lower back. After the fall and a subsequent visit to the hospital and his family physician, an MRI of McCarty's knee indicated that he had a torn meniscus, and his doctor recommended that he have surgery on his knee [*14]   and back and indicated that physical therapy after surgery would be required. McCarty further testified that he has a needle-like pain that extends from his lower back down both of his legs, almost to his knees. At the conclusion of the default judgment hearing, McCarty requested that the trial court award him $ 100,000 for his non-medical-expense damages. Based on McCarty's undisputed testimony, we hold that the evidence is legally sufficient to support the trial court's award of some monetary damages for past and future pain and suffering.

**C. Mental Anguish**

[HN8] An award for mental anguish damages must be supported either by direct evidence of the nature, duration, and severity of the plaintiff's mental anguish, thereby establishing a substantial interruption in the plaintiff's daily routine, or by circumstantial evidence of a high degree of mental pain and distress that is greater than mere worry, anxiety, vexation, embarrassment, or anger. *Parkway Co. v. Woodruff, 901 S.W.2d 434, 444, 38 Tex. Sup. Ct. J. 828 (Tex. 1995)*. Damages for future

mental anguish are recoverable "if there is a reasonable probability that they will be suffered in the future." *Lubbock County v. Strube, 953 S.W.2d 847, 857* [*15] *(Tex. App.--Austin 1997, pet. denied)* (op. on reh'g). Here, McCarty testified that he has "AR stenosis" and "severe lung problems," that he is being treated for his lung condition, and that he is unable to have heart surgery because his oxygen level is "so bad." Because of these prior conditions (unrelated to the accident at the Cotton Patch restaurant), McCarty is unable to have the recommended surgery on his knee and back and resolve the pain (needle-like pain) and injuries associated therewith. McCarty testified that he would "definitely" have the surgeries on his knee and back if he were able to resolve his other health problems because he "can't live like this." McCarty further testified that his injuries have affected his state of mind because he is "taking so much medication" and that "it has a lot to do with my home life." He continued, "They give me Celebrex, viagra and stuff like that to help me, but it doesn't work. So the urologist is trying to talk me into some sort of pump now, so . . . ." Based on McCarty's undisputed testimony, which also indicated a reasonable probability of continued mental anguish in the future, we hold that the evidence is legally sufficient to [*16] support the trial court's award of some monetary damages for past and future mental anguish.

## D. Physical Impairment

[HN9] In order to recover for physical impairment, the plaintiff must show that the effect of the physical impairment is substantial and extends beyond any pain, suffering, mental anguish, lost wages, or earning capacity. *Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 772, 46 Tex. Sup. Ct. J. 1133 (Tex. 2003)*. Damages for physical impairment are meant to compensate a plaintiff for an impairment of the capacity to enjoy life. *Santa Rosa Med. Ctr. v. Robinson, 560 S.W.2d 751, 762 (Tex. Civ. App.--San Antonio 1977, no writ)*. McCarty, who is seventy-six and retired, testified that he is no longer able to work on his pool, that his foot swells up when he walks and "steps off a curb or something like that," and that he has to use a walker to move about his home, which he never used before. Based on McCarty's undisputed testimony, we hold that the evidence is legally sufficient to support the trial court's award of some monetary damages for past and future physical impairment.

## 2. Factual Sufficiency

Having determined that the evidence is legally sufficient [*17] to support the trial court's award for past and future pain and suffering, mental anguish, and physical impairment, we must now determine whether the

evidence concerning these elements of damage is so factually insufficient that it is against the great weight and preponderance of the evidence as to be manifestly unjust. *Pope, 711 S.W.2d at 624*; *Pentes, 840 S.W.2d at 80-81*. However, [HN10] once the existence of some pain, mental anguish, and impairment has been established, there is no objective way to measure the adequacy of the amount awarded as compensation, which is generally left to the discretion of the fact-finder. *Dawson, 107 S.W.3d at 751*. The process of awarding damages for amorphous, discretionary injuries such as pain and suffering is inherently difficult because the alleged injury is a subjective, unliquidated, nonpecuniary loss. *Id.* The amounts awarded for such damages are necessarily speculative, and each case must be judged on its own facts. *Id.*

Even though each case must be judged on its own unique facts, it is proper to consider other approved awards in similar cases to determine if an award for pain and suffering [*18] is excessive. *HCRA of Texas, Inc. v. Johnston, 178 S.W.3d 861, 872 (Tex. App.--Fort Worth 2005, no pet.)*. In *HCRA*, this court determined that an award of $ 75,000 was not excessive to compensate a nursing home resident for physical pain and mental anguish suffered from decubitis ulcers and malnutrition. *Id.* In *Sunbridge Healthcare Corp.*, the court held that an award of one million dollars was not excessive to compensate the plaintiff for physical pain and mental anguish suffered from injuries sustained in falls. *Sunbridge Healthcare Corp. v. Penny, 160 S.W.3d 230, 252 (Tex. App.--Texarkana 2005, no pet.)*. In *Cresthaven Nursing Residence v. Freeman*, the court held that an award of one million dollars--remitted down from four million dollars--was not excessive to compensate the plaintiff for physical pain and mental anguish suffered from two broken legs sustained in a fall. *134 S.W.3d 214, 228-232 (Tex. App.--Amarillo 2003, no pet.)*. In *Guzman v. Guajardo*, the court held that an award of $ 600,000 was not excessive to compensate a young boy who endured fifteen minutes of pain sustained in a car accident before dying. [*19] *761 S.W.2d 506, 512 (Tex. App.--Corpus Christi 1988, writ denied)*.

In the instant case, McCarty's testimony, including that he fell and injured his knee, that he has sharp pain in his lower back and legs, that his foot swells when he walks, that he now uses a walker to move around his home, and that he is unable to have surgery in order to address his injuries resulting from the fall, constitutes factually sufficient evidence to support the trial court's award; the award of $ 100,000 is not excessive. Accordingly, we overrule Cotton Patch's first issue to the extent it argues that the evidence is legally and factually insufficient to support the trial court's awards for past and future pain and suffering, mental anguish, and physical impairment.

## V. Service of Citation

In its second issue, Cotton Patch argues that error is apparent on the face of the record because the return of citation contains an incorrect numeral which, consequently, precluded the trial court from acquiring jurisdiction over it. [HN11] Strict compliance with the rules of service of citation must affirmatively appear in the record in order for a default judgment to withstand a direct attack. *Primate Constr., Inc. v. Silver, 884 S.W.2d 151, 152, 37 Tex. Sup. Ct. J. 1216 (Tex. 1994).* [*20] When the attempted service of process is invalid, the trial court acquires no personal jurisdiction over the defendant, and the default judgment is void. *Westcliffe, Inc. v. Bear Creek Constr., Ltd., 105 S.W.3d 286, 290 (Tex. App.--Dallas 2003, no pet.).* There are no presumptions in favor of valid issuance, service, and return of citation in the face of a direct attack on a default judgment, but strict compliance does not require "obeisance to the minutest detail." *Uvalde Country Club v. Martin Linen Supply Co., 690 S.W.2d 884, 885, 28 Tex. Sup. Ct. J. 423 (Tex. 1985); Herbert v. Greater Gulf Coast Enters., 915 S.W.2d 866, 871 (Tex. App.--Houston [1st Dist.] 1995, no writ).*

The officer's return of citation states that service was made upon Cotton Patch's registered agent at "4825 W. Royal Ln, Irving, TX 7506**2**" [Emphasis added.]. McCarty's petition and the citation, however, identify the registered agent's address as 4825 West Royal Lane, Irving, Texas "7506**3**." [Emphasis added.]. Cotton Patch argues that this numerical discrepancy occurring only on the return of citation--the citation and the petition contain the correct digit--constitutes [*21] error on the face of the record. We cannot agree. *Rule 107 of the Texas Rules of Civil Procedure* requires the return to state when the citation was served, to state the manner of service, to be signed by the officer officially or by the authorized person, and to be verified if the return is by an authorized person. *TEX. R. CIV. P. 107.* The return clearly complies with the requirements of *Rule 107*, but simply contains an incorrect final numeral in the registered agent's zip code. The zip code in McCarty's petition correctly states that the registered agent's zip code is "75063," the citation contains the correct zip code on the same page as the officer's return, and Cotton Patch does not argue that it was not served. At the conclusion of the default judgment hearing, the trial court found that Cotton Patch had been served with citation and with a copy of McCarty's petition. Thus, because the return of citation complies with *Rule 107*, because Cotton Patch does not claim that it did not receive service, and because the citation and return show that citation was actually served on Cotton Patch's registered agent, we hold that the service [*22] was not defective so as to deprive the trial court of jurisdiction over Cotton Patch. *See Regalado v. State, 934 S.W.2d 852, 854 (Tex. App.--Corpus Christi 1996, no writ)* (reasoning that service of process will not be invalidated so long as the citation and return show with reasonable certainty that citation was served on defendant). We overrule Cotton Patch's second issue.

## VI. Conclusion

We affirm the trial court's award of $ 100,000 for past and future pain and suffering, physical impairment, and mental anguish damages, but we reverse the trial court's award of $ 50,000 for past and future medical expenses. We suggest a remittitur of $ 50,000, the amount of the trial court's past and future medical expenses award. If, within fifteen days of the date of this opinion, McCarty files in this court a remittitur of $ 50,000, then our subsequent judgment will reform the trial court's judgment in accordance with the remittitur and, as reformed, affirm that judgment. *See TEX. R. APP. P. 46.5.* Unless a voluntary remittitur is filed, we reverse the trial court's judgment and remand the case to the trial court for a new trial on the issue [*23] of unliquidated damages.

SUE WALKER

JUSTICE

# Daniel v. Ft. Worth & R. G. R. Co.

Supreme Court of Texas

March 9, 1903, Decided

No. 1162

## Reporter

96 Tex. 327; 72 S.W. 578; 1903 Tex. LEXIS 139

J. L. Daniel v. Fort Worth & Rio Grande Railway Company

**Prior History:** [***1] Error to the Court of Civil Appeals for the Second District, in an appeal from Erath County.

**Disposition:** *Reversed and remanded*.

## Core Terms

damages, coal, depreciation, discomfort, property value, railroad, noise, enjoyment, hoist

## Case Summary

### Procedural Posture

Plaintiff in error, the owner of a residential property, sought review of an order from the Court of Civil Appeals for the Second District (Texas), which affirmed a trial court's judgment in favor of defendant in error, a railroad, on the owner's action for the depreciation to the value of his property caused by the railroad's coal hoist and noise and coal dust that interfered with the owner's enjoyment of his home.

### Overview

The owner's house was located near the railroad's tracks. The railroad constructed a platform and the coal hoist adjacent to the tracks and the owner's property. The owner filed an action for damages to his property value and his family's discomfort, asserting that the dust from the hoist entered his house and that noise from the hoist kept his family awake at night. The trial court instructed the jury on the reduction of property value but refused the owner's instruction on damages for discomfort. The jury delivered a verdict for the railroad, and the owner appealed the refusal of his instruction on discomfort damages. The appellate court affirmed, and the owner appealed. The court reversed, holding that the owner was not restricted to an instruction that limited his recovery to damages for the reduction in property value or discomfort. Although the jury found no loss of property value, it could have found that the owner was entitled to nuisance damages for the dust and noise. The court relied on prior jurisprudence in holding that the owner was entitled to an instruction on both types of damages. The action for reduction damages was not the owner's exclusive remedy.

### Outcome

The court reversed the appellate court's decision. The court remanded the owner's action for a new trial. The court ordered the railroad to pay appellate costs.

## LexisNexis® Headnotes

Real Property Law > Encumbrances > Adjoining Landowners > General Overview

Real Property Law > Torts > General Overview

Real Property Law > Torts > Nuisance > General Overview

Real Property Law > ... > Nuisance > Remedies > General Overview

Real Property Law > ... > Nuisance > Types of Nuisances > Permanent Nuisances

Torts > ... > Types of Losses > Pain & Suffering > General Overview

Torts > ... > Types of Damages > Property Damages > General Overview

*HN1* If a structure, permanent in character, is a nuisance from which injury results to adjacent property, and by which nuisance the health of the occupants is impaired or the comfortable enjoyment of it is destroyed, the injured party is not limited to compensation for the impairment of the value of the property. To the contrary, it is a rule of Texas law that full compensation may be

awarded in one suit to the owner for all damages sustained from the same cause, and a party damaged in the value of his property and in his health or the enjoyment of the property, should be denied the right to recover for either or both wrongs. The existence of a permanent nuisance may cause injury by destroying the comfort of a home and not cause loss in the market value of the property, or it may cause injury to both, hence adequate compensation must embrace all the damage done and no more.

## Headnotes/Syllabus

**Headnotes**

**Railway -- Nuisance -- Coal Hoist Near Residence -- Damages.**

The damages recoverable for the creation of a nuisance near plaintiff's residence (the dust, noise, etc., from the construction of a coal hoist and the supplying locomotive engines with coal) are not limited to depreciation in the market value of his property, but may include, along with such depreciation, compensation for the personal annoyance and discomfort suffered by plaintiff and his wife in the use of their home.

**Railway -- Cases Distinguished.**

Rosenthal v. Railway Co., 79 Texas, 325; Baugh v. Railway Co., 80 Texas, 56; Gainesville, H. & W. Railway Co. v. Hall, 78 Texas, 169, and Denison & P. S. Railway Co. v. O'Malley, 18 Texas Civ. App., 200, distinguished from the present case.

## Syllabus

Daniel sued the railway company and appealed from a judgment for defendant. On its affirmance he obtained writ of error.

**Counsel:** *J. W. Parker, W. T. Carlton*, and *J. B. Keith*, for plaintiff in error. -- In an action by one against a railroad for maintaining a nuisance near [***2] his residence, the damages are not limited to the depreciation of the property, but may include damages for discomfort to the inhabitants of such house. Baltimore & P. Railway Co. v. Fifth Baptist Church, 108 U.S., 317; Lahr v. Metropolitan El. Railway Co., 104 N. Y., 268; Fifth National Bank v. N. Y. El. Railway Co., 118 U.S., 608; Pennsylvania Railway Co. v. Angel, 41 N. J.

Eq., 316; Illinois Cen. Railway Co. v. Grabill, 50 Ill., 241; Hockaday v. Wortham, 22 Texas Civ. App., 419.

*West, Chapman & West*, for appellee. -- The court charged the jury the proper measure of damages, and did not err in refusing appellant's first special request. Hockaday v. Wortham, 22 Texas Civ. App., 419; Gainesville, H. & W. Railway Co. v. Hall, 78 Texas, 169; Rosenthal v. T. B. & H. Railway Co., 79 Texas, 325; City of San Antonio v. Mackey, 36 S. W. Rep., 760; Denison & P. S. Railway Co. v. O'Malley, 18 Texas Civ. App., 200.

**Judges:** Brown, Associate Justice.

**Opinion by:** BROWN

## Opinion

[*328] [**579] The Court of Civil Appeals made no findings of fact in this case, but we have referred to the record from which we make the following statement:

Defendant in error was operating a railroad through [***3] the town of Stephenville, in Erath County, and J. T. Daniel purchased a lot in said town, about 250 feet west of the railroad track, on which he had resided for some years when the defendant in error built a platform, 300 feet long, between the main track and plaintiff's residence, between the two side tracks which were on the west side of the main track. The railroad company also erected near the platform a hoist, about twentyfive feet high, by which the coal was raised from the platform in iron buckets and dumped into the tenders of engines. There was evidence which tended to prove, that the coal dust from coal thus placed in the tender was carried by the wind to and into plaintiff's residence and settled upon his furniture, the walls, and upon the outside of the house so as to produce discomfort to the plaintiff and his family. The evidence also tended to show that the noise caused by operating the hoist and buckets, and the noise caused by the engines while taking coal, prevented the plaintiff and his wife from sleeping at night and disturbed and annoyed them in their enjoyment of their home.

Plaintiff brought this suit against the railroad company to recover the damages occasioned [***4] to him by the depreciation of his property on account of the facts before stated, which were alleged in the petition with sufficient certainty and particularity, and the petition also contained the following allegation: "That by reason of the things hereinbefore alleged, plaintiff and his wife

have experienced and have been subjected to continually, both day and night, great physical and mental discomfort, and been vexed, harassed and annoyed to a degree almost insupportable, to their great and irreparable injury, and have been thereby damaged to the further sum of $ 500." The court charged the jury upon the right of the plaintiff to recover for the depreciation in the value of his property, but refused to submit to the jury the following special charge by the plaintiff: "If you believe from a preponderance of the evidence in this case that the plaintiff J. T. Daniel and his wife have been personally annoyed and discomforted in the use and enjoyment of their home by smoke or coal dust, or by vibrating, grating or disagreeable noises coming from defendant's coal yards and coal hoist into or on the house and premises of plaintiff, then you will find for plaintiff and award to him by [***5] your verdict such damages as in your judgment will reasonably and fairly compensate him for such annoyance or discomfiture suffered by himself and wife, not to exceed the amount sued for for annoyance." There was a verdict and a judgment for the defendant, which was affirmed by the Court of Civil Appeals.

The trial court committed error in refusing the special charge requested by the plaintiff. If the plaintiff was entitled to recover upon the evidence the right of recovery is not limited to the depreciation in [*329] the value of the property, but he may recover damages for the discomfort of himself and family in the use of the home caused by the erection and use of the coal hoists. Baltimore & P. Railway Co. v. Fifth Baptist Church, 108 U.S., 317; Randolph v. Bloomfield, 77 Iowa, 52; Illinois C. Railway Co. v. Grabill, 50 Ill., 241; Pierce v. Wagner, 29 Minn., 355; Brown v. Chicago & A. Railway Co., 80 Mo., 457; Pennsylvania Railway Co. v. Angel, 41 N. J. Eq., 316.

In Baltimore & Potomac Railway Co. v. Fifth Baptist Church, above cited, the Supreme Court of the United States expresses the rule in this explicit language: "The instruction of the court as to the estimate [***6] of damages was correct. Mere depreciation of the property was not the only element for consideration. That might, indeed, be entirely disregarded. The plaintiff was entitled to recover because of the inconvenience and discomfort caused to the congregation assembled, thus necessarily tending to destroy the use of the building for the purposes for which it was erected and dedicated. The property might not be depreciated in its salable or market value, if the building had been entirely closed for those purposes by the noise, smoke, and odors of the defendant's shops. It might then, perhaps, have brought in the market as great a price to be used for some other purpose. But, as the court below very properly said to the jury, the congregation had the same right to the comfortable enjoyment of its house for church purposes that a private gentleman has to the comfortable enjoyment of his own house, and it is the discomfort and annoyance in its use for those purposes which is the primary consideration in allowing damages. As with a blow on the face, there may be no arithmetical rule for the estimate of damages. There is, however, an injury, the extent of which the jury may measure." [***7] This clear statement of the proposition renders argument in its application to this case unnecessary. We have found but one case that holds the contrary doctrine, -- Kempner and Wife v. Louisville, 14 Bush, 87, -- in which the Court of Appeals of Kentucky incidentally stated that the plaintiffs in the case were not entitled to recover "for loss of time on the part of the occupants on account of sickness caused by the stagnant water, etc;" but the question does not seem to have elicited discussion from that court and no reason is assigned nor authority cited in support of the decision.

In support of its opinion, the Court of Civil [**580] Appeals cites: Rosenthal v. Railway Co., 79 Texas, 325; Baugh v. Railway Co., 80 Texas, 56; Railway Co. v. Hall., 78 Texas, 169, and Railway Co. v. O'Malley, 18 Texas Civ. App., 200.

In Rosenthal v. Railway Company, the right of recovery for personal inconvenience on account of the noises complained of was not in issue, but the plaintiff claimed damages to the property because of faulty construction of the roadbed and on account of noise, smoke, etc., and the court simply held that under the facts of that case the depreciation in the value [***8] of the property was the safest measure of damages.

In Baugh v. Railway Company, the plaintiff alleged depreciation in [*330] the value of his property, but in support of his claim set up matters of a character which would have sustained an action for personal discomfort, showing that the nuisance was temporary, and the court held that under such allegations the plaintiff could not recover for loss in the value of the property.

In Railway Company v. Hall, the action was for depreciation in the value of property arising from smoke, noise, etc. The railroad was constructed near to but not on the land. The question arose under art. 1, sec. 17, of the Constitution, it being claimed by the railroad

company, that the damage to the property could not be recovered, there being no taking of it, but our Supreme Court held that it could be recovered.

Railway Company v. O'Malley was a suit for damages on account of the location of stock pens near the home of plaintiff, and claim was made for the difference between the value of the property before and after the construction of the pens, upon the allegation that the pens rendered the property uncomfortable for the occupants as a home. **[***9]** There was no claim of damages for personal discomfort, and the court held that under the facts the damages to the property were recoverable.

No case decided by this court justifies the conclusion that, *HN1* if a structure, permanent in character, is a nuisance from which injury results to adjacent property, and by which nuisance the health of the occupants is impaired or the comfortable enjoyment of it is destroyed, the injured party is limited to compensation for the impairment of the value of the property. To the contrary, it is a rule of our law that full compensation may be awarded in one suit to the owner for all damages sustained from the same cause, and we see no reason why a party damaged in the value of his property and in his health or the enjoyment of the property, should be denied the right to recover for either or both wrongs. The existence of a permanent nuisance may cause injury by destroying the comfort of a home and not cause loss in the market value of the property, or it may cause injury to both, hence adequate compensation must embrace all the damage done and no more.

The pleadings and evidence in this case do not present any question of excuse for the railroad **[***10]** company upon the ground that it was reasonably necessary that the coal hoist should be located at that particular place, we therefore do not pass upon that question.

It is ordered that the judgments of the District Court and of the Court of Civil Appeals be reversed and that this cause be remanded, and that the defendant in error pay the costs of the Court of Civil Appeals and of this court.

*Reversed and remanded*.





Caution
As of: Mar 30, 2015

# M. V. DAVIS V. McCRAY REFRIGERATOR SALES CORPORATION.

## No. 7801

## SUPREME COURT OF TEXAS

### *136 Tex. 296*; *150 S.W.2d 377*; *1941 Tex. LEXIS 334*

### April 9, 1941

**SUBSEQUENT HISTORY:** [***1] Rehearing Overruled May 7, 1941

**PRIOR HISTORY:** Error to the Court of Civil Appeals for the Second District, in an appeal from Tarrant County.

Suit by the McCray Refrigerator Sales Corporation against M. V. Davis upon a note and a contract for the purchase of a refrigerator from the plaintiff. Defendant filed a plea in abatement upon the grounds that plaintiff was a foreign corporation and had no permit to operate in the State. He also filed a cross action asking that the debt and lien be cancelled, for a return of the money paid on said refrigerator, and for damages for merchandise lost because of improper refrigeration. After hearing the plea of privilege and the merits of the case together, the court sustained the plea of privilege and dismissed the suit, without taking any action on the defendant's cross action. The Court of Civil Appeals reversed this judgment and rendered judgment for the refrigerator company for the balance of the note with interest and attorney's fee and for foreclosure of chattel mortgage, *140 S.W. (2d) 477*, and defendant has brought error to the Supreme Court.

Judgment of the Court of Civil Appeals is reversed and the appeal is dismissed.

**COUNSEL:** *Graves & Collins,* [***2] of Fort Worth, for plaintiff in error.

As the judgment does not dispose of defendant's cross action or any of the affirmative prayers of the defendant, it is not a final judgment and will not support an appeal. *Chambers v. Jones, 101 S.W. (2d) 936*; *Clary Lbr. Co. v. Patterson, 28 S.W. (2d) 825*; *Kosse Natl. Bank v. Derden, 36 S.W. (2d) 295*.

*Greathouse & Swanger,* of Fort worth, for defendant in error.

In sustaining a plea in abatement that plaintiff was a foreign corporation and did not have a permit to do business in Texas was a judgment dismissing the cause and not one that plaintiff take nothing, and the court having tried the cause on its merits, the verdict of the jury entitled plaintiff to its debt and foreclosure. *S.W. Smyth Co. v. Fort Worth Glass & Sand Co., 142 S.W. 1157*; *Ragness v. Oliver, 26 S.W. (2d) 357*; *W. W. Kimball Co. v. Parsons, 49 S.W. (2d) 821*.

**OPINION BY:** ALEXANDER

## OPINION

[**377] [*297] MR. CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

Plaintiff sued defendant for the balance of the purchase price of a refrigerator and to foreclose a lien thereon. The defendant filed a plea in abatement to plaintiff's suit, on the ground that plaintiff [***3] was a foreign corporation without a permit to do business in Texas. The defendant also filed a cross-action to cancel

plaintiff's debt and lien, and for judgment for the sum of $469.62, representing that part of the purchase price of the refrigerator previously paid by him, and the sum of $59.78 damages for merchandise lost for lack of proper refrigeration. The trial judge announced that he would hear the plea in abatement and the merits of the case together. After the jury had returned its verdict the court sustained the plea in abatement and dismissed plaintiff's suit. The judgment in no wise referred to or attempted to dispose of defendant's cross-action. Plaintiff appealed.

It is a well settled rule in Texas, with certain statutory exceptions not here involved, that an appeal will lie only from a final judgment, and that a judgment in order to be final must dispose of all parties and of all issues involved in the suit. [**378] 3 Tex. Jur. 114. It is not essential that the judgment in express [*298] terms specifically dispose of each issue. That it does dispose of a particular issue may be inferred from other provisions thereof, provided such an inference follows [***4] as a necessary implication. *Trammell v. Rosen, 106 Texas 132, 157 S.W. 1161*. The judgment in this case does not expressly dispose of the defendant's cross-action, nor does it do so by necessary implication. The mere dismissal of plaintiff's suit did not have the effect of dismissing or otherwise disposing of the defendant's cross-action. *Barrier v. Lowery, 118 Texas 227, 13 S.W. (2d) 688*, par. 1; Texas & P.R. Co. v. Fort Worth Street Ry. co., *75 Texas 82, 12 S.W. 977*; *Jasper v. Mays Manufacturing Co., 139 S.W. (2d) 895*; *Jungbecker v. Huber, 101 Texas 148, 105 S.W. 487*; 15 Tex. Jur. 291. This is so because if the court had intended to merely sustain the plea in abatement and dismiss plaintiff's suit, and had intended to retain the defendant's cross-action for further consideration, it would have entered the very judgment that was entered in this case. The mere failure of the judgment to refer to defendant's cross-action was not sufficient in itself to raise an infrence that it was thereby intended to dispose of the cross-action. In other words, where the court dismisses plaintiff's suit, and does not refer to or mention the defendant's cross-action, the judgment does not dispose [***5] of the cross-action expressly or by implication, and is therefore not such a final judgment as will authorize an appeal therefrom. 3 Tex. Jur., p. 121, sec. 58; 4 C.J.S., p. 190, sec. 95; *Southern Trading Co. of Texas v. Feldman (Com. App.), 259 S.W., p. 566*, par. 2; *American Road-Mach. Co. v. City of Crockett, 49 S.W. 251*; *Anderson, Evans & Evans v. Smith, 167 S.W. 765*; *Minnock v. Garrison, 144 S.W. (2d) 328*; *National Radio Exchange v. Calhoun, 52 S.W. (2d) 946*; *Kosse National*

*Bank v. Derden, 36 S.W. (2d) 295*; *Rouser v. Hogue, 189 S.W. 349*; *Nunez v. McElroy, 184 S.W. 531*; *Partridge v. Wooton, 137 S.W. 412*; *Brown v. Wofford, 167 S.W. 764*; *Nalle v. Harrell, 118 Texas 149, 12 S.W. (2d) 550*.

The appeal in this case was from an order entered on July 26, 1939. We find among the papers in the case a supplemental transcript in which it is recited that on November 6, 1939, at a subsequent term of court, the court entered a nunc pro tunc order in which the previous judgment of date July 26, 1939, was withdrawn and a new judgment entered dismissing plaintiff's suit and denying defendant any recovery on his cross-action. However, the appeal in this case was not from the nunc pro tunc order [***6] of date November 6, 1939. The appeal bond was filed on August 17, 1939, long before the entry of the nunc pro [*299] tunc order, and recites that the appeal was taken from the judgment of date July 26, 1939.

It is well settled in this State that when a judgment is pronounced at one term and not entered of record at that term but is entered nunc pro tunc at the succeeding term, the right of appeal from such nunc pro tunc order dates from the entry thereof. *Peurifoy v. Wiebusch, 125 Texas 207, 82 S.W. (2d), p. 624*, par. 1, and authorities there cited; *Partridge v. Wooton, 137 S.W. 412, 414*. It is also well settled that an appeal bond field at a previous term of court, and prior to the entry of the nunc pro tunc order at a subsequent term of court, is premature and ineffective to perfect an appeal from such nunc pro tunc order. *Cooper v. Carter, 233 S.W. 1020*; *Burnette v. Miracle, 295 S.W. 214*; *Gilmore v. Ladell, 34 S.W. (2d) 919*; *Stinnett v. Dudley, 277 S.W. 801*; *Shields v. Amicable Life Insurance Co., 287 S.W. 293*; *Panhandle Construction Co. v. Lindsey, 123 Texas 613, 72 S.W. (2d) 1068*; *Texas & N.O.R. Co. v. Texas Tram & Lumber Co., 110 S.W., p. 140*, par. 1. Consequently it [***7] cannot be said that the appeal in this case was from the nunc pro tunc order of date November 6th, in which the defendant's cross-action was for the first time disposed of.

Since the judgment sought to be appealed from did not dispose of the defendant's cross-action, and was therefore not a final judgment, the Court of Civil Appeals acquired no jurisdiction of the appeal.

The judgment of the Court of Civil Appeals is reversed, and the appeal is dismissed.

Opinion delivered April 9, 1941.

# *Day v. Tripp*

Court of Appeals of Texas, Third District, Austin

July 29, 1999, Filed

NO. 03-97-00480-CV

## Reporter

1999 Tex. App. LEXIS 5550; 1999 WL 546869

Jim and Delores Day, Appellants v. Mary Tripp, Fred Jones, Lloyd Adams, David Ward and Catherine Ward, Appellees

**Notice:** [*1] PURSUANT TO THE TEXAS RULES OF APPELLATE PROCEDURE, UNPUBLISHED OPINIONS SHALL NOT BE CITED AS AUTHORITY BY COUNSEL OR BY A COURT.

**Subsequent History:** Motion to Increase Depoist in Lieu of Supersedeas Bond Dismissed as Moot March 9, 2000.

**Prior History:** FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT. NO. 94-00122, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING.

**Disposition:** Affirmed in Part; Reversed and Rendered in Part.

## Core Terms

appellees, Days, damages, nuisance, trespass, invasion, trial court, privacy, discomfort, measure of damages, cause of action, market value, annoyance, shooting range, noise, permanent injunction, injury to property, use and enjoyment, personal injury, property damage, no evidence, properties, complain, amounts

## Case Summary

### Procedural Posture

Appellants sought review of a judgment from the District Court of Travis County, 167th Judicial District (Texas), in favor of appellees in appellees' action for creating a private nuisance, trespass, and invasion of privacy. Appellees brought a cross-point.

### Overview

Because appellants were operating a rifle range, appellee neighbors brought suit for creation of a private nuisance, trespass, and invasion of privacy. A jury awarded appellees damages, and the trial court denied remittitur. On appeal by appellants and one cross-point by appellees, the court affirmed with respect to the damages for operating a private nuisance because the charge submitted to the jury included personal injury as well as property damage. The court reversed with respect to the trespass damages because there was no evidence conforming to the proper measure of these damages. The court reversed with respect to the damage award for the invasion of privacy claim to avoid double recovery with the private nuisance award. The trial court did not abuse its discretion in denying remittitur to appellants or in denying appellees a permanent injunction. Appellees were not entitled to an injunction merely because the rifle range amounted to a nuisance. Appellees' claims for nuisance and invasion of privacy were not barred by Tex. Gov't Code Ann. § 250.001(c), because the bar was predicated on the existence of a local government ordinance, not on the non-existence of an ordinance.

### Outcome

The court reversed the trial court's judgment insofar as it awarded damages for trespass and invasion of privacy because appellees presented no evidence of the measure of damages for trespass and the nuisance damages encompassed the invasion of privacy damages. The court overruled appellees' cross-point because the trial court did not abuse its discretion by refusing their application for a permanent injunction.

## LexisNexis® Headnotes

Real Property Law > Torts > Nuisance > General Overview

Real Property Law > ... > Nuisance > Types of Nuisances > Private Nuisances

**HN2** A private nuisance is a nontrespassory invasion of another's interest in the private use or enjoyment of land. If the invasion is unintentional, it is actionable if caused by conduct that is negligent or reckless, or results from other conduct that is culpable because abnormal and out of place in its surroundings. If the invasion is intentional, liability depends upon whether the invasion is unreasonable. An invasion is intentional if (1) the actor acts for the purpose of causing it, or (2) the actor knows that it is resulting or is substantially certain to result from his conduct.

Civil Procedure > Judgments > Pretrial Judgments > General Overview

Real Property Law > Torts > General Overview

Real Property Law > Torts > Nuisance > General Overview

Real Property Law > ... > Remedies > Damages > General Overview

Real Property Law > ... > Remedies > Damages > Measurement of Damages

Real Property Law > ... > Nuisance > Types of Nuisances > Private Nuisances

Torts > Remedies > Damages > General Overview

Torts > ... > Types of Damages > Property Damages > Measurements

**HN1** On a cause of action for private nuisance, a plaintiff is entitled to recover damages, if proved, for either or both of two kinds of injury. The first is a plaintiff's right to recover damages for any interference with the owner's use and enjoyment of the property caused by the nuisance. In legal contemplation, this amounts to an injury to the plaintiff's property. The attendant measure of damages is the depreciation, if any, in the market value of the plaintiff's property caused by the nuisance. This is determined ordinarily by the difference in market values immediately before and immediately after the injury occurred, if the injury is permanent, considering any use that may be made of the land. Such an injury to the plaintiff's use and enjoyment of the property is not itself a personal injury.

Real Property Law > Torts > General Overview

Real Property Law > Torts > Nuisance > General Overview

Real Property Law > Torts > Nuisance > Elements

Real Property Law > ... > Nuisance > Remedies > General Overview

Real Property Law > ... > Remedies > Damages > General Overview

Real Property Law > ... > Remedies > Damages > Measurement of Damages

Real Property Law > ... > Damages > Types of Damages > Compensatory Damages

Torts > ... > Types of Damages > Property Damages > Measurements

**HN3** In a nuisance action, a plaintiff may allege, prove, and recover damages for a personal injury caused by the nuisance, such as discomfort, annoyance, and injury to health. The plaintiff may recover damages for discomfort and annoyance even absent depreciation of the real property caused by the nuisance. The measure of damages for discomfort and annoyance is the amount of money necessary to provide the plaintiff reasonable and fair compensation for such personal injury.

Civil Procedure > ... > Jury Trials > Jury Instructions > General Overview

Torts > Remedies > Damages > General Overview

**HN4** Concerning damages, the trial court is authorized to submit to the jury only those elements of damages for which evidence was introduced.

Real Property Law > Torts > Trespass to Real Property

Torts > Premises & Property Liability > Trespass to Real Property > General Overview

Torts > Premises & Property Liability > Trespass to Real Property > Elements

**HN5** The elements of a cause of action for trespass are: (1) an intentional (2) entry on land (3) in the possession of another.

Real Property Law > Torts > General Overview

Real Property Law > Torts > Trespass to Real Property

Torts > Remedies > Damages > General Overview

Torts > ... > Compensatory Damages > Types of Losses > Permanent Injuries

Torts > Premises & Property Liability > Trespass to Real Property > General Overview

Torts > ... > Trespass to Real Property > Remedies > General Overview

Torts > ... > Remedies > Damages > General Overview

Torts > ... > Remedies > Damages > Measurement of Damages

**HN6** The damages recoverable for trespass are various, but where the suit is for permanent injury to land, the

measure of damages is the difference in market value of the land immediately before and immediately after the trespass.

> Governments > Local Governments > Claims By & Against

> Real Property Law > Torts > Nuisance > General Overview

*HN7* Tex. Gov't Code Ann. § 250.001(c) declares as follows: A person may not bring a nuisance or similar cause of action against a sport shooting range based on noise if the sport shooting range is in compliance with all applicable municipal and county ordinances, orders, and rules regulating noise.

> Real Property Law > Torts > Nuisance > General Overview

*HN8* By its express terms, the statutory bar of Tex. Gov't Code Ann. § 250.001(c) is predicated on the applicability and, therefore, the existence of a local-government ordinance, order, or rule, rather than the non-existence of such an enactment.

**Judges:** Before Chief Justice Aboussie, Justices Kidd and Powers *

**Opinion by:** MARILYN ABOUSSIE

# Opinion

Jim Day and Delores Day appeal from a judgment recovered against them by appellees Mary Tripp, Fred Jones, Lloyd Adams, [1] David Ward, and Catherine Ward. We will reverse the judgment in part, render judgment in the part reversed, and affirm the balance of the judgment.

## THE CONTROVERSY

[*2] The Days have, since December 1993, owned and operated a rifle and pistol range on seventeen acres adjacent to tracts of land owned by appellees and upon which they have built homes. Contending that daily gunfire on the range shook the walls and windows of their homes, that hundreds of bullets from the range entered their properties, and that they were otherwise affected adversely by the Days' operation of the range, appellees sued the Days on various causes of action discussed below. Following a jury trial, appellees recovered judgment on the verdict in the following amounts and on the actions indicated:

| Appellee | Nuisance | Trespass | Invasion of Privacy | Totals |
|---|---|---|---|---|
| Fred Jones | $ 25,000 | $ 500 | $ 500 | $ 26,000 |
| Lloyd Adams | 30,000 | -0- | 1,000 | 31,000 |
| Mary Tripp | 10,000 | -0- | -0- | 10,000 |
| David and Catherine Ward | 16,000 | 4,000 | 500 | 20,500 |
| Totals | $ 81,000 | $ 4,500 | $ 2,000 | $ 87,500 |

The Days appeal on the issues discussed hereafter.

## NUISANCE

The appellees alleged and recovered judgment on their pleadings that the Days' operation of the range amounted to a private nuisance. [2] *HN1* On that cause of action, appellees were entitled to recover damages, [*3] if proved, for either or both of two kinds of injury. The first is a plaintiff's right to recover damages for any interference with the owner's use and enjoyment of the property caused by the nuisance. In legal contemplation, this amounts to an injury to the plaintiff's *property*. The attendant measure of damages is the depreciation, if

---

* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).

[1] Lloyd Adams died after the appeal was perfected. We will "adjudicate the appeal as if all parties were alive." Tex. R. App. P. 7.1(a).

[2] *HN2* A private nuisance is a nontrespassory invasion of another's interest in the private use or enjoyment of land. If the invasion is unintentional, it is actionable if caused by conduct that is negligent or reckless, or results from other conduct that is culpable because abnormal and out of place in its surroundings. If the invasion is intentional, liability depends upon whether the invasion is unreasonable. An invasion is intentional if (1) the actor acts for the purpose of causing it, or (2) the actor knows that it *is* resulting or is substantially certain to result from his conduct. *See City of Princeton v. Abbott,* 792 S.W.2d 161, 166 (Tex. App.--Dallas 1990, writ denied) (op. on reh'g); *City of Texarkana v. Taylor,* 490 S.W.2d 191, 194 (Tex. Civ. App.--Texarkana 1972, writ ref'd n.r.e.); Restatement (Second) of Torts § 825 (1965).

any, in the market value of the plaintiff's property caused by the nuisance. This is determined ordinarily by the difference in market values immediately before and immediately after the injury occurred, if the injury is permanent, considering any use that may be made of the land. Such an injury to the plaintiff's use and enjoyment of the property is not itself a "personal injury." *See Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984); *Kraft v. Langford, 565 S.W.2d 223, 227 (Tex. 1978)*; *City of Abilene v. Downs, 367 S.W.2d 153, 160-61 (Tex. 1963)*; *Vestal v. Gulf Oil Corp., 149 Tex. 487, 235 S.W.2d 440, 441-42 (Tex. 1951)*.

**[*4] *HN3***

In the same nuisance action, however, the plaintiff may also allege, prove, and recover damages for a personal injury caused by the nuisance, such as discomfort, annoyance, and injury to health. *See, e.g., Vann v. Bowie Sewerage Co., 127 Tex. 97, 90 S.W.2d 561, 563 (Tex. 1936)* ("impairment of health and bodily discomfort"); *Daniel v. Fort Worth & Rio Grande Ry. Co., 96 Tex. 327, 72 S.W. 578, 579 (Tex. 1903)* ("personally annoyed and discomforted"); *Cain v. Rust Indus. Cleaning Servs., 969 S.W.2d 464, 470* (Tex. App.--Texarkana 1998, pet. denied) ("annoyance and discomfiture"); *Lacy Feed Co. v. Parrish, 517 S.W.2d 845, 850* (Tex. Civ. App.--Waco 1974, writ ref'd n.r.e.) ("offensive, discomforting and annoying to persons of ordinary sensibilities"). *See generally* Batemen, Annotation, *Nuisance As Entitling Owner Occupant Of Real Estate To Recover Damages For Personal Inconvenience, Discomfort, Annoyance, Anguish, Or Sickness, Distinct From Or In Addition To, Damages for Depreciation In Value Of Property Or Its Use*, 25 A.L.R. 5th 568 (1994). The plaintiff may recover damages for discomfort and annoyance **[*5]** even absent depreciation of the real property caused by the nuisance. *See Vann, 90 S.W.2d at 563*; *Chandler v. City of Olney, 126 Tex. 230, 87 S.W.2d 250, 251 (Tex. 1935)*; *Daniel, 72 S.W. at 579*. The measure of damages for discomfort and annoyance is the amount of money necessary to provide the plaintiff reasonable and fair compensation for such personal injury. *Daniel, 72 S.W. at 579*.

In their first issue on appeal, the Days contend the evidence is legally or factually insufficient to support the nuisance damages found by the jury in answer to Jury Question Number Two. The Days argue a theory that Jury Question Number Two submitted only the issue of *property damage*, measurable by the difference in market values immediately before and after the injury caused by the nuisance; and because the evidence is legally or factually insufficient to establish such market values, the nuisance damages found in response to Jury Question Number Two must be set aside. It appears to be undisputed that such market values are not shown in the evidence. We disagree, however, with the Days' predicate that Jury Question Number Two **[*6]** submitted only the issue of property damage.

Jury Question Number Two may be understood only in light of Jury Question Number One. The jury was asked and responded as follows regarding the two questions:

JURY QUESTION NO. 1

Do you find that the shooting range is a "nuisance?"

Answer: Yes or No. [The jury answered "yes."]

You are instructed that a "Nuisance" is a condition that substantially interferes with the use and enjoyment of land *by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities* attempting to use and enjoy it.

* * *

JURY QUESTION NO. 2

What sum of money, if paid now in cash, . . . would fairly and reasonably compensate the following for his or her losses, if any, resulting from the nuisance from the date of December 17, 1993 to present:

Fred Jones [$ 25,000]

Lloyd Adams [$ 30,000]

Mary Tripp [$ 10,000]

David Ward and Catherine Ward [$ 16,000]

You are instructed that damage to the property of Plaintiffs *includes* reduction in value as well as loss of the use and enjoyment of the property.

(Emphasis added.) On the face of the foregoing, it is obvious that appellees' allegations of **[*7]** discomfort and annoyance--or personal injury--were incorporated in the definition of "nuisance" given in Jury Question Number One, together with the allegation of interference with their use and enjoyment of their property--or injury to property. And Jury Question Number Two, conditioned

on a "yes" answer to Jury Question Number One, asked the jury to determine the amount of money necessary to fairly and reasonably compensate the appellees for both kinds of injury, if any, caused by the nuisance. This is an accepted method for submitting to the jury both kinds of injury--personal injury and injury to property. *See Lacy Feed Co., 517 S.W.2d at 850-51; Meat Producers, Inc. v. McFarland, 476 S.W.2d 406, 410-11* (Tex. Civ. App.--Dallas 1972, writ ref'd n.r.e.).

We should add that the trial court was obliged to submit to the jury the questions, instructions, and definitions raised by the evidence. *Tex. R. Civ. P. 278*. **HN4** Concerning damages, the trial court was authorized to submit only those elements of damages for which evidence *was* introduced. *See* 4 *Texas Civil Practice* § 22:33[b], at 241-42 (Diane M. Allen et al. eds., 1992 ed.). Thus, the **[*8]** Days' theory is inherently doubtful because it argues that the trial court in the present case submitted a single element of damages for which *no* evidence was introduced (property damage) while neglecting to submit the only element for which evidence *was* introduced (personal-injury damages). In any event, the Days did not object to Jury Question Number Two on the ground that it was not justified by the evidence.

We therefore reject the Days' contention that the charge submitted to the jury only the issue of property damages. The Days do not contend that the evidence supporting personal-injury damages is legally or factually insufficient; and, as pointed out above, these are recoverable irrespective of any injury to property. Presumably then, the amounts found by the jury in Jury Question Number Two are based on evidence of personal injury. The contrary is not shown.

We hold accordingly and overrule the Days' first assignment of error.

## TRESPASS

The Days direct two assignments of error at the award of damages for trespass. [3] In the first, they complain there was no evidence to support the jury's affirmative answer to Jury Question Number Three, which asked **[*9]** the jury whether Jim Day or Delores Day trespassed on the property of Fred Jones and David and Catherine Ward. We need not discuss the point because we will sustain the Days' second assignment of error concerning the award of damages for trespass. Therein, they point out correctly that there is no evidence conforming to the measure of damages that governed the issue.

**[*10]** In Jury Question Number Four, the jury was asked and responded as follows:

JURY QUESTION NO. 4

What sum of money paid now in cash, do you find would fairly and reasonably compensate the following for his/her losses, if any, resulting from Defendants' trespass:

Fred Jones [$ 500]

Mary Tripp [- 0 -]

David and Catherine Ward [$ 4,000]

You are instructed that:

the measure of damages is the difference in the market value of the land before and after the trespass.

In our discussion of appellees' cause of action for nuisance, we pointed out that it is undisputed that the appellees' introduced no evidence tending to prove the market value of their properties immediately before and immediately after any injury to property.

The appellees point to evidence introduced by them which tended to prove the differing market values of the property *with and without the nuisance*, the measure of damages for temporary injury to property. *See Sherman Gas & Elec. Co. v. Belden, 103 Tex. 59, 123 S.W. 119, 121 (Tex. 1909); Meat Producers, 476 S.W.2d at 413*. We therefore do not understand the applicability of these decisions. Appellees did not object to the **[*11]**

---

[3] **HN5** The elements of a cause of action for trespass are: (1) an intentional (2) entry on land (3) in the possession of another. Restatement (Second) of Torts § 158 (1965). *See First City Nat'l Bank v. Japhet, 390 S.W.2d 70, 74-75* (Tex. Civ. App.--Houston 1965, writ denied). **HN6** The damages recoverable for trespass are various, but where the suit is for permanent injury to land, the measure of damages is the difference in market value of the land immediately before and immediately after the trespass. *See Uvalde County v. Barrier, 710 S.W.2d 740, 743-44* (Tex. App.--San Antonio 1986, no writ).

Here, the entry of appellees' properties was alleged to be effected by bullets coming to rest on their properties. The resulting injury was alleged to be an interference with the appellees' use and enjoyment of their properties.

instruction fixing the measure of damages for trespass, given in Jury Question Number Four. This instruction fixed the measure of damages as the difference in *market value before and after the trespass*. However erroneous this may be in light of the evidence and pleadings, the jury was bound by the instruction. We are required to judge the sufficiency of the evidence by that measure, and we find no evidence of such values. *See Tex. R. App. P. 33.1*; 4 *Texas Civil Practice* § 22.22[b], at 275.

We will therefore reverse the judgment insofar as it awards damages for trespass and render judgment that the appellees take nothing by that cause of action.

## INVASION OF PRIVACY

In answer to Jury Question Number Five, the jury found that Jim Day or Delores Day had "intruded upon the privacy of" Fred Jones, Lloyd Adams, and Catherine Ward. The question was submitted with the following instruction:

It is an "Intrusion upon a person's privacy" if another person wrongfully intrudes into the private activities of such person in a manner which would outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities. Mental suffering is more than **[*12]** disappointment, anger, resentment, or embarrassment, although it may include all of these elements. It includes a mental sensation of pain resulting from such painful emotion as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation.

Appellees did not object to the instruction.

In Jury Question Number Six, the jury was asked and responded as follows:

What sum of money would fairly and reasonably compensate the following for the damages suffered due to the intrusion of [sic] privacy? In answering this question you shall take into account the following elements of damage and none other: (1) mental suffering; and (2) physical pain.

Fred Jones [$ 500]

Lloyd Adams [$ 1,000]

Mary Tripp [- 0 - ]

David Ward [- 0 - ]

Catherine Ward [$ 500]

Appellees did not object to the form of submission of Jury Question Number Six.

The Days contend the evidence is legally or factually insufficient to support the jury findings in response to Jury Questions Number Five and Six. We will summarize the relevant evidence.

Fred Jones testified that the constant discharge of large-caliber rifles at the shooting range **[*13]** interfered with his ability to carry on a conversation on his patio and with his ability to hear his television set while inside his home. Lloyd Adams testified that the shooting began about eight or ten o'clock in the morning and continued until nine o'clock at night, although he occasionally heard shooting until midnight or after, and that the noise interfered with his sleeping. Catherine Ward testified that the shooting occurred seven days a week and interfered with her ability to carry on a conversation or hear the television set inside her home. All three concluded that the noise invaded their privacy.

We believe the foregoing evidence may not be considered in judging the sufficiency of the evidence with regard to the appellees' action for invasion of privacy. Any injuries implicit in such evidence were, in our view, encompassed in the jury's award of personal-injury damages in answer to Jury Question Number Two and would amount to a double recovery for the same injuries if allowed also under Jury Question Number Six. We do not see how the described effects of the invasion of appellees' privacy are distinguishable from the annoyance and discomfort resulting from the nuisance. **[*14]** Without other evidence, the body of evidence will not support the jury award of damages for invasion of privacy found in Jury Question Number Six. We hold accordingly.

We therefore reverse the judgment insofar as it awards damages for invasion of privacy. We render judgment that the appellees take nothing by that action.

## EXCESSIVE DAMAGES

The Days assign as error the trial court's refusal to order a remittitur based on their contention that certain amounts awarded by the jury were grossly excessive. We conclude the trial court did not abuse its discretion for the reasons that follow.

The Days complain first that the $ 30,000 awarded Fred Jones for injury to his land, by reason of the nuisance, exceeded the $ 28,645 fixed by appellees' property-appraisal witness as the amount of his damages. We overrule the contention because the entire $ 30,000 could permissibly include under the charge sums awarded for personal injury as discussed above. This element of damages, as pointed out previously, is not assailed on appeal.

The Days complain next that the $ 1,000 awarded Fred Jones for trespass and invasion-of-privacy damages, and the $ 4,500 awarded David and Catherine Ward for [*15] the same torts, are excessive because they are not supported by the evidence and were fully encompassed within the damages awarded for nuisance. We have previously reversed these awards and need not consider this aspect of the Days' complaint of excessive damages.

## STATUTORY BAR

In their sixth issue, the Days complain that the trial court erred in failing to hold the appellees' nuisance and invasion-of-privacy actions barred by reason of _Texas Local Government Code section 250.001(c)_. **HN7** The statute declares as follows:

A person may not bring a nuisance or similar cause of action against a sport shooting range based on noise _if the sport shooting range is in compliance with all applicable municipal and county ordinances, orders, and rules regulating noise._

Tex. Gov't Code Ann. § 250.001(c) (West Supp. 1999) (emphasis added). Because no municipal or county ordinance, order, or rule regulating noise applied to the Days' shooting range, the trial court evidently determined that the statute did not constitute a bar to the appellees' causes of action.

The Days argue that the trial court misconstrued the statute--if [*16] a municipality or county decides not to regulate noise, then a shooting range is necessarily in compliance with that decision. The statutory language will not reasonably bear the Days' interpretation. **HN8** By its express terms, the statutory bar is predicated on the applicability and therefore the existence of a

local-government ordinance, order, or rule, rather than the non-existence of such an enactment. Moreover, the Days' reasoning is unacceptable: the absence of such an enactment does not necessarily reflect a decision; it reflects only inaction. We overrule the Days' contention.

## CROSS APPEAL

In a single cross-point, appellees complain that the trial court abused its discretion by refusing their application for a permanent injunction against future shooting on the Days' range. [4]

[*17] After the verdict in July 1996, which determined that the Days' operation of the range amounted to a private nuisance, the trial court issued on the appellees' application a temporary restraining order prohibiting the discharge of firearms at the range. Thereafter, the trial court held a hearing on appellees' application for a permanent injunction, and denied such relief in the court's final judgment signed April 14, 1997. We cannot tell from the record whether an evidentiary hearing was held on the application for permanent injunction. The appellees have not informed us in that regard; the Days contend that a hearing of that kind was held. In all events, no transcript of such a hearing appears in the appellate record.

The appellees were not entitled to a permanent injunction as a matter of right based simply on a judgment which establishes that the Days' operation of the range amounts to a nuisance. _See Storey v. Central Hide & Rendering Co., 148 Tex. 509, 226 S.W.2d 615, 618 (Tex. 1950)_. And in the absence of a record demonstrating that the trial court abused its discretion in some particular by refusing the appellees' application for a permanent injunction, we [*18] cannot hold that the court did so. We therefore overrule appellees' cross-point. _See Phaup v. Boswell, 731 S.W.2d 625, 627_ (Tex. App.--Houston [1st Dist.] 1987, no writ); 6 _Texas Civil Practice_ § 48.3, at 1222-24 (1998).

For the reasons given, we reverse the trial-court judgment insofar as it awards damages for trespass and invasion of privacy. We render judgment that appellees take nothing by those causes of action. We affirm the balance of the judgment. _See Tex. R. App. P. 43.2 (c)_.

---

[4] The appeal was perfected before September 1, 1997. Appellees were therefore allowed to bring their cross-point without perfecting their own appeal, pursuant to the former Texas Rules of Appellate Procedure. _See_ 6 _Texas Civil Practice_ § 13.5, at 374 (1998).

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and Powers *

Affirmed in Part; Reversed and Rendered in Part

Filed: July 29, 1999

* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. *See Tex. Gov't Code Ann. § 74.003(b)* (West 1998).



Caution
As of: Mar 30, 2015

**Elsie Dezso, Appellant v. Paul Harwood, Appellee**

**NO. 03-95-00539-CV**

**COURT OF APPEALS OF TEXAS, THIRD DISTRICT, AUSTIN**

*926 S.W.2d 371*; *1996 Tex. App. LEXIS 2560*

**June 26, 1996, Filed**

**SUBSEQUENT HISTORY:** [**1] Motion for Rehearing Overruled July 31, 1996. Released for Publication July 31, 1996.

**PRIOR HISTORY:** FROM THE COUNTY COURT OF AT LAW NO. 2 OF TRAVIS COUNTY. NO.224,370, HONORABLE ORLINDA L. NARANJO, JUDGE PRESIDING.

This Opinion Substituted on Motion for Rehearing for Withdrawn Opinion of May 1, 1996, Previously Reported at: *1996 Tex. App. LEXIS 1707*.

**DISPOSITION:** Affirmed

**JUDGES:** Before Justices Powers, Jones and B. A. Smith

**OPINION BY:** Bea Ann Smith

**OPINION**

[*372] **ON MOTION FOR REHEARING**

Our opinion of May 1, 1996 is withdrawn and this one is substituted in its place.

Elsie Dezso appeals by writ of error a default judgment rendered against her March 27, 1995 in favor of Paul Harwood. In four points of error, Elsie Dezso contends that the trial court erred in rendering a default judgment against her because she was not a party to the suit and she was not properly served with citation, as the citation did not include the name "Elsie Dezso." We will affirm the default judgment.

**BACKGROUND**

In his original petition, Harwood alleged that he entered into a distributorship agreement with Elsie Dezso's son, Danny Dezso, and Danny's business, Christian Symbols, acting [**2] for themselves and as authorized agents of Judi Dezso, Judi's Cupboard, Judi's Card and Gift Shop and Christian Symbols. The agreement would have allowed Harwood to obtain display cases, jewelry merchandise, and other products to be sold in Austin and surrounding areas. Additionally, the contract provided that Danny Dezso would assist in marketing the merchandise. Harwood paid for the distributorship in part by cash and in part by charging $ 3,905 on his credit cards through Judi's Cupboard and Judi's Card and Gift Shop.

In February 1995, Harwood filed suit under the Deceptive Trade Practices - Consumer Protection Act alleging breach of warranty, breach of contract, and other misrepresentations with regard to the distributorship agreement. *See Tex. Bus. & Com. Code Ann. §§ 17.41-19.47* (West 1987 & Supp. 1996).

Elsie Dezso operates Judi's Cupboard, Inc., also doing business as Judi's Card and Gift Shop; she owns the corporation with her [*373] husband and her two daughters. Danny Dezso operates a separate business known as Christian Symbols. Danny is married to Judi Dezso, who has no apparent connection with Elsie

Dezso's businesses and had no business dealings with Mr. Harwood. [**3] [1]

> 1 Although Danny Dezso was a party in the original suit, the trial court severed the claims as to him.

Because Elsie Dezso's businesses are called "Judi's Cupboard" and "Judi's Card and Gift Shop," Harwood mistakenly believed that the appropriate defendant in his action was named Judi Dezso, when in fact her name was Elsie Dezso. Accordingly, the original citation was issued to "Dezso, Judi Individually and DBA Judi's Cupboard DBA Judi's Card & Gift Shop & DBA Christian Symbols" without mention of Elsie Dezso. Attached to the citation was Harwood's original petition reciting his DTPA claims. Although Harwood referred to Elsie Dezso as Judi Dezso in the petition, the petition explicitly listed all the DTPA complaints regarding his contractual agreement with Elsie Dezso and her son. Elsie Dezso does not dispute that she was actually served with the citation and the original petition.

When Elsie Dezso failed to respond to the citation, Harwood obtained a default judgment against her. The default judgment [**4] refers to Elsie Dezso as "Judi Dezso, also known as Elsie Dezso, individually and doing business as Christian Symbols, Judi's Cupboard and Judi's Card and Gift Shop . . . ." Elsie Dezso filed a writ of error seeking to overturn the default judgment.

### DISCUSSION AND HOLDINGS

By her four points of error, Elsie Dezso essentially contends that the trial court erred in rendering a default judgment against her, because her name did not appear on the citation. Elsie Dezso asserts that because she was not an intended party to the suit the default judgment cannot stand.

An appeal by writ of error directly attacks the default judgment. *McKanna v. Edgar, 388 S.W.2d 927, 928 (Tex. 1965)*. In such an appeal "the question to be decided is whether there is a lack of jurisdiction apparent on the face of the record which would vitiate the trial court's judgment." *Id.* Elsie Dezso basically argues that because the name Elsie Dezso was not on the citation or pleadings, she was not a party to the suit; thus, jurisdiction would not be proper over her. In cases such as the one at hand, "it is essential that the record affirmatively show a strict compliance with the provided manner and mode [**5] of service of process." *Id.* The record in this case indicates that Elsie Dezso did in fact receive service of process, although under a misnomer.

Elsie Dezso asserts that this is not a case of misnomer, but instead is a case of misidentification in which the wrong defendant was served. If the wrong defendant

was served, the default judgment cannot stand. *Callan v. Bartlett Elec. Coop., 423 S.W.2d 149, 156 (Tex. Civ. App.--Austin 1968, writ ref'd n.r.e.)*; *Thomas v. Cactus Drilling Corp., 405 S.W.2d 214, 216 (Tex. Civ. App.--Austin 1966, no writ)*. In *Thomas,* this Court stated:

> The principle of these cases is simple. If a person thought to be named A is sued and served under that name the judgment against him is valid even though his name is B. But if one has a cause of action against a person with the same or similar name, service on the person against whom one has no cause of action will not support a judgment against the one amenable to the cause of action asserted.

*Id.* Elsie Dezso seems to rely on *Thomas* and similar cases in arguing that when there are two separate persons or corporations involved with the same or similar names, the case [**6] is one of mistaken identity. However, these cases simply explain that when the *incorrect* defendant is served with citation, a default judgment against such incorrect defendant cannot extend to cover the *correct* defendant, even if their names are the same or similar.

When the correct defendant is served under the wrong name the case is not one of misidentification but rather misnomer. *Enserch Corp. v. Parker, 794 S.W.2d 2, 4-5 [*374] (Tex. 1990)*; *Adams v. Consolidated Underwriters, 133 Tex. 26, 124 S.W.2d 840, 841 (Tex. 1939)*; *West v. Johnson, 129 S.W.2d 811, 815 (Tex. Civ. App.--Fort Worth 1939, writ ref'd)*; *Haley v. Young, 541 S.W.2d 217, 219 (Tex. Civ. App.--Houston 1976, no writ)*. The supreme court in *Adams* explained the misnomer rule:

> When a person intended to be sued is sued and served by a wrong name, and such person fails to appear and plead such misnomer in abatement, and suffers judgment to be obtained, he is bound by such judgment, and in all future litigation he may be connected with such suit or judgment by proper averments; and when such averments are made and proved, the party intended to be named in the judgment is affected [**7] or concluded to the same extent that he would have been if he had been named and served by his true name.

*Adams, 124 S.W.2d at 841*. As the court in *West* stated, "The test seems to be whether or not the right person was sued, and whether or not he was put on notice that he, and not some other person, had been sued." *West, 129 S.W.2d at 815*.

Given the circumstances in this case, we believe that Elsie Dezso had adequate notice that she had been sued by Harwood. Although the citation did not refer to Elsie Dezso by her correct name, her corporation and its business names were on the citation. Additionally, the original petition expressly pointed out all of Harwood's complaints regarding his dealings with Elsie Dezso, her son, and the related businesses. Based on the allegations in the petition, Elsie Dezso knew that her daughter-in-law, Judi Dezso, was not in any way involved in the business dealings that formed the basis of Harwood's lawsuit. The allegations also made clear that Elsie Dezso's businesses, Judi's Cupboard and Judi's Card and Gift Shop, *were* involved in the transactions that were the subject of Harwood's suit. Further, Elsie Dezso testified at [**8] a hearing on her motion to set aside the default judgment that "since the store's name is Judi, a lot of people will call me Judi because . . . they think it is my name." Based on these factors, Elsie Dezso should have logically concluded that Harwood intended to sue her and that he had simply misnamed her.

Texas case law supports the principle that unless the pleadings and citation actually mislead the misnamed defendant, a default judgment will not be rendered void. *Baker v. Charles, 746 S.W.2d 854, 855* (Tex. App.--Corpus Christi 1988, no writ); *Cockrell v. Estevez, 737 S.W.2d 138, 140* (Tex. App.--San Antonio 1987, no writ). The *Cockrell* court stated:

When an intended defendant is sued under an incorrect name, jurisdiction is proper after service on defendant under misnomer, but it must be clear that no one was misled.

A misnomer of a defendant does not render a judgment based on personal service, even one by default, void, provided the intention to sue the defendant actually served with citation is so evident from the pleadings and process that the defendant could not have been misled.

*Cockrell, 737 S.W.2d at 140* (citations omitted). In the circumstances [**9] of this case, Elsie Dezso could not have been misled into believing that her daughter-in-law was the intended defendant of Harwood's suit regarding the distributorship.

It is apparent that Elsie Dezso was Harwood's intended defendant and was simply misnamed. Appellant was, therefore, a party to the suit who was properly served with citation, and there is no lack of jurisdiction apparent on the face of the record. Accordingly, we overrule all four points of error.

Having found no error, we affirm the default judgment.

Bea Ann Smith, Justice

Before Justices Powers, Jones and B. A. Smith

Affirmed

Filed: June 26, 1996





Analysis
As of: Mar 30, 2015

**FLUOR DANIEL, INC., Appellant, v. H.B. ZACHARY COMPANY, INC., Appellee.**

**NUMBERS 13-03-585-CV AND 13-03-586-CV**

**COURT OF APPEALS OF TEXAS, THIRTEENTH DISTRICT, CORPUS CHRISTI**

*2005 Tex. App. LEXIS 8403*

**October 13, 2005, Memorandum Opinion Delivered**
**October 13, 2005, Memorandum Opinion Filed**

**SUBSEQUENT HISTORY:** [*1]
Petition for review denied by *Fluor Daniel, Inc. v. H.B. Zachry Co., 2006 Tex. LEXIS 478 (Tex., May 19, 2006)*

**PRIOR HISTORY:** On appeal from the 94th District Court of Nueces County, Texas.
*Fluor Daniel, Inc. v. H. B. Zachry Co., 1 S.W.3d 166, 1999 Tex. App. LEXIS 5441 (Tex. App. Corpus Christi, 1999)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellant, a contributor to a settlement fund, sought review of an order of the 94th District Court of Nueces County (Texas), which severed appellant's original claim for declaratory relief against appellee, another contributor to the settlement fund, from appellee's counterclaim for attorney's fees and awarded attorney's fees to appellee.

**OVERVIEW:** In the underlying cause, the trial court interpreted an arbitration decision and required appellee to contribute only 10 percent of the settlement fund. The court held that the record clearly indicated that the trial court intended to dispose of all issues and parties involved in the claim for declaratory relief. The trial court severed the two causes of action, thereby making the judgment on the declaratory judgment claim final and

appealable. That judgment denied all relief not specifically therein granted. Although appellant alleged that the declaratory judgment could not provide the basis for an award of attorney's fees, appellant was the party who first brought a declaratory judgment action. There was more than a scintilla of evidence to support the attorney's fees award under *Tex. Civ. Prac. & Rem. Code Ann. § 37.009* (1997). Appellee was the prevailing party in a declaratory judgment action, and the arbitration agreement between the parties specifically called for an award of attorney's fees when one party sought judicial relief. Moreover, appellee presented numerous invoices from counsel, which detailed the expenses appellee incurred in defending and prosecuting its claims.

**OUTCOME:** The court affirmed the trial court's judgment.

**LexisNexis(R) Headnotes**

*Civil Procedure > Declaratory Judgment Actions > General Overview*
*Civil Procedure > Remedies > Costs & Attorney Fees > General Overview*
[HN1] See *Tex. Civ. Prac. & Rem. Code Ann. § 37.009* (1997).

*Civil Procedure > Pretrial Matters > Separate Trials*
*Civil Procedure > Appeals > Appellate Jurisdiction > Final Judgment Rule*
[HN2] A judgment is final for purposes of appeal if it disposes of all pending parties and claims in the record, except as necessary to carry out the decree. Whether a judicial decree is a final judgment must be determined from its language and the record in the case. Moreover, a severance divides the lawsuit into two or more separate and independent causes. When this is done, a judgment that disposes of all parties and issues in one of the severed causes is final and appealable.

*Civil Procedure > Appeals > Appellate Jurisdiction > Final Judgment Rule*
[HN3] Finality must be resolved by a determination of the intention of the court as gathered from the language of the decree and the record as a whole, aided on occasion by the conduct of the parties.

*Civil Procedure > Declaratory Judgment Actions > State Judgments > Discretion*
*Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Statutory Awards*
[HN4] *Tex. Civ. Prac. & Rem. Code Ann. § 37.009* explicitly states that the trial judge may award reasonable and necessary attorney's fees as are equitable and just for any proceeding brought under the Texas Declaratory Judgments Act of Tex. Civ. Prac. & Rem. Code Ann. ch. 37. *Tex. Civ. Prac. & Rem. Code Ann. § 37.009* (1997). Thus, the award of attorney's fees in a declaratory judgment action is entrusted to the discretion of the trial court. In a declaratory judgment action, a successful defendant may recover attorney's fees if the defendant so requests.

*Civil Procedure > Declaratory Judgment Actions > General Overview*
*Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Reasonable Fees*
*Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Statutory Awards*
[HN5] The standards for awarding attorney's fees pursuant to the Texas Declaratory Judgments Act of Tex. Civ. Prac. & Rem. Code Ann. ch. 37 are that (1) the fees must be reasonable and necessary, which is a question of fact, and (2) the fees must be equitable and just, which is a matter of law. The trial court abuses its discretion if it awards attorney's fees arbitrarily, unreasonably, or without regard to guiding legal principals. Additionally, there must be supporting evidence in order to sustain a verdict

of an award of attorney's fees. In sum, when reviewing an award of attorney's fees under the Act, the court of appeals must determine whether the trial court abused its discretion by awarding fees when there was insufficient evidence that the fees were reasonable and necessary, or when the award was inequitable or unjust.

*Civil Procedure > Declaratory Judgment Actions > General Overview*
*Civil Procedure > Remedies > Costs & Attorney Fees > General Overview*
[HN6] Under the Texas Declaratory Judgments Act of Tex. Civ. Prac. & Rem. Code Ann. ch. 37, a party does not have to prevail to be awarded attorney's fees.

**COUNSEL:** For APPELLANT: William N. Woolsey, LAW OFFICE of WILLIAM N WOOLSEY, P.C., Corpus Christi, TX.

For APPELLEE: James F. Buchanan, WELDER, LESHIN & MAHAFFEY, Corpus Christi, TX.

**JUDGES:** Before Chief Justice Valdez and Justices Hinojosa and Rodriguez. Opinion by Chief Justice Valdez.

**OPINION BY:** Rogelio Valdez

**OPINION**

MEMORANDUM OPINION

Opinion by Chief Justice Valdez

This is an appeal from a trial court's order severing a case and awarding attorney's fees in one of the two severed causes of action. A thorough articulation of the underlying dispute between these parties, which triggered in part the current appeal, can be found in our opinion reported at *Fluor Daniel, Inc. v. H.B. Zachry, Co., 1 S.W.3d 166 (Tex. App.-Corpus Christi 1999, pet. denied)*. We affirm.

**FACTS**

Essentially, this dispute arises from an action to construe and enforce an arbitration award. Appellant, Fluor Daniel, Inc., and appellee, H.B. Zachry Company, Inc., were originally both named defendants in a lawsuit brought by Arturo Ruiz against several defendants in 1992. [1] Ruiz was an employee of Citgo Petroleum Corporation when he fell and sustained debilitating injuries. Fluor, Zachry and a third-party [*2] entered into a settlement agreement with Ruiz and created a settlement fund. [2] Fluor initially contributed $ 800,000 to the fund and Zachry contributed $ 50,000. As part of the agreement, Fluor and Zachry agreed to arbitrate the compara-

tive responsibility and contribution between themselves. [3] Fluor and Zachry presented their arguments before an arbitration panel, which apportioned liability as follows: Citgo, 80% liable; Fluor, 10% liable; and Zachry, 10% liable.

1    Cause No. 92-1055-C, styled *Arturo Ruiz v. H.B. Zachry Company, Fluor Daniel, Inc., Mundy Services Corp., and Brand Scaffold Builders, Inc.*

2    The third-party is Mundy Industrial Maintenance, Inc. (incorrectly named by Ruiz as Mundy Service Corp.). Mundy contributed $ 50,000 to the settlement fund and both Fluor and Zachry agreed to release Mundy from further contribution and indemnity.

3    The agreement provided in relevant part:

The respected [sic] percentages of liability, if any, of the parties in the total sum of the settlement fund will be determined under this agreement, it being the intention of the parties that Zachry or Fluor Daniel or a third party or all or some of them be found liable to the extent of the total thereof.

[*3]   The determination of exactly what the percentage of liability apportionment meant, however, resulted in the ensuing litigation. Fluor construed the arbitration panel's decision to mean that since Citgo was statutorily shielded from liability, both Fluor and Zachry should contribute equally to the settlement fund because they were found equally at fault. However, Zachry interpreted the panel's ruling differently, believing that since it was held to be only 10% at fault, it is responsible for providing only 10% of the settlement fund. The crux of Zachry's belief is that the panel had the option of finding Citgo 100% percent liable, which would have yielded the status quo. The status quo would have been exactly what the parties tendered into the settlement fund prior to arbitration, with Fluor contributing $ 800,000 and Zachry contributing $ 50,000.

Fluor sought judicial review of the panel's ruling. [4] First, Fluor attempted to have the district court modify, correct and confirm the arbitration panel's final award to their interpretation. The district court denied the relief Fluor sought and entered a final judgment in Cause No. 92-1055-C. No appeal from this judgment was taken; therefore, [*4]   this became a final and unappealable order.

4    The district court's order dismissing with prejudice certain claims, pursuant to the settlement agreement, specifically retained Zachry and Fluor's contribution claims, subject to binding arbitration.

Fluor then sued Zachry in the United States District Court for the Southern District of Texas. [5] This suit, however, was dismissed for want of jurisdiction pursuant to the *Rooker-Feldman* doctrine. [6] Fluor, still seeking relief, next filed suit as Cause No. 97-3543-C in the same Texas district court that rendered the initial judgment in Cause No. 92-1055-C. [7] Zachry's answer raised, *inter alia*, the affirmative defenses of *res judicata* and collateral estoppel. Zachry also filed a counterclaim in which it asked the district court to declare that Fluor violated the agreement regarding arbitration, therefore, entitling Zachry to attorney's fees. [8] Zachry also filed a motion for summary judgment asserting that *res judicata* and collateral estoppel precluded [*5]   Fluor from recovering. The trial court granted the motion and Fluor appealed. We reversed and remanded, holding that these doctrines were inapplicable because Fluor's suit was only asking the trial court to give effect to a prior judgment and not reapportion liability. *See   Fluor, 1 S.W.3d at 169-70.*

5    Civil Action No. C-96-603, styled *Fluor Daniel, Inc. v. H.B. Zachry Co., Inc.*

6    The *Rooker-Feldman* doctrine is discussed in more detail in our previous opinion. *See   Fluor Daniel, Inc. v. H.B. Zachry, Co., 1 S.W.3d 166, 168-69 (Tex. App.-Corpus Christi 1999, pet. denied).* Essentially, we stated that "under the *Rooker-Feldman* doctrine, federal district courts, as courts of original jurisdiction, lack jurisdiction to review, modify, or nullify final orders of state courts." *Id. at 168.*

7    The basis of this petition was "to have the Court construe the Arbitration Agreement between these parties and its earlier judgment entered pursuant to such Agreement and declare the meaning thereof in aid of enforcement of the Judgment." Fluor conceded that the court's prior judgment was final, binding, and unappealable under the terms of the agreement, but it asked the court to declare the prior judgment's actual dollar effect as to each party, due to the fact that the arbitration panel's decision apportioning liability against Citgo was "inconsistent with Texas law" as well as the settlement agreement between Fluor and Zachry.

[*6]

8    Chapter 37 of the Texas Civil Practice and Remedies Code, known as the Declaratory Judgments Act, provides that in any proceeding under the Act [HN1] "the court may award costs and

reasonable and necessary attorney's fees as are equitable and just." *TEX. CIV. PRAC. & REM. CODE ANN. § 37.009* (Vernon 1997).

On remand, the district court severed the claims into two causes, Cause No. 97-3543-C (Fluor's original claim) and 97-6119-C (Zachry's counterclaim for attorney's fees). Cause No. 97-3543-C proceeded to a bench trial in which the court rendered judgment in favor of Zachry on January 2, 2001. Fluor filed a timely motion for new trial, which was overruled by operation of law, and attempted to appeal the final judgment in Cause No. 97-3543-C. However, we dismissed that appeal for want of jurisdiction, holding that Fluor did not timely file its notice of appeal pursuant to *Texas Rule of Appellate Procedure 26.1. See Fluor Daniel, Inc. v. H.B. Zachry, Co., No. 13-01-289-CV, 2001 Tex. App. LEXIS 3675 (Tex. App.-Corpus Christi* [*7] *May 24, 2001, no pet.)* (not designated for publication).

Cause No. 97-6119-C (Zachry's claim for attorney's fees) then proceeded to a jury trial. The jury returned judgment in favor of Zachry and awarded it reasonable and necessary attorney's fees in the amount of $ 50,000 for defending Cause No. 97-3543-C and for prosecuting Cause No. 97-6119-C. The jury also held that if Cause No. 97-6119-C were appealed to this Court, then the reasonable and necessary attorney's fees Zachry would additionally incur on appeal would be $ 12,500. The district court subsequently rendered judgment on the verdict. The court entered its "Final Judgment" on July 3, 2003, according to the court's docket sheet; however, the date was not noted on the copy of the judgment. On July 30, 2003, Fluor filed a motion for new trial, and Zachry filed an "Unopposed Motion For Entry of Judgment Nunc Pro Tunc" seeking to have the nunc pro tunc judgment date reflect the date of the final judgment. The court signed the nunc pro tunc judgment on July 31, 2003. Subsequently, Fluor filed an amended motion for new trial on August 12, 2003, and then it filed its notice of appeal for Cause No. 97-6119-C on September 30, 2003. In [*8] addition, and on the same day, Fluor filed another notice of appeal for Cause No. 97-3543-C.

## FINALITY OF JUDGMENT

We address Fluor's second issue which essentially asserts that "the trial court erred in severing the attorney's fees issue and rendering an ostensible final judgment in Cause No. 97-3543-C." Fluor did not, however, present an argument regarding the propriety of the severance; rather, Fluor avers that the judgment entered on January 2, 2001 in Cause No. 97-3543-C was not final and it did not become final until Cause No. 97-6119-C made it final. Fluor's argument is wholly unfounded.

The Texas Supreme Court has stated that [HN2] "a judgment is final for purposes of appeal if it disposes of all pending parties and claims in the record, except as necessary to carry out the decree." *Lehmann v. Har-Con Corp., 39 S.W.3d 191, 195, 44 Tex. Sup. Ct. J. 364 (Tex. 2001)* (citations omitted). "Whether a judicial decree is a final judgment must be determined from its language and the record in the case." *Id.* Moreover, "[a] severance divides the lawsuit into two or more separate and independent causes. When this is done, a judgment that disposes of all parties and issues in *one* of [*9] the severed causes is final and appealable." *Hall v. City of Austin, 450 S.W.2d 836, 837-38, 13 Tex. Sup. Ct. J. 163 (Tex. 1970)* (emphasis added).

The trial court severed the two causes of action on January 2, 2001, thereby making the judgment in Cause No. 97-3543-C final and appealable. The judgment for Cause No. 97-3543-C reads in pertinent part:

> It is hereby ORDERED, ADJUDGED AND DECREED that the declaratory relief sought by H. B. Zachry Company, Inc. that its liability for contribution to Fluor Daniel, Inc. be limited to ten percent (10%) of the total settlement fund as determined by the Arbitration Panel in its Final Decision must be and it is hereby GRANTED.
>
> . . .
>
> IT IS ORDERED, ADJUDGED and DECREED that the Counter-Claim of H. B. Zachry Company, Inc. for recovery of attorney's fees be and the same is hereby severed from the claim of Fluor Daniel Inc. and H. B. Zachry, Inc. and the Counter-Claim of H. B. Zachry Company, Inc. against Fluor Daniel, Inc. as to which the Court has entered this Judgment, which Judgment is hereby made final; and
>
> IT IS FURTHER ORDERED that the Clerk of the Court re-docket the pleadings of H. B. Zachry Company, Inc. asserting its claim for attorney's [*10] fees as Cause No. 97-6119-C in this Court in such other manner as approved by the Court which will preserve such claims.
>
> All relief not specifically herein granted, is denied.

Therefore, the record clearly indicates that the trial court intended to dispose of all issues and parties in-

volved in Cause No. 97-3543-C. Further, the parties themselves understood this is what the trial court intended. [HN3] "Finality 'must be resolved by a determination of the intention of the court as gathered from the language of the decree and the record as a whole, aided on occasion by the conduct of the parties.'" *Lehmann, 39 S.W.3d at 203* (quoting 5 RAY W. MCDONALD, TEXAS CIVIL PRACTICE § 27:4[a], at 7 (John S. Covell, ed., 1992 ed.)). The record is patently clear from the conduct of the trial judge and the parties that they intended the January 2, 2001 final order in Cause No. 97-3543-C to be final and appealable. In fact, Fluor attempted to appeal this judgment, albeit after the time for appeal had expired. Fluor had its chance to appeal the final judgment of Cause No. 97-3543-C but failed to abide by the rules. Fluor now seeks a second bite at the apple by again bringing an appeal [*11] but disguising it as an attack on the severance of the case. Accordingly, Fluor's issue on severance is overruled.

## ATTORNEY'S FEES

We now turn to Fluor's issue regarding the award of attorney's fees. In its counterclaim, Zachry alleged that "as the prevailing party in a suit for declaratory judgment [Cause Number 97-3453-C] it would be just and equitable for . . . [it] to recover its reasonable and necessary attorney's fees . . . pursuant to *§ 37.009, Texas Civil Practice and Remedies Code*." Zachry alleged that it incurred in excess of $ 150,000 in reasonable and necessary attorney's fees. [9] Fluor contends that the trial court should not have awarded attorney's fees in favor of Zachry. Fluor raises several reasons for this assertion.

> 9 The jury however awarded Zachry only $ 50,000 for reasonable and necessary attorney's fees.

First, Fluor alleges that Zachry's reliance on *section 38.001 of the civil practice and remedies code* for its authority to recover attorney's [*12] fees "is flawed." However, Zachry did not rely on *Section 38.001*; rather, Zachry relies on chapter 37 of the civil practice and remedies code and the agreement itself for its authority enabling it to recover attorney's fees.

Next, Fluor alleges that "the declaratory judgment itself is not a proper avenue in this case and therefore cannot provide the basis for [an award of] attorney's fees." However, Fluor is the party who first brought a declaratory judgment action. Fluor's original petition specifically prays that the trial court "declare the dollar effect" of the arbitration award. No particular type of pleading is required by the declaratory judgments act, but it is clear that Fluor's suit was an action seeking declaratory judgment. *See, e.g., Anderson v. McRae, 495 S.W.2d 351, 358 (Tex. Civ. App.-Texarkana 1973, no

*writ)*. Having forced Zachry to defend against a declaratory judgment action, Fluor may not now complain on appeal that a declaratory judgment was not a "proper avenue" for this case.

Finally, Fluor alleges that the award itself was inequitable. [HN4] *Section 37.009 of the civil practice and remedies code* explicitly states that the trial judge may [*13] award reasonable and necessary attorney's fees as are equitable and just for any proceeding brought under the Texas Declaratory Judgments Act (hereinafter "Act") of chapter 37 of the civil practice and remedies code. *See TEX. CIV. PRAC. & REM. CODE ANN. § 37.009* (Vernon 1997); *Bocquet v. Herring, 972 S.W.2d 19, 20, 41 Tex. Sup. Ct. J. 650 (Tex. 1998)*. Thus, the award of attorney's fees in a declaratory judgment action is entrusted to the discretion of the trial court. *See Bocquet, 972 S.W.2d at 20*. In a declaratory judgment action, a successful defendant may recover attorney's fees if the defendant so requests. *Id.*

[HN5] The standards for awarding attorney's fees pursuant to the Act are that (1) the fees must be reasonable and necessary, which is a question of fact, and (2) the fees must be equitable and just, which is a matter of law. *Id. at 21*. The trial court abuses its discretion if it awards attorney's fees arbitrarily, unreasonably, or without regard to guiding legal principals. *Id.* (citing *Goode v. Shoukfeh, 943 S.W.2d 441, 446, 40 Tex. Sup. Ct. J. 487 (Tex. 1997))*. Additionally, there must be supporting evidence in [*14] order to sustain a verdict of an award of attorney's fees. *See id.* (citing *Beaumont Bank v. Buller, 806 S.W.2d 223, 226, 34 Tex. Sup. Ct. J. 482 (Tex. 1991))*. In sum, when reviewing an award of attorney's fees under the Act, "the court of appeals must determine whether the trial court abused its discretion by awarding fees when there was insufficient evidence that the fees were reasonable and necessary, or when the award was inequitable or unjust." *Id.*

In the present case, we find nothing to indicate that the district court's awarding of attorney's fees to Zachry was unjust or inequitable, as there was ample evidence to support the jury's determination that $ 50,000 in attorney's fees was reasonable and necessary. Zachry presented numerous invoices from the Kleberg Law Firm, which represented Zachry in the matter. These invoices detail the expenses Zachry incurred in defending and prosecuting these claims. The invoices show that the Kleberg Law Firm billed Zachry for roughly $ 148,743 for their legal services. Testimony at trial elucidated how these fees were incurred. The jury determined that $ 50,000 was a reasonable award. There is certainly more than a scintilla of evidence to [*15] support this award. Zachry was the prevailing party in a declaratory judgment action. Finally, section VI of the arbitration agreement between Fluor and Zachry specifically calls for an

award of attorney's fees when one party seeks judicial relief. Therefore, when reviewing the entire record, we cannot say that the trial court abused its discretion in awarding Zachry attorney's fees.

Lastly, Fluor attempts to assert that Zachry cannot recover its attorney's fees because it was not a prevailing party. We conclude that Zachry did prevail in the underlying cause because Zachry received what it requested, that is, an interpretation of the arbitration decision which entitled it to contribute only 10% of the settlement fund. However, we also note that [HN6] under the Act a party does not have to prevail to be awarded attorney's fees. *See, e.g.,* *Barshop v. Medina County Underground Water Cons. Dist., 925 S.W.2d 618, 637, 39 Tex. Sup. Ct. J. 858 (Tex. 1996)*. Accordingly, Fluor's issue regarding the awarding of attorney's fees is overruled.

## CONCLUSION

Having overruled both of Fluor's issues on appeal, we affirm the trial court's judgment severing the two causes and awarding Zachry attorney's [*16] fees.

Rogelio Valdez,

Chief Justice

⚠ Caution
As of: April 7, 2015 5:40 PM EDT

# *Fresh Coat, Inc. v. Life Forms, Inc.*

Court of Appeals of Texas, First District, Houston

December 31, 2003, Decided ; December 31, 2003, Opinion Issued

NO. 01-03-00730-CV

**Reporter**
125 S.W.3d 765; 2003 Tex. App. LEXIS 10837; CCH Prod. Liab. Rep. P16,863

FRESH COAT, INC., Appellant v. LIFE FORMS, INC., Appellee

**Subsequent History:** [**1]
53.7(F) mot. for extension of time filed by, 02/09/2004
53.7(F) mot. for extension of time filed by, 03/19/2004
53.7(F) mot. for extension of time filed by, 04/16/2004

**Prior History:** On Appeal from the 295th District Court. Harris County, Texas. Trial Court Cause No. 1998-25256-D.

**Disposition:** Motion to dismiss granted; appeal dismissed.

## Core Terms

trial court, parties, dispose, final judgment, lawsuit, summary judgment motion, indemnity, appealable judgment, pending claim, unequivocally, class-action

## Case Summary

### Procedural Posture

The 295th District Court, Harris County (Texas), granted summary judgment in favor of appellee home builder on its claims against appellant insulation company for common-law indemnity, contractual indemnity, based on the provisions of the parties' contract, and statutory indemnity, based on the builder's alleged status as an innocent retailer. The insulation company appealed.

### Overview

The builder asserted causes of action for alleged defects in the design of residential and commercial exterior insulation finish systems. The builder asserted claims for indemnity against the insulation company. In a severed cause, the builder filed a second amended fourth party petition alleging claims against the insulation company for common-law, contractual, and statutory indemnity. The builder then filed a motion for summary judgment. In its motion for summary judgment, the builder did not seek summary judgment on its common-law and statutory indemnity claims. However, the trial court granted the builder all of the relief the builder had requested and that the trial court was entitled to give. Also, the judgment was a final and appealable judgment because it clearly and unequivocally disposed of all of the parties and the claims pending in the trial court. Thus, because the insulation company did not file its notice of appeal within 30 days of the date the judgment was signed, and did not seek an extension of its appellate deadlines, it did not timely perfect its appeal and did not properly invoked the appellate court's jurisdiction.

### Outcome

The appellate court dismissed the insulation company's appeal for want of jurisdiction.

## LexisNexis® Headnotes

Civil Procedure > Appeals > Appellate Jurisdiction > Final Judgment Rule

**HN1** It is well-established that, in general, an appeal may be taken only from a final judgment; that is, a judgment that disposes of all pending parties and claims.

Civil Procedure > Appeals > Appellate Jurisdiction > Final Judgment Rule

**HN2** For purposes of an appeal, the intent to finally dispose of a case must be unequivocally expressed in the words of the judgment itself. If that intent is clearly expressed in the judgment, then the order is final and appealable, even though the record does not provide an adequate basis for rendition of judgment.

Civil Procedure > Appeals > Appellate Jurisdiction > Final Judgment Rule

*HN3* For purposes of determining whether a judgment is final and appealable, to determine whether an order disposes of all pending claims and parties, an appellate court may also look to the record from the court below.

Civil Procedure > Appeals > Appellate Jurisdiction > Final Judgment Rule

*HN4* In a judgment, the inclusion of the language "all relief not expressly granted is denied," standing alone, does not indicate finality in a judgment rendered without a conventional trial on the merits.

Civil Procedure > Appeals > Appellate Jurisdiction > Final Judgment Rule

*HN5* In determining whether a judgment is final, in a case in which an appellate court is uncertain about a trial court's intent in signing a judgment, the appellate court may abate the appeal to permit clarification by the trial court.

Civil Procedure > Appeals > Appellate Jurisdiction > Interlocutory Orders

*HN6* An express adjudication of all parties and claims in a case is not interlocutory merely because the record does not afford a legal basis for the adjudication. In those circumstances, the order must be appealed and reversed.

**Counsel:** FOR APPELLANT: Adam Brett Chambers, Bateman Pugh, P.L.L.C., Houston, TX. Kevin D. Jewell, Chamberlain, Hrdlicka, White, Williams, & Martin, Houston, TX. Robert H. Bateman, Magenheim, Bateman, Robinson, Wrotenbery & Helfand, Houston, TX.

FOR APPELLEE: Chris E. Ryman, Coats, Rose, yale, Holm, Ryman & Lee, P.c., Houston, TX.

**Judges:** Terry Jennings, Justice. Panel consists of Chief Justice Radack and Justices Jennings and Higley.

**Opinion by:** Terry Jennings

## Opinion

[*766] Appellant, Fresh Coat, Inc. (Fresh Coat), challenges the trial court's rendition of summary judgment in favor of appellee, Life Forms, Inc. (Life Forms). Prior to the submission of briefing on the merits by either party, Life Forms filed a motion with this Court seeking to dismiss this appeal for want of jurisdiction. In its motion to dismiss, Life Forms contends that Fresh Coat failed to timely appeal from the trial court's final judgment and that, as a result, this Court lacks jurisdiction over this appeal.

We dismiss the appeal for want of jurisdiction.

### Procedural Background

Fresh Coat and Life Forms were originally parties to a class-action lawsuit pending in the trial court below. [1] The plaintiffs in that lawsuit asserted causes of action for alleged defects in the design of residential and commercial exterior insulation finish [**2] systems. Life Forms, a home builder, contracted with Fresh Coat to have Fresh Coat construct and apply such finish systems on Life Forms's homes. After it was made a party to the class-action lawsuit, Life Forms asserted claims for indemnity against Fresh Coat.

On October 30, 2002, the trial court signed an agreed order severing Life Forms's claims against Fresh Coat into the cause on appeal. [2] As part of its severance order, the trial court instructed the parties as follows: "Life Forms and Freshcoat [sic] agree that their claims can be decided on the papers with Life Forms filing its motion on or before 12/2/02 and Freshcoat [sic] filing its response on or before 12/12/02."

[**3] In the severed cause, Life Forms subsequently filed its "Second Amended Fourth Party Petition" alleging claims against Fresh Coat for (1) common-law indemnity; (2) contractual indemnity, based on the provisions of the parties' contract; and (3) statutory indemnity, based on Life Forms's alleged status as an

---

[1] The original matter is styled *McCray, et al. v. Parex, Inc., et al.*, No. 98-25256, in the 295th Judicial District Court of Harris County, Texas.

[2] Fresh Coat did not present any affirmative claims for relief against Life Forms.

"innocent retailer." [3] Life Forms then filed a motion for summary judgment arguing that, as a matter of law, under the provisions of the parties' contract, (1) Fresh Coat was obligated to defend and indemnify Life Forms from the claims against it in the class-action lawsuit, (2) Fresh Coat's obligation to indemnify Life Forms was triggered by the claims brought against it in that lawsuit, and (3) Fresh Coat was obligated to reimburse Life Forms for its attorney's fees and costs incurred, and settlements paid, as a result of that lawsuit. As exhibits to its motion for summary judgment, Life Forms attached affidavits and other [*767] records documenting its claim for attorney's fees, costs, and settlements totaling $ 186,819.43 paid as a result of the claims brought against Life Forms in the class-action lawsuit and incurred in pursuit of its indemnity claims against Fresh Coat. In its [**4] motion for summary judgment, Life Forms did not seek summary judgment on its common-law and statutory indemnity claims. Fresh Coat filed a response to the motion for summary judgment and disputed Life Forms's contractual indemnity claims.

On March 7, 2003, the trial court signed a "Final Judgment" which reads as follows:

The Court has considered and decided to grant Life Forms Incorporated's Motion for Summary Judgment. Life Forms Incorporated's Motion for Summary Judgment is granted.

It is ADJUDGED that Life Forms, Incorporated have and recover judgment against Fresh[]Coat, Inc. for $ 186,819.43, together with all costs of court and interest on this judgment at the rate of ten percent (10%) per annum from the date of judgment until paid. This is a final judgment disposing of all parties and all issues. All relief not expressly [**5] granted is denied.

In June 2003, Fresh Coat filed a "Motion for Entry of Appealable Judgment" in which it argued that, because the trial court's March 7, 2003 judgment did not dispose of all pending claims, it was not a final, appealable judgment. In its motion, Fresh Coat requested that the trial court sign a judgment that "clearly and unequivocally" disposed of the entire case. Following a hearing, the trial court denied the motion, for want of jurisdiction, on July 7, 2003. The following day, Fresh Coat filed its notice of appeal from the trial court's March 7, 2003 judgment.

**Finality of the Judgment**

In its motion to dismiss this appeal, Life Forms argues that the trial court's March 7, 2003 judgment was a final and appealable judgment because it clearly and unequivocally disposed of all parties and claims pending in the trial court. Additionally, Life Forms argues that, to the extent the trial court's judgment granted more relief than Life Forms was entitled to receive, the judgment was arguably erroneous, but final and appealable nonetheless.

**HN1** It is well-established that, in general, an appeal may be taken only from a final judgment; that is, a judgment that disposes [**6] of all pending parties and claims. _Lehmann v. Har-Con Corp., 39 S.W.3d 191, 195, 44 Tex. Sup. Ct. J. 364 (Tex. 2001)_. **HN2** The intent to finally dispose of the case must be unequivocally expressed in the words of the judgment itself. _Id. at 200_. If that intent is clearly expressed in the judgment, then the order is final and appealable, even though the record does not provide an adequate basis for rendition of judgment. _Id_. In _Lehmann_, the court conceded that, **HN3** to determine whether an order disposes of all pending claims and parties, an appellate court may also look to the record from the court below. _Id. at 205-06_.

The judgment at issue here, entitled "Final Judgment," contains a "Mother Hubbard" clause, e.g., "All relief not expressly granted is denied." See _id. at 203_. The Texas Supreme Court has held that **HN4** the inclusion of such language, standing alone, does not indicate finality in a judgment rendered, as here, without a conventional trial on the merits. _Id. at 203-04_.

The judgment also clearly states that it "is a final judgment disposing of all parties and all issues." Fresh Coat argues that this language is not [**7] an unequivocal statement of finality, and in support of its argument [*768] relies on the Texas Supreme Court's suggestion in _Lehmann_ that, to avoid any doubt as to the finality of its judgment, a trial court could include a statement such as, "'This judgment finally disposes of all parties and all claims _and is appealable_.'" _Id. at 206_ (emphasis added).

Here, however, the fact that the trial court did not expressly state that its judgment was "appealable" does not render the court's intent ambiguous. The issue

---

[3] _See_ TEX. CIV. PRAC. & REM. CODE ANN. § 82.002 (Vernon 1997); TEX. BUS. & COM. CODE ANN. § 17.555 (Vernon 2002).

presented to the trial court by Life Forms's motion for summary judgment was whether Fresh Coat was contractually obligated to indemnify Life Forms for the attorney's fees, costs, and settlements incurred and paid by Life Forms as a result of the class-action lawsuit. In its judgment, the trial court awarded, to the penny, the amount of damages which Life Forms claimed it was entitled to recover from Fresh Coat, and the trial court could not have granted any more relief to Life Forms than it did. This judgment clearly and finally disposed of all parties and all pending claims because Life Forms could recover no more than the amount awarded in the judgment, [**8] which was everything it sought.

Moreover, the Texas Supreme Court has suggested that, *HN5* in a case in which we are uncertain about the trial court's intent in signing a judgment, we may abate the appeal to permit clarification by the trial court. *Id*. (citing *TEX. R. APP. P. 27.2*). We need not do so in this case because, at the hearing on Fresh Coat's "Motion for Entry of Appealable Judgment," the trial court stated as follows: "I believe it was a final judgment. You are asking me about my belief. My belief was it was a final judgment." Additionally, the trial court denied Fresh Coat's motion "for lack of trial court jurisdiction." Thus, the record indicates that the trial court clearly and unequivocally expressed its intent to dispose of all parties and pending claims in its March 7, 2003 judgment.

Finally, as the Texas Supreme Court has noted, *HN6* "An express adjudication of all parties and claims in a

case is not interlocutory merely because the record does not afford a legal basis for the adjudication. In those circumstances, the order must be appealed and reversed." *Id*. If Fresh Coat had any question as to the finality of the trial court's judgment, it could have either requested [**9] that the trial court clarify its judgment while the court retained plenary power or perfected a timely appeal from the judgment. It did neither.

Based on the language of the trial court's March 7, 2003 judgment and the record presented, we hold that, as of the date it was signed, the judgment was a final and appealable judgment disposing of all parties and pending claims. Accordingly, because Fresh Coat did not file its notice of appeal within 30 days of the date the judgment was signed, and did not seek an extension of its appellate deadlines, it has not timely perfected its appeal in this cause and has not properly invoked this Court's appellate jurisdiction. *See TEX. R. APP. P. 26.1*. [4]

## Conclusion

We grant Life Forms's motion and dismiss the appeal for want of jurisdiction.

[**10] Terry Jennings

Justice

---

[4] Fresh Coat did not file a motion for new trial or request that the trial court prepare findings of fact and conclusions of law. *See* TEX. R. APP. P. 26.1(a).





Caution
As of: Mar 30, 2015

**ALFREDO P. GARCIA d/b/a GARCIA TRUCKING COMPANY, Petitioner, v.
KASTNER FARMS, INC., ET AL., Respondents**

**No. C-8279**

**SUPREME COURT OF TEXAS**

*774 S.W.2d 668*; *1989 Tex. LEXIS 97*; *32 Tex. Sup. J. 573*

**July 12, 1989, Decided**

**PRIOR HISTORY:** [**1] From Live Oak County Thirteenth District.

**COUNSEL:** Mr. W. Michael Murray, Cackowski & Murray, Austin, Texas, Attorneys for petitioner.

Mr. James M. Whitten, Law Offices of James M. Whitten P.C., Sinton, Texas, Attorneys for respondents.

**JUDGES:** C.L. Ray, Justice.

**OPINION BY:** RAY

**OPINION**

[*669] The issue presented is whether Alfredo P. Garcia has reasonably explained his failure to timely file a cost bond for appeal. *Tex. R. App. P. 41(a)(2)*. The court of appeals held he had not and dismissed Garcia's appeal for want of jurisdiction. *761 S.W.2d 444*. We reverse the judgment of the court of appeals and remand the cause to that court for further proceedings.

Garcia sued Kastner Farms, Inc. for breach of contract, and the trial court rendered judgment that Garcia take nothing. Because Garcia did not file a motion for new trial, the cost bond was due to be filed within thirty days. *Tex. R. App. P. 41(a)(1)*. Garcia did not file his cost bond within the thirty-day period; however, he did file a motion to extend time to file his cost bond. Garcia was late in filing his bond because he believed the cost bond

could be filed after he received the trial court's findings of fact and [**2] conclusions of law. Garcia explained that he could not adequately determine the propriety or necessity of an appeal until he had received and reviewed these findings of fact and conclusions of law.

In determining whether to grant Garcia's motion, the court of appeals considered *Rule 41(a)(2)*:

> An extension of time may be granted by the appellate court for late filing of a cost bond or notice of appeal or making the deposit required by paragraph (a)(1) or for filing the affidavit, if such bond or notice of appeal is filed, deposit is made, or affidavit is filed not later than fifteen days after the last day allowed and, within the same period, a motion is filed in the appellate court reasonably explaining the need for such extension.

The court of appeals overruled Garcia's motion and dismissed the appeal for want of jurisdiction, concluding that a misunderstanding of the law was not a reasonable explanation. *761 S.W.2d at 446*. The court of appeals purported to follow the leading case of *Meshwert v. Meshwert, 549 S.W.2d 383 (Tex. 1977)*, and also relied

heavily on *Home Ins. Co. v. Espinoza, 644 S.W.2d 44* (Tex. App. -- Corpus Christi 1982, writ ref'd n.r.e.).

[**3] In *Meshwert*, we defined the phrase "reasonably explaining," to mean "any plausible statement of circumstances indicating that failure to file within the [required] period was not deliberate or intentional, but was the result of inadvertence, mistake or mischance." *549 S.W.2d at 384*. While the definition of reasonable explanation is settled, the courts of appeals have not applied the definition consistently. *Compare Heritage Life Ins. Co. v. Heritage Group Holding Corp., 751 S.W.2d 229* (Tex. App. -- Dallas 1988, writ denied) (holding that any conduct short of deliberate or intentional noncompliance qualifies as inadvertence, mistake or mischance -- even if that conduct can also be characterized as professional [*670] negligence) *with Home Ins. Co. v. Espinoza, 644 S.W.2d 44* (Tex. Civ. App. -- Corpus Christi 1982, writ ref'd n.r.e.) (holding that failure to adequately familiarize oneself with the basic rules of appellate procedure is not a reasonable explanation).

In *Espinoza*, the attorney impliedly admitted that she was mistaken regarding the requirements under the rule, somehow having gleaned the impression that the cost bond need not be filed if a hearing [**4] on the motion for new trial is still pending. The court of appeals in *Espinoza* said that a misunderstanding of the law was not a reasonable explanation. We believe that *Espinoza* represents an unduly restrictive view of *Rule 41(a)(2)*.

This court in *Meshwert* recognized that the reasonable explanation standard was a relaxed requirement from the old standard of good cause. *549 S.W.2d at 384*. *Meshwert* followed the reasoning of the dissent in *Sloan v. Passman, 536 S.W.2d 575* (Tex. Civ. App. -- Dallas 1976, no writ) (Guittard, C.J., dissenting at *538 S.W.2d 1*). *Sloan v. Passman* was specifically overruled by the Dallas Court of Civil Appeals in *United States Fire Ins. Co. v. Stricklin, 547 S.W.2d 338* (Tex. Civ. App. -- Dallas 1977, no writ). *Stricklin* adopted the dissenting opinion in *Sloan v. Passman*, which said that "the requirement of a reasonable explanation implies no stricter standard than that applicable to avoidance of a default judgment." *538 S.W.2d at 1*. Under this standard:

> Any plausible statement of circumstances indicating that failure to file . . . was not deliberate or intentional, but was the result of inadvertence, mistake, [**5] or mischance, [would] be accepted as a reasonable explanation, even though counsel or his secretary may appear to have been lacking in that degree of diligence which careful practitioners normally exercise.

*Id.* This liberal standard of review encompasses the negligence of counsel as a reasonable explanation for the necessity of an extension. *See Heritage Life, 751 S.W.2d at 231-32*; *Stricklin, 547 S.W.2d at 339-40*. Thus, the proper focus under *Meshwert* is on a lack of deliberate or intentional failure to comply. *See Heritage Life, 751 S.W.2d at 232*; *Meshwert, 549 S.W.2d at 384*. Any conduct short of deliberate or intentional noncompliance qualifies as inadvertence, mistake or mischance -- even if that conduct can also be characterized as professional negligence. *See Heritage Life, 751 S.W.2d at 232*.

We conclude that the view espoused in *Espinoza* is too strict and that the more lenient standard enunciated in *Heritage Life* is correct. In applying the *Heritage Life* standard, we have determined Garcia's attempted late filing was not intentional or deliberate, but was due to the attorney's misunderstanding of the law. Accordingly, we [**6] hold that the explanation offered is a reasonable one within the ambit of *rule 41(a)(2)*.

We reverse the judgment of the court of appeals and remand the cause to that court for further proceedings.

# *Gardner v. U.S. Imaging, Inc.*

Supreme Court of Texas

December 19, 2008, Opinion Delivered

NO. 08-0268

## Reporter

274 S.W.3d 669; 2008 Tex. LEXIS 1138; 52 Tex. Sup. J. 229

CRAIG GARDNER AND THELMA GARDNER, PETITIONERS, v. U.S. IMAGING, INC. D/B/A SADI PAIN MANAGEMENT AND BERNEY KESZLER, M.D., RESPONDENTS

**Subsequent History:** Reported at *Gardner v. U.S. Imaging Inc., 2008 Tex. LEXIS 1155 (Tex., Dec. 19, 2008)*

**Prior History:** [**1] ON PETITION FOR REVIEW FROM THE COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS.
*U.S. Imaging, Inc. v. Gardner, 274 S.W.3d 693, 2007 Tex. App. LEXIS 9998 (Tex. App. San Antonio, Dec. 28, 2007)*

## Core Terms

expert report, default judgment, trial court, deficient

## Case Summary

### Procedural Posture

Petitioner patient and petitioner wife brought a health care liability suit against respondent physician and respondent health care facility, alleging that the physician was negligent and failed to obtain the patient's informed consent. The trial court denied a motion to dismiss the suit, but the Court of Appeals for the Fourth District of Texas determined an expert report was deficient and ordered the case dismissed. Review was sought.

### Overview

The physician performed a lumbar epidural procedure on the patient. The patient and his wife served an expert report on the physician and the health care facility. The patient contended the physician's actions led to the patient contracting spinal meningitis, which caused his hearing loss. Both the physician and the health care facility objected to the patient's expert report, and they moved for dismissal under *Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b)*. The health care facility also complained that it was not timely served with the report. Nevertheless, the health care facility had defaulted, and it made little sense to require service of the expert report on a party who by default had admitted to the allegations. When the health care facility failed to timely answer the suit, the statutory period was tolled until the health care facility made an appearance. The expert report was served well within the statutory period. Also, the report was sufficient because the health care facility's liability was vicarious through the physician.

### Outcome

The supreme court reversed the intermediate appellate court, and the matter was remanded to the trial court for further proceedings consistent with the opinion.

## LexisNexis® Headnotes

Evidence > ... > Testimony > Expert Witnesses > General Overview

Healthcare Law > ... > Actions Against Facilities > Facility Liability > General Overview

Healthcare Law > Healthcare Litigation > Actions Against Healthcare Workers > Doctors & Physicians

Torts > Malpractice & Professional Liability > Healthcare Providers

**HN1** *Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b)* provides that a health care liability suit must be dismissed if a non-compliant report is served, subject to the availability of one thirty-day extension to cure under *Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c)*.

Evidence > ... > Testimony > Expert Witnesses > General Overview

Healthcare Law > ... > Actions Against Facilities > Facility Liability > General Overview

Healthcare Law > Healthcare Litigation > Actions Against Healthcare Workers > Doctors & Physicians

Torts > Malpractice & Professional Liability > Healthcare Providers

**HN2** [Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a)](#) states that, within 120 days of filing an original petition, a claimant must serve on each party or the party's attorney one or more expert reports.

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Relief From Default

**HN3** For a default judgment to be set aside, the plaintiff must be placed in no worse position than he would have been had an answer been filed.

Evidence > ... > Testimony > Expert Witnesses > General Overview

Healthcare Law > ... > Actions Against Facilities > Facility Liability > General Overview

Torts > Malpractice & Professional Liability > Healthcare Providers

**HN4** When a party's alleged health care liability is purely vicarious, a report that adequately implicates the actions of that party's agents or employees is sufficient.

**Counsel:** For Mr. Craig Gardner, PETITIONER: Ms. Elizabeth Leslie Higginbotham, Higginbotham & Associates, Austin, TX.; Mr. William M. Nichols, William M. Nichols, P.C., San Antonio, TX.

For U.S. Imaging Inc., RESPONDENT: Mr. Lynn Cullen Moore, Ms. Debra Ibarra Mayfield, Mr. Nathan Montgomer Rymer, Rymer Moore Jackson & Echols, P.C., Houston, TX.

For Mr. Berney Keszler, M.D., RESPONDENT: Mr. Michael J. Mooris, Morris & Allen, New Braunfels, TX.; Ms. Stephanie S. Bascon, Law Office of Stephanie S. Bascon PLLC, New Braunfels, TX.

## Opinion

[*670] **PER CURIAM**

Craig Gardner and Thelma Gardner brought this health care liability suit against Dr. Berney Keszler, who performed a lumbar epidural procedure on Craig, and U.S. Imaging, Inc. d/b/a SADI Pain Management ("SADI"), the owner and operator of the facility where the procedure was performed. The Gardners served an expert report on Dr. Keszler and SADI, who both contested the report as untimely and deficient. *See* [TEX. CIV. PRAC. & REM. CODE § 74.351(a)](#). The trial court denied the defendants' motion to dismiss the suit, but the court of appeals determined the report was deficient and ordered the case dismissed. _S.W.3d at _. Although we do not disturb the court of appeals' determination that the report was deficient, in light of our decision in [Leland v. Brandal, 257 S.W.3d 204 (Tex. 2008)](#), we vacate the court of appeals' judgment and remand the case to the trial court to consider granting the Gardners an extension to cure under [section 74.351(c) of the Texas Civil Practice and Remedies Code](#).

On August 24, 2006, the Gardners filed this suit alleging that Dr. Keszler was negligent in choosing to [**2] perform a lumbar epidural procedure, that he did not conform to the standard of care while performing the procedure, and that he failed to obtain Craig Gardner's informed consent. The Gardners contend Dr. Keszler's actions led to Craig's contracting spinal meningitis, which caused his hearing loss. Dr. Keszler timely answered the suit, and pursuant to [section 74.351(a)](#), the Gardners served Dr. Keszler with an expert report from Dr. Edson O. Parker (the "Parker report") within 120 days of filing suit. [TEX. CIV. PRAC. & REM. CODE § 74.351(a)](#).

Unlike Dr. Keszler, SADI failed to timely answer the suit and, before the 120-day period for filing an expert report expired on December 22, 2006, the Gardners moved for default judgment against SADI. The trial court rendered a default judgment on December 14, 2006, and severed the suit against SADI. Upon learning of the default judgment, SADI filed an answer in the severed suit, along with a motion for new trial and a motion to set aside the default judgment. Pursuant to the parties' agreement, the court, on February 8, 2007, granted a new trial and set aside the default judgment. In accordance with the agreed order, the Gardners nonsuited the severed [**3] suit, SADI filed an answer in the original suit on February 12, and the Gardners filed an amended petition in the original suit on February 16. On March 20, the Gardners served SADI with the expert report they had served on Dr. Keszler.

Dr. Keszler and SADI objected to the report and moved for dismissal under **HN1** [section 74.351(b)](#), which

provides that a health care liability suit must be dismissed if a non-compliant report is served, subject to the availability of one thirty-day extension to cure under *section 74.351(c)*. *TEX. CIV. PRAC. & REM. CODE § 74.351(b)*, *(c)*; *see Lewis v. Funderburk, 253 S.W.3d 204, 207 (Tex. 2008)*. The trial court, presumably finding that the report complied with the statute, denied the defendants' motions to dismiss. The court of appeals reversed, however, reasoning that the report was deficient because the discussion of causation was conclusory. _S.W.3d at _. The court remanded the case to the trial court to award the defendants reasonable attorneys' fees and costs pursuant to *section 74.351(b)*. *Id*. at _. In their motion for rehearing before the court of appeals, **[*671]** the Gardners argued that, in light of our decision in *Leland, 257 S.W.3d 204*, the court of **[**4]** appeals should have also remanded the suit to the trial court to consider granting a thirty-day extension to cure. [1] We agree, and reject the defendants' contention that the Parker report is so deficient as to constitute no report at all. *See Ogletree v. Matthews, 262 S.W.3d 316, 323 (Tex. 2007)* (WILLETT, J., concurring); *Funderburk, 253 S.W.3d at 211* (WILLETT, J., concurring). [2]

SADI asserts an additional challenge, contending it was not served with an expert report within the statutory deadline. *HN2 Section 74.351(a)* states that, within 120 days of filing an original petition, a claimant must "serve **[**5]** on each party or the party's attorney one or more expert reports." *TEX. CIV. PRAC. & REM. CODE § 74.351(a)*. Because SADI was named in the original petition as a party to this suit, the Gardners were required to serve it with a report before the statutory period expired on December 22, 2006, and it is undisputed they failed to do so. However, before the 120-day period expired, SADI defaulted and judgment was taken against it. The statute does not specify the effect of a default judgment on the 120-day period. But the effect of default on a plaintiff's claim for unliquidated damages is clear: once a default judgment is taken, all factual allegations contained in the petition, except the amount of damages, are deemed admitted. *See Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 83 (Tex. 1992)*. In light of the expert-report requirement's dual purpose to inform the served party of the conduct called into question and to provide a basis for the trial court to conclude that the plaintiff's claims have merit, it makes little sense to require service of an expert report on a party who by default has admitted the plaintiff's allegations. Moreover, our jurisprudence requires that, *HN3* for a **[**6]** default judgment to be set aside, the plaintiff must be placed "in no worse position than he would have been had an answer been filed . . . ." *Craddock v. Sunshine Bus Lines, Inc., 134 Tex. 388, 133 S.W.2d 124, 125 (Tex. 1939)*. Accordingly, when SADI failed to timely answer the Gardners' suit by the Monday following the expiration of twenty days after it was served, *see TEX. R. CIV. P. 99(b)*, the statutory period for serving it with an expert report was tolled until such time as SADI made an appearance. Once the default judgment was set aside and SADI filed an answer, tolling ended and the Gardners had 100 days remaining in which to serve SADI with an expert report. SADI filed an answer in the original suit on February 12, and the Gardners served it with an expert report on March 20, well within the remaining statutory period.

SADI additionally contends it was not served with an expert report because the report that was served does not mention SADI or implicate its behavior. The Gardners respond that because SADI's alleged liability is purely vicarious in nature, the report as to Dr. Keszler was sufficient. To the extent the allegations against SADI are based upon respondeat superior, we agree with **[**7]** the Gardners. *HN4* When a party's alleged health care liability is purely vicarious, **[*672]** a report that adequately implicates the actions of that party's agents or employees is sufficient. *See Univ. of Tex. Med. Branch v. Railsback, 259 S.W.3d 860, 864 (Tex. App.--Houston [1st Dist.] 2008, no pet.)*; *Univ. of Tex. Sw. Med. Ctr. v. Dale, 188 S.W.3d 877, 879 (Tex. App.--Dallas 2006, no pet.)*; *Casados v. Harris Methodist H-E-B, No. 2-05-080-CV, 2006 Tex. App. LEXIS 6357, at *12-*13 (Tex. App.--Fort Worth July 20, 2006, no pet.)(not designated for publication)* . Thus, to the extent the Gardners allege that SADI is liable only vicariously for Dr. Keszler's actions, the expert report requirement is fulfilled as to SADI if the report is adequate as to Dr. Keszler.

---

[1]   Because the Gardners argued that the trial court's decision should have been affirmed, and remand constitutes lesser included relief, the Gardners need not have requested an extension earlier to preserve such relief. *See Martinez-Partido v. Methodist Specialty & Transplant Hosp., 267 S.W.3d 881 (Tex. 2008)*.

[2]   The defendants additionally contend the report is deficient because Dr. Parker was not qualified to render an opinion. Because such a deficiency would be subject to cure on remand, we do not address the defendants' challenge to Dr. Parker's qualifications. *Funderburk, 253 S.W.3d at 207*.

We grant the petition and, without hearing oral argument, reverse the court of appeals' judgment and remand to the trial court for further proceedings consistent with this opinion. *See TEX. R. APP. P. 59.1*, *60.2(f)*.

**OPINION DELIVERED**: December 19, 2008



1 of 1 DOCUMENT

**RAYLEE GILSTRAP, Appellant v. JASON CALLEY, Appellee**

**NO. 14-04-01064-CV**

**COURT OF APPEALS OF TEXAS, FOURTEENTH DISTRICT, HOUSTON**

*2004 Tex. App. LEXIS 11035*

**December 9, 2004, Rendered**
**December 9, 2004, Memorandum Opinion Filed**

**PRIOR HISTORY:** [*1] On Appeal from the 405th District Court. Galveston County, Texas. Trial Court Cause No. 01CV1010.

**DISPOSITION:** Appeal is dismissed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellant, a pro se litigant, sought review of a judgment from the 405th District Court, Galveston County (Texas), in a civil case.

**OVERVIEW:** No motion for new trial was filed. The notice of appeal was filed more than 30 days after entry of judgment; hence, it was untimely under *Tex. R. App. P. 26.1*. Moreover, the notice of appeal was not filed within the 15-day grace period provided by *Tex. R. App. P. 26.3*. The litigant claimed that he did not receive notice of entry of final judgment; however, he had not sought to establish late notice of a judgment under the procedures set out in *Tex. R. Civ. P. 306a(4), (5)*. The court observed that pro se litigants were held to the same standards as licensed attorneys and were required to comply with all applicable rules of procedure. Accordingly, the court declined to extend the deadline for perfecting the appeal.

**OUTCOME:** The court dismissed the appeal.

**LexisNexis(R) Headnotes**

*Civil Procedure > Judgments > Relief From Judgment > Motions for New Trials*
*Civil Procedure > Appeals > Reviewability > Time Limitations*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
[HN1] A notice of appeal must be filed within 30 days after the judgment is signed when appellant has not filed a timely motion for new trial, motion to modify the judgment, motion to reinstate, or request for findings of fact and conclusion of law. *Tex. R. App. P. 26.1*.

*Civil Procedure > Pleading & Practice > Pleadings > Time Limitations > Extensions*
*Civil Procedure > Appeals > Reviewability > Time Limitations*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
[HN2] A motion for extension of time is necessarily implied when an appellant, acting in good faith, files a notice of appeal beyond the time allowed by *Tex. R. App. P. 26.1*, but within the 15-day grace period provided by *Rule 26.3* for filing a motion for extension of time. However, the appellant must offer a reasonable explanation for failing to file the notice of appeal in a timely manner. *Tex. R. App. P. 26.3, 10.5(b)(1)(C)*.

*Civil Procedure > Parties > Self-Representation > General Overview*
[HN3] Pro se litigants are held to the same standards as licensed attorneys, and therefore they must comply with all applicable rules of procedure.

**COUNSEL:** For APPELLANTS: Raylee Gilstrap, Iowa Park, TX.

For APPELLEES: Jerry A. Pusch, Kurt Arbuckle, Houston, TX.

**JUDGES:** Panel consists of Justices Anderson, Hudson, and Frost.

**OPINION**

### MEMORANDUM OPINION

This is an attempted appeal from a judgment, signed June 11, 2003. No motion for new trial was filed. Appellant's notice of appeal was filed on October 4, 2004.

[HN1] The notice of appeal must be filed within thirty days after the judgment is signed when appellant has not filed a timely motion for new trial, motion to modify the judgment, motion to reinstate, or request for findings of fact and conclusion of law. *See TEX. R. APP. P. 26.1*

Appellant's notice of appeal was not filed timely. [HN2] A motion for extension of time is necessarily implied when an appellant, acting in good faith, files a notice of appeal beyond the time allowed by *rule 26.1*, but within the fifteen-day grace period provided by *Rule 26.3* for filing a motion for extension of time. *See Verburgt v. Dorner, 959 S.W.2d 615, 617-18, 41 Tex. Sup. Ct. J. 138 (1997)* [*2] (construing the predecessor to *Rule 26*). However, the appellant must offer a reasonable explanation for failing to file the notice of appeal in a timely manner. *See TEX. R. APP. P. 26.3, 10.5(b)(1)(C)*; *Verburgt, 959 S.W.2d at 617-18*. Appellant's notice of appeal was not filed within the fifteen-day period provided by *Rule 26.3*

On November 4, 2004, notification was transmitted to all parties of the Court's intent to dismiss the appeal for want of jurisdiction. *See TEX. R. APP. P. 42.3(a)*. Appellant filed a response, claiming that he was never apprised of entry of final judgment. Because appellant filed a notice of appeal, he did, at some point, become aware of entry of final judgment. If appellant did not receive timely notice of the trial court judgment, he could have extended the deadlines for appeal by following the procedures set out in *TEX. R. CIV. P. 306a(4)-(5)*. [HN3] Pro se litigants are held to the same standards as licensed attorneys, and therefore they must comply with all applicable Rules of procedure. *Mansfield State Bank v. Cohn, 573 S.W.2d 181, 184-85, 22 Tex. Sup. Ct. J. 43 (Tex. 1978)* [*3] (holding that litigants who represent themselves must comply with procedures established by Rules notwithstanding fact that they are not licensed attorneys). Because appellant failed to follow the procedures for establishing late notice of the judgment, the deadline for perfecting the appeal was not extended. We find that appellant's response to our notice regarding the untimely notice of appeal fails to demonstrate that this Court has jurisdiction to entertain the appeal.

Accordingly, the appeal is ordered dismissed.

PER CURIAM

# *Ginn v. Forrester*

Supreme Court of Texas

March 27, 2009, Opinion Delivered

NO. 08-0163

**Reporter**

282 S.W.3d 430; 2009 Tex. LEXIS 112; 52 Tex. Sup. J. 491

EMMANUEL GINN, A&R TRANSPORT, INC., KEITH JACKSON, STEVE BRANTLEY, PETITIONERS, v. JEFF FORRESTER AND KIM FORRESTER, RESPONDENTS

**Prior History:** [**1] ON PETITION FOR REVIEW FROM THE COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS.
*Forrester v. Ginn, 282 S.W.3d 513, 2008 Tex. App. LEXIS 125 (Tex. App. Houston 14th Dist., Jan. 10, 2008)*

## Core Terms

notice, trial court, notation, want of prosecution, face of the record, court of appeals

## Case Summary

### Procedural Posture

Plaintiffs filed suit against defendants for damages arising out of a traffic accident. The trial court dismissed the case for want of prosecution. The plaintiffs filed a notice of restricted appeal. The Court of Appeals for the 14th District of Texas reversed the dismissal. Defendants appealed, contending the court of appeals erred in holding that the requirements for a restricted appeal were met.

### Overview

Plaintiffs' restricted appeal required an error that was apparent on the face of the record under *Tex. R. App. P. 30*. Plaintiffs contended that they never received notice of the dismissal for want of prosecution as required by *Tex. R. Civ. P. 165a(1)* and *Tex. R. Civ. P. 306a(3)*. The court of appeals suggested that they supplement the record with a notation from the clerk that no notice was contained in the record, and plaintiffs did so. Concluding

that the clerk's notation that there was no notice in the record affirmatively demonstrated the trial court's failure to notify plaintiffs of the impending and subsequent dismissal, the court of appeals reversed the dismissal. The court agreed with defendants that this was error. Although the clerk was required to give notice of the dismissal, the clerk was not required to enter any such notice on the record. A record that was silent was insufficient for a restricted appeal. In this case, the clerk's notation that the record was silent as to the giving of notices was not more that an affirmation of a silent record, which was insufficient to establish reversible error in a restricted appeal.

### Outcome

The court reversed the court of appeals' judgment and rendered judgment dismissing the case.

## LexisNexis® Headnotes

Civil Procedure > ... > Standards of Review > Plain Error > Obvious Errors

***HN1*** A restricted appeal requires error that is apparent on the face of the record; error that is merely inferred will not suffice.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

***HN2*** Before a trial court may properly dismiss a case for want of prosecution, notice of the court's intention to dismiss and the date and place of the dismissal hearing shall be sent by the clerk to each attorney of record. *Tex. R. Civ. P. 165a(1)*.

Civil Procedure > ... > Standards of Review > Plain Error > Obvious Errors

***HN3*** When a party claims in a restricted appeal that required notice was not given or a required hearing was

never held, the error must appear on the face of the record. *Tex. R. App. P. 30*. When extrinsic evidence is necessary to challenge a judgment, the appropriate remedy is by motion for new trial or by bill of review filed in the trial court so that the trial court has the opportunity to consider and weigh factual evidence.

> Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

> Civil Procedure > ... > Standards of Review > Plain Error > Obvious Errors

> Governments > Courts > Clerks of Court

***HN4*** As to what constitutes error on the face of the record for purposes of *Tex. R. App. P. 30*, silence is not enough. The rules governing dismissals for want of prosecution direct the district clerk to mail notice containing the date and place of hearing at which the court intends to dismiss the case, *Tex. R. Civ. P. 165a(1)*, and a similar notice of the signing of the dismissal order, *Tex. R. Civ. P. 306a(3)*. But the rules do not impose upon the clerk an affirmative duty to record the mailing of the required notices; accordingly, the absence of proof in the record that notice was provided does not establish error on the face of the record.

**Counsel:** For Ginn, Emmanuel, Petitioner: Mr. Edward E. Rundell, Gold, Weems, Bruser, Sues & Rundell, Alexandria LA.

For Forrester, Jeff, Respondent: Mr. Michael C. Engelhart, Ms. Kelly Alice Greenwood, Engelhart & Greenwood, L.L.P., Houston TX.

## Opinion

[*431] **PER CURIAM**

***HN1*** A restricted appeal requires error that is apparent on the face of the record; error that is merely inferred will not suffice. In this case, the clerk's supplemental record contains a notation that the clerk's office was unable to locate documents indicating notice was sent or a hearing was held on the trial court's dismissal for want of prosecution. Construing the notation as affirmative evidence that the trial court failed to provide notice, a divided court of appeals concluded the requirements for a restricted appeal were met. _S.W.3d __. Because the clerk has no affirmative duty to record the giving of notice, however, a statement that the record reflects none cannot establish error on the face

of the record. Accordingly, we reverse the court of appeals' judgment and render judgment dismissing the case.

Jeff and Kim Forrester filed suit against Emmanuel Ginn, A&R Transport, Inc., Keith Jackson, and Steve Brantley (collectively Ginn) on January 29, 2004, for damages arising out of a traffic accident. On May 18, 2005, the trial court notified all parties that unless either a judgment [**2] or scheduling order was signed or a verified motion to retain was filed by June 27, the case would be dismissed for want of prosecution. On June 17, Forrester filed a verified motion to retain the case, which the trial court granted after inserting the words "for 60 days" at the end of the paragraph ordering retention. The trial court subsequently granted Forrester's [*432] motion to substitute counsel, but the record reflects no further activity until December 2 when the trial court dismissed the case for want of prosecution. Six months later, Forrester filed a notice of restricted appeal.

The court of appeals initially denied Forrester's restricted appeal for failure to demonstrate error apparent on the face of the record, but suggested that this requirement might be satisfied by a notation from the trial court clerk indicating that no documents were available to show the notice allegedly not given or the record of the hearing allegedly not had. *Forrester v. Ginn, No. 14-06-00549-CV, 2007 Tex. App. LEXIS 5826 at *14 (Tex. App.--Houston [14th Dist.] July 26, 2007)*, *reh'g granted, vacated by 282 S.W.3d 513, 2008 Tex. App. LEXIS 125*. Apparently relying on the court of appeals' suggestion, Forrester requested a supplemental [**3] clerk's record containing the following documents, or an indication in writing that the following documents were not contained in the clerk's file:

> 1. Notice of Dismissal for Want of Prosecution, Dated December 2, 2005;

> 2. Any notice of intent to dismiss dated after June 27, 2005 and before December 2, 2005;

> 3. Any notice of any hearing scheduled for December 2, 2005 regarding the court's intent to dismiss the case;

> 4. The record of any hearing regarding the court's intent to dismiss held on December 2, 2005 in this case;

> 5. Any trial court docket sheet entry for any notice of a hearing to be held on December 2, 2005;

6. Any trial court docket sheet entry regarding any hearing on the court's intent to dismiss held on December 2, 2005;

7. Any notice of the December 2, 2005 dismissal order sent to Plaintiffs[] or their counsel . . . .

In response to Forrester's request, the clerk provided a supplemental record that concluded with the statement "NOTE: Unable to locate other items requested." Concluding on rehearing that the clerk's notation affirmatively demonstrated the trial court's failure to notify Forrester of the impending and subsequent dismissal, the court of appeals reversed the trial **[\*\*4]** court's judgment of dismissal and remanded the case for further proceedings. __S.W.3d __, __. Ginn filed this petition for review contending the court of appeals erred in holding that the requirements for a restricted appeal were met. We agree.

*HN2* Before a trial court may properly dismiss a case for want of prosecution, "[n]otice of the court's intention to dismiss and the date and place of the dismissal hearing shall be sent by the clerk to each attorney of record." *TEX. R. CIV. P. 165a(1)*. *HN3* When a party claims in a restricted appeal that required notice was not given or a required hearing was never held, the error must appear on the face of the record. *See TEX. R. APP. P. 30*; *Gold v. Gold, 145 S.W.3d 212, 213 (Tex. 2004)*; *Alexander v. Lynda's Boutique, 134 S.W.3d 845, 848 (Tex. 2004)*; *Gen. Elec. Co. v. Falcon Ridge Apartments, Joint Venture, 811 S.W.2d 942, 943 (Tex. 1991)*. When extrinsic evidence is necessary to challenge a judgment, the appropriate remedy is by motion for new trial or by bill of review filed in the trial court so that the trial court has the opportunity to consider and weigh factual evidence. *See Falcon Ridge, 811 S.W.2d at 944*. Accordingly, we have held that affidavits **[\*\*5]** filed for the first time in the appellate court from the district clerk and its counsel averring, respectively, that notice was neither given nor received constituted extrinsic evidence and **[\*433]** did not support a restricted appeal. *Id. at 943-44*.

*HN4* As to what does constitute error on the face of the record, we have clearly said that silence is not enough. The rules governing dismissals for want of prosecution direct the district clerk to mail notice containing the date and place of hearing at which the court intends to dismiss the case, *TEX. R. CIV. P. 165a(1)*, and a similar notice of the signing of the dismissal order, see *TEX. R. CIV. P. 306a(3)*. But the rules do not impose upon the clerk an affirmative duty to record the mailing of the required notices; accordingly, the absence of proof in the record that notice was provided does not establish error on the face of the record. *See Alexander, 134 S.W.3d at 849* ("'The absence from the record of affirmative proof that notice of intent to dismiss or of the order of dismissal was provided does not establish error.'" (quoting *Falcon Ridge, 811 S.W.2d at 944*)).

Forrester contends, and the court of appeals held, that the clerk's notation in the trial **[\*\*6]** record that the clerk's office was "[u]nable to locate other items requested" affirmatively reveals that the trial court failed to notify Forrester of its intent to dismiss the case. Because the clerk's notation is in writing and appears in the record, Forrester asserts, the record as to notice is not silent but rather demonstrates on its face that no notice was given. According to Forrester, the clerk's notation comports with the requirements we have articulated for a restricted appeal. We fail to see the distinction, however, between a record that is silent and a record that contains a written notation that the record is silent; either way, proof of error is absent. *See Gold, 145 S.W. 3d at 213*; *Alexander, 134 S.W. 3d at 849-50*; *Falcon Ridge, 811 S.W.2d at 943-44*. The clerk's notation reflected nothing more than affirmation of a silent record, which is insufficient to establish reversible error in a restricted appeal.

We reverse the court of appeals' judgment and render judgment dismissing the case.

**OPINION DELIVERED**: March 27, 2009

# *Grondona v. Sutton*

Court of Appeals of Texas, Third District, Austin

October 22, 1998, Filed

NO. 03-98-00454-CV

## Reporter

991 S.W.2d 90; 1998 Tex. App. LEXIS 6541

Marco Bence Grondona, Santa Cristina Sociedad Anonima, Atahualpa del Monte Sociedad Anonima, and Ignacio Maria Steverlynck, Appellants v. Joseph H. Sutton, Appellee

**Subsequent History:** [**1] Petition for Review Denied October 7, 1999.

**Prior History:** FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT. NO. 98-02843, HONORABLE JON N. WISSER, JUDGE PRESIDING.

**Disposition:** Appeal Dismissed for Want of Jurisdiction on Appellee's Motion.

## Core Terms

notice, date of notice, days, plenary power, trial court, notice of appeal, no writ

## Case Summary

### Procedural Posture

Appellant sought review of a judgment of the District Court of Travis County, 200th Judicial District (Texas) that denied appellants' motion to establish late notice of judgment. Appellant moved the appeals court to deem their appeal timely filed. Appellee moved for dismissal of the appeal for want of prosecution.

### Overview

Default judgment was entered against appellants on April 21, and they timely moved for a new trial, which was denied. First appellant filed a motion to establish late notice of judgment, asserting that he first had notice of the judgment on May 19. He filed a notice of appeal on the same date. Remaining appellants filed notices of appeal on August 14. First appellant filed an amended motion to establish late notice of judgment on August 19, which was denied. Appellants moved the appeals court to deem their appeal timely filed and appellee moved for dismissal of the appeal for want of jurisdiction. The appeals court denied appellants' motion and granted appellee's motion. The court held that since first appellant failed to provide evidence of when his attorney learned of the judgment during the trial court's plenary power, as required by *Tex. R. Civ. P. 306a(5)*, the ruling had no effect. Thus, first appellant failed to invoke the trial court's jurisdiction and his notice of appeal was untimely. Remaining appellants' notices were likewise ineffective. Appellee's motion to dismiss the appeal was granted.

### Outcome

The court held that the district court's denial of appellants' motion to establish late notice of judgment had no effect because it was not made during the district court's plenary power. The court granted appellee's motion to dismiss the appeal for want of prosecution holding appellants' notice of appeal was untimely.

## LexisNexis® Headnotes

Civil Procedure > Attorneys > General Overview

Civil Procedure > Judgments > Entry of Judgments > General Overview

*HN1* An exception to the rule that procedural timetables run from the date the judgment is signed exists for a party who learns of the judgment more than 20 but less than 90 days after it was signed. *Tex. R. Civ. P. 306a(4)*; *Tex. R. App. P. 4.2*. To benefit from the exception, the party must prove in the trial court, on sworn motion and notice, the date he or his attorney first received notice or acquired actual knowledge of the signing. *Tex. R. Civ. P.*

*306a(5)*. If evidence at the hearing establishes the date of notice, appellate deadlines and the court's plenary power start from that date rather than the date the judgment was signed. *Tex. R. Civ. P. 306a(4)*; *Tex. R. App. P. 4.2(a)(1)*.

> Civil Procedure > ... > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview
>
> Civil Procedure > Judgments > Entry of Judgments > General Overview

**HN2** Complying with the provisions of *Tex. R. Civ. P. 306a* is a jurisdictional requisite. The sworn motion serves the purpose of establishing a prima facie case of lack of timely notice, thereby invoking the trial court's jurisdiction for the limited purpose of holding a hearing to determine the date of notice. If the movant fails to establish the applicability of the exception in the manner prescribed, the trial court lacks jurisdiction to determine the date of notice and any order doing so is void.

**Counsel:** FOR APPELLANT: Mr. Robert C. Alden, Bracewell & Patterson, L.L.P., Austin, TX.

FOR APPELLEE: Mr. Edward P. Watt, Watt & Associates, P.C., Austin, TX.

**Judges:** Before Justices Powers, Aboussie and Kidd.

# Opinion

[*91] **PER CURIAM**

Appellants Marco Bence Grondona, Santa Cristina Sociedad Anonima, Atahualpa del Monte Sociedad Anonima, and Ignacio Maria Steverlynck move this Court to deem their appeal timely perfected. Appellee Joseph Sutton moves to dismiss the appeal for want of jurisdiction.

On April 21, 1998, the trial court signed a default judgment against appellants. Appellants timely moved for a new trial on May 21, and the court denied the motion by an order signed on July 15. On August 11, Grondona filed a motion to establish late notice of judgment, asserting that he first had notice of the judgment on May 19. He filed a notice of appeal on the same day. The remaining appellants filed notices of appeal on August 14. Grondona amended his motion to establish late notice of judgment on August 19, and [**2] on September 3, the trial court signed an order denying Grondona's motion.

**HN1** An exception to the rule that procedural timetables run from the date the judgment is signed exists for a party who learns of the judgment more than twenty, but less than ninety, days after it was signed. *Tex. R. Civ. P. 306a(4)*; *Tex. R. App. P. 4.2*. To benefit from the exception, the party must prove in the trial court, on sworn motion and notice, the date he or his attorney first received notice or acquired actual knowledge of the signing. *Tex. R. Civ. P. 306a(5)*. If evidence at the hearing establishes the date of notice, appellate deadlines and the court's plenary power start from that date rather than the date the judgment was signed. *Tex. R. Civ. P. 306a(4)*; *Tex. R. App. P. 4.2(a)(1)*.

**HN2** Complying with the provisions of *Rule 306a* is a jurisdictional requisite. *Memorial Hosp. v. Gillis, 741 S.W.2d 364, 365-66 (Tex. 1987)*; *In re Simpson, 932 S.W.2d 674, 677* (Tex. App.--Amarillo 1996, no writ). The sworn motion serves the purpose of establishing a prima- facie case of lack of timely notice, thereby invoking the trial court's jurisdiction for the limited [*92] purpose of holding a hearing to determine the date of [**3] notice. *Carrera v. Marsh, 847 S.W.2d 337, 342* (Tex. App.--El Paso 1993, orig. proceeding). If the movant fails to establish the applicability of the exception in the manner prescribed, the trial court lacks jurisdiction to determine the date of notice and any order doing so is void. *Gillis, 741 S.W.2d at 365-66*; *Simpson, 932 S.W.2d at 678*.

We first consider whether Grondona's motion invoked the trial court's jurisdiction to hear evidence to determine the date of notice. Grondona filed his motion eighty-four days after the date he claims to have learned of the default judgment. Neither *Rule 306a* nor Rule 4 states when a party must move for a determination of late notice. Several courts of appeals have held that a party must file such a motion within thirty days of acquiring notice. *See Gonzalez v. Sanchez, 927 S.W.2d 218, 221* (Tex. App.--El Paso 1996, no writ); *Montalvo v. Rio Nat'l Bank, 885 S.W.2d 235, 237* (Tex. App.--Corpus Christi 1994, no writ); *Womack-Humphreys Architects, Inc. v. Barrasso, 886 S.W.2d 809, 816* (Tex. App.--Dallas 1994, writ denied).

This Court, however, has concluded that a party can file such a motion more than thirty days after receiving [**4] notice, as long as he files it within the court's plenary power counted from the date of notice. *Vineyard Bay Dev. Co. v. Vineyard on Lake Travis, 864 S.W.2d 170,*

*172* & n.1 (Tex. App.--Austin 1993, writ denied). In *Vineyard Bay*, the motion to determine notice was filed thirty-one days after the date of notice but during the court's plenary power, which had been extended by a motion for new trial. *Id*. Here, Grondona moved for a new trial on May 21, two days after the asserted date of notice, and the trial court overruled the motion on July 15. The court's plenary power would therefore have expired thirty days later on August 14. Grondona's motion, filed on August 11, was timely.

To make a prima-facie case of lack of timely notice, Grondona had to offer evidence that neither he nor his attorney learned of the judgment within twenty days after it was signed. *Tex. R. Civ. P. 306a(5)*; *Simpson, 932 S.W.2d at 678*; *see Tex. R. App. P. 4.2(c)*. By affidavit attached to the motion, Grondona states that he first received notice of the judgment on May 19. Grondona offered no evidence, however, of when his attorney first learned of the judgment.

On August 19, Grondona filed [**5] an amended motion to determine the date of notice. The amended motion includes the affidavit of Grondona's attorney, who avers that he did not know of the judgment until May 19. Grondona therefore could not have made a prima-facie case until the amended motion was filed on August 19, beyond the trial court's plenary power. By failing to offer prima-facie evidence of late notice of judgment during the trial court's plenary power, Grondona did not invoke the court's jurisdiction to determine the date of notice. *Barrasso, 886 S.W.2d at 816*; *Montalvo, 885 S.W.2d at 237-38*; *see Owen v. Hodge, 874 S.W.2d 301, 303* (Tex. App.--Houston [1st Dist.] 1994, no writ).

Even if Grondona had offered prima-facie evidence during the court's plenary power, he failed to obtain a ruling on his motion within that period. *See Montalvo, 885 S.W.2d at 237-38*; *Barrasso, 886 S.W.2d at 816*; *Conaway v. Lopez, 843 S.W.2d 732, 733* (Tex. App.--Austin 1992, no writ). The trial court heard the motion and signed the order overruling it on September 3, beyond the time it would have had power to determine the date of notice of judgment. The order is therefore of no effect. [1]

[**6] We conclude that Grondona failed to invoke the trial court's jurisdiction to determine [*93] the date of notice of the judgment. His notice of appeal, filed 112 days after the judgment was signed, is thus untimely. *See Tex. R. App. P. 26.1*. The remaining appellants assert that they have timely appealed because they filed their notices of appeal within fourteen days after Grondona filed his notice of appeal. *See Tex. R. App. P. 26.1(d)*. Because Grondona's notice of appeal is ineffective to perfect appeal, the remaining notices are likewise ineffective.

We overrule appellants' motion to deem the appeal timely perfected. Because we lack jurisdiction over an appeal that is not timely perfected, we grant Sutton's motion to dismiss the appeal. *Davies v. Massey*, 561 S.W.2d 799, 800 (Tex. 1978). We dismiss the appeal for want of jurisdiction. *Tex. R. App. P. 42.3(a)*.

Before Justices Powers, Aboussie and Kidd

Dismissed for Want of Jurisdiction on Appellee's Motion

Filed: October 22, 1998

---

[1]   The court found in its order that the date the judgment was signed remained applicable. Having determined that the trial court lacked jurisdiction to render the order, we do not review the finding substantively.





Caution
As of: Mar 30, 2015

**PAUL HERBERT, Appellant v. GREATER GULF COAST ENTERPRISES, INC. D/B/A GULF COAST ENTERPRISES, Appellee**

**No. 01-94-01240-CV**

**COURT OF APPEALS OF TEXAS, FIRST DISTRICT, HOUSTON**

*915 S.W.2d 866*; *1995 Tex. App. LEXIS 2859*

**November 16, 1995, Filed**

**PRIOR HISTORY:** [**1] On Appeal from the County Civil Court at Law Number Three. Harris County, Texas. Trial Court Cause No. 627786. CAROLYN D. HOBSON, Judge.

This Opinion Substituted on Grant of Appellant Paul Herbert's Motion for Rehearing for Withdrawn Opinion of August 3, 1995, Previously Reported at: *1995 Tex. App. LEXIS 1740*.

**DISPOSITION:** Judgment affirmed in part; reversed and remanded in part

**COUNSEL:** For Appellant: DAVID S. O'NEIL, MAURICE TATE 3RD., WOODLAND.

For Appellee: CHUCK PORTZ, HOUSTON.

**JUDGES:** Adele Hedges, Justice, Justices Hutson-Dunn and Mirabal also sitting.

**OPINION BY:** ADELE HEDGES

**OPINION**

[*869] OPINION ON MOTION FOR REHEARING

We grant appellant, Paul Herbert's, motion for rehearing, withdraw our opinion of August 3, 1995, and substitute this opinion in its stead.

Paul Herbert appeals a default judgment in favor of appellee Greater Gulf Coast Enterprises, Inc., D/B/A Gulf Coast Enterprises, Inc. (Gulf Coast), in a suit brought under *Tex. Prop. Code Ann. 162.001* (Vernon 1984). In five points of error, appellant contends that service of process was defective, that the trial court did not have personal jurisdiction over him, and that there was no evidence to establish misapplication of trust funds or quantum meruit or to support the award of exemplary damages. We reverse in part and affirm in part.

Facts

Appellant, who resides in Connecticut, is the president of Herbert and Boghosian, Inc. (H&B), a Connecticut corporation [**2] in the business of general contracting. Gulf Coast contracted with H&B to supply labor and materials to demolish and reinstall drywall and acoustical materials. Although Gulf Coast fully performed its obligations, H&B refused to pay as agreed. Gulf Coast sued appellant and H&B in Harris County, Texas to recover the money it alleged it was owed. Both H&B and appellant were served in Connecticut under *Tex. R. Civ. P. 108*. Neither filed an answer or made an appearance. The trial court granted Gulf Coast's motion for default judgment and entered judgment finding appellant and H&B jointly and severally liable for $ 61,373 actual damages, $ 1,800 in pre-judgment interest, $ 305 as costs of court, $ 100,000 in exemplary damages and $ 30,000 in attorney's fees. Within six months after the entry of judgment, appellant and H&B filed a petition for

writ of error seeking to set aside the default judgment. H&B was later dismissed as a party to this appeal on its own motion.

Standard of Review

Review of a judgment by writ of error is proper only if (1) the petition is filed within six months of the signing of the judgment [*870] (2) by a party to the lawsuit (3) who did not participate in the trial. [**3] *Tex. R. App. P. 45*. Reversal of the judgment is proper only if error is apparent from the face of the record. *Brown v. McLennan County Children's Protective Servs., 627 S.W.2d 390, 392 (Tex. 1982)*. In determining whether an error appears on the face of the record, a court may consider all the papers on file in the appeal, including the statement of facts. *DSC Finance Corp. v. Moffitt, 815 S.W.2d 551, 551 (Tex. 1991)*. Legal and factual sufficiency of the evidence to support the judgment is an appropriate inquiry on writ of error. *See Comstock Silversmiths, Inc. v. Carey, 894 S.W.2d 56, 57 (Tex. App.--San Antonio 1995, no writ)*.

Lack of In Personam Jurisdiction

In point of error one, appellant contends that the trial court erred in granting Gulf Coast a default judgment against him because Gulf Coast's petition did not contain jurisdictional allegations sufficient to confer in personam jurisdiction on the trial court.

Gulf Coast served appellant under *Tex. R. Civ. P. 108*. Allegations in petitions served under this rule must be sufficient to meet due process requirements. *Paramount Pipe & Supply Co., Inc. v. Muhr, 749 S.W.2d 491, 496 (Tex. 1988)*. Service of process [**4] under *rule 108* does not, in and of itself, confer in personam jurisdiction. *Id. at 495*. To pass constitutional muster, Gulf Coast was required to allege (1) that appellant purposefully did some act or consummated some transaction in Texas, (2) that the cause of action arose from or was connected with such act or transaction, and (3) that the assumption of jurisdiction by the trial court will not offend "traditional notions of fair play and substantial justice . . . ." *Siskind v. Villa Foundation for Education, 642 S.W.2d 434, 436 (Tex. 1982)*.

In this case, Gulf Coast's pleadings set forth:

Defendant, H&B promised to pay for the labor and materials and has accepted all and has used and benefited from installing them in construction contracts for Petrie Stores Corporation.

Although requested to do so, Defendant wholly failed and refused to pay as agreed.

Defendants, H&B and PAUL HERBERT as President are trustees for construction draws to which Plaintiff is a beneficiary in accordance with Texas Property Code

Section 162. Defendants have diverted and disposed of the corpus of the trust and Plaintiff is entitled to seek exemplary damages of at least $ 100,000.00.

Additionally, [**5] attached to and incorporated in the petition are invoices which identify the location of the jobsite as Houston, Texas and the business address of Gulf Coast as Porter, Texas.

The allegations in Gulf Coast's petition are sufficient to confer in personam jurisdiction. Section 162 of the Property Code establishes that construction payments are trust funds for the purpose of the statute if the payments were made to a contractor or to an officer under a construction contract for the improvement of specific real estate in Texas. *Tex. Prop. Code Ann. 162.001 (Vernon 1984)*. A contractor or an officer who receives trust funds is a trustee of the funds. *Tex. Prop. Code Ann. 162.002 (Vernon 1984)*. Gulf Coast specifically put appellant on notice that he was being sued for liability under this chapter of the Property Code. These contentions are sufficient allegation of appellant's purposeful act or transaction in the State of Texas. The cause of action, collection of money owed under the construction contract, clearly arose out of the transaction.

We do not believe that jurisdiction over appellant is offensive to the ideals of fair play and justice. The Legislature enacted section 162 as a [**6] special protection for contractors and subcontractors in order to avoid the injustice of owners' and contractors' refusal to pay for work completed. *See American Amicable Life Ins. Co. v. Jay's Air Conditioning & Heating, Inc., 535 S.W.2d 23, 26* [*871] *(Tex. Civ. App.--Waco 1976, writ ref'd n.r.e.)*. The basic equities weigh in favor of in personam jurisdiction. *See Siskind, 642 S.W.2d at 436*.

We overrule point of error one.

Lack of Proper Service

In point of error two, appellant contends that the trial court erred in granting the default judgment because the service of process was improper. Specifically, he complains that the officer's return attached to the citation fails to reflect service of the petition on him.

*Rule 108* provides:

Where the defendant is absent from the State, or is a nonresident of the State, the form of notice to such defendant of the institution of the suit shall be the same as prescribed for citation to a resident defendant; and such notice may be served by any disinterested person competent to make oath of the fact in the same manner provided in *Rule 106* hereof.

*Tex. R. Civ. P. 108*. *Rule 106* provides:

(a) Unless the citation or an order [**7] of the court otherwise directs, the citation shall be served by any person authorized by *Rule 103* by

(1) delivering to the defendant, in person, a true copy of the citation with the date of delivery endorsed thereon with a copy of the petition attached thereto . . . .

*Tex. R. Civ. P. 106.*

The return and affidavit of Sheriff Ocif, the officer in Connecticut who served appellant, states:

That on March 21, 1994 at 11:30 a.m. I left a true and attested copy of the within and foregoing Original Petition Citation, Notice to Serve Non-Resident Defendant with my endorsement thereon and a copy of the *Complaint* with and in the hands of the within named defendant PAUL HERBERT, 314 Ella Grasso Drive, Torrington, CT.

(Emphasis added.) Appellant contends that the affidavit is defective because it references a *complaint*, while Gulf Coast's pleading was denominated a *petition*.

Strict compliance with the rules regarding service of citation is required to confer jurisdiction on the trial court. *See Primate Const., Inc. v. Silver, 884 S.W.2d 151, 152 (Tex. 1994)*. In a writ of error attack, we indulge no presumptions in favor of valid issuance, service, and return [**8] of citation. *Uvalde Country Club v. Martin Linen Supply Co., 690 S.W.2d 884, 885 (Tex. 1985)*. In spite of these stringent requirements, we believe that the sheriff's return of citation reflects proper service on appellant.

We disagree that *Woodall v. Lansford, 254 S.W.2d 540, 543 (Tex. Civ. App.--Fort Worth 1953, no writ)* supports appellant's challenge of the return. In that case, the return stated that the sheriff had served a copy of the citation on the defendant, but it omitted any reference to the petition. Nor does *Primate Const., 884 S.W.2d at 152*, mandate a finding of defective return. The return of service preprinted form in that case recited that the officer served Plaintiff's Original Petition, which statement was inaccurate. The citation accurately reflected that the defendant was served with Plaintiff's Second Amended Petition, the first pleading which made the defendant a party. In both of these cases, the return's deviation from absolute accuracy was much more pronounced than in this case.

The return we are reviewing merely refers to the original petition as a complaint, a term clearly synonymous with petition. The fact that the original petition is referred [**9] to as a complaint does not make it any less clear that appellant was served with the appropriate documents. Even strict compliance does not require such absolute obeisance to the minutest detail. *See Boat Su-*

*perstore, Inc. v. Haner, 877 S.W.2d 376, 379 (Tex. App.--Houston [1st Dist.] 1994, no writ)*; *Popkowsi v. Gramza, 671 S.W.2d 915, 917 (Tex. App.--Houston [1st Dist.] 1984, no writ)*.

We overrule point of error two.

### Legal Insufficiency

Legal insufficiency review requires that the court consider only the evidence [*872] and inferences, when viewed in their most favorable light, that tend to support the finding, and disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio, 752 S.W.2d 518, 522 (Tex. 1988)*; *Stafford v. Stafford, 726 S.W.2d 14, 16 (Tex. 1987)*. If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *Sherman v. First Nat'l Bank, 760 S.W.2d 240, 242 (Tex. 1988)*; *In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (Tex. 1951)*. If there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Stafford, 726 S.W.2d at 16*.

### Misapplication [**10] of Funds

In point of error three, appellant contends that the trial court erred entering the default judgment because there was no evidence that he misapplied trust funds.

A defendant who defaults admits all allegations of facts except unliquidated damages. *Stoner v. Thompson, 578 S.W.2d 679, 684-85 (Tex. 1979)*. Appellant admitted by default the existence of the contract, the performance by Gulf Coast, the refusal to pay, the fact that he is a trustee of the construction funds for the benefit of Gulf Coast under section 162 of the Property Code, and that he diverted and disposed of the corpus of the trust. The allegations admitted by default in the context of Gulf Coast's reference to section 162 suffice to establish that appellant misapplied the trust funds.

### Quantum Meruit

In point of error five, appellant contends that the trial court erred in granting the default judgment because there was no evidence to support an award of damages based on quantum meruit.

Quantum meruit is an equitable remedy which does not arise out of a contract, but is independent of it. *Vortt Exploration Co. v. Chevron U.S.A., 787 S.W.2d 942, 944 (Tex. 1990)*. Generally, a party [**11] may recover under quantum meruit only where there is no express contract covering the services or materials furnished. Id. In this case, appellant admitted the elements of Gulf Coast's quantum meruit claim by default. Further, appellant's

admission by default of the existence of an express contract renders this issue moot.

We overrule point of error five.

## Exemplary Damages

In point of error four, appellant contends that appellee failed to present evidence to support the award of exemplary damages. Although a default judgment has the effect of admitting all matters properly alleged, if damages are unliquidated or not proved by an instrument in writing, the prevailing party must present evidence on damages. *Tex. R. Civ. P. 243*; *Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 83 (Tex. 1992)* (court rendering default judgment must hear evidence of unliquidated damages) Unliquidated claims include exemplary damages. *First Nat'l Bank of Irving v. Shockley, 663 S.W.2d 685, 689 (Tex. App.--Corpus Christi 1983, no writ)*. Thus, to sustain an award of additional damages in a default judgment, appellees must both plead knowing conduct *and* present evidence that [**12] the extent of appellant's knowledge warrants additional damages. *See Sunrizon Homes, Inc. v. Fuller, 747 S.W.2d 530, 534 (Tex. App.--San Antonio 1988, writ denied)* (punitive damages are not regarded as admitted by default in a DTPA action). In addition, an exemplary damages award must be reasonably proportioned to actual damages. *Alamo Nat'l Bank v. Kraus, 616 S.W.2d 908, 910 (Tex. 1981)*. The trial court must consider several factors to determine whether an award of exemplary damages is reasonable. *See id*.

Although appellant admitted by default that he intentionally or knowingly misapplied trust funds in violation of section 162 of the Texas Property Code, appellee did not plead or present any evidence to show that the [*873] extent of appellant's knowing conduct was so egregious as to warrant exemplary damages. Furthermore, no evidence was presented by appellee to support the amount of exemplary damages awarded.

Because there was no hearing on the issue of exemplary damages, we sustain point of error four, and remand to the trial court for appellee and appellant to present (1) evidence regarding the extent of appellant's intentional conduct; and (2) evidence regarding the [**13] reasonableness of the amount of exemplary damages requested.

We reverse the part of the judgment that awards punitive damages and remand the issue of punitive damages only. Tex. R. App. P. 81(b)(1); *see Alvarado v. Reif, 783 S.W.2d 303, 305 (Tex. App--Eastland 1989, no writ)* (in absence of a record on the issue of unliquidated damages following a no-answer default judgment, reversal and remand on this issue is required). The remainder of the judgment is affirmed.

/s/Adele Hedges

Justice

Justices Hutson-Dunn and Mirabal also sitting.

Judgment rendered and opinion delivered





Caution
As of: Mar 30, 2015

**DOROTHY L. HIGGINBOTHAM AND JOHN G. HIGGINBOTHAM, Petitioners, v. GENERAL LIFE AND ACCIDENT INSURANCE COMPANY, ET AL., Respondents**

**No. C-7641**

**SUPREME COURT OF TEXAS**

*796 S.W.2d 695*; *1990 Tex. LEXIS 121*; *34 Tex. Sup. J. 16*

**October 10, 1990, Delivered**

**PRIOR HISTORY:** [**1] From Tarrant County Second District.

**JUDGES:** C. L. Ray, Justice. Dissent by Chief Justice Thomas R. Phillips joined by Justices Cook, Hightower and Hecht.

**OPINION BY:** RAY

**OPINION**

[*695] OPINION

RAY, Justice. The issue in this cause is whether the record reflects proper service of citation on General Life and Accident Insurance Company and National Benefit Life Insurance Company, both domestic insurance companies. The return on both defendants' citations stated that they were served "on the 18 day of March, 1986 at 12:01 o'clock p.m." The trial court rendered default judgment against both defendants. After hearing the motions for new trial presented by both defendants, the trial court expressly concluded that service was proper under former *article 3.64 of the Insurance Code*, allowing service "at the home office of such company during business hours." The court of appeals reversed the trial court judgment, concluding that there was no indication in the record that 12:01 p.m. was during defendants' business hours. *750 S.W.2d 19*. We hold that an express finding by the trial court necessarily included the finding that

12:01 p.m. that day was during business hours. We further [**2] hold that the trial court's order was effective to amend the officer's return. We reverse the court of appeals judgment and remand this cause to it for further proceedings.

Dorothy and John Higginbotham sued General Life and National Benefit for the refusal to pay for Dorothy's medical expenses alleged to have been covered by insurance policies issued by those companies. When the insurers failed to answer, the trial court rendered default judgment against them. The return on the citations for the two defendants read substantially the same:

Received this citation the 18 day of March, 1986, at 8:07 o'clock a.m. Executed [*696] at Fort Worth, within the county of Tarrant, state of Texas, on the 18 day of March, 1986, at 12:01 o'clock p.m., by summoning the within named corporation, Gen. Life & Accident Ins. by delivering to Joyce Brown, President-Vice-President-Registered Agent-, in person of the said Gen. Life & Accident Ins. at 3900 SFwy a true copy of this citation together with the accompanying copy of plaintiff's original petition, having first endorsed on same the date of delivery.

On the citation return for General [**3] Life the words "registered agent" were circled. The citation return for National Benefit had its name in the appropriate blanks but did not have any words circled.

The insurance companies filed motions for new trial asking that the default judgments be set aside. They failed to specifically raise the defect that 12:01 p.m. was not expressly recited to have been during business hours, but they did complain that Joyce Brown was not an officer or registered agent and that service was improper.

At the time of service in 1986, *article 3.64 of the Insurance Code* provided the following methods for service of process on domestic insurance companies:

Process in any civil suit against any "domestic" company, may be served only on the president, or any active vice president, or secretary, or general counsel residing at the city of the home office of the company, or by leaving a copy of same at the home office of such company during business hours.

Insurance Code, ch. 491, § 1, art. 3.64, 52d Leg., 1951 Tex. Gen. Laws 868, 920, repealed by Act of Apr. 21, 1987, ch. 46, § 12, 70th Leg., 1987 Tex. Gen. Laws 79, 88.

The trial court conducted a hearing on the motions for new trial. [**4] The affidavits by vice presidents of both companies supporting the respective motions for new trial stated "someone received citations and rather than following the proper procedure, mistakenly placed them in the claim file." The motions themselves contained identical allegations that "through someone's error, these petitions were erroneously placed in the claim file of Mr. and Mrs. Higginbotham, rather than forwarded to the corporate officers who then forwarded them to an attorney for the filing of an answer." The trial court could properly take judicial notice that 12:01 p.m. on March 18, 1986 was an early afternoon on a Tuesday that was not a statutory holiday. Tex. R. Civ. Evid. 201(b),(c). There was testimony that Joyce Brown was an employee of both insurance companies who worked in the office during the relevant time. In the order overruling the motion for new trial, the trial court expressly found:

However, the return established that service occurred at the offices of the defendants and the proof at the hearing reinforced that fact, and it was also proven that Ms. Brown, while not a "registered agent," was an employee of these domestice [sic] insurance companies. This [**5] meets the requirement of *Insurance Code Article 3.64* to serve such a company inter alia" . . . by leaving a copy of same at the home office of such company during business hours." Service was proper and the Court acquired jurisdiction.

The trial court, finding that service was proper under the quoted provision of the statute, necessarily also found that service was made "during business hours." The evidence in the record supported this finding. General Life and National Benefit each admitted they actually received citation. The officer's return, direct testimony and circumstantial evidence indicated that Joyce Brown was a clerical employee who took the citations during regular business hours.

The record shows literal compliance with a method of service provided by the statute. The only apparent defect is that the officer's return did not adequately recite such method of service. Neither insurance company pointed out nor expressly complained about such defect before the trial court. The trial court has express authority to allow amendment of the return to reflect the service that was actually had. See *Tex. R. Civ. P. 118*. Since the record affirmatively shows service of citation, and [**6] the trial court in a formal order has found [*697] the facts that constitute the service that was had, we see no point in requiring the trial judge to sign a separate order labeled "Order Granting Amendment of Return." The order signed by the judge in the record is tantamount to an order amending the return.

Our holding in this case is consistent with the one opinion in which we have construed *rule 118*. In *London v. Chandler, 406 S.W.2d 203 (Tex. 1966)*, petitioner claimed that a default judgment was invalid because the citation failed to state the date of issuance, and stating the date of issuance was an express requirement under the rules of civil procedure. We held that the mere failure to note the date of issuance did not make the citation invalid or the service of the citation ineffective. We stated this was "made clear by *Rule 118* which provides for amendment of citations." Id. We then noted that the citation showed the date of sealing and stamping, the date of delivery to the sheriff, and date of service. Since the record showed a permissible period when the citation must have been issued, we held that the "failure of the clerk to note the date of issuance on the [**7] citation did not result in any prejudice to petitioner." Id. In London, as in the present case, there was no order as such expressly amending the citation or citation return.

The record and express finding of the trial court already establish the amendment of the incorrect or incomplete recitation on the return. If that alleged defect had been properly raised before the trial court, it "might have been immediately cured by amendment," and the appellate court should not have reversed the default judgment to require the trial court to expressly correct it. See generally *Crain v. Griffis, 14 Tex. 358, 363 (1855)*. Because the record affirmatively demonstrated a proper form of service and contained an order tantamount to formal amendment of the return of citation, the record was sufficient to show valid service.

Our holding in this case should not be mistaken as a retreat from our line of cases holding that the record of

service supporting a default judgment must show strict compliance with the rules governing service of process. See, e.g., *McKanna v. Edgar, 388 S.W.2d 927 (Tex. 1965)*; *Eagle Life Ins. Co. v. George, 473 S.W.2d 311* (Tex.Civ.App. - Beaumont 1971, [**8] writ ref'd). We adhere to our rule that "failure to affirmatively show strict compliance with the Rules of Civil Procedure renders the attempted service of process invalid and of no effect." *Uvalde Country Club v. Martin Linen Supply Co., 690 S.W.2d 884, 885 (Tex. 1985)*.

Most of these opinions addressing the requirement that the record show strict compliance are writ of error attacks on default judgments. In such cases there is no record of service other than the citation return, and its recitations, taken as true, must show strict compliance with service requirements. We are not to be understood as holding that the citation return alone in this case would have been sufficient to show valid service. Our holding in this case is restricted to situations in which there is a record (such as the evidence at the hearing on motion for new trial) showing strict compliance with a valid method of service and an order expressly amending the return or that is tantamount to an order amending the return of citation.

We reverse the judgment of the court of appeals and remand the cause to that court for it to consider the defendants' other points of error not previously addressed.

**DISSENT BY:** [**9] PHILLIPS

**DISSENT**

DISSENTING OPINION

Thomas R. Phillips, Chief Justice dissenting.

I dissent. The court's holding in this case is inconsistent with settled Texas authority regarding the sufficiency of service in default judgments.

When a defendant alleges defective service in an appeal from a default judgment, the ordinary presumptions supporting the validity of the judgment do not apply. As we explained in *Flynt v. City of Kingsville, 125 Tex. 510, 82 S.W.2d 934 (1935)*:

[*698] On a direct attack . . . the usual presumption of service because of the recital in the judgment, "that defendants though duly and legally cited to appear and answer, came not but wholly made default," does not obtain, and the error resulting from the absence in the record of the necessary showing necessitates a reversal of the judgment.

Thus, it is "the established law of this State that it is imperative and essential that the record affirmatively show

a strict compliance with the provided mode of service." *McKanna v. Edgar, 388 S.W.2d 927, 929 (Tex. 1965)*. This showing must be made from the record that was actually before the trial court when the default judgment was signed, [**10] unless the record is amended pursuant to *Texas Rule of Civil Procedure 118. See, e.g., Cox Marketing, Inc. v. Adams, 688 S.W.2d 215, 217-18*(Tex. App. -- El Paso 1985, no writ)(cost and supersedeas bonds signed by defendant's president cannot establish validity of service on signer since neither bond was on file when default judgment signed).

The return of service on the two defendants in this case was as follows:

PL. 12

OFFICER'S RETURN FOR CORPORATIONS

Received this Citation the 18 day of March, 1986, at 807 o'clock A.M. Executed at Ft. Worth, within the County of Tarrant, State of TX, on the 18 day of March, 1986, at 1201 o'clock P.M., by summoning the within named corporation, Natl. Benefit Life Ins. Co. by delivering to Joyce Brown at 3900 S. Fwy. President -- Vice-President -- Registered Agent --, in person, of the said Natl. Benefit Life Ins. Co. a true copy of this citation together with the accompanying copy of plaintiff's original petition, having first indorsed on same the date of delivery.

PL. 13

OFFICER'S RETURN FOR CORPORATIONS

Received this Citation the 18 day of March, 1986, at 807 o'clock A.M. Executed at Ft. Worth, within the County of Tarrant, State of [**11] TX, on the 18 day of March, 1986, at 1201 o'clock P.M., by summoning the within named corporation, Gen. Life & Accident Ins. by delivering to Joyce Brown Registered Agent -, in person, of the said Gen. Life & Accident Ins. at 3900 S. Fwy. a true copy of this citation together with the accompanying copy of plaintiff's original petition, having first indorsed on same the date of delivery.

Both of these returns are defective, as they do not, on the record in this case, affirmatively reflect compliance with any applicable service statute.

These defendants were amenable to service under at least two statutes. The first is *article 2.11 of the Texas Business Corporation Act*, which provides that a domestic corporation which maintains a registered agent within the state may be served by delivering process to the president, any vice president, or the registered agent of the corporation. The return of service on National Benefit Life states that delivery of process was made on Joyce Brown, but it does not state whether she was the president, a vice president, or the registered agent of that de-

fendant. As neither the petition nor the citation supply this necessary information, the service [**12] does not satisfy article 2.11.

The return of service on General Life and Accident Insurance Company, on the other hand, is regular on its face, since it [*699] states that Joyce Brown is the registered agent of that defendant. Recitations in the officer's return have been held to be prima facie evidence of proper service. *See National Med. Enterprises of Texas, Inc. v. Wedman, 676 S.W.2d 712, 715* (Tex. App. 1984, nor writ); *contra NBS Southern, Inc. v. The Mail Box, Inc., 772 S.W.2d 470* (Tex. App. -- Dallas 1989, no writ). However, in its motion for new trial, General Life established by uncontroverted evidence that Ms. Brown was not its registered agent, and the trial court so found in its findings of fact and conclusions of law. Thus, neither defendant was properly served under article 2.11.

The second possible statute under which service was authorized was *article 3.64 of the Texas Insurance Code*, then in effect but now repealed. That statute provided that service could be effected on a "domestic" life, health and accident insurance company by serving process "only on the president, or any active vice president, or secretary, or general counsel residing at the home [**13] office of the company, or by leaving a copy of same at the home office of such company during business hours." The Higginbothams argue that service was properly effected on both defendants under this statute. If so, such proper service was not reflected in the officer's returns. Joyce Brown's position was not designated on National Benefit's return, and nothing in the petition or citation demonstrates that she met one of the applicable categories for accepting service. And although she was designated as registered agent on the return of service on General Life, the evidence presented to and accepted by the trial court demonstrated that this statement was false. Hence, the only remaining avenue of service under the statute was by leaving process at the home office. Nothing in the return on either defendant reflects that "3900 S. Fwy" was the home office of either company, nor is such information supplied by the citation. The plaintiffs' original petition stated as follows:

Defendants are domestic insurance companies with home offices in Tarrant County, Texas, and registered to conduct business as insurance companies in the state of Texas. Defendants may be served process at their [**14] address, 3900 South Freeway, Fort Worth, Texas 76110.

Since an "address" is not necessarily a home office, the recitals in the petition fall short of supplying the necessary proof that service was effected on defendants at their home office, as the statute requires. Although the trial court made a finding of fact that this address was the home office, apparently based on evidence presented at

the hearing on motion for new trial, such "post-judgment" evidence cannot supply necessary information which was not in the record when the judgment was signed. *See Cox, 688 S.W.2d at 218*. Because the face of the record does not reflect proper service, and because the Higginbothams made no attempt to amend the record under *Rule 118*, the companies are entitled to a new trial.

These rules, while complicated, have been developed by our courts to protect the rights of all litigants. As we explained in *Finlay v. Jones, 435 S.W.2d 136, 138-39 (Tex. 1968)*:

The two basic judicial decisions a trial judge must make before rendering and entering a default judgment are (1) that the court has jurisdiction of the subject matter and the parties to the suit, and (2) that, on the record, the case [**15] is ripe for judgment. These decisions cannot possibly be clerical because the court has no more solemn judicial obligation than that of seeing that no litigant is unjustly saddled with a judgment in the absence of notice and a hearing.

Today, the court changes these rules. It deems the trial court's explanation of its ruling, based on testimony offered at the hearing on defendant's motion for new trial, as "tantamount to an order amending the return of citation" under *Texas Rule of Civil Procedure 118*. The court's sole authority for this remarkable holding is *London v. Chandler, 406 S.W.2d 203 (Tex. 1966)*. This reliance is misplaced. *London* cited *Rule 118* only to explain that the availability of amendment demonstrates that a technical defect in a citation does not render service thereunder absolutely void. [*700] *Id. at 204*. Neither *London* nor any other Texas case has ever suggested that a citation or return may be amended by implication. By its terms, the rule obviously contemplates a physical substitution of a corrected instrument into the record. *See, e.g., Mylonas v. Texas Commerce Bank -- Westwood, 678 S.W.2d 519* (Tex. App. -- Houston [14th Dist.] [**16] 1984, no writ). At the most, it might conceivably be expanded to encompass an affidavit from the officer who committed the error. *See generally Zaragoza v. de la Paz Morales, 616 S.W.2d 295, 296* (Tex. Civ. App. -- Eastland 1981, no writ)(on rehearing). If the court desires to change *Rule 118*, it should do so by amendment, not by a tortured reading of a prior opinion.

I would not so cavalierly alter Texas law. In light of the Higginbothams' failure to establish valid service, I would affirm the judgment of the court of appeals and remand the cause for trial. I therefore find it unnecessary to discuss whether the court of appeals erred in its holding that the Higginbothams were required to establish on the face of the record that the time of service was in fact during business hours, or whether the insurance compa-

nies established a right to new trial under the *Craddock* standards. *Craddock v. Sunshine Bus Lines, Inc., 134* *Tex. 388, 133 S.W.2d 124 (1939).*

## *Holt Atherton Industries, Inc. v. Heine*

Supreme Court of Texas

June 17, 1992, DELIVERED

No. D-0562

**Reporter**

835 S.W.2d 80; 1992 Tex. LEXIS 75; 35 Tex. Sup. J. 881

HOLT ATHERTON INDUSTRIES, INC., PETITIONER v. ROY HEINE, AND WIFE, KITTY HEINE, RESPONDENTS

**Prior History:** [**1] ON APPLICATION FOR WRIT OF ERROR TO THE COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS

## Core Terms

lost profits, bulldozer, trial court, damages, no evidence, calculation, ref'd, default judgment, contracts, new trial, estimated, questions, repairs, no writ, profits, Brick, trial judge, unliquidated damages, court of appeals, legal insufficiency, measuring, conscious indifference, allegations, inferences, warranty

## Case Summary

### Procedural Posture

Petitioner, a corporation, applied for writ of error to the Court of Appeals for the 13th District Court (Texas) that affirmed the order from the trial court denying its motion to set aside the default judgment in favor of respondents, owners of a business, and for a new trial, and that affirmed the award of lost profits to respondents on their contract and warranty claims arising from a delay in repairing a bulldozer.

### Overview

Petitioner corporation's predecessor delayed in repairing the bulldozer of respondent owners of a business because of a dispute about a warranty. After the bulldozer was repaired, respondents sued petitioner by serving its agent on contract, warranty, and business claims. When petitioner failed to answer, the trial court granted respondents' motion for a default judgment, awarded them lost profits, and denied petitioner's motion

to set aside the judgment and for a new trial. The appellate court affirmed the judgment. On writ of error, the court held that because petitioner did not allege any facts supporting its conclusory allegations that its failure to answer was not the result of conscious indifference on its part or the part of its agent, petitioner was not entitled to set aside the judgment. The court held that the evidence was insufficient for the amount of lost profits awarded to respondents because it was not based on one complete calculation. Therefore, the court affirmed the order denying the motion to set aside the default judgment, reversed the lost profit award, and remanded the case for a full hearing under *Tex. R. Civ. P. 243* on the amount of lost profits.

### Outcome

The court affirmed the order upholding the order denying petitioner corporation's motion to set aside a default judgment because petitioner did not allege facts showing its failure to answer was not due to conscious indifference on its or its agent's part. The court reversed the award of lost profits to respondents, business owners, because the amount was not based on one complete calculation and remanded the case for a hearing on the amount.

## LexisNexis® Headnotes

Civil Procedure > Judgments > Pretrial Judgments > General Overview

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Default Judgments

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Relief From Default

Civil Procedure > Judgments > Relief From Judgments > General Overview

Civil Procedure > ... > Relief From Judgments > Excusable Mistakes & Neglect > Mistake

Civil Procedure > Judgments > Relief From Judgments > Motions for New Trials

**HN1** A default judgment should be set aside and a new trial ordered in any case in which [1] the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his or her part, but was due to a mistake or an accident; provided [2] the motion for a new trial sets up a meritorious defense and [3] is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff.

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Relief From Default

Civil Procedure > Judgments > Relief From Judgments > General Overview

Civil Procedure > Judgments > Relief From Judgments > Motions for New Trials

**HN2** When applying the Craddock test, the trial court looks to the knowledge and acts of the defendant as contained in the record before the court. Where factual allegations in a movant's affidavits are uncontroverted, it is sufficient that the motion for new trial and accompanying affidavits set forth facts which, if true, would satisfy the Craddock test. However, conclusory allegations are insufficient.

Civil Procedure > Pleading & Practice > Pleadings > Answers

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Relief From Default

**HN3** When a defendant relies on his or her agent to file an answer, he or she must demonstrate that both he or she and his or her agent were free of conscious indifference.

Civil Procedure > Judgments > Pretrial Judgments > General Overview

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > General Overview

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Default Judgments

**HN4** Once a default judgment is taken on an unliquidated claim, all allegations of fact set forth in the petition are deemed admitted, except the amount of damages. A court rendering a default judgment must hear evidence of unliquidated damages. *Tex. R. Civ. P. 243*.

Contracts Law > ... > Types of Damages > Compensatory Damages > General Overview

Torts > ... > Commercial Interference > Prospective Advantage > General Overview

Torts > ... > Types of Damages > Compensatory Damages > General Overview

**HN5** The correct measure of damages is lost net profit, not gross profits.

Civil Procedure > Trials > Bench Trials

Civil Procedure > ... > Standards of Review > Substantial Evidence > General Overview

**HN6** In a nonjury trial, where no findings of fact or conclusions of law are filed or requested, it will be implied that the trial court made all the necessary findings to support its judgment. When a statement of facts is brought forward, these implied findings may be challenged by factual or legal sufficiency points.

Civil Procedure > ... > Standards of Review > Substantial Evidence > General Overview

**HN7** In determining a legal sufficiency question, a court must consider only the evidence and inferences that tend to support the finding, and disregard all evidence and inferences to the contrary. If there is more than a scintilla of evidence to support the finding, the no evidence challenge fails.

Contracts Law > ... > Types of Damages > Compensatory Damages > General Overview

Criminal Law & Procedure > ... > Crimes Against Persons > Assault & Battery > General Overview

Criminal Law & Procedure > ... > Assault & Battery > Simple Offenses > General Overview

Torts > ... > Commercial Interference > Contracts > General Overview

Torts > ... > Types of Damages > Compensatory Damages > General Overview

**HN8** Recovery for lost profits does not require that the loss be susceptible of exact calculation. However, the injured party must do more than show that they suffered some lost profits. The amount of the loss must be shown by competent evidence with reasonable certainty. What constitutes reasonably certain evidence of lost profits is a fact intensive determination. As a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the

amount of lost profits can be ascertained. Although supporting documentation may affect the weight of the evidence, it is not necessary to produce in court the documents supporting the opinions or estimates.

Contracts Law > Breach > General Overview

**HN9** The bare assertion that contracts are lost does not demonstrate a reasonably certain objective determination of lost profits.

Contracts Law > ... > Types of Damages > Compensatory Damages > General Overview

Torts > ... > Commercial Interference > Prospective Advantage > General Overview

Torts > Remedies > Damages > General Overview

**HN10** Recovery of lost profits must be predicated on one complete calculation.

Contracts Law > ... > Types of Damages > Compensatory Damages > General Overview

Torts > ... > Commercial Interference > Prospective Advantage > General Overview

Torts > Remedies > Damages > General Overview

**HN11** The court does not sanction any one method for determining lost profits. However, once a party has chosen a particular method for measuring their lost profits, they must provide a complete calculation.

Civil Procedure > Judgments > Pretrial Judgments > General Overview

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > General Overview

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Default Judgments

Civil Procedure > Judgments > Relief From Judgments > General Overview

Civil Procedure > Judgments > Relief From Judgments > Motions for New Trials

Civil Procedure > ... > Standards of Review > Substantial Evidence > General Overview

**HN12** As a general matter, when the court sustains a no evidence point of error after a trial on the merits, the court renders judgment on that point. Tex. R. App. P. 81(c). Texas courts view an appeal from a default judgment somewhat differently than an appeal from a trial on the merits. In part, this is because an adjudication on the merits is preferred in Texas.

Civil Procedure > Judgments > Pretrial Judgments > General Overview

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > General Overview

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Default Judgments

Civil Procedure > Trials > Judgment as Matter of Law > General Overview

Civil Procedure > ... > Standards of Review > Substantial Evidence > General Overview

**HN13** After a default judgment is granted, the trial court must hear evidence of unliquidated damages. *Tex. R. Civ. P. 243*. However, as a practical matter, in an uncontested hearing, evidence of unliquidated damages is often not fully developed. This is particularly true when the trial judge expresses a willingness to enter judgment on the evidence that has been presented. Therefore, when an appellate court sustains a no evidence point after an uncontested hearing on unliquidated damages following a no-answer default judgment, the appropriate disposition is a remand for a new trial on the issue of unliquidated damages.

**Counsel:** FOR PETITIONER: Caldwell, Mr. G. Wade, ATT 003621020, 512/227-7591, Martin, Drought & Torres, Inc., 2500 NationsBank Plaza, 300 Convent Street, San Antonio, TX 78205-3789. Golightly, Mr. Michael, ATT 008109500, 512/349-4900, Klein & Klein, 70 N.E. Loop 410, Suite 800, San Antonio, TX 78216. Simmons, Ms. Rebecca, ATT 018370890, 512/554-5500, Cox & Smith Incorporated, 2000 NBC Bank Plaza, 112 East Pecan Street, San Antonio, TX 78205.

FOR RESPONDENTS: Griffin, Mr. David C., ATT 008456950, 512/573-5500, Houston, Marek & Griffin, 120 Main Place, Suite 600, P.O. Box 2329, Victoria, TX 77902-2329. Sheppard, Ms. Cynthia T., ATT 020245500, 512/573-5500, Houston, Marek & Griffin, 120 Main Place, Suite 600, Post Office Box 2329, Victoria, TX 77902-2329. Griffin, Jr., Mr. John, ATT 008460300, 512/573-5500, Houston, Marek & Griffin, 120 Main Place, Suite 600, Post Office Box 2329, Victoria, TX 77902.

**Judges:** Cook, Doggett

**Opinion by:** Eugene A. Cook

## Opinion

[\*82] **OPINION**

This case presents two questions: 1) whether the trial court abused its discretion in denying the motion of defendant [\*\*2] Holt Atherton Industries, Inc. to set aside default judgment and for new trial; and 2) whether there is any evidence to support recovery of lost profits. We hold that the trial court did not abuse its discretion in denying the motion for new trial and that the evidence is legally insufficient to support recovery of lost profits. Therefore, we affirm in part and reverse in part the judgment of the court of appeals. *797 S.W.2d 250*.

In January 1987, Roy and Kitty Heine took their bulldozer to Holt Machinery Company for repairs under an alleged oral warranty. Holt Machinery did not recognize the oral warranty. The bulldozer remained in the possession of Holt Machinery but it was not being repaired because Holt Machinery did not recognize the warranty and the Heines did not agree to pay for repairs. In August of 1987, Holt Machinery merged into Holt Atherton Industries, Inc. Holt Atherton then merged into B.D. Holt Company. In September of 1987, the Heines agreed to pay for the repairs to their bulldozer. In March 1988, the Heines brought this action against B.D. Holt, B.D. Holt Co., and Holt Co. of Texas alleging violations of the Deceptive Trade Practices Act (*Tex. Bus. & Com. Code* [\*\*3] *§§ 17.41-17.63*), breach of express and implied warranties, breach of contract, negligence, and tortious interference with business relations. In July 1988, the Heines' Second Amended Original Petition added Holt Atherton as a defendant and was properly served on Holt Atherton's registered agent, Stevenson Atherton. In August 1988, the trial court rendered default judgment against Holt Atherton due to its failure to appear and answer. The Heines severed their cause of action against Holt Atherton to obtain a final judgment. Subsequently, the trial court stayed the actions against the other defendants pending the outcome of this appeal. Holt Atherton moved to set aside the default judgment and for new trial. The trial court denied Holt Atherton's motion, and the court of appeals affirmed. *797 S.W.2d 250*.

I.

A trial court's discretion in determining whether to grant a new trial after the court renders a default judgment must be referenced to the guiding rule set out in *Craddock v. Sunshine Bus Lines, 134 Tex. 388, 133 S.W.2d 124 (1939)*. The rule is:

**HN1** A default judgment should be set aside and a new trial ordered in any case in which [1] the failure of the defendant to [\*\*4] answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident; provided [2] the motion for a new trial sets up a meritorious defense and [3] is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff.

*Craddock, 133 S.W.2d at 126*; *Bank One, Texas, N.A. v. Moody,* __S.W.2d__ (Tex. 1992).

**HN2** When applying the *Craddock* test, the trial court looks to the knowledge and acts of the defendant as contained in the record before the court. *Strackbein v. Prewitt, 671 S.W.2d 37, 38-39 (Tex. 1984)*. Where factual allegations in a movant's affidavits are uncontroverted, it is sufficient that the motion for new trial and accompanying affidavits set forth facts which, if true, would satisfy the *Craddock* test. *Cliff v. Huggins, 724 S.W.2d 778, 779 (Tex. 1987)*; *Strackbein, 671 S.W.2d at 38-39*. However, conclusory allegations are insufficient. *Folsom Investments, Inc. v. Troutz, 632 S.W.2d 872, 875* (Tex. App.--Fort Worth 1982, writ ref'd n.r.e.).**HN3**

[\*83] When a defendant relies on his agent to file an answer, he [\*\*5] must demonstrate that both he and his agent were free of conscious indifference. *Harris v. Lebow, 363 S.W.2d 184, 186* (Tex. Civ. App.--Dallas 1962, writ ref'd n.r.e.). Because Stevenson Atherton was Holt Atherton's registered agent, Holt Atherton must show that Stevenson Atherton's failure to answer was due to a mistake or accident rather than intentional or due to conscious indifference.

The evidence introduced by Holt Atherton in support of its motion for new trial was uncontroverted by the Heines. Therefore, the trial court could accept this evidence as true and apply the *Craddock* requirements. The only evidence Holt Atherton presented to the trial court to negate intentional disregard or conscious indifference was the affidavit of Stevenson Atherton, which states:

The failure of the corporation to file an answer herein was due to accident and mistake due to the complete lack of any knowledge as to the facts or circumstances

involved in this cause. Holt Atherton Industries, Inc. has never done any business with Roy or Kitte [sic] Heine, nor repaired any type of equipment nor provided any type of service of any kind to either Roy or Kitte [sic] Heine. The corporation [**6] known as Holt Atherton Industries, Inc. has not been actively involved in the operation of a business that repairs heavy equipment of any type during the time period set forth in the Heine's [sic] lawsuit.

Holt Atherton argues that its motion and affidavit established that it failed to answer due to an accident or mistake. Atherton's statement that no answer was filed "due to accident and mistake" is merely a conclusory allegation. There is no explanation of the nature of the mistake. The factual allegations only serve to set up a meritorious defense. There are no factual allegations supporting the first part of the *Craddock* test. The essence of Holt Atherton's evidence is that it did not file an answer because Stevenson Atherton did not think Holt Atherton could possibly be held liable.

The trial court did not abuse its discretion in denying the motion because it could have concluded, based on the evidence before it, that Holt Atherton's failure to answer was intentional or due to conscious indifference. There was no support given to the allegation of mistake or accident. Because we hold that the first element of the *Craddock* test was not satisfied, we do not reach [**7] the other two elements.

II.

*HN4* Once a default judgment is taken on an unliquidated claim, all allegations of fact set forth in the petition are deemed admitted, except the amount of damages. *Morgan v. Compugraphic Corp., 675 S.W.2d 729, 731 (Tex. 1984)*. A court rendering a default judgment must hear evidence of unliquidated damages. *TEX. R. CIV. P. 243*; *see Morgan, 675 S.W.2d at 731*. The trial court, in this case, held a hearing and determined that the Heines suffered damages in the amount of $ 159,665 including $ 120,000 for lost profits. [1]

[**8] Holt Atherton argues that there is no evidence supporting the trial court's award of damages for lost profits. "*HN6* In a nonjury trial, where no findings of fact or conclusions of law are filed or requested, it will be implied that the trial court made all the necessary findings to support its judgment." *Burnett v. Motyka, 610 S.W.2d 735, 736 (Tex. 1980)* (citing *Goodyear Tire and Rubber Co. v. Jefferson Construction [*84] Co., 565 S.W.2d 916 (Tex. 1978)*; *Lassiter v. Bliss, 559 S.W.2d 353 (Tex. 1978))*. When, as in this case, a statement of facts is brought forward, these implied findings may be challenged by factual or legal sufficiency points. *Roberson v. Robinson, 768 S.W.2d 280, 281 (Tex. 1989)*; *Burnett, 610 S.W.2d at 736*. *HN7* In determining a legal sufficiency question, a court must consider only the evidence and inferences that tend to support the finding, and disregard all evidence and inferences to the contrary. *Best v. Ryan Auto Group, Inc., 786 S.W.2d 670, 671 (Tex. 1990)*; *King v. Bauer,* 688 S.W.2d 845, 846 (Tex. 1985). If there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Stafford v. [**9] Stafford, 726 S.W.2d 14, 16 (Tex. 1987)*; *Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983)*.

*HN8* Recovery for lost profits does not require that the loss be susceptible of exact calculation. *White v. Southwestern Bell Tel. Co., 651 S.W.2d 260, 262 (Tex. 1983)*; *Southwest Battery Corp. v. Owen, 131 Tex. 423, 115 S.W.2d 1097, 1098 (1938)*. However, the injured party must do more than show that they suffered some lost profits. The amount of the loss must be shown by competent evidence with reasonable certainty. *White, 651 S.W.2d at 262*; *Southwest Battery, 115 S.W.2d at 1098*. What constitutes reasonably certain evidence of lost profits is a fact intensive determination. As a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained. *See, e.g., Pena v. Ludwig, 766 S.W.2d 298, 304* (Tex. App.--Waco 1989, no writ); *Frank B. Hall & Co. v. Beach, Inc., 733 S.W.2d 251, 258* (Tex. App.--Corpus Christi 1987, writ ref'd n.r.e.); *Keller v. Davis, 694 S.W.2d 355, 357* (Tex. App.--Houston [14th Dist.] 1985, writ ref'd n.r.e.);

---

[1] The trial court's judgment includes the $ 120,000 as "Loss of Income Due to Absence of Dozer." Holt Atherton notes that *HN5* the correct measure of damages is lost net profit, not gross profits. *See Turner v. PV Int'l Corp., 765 S.W.2d 455, 465* (Tex. App.--Dallas 1988, *writ denied per curiam, **778 S.W.2d 865 (Tex. 1989))*; *Copenhaver v. Berryman, 602 S.W.2d 540, 544* (Tex. Civ. App.--Corpus Christi 1980, writ ref'd n.r.e.). However, read most favorably to the Heines, the record indicates that the trial court's judgment is based on an amount the court determined remained after the Heines had paid out expenses. Therefore, the court applied the correct measure of damages. To avoid confusion in this opinion, we refer to the $ 120,000 award as "lost profits."

*Automark of Texas v. Discount* [**10] *Trophies, 681 S.W.2d 828, 830* (Tex. App.--Dallas 1984, no writ). Although supporting documentation may affect the weight of the evidence, it is not necessary to produce in court the documents supporting the opinions or estimates. *See, e.g., Pena, 766 S.W.2d at 304; Keller, 694 S.W.2d at 357.* [2]

The Heines' testimony was the only evidence presented concerning their lost profits and can be divided into two segments. First, Mr. Heine was examined by his counsel. Then, the trial judge questioned both Heines.

When Mr. Heine was examined by his counsel, only one question was asked which touched on lost profits. The relevant question and answer are:

Q. Now as a result of the defendant keeping the dozer for eight months, did you lose out on $ 200,200 in lost income during that time period?

A. Yes, sir, I did.

Even if this testimony were otherwise sufficient, [**11] lost income is not the correct measure of damages. *See supra* note 1. Further, this testimony is legally insufficient because it does not provide any indication of how the Heines determined what their lost profits were. *See, e.g., Village Square, Ltd. v. Barton, 660 S.W.2d 556, 559-60* (Tex. App.--San Antonio 1983, writ ref'd n.r.e.)(testimony stating only total amount of lost profits held legally insufficient); *Frank B. Hall & Co., 733 S.W.2d at 259* (same). The court does not have any basis for determining whether the damages were established with reasonable certainty or were based on pure speculation. This question and answer are legally insufficient to prove lost profits.

After the Heines' counsel completed his questions, the trial judge asked additional questions to determine what the Heines' lost profits were and how the Heines concluded that their lost income was $ 200,200. The judge started out by questioning Mr. Heine. Mr. Heine could not provide answers to the judge's questions but

suggested that Mrs. Heine could be more helpful because she kept the books for the Heines. Mrs. Heine testified that she could not say what their lost profits were without looking [**12] [*85] at their books. When the judge asked what the Heines showed as profits on their income tax returns for 1985 or 1986, the years preceding the year that Holt Atherton kept their bulldozer, Mrs. Heine did not know. However, Mr. Heine responded that their income tax return showed profits of about $ 120,000. [3] Both Heines testified that in 1985, they had two bulldozers that operated about half of the time because business was slow. Apparently the trial judge determined that one bulldozer working full-time would earn as much in thirteen months as two bulldozers working half-time would earn in twelve months.

There are two problems with this analysis. First, the Heines never offered any evidence showing that there was enough work to keep two bulldozers working full-time over the relevant thirteen month period. This is particularly significant here [**13] because the Heines testified that there had not been enough work in the preceding years to keep both bulldozers working full-time. [4] Second, the Heines never showed that they were entitled to recover lost profits for the entire thirteen month period. *See Morgan, 675 S.W.2d at 731* (must show damages were caused by event sued on). The total down time may have been thirteen months. However, according to Mr. Heine's testimony, Holt Atherton only kept the bulldozer for eight months before starting repairs.

In response to further questions by the trial judge, Mr. Heine testified that the Heines lost several contracts because they did not have their bulldozer available. Mr. Heine was not able to specify which contracts they lost, how many they lost, how much profit they would have had from the contracts, or who would have awarded them contracts. The Heines could have supported their lost profits with testimony that they had lost out on specific [**14] contracts because they did not have their bulldozer available. *See Pace Corp. v. Jackson, 155 Tex. 179, 284 S.W.2d 340, 349 (Tex. 1955)*. However, *HN9* the bare assertion that contracts were lost does

---

[2]

We disapprove *Automark of Texas, 681 S.W.2d at 830*, to the extent that it holds the supporting records must he produced in court.

[3]  Although Mr. Heine was not on the witness stand when he made this statement, it was transcribed by the court reporter and appears in the statement of facts.

[4]  Mr. Heine testified "'85 was light; '86 was disastrous."

not demonstrate a reasonably certain objective determination of lost profits. *See* *Pace, 284 S.W.2d at 348-49*; *Pena v. Ludwig, 766 S.W.2d 298, 301-02* (Tex. App.--Waco 1989, no writ).

The testimony elicited by the trial judge provides pieces of several different methods of calculating lost profits. However, the Heines were not able to provide evidence supporting one complete calculation. ***HN10*** Recovery of lost profits must be predicated on one complete calculation. *See, e.g., Fleming Mfg. Co. v. Capitol Brick, Inc., 722 S.W.2d 399, 402 (Tex. 1986)*(evidence legally sufficient to support lost profits; did not discuss evidence), *on remand,* *734 S.W.2d 405* (Tex. App.--Austin 1987, writ ref'd n.r.e.)(evidence held factually insufficient to support lost profits; detailed evidence shows what was in the record for the Supreme Court to consider as part of no evidence review; demonstrates a complete calculation of lost profits); *Chemical Express Carriers, Inc. v. French, 759 S.W.2d* **[**15]** *683, 687-88* (Tex. App.--Corpus Christi 1988, writ denied)(demonstrating a complete calculation of lost profits); *Keller, 694 S.W.2d at 357* (same); *Reliance Universal Inc. v. Sparks Indus. Serv., Inc., 688 S.W.2d 890, 893-96* (Tex. App.--Beaumont 1985, writ ref'd n.r.e.)(same); *Village Square, Ltd., 660 S.W.2d at 559-60* (statement of total lost profits without supporting analysis held legally insufficient); *Frank B. Hall & Co., 733 S.W.2d at 259* (same); *Barbier v. Barry, 345 S.W.2d 557, 563* (Tex. Civ. App.--Dallas 1961, no writ)(held no evidence of lost profits because no evidence of supporting calculations). ***HN11*** We do not sanction any one method for determining lost profits. *Southwest Battery Corp., 115 S.W.2d at 1099*. However, once a party has chosen a particular method for measuring their lost profits, they must provide a complete calculation. The Heines have not done that. Therefore, the evidence is legally insufficient to provide a **[*86]** reasonable basis for determining the Heines' lost profits.

III.

We affirm the court of appeals' holding that the trial court did not abuse its discretion in denying Holt Atherton's motion for new trial and reverse **[**16]** the court of appeals' holding that the evidence supporting an award of lost profits was legally sufficient. ***HN12*** As a general matter, when we sustain a no evidence point of error after a trial on the merits, we render judgment on

that point. TEX. R. APP. P. 81(c); *Mobil Oil Corp. v. Frederick, 621 S.W.2d 595, 596 (Tex. 1981)*; *National Life and Accident Ins. Co. v. Blagg,* 438 S.W.2d 905, 909 (Tex. 1969); *Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965)*. Texas courts view an appeal from a default judgment somewhat differently than an appeal from a trial on the merits. In part, this is because an adjudication on the merits is preferred in Texas. *See, e.g., In re T.B.S., 601 S.W.2d 539* (Tex. Civ. App.--Tyler 1980, no writ).

***HN13*** After a default judgment is granted, the trial court must hear evidence of unliquidated damages. *TEX. R. Civ. P. 243*. However, as a practical matter, in an uncontested hearing, evidence of unliquidated damages is often not fully developed. This is particularly true when the trial judge expresses a willingness to enter judgment on the evidence that has been presented. Therefore, when an appellate court sustains a no evidence point after an <u>uncontested</u> **[**17]** hearing on unliquidated damages following a no-answer default judgment, the appropriate disposition is a remand for a new trial on the issue of unliquidated damages.

We remand the cause to the trial court for a new trial on the issue of lost profits.

Eugene A. Cook,

Justice

Concurring and Dissenting Opinion by Justice Doggett joined by Justice Mauzy.

OPINION DELIVERED: June 17,1992.

**Concur by:** LLOYD DOGGETT (In part)

**Dissent by:** LLOYD DOGGETT (In part)

# Dissent

**CONCURRING AND DISSENTING OPINION**

In overturning a judgment for this family business, the majority imposes new obstacles to any commercial enterprise that has wrongfully suffered a loss of profits. [1] Today's opinion abandons our well established rules governing review of legal sufficiency of the evidence

---

[1] In burdening small businesses like the one involved here, the majority continues an unfortunate trend of insensitivity to the realities of independent business. *See Caller-Times Publishing Co. v. Trim Communications, Inc.,* 826 S.W.2d 576, n.4 (Tex.

and disavows this particular businessperson's sworn testimony as totally worthless. Although I concur in that part of the judgment affirming liability, I dissent from the court's decision to ensure that lost profits stay lost.

 [**18] While covered by a Holt Atherton repair warranty, a part broke on one of the two D-8 Caterpillar bulldozers owned and operated by Roy and Kitty Heine. Instead of providing prompt repairs, Holt Atherton allegedly left them without the use of the bulldozer for about a year. Before granting the Heines a default judgment, the trial court appropriately heard evidence on their unliquidated damages including lost profits. *See* _Morgan v. Compugraphic Corp., 675 S.W.2d 729, 731 (Tex. 1984)_. Roy calculated lost income to be $ 200,200, based on the days the machine was incapacitated and also on "several" lost land clearing contracts, one of which, the O'Connor contract, was open-ended as to the amount of work. He further testified that by charging $ 80 per hour for bulldozer work, he realized an "immediate profit" of about $ 30 to $ 40 per hour. Additionally, he described a job for other of his equipment, which was lost due to customer impatience with the extended delays resulting from breakdown of the bulldozer. His total figure included an adjustment "for the time that there might not have been anything." Referencing the probable familiarity of experienced business people with approximate [**19] costs and profit margins, the trial court inquired as to profits shown on their recent income tax returns. The Heines [*87] responded that in the year before the breakdown, they reported a profit of about $ 120,000 by working both dozers full time for six months. As the trier of fact, the trial judge found damages for lost profits in this lesser amount, rather than the larger initial estimate.

On appeal, Holt Atherton urges that this testimony was "too speculative" and constituted no evidence to support a finding of damages for lost profits. In reviewing a no evidence point, we have recently written that consideration must be limited to:

only the evidence and inferences tending to support the jury's finding, viewed most favorably in support of the

finding, and disregarding all contrary evidence and inferences.

_Havner v. E-Z Mart Stores, Inc., 825 S.W.2d 456, 458 (Tex. 1992)_. Only when reasonable minds cannot differ in concluding that the evidence offered lacks probative force will it be held to constitute the legal equivalent of no evidence. _Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983)_. Recognizing that where "more than a scintilla of evidence [**20] [supports] the trial court's finding, the no evidence challenge fails," at __S.W.2D__ at, the majority misapplies the standard and implicitly creates new requirements for what constitutes a "scintilla" in the context of lost profits.

To support a default judgment in _Capitol Brick, Inc. v. Fleming Mfg. Co., 722 S.W.2d 399 (Tex. 1986)_, a small business gave evidence of its lost profits arising from loss of use of an inadequately repaired brick-making machine. The court of appeals reversed on other nonevidentiary grounds. In reversing the judgment of the court of appeals, we addressed a previously unconsidered no evidence challenge, finding that "the record reflects more than a scintilla of competent evidence to support the . . . lost profits." _Id. at 402_. The record there was strikingly similar to that here, as indicated by the writing of the court of appeals on remand, addressing the remaining factual insufficiency challenge:

Sprott [its president] testified that . . . Capitol Brick's mold press which would have produced this particular ten inch brick was idle for 11 1/2 weeks; that during normal conditions the press would have produced some l,750,000 [**21] bricks; and that these bricks would have sold for $ 120 per thousand, or some $ 207,000. Sprott also indicated a 25% net profit figure which translates into lost profits of $ 51,750. This was the only evidence concerning Capitol Brick's unliquidated damage claim.

_Fleming Mfg. Co. v. Capitol Brick, Inc., 734 S.W.2d 405, 406_ (Tex. App.--Austin 1987, writ ref'd n.r.e.). [2] [**22] Yet today's opinion burdens businesses by disregarding

---

1992)(Doggett J., dissenting)(small business made easy prey for anticompetitive, monopolistic practices); _Crim Truck & Tractor Co. v. Navistar Int'l Trans. Corp., 823 S.W.2d 591, 597 (Tex. 1992)_(Mauzy, J., dissenting)(local dealer denied remedy for abuse by a frachisor).

2

*Similarly, in* _Texas Gas Explor. v. Broughton Offshore, 790 S.W.2d 781, 789_ (Tex. App.--Houston [14th Dist.] 1990, no writ), a party's uncontroverted testimony, based on his industry experience, regarding estimated profits from disabled equipment was held to constitute legally sufficient evidence.

our prior writing, creating a higher evidentiary standard for small service-oriented companies, and presuming to conduct a factual sufficiency review on a no evidence point of error. The majority considers essentially the same factual questions previously deemed the function of the court of appeals: [3] whether the market demand would have supplied as much work as the Heines estimated, the certainty of specific contract prices, and whether the second bulldozer could have handled the total market demand. __S.W.2d__ at.

To negate the award of lost profits, the majority must take something and call it nothing -- it must treat the Heines' sworn testimony, given in response to a series of questions from the trial judge, as devoid of any legal value. This contrived disposition results from the impossibility of a remand to the court of appeals for a factual insufficiency review that Holt Atherton has falled to request.

Denial of relief in this case has ramifications that extend to all commercial litigation [*88] in which profits are an issue. The majority begins by eroding the distinction we have long recognized between uncertainty as to the occurrence of lost profits and uncertainty merely as [**23] to their exact amount. The former, but not the latter, is fatal to recovery. *See, e.g.,* *Southwest Battery Corp. v. Owen, 131 Tex. 423, 115 S.W.2d 1097, 1099 (Tex. 1938)*.

It then announces new requirements that a party must chose a particular method for measuring lost profits, __S.W.2d __at and that "recovery of lost profits must be predicated on one complete calculation." *Id.* at __. We have previously declined to construct such inflexible rules that could unfairly bar recovery:

It is impossible to announce with exact certainty any rule measuring the profits the loss for which recovery may be had. . . . A party who breaks his contract cannot escape liability because it is impossible to state or prove a perfect measure of damages.

*Southwest Battery Corp. 115 S.W.2d at 1099*; *accord* *White v. Southwestern Bell Tel. Co., 651 S.W.2d 260,*

*263 (Tex. 1983)*; *Davis v. Small Business Inv. Co. of Houston, 535 S.W.2d 740 743* (Tex. Civ. App.--Texarkana 1976, writ ref'd n.r.e.) (victim must present evidence from which factfinder can reasonably infer that some profit would have been made and reasonably estimate the amount of loss). Similarly, [**24] in *Pace Corp. v. Jackson, 155 Tex. 179, 284 S.W.2d 340, 348 (Tex. 1958)*, this court concluded that *measuring* lost profits is an inherently imperfect undertaking. *See also* *Pena v. Ludwig, 766 S.W.2d 298, 301* (Tex. App.--Waco 1989, no writ). Small service businesses offering skillful operation of their equipment are entitled to some latitude in measuring inexact lost profits sustained from loss of use. *Chemical Exp. Carriers, Inc. v. French, 759 S.W.2d 683, 687-88* (Tex. App.--Corpus Christi 1988, writ denied)(owner's estimated lost profits for charter company's disabled airplane legally sufficient). *See also* *Texas Tool Traders, Inc. v. Mosley Machinery Co., 422 S.W.2d 229*(Tex. Civ. App.--Waco 1967, no writ).

The majority's professed lack of "any basis for determining whether the damages were established with reasonable certainty or were based on pure speculation," ___S.W.2d___ at, discounts the Heines' response to the trial court's inquiry about how they "calculated" their damages. They referenced hourly charges, lost contracts, cost factors, and down-time adjustments. Estimations, when "given in terms of calculations, [constitute] more than [**25] conjecture, speculation or guesswork" and must be evaluated by the finder of fact. *Reliance Universal Inc. v. Sparks Industrial Services, 688 S.W.2d 890, 895-96* (Tex. App.--Beaumont 1985, writ ref'd n.r.e.).

Though criticized by the majority for failing to explain "that they had lost out on *specific* contracts," __S.W.2d__ at, the Heines were not necessarily required to identify specific, measurable, lost contracts because they were an existing business with a history of profitability. [4] Such an operation ordinarily encounters lesser evidentiary hurdles to show lost profits already sustained than would a business with little record of past earnings that seeks to show future lost profits. *See* *Barbier v. Barry,*

---

[3]

*Compare* *Capitol Brick,* 734 S.W.2d at 407, in which the court of appeals on remand examined the factual questions of whether the market demand existed for the estimated production it would have produced if the machine had been working, the certainty of the estimated price, and whether the demand could have been met from existing inventory in determining that evidence presented was factually insufficient.

[4]

*345 S.W.2d 557, 563* (Tex. Civ. App.--Dallas 1961, no writ). Among the methods a party may use to calculate its lost profits is *either* a history of profitability *or* the actual existence of lost contracts. *Allied Bank West Loop v. C.B.D. Assoc., 728 S.W.2d 49, 54-55* (Tex. App.--Houston [1st Dist.] 1987, writ ref'd n.r.e.).

 **[\*\*26]**  There is undoubtedly some legal evidence to support the Heines' lost profits damages. Since there is no factual insufficiency point of error requiring further review by the court of appeals, its judgment should be affirmed.

Lloyd Doggett

Justice

Justice Mauzy joins in this concurring and dissenting opinion.

Opinion delivered: June 17, 1992.

---

Nor were they required to prove their previous profits "remained stable or [grew] to support award for lost profits in subsequent years." *Martin v. Lou Poliquin Enterprises , Inc., 696 S.W.2d 180, 187* (Tex. App.-- Houston [14th Dist.] 1985, writ ref'd n.r.e.).




Caution
As of: Mar 30, 2015

**HUNT OIL COMPANY, et al., Petitioners, v. WILLIS MOORE, TRUSTEE, Respondent**

**No. C-1219**

**SUPREME COURT OF TEXAS**

*639 S.W.2d 459*; *1982 Tex. LEXIS 324*; *25 Tex. Sup. J. 476*

**July 21, 1982**

**PRIOR HISTORY:** [**1] From Henderson County Twelfth District.

**COUNSEL:** Ralph B. Shank, Dallas, Texas, for Petitioners.

Edward Kliewer, Jr., Dallas, Texas, for Respondent.

**OPINION BY:** PER CURIAM

**OPINION**

[*459] Willis Moore, Trustee, brought suit against Hunt Oil Company and others (Hunt Oil) seeking to have a lease declared terminated, to have cloud on title removed, and to have title quieted in himself. Additionally, Moore sought to recover damages and prejudgment interest. Both parties filed Motions for Summary Judgment. The trial court entered a "Partial Summary Judgment" granting Moore's motion. This judgment declared the lease terminated, quieted title in Moore and ordered the cloud be removed. The Partial Summary Judgment further ordered that Hunt Oil "render an accounting to [Moore] for all oil, gas and other minerals produced . . . which is attributable to [Moore's interest]." Moore was awarded costs of the suit, but the judgment did not mention Moore's claim for prejudgment interest.

After the accounting was completed by Hunt Oil, Moore filed a Motion for Final Judgment. The court entered a Final Judgment on May 16, 1980. The final judgment tracked the Partial Summary Judgment [**2] and then ordered that Hunt Oil pay Moore the sum of $377,058.52 together with 9% interest. The judgment denied all other relief not expressly granted.

Moore and Hunt Oil filed separate appeals. Hunt Oil appealed from the trial court's order terminating the lease, vesting title in Moore and awarding damages based on the accounting. Moore filed a motion to dismiss Hunt Oil's appeal. Moore alleged that the Partial Summary Judgment was in fact a final appealable judgment from which Hunt Oil should have perfected its appeal. Thus, Moore alleged, Hunt Oil did not timely perfect its appeal. The court of appeals granted Moore's motion and dismissed [*460] Hunt's appeal for want of jurisdiction. *629 S.W.2d 260*.

The court of appeals relied on *Ferguson v. Ferguson, 161 Tex. 184, 338 S.W.2d 945 (1960)*, in dismissing Hunt Oil's appeal. In *Ferguson*, the court ordered an accounting be made and further ordered that one-half of the profits be paid to the plaintiff. This judgment was considered final and appealable because "there remains only the rendering of one-half of the profits over a definite period of time. . . ." Id. at *338 S.W.2d at 947*.

As this Court held in *Pan* [**3] *American Petroleum Corp. v. Texas Pacific Coal & Oil Co., 159 Tex. 550, 324 S.W.2d 200 (1959)*, however, "a summary judgment which does not dispose of all parties and issues in the pending suit is interlocutory and not appealable . . . ." The "Partial Summary Judgment" entered in this case

only established ownership in the leasehold estate and ordered an accounting to be filed in the future. Any award of damages based on the accounting necessarily had to occur at a subsequent time. *See Perkins v. Springstun, 557 S.W.2d 343* (Tex. Civ. App. -- Austin 1977, writ ref'd n.r.e.). Further, the judgment did not address Moore's claim for prejudgment interest.

The Partial Summary Judgment did not dispose of all issues, therefore, it was interlocutory and unappeala-ble. Hunt Oil timely perfected its appeal from the Final Judgment and the court of appeals erred in dismissing the appeal for want of jurisdiction.

Pursuant to Rule 438 of the Texas Rules of Civil Procedure, we grant the writ of error and, without hearing oral argument, reverse the judgment of the [**4] court of appeals and remand the cause to the court of appeals for consideration of the merits of the appeal.



⚠
Caution
As of: Mar 30, 2015

**IN RE FRANK BOKELOH, GABRIELE BOKELOH AND JOHN DAUGHERTY REALTORS, INC., Relators**

**NO. 14-00-00366-CV**

**COURT OF APPEALS OF TEXAS, FOURTEENTH DISTRICT, HOUSTON**

*21 S.W.3d 784; 2000 Tex. App. LEXIS 4326*

**June 7, 2000, Opinion Filed**

**PRIOR HISTORY:** [**1] Appeal from 80TH DISTRICT COURT, Harris County; Scott Link, Judge.

**DISPOSITION:** Petition for Writ of Mandamus conditionally Granted.

**COUNSEL:** David A. Carp, James A. Dunn, J. Richard Hargis of Houston, TX, for Relators.

Thomas G. Bousquet of Houston, TX, for Respondent.

**JUDGES:** Kem Thompson Frost, Justice. Panel consists of Justices Amidei, Anderson and Frost.

**OPINION BY:** Kem Thompson Frost

**OPINION**

[*786] ORIGINAL PROCEEDING

WRIT OF MANDAMUS

In this original proceeding, relators seek a writ of mandamus directing the trial court to vacate its May 4, 1999, order of reinstatement entered in the trial court cause number 98- 37222, styled *Thomas Bousquet Jr., et ux. v. Frank Bokeloh, et ux.* Relators contend the order of reinstatement is void because the trial court's plenary power expired before the entry of the order. We agree and conditionally grant the writ of mandamus.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

In August 1998, the real parties in interest, Thomas and Denise Bousquet (the "Bosquets"), filed suit in the 80th Judicial District Court of Harris County against relators, Frank Bokeloh, Gabriele Bokeloh, John Daugherty Realtors, Inc. and Maureen Boyd, for alleged misrepresentations [**2] arising out of the sale of real estate. The Bosquets encountered problems in their attempts to obtain service of process on the relators and on March 18, 1999, the trial court notified them of its intent to dismiss their case on March 29, 1999, for want of prosecution. Citing the absence of service or a filed answer as grounds for dismissal of the case, the trial court's notice informed the Bosquets that their case would be dismissed unless "a default judgment is signed, an answer is filed, or service is accomplished." In response, they filed a verified motion to retain on March 29, 1999. The motion explained that they diligently had attempted to serve relators, who were now back in the United States after having been out of the country "for some time." [1] The Bosquets claimed they needed additional time, not for delay, but to obtain service of process. They requested the trial court to retain the case on the docket until June 28, 1999.

1 Although the Bokelohs lived near London, England for some period of time, the other relators/defendants John Daugherty Relators, Inc. and Maureen Boyd are residents of Houston, Harris County, Texas. The Bosquets offered no explana-

tion for their failure to obtain service on these parties.

[**3] [*787] The trial court dismissed the case on March 31, 1999; however, the court clerk's notice of the dismissal is postmarked April 29, 1999. The Bosquets claim their counsel received it on May 3, 1999, and immediately contacted the trial court's administrative staff to point out that they had filed a motion to retain before the dismissal. On May 4, 1999, the trial court reinstated the case on its own motion. Thereafter, relators were served and answered the lawsuit.

Trial was set for April 3, 2000. In February 2000, relators moved the trial court to vacate its order of reinstatement, alleging the court did not have jurisdiction to enter it. On March 6, 2000, the Bosquets filed a response that also purported to be a sworn motion establishing the date their counsel first received actual knowledge of the dismissal (via the clerk's post card notice of dismissal and final judgment). The Bosquets, however, insisted there was no need for a hearing on the matter because the trial court already had reinstated the case. The trial court denied relators' motion to vacate the order of reinstatement, prompting them to file a petition for writ of mandamus in this court. Relators claim the trial court's [**4] ruling attempting to reinstate the case is void, and ask this court to compel the trial court to vacate its order of reinstatement.

With the April 2000 trial setting fast approaching, relators moved for a continuance in the lower court. When, four days before trial, the court below had not ruled on that motion, relators filed an emergency motion for a stay in this court, seeking relief from the imminent trial setting. [2] We stayed the trial court proceedings to protect this court's jurisdiction pending our ruling on the petition for writ of mandamus.

2  RELATORS WAITED NEARLY ELEVEN MONTHS AFTER REINSTATEMENT OF THE CASE AND TWO BUSINESS DAYS BEFORE TRIAL TO CHALLENGE THE TRIAL COURT'S REINSTATEMENT ORDER BY MANDAMUS. NEVERTHELESS, LACHES CANNOT CONFER JURISDICTION UPON A COURT THAT HAS LOST JURISDICTION. *SEE DUBAI PETROLEUM CO. V. KAZI, 12 S.W.3d 71, 76 (TEX. 2000).*

## II. STANDARD OF REVIEW

Mandamus is intended to be an extraordinary remedy, available only in very limited circumstances [**5] "involving manifest and urgent necessity and not for grievances that may be addressed by other remedies." *Holloway v. Fifth Court of Appeals*, 767 S.W.2d 680, 684

*(Tex. 1989)*. Mandamus relief is available if the trial court abuses its discretion, either in resolving factual issues or in determining legal principles when there is no other adequate remedy by law. *See Walker v. Packer*, *827 S.W.2d 833, 839-40 (Tex. 1992)*. A trial court abuses its discretion if "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Johnson v. Fourth Court of Appeals*, *700 S.W.2d 916, 917 (Tex. 1985)*. When alleging that a trial court abused its discretion in its resolution of factual issues, the party must show the trial court reasonably could have reached only one decision. *See id. at 918*. An abuse of discretion also occurs if the trial court clearly failed to analyze or apply the law correctly. *See Walker, 827 S.W.2d at 840*.

## III. ANALYSIS OF THE ISSUES

The trial court entered its order of reinstatement more than thirty days after dismissing [**6] the case. Generally, a trial court loses plenary jurisdiction thirty days after entry of final judgment. *See generally TEX. R. CIV. P. 329b*; *see also Thermex Energy Corp. v. Rantec Corp., 766 S.W.2d 402, 403* (Tex. App. --Dallas 1989, no writ). The Bosquets, relying on *Texas Rules of Civil Procedure 165a* and *306a*, argue that the trial court's jurisdiction was extended beyond the original period and, therefore, it had jurisdiction to reinstate the case.

A timely and proper motion to reinstate extends the trial court's plenary power until thirty days after the motion is overruled either by a written signed order or by operation of law. *See South Main v. Wittig*, *909 S.W.2d 243, 244* (Tex. App.--Houston [*788] [14th Dist.] 1995, orig. proceeding) (citing *TEX. R. CIV. P. 165a(3)*). Where, as here, a court dismisses a case for want of prosecution, a party may file a motion to reinstate within thirty days after the order of dismissal is signed or within the period provided by *Rule 306a. See Levit v. Adams, 850 S.W.2d 469, 470 (Tex. 1993)* (explaining that the period provided by *Rule 306a* must begin within 90 days of judgment; no provision [**7] for notice received more than 90 days after judgment, *TEX. R. CIV. P. 165a(3)*). Because the trial court dismissed the Bosquets' case on March 31, 1999, a motion to reinstate was due by April 30, 1999 - one day after the postmark on the notice of dismissal and three days before the Bosquets claim their counsel received it. The trial court signed an order reinstating the case on May 4, 1999, after the original period of jurisdiction had expired. The Bosquets never filed a motion to reinstate the case. Now, they contend their motion to retain, filed before the trial court dismissed the case, should be treated as a premature motion to reinstate. Thus, they argue, their motion to retain extended the trial court's plenary power under *Rule 165a(3)*. In addition, they claim the trial court had juris-

diction to reinstate their case because their response to relators' motion to vacate the reinstatement order satisfies *Rule 306a(5)*. For reasons explained below, we reject both arguments.

**A. Is the motion to retain the functional equivalent of a motion to reinstate?**

A prematurely filed motion to reinstate extends the appellate timetables and the trial court's plenary jurisdiction. [**8] *See Perez v. Texas Employers' Ins. Ass'n, 926 S.W.2d 425, 426* (Tex. App.-Austin 1996, no writ). At issue in *Perez* was whether the plaintiff's verified motion to reinstate, filed before the final judgment, was effective to extend the appellate timetables. *See id.* First, the trial court signed an interlocutory order dismissing the plaintiff's case against two of the three defendants. *See id.* After the trial court denied the plaintiff's motions to reinstate, the court granted a non-suit as to the third defendant, thereby making the judgment final. *See id.* The *Perez* court, construing former *Texas Rule of Appellate Procedure 58(a)*, [3] held that a prematurely filed, verified motion to reinstate extended the appellate timetable because it is a "proceeding relating to an appeal." *926 S.W.2d at 427*. Observing that *Rule 58* did not contain a specific list of items that would extend the appellate timetable, the *Perez* court explained:

We do not think the language in *Rule 58* compels the exclusion of a verified motion to reinstate, whereas interpreting *Rule 58* to allow a prematurely filed motion to reinstate to extend the appellate timetables [**9] harmonizes with the general principle of liberally construing the rules of appellate procedure when possible.

3 *Rule 58(a)* provided:

Proceedings relating to an appeal need not be considered ineffective because of prematurity if a subsequent appealable order has been signed to which the premature proceeding may properly be applied.

*See White v. Schiwetz, 793 S.W.2d 278, 280* (Tex. App. -- Corpus Christi 1992, no writ). Much of former *Rule 58(a)* is now embodied in *Texas Rule of Appellate Procedure 27.2*, governing premature filings, and provides in pertinent part:

The appellate court may treat actions taken before an appealable order is signed as relating to an appeal of that order and give them effect as if they had been taken after the order was signed.

*TEX. R. APP. P. 27.2.*

*Perez, 926 S.W.2d at 427.* [4] Therefore, the *Perez* court reasoned, a motion to reinstate extends the appellate timetables in the same way as a motion for new trial. *Perez, 926 S.W.2d at 426-27* [**10] (citing *Butts v. Capitol City Nursing Home, Inc., 705 S.W.2d 696, 697 (Tex. 1986)).*

4 We recognize that the mere fact that the motion was overruled before the case was reinstated is not determinative. In the context of appellate timetables, a motion for new trial that has been overruled still serves the procedural functions of a motion for new trial:

*Rule 58* is not limited by its language to motions that are "live" when the final judgment is rendered, although for jurisdictional purposes . . . courts of appeals have engrafted such a requirement onto the rule by judicial interpretation. Other than [one case], in each of the cases in which the court engrafted the "live" pleading requirement to the rule, the court ultimately held the motion for new trial filed in the case was viable, and therefore could be considered as a premature motion.

We have not previously addressed this construction of *Rule 58*. Another court has declined to follow the [live pleading requirement], however. *Harris County Hosp. Dist. v. Estrada, 831 S.W.2d 876* (Tex. App.--Houston [1st Dist.] 1992, no writ). In *Estrada*, the court observed the policy reasons for the rules concerning premature filings: "The Texas Supreme Court has twice enacted rules to assure that cases are not dismissed because the motion for new trial was filed too soon. Neither of those rules limits their application to 'live' pleadings. To require a 'live' pleading here would defeat the purpose of those rules." We conclude that the better reasoned application of *Rule 58*, more congruent with the Rule's purpose, is set forth in *Estrada*. The trial court was fully apprised of [the movant's] complaints in its motion for new trial and the hearing on the motion, and the court rejected those arguments when it reformed judgment [sic].

*Fredonia State Bank v. General American Life Ins. Co., 881 S.W.2d 279, 282 (Tex. 1994)* (citations omitted) (interpreting former *TEX. R. APP. P. 58*).

[**11]

[*789] *Texas Rule of Civil Procedure 329b* governs motions for new trial. The rule extends the trial court's plenary power to thirty days after the overruling of any motion for new trial or motion to modify, correct,

or reform the judgment. *Rule 329b* does not include a specific list of items that operate to extend the appellate timetable. Thus, in determining whether a pleading operates to extend the trial court's plenary power under *Rule 329b*, the issue is whether it seeks a new trial or constitutes a motion to modify, correct, or reform a judgment. Unlike *Rule 329b*, however, *Rule 165a*, governing dismissal for want of prosecution, specifically provides that filing a *motion to reinstate* extends the trial court's plenary jurisdiction.

In considering whether the Bosquets' motion to retain operated as a motion to reinstate, we recognize that the substance of a motion, not its title, determines the relief sought. *See Surgitek v. Abel, 997 S.W.2d 598 (Tex. 1999)*; *see also TEX. R. CIV. P. 71* ("When a party has mistakenly designated any plea or pleading, the court, if justice so requires, shall treat the plea or pleading as if it had been properly designated."). [**12] Therefore, in deciding this issue we do not focus on the title of the Bosquets' motion but on its nature and purpose.

*Rule 165a(3)* provides that "a motion to reinstate shall set forth the grounds therefor and be verified by the movant or his attorney." *TEX. R. CIV. P. 165a(3)*. The rule does not dictate the specific grounds the party should plead in the motion, nor does it require the motion to specifically state that the failure to respond was not intentional. *See Gaylor v. Fluker, 843 S.W.2d 234, 236* (Tex. App.--Houston [14th Dist.] 1992, no writ). It is clear, however, that when a party files a motion to reinstate, the court must determine this issue at the hearing on reinstatement. *See id*.

Here, the Bosquets' motion is verified and explains why service on the relators/defendants, though diligently attempted, had not been obtained. However, neither the title nor the content of the motion makes any mention of reinstating a case that has been dismissed. Nor does the motion request a new trial, or propose by its terms to modify, correct, or reform a judgment. If it did, then it would not matter that it was filed before the dismissal; it would be the [**13] functional equivalent of a motion for new trial or a motion to reinstate. Instead of seeking this type of relief, however, the Bosquets' motion to retain simply asks the trial court not to [*790] dismiss the case in the first place. [5]

5 For similar reasons, the Bosquets' contention that their response to the request to vacate is, in reality, a bill of review, fails. The response contended the dismissal judgment had already been vacated; the response did not attack the judgment; it did not allege the grounds required for a bill of review; it was not an original petition filed in a separate cause; the substance was clearly a response to the motion to vacate reinstatement; and

the prayer addresses (i) whether the motion to retain was a motion to reinstate and (ii) *Rule 306a(4)* relief. *See Carroll v. Carroll, 580 S.W.2d 410, 413* (Tex. Civ. App.-Houston [1st Dist.] 1979, no writ) (petition for bill of review must meet requisites).

While courts have broad discretion to interpret pleadings [**14] liberally, the interpretation must be reasonable and consistent with the nature and character of the pleading at issue. To determine if the Bosquets' motion to retain meets these standards, we again focus on the text of *Rule 165a(3)*, which states in part:

The clerk shall deliver a copy of the motion to the judge, who shall *set a hearing* on the motion as soon as practicable. The court shall *notify* all parties or their attorneys of record of the *date, time and place* of the *hearing*.

The court shall reinstate the case upon finding *after a hearing* that the failure of the party or his attorney was not intentional or the result of conscious indifference but was due to an accident or mistake or that the failure has been otherwise reasonably explained.

*TEX. R.CIV. P. 165a(3)* (emphasis added). *Rule 165a* plainly requires notice and a hearing on a motion to reinstate. To accept the Bosquets' argument that the motion to retain operated as a motion to reinstate, we would not only have to overlook the true nature of the pleading but also ignore the fact that the trial court failed to give the requisite notice and failed to conduct the requisite hearing. The Bosquets [**15] point out that at the time the court entered the order reinstating the case, relators had not yet made an appearance as parties in the litigation and, therefore, were not prejudiced by the lack of notice and opportunity to be heard in response to the motion. The Bosquets, however, point to nothing which would suggest the motion to retain served the purpose of a motion to reinstate or that the trial court viewed it as such. [6] The record strongly suggests that by reinstating the case *sua sponte*, the trial court was attempting to correct what may have been an administrative error or oversight in the dismissal of the case, and that it was taking such action on its own, not in response to any motion.

6 In fact, when the trial court entered its order dismissing the Bosquets' claims, it effectively overruled their motion to retain.

In support of their contention that the motion to retain served as the functional equivalent of a motion to reinstate, the Bosquets cite to *Arguelles v. Kaplan, 736 S.W.2d 782, 785* [**16] (Tex. App.--Corpus Christi 1987, pet.ref'd n.r.e). In that case, the court treated the motion to reinstate, filed before dismissal was scheduled,

as a motion to retain. However, the point of error in *Arguelles* addressed only the trial court's decision not to dismiss after giving notice of its intention to dismiss. [7] The *Arguelles* court did not address the interpretation of the motion. Instead, it merely held that, "the dismissal or refusal to dismiss an action for want of prosecution is directed to the sound discretion of the trial judge, and his action will be reversed only upon a showing of an abuse of such discretion." *Id.* Under that standard, the trial court did not need a motion to retain or a hearing to retain the case on the docket.

> 7  The trial court *did* hold a hearing on the motion to reinstate, as required by *Rule 165a(3)*.

In the final analysis, we reject the notion that the Bosquets' motion to retain was the functional equivalent of a motion to reinstate for two compelling reasons. [**17] First, it did not address reinstatement by title, content, or relief sought. Second, and equally important, we cannot countenance [*791] an argument that would undermine the basic framework for determining appellate timetables. The same logic that would allow us to interpret the Bosquets' motion to retain opposing dismissal as a motion to reinstate after dismissal would open the door to arguments that any other pleading that opposes judgment in the first instance likewise operates to extend the trial court's plenary power and the appellate deadlines. Embracing this notion would contravene the rules that control the appellate timetables and create confusion and uncertainty about when a trial court's plenary jurisdiction expires. The Texas Supreme Court has repeatedly recognized the importance of ensuring certainty in computing appellate timetables, [8] and we will not accept an argument that undermines this policy.

> 8  *See, e.g, Mafrige v. Ross, 866 S.W.2d 590, 592 (Tex. 1993)* ("Litigants should be able to recognize a judgment which on its face purports to be final, and courts should be able to treat such a judgment as final for purposes of appeal.").

[**18]  **B. Did the trial court have limited jurisdiction under *Rule 306a*?**

The Bosquets next argue that they established the date of notice or their first actual knowledge by incorporating a *Rule 306a* motion into a response they filed nearly a year after judgment. This action, they contend, gave the court jurisdiction to reinstate the case four days after their counsel received the clerk's notice of dismissal.

*Rule 306a* provides a mechanism to establish the commencement of the court's plenary power where notice is not received within twenty days of judgment. *Rule 306a(1)* reaffirms that the thirty-day period for filing the

reinstatement motion begins on the date the dismissal order is signed. *See id.* (citing *TEX. R. CIV. P. 306a(1)*). However, *Rule 306a(4)* and *(5)* provide a procedural remedy when more than twenty days have passed between the signing of the judgment of dismissal and the date a party receives the clerk's notice or otherwise acquires actual knowledge of the signing of the judgment. *Rule 306a(4)* allows a party to establish the date it *actually* received notice or acquired knowledge as the commencement of the plenary jurisdiction period. In this case, however, [**19] the Bosquets failed to take the procedural steps necessary to establish the date they or their counsel first received notice or acquired actual knowledge of the judgment.

*Rule 306a(5)* requires the party seeking to implement *Rule 306a(4)* to:

[i] file a sworn motion;

[ii] provide notice to the other parties; and

[iii] prove in the trial court the date upon which the party adversely affected first received the clerk's notice of judgment or acquired actual knowledge that the judgment had been signed.

If the trial court determines a date of notice no more than ninety days after the original judgment was signed, then appellate deadlines and the period for the trial court's plenary power commence from the date of notice rather than the date the judgment was actually signed. *See TEX. R. CIV. P. 306a(4)*; *TEX. R. APP. P. 4.2(a)(1)*.

Filing a motion that complies with the requirements of *Rule 306a* invokes the trial court's jurisdiction for the limited purpose of determining the date of notice. *See Memorial Hosp. v. Gillis*, *741 S.W.2d 364, 365-66 (Tex. 1987)*; *In re Simpson*, *932 S.W.2d 674, 677* (Tex. App.--Amarillo 1996, no writ). [**20] To invoke the trial court's jurisdiction to hold a hearing, the sworn motion must set forth facts that create a *prima facie* case demonstrating the party did not receive the clerk's notice or acquire actual knowledge of the judgment within twenty days after the judgment was signed. *See Carrera v. Marsh*, *847 S.W.2d 337, 342* (Tex. App.--El Paso 1993, orig. proceeding). If the sworn motion fails to allege facts that would establish the application of *Rule 306a(4)*, any [*792] order determining the date of notice is void. *See Gillis*, *741 S.W.2d at 365-66*; *Simpson*, *932 S.W.2d at 678*; *see also Grondona v. Sutton*, *991 S.W.2d 90* (Tex. App.--Austin 1998, pet. denied) (only part of a *prima facie* case alleged within the period of plenary power; amendment to include full *prima facie* case after plenary power expired failed to invoke the court's jurisdiction). As the Texas Supreme Court has explained:

Compliance with the time periods prescribed by these rules is a jurisdictional prerequisite. *Unless a party establishes in the manner prescribed by the rule that he had no notice or knowledge* [**21] *of the judgment, the general rule prevails*: a trial court's power to reinstate a cause after dismissal expires *thirty days* after the order of dismissal is signed.

*Memorial Hosp. of Galveston County v. Gillis, 741 S.W.2d 364, 365 (Tex. 1987)* (emphasis added); *see also Butts v. Capitol City Nursing Home, Inc., 705 S.W.2d 696, 697 (Tex. 1986)* (per curiam) (effect of failure to comply with *Rule 165a* governing motions to reinstate after dismissals for want of prosecution); *Olvera v. Olvera, 705 S.W.2d 283, 284* (Tex. App. -- San Antonio 1986, writ ref'd n.r.e.) (per curiam) (on mot. for reh'g) (a movant under *Rule 306a* must not only file a sworn motion, but also must obtain a hearing and present evidence to support the motion). Here, the Bosquets failed to [i] file a sworn motion, [ii] give notice of a hearing, [iii] present evidence in a hearing as to the date of their actual knowledge or receipt of the court's notice, or [iv] obtain an order with written findings, resetting the commencement of the period of plenary power. *Cf. Thompson v. Harco Nat. Ins. Co., 997 S.W.2d 607, 623* (Tex. App.-Dallas 1998, [**22] pet. denied) ("We reject any contention that a trial court 'impliedly' grants relief under *Rule 306a(4)* if it grants a motion for new trial filed more than thirty days after the entry of a final judgment.").

The Bosquets first endeavored to invoke *Rule 306a(5)* in their response to the relators' motion to vacate the reinstatement order. This effort, however, did not come until nearly a year after the trial court signed the dismissal order. [9] The Bosquets' response to the motion to vacate reinstatement (which they claim was also a *Rule 306a* motion that meets the requirements for a petition for bill of review) neither requested a hearing nor gave notice of one. The sole purpose of the sworn *Rule 306a(5)* motion is to establish the limited jurisdiction necessary to hold the hearing. The Bosquets insisted there was no need for a hearing under *Rule 306a(5)* because the court already had granted the motion to reinstate. However, a hearing and notice of that hearing are essential to the validity of any *Rule 306a(5)* order. *See Cantu v. Longoria, 878 S.W.2d 131, 132 (Tex.1994)* (orig. proceeding). There was no 306(a)(5) notice or hearing in this case.

9    Because the Bosquets failed to implement *Rule 306a(5)*, we do not address whether their effort was timely. The Bosquets claim that relators are estopped to claim the reinstatement order was void because relators continued to seek affirmative relief in the trial court after the reinstatement order was entered. However, the parties

cannot confer jurisdiction, by estoppel, on a court that has lost power to act. *See Thompson , 997 S.W.2d at 622.*

[**23]    *Texas Rule of Appellate Procedure 4.2*, entitled *"No Notice of Trial Court's Judgement in Civil Case"*, states, "after hearing the [306a(5)] motion, *the trial court must sign a written order that finds the date* when the party or the party's attorney first either received notice or acquired actual knowledge that the judgment or order was signed." *TEX. R. APP. P. 4.2(c)* (emphasis added). Failure to hold a hearing and make a finding once a *prima facie* case is established constitutes an abuse of discretion. *See, e.g., Cantu , 878 S.W.2d at 131-32* (requiring the trial court to hold a hearing and to make a finding in a written order when a party presents proof of the date of notice in trial court). The trial court signed no order finding the date the [*793] Bosquets or their attorney first received notice or acquired actual knowledge of the order of dismissal.

The Bosquets do not dispute the lack of any notice, hearing or order but instead characterize the 306a(5) motion as a "useless motion" under the facts of this case. They argue that because the trial court reinstated the case on its own, there was no need to take further action as the relief [**24] they sought already had been granted. Nevertheless, *Rule 306a* clearly requires a motion, notice, hearing and order to establish jurisdiction beyond the original plenary power. Because the Bosquets did not follow the procedure mandated by that rule, they failed to establish a new date for the trial court's plenary power to commence. Based on this record, we can only conclude that the trial court's jurisdiction expired thirty days after March 31, 1999. On May 4, 1999, the date the trial court issued its order reinstating the case, its jurisdiction had expired, and it had no authority to act.

## C. Is the reinstatement order void?

A judgment is void "when it is apparent that the court rendering judgment 'had no jurisdiction of the parties, no jurisdiction of the subject matter, no jurisdiction to enter the judgment, or no capacity to act as a court.'" *Id.* (quoting *Browning v. Placke, 698 S.W.2d 362, 363 (Tex. 1985)*). The order of reinstatement was not merely invalid or voidable; it was void from its inception. *See Cook v. Cameron, 733 S.W.2d 137, 140 (Tex. 1987)*. A void order is entirely null within itself; it is not susceptible [**25] to ratification or confirmation, and its nullity cannot be waived. *See Guardianship of B.A.G., 794 S.W.2d 510* (Tex. App.--Corpus Christi 1990) (void judgment) (citing *Easterline v. Bean, 121 Tex. 327, 49 S.W.2d 427, 429 (1932)*; *American Universal Ins. Co. v. D.B. & B., Inc., 725 S.W.2d 764, 766 (Tex. App.--Corpus Christi 1987, writ ref'd n.r.e.))*. Holding a trial court's order void, when that same order may have led the par-

ties to believe all was well may seem unfair, [10] but just as a trial court cannot act when it has no jurisdiction, a reviewing court cannot find jurisdiction where none exists. We find the trial court's May 4, 1999 order reinstating the case is void.

> 10 **A combination of factors make the result in this case seemingly harsh and unyielding. First, the dismissal was likely the result of an administrative error or oversight by the trial court. Second, the trial court's *sua sponte* effort to remedy the error may have given the Bosquets a false sense that no other action was necessary. Then, for nearly a year after the court entered the order of reinstatement, the Bosquets pursued the litigation, only to learn on the eve of trial that their claims were dismissed after all and that the trial court's earnest effort to revivify them was without effect. However, the Bosquets are not without other possible remedies. They claim to have good grounds to pursue a bill of review. This may well be, but in the current posture of the case, the procedural deficiencies are jurisdictional.**

[**26]

### D. Is mandamus relief warranted?

When a trial court erroneously reinstates a case after the expiration of the court's plenary jurisdiction, mandamus will issue. *See Estate of Howley*, *878 S.W.2d 139 (Tex. 1994)* (per curiam); *see also South Main v. Wittig, 909 S.W.2d 243, 244* (Tex. App.-Houston [14th Dist.] 1995, orig. proceeding). Having determined that the trial court had no jurisdiction at the time it entered the order reinstating the case, we find mandamus relief is warranted and, if necessary, shall issue to compel the court to vacate its void order.

## IV. CONCLUSION

While the Texas Rules of Civil Procedure provide additional time to act for parties who do not receive timely notice of final judgments, the Bosquets did not take the procedural steps necessary to benefit from those rules. We cannot reasonably construe their motion to retain as anything but a plea to keep the case on the docket, a motion the trial court effectively over [*794] ruled in its dismissal order. Because the motion to retain cannot be deemed a prematurely filed motion to reinstate, motion for new trial, or motion to modify, change, [**27] or reform a judgment, the trial court's plenary power was not extended. There was no notice and hearing on the Bosquets' *Rule 306a(5)* contentions, and no order with factual findings. Consequently, there was no new date established for commencement of the trial court's plenary jurisdiction. These facts lead to the inescapable conclusion that the trial court's plenary power expired thirty days after it dismissed the case. Because the trial court was without jurisdiction when it entered the reinstatement order, that order is void.

We conditionally grant relators' petition for writ of mandamus and direct the trial court to vacate its May 4, 1999, order of reinstatement. The writ will issue only if the trial court does not comply.

/s/ Kem Thompson Frost

Justice

Petition Denied and Opinion filed June 28, 2000.

Panel consists of Justices Amidei, Anderson and Frost.

Lexis Advance®
Research

Document: In re Griffith, 2003 Tex. App. LEXIS 5530

# ⚠ In re Griffith, 2003 Tex. App. LEXIS 5530

Copy Citation

Court of Appeals of Texas, Fourth District, San Antonio

July 2, 2003, Delivered ; July 2, 2003, Filed

No. 04-03-00322-CV

**Reporter**

**2003 Tex. App. LEXIS 5530** | 2003 WL 21508337

IN RE Dixie GRIFFITH d/b/a Discount Furniture Warehouse

**Subsequent History:** Released for Publication October 9, 2003.

**Disposition:** Writ of mandamus conditionally granted.

## Core Terms

attorneys', default judgment, pre judgment interest, trial court, notice, interlocutory, damages, orders, motion for a new trial, mandamus, new trial, plenary, calculation, ministerial, blanks

## Case Summary

**Procedural Posture**

Appellant, tenant, sought mandamus relief from the orders of the 225th Judicial District Court, Bexar County, Texas, declaring the default judgment awarding the tenant $ 700,000 in trebled economic damages, $ 580,000 in trebled mental anguish damages and $ 2,000 in attorneys' fees, to be interlocutory, and granting the motion for a new trial filed by appellees, property owners.

## Overview

The tenant sued the owners, claiming actions they had taken forced her to conduct a fire sale, at which she sold $ 300,000 in inventory for $ 10,000. The owners failed to timely answer, and default judgment was entered in favor of the tenant. The owners filed a motion to set aside the default judgment, and for a new trial, claiming that the default judgment was interlocutory because it contained blanks in the portion of the judgment awarding attorney fees. The tenant argued that the trial court's orders were void because they were entered after the trial court's plenary power had expired. The appellate court ruled that the default judgment was a final judgment, and the trial court's plenary power had expired before it entered the orders. Because the trial court's orders were entered after the trial court's plenary power had expired, they were void. Also, because the record reflected that the trial court addressed the attorney fee issue and the judgment contemplated immediate enforcement and execution, the blanks in the attorney fee award did not render the default judgment interlocutory.

## Outcome

The petition for writ of mandamus was conditionally granted.

▼ **LexisNexis® Headnotes**

Civil Procedure > Judgments ▼ > Pretrial Judgments ▼ > General Overview ▼

Civil Procedure > ... > Pretrial Judgments ▼ > Default & Default Judgments ▼ > General Overview ▼

Civil Procedure > ... > Pretrial Judgments ▼ > Default & Default Judgments ▼ > Default Judgments ▼

Civil Procedure > Judgments ▼ > Relief From Judgments ▼ > General Overview ▼

Civil Procedure > Judgments ▼ > Relief From Judgments ▼ > Motions for New Trials ▼

Civil Procedure > Judgments ▼ > Relief From Judgments ▼ > 💼 Void Judgments ▼

Civil Procedure > Remedies ▼ > Writs ▼ > General Overview ▼

Civil Procedure > Appeals ▼ > Appellate Jurisdiction ▼ > 💼 Interlocutory Orders ▼

*HN1*⬇ Unless a judgment is interlocutory, a new trial is granted outside the trial court's plenary jurisdiction and is void. Mandamus is appropriate to set aside an order for new trial that is granted after the court's plenary power expires. *Shepardize* - Narrow by this Headnote

Civil Procedure > Judgments ▼ > Pretrial Judgments ▼ > General Overview ▼

Civil Procedure > ... > Pretrial Judgments ▼ > Default & Default Judgments ▼ > General Overview ▼

Civil Procedure > ... > Pretrial Judgments ▼ > Default & Default Judgments ▼ > Default Judgments ▼

Civil Procedure > Appeals ▼ > Appellate Jurisdiction ▼ > Final Judgment Rule ▼

*HN2*⬇ A judgment is final if it disposes of all pending parties and claims in the record. Whether a judicial decree is a final judgment must be determined from its language and the record in the case. A default judgment carries no presumption of finality, and the appellate court must divine the intention of the trial court from the language of the decree and the record as a whole, aided on occasion by the conduct of the parties. *Shepardize* - Narrow by this Headnote

Civil Procedure > Judgments ▼ > Pretrial Judgments ▼ > General Overview ▼

Civil Procedure > ... > Pretrial Judgments ▼ > Default & Default Judgments ▼ > General Overview ▼

Civil Procedure > ... > Pretrial Judgments ▼ > Default & Default Judgments ▼ > Default Judgments ▼

Civil Procedure > Remedies ▼ > Judgment Interest ▼ > General Overview ▼

Civil Procedure > Remedies ▼ > Judgment Interest ▼ > Prejudgment Interest ▼

Civil Procedure > Appeals ▼ > Appellate Jurisdiction ▼ > 💼 Interlocutory Orders ▼

*HN3*⬇ If there are no facts in the record to call into question the date on which prejudgment interest should accrue, then the calculation of prejudgment interest is a mere ministerial act and the failure to include a prejudgment interest award does not make the default judgment interlocutory. *Shepardize* - Narrow by this Headnote

Civil Procedure > Appeals ▼ > Appellate Jurisdiction ▼ > Final Judgment Rule ▼

Governments > Legislation ▼ > 💼 Vagueness ▼

*HN4*⬇ An order that all parties appear to have treated as final may be final despite some vagueness in the order itself. *Shepardize* - Narrow by this Headnote

**Counsel:** Robert W. Wachsmuth ▼, Robb D. Decker ▼, The Kleberg Law Firm, P.C. ▼, San Antonio, TX.

Ryan G. Anderson ▼, William H. Ford ▼, Kathy H. Kang ▼, Ball & Weed, P.C. ▼, San Antonio, TX. Marie K. Miller ▼, Mark C. Jordan ▼, Miller & Burke, P.C. ▼, San Antonio, TX.

**Judges:** **[1]** Opinion by: Alma L. Lopez ▼, Chief Justice. Sitting: Alma L. Lopez ▼, Chief Justice, Karen Angelini ▼, Justice, Sandee Bryan Marion ▼, Justice.

**Opinion by:** Alma L. Lopez

## Opinion

Original Mandamus Proceeding |1 ☙|

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

Dixie Griffith ("Griffith") seeks mandamus relief from the trial court's orders that declare a default judgment to be interlocutory and grant a motion for new trial. Griffith contends that the trial court's orders were void [2] because they were entered after the trial court's plenary power had expired. Because we conclude that the default judgment was a final judgment and the trial court's plenary power had expired before it entered the orders, we conditionally grant the petition for writ of mandamus.

**FACTUAL BACKGROUND**

Griffith was a tenant in a building owned by Arthur and David Lefton ("Leftons"). Griffith sued the Leftons, claiming actions they had taken forced her to conduct a "fire sale" at which she sold $ 300,000 in inventory for $ 10,000. The Leftons failed to timely answer. The trial court entered a default judgment on November 25, 2002, awarding Griffith $ 700,000 in trebled economic damages, $ 580,000 in trebled mental anguish damages, and $ 2,000 in attorneys' fees.

On December 3, 2002, the district clerk mailed notice of the judgment to the Leftons. On January 29, 2003, Griffith filed an abstract of judgment.

On February 7, 2003, the Leftons filed a motion to extend post judgment deadlines and motion for new trial. The Leftons contended that they did not receive notice or acquire actual knowledge of the judgment until February 3, 2003. The Leftons and their counsel later admitted [3] that the affidavits stating they had not received notice until February 3, 2003 were false and that each of the Leftons had received the notices the district clerk mailed on December 3, 2002.

On February 28, 2003, the Leftons filed a motion to set aside the default judgment and for a new trial, claiming that the default judgment was interlocutory because it contained blanks in the portion of the judgment awarding attorneys' fees. On March 12, 2003, the trial court entered a partial order on the Leftons' motion for new trial,

concluding that the default judgment was interlocutory and the trial court retained plenary jurisdiction. On March 13, 2003, the trial court granted the Leftons' motion for new trial. The trial court modified its order granting the motion for new trial on April 4, 2003, to address attorneys' fees and sanctions. Griffith seeks mandamus relief from these orders.

## DISCUSSION

The default judgment was signed on November 25, 2002. *HN1* Unless the judgment was interlocutory, the new trial was granted outside the trial court's plenary jurisdiction and is void. *In re Dickason*, 987 S.W.2d 570, 571, 42 Tex. Sup. Ct. J. 41 (Tex. 1998). Mandamus is appropriate to set aside an order **[4]** for new trial that is granted after the court's plenary power expires. *Id.*

*HN2* A judgment is final if it disposes of all pending parties and claims in the record. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195, 44 Tex. Sup. Ct. J. 364 (Tex. 2001). Whether a judicial decree is a final judgment must be determined from its language and the record in the case. *Id.* A default judgment carries no presumption of finality, and we must divine the intention of the trial court from the language of the decree and the record as a whole, aided on occasion by the conduct of the parties. *Zamarripa v. Sifuentes*, 929 S.W.2d 655, 657 (Tex. App.--San Antonio 1996, no writ).

With regard to attorneys' fees, the judgment recites:

5. attorneys' fees in the amount of $ 2, |2ᵏ| for obtaining this judgment; $ _____ for the successful defense of a motion for new trial or motion to set aside this judgment; $ _____ for the successful defense of an appeal to the Fourth Court of Appeals; and $ _____ for the successful defense of an appeal to the Supreme Court of Texas;

**[5]** The judgment further recites, "Plaintiff is allowed such writs and processes as may be necessary in the enforcement and collection of the judgment. Let execution issue. All relief not expressly granted herein is denied."

During the default judgment hearing, the following discussion occurred regarding attorneys' fees:

MR. DECKER ▾: . . . Attorneys' fees I will leave to the judge's discretion. To date plaintiff's attorneys have put into this file about 3,000 - $ 3,500.

*******

THE COURT: Do you have the certificate of last known address?

MR. DECKER ▾: I do.

THE COURT: Make sure that's filed with the court.

MR. DECKER ▾: Yes, sir. I also have a sailor's and soldier's affidavit, and as far as attorney's fees, there are blanks in the judgment.

THE COURT: How much [do] you want for attorneys' fees?

ME. DECKER ▾: As I said, we have put in 3500 up to today.

If the judgment had not addressed attorneys' fees, the judgment would have been interlocutory. *See McNally v. Guevara*, 52 S.W.3d 195, 196, 44 Tex. Sup. Ct. J. 998 (Tex. 2001). In this case, however, Griffith's attorney drew the trial court's attention to the blanks in the attorneys' fee portion of the judgment, and the trial court inserted **[6]** an award for attorneys' fees incurred in obtaining the judgment. The amount awarded by the trial court was less than the amount the attorney testified had been incurred. The trial court had the discretion not to award any additional attorneys' fees, especially given the absence of testimony regarding how much should be awarded in conditional appellate fees. Furthermore, the trial judge appeared to believe the judgment was final because he instructed the attorneys to return to his court "when they turn this around," implying that the parties should return to his court when a motion for new trial was filed as evidenced by the subsequent sanction imposed on Griffith's attorney for his "failure to follow the Court's express order." Because the record reflects that the trial court addressed the attorneys' fees issue and the judgment contemplated immediate enforcement and execution, the blanks in the attorneys' fee award do not render the default judgment interlocutory.

With regard to whether the judgment addressed Griffith's claims other than the DTPA claims, the default judgment states, "That in her Original Petition, Plaintiff sought a judgment against Defendants Lefton for their breach **[7]** of contract, tortious interference, common law fraud/intention [sic] misrepresentation, intentional infliction and violation of the Texas Deceptive Trade Practices Act. The factual basis of these claims was the wrongful eviction and forced sale of her inventory from Ms. Griffith's business that had been resident under a lease upon premises owned by Defendants. That as a result of Defendants [sic] conduct, Plaintiff suffered damages in the amount of $ 1,265,000.00." The judgment only later states, "That by virtue of Defendants' default and the evidence presented by Plaintiff Dixie Griffith, the Court finds that Defendants [sic] conduct was an unconscionable act that constitutes a violation of the Texas Deceptive Trade Practices Act. The actions of Defendants as outlined in Plaintiff's Original Petition and affidavit submitted in support of the judgment were done knowingly and intentionally thereby allowing for treble damages of both economic damages and mental anguish damages." The statement that Plaintiff suffered damages "as a result of Defendants [sic] conduct" unambiguously relates to all of Griffith's claims. The express DTPA finding was based on the evidence presented **[8]** during the hearing, and the second limited reference to the DTPA claim was to allow treble damages. The judgment expressly references and addresses all of Griffith's claims.

With regard to prejudgment interest, *HN3* "if there are no facts in the record to call into question the date on which prejudgment interest should accrue, then the calculation of prejudgment interest is a mere ministerial act" and the failure to include a prejudgment interest award does not make the default judgment interlocutory. *Olympia Marble & Granite v. Mayes*, 17 S.W.3d 437, 442 (Tex. App.-- Houston [1st Dist.] 2000, no pet.). In this court's opinion in *Zamarripa v. Sifuentes*, 929 S.W.2d at 657-58, the calculation of prejudgment interest was not ministerial because the record reflected that written settlement offers were exchanged, resulting in a statutory tolling of prejudgment interest. In *Olympia Marble & Granite*, the calculation of prejudgment interest was not ministerial because the record indicated that there were periods in which trial was delayed giving the trial court discretion to toll prejudgment interest. 17 S.W.3d at 443.

The date of Griffith's **[9]** petition is contained in the record - October 17, 2002. The Leftons were served on October 22, 2002. The answer date was November 18, 2002. The default judgment recites that Griffith requested the entry of a default

judgment on November 25, 2002. Accordingly, the record does not reflect any period in which trial was delayed.

With regard to the written notice of claim, during the hearing regarding the attorneys' fees the trial court was to award Griffith in granting the new trial, Griffith's attorney relied on billing records and stated that a DTPA demand letter was sent on October 2, 2002. On October 7, 2002, Griffith's attorney had conversations with one of the defendants and his insurance adjuster. After those attempts failed, Griffith's attorneys filed the petition on October 17, 2002. The Leftons rely on a later portion of the reporter's record from the same hearing to assert, "The record reflects that pre-suit communications were made regarding the dispute and plaintiff's claims. Thus, prejudgment interest might accrue at a date earlier than the filing of the suit."

Subject to tolling for written settlement offers and trial delays, prejudgment interest in this lawsuit would **[10]** accrue beginning on the earlier of the 180th day after the date the Leftons received written notice of a claim or on the date the suit was filed. TEX. FIN. CODE § 304.104 (Vernon Supp. 2003). Contrary to the Leftons' assertion, the record reflects that the DTPA demand letter (written notice of claim) was sent prior to any other "pre-suit communications." The remaining question is whether the absence of record evidence regarding when the DTPA demand letter was received by the Leftons precludes this court from finding that the calculation of prejudgment interest was ministerial. The answer is no. Griffith points out in her response that written notice was sent on October 2, 2002, and her attorney had phone conversations with the defendants and their insurance adjuster on October 7, 2002. Assuming the letter was received between the day it was sent and the day of the subsequent phone conversations, the 180th day after the date of receipt would be sometime in April of 2003. The lawsuit was filed October 17, 2002, which is much earlier than any date in April of 2003. Therefore, prejudgment interest accrued beginning on October 17, 2002, and its calculation is **[11]** ministerial. As a result, the default judgment was final.

With regard to the judgment as a whole, we note the Texas Supreme Court's statement in *Lehmann* that *HN4* "an order that all parties appear to have treated as final may be final despite some vagueness in the order itself." 39 S.W.3d at 206. After the judgment was entered, the clerk treated the judgment as final by sending notice of judgment as required by rule 306a(3), Griffith treated the judgment as final by filing an abstract of judgment, and the Leftons treated the judgment as final

by claiming they did not receive the notice required by rule 306a(3), which is only required to be sent in relation to a final judgment or other appealable order, and by seeking to extend the deadlines pursuant to rule 306a(4). Although we hold that the default judgment was final on its face, even if the Leftons believed the judgment contained some vagueness, the Leftons treated it as final - at least until the Leftons' efforts to extend the deadlines under rule 306a(4) failed.

## CONCLUSION

Because the trial court's orders dated March 12, 2003, March 13, 2003, and April 4, 2003, were entered after the trial court's plenary power **[12]** had expired, they are void. Accordingly, we conditionally grant the writ of mandamus. The writ will only issue if the trial court fails to withdraw the orders within ten days from the date of our opinion and order.

Alma L. Lopez ▼, Chief Justice

### Footnotes

**1** This proceeding arises out of Cause No. 2002-CI-15103, styled *Dixie Griffith d/b/a Discount Furniture Warehouse v. Arthur Lefton and David Lefton*, pending in the 225th Judicial District Court, Bexar County, Texas. The Honorable Frank Montalvo ▼ entered the Partial Order on Defendants' Motion for New Trial (Interlocutory Nature of Judgment) on March 12, 2003, ordering that the default judgment was interlocutory, and the Honorable Pat Boone entered orders on March 13, 2003, and April 4, 2003, granting the defendants' motion for new trial.

**2** The $ 2,000 was handwritten by the trial judge in a blank contained in the judgment.

**Content Type:** Cases

**Terms:** in re griffith

**Narrow by:** Court: Texas

**Date and Time:** Mar 30, 2015   04:04:47 p.m. EDT

LexisNexis·   About LexisNexis®   Copyright © 2015 LexisNexis. All rights reserved.

**Q** Questioned

As of: April 7, 2015 5:48 PM EDT

# *Irlbeck v. John Deere Co.*

Court of Appeals of Texas, Seventh District, Amarillo

June 10, 1986

No. 07-85-0009-CV

**Reporter**

714 S.W.2d 54; 1986 Tex. App. LEXIS 7698

LARRY IRLBECK, D/B/A I & B FARMS, APPELLANT, v. JOHN DEERE COMPANY, APPELLEE

**Subsequent History:** [**1] Rehearing Denied July 7, 1986.

**Prior History:** FROM THE DISTRICT COURT OF OCHILTREE COUNTY; 84TH JUDICIAL DISTRICT; NO. 7079; HONORABLE J. E. BLACKBURN, JUDGE.

## Core Terms

damages, evidentiary hearing, security agreement, default judgment, promissory note, no writ, foreclosure, default, hearsay, reasonable attorney's fees, installments, unliquidated, evidential, pleadings, combine, Holder

## Case Summary

### Procedural Posture

Appellant judgment debtor sought review of a default judgment from the District Court of Ochiltree County, 84th Judicial District (Texas), which decreed appellant's monetary liability to appellee tractor company and also granted the foreclosure of appellee's security interest liens on appellant's pledged collateral with an order of sale.

### Overview

Appellant judgment debtor challenged a default judgment entered by the trial court. Appellant asserted that the judgment was without the necessary evidential support. The court affirmed the judgment and held that appellee tractor company's claim for damages was an unliquidated one, which required a hearing on damages. However, the court held that the judgment was not rendered without an evidentiary hearing because appellee submitted its claim on the pleadings and affidavits, with appended instruments, with no objection and that the affidavit testimony admitted in court satisfied the evidential hearing requirement. The court held that inadmissible hearsay admitted without objection had probative value that could be considered in determining sufficiency. The court held that appellant's final points of error were overruled because the alleged admissions or stipulations of facts referred to by appellant were developed in a temporary injunction hearing. The court held that it would only consider evidence before the trial court when the judgment was rendered and that it could not go to the record of another case to ascertain facts not shown in the record of the case before it.

### Outcome

The court affirmed the judgment of the trial court and held that there was not a complete absence of admissible probative evidence of damages and that the evidence was not too weak to support the damages awarded. The court held that the alleged admissions or stipulations in a statement of facts developed in a temporary injunction hearing were not in the appellate record requiring the remaining three points of error to be overruled.

## LexisNexis® Headnotes

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

Contracts Law > ... > Types of Damages > Compensatory Damages > General Overview

*HN1* A claim of damages that is an unliquidated one, by virtue of *Tex. R. Civ. P. 243*, requires the court to hear evidence of damages.

Contracts Law > ... > Types of Damages > Compensatory Damages > General Overview

*HN2* Affidavit testimony of damages admitted in court satisfies the evidential requirement of *Tex. R. Civ. P. 243*.

> Criminal Law & Procedure > Sentencing > Imposition of Sentence > Evidence

> Evidence > ... > Statements as Evidence > Hearsay > General Overview

*HN3* Inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay. *Tex. R. Evid. 802*.

> Civil Procedure > Appeals > Standards of Review > General Overview

*HN4* An appellate court will consider only evidence before the trial when the judgment was rendered. An appellate court cannot go to the record of another case for the purpose of ascertaining a fact not shown in the record of the case before it.

**Counsel:** Messrs. Jody Sheets and Timothy D. Zeiger, Gassaway, Gurley, Sheets & Mitchell, Borger, Texas.

Messrs. Jeff Levinger and Michael L. McCoy, Carrington, Coleman, Sloman & Blumenthal, Dallas, Texas.

**Judges:** Reynolds, C.J., and Dodson and Boyd, JJ.

**Opinion by:** REYNOLDS

# Opinion

 [*55] Larry Irlbeck, d/b/a I & B Farms, perfected this appeal from a default judgment decreeing his monetary liability to John Deere Company, which was also granted the foreclosure of its security interest liens on Irlbeck's pledged collateral with an order of sale. With five points of error, Irlbeck challenges the evidential support for, and the foreclosure provision of, the judgment rendered. On the rationale to be expressed, the points will be overruled and the judgment will be affirmed.

John Deere brought the action underlying this appeal to recover on two combination promissory notes and security agreements Irlbeck executed and delivered to Hansford Implement Company. One promissory note-security agreement in the principal sum of $14,187.49 [**2] was for Irlbeck's purchase and security for the payment of a New Holl combine; the other in the principal sum of $14,558.17 was for his purchase and security for the payment of a Case tractor. Each note was payable in installments -- the first in six installments, and the second in eight installments -- of designated [*56] amounts at designated times, and interest on each past due installment accrued at the highest rate permitted by law or 10% per annum, whichever was lower. Each instrument provided that if the note be in default, Irlbeck will pay all expenses, including reasonable attorney's fees, incurred in collection or otherwise. Each promissory note-security agreement contained its written assignment by Hansford Implement Company to John Deere Company.

John Deere filed its action on 6 April 1984, outlining the transactions and alleging that as to each note, Irlbeck

> has defaulted in his payments under the terms of the note and security agreement, and has failed and refused to make payments although repeated demands for payment have been made.

Then, John Deere made this allegation: "As of February 14, 1984, defendant owed plaintiff $9,918.06 including all [**3] credits and offsets." John Deere prayed for recovery from Irlbeck of the indebtedness described with pre-and post-judgment interest and reasonable attorney's fees, and for the foreclosure of its security interest in the collateral, together with general relief.

Citation was issued on the day the action was filed, and personal service was effected on Irlbeck on 16 April 1984. He neither appeared nor answered within the time allowed by law.

Thereafter in June of 1984, John Deere moved the court for default judgment. The motion was supported by two affidavits, copies of Irlbeck's promissory notes and security agreements, and copies of the filed financing statements. The motion carried the certification that a copy of it was mailed to Irlbeck by certified mail on 8 June 1984. Irlbeck did not respond to the motion.

One of the affidavits was executed by Jack B. Holder, the Manager of Financial Services for John Deere. He swore that he had personal knowledge of the facts stated, among which were that the appended promissory notes and security agreements are true and correct copies of Irlbeck's promissory notes and security agreements; that John Deere is the owner and holder in

due course [**4] of the promissory notes;

> and that as of 21 May 1984, 1984, [*sic*] there is now due by defendant Larry Irlbeck d/b/a I & B Farms, to the plaintiff, on the debt set forth in the original petition the sum of $10,181.90 after allowing all credits and offsets, with additional interest accruing at the rate of 10% or $2.79 per day thereafter.

Continuing, Holder stated that "payments are overdue on the notes and defendant has refused to pay the sum owing on the notes;" that to secure the sum owed, Irlbeck gave to the holder of the promissory notes and security agreements a security interest in the New Holl combine and in the Case tractor which has not been released; and that John Deere has retained the firm of Carrington, Coleman, Sloman & Blumenthal to represent it in the collection and had agreed to pay the attorneys a reasonable fee for their services.

The other affidavit was executed by Michael L. McCoy, an associate in the law firm. He detailed the qualifications and legal services furnished to express the opinion that a reasonable attorney's fee for the firm's services in this cause would be $250.

On 29 June 1984, the court, hearing John Deere's motion for default [**5] judgment, and reciting Irlbeck's default, John Deere's entitlement to default judgment, and the hearing of evidence, rendered judgment. By its judgment, the court decreed that John Deere recover of and from Irlbeck, d/b/a I & B Farms, the amount of $10,181.90, together with the sum of $250 as reasonable attorney's fees, with interest thereon at the rate of 10% per annum from the date of the judgment, and ordered the foreclosure of John Deere's security interest liens on the New Holl combine and the Case tractor with the issuance of an order of sale.

Irlbeck groups his first two points of error to present his central contention that the judgment is without the necessary evidential [*57] support. Initially, he charges the trial court with error in rendering the judgment without an evidentiary hearing on the unliquidated claim which was not proved by an instrument in writing. Secondly, he contends the evidence is legally and factually insufficient to support the judgment rendered.

Under this record, Irlbeck correctly states that John Deere's claim was unliquidated. Viewed objectively, John Deere's pleading of its cause of action presented a liquidated claim within a literal reading [**6] of *Rule 241, Texas Rules of Civil Procedure*, to permit the court to assess damages without hearing evidence -- the notes were in definite amounts payable in denominated amounts at designated times with a stated interest rate accruing upon nonpayment of an installment, and Irlbeck ceased to make payments.

However, neither the notes nor the pleadings showed the credits and offsets which John Deere pleaded Irlbeck was allowed, and the pleadings did not state or even indicate when default in payments occurred. Thus, the pleaded factual allegations and the instruments in writing were not sufficiently definite to enable the court to make an accurate calculation from them of the amount of principal and interest due on the notes. Moreover, the reasonable attorney's fees provided by the instruments are by their very nature unliquidated damages. It follows that, as John Deere pleaded its cause of action, its **HN1** claim of damages was an unliquidated one which, by virtue of *Rule 243, Texas Rules of Civil Procedure* required the court to hear evidence of damages. *Freeman v. Leasing Associates, Inc., 503 S.W.2d 406, 408* (Tex.Civ.App. -- Houston [14th Dist.] 1973, no writ). And this result is [**7] not altered by John Deere's pleaded allegation of the amount owed on a date certain "including all credits and offsets," for this allegation is a conclusion which, absent the factual allegations of amounts and dates of payments on the notes, is insufficient to enable the court to accurately calculate the amounts due on the notes. *Burrows v. Bowden, 564 S.W.2d 474, 476* (Tex.Civ.App. -- Corpus Christi 1978, no writ); *Hall v. C-F Emp. Credit U., 536 S.W.2d 266, 268* (Tex.Civ.App. -- Texarkana 1976, no writ).

Nevertheless, it cannot be successfully maintained, as Irlbeck charges, that the judgment was rendered without an evidentiary hearing. This is for the reason that John Deere submitted its claim to the court on the pleadings and affidavits, with appended instruments, to which no objection was lodged. It has been held without disapproval that **HN2** affidavit testimony of damages admitted in court satisfies the evidential requirement of *Rule 243*, *supra*. *K-Mart Apparel Fashions Corp. v. Ramsey, 695 S.W.2d 243, 247* (Tex.App. -- Houston [1st Dist.] 1985, writ ref'd n.r.e.).

Still, in contending evidential support for the judgment is lacking, Irlbeck declares that the affidavits [**8] are inadmissible under *Rule 802, Texas Rules of Evidence*, because each statement in them is offered in evidence to prove the truth of the matter asserted. Irlbeck

misperceives the full import of *Rule 802*, which became effective before this action was filed.

Although the rule initially states that hearsay is not admissible except as provided by law, the second sentence of the rule reads: "*HN3* Inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay." That the rule provides for hearsay admitted without objection to have probative value sufficient to support a judgment was forecast in *Aquamarine Associates v. Burton Shipyard, 659 S.W.2d 820, 822 (Tex. 1983)*, and has become a principle of law. *K-Mart Apparel Fashions Corp. v. Ramsey, supra; Aatco Transmission Co. v. Hollins, 682 S.W.2d 682, 685* (Tex.App. -- Houston [1st Dist.] 1984, no writ); *Neidert v. Dozers, 681 S.W.2d 847, 848* (Tex.App. -- Eastland 1984, no writ).

It seems accepted that at the hearing of evidence on an unliquidated claim after default, testimony of the total amount due under a written instrument is sufficient to support an award of that amount, **[**9]** *BLS Limousine Service v. Buslease, Inc., 680 S.W.2d 543, 547* (Tex.App. -- Dallas 1984, no **[*58]** writ), and that such testimony may be supplied by an affidavit, albeit containing otherwise inadmissible hearsay, when it is admitted without objection. *K-Mart Apparel Fashions Corp. v. Ramsey, supra.* The unobjected to affidavit testimony of Holder supported the amount awarded on the notes in this cause. Likewise, the affidavit testimony of the attorney, again containing otherwise inadmissible hearsay but being admitted without objection, sufficiently supported the award of attorney's fees. *Neidert v. Dozers, supra.*

Given this situation and the standards of review enunciated in *Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965)*, as applicable to Irlbeck's evidential point of error, it cannot be said either that there is a complete absence of admissible, probative evidence of damages, or that the evidence is too weak to support the damages awarded. Consequently, Irlbeck's first two points of error are overruled.

With his third, fourth and fifth points of error, Irlbeck submits that if we find, as we have found, sufficient evidence before the trial court to support **[**10]** the default judgment, then there is yet error calling for a reformation of the judgment. The error, Irlbeck alleges, lies, in brief, in the rendered judgment's foreclosure decree which, by not specifying the amount owned on each piece of equipment, allows foreclosure of a purchase money lien on the New Holl combine, an item of exempt property, to pay nonexempt debts, particularly since he has paid the amount due on the combine. To show these facts, Irlbeck refers to John Deere's alleged admissions or stipulations of facts contained in a statement of facts developed in a temporary injunction hearing four months after the default judgment was rendered, and brought to this Court by John Deere's appeal in that matter under our cause no. 07-84-0312-CV.

Those alleged admissions or stipulations of facts were not before the trial court when the default judgment was rendered, and, of course, they are not in the record of this appeal; but, Irlbeck represents, those later developed facts may be noticed by the authority of *State ex rel. Colleyville v. City of Hurst, 519 S.W.2d 698, 701* (Tex.Civ.App. -- Fort Worth 1975, writ ref'd n.r.e.). However, the pronouncements of the *Colleyville* **[**11]** court are not that definite nor that inclusive, and Irlbeck's representation is untenable.

It is axiomatic that the *HN4* appellate court will consider only evidence before the trial when the judgment was rendered. *Gulf Oil Corp. v. Southland Royalty Co., 478 S.W.2d 583, 591* (Tex.Civ. App. -- El Paso 1972), *aff'd*, *496 S.W.2d 547 (Tex. 1973)*. And historically, the accepted rule of law is that an appellate court cannot go to the record of another case for the purpose of ascertaining a *fact* not shown in the record of the case before it. *Victory v. State, 138 Tex. 285, 158 S.W.2d 760, 763 (1942)*; *Nolan v. Bettis, 577 S.W.2d 551, 554-55* (Tex.Civ.App. -- Austin 1979, writ ref'd n.r.e.). Thus, since reference may not be made to the statement of facts in the other appeal for an ascertainment of the facts, and appellate review must be confined to the papers in this appeal by writ of error, *McEwen v. Harrison, 162 Tex. 125, 345 S.W.2d 706, 711 (1961)*, which do not show the facts upon which Irlbeck's points depend, **[**12]** the points must be, and they are, overruled.

The judgment of the trial court is affirmed.



Caution
As of: Mar 30, 2015

CHRISTOPHER LEIGH JOHN, PETITIONER v. MARSHALL HEALTH SER-
VICES, INC. AND HARRISON COUNTY HOSPITAL ASSOCIATION, INC.
D/B/A MARSHALL REGIONAL MEDICAL CENTER, RESPONDENTS

NO. 00-0324

SUPREME COURT OF TEXAS

*58 S.W.3d 738*; *2001 Tex. LEXIS 86*; *44 Tex. Sup. J. 1183*

September 20, 2001, Delivered

**SUBSEQUENT HISTORY:** On remand at, *Remanded by John v. Marshall Health Servs., 91 S.W.3d 446, 2002 Tex. App. LEXIS 8018 (Tex. App. Texarkana, 2002)*

**PRIOR HISTORY:** [**1] ON PETITION FOR REVIEW FROM THE COURT OF APPEALS FOR THE SIXTH DISTRICT OF TEXAS.
*John v. Marshall Health Servs., Inc., 12 S.W.3d 888, 2000 Tex. App. LEXIS 1215 (Tex. App. Texarkana, 2000)*

**DISPOSITION:** We thus conclude that the court of appeals erred by dismissing the appeal for want of jurisdiction. Accordingly, the Court grants John's petition for review, and without hearing oral argument, reverses the judgment of the court of appeals and remands the case to that court for consideration of the parties' other arguments.

**OPINION**

[*739] **PER CURIAM**

There are two questions here. First: is a judgment rendered after the close of trial final and appealable if it does not expressly dispose of the plaintiff's claims against defendants with whom the plaintiff was negotiating settlement? Second: must a motion to extend post-judgment deadlines under *Rule 306a(5) of the Texas Rules of Civil Procedure* [1] be filed within thirty days of

the date the movant learned that judgment had been signed? The court of appeals answered both in the affirmative and dismissed the appeal for want of jurisdiction. [2] We agree that the trial court's judgment was final and appealable, but not that the appeal was untimely perfected. Accordingly, we reverse [**2] the judgment of the court of appeals and remand the case to that court for consideration of the merits.

> 1 Unless otherwise noted, all references to rules are to the Texas Rules of Civil Procedure.
> 2 *12 S.W.3d 888*.

Plaintiff Christopher Leigh John sued six defendants: Trinity Mother Frances Health System, Tom Cammack, and Trincare Inc. ("the Trinity defendants"); Harrison County Hospital Association, Inc. and Marshall Health Services ("the Marshall defendants"); and Dianna Taylor. John alleged fraud, breach of contract, and tortious interference. The trial court granted partial summary judgment for the Marshall defendants on John's breach-of-contract claims. Shortly before trial, John reached a preliminary settlement with the three Trinity defendants, but no final agreement was made and the Trinity defendants were not dismissed from the case. The other three defendants moved for a continuance because of uncertainty about the effect of the settlement on the trial. The trial court denied the [**3] motion, and the case proceeded to trial on John's claims against Taylor and the Marshall defendants. John nonsuited Taylor dur-

ing the trial, and only his claims against the Marshall defendants were submitted to the jury. After the jury failed to reach a verdict, the trial court at first declared a mistrial, then withdrew that ruling and granted the Marshall defendants' earlier motion for a directed verdict. The Marshall defendants drafted and submitted a judgment, which the trial court signed on September 8. Entitled "Final Judgment", it recited the nonsuit of Taylor and ordered that John take nothing against the Marshall defendants. The judgment awarded costs against John and contained a "Mother Hubbard" clause, that "all other relief not expressly granted in this judgment is denied." The judgment did not mention the three settling Trinity defendants, and the record does not reflect whether their settlement was finalized.

The judgment was not filed by the clerk until September 13. John did not receive the defendants' proposed draft until several days later, and never received written notice from the clerk that a final judgment had been signed. [3] John first learned of the judgment [**4] in a telephone conversation with the clerk on September 30. The clerk stated that the judgment had been signed September 13. John filed a motion for new trial on October 13, more than thirty days after the judgment was signed [*740] when such motions must ordinarily be filed. [4] Post-judgment deadlines may be extended under *Rule 306a*, but John did not file the requisite motion under *Rule 306a(5)* until December 10. After a hearing, the trial court agreed that John first learned of the judgment on September 30, but that the *Rule 306a(5)* motion was filed too late, and therefore the time for filing a motion for new trial was not extended. On December 13, John filed a notice of appeal which was timely only if post-judgment deadlines ran from September 30 instead of September 8.

> 3    *Rule 306a(3)* provides in part: "When the final judgment or other appealable order is signed, the clerk of the court shall immediately give notice to the parties or their attorneys of record by first-class mail advising that the judgment or order was signed."
>
> 4    TEX. R. CIV. P. 329b(a).

[**5] On appeal, John argued that the judgment was not final because it did not dispose of the claims against the Trinity defendants. The court of appeals held that because the judgment followed a conventional trial on the merits and contained a "Mother Hubbard" clause, it was presumed final, [5] citing this Court's opinions in *North East Independent School District v. Aldridge* [6] and *Mafrige v. Ross*. [7] The court of appeals further held that John's *Rule 306a(5)* motion should have been filed within thirty days of the date he first learned of the judgment and because it was not, neither the motion for new trial

nor the notice of appeal were timely filed. [8] Accordingly, the court of appeals dismissed John's appeal for want of jurisdiction.

> 5    *12 S.W.3d at 890.*
> 6    *400 S.W.2d 893, 897-898 (Tex. 1966).*
> 7    *866 S.W.2d 590, 592 (Tex. 1993).*
> 8    *12 S.W.3d at 891.*

We first consider whether the judgment was final. Recently in *Lehmann v. Har-Con Corp.*, [**6] we observed that "the presumption that a judgment rendered after a conventional trial on the merits is final and appealable has proved fairly workable for nearly a century . . . ." [9] John here argues that this presumption should not be rigidly applied to make judgments final contrary to litigants' reasonable expectations. We do not disagree with this argument in general, especially given today's frequency of separate trials of parties and claims in a single case, and bifurcated trials required in certain instances. However, we believe the presumption is entirely appropriate in a case like this. John did not move for separate trials; he went to trial against the only defendants against whom he still wished to prosecute his claims. The trial court and all of the parties were aware of the pending settlement, and there is nothing to indicate that the trial court did not intend the judgment to finally dispose of the entire case. John did not move for dismissal of his claims against the Trinity defendants or for an agreed judgment. Whether the judgment was final should not depend on one party's testimony that he did or did not finalize a settlement with parties from whom he sought no [**7] relief at trial. The *Aldridge* presumption fits just such circumstances.

> 9    *39 S.W.3d 191, 199 (Tex. 2001).*

We next consider the *Rule 306a* issue. *Rule 306a(1)* provides that the periods within which parties may file various post-judgment motions and trial courts may exercise their plenary jurisdiction all run from the date the judgment is signed. *Rule 306a(3)* requires clerks to notify parties or their attorneys immediately when a judgment is signed. *Rule 306a(4)* provides the following exception to *Rule 306a(1)*:

If within twenty days after the judgment or other appealable order is signed, a party adversely affected by it or his attorney has neither received the notice required by paragraph (3) of this rule nor acquired actual knowledge of [*741] the order, then with respect to that party all the periods mentioned in paragraph (1) shall begin on the date that such party or his attorney received such notice or acquired actual knowledge of the signing, whichever occurred first, but in no event shall such [**8] periods begin more than ninety days after the original judgment or other appealable order was signed.

*Rule 306a(5)* prescribes the procedure for claiming this exception:

In order to establish the application of paragraph (4) of this rule, the party adversely affected is required to prove in the trial court, on sworn motion and notice, the date on which the party or his attorney first either received a notice of the judgment or acquired actual knowledge of the signing and that this date was more than twenty days after the judgment was signed.

The rules do not set a deadline for filing a motion under *Rule 306a(5).* [10]

> 10    See *Levit v. Adams, 850 S.W.2d 469 (Tex. 1993).*

Nevertheless, the court of appeals in this case held that such a motion must be filed within thirty days of the date a party or his attorney first either receives the clerk's notice of a judgment or acquires actual knowledge that the judgment was signed. [11] Three other courts have reached the same conclusion, [12] but two [**9] courts have concluded that *Rule 306a(5)* does not prohibit a motion from being filed at any time within the trial court's plenary jurisdiction measured from the date determined under *Rule 306a(4).* [13] The latter courts are plainly correct: *Rule 306a* simply imposes no deadline, and none can be added by decision, [14] other than the deadline of the expiration of the trial court's jurisdiction. We disapprove the cases that have reached a contrary result. [15]

> 11    *12 S.W.3d at 891.*
> 12    *Thompson v. Harco Nat'l Ins. Co., 997 S.W.2d 607, 618* (Tex. App.--Dallas 1998, pet. denied); *Gonzalez v. Sanchez, 927 S.W.2d 218, 221* (Tex. App.--El Paso 1996, no writ) (per curiam); *Montalvo v. Rio Nat'l Bank, 885 S.W.2d 235, 237* (Tex. App.--Corpus Christi 1994, no writ) (per curiam); *Womack-Humphreys Architects, Inc. v. Barrasso, 886 S.W.2d 809, 816* (Tex. App.--Dallas 1994, writ denied).

> 13    *Green v. Guidry, 34 S.W.3d 669, 670* (Tex. App.--Waco 2000, no pet.) (per curiam); *Grondona v. Sutton, 991 S.W.2d 90, 92* (Tex. App.--Austin 1998, pet. denied) (per curiam); *Vineyard Bay Dev. Co. v. Vineyard on Lake Travis, 864 S.W.2d 170, 172* (Tex. App.--Austin 1993, writ denied) (per curiam).
> [**10]
> 14    *See Lehmann*, 39 S.W.3d at 205 (citing *State Dept. of Highways & Pub. Transp. v. Payne, 838 S.W.2d 235, 241 (Tex. 1992)*, and *Alvarado v. Farah Mfg. Co., 830 S.W.2d 911, 915 (Tex. 1992)).*
> 15    See note 12 *supra.*

Because the trial court here found that John did not have notice of the judgment until September 30, more than twenty days after it was signed, time periods based on the signing of the judgment ran instead from that date. Thus, under *Rule 329b(a)* the plaintiff had thirty days to file a motion for new trial, and he did so. Because the trial court did not rule on the motion, it was overruled by operation of law on the seventy-fifth day [16] after September 30, which was December 14. The trial court's plenary jurisdiction did not expire until thirty days later, [17] on January 13, 2000. The plaintiff's notice of appeal was due ninety days [18] from September 30, which was December 29, and was therefore timely when filed on December 13.

> 16    *TEX. R. CIV. P. 329b(c).*
> [**11]
> 17    *TEX. R. CIV. P. 329b(e).*
> 18    *TEX. R. APP. P. 26.1(a).*

[*742]   We thus conclude that the court of appeals erred by dismissing the appeal for want of jurisdiction. Accordingly, the Court grants John's petition for review, and without hearing oral argument, reverses the judgment of the court of appeals and remands the case to that court for consideration of the parties' other arguments.





Caution
As of: Mar 30, 2015

WILLIAM JONES, ET AL., Appellants v. MARK C. GRIEGE, Appellee

No. 05-90-01194-CV

COURT OF APPEALS OF TEXAS, Fifth District, Dallas

*803 S.W.2d 486*; *1991 Tex. App. LEXIS 453*

January 30, 1991, Filed

**PRIOR HISTORY:** [**1] On Appeal from the Probate Court No. 2; Dallas County, Texas; Trial Court Cause No. 86-4590-P/2.

**JUDGES:** Enoch, C.J., and Lagarde and Joe Burnett JJ.

**OPINION BY:** BURNETT

**OPINION**

[*487] *OPINION*

We questioned whether the judgment in this case was final, to determine whether we had jurisdiction over this appeal. For the reasons given below, we conclude that the judgment is final and that we do have jurisdiction.

Appellee Mark C. Griege succeeded appellant William Jones as the guardian of an incompetent person. Griege sued Jones and alleged that Jones had misappropriated various funds held in trust for the incompetent. Griege requested both actual and punitive damages from Jones.

Griege then filed a motion for summary judgment, which was granted. The summary judgment awarded Griege actual damages but was silent on Griege's request for punitive damages. Although the summary judgment did not purport to dispose of the entire probate proceeding, it is not necessary that it do so for purposes of appellate review. An order in a probate proceeding is appealable if it finally adjudicates some substantial right and the order may be final and appealable even though the decision [**2] does not fully and finally dispose of the entire probate proceeding. *Bowen v. Hazel, 723 S.W.2d 795, 797* (Tex. App.--Texarkana 1987, no writ). Nonetheless, Griege's request for punitive damages was necessarily urged in Griege's proceeding against Jones. Therefore, if the summary judgment did not dispose of that request, then it did not finally adjudicate all of Griege's claims against Jones. A summary judgment enjoys no presumption of finality. *See Chase Manhattan Bank, N.A. v. Lindsay, 787 S.W.2d 51, 53 (Tex. 1990)* (per curiam) (on mot. for reh'g). Therefore, we had to determine whether this summary judgment disposed of Griege's request for punitive damages.

In response to the inquiry that we made, Griege's attorney wrote the Court a letter. It stated that:

As counsel for [Griege] and in consultation with my client, we decided not to pursue the punitive damage claim. . . . Therefore, the summary judgment which was entered was not entered by mistake. It was a conscious decision on the part of [Griege] to forego his right to attempt to collect punitive damages.

There is no showing that Griege had ever informed the trial court, however, of his decision to waive [**3] his request for punitive damages. We hold that it was not necessary for Griege to do so in order to show that the jurisdiction of this Court has been successfully invoked.

We are aware that parties cannot generally confer jurisdiction upon a court by waiver. What is usually

meant by that principle, however, is that a party cannot agree to having an action heard by a tribunal that otherwise lacks authority to hear it. *E.g., Welder v. Fritz, 750 S.W.2d 930, 932* [*488] (Tex. App.--Corpus Christi, orig. proceeding) (parties cannot agree to treat a master's recommendation as if it were an order entered by a district judge for purposes of having it reviewed); *Hogan v. G., C. & S.F. Railway Co., 411 S.W.2d 815, 816* (Tex. Civ. App.--Beaumont 1966, writ ref'd) (parties cannot agree to have the Ninth District Court of Appeals hear a case arising in the Twelfth District). A waiver of a court's lack of jurisdiction necessarily entails at least an implicit agreement between the parties, to which they hope that the court assents, to have the court resolve their controversy.

In contrast, Griege has not waived the lack of this Court's jurisdiction. He has waived only a claim for [**4] affirmative relief in the form of punitive damages. [1] His act of waiver is a "unilateral act," not requiring Jones's agreement. *Burton v. National Bank of Commerce of Dallas, 679 S.W.2d 115, 117* (Tex. App.--Dallas 1984, no writ). By that unilateral act, Griege removes the necessity for the trial court to take any further action and so imparts the requisite finality to the judgment now in place. That Jones may not have known of Griege's decision to waive his request for punitive damages at the time that Jones perfected this appeal is irrelevant: at most, Jones would have perfected this appeal prematurely. *See TEX. R. APP. P. 58(b)*. The only remaining question is whether Griege was required, once he had decided to waive his request for punitive damages, to take any further action in the trial court before he informed this Court of his waiver.

> 1   We are careful to note that Griege has given us notice of his waiver of a request for relief, and not a waiver of the cause of action that might support such relief. We expressly reserve ruling today on whether a party can waive, for the first time on appeal, an underlying cause of action without taking further action, such as a nonsuit, in the trial court, in order to establish a judgment's finality.

[**5]

Each court of appeals may, on affidavit or otherwise, as the court may determine, ascertain the matters of fact that are necessary to the proper exercise of its jurisdiction. TEX. GOV'T. CODE ANN. *§ 22.220(c)* (Vernon 1988). Appellate courts may receive affidavits to determine questions of jurisdiction if the facts are not otherwise apparent in the record. *Stewart v. Texco Newspapers, Inc., 734 S.W.2d 175, 177* (Tex. App.--Houston [1st Dist.] 1987, no writ). This Court has held that the inquiry into appellate jurisdiction is not in all cases limited to the record on appeal. *Smith v. Basham, 227 S.W.2d 853, 855* (Tex. Civ. App.--Dallas), *aff'd, 149 Tex. 279, 233 S.W.2d 297 (Tex. 1950)*. A court of appeals may make inquiry into jurisdiction and hear extrinsic evidence to show that a record does not speak the truth, where it shows jurisdictional facts. *Loper v. Hosier, 148 S.W.2d 889, 894* (Tex. Civ. App.--Dallas 1941, writ dism'd, judgment cor.) (per curiam) (on mot. for reh'g).

Usually, an appellate court receives extrinsic evidence to show why an appeal should be dismissed. One example occurs when an appellant has enjoyed the benefits of a judgment. *See Roach* [**6] *v. Roach, 672 S.W.2d 524, 532-33* (Tex. App.--Amarillo 1984, no writ) (on mot. for reh'g). Another example occurs when events subsequent to the judgment render the subject matter of the appeal moot. *See Roadrunner Investments, Inc. v. Texas Utilities Fuel Co., 526 S.W.2d 615, 616* (Tex. Civ. App.--Fort Worth 1975, no writ). Yet there is no sound reason why an appellate court should be able to receive extrinsic evidence to decline jurisdiction and not be able to receive extrinsic evidence to assert jurisdiction. An instructive case is *Texas & Pacific Railway Co. v. Beckham Brothers & Co., 202 S.W. 991, 992* (Tex. Civ. App.--El Paso 1918, writ ref'd). In that case, the names of two plaintiffs were at variance from the names of two prevailing parties in the judgment. The judgment therefore did not show that all parties had been disposed of. *Compare Shivers Well Service, Inc., v. Houston, 736 S.W.2d 251, 252-53* (Tex. App.--Fort Worth 1987, orig. proceeding) (an asserted misnomer in two judgments resulted in the judgments being interlocutory). The *Beckham Brothers* Court, however, allowed the identity of the parties to be established by uncontroverted affidavit, so that [**7] the parties [*489] could show that the judgment was in fact final. *202 S.W. at 992*. Thus, it follows that, if this Court questions its jurisdiction because the trial court has not expressly granted or denied a request for relief, the party who made that request can establish the finality of the trial court's judgment simply by notifying this Court that he has waived the request.

We conclude that Griege's notice, to this Court, of his decision to waive his request for punitive damages suffices to establish that the trial court's judgment is now final. Accordingly, we have jurisdiction over this appeal.

**ⓘ** Cited

As of: April 7, 2015 5:50 PM EDT

# Jones v. Rabson & Broocks, L.L.C.

Court of Appeals of Texas, First District, Houston

February 13, 2003, Filed

NO. 01-01-01210-CV

**Reporter**

2003 Tex. App. LEXIS 1443; 2003 WL 302439

TERRY JONES, Appellant v. RABSON & BROOCKS, L.L.C.; PELICAN CONNECTION MANAGEMENT, L.L.C.; AND BROOCKS, BAKER & LANGE, L.L.P., Appellees

**Prior History:** [*1] On Appeal from the 129th District Court. Harris County, Texas. Trial Court Cause No. 00-28899.

**Disposition:** Affirmed.

## Core Terms

deed, trial court, summary judgment, damages, theft, cause of action, amended petition, constable's, amendment to pleading, civil conspiracy, attorney's fees, records, no evidence, counterclaim, sanctions, Street, summary judgment hearing, slander of title, pleadings, contends, overrule, cloud

## Case Summary

### Procedural Posture

Plaintiff landowner sued defendants, law firm, company, and partnership (law firm), for quiet title, conversion, theft, civil conspiracy, tortious interference with contract, wrongful execution, and slander of title. The law firm filed a no-evidence motion for summary judgment. The 129th District Court for Harris County (Texas) rendered summary judgment for the law firm. The landowner appealed.

### Overview

The law firm executed a judgment against a previous owner of the land and obtained several parcels of the previous owner's land at a constable's sale. The landowner was negotiating a sale to a third party, which fell thru because of the cloud on his title caused by the constable's sale. As soon and the landowner submitted his deed to the law firm, the law firm issued him a deed without warranty. The appellate court found that: (1) the summary judgment was a final appealable judgment, (2) the trial court did not abuse its discretion in not allowing the landowner to file his third and fourth amended petitions because the landowner did not seek the trial court's permission to file the amended pleadings, (3) the landowner failed to state a cause of action for theft or civil conspiracy because there was no evidence of theft or any other unlawful act, and (4) the landowner failed to state a cause of action for slander of title because there was no evidence of legal malice or special damages.

### Outcome

The district court's judgment was affirmed.

## LexisNexis® Headnotes

Civil Procedure > ... > Pleadings > Amendment of Pleadings > General Overview

Civil Procedure > Judgments > Summary Judgment > General Overview

Civil Procedure > ... > Summary Judgment > Hearings > General Overview

Civil Procedure > ... > Summary Judgment > Motions for Summary Judgment > Timing of Motions & Responses

**HN1** *Tex. R. Civ. P. 63* provides that amended pleadings shall not be filed within seven days of trial without obtaining leave of court. A summary judgment hearing is a trial governed by *Tex. R. Civ. P. 63*. It is well-settled summary judgment law that if a nonmovant for summary judgment (1) files an amended pleading after the summary judgment hearing and (2) the amended pleading raises an additional claim not mentioned in the summary judgment motion, then the trial court does not err in granting the summary judgment motion because

the trial court may consider only the pleadings on file at the time of the hearing, or filed after the hearing, but before judgment with permission of the court.

> Civil Procedure > Appeals > Summary Judgment Review > General Overview
>
> Civil Procedure > ... > Summary Judgment > Motions for Summary Judgment > General Overview
>
> Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > General Overview
>
> Torts > ... > Concerted Action > Civil Conspiracy > General Overview

**HN2** The appellate court reviews a "no-evidence" summary judgment motion in the light most favorable to the nonmovant; it assumes the nonmovant's evidence to be true and resolves any doubts in the nonmovant's favor, while disregarding all evidence and inferences to the contrary.

> Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > General Overview
>
> Criminal Law & Procedure > Criminal Offenses > Acts & Mental States > General Overview

**HN3** To defeat a no-evidence motion under *Tex. R. Civ. P. 166a(i)*, the nonmovant has to raise a fact issue showing that the defendants (1) unlawfully (2) appropriate his property (3) with the intent to deprive him of it. *Tex. Penal Code Ann. § 31.03* (Vernon 2000). Intent to deprive is the accused's intent at the time of the taking. Intent may be inferred from a failure to return the property.

> Real Property Law > Title Quality > Adverse Claim Actions > Quiet Title Actions
>
> Torts > ... > Concerted Action > Civil Conspiracy > General Overview

**HN4** A civil conspiracy claim is not actionable unless there is an overt, unlawful act.

> Real Property Law > Title Quality > Adverse Claim Actions > General Overview
>
> Real Property Law > Title Quality > Adverse Claim Actions > Quiet Title Actions
>
> Torts > Business Torts > Slander of Title > General Overview
>
> Torts > Business Torts > Slander of Title > Elements
>
> Torts > Business Torts > Trade Libel > General Overview

> Torts > ... > Concerted Action > Civil Conspiracy > General Overview
>
> Torts > ... > Concerted Action > Civil Conspiracy > Elements

**HN5** To recover in an action for slander of title, a party must plead and prove: (1) the uttering and publishing of disparaging words; (2) falsity; (3) malice; (4) special damages; (5) possession of an estate or interest in the property disparaged; and (6) the loss of a specific sale.

> Civil Procedure > Judgments > Enforcement & Execution > Writs of Execution
>
> Torts > Intentional Torts > Prima Facie Tort > General Overview

**HN6** Legal malice is defined as wrongful conduct that is intentional and without just cause or excuse.

> Civil Procedure > ... > Summary Judgment > Hearings > General Overview
>
> Real Property Law > Title Quality > Adverse Claim Actions > General Overview
>
> Real Property Law > Title Quality > Adverse Claim Actions > Quiet Title Actions
>
> Torts > Business Torts > Slander of Title > General Overview
>
> Torts > Remedies > Damages > General Overview

**HN7** A plaintiff claiming slander of title may recover the amount he would have realized from the lost sale minus the amount for which he can sell the land at the time of trial with the cloud removed.

**Judges:** Panel consists of Justices Taft, Keyes, and Higley.

**Opinion by:** Evelyn V. Keyes

# Opinion

**MEMORANDUM OPINION**

This is an appeal of summary judgment rendered for appellees/defendants Rabson & Broocks, L.L.C.; Pelican Connection Management, L.L.C.; and Broocks, Baker & Lange, L.L.P (the Rabson defendants) against appellant, Terry Jones. In eight issues presented for review, Jones challenges the rendition of summary judgment, contending that (1) the Rabson defendants were not entitled to summary judgment on his causes of

action for theft, civil conspiracy, slander of title, and tortious interference with contract; (2) he suffered recoverable damages; (3) he has a viable claim for attorney's fees; (4) the trial court abused its discretion by not granting him leave to file his third and fourth amended petitions; and (5) summary judgment was improperly rendered because there was an unresolved counterclaim. We affirm.

**Factual & Procedural Background**

The parties [*2] do not dispute the essential facts of the underlying dispute; however, the parties' interpretation of those facts is greatly disparate. The events leading to this lawsuit unfolded in the following sequence. The Rabson defendants obtained a $ 360,000 judgment against Gladys Goffney in an unrelated lawsuit. In the spring of 1999, as part of their efforts to collect the judgment, the Rabson defendants searched the Harris County real property records and identified roughly 17 pieces of property that Goffney owned, including an unimproved lot at 5206 Wayne Street in Houston. After a writ of execution was issued on the judgment in May 1999, the Rabson defendants requested a constable's sale of the properties. On July 6, 1999, the constable's sale was completed. The Rabson defendants received the deeds from the sale on August 11, 1999 and recorded them in October 1999. The Wayne Street property, however, had been sold six years earlier to Noah Murchison. It is not clear from the record whether the deed records were incomplete or the person who searched the records overlooked the deed conveying the property from Goffney to Murchison.

After the writ of execution was issued in the unrelated [*3] lawsuit against Goffney, but before the constable's sale took place, Murchison sold the property to Jones for $ 12,500. Jones recorded his deed on July 27, 1999. Only after Jones began negotiating with the Fifth Ward Community Redevelopment Corporation to sell it the property for $ 25,000 did he learn there was a cloud on his title; he was unable to complete the sale of the property in November 1999 as planned. Just after the first of the year 2000, Jones contacted the Rabson defendants to attempt to resolve the question of ownership. He originally sent an unsigned, unrecorded deed to the Rabson defendants' counsel that was not accepted as proof of ownership; on March 30, 2000, Jones supplied a signed, recorded deed conveying the property from Goffney to Murchison.

Upon receiving this deed, the Rabson defendants conceded that Jones was the rightful owner of the property. Jones asked the Rabson defendants to supply him with a general warranty deed but, because their title was void from inception, the Rabson defendants refused to execute such a deed. Instead, they provided Jones with a deed without warranty.

The Rabson defendants characterize their inclusion of the Wayne Street [*4] property in the constable's sale as an innocent mistake--one they rectified as soon as they obtained legal proof that Jones owned the property. Jones, in contrast, characterizes the entire series of transactions as a malicious, fraudulent scheme to deprive him of his property. When he did not obtain the general warranty deed he asked for, Jones filed suit to quiet title. He sought to recover compensatory damages, exemplary damages, and attorney's fees. The Rabson defendants answered with a general denial.

On October 13, 2000, despite Jones's earlier refusal to accept an identical deed, the Rabson defendants delivered to Jones an executed deed without warranty in which it conveyed any and all of their interests in the Wayne street property to Jones. Evidently, Jones has never recorded this deed. In November 2000, the Fifth Ward Community Redevelopment Corporation renewed its offer to purchase the property for $ 25,000. Jones refused the sale, in part because he believed that the cloud on the property was not removed, in part because of the pending litigation, and in part because he was no longer interested in selling for that price.

Jones filed a second amended petition in [*5] December 2000, setting out causes of action for conversion, theft, civil conspiracy to commit theft, and slander of title. [1] Broocks, Baker & Lange filed a second, separate answer to this amended petition, repeating the general denials and pleading the affirmative defenses of failure to mitigate damages and tender of performance. The firm also added a counterclaim for Rule 13 violations, seeking attorney's fees. In January, the Rabson defendants filed a no-evidence motion for summary judgment in which they identified elements of each cause of action for which there was no evidence and challenged all causes of action based on an absence of proof of damages. In his response to the motion, Jones filed an affidavit setting out the facts in detail. The motion was heard on March 26, 2001. Before the trial

---

[1]   Although the second amended petition is not included in the clerk's record, the parties both refer to these causes of action in their pleadings and motions; accordingly, we accept these as having been pleaded.

court ruled on the motion, Jones filed a third amended petition, three days after the summary judgment hearing, adding a cause of action for tortious interference with contract and seeking additional damages for mental anguish. The Rabson defendants supplemented their motion for summary judgment to raise a no-evidence challenge to this additional cause of action. Jones filed a fourth amended [*6] petition on August 14, 2001 adding a cause of action for wrongful execution.

The trial court rendered summary judgment on September 10, 2001, basing it on the March hearing. The judgment did not address the counterclaim for sanctions but included a "Mother Hubbard" clause. Jones's motion for new trial was overruled by operation of law and this appeal ensued. On appeal, Jones does not address the cause of action for conversion; thus he has waived any complaint regarding this issue.

## Finality of Judgment

As a threshold matter, we address Jones's eighth issue on review to determine whether this appeal is, as he claims, interlocutory because there is an outstanding counterclaim for sanctions. The Rabson defendants argue that a counterclaim for sanctions is not a cause of action that the trial [*7] court was obligated to address in its judgment. They also contend that the trial court orally denied the motion for sanctions, but that the order was apparently not reduced to writing. Jones does not address whether the trial court ruled on the motion for sanctions and speaks only to the language of the judgment itself.

Jones argues that the judgment was interlocutory because there is no language in the trial court's judgment that "with unmistakable clarity informs that it was a final judgment." We disagree. The order is entitled "FINAL SUMMARY JUDGMENT" and the last sentence of the judgment states, "All relief requested and not expressly granted is denied." The Rabson defendants have not contested the finality of the appeal, nor appealed the trial court's denial of their claim for sanctions. Jones treated the judgment as final by filing a motion for new trial, in which he does not mention the counterclaim, and by filing a notice of appeal. Based on the record and the language of the judgment, we conclude that the judgment was final for purposes of appeal. See *Lehman v. Har-Con Corp., 39 S.W.3d 191, 205, 44 Tex. Sup. Ct. J. 364 (Tex. 2001)*. Accordingly, we overrule issue eight and [*8] address the merits of the appeal.

## Amended Pleadings

In issue seven, Jones contends the trial court abused its discretion by not granting him leave to file his third and fourth amended petitions. He argues that because the Rabson defendants did not move to strike the pleadings or show they were prejudiced by the untimely amended petitions, the trial court abused its discretion by not considering these later petitions. It is evident from the judgment that the trial court did not consider the third or fourth petitions because the judgment was based on the motions and the summary judgment hearing held on March 26, 2001, before either amended petition was filed. The record does not contain a motion for leave to late-file either petition, a motion to strike the amended pleadings, or an order striking them.

*Rule 63 of the Texas Rules of Civil Procedure* **HN1** provides that amended pleadings shall not be filed within seven days of trial without obtaining leave of court. *TEX. R. CIV. P. 63*. A summary judgment hearing is a "trial" governed by *Rule 63*. See *Goswami v. Metropolitan Sav. & Loan Ass'n, 751 S.W.2d 487, 490, 31 Tex. Sup. Ct. J. 399 (Tex. 1988)*. It is well-settled summary judgment [*9] law that if a nonmovant for summary judgment (1) files an amended pleading after the summary judgment hearing and (2) the amended pleading raises an additional claim not mentioned in the summary judgment motion, then the trial court does not err in granting the summary judgment motion because the trial court may consider only the pleadings on file at the time of the hearing, or filed after the hearing (but before judgment) with permission of the court. *Automaker, Inc. v. C.C.R.T. Co., Ltd., 976 S.W.2d 744, 746* (Tex. App.--Houston [1st Dist.] 1998, no pet.). Jones did not seek the trial court's permission to file his amended pleadings. Although the Rabson defendants did not file a motion to strike the amended pleadings, they filed a letter with the trial court objecting to the amendments. The trial court did not err in refusing to consider these late-filed pleadings.

We overrule issue seven. Therefore, we will not address Jones's causes of action for tortious interference with contract or wrongful execution, nor his claim for damages based on mental anguish. We also overrule issue five, in which Jones contends that summary judgment on the tortious interference [*10] with contract claim was improper.

## Theft, Civil Conspiracy, and Slander of Title

In issues one, two, and three, Jones contends the trial court erred in rendering summary judgment for the

Rabson defendants on Jones's claims for theft, civil conspiracy, and slander of title. **HN2** We review a "no-evidence" summary judgment motion in the light most favorable to the nonmovant; here, we assume Jones's evidence to be true and resolve any doubts in his favor, while disregarding all evidence and inferences to the contrary. *Jones v. Bank United of Texas, FSB, 51 S.W.3d 341, 343* (Tex. App.--Houston [1st Dist.] 2001, pet. denied).

### Theft & Civil Conspiracy

**HN3** To defeat the no-evidence motion under 166a(i), Jones had to raise a fact issue showing that the Rabson defendants (1) unlawfully (2) appropriated his property (3) with the intent to deprive him of it. *TEX. PEN. CODE ANN. § 31.03* (Vernon 2000). Intent to deprive is the accused's intent at the time of the taking. *Thomas v. State, 753 S.W.2d 688, 694 (Tex. Crim. App. 1988)*. Intent may be inferred from a failure to return the property. *Rowland v. State, 744 S.W.2d 610, 613 (Tex. Crim. App. 1988)*. **[*11]**

Although Jones argues that his affidavit provides ample evidence of theft, we cannot agree. He has globally stated facts to support his conclusions as he sees them, but has not connected any of these facts to each challenged element of his claims, such as whether the Rabson defendants committed an *unlawful* act. The constable's sale was held pursuant to a lawful writ of execution. Nor does Jones provide evidence of intent. The Rabson defendants argue there is no evidence of intent to deprive Jones of the property because the constable's deed transferred only Gladys Goffney's interest in the property, not Jones's. The Rabson defendants provided Jones with a deed disclaiming any interest in the property, albeit a deed Jones apparently believes does not remove the cloud on the title, thus refuting any inference of theft. While the inclusion of the Wayne Street property in the constable's sale was unfortunate, we hold Jones provided no evidence to show that it was tantamount to theft.

**HN4** A civil conspiracy claim is not actionable unless there is an overt, unlawful act. *American Tobacco Co., Inc. v. Grinnell, 951 S.W.2d 420, 438, 40 Tex. Sup. Ct. J. 658 (Tex. 1997)*. Because we have held **[*12]** there was no theft, and Jones has not alleged any other unlawful act, we further hold that there was no overt, unlawful act upon which a conspiracy could have rested. The trial court did not err in rendering summary judgment on Jones's claims for theft and civil conspiracy.

We overrule issues one and two.

### Slander of Title

**HN5** To recover in an action for slander of title, a party must plead and prove: (1) the uttering and publishing of disparaging words; (2) falsity; (3) malice; (4) special damages; (5) possession of an estate or interest in the property disparaged; and (6) the loss of a specific sale. *See Williams v. Jennings, 755 S.W.2d 874, 879* (Tex. App.--Houston [14th Dist.] 1988, writ denied). Jones cannot prevail because he has provided no evidence of legal malice or of special damages.

**HN6** Legal malice is defined as wrongful conduct that is intentional and without just cause or excuse. *Continental Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 452, 40 Tex. Sup. Ct. J. 172 (Tex. 1996)*. Because the Rabson defendants had a lawful writ of execution and the property records contained Gladys Goffney's deed to the Wayne Street property, the inclusion **[*13]** of the property in the constable's sale, although incorrect, was based on reasonable cause. Thus, there is no evidence of legal malice. Moreover, although Jones proved the loss of a specific sale, he did not offer any evidence of special damages. **HN7** A plaintiff may recover the amount he would have realized from the lost sale minus the amount for which he could have sold the land at the time of trial with the cloud removed. *A.H. Belo Corp. v. Sanders, 632 S.W.2d 145, 146, 25 Tex. Sup. Ct. J. 257 (Tex. 1982)*. The time of trial here was March 26, 2001--the date of the summary judgment hearing. *See Goswami, 751 S.W.2d at 490*. Although Jones provided evidence that he was unable to complete the sale for $ 25,000, he provided no evidence of the market value of the property at the time of trial. Without such evidence, the trial court could not calculate special damages, even if it determined the Rabson defendants had slandered Jones's title. Accordingly, we hold the trial court did not err in rendering summary judgment on this claim.

We overrule issue three.

### Attorney's Fees

In issue six, Jones contends that he is entitled to attorney's fees because his suit is one for **[*14]** declaratory judgment. The Rabson defendants argue that the true nature of the suit is to remove a cloud on Jones's title, thus attorney's fees are not recoverable. Because we have overruled all of appellant's other

issues on appeal, the issue of attorney's fees is moot.

We affirm the trial court's judgment.

Evelyn V. Keyes, Justice

# *Lefton v. Griffith*

Court of Appeals of Texas, Fourth District, San Antonio

March 31, 2004, Delivered ; March 31, 2004, Filed

No. 04-03-00402-CV

**Reporter**

136 S.W.3d 271; 2004 Tex. App. LEXIS 2812

David LEFTON and Arthur Lefton, Appellants v. Dixie GRIFFITH d/b/a Discount Furniture Warehouse, Appellee

**Subsequent History:** Released for Publication July 2, 2004.

**Prior History:** [**1] From the 225th Judicial District Court, Bexar County, Texas. Trial Court No. 2002-CI-15103. Honorable Pat Boone, Judge Presiding.

**Disposition:** Affirmed in part, reversed and remanded in part.

## Core Terms

damages, mental anguish, trial court, lost profits, inventory, default judgment, economic damages, attorney's fees, award of damages, reputation, market value, provides, allegations, distress, notice, legal insufficiency, notice of appeal, furniture, issues, fails, days

## Case Summary

### Procedural Posture

Appellant lessors challenged a decision from the 225th Judicial District Court in Bexar County (Texas), which entered a default judgment in favor of appellee lessee in an action alleging breach of contract, tortious interference, fraud, intentional infliction of emotional distress, and a violation of the Texas Deceptive Trade Practices Act.

### Overview

The lessee was unable to pay rent. The lessors agreed to give her until a certain date to vacate the premises. However, they later refused to grant access to the rented property. She filed an action against the lessors, who failed to answer the complaint. After a default judgment was entered in the case, the lessors sought review. On appeal, the court determined that there was insufficient evidence to support the award of economic damages. The lessee, as the owner of the property, was permitted to testify as to its market value. However, the evidence was conclusory as to the value of the inventory and the home. The lessee did not show how she came to a conclusion regarding loss. Further, she failed to show that she had been denied a loan or that a higher interest rate was charged. She failed to show lost profits with reasonable certainty. Her allegations did not rise to the level of compensable mental anguish. However, the award of attorney fees was upheld because it was presumed that the trial court took judicial notice of the usual and customary attorney fees. Finally, the court overruled the lessors' argument that the return of service was invalid.

### Outcome

The court reversed the trial court's award of economic damages and mental anguish. The case was remanded for a new trial on those issues. The court affirmed the award of attorney fees.

## LexisNexis® Headnotes

Civil Procedure > Appeals > Notice of Appeal

***HN1*** See *Tex. R. App. P. 30*.

Civil Procedure > Appeals > Reviewability of Lower Court Decisions > General Overview

Civil Procedure > Appeals > Notice of Appeal

Civil Procedure > Appeals > Reviewability of Lower Court Decisions > Timing of Appeals

***HN3*** *Tex. R. App. P. 25.1(d)(7)(A)* requires that a notice of restricted appeal must state that the appellant is a

party affected by the trial court's judgment but did not participate--either in person or through counsel--in the hearing that resulted in the judgment complained of. *Tex. R. App. P. 25.1(d)(7)(A)*. *Rule 25.1(d)(7)(B)* further requires that a notice of restricted appeal must state that the appellant did not timely file either a postjudgment motion, request for findings of fact and conclusions of law, or notice of appeal. *Tex. R. App. P. 25.1(d)(7)(B)*.

> Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Default Judgments

> Civil Procedure > Appeals > Reviewability of Lower Court Decisions > Timing of Appeals

*HN2* Where a party fails to timely file an answer, the facts alleged in a complaint are deemed admitted, except the amount of damages.

> Civil Procedure > Appeals > Appellate Briefs

*HN4* A reply brief is limited in scope to responding to matters in an appellee's brief. *Tex. R. App. P. 38.3*.

> Civil Procedure > ... > Standards of Review > Substantial Evidence > General Overview

> Evidence > Burdens of Proof > General Overview

*HN5* An appellant attacking the legal sufficiency of an adverse finding on which he did not have the burden of proof must demonstrate that there is no evidence to support the adverse finding. The reviewing court must consider all evidence in a light most favorable to the party in whose favor the verdict has been rendered and indulge every reasonable inference from the evidence in such party's favor. If more than a scintilla of evidence exists to support the finding, the no-evidence challenge fails.

> Civil Procedure > ... > Standards of Review > Substantial Evidence > General Overview

> Evidence > Burdens of Proof > General Overview

*HN6* A party attacking the factual sufficiency of an adverse finding on an issue on which the other party had the burden of proof must demonstrate that there is insufficient evidence to support the adverse finding. In reviewing an insufficiency of the evidence challenge, the court must first consider, weigh, and examine all of the evidence which supports and which is contrary to the jury's determination. Having done so, the court should set aside the verdict only if the evidence that supports the jury finding is so weak as to be clearly wrong and manifestly unjust.

> Evidence > ... > Testimony > Lay Witnesses > General Overview

> Real Property Law > Property Valuations

*HN7* An owner is qualified to testify about the market value of his property.

> Civil Procedure > Remedies > Damages > General Overview

*HN8* Documents that represent merely conclusory allegations will not support an amount awarded for unliquidated damages.

> Civil Procedure > Judgments > Pretrial Judgments > General Overview

> Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > General Overview

> Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Default Judgments

> Civil Procedure > Remedies > Damages > General Overview

*HN9* There can be no recovery for damages which are speculative or conjectural.

> Civil Procedure > Remedies > Damages > General Overview

*HN10* Texas law provides that in order to recover actual damages for loss of credit reputation, a plaintiff must first show that a loan was actually denied or a higher interest rate charged.

> Contracts Law > ... > Measurement of Damages > Foreseeable Damages > General Overview

*HN11* Recovery for lost profits does not require that the loss be susceptible to exact calculation. However, the injured party must do more than show that it suffered some lost profits. The loss amount must be shown by competent evidence with reasonable certainty. This is a fact-intensive determination. At a minimum, opinions of lost-profit estimates must be based on objective facts, figures, or data from which the lost-profits amount may be ascertained. Although supporting documentation may affect the weight of the evidence, it is not necessary to produce in court the documents supporting the opinions or estimates.

Contracts Law > ... > Measurement of Damages > Foreseeable Damages > General Overview

**HN12** The bare assertion that contracts were lost does not demonstrate a reasonably certain objective determination of lost profits.

Torts > ... > Types of Losses > Pain & Suffering > General Overview

Torts > ... > Pain & Suffering > Emotional Distress > General Overview

Torts > ... > Pain & Suffering > Emotional Distress > Evidence

**HN13** Mental anguish damages are appropriate when there is either direct evidence of the nature, duration, and severity of plaintiffs' mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine, or other evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, or anger. The absence of evidence of the nature, duration, and severity of mental anguish, particularly when it can be readily supplied or procured by the plaintiff, justifies close judicial scrutiny of other evidence offered on this element of damages.

Civil Procedure > ... > Jury Trials > Jury Instructions > General Overview

Torts > ... > Types of Losses > Pain & Suffering > General Overview

Torts > ... > Pain & Suffering > Emotional Distress > General Overview

**HN14** Texas law provides that not only must there be evidence of the existence of compensable mental anguish, there must also be some evidence to justify the amount awarded. While the impossibility of any exact evaluation of mental anguish requires that juries be given a measure of discretion in finding damages, that discretion is limited. Juries cannot simply pick a number and put it in the blank. They must find an amount that, in the standard language of the jury charge, would fairly and reasonably compensate for the loss. Reasonable compensation is no easier to determine than reasonable behavior--often it may be harder--but the law requires factfinders to determine both.

Civil Procedure > Remedies > Costs & Attorney Fees > General Overview

Evidence > Judicial Notice > General Overview

**HN15** See *Tex. Civ. Prac. & Rem. Code Ann. § 38.004(1)* (1997).

Civil Procedure > Remedies > Costs & Attorney Fees > General Overview

Evidence > Inferences & Presumptions > General Overview

Evidence > Judicial Notice > General Overview

**HN16** Even if a trial court did not state that it was taking judicial notice of attorney fees, an appellate court may presume that the trial court did so.

Civil Procedure > ... > Service of Process > Proof of Service > General Overview

Civil Procedure > Judgments > Pretrial Judgments > General Overview

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > General Overview

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Default Judgments

Governments > Courts > Clerks of Court

**HN17** See *Tex. R. Civ. P. 107*.

Civil Procedure > Judgments > Pretrial Judgments > General Overview

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > General Overview

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Default Judgments

Civil Procedure > Remedies > Damages > General Overview

Civil Procedure > Appeals > Remands

Real Property Law > ... > Remedies > Damages > General Overview

Torts > ... > Pain & Suffering > Emotional Distress > General Overview

**HN18** When damages awarded in a default judgment after an uncontested hearing are supported by either legally or factually insufficient evidence, an appellate court must remand the case for a new trial on those damage issues.

**Counsel:** For Appellant: Ryan G. Anderson, David L. Hanna, Kathy H. Kang, William H. Ford, Ball & Weed, P.C., San Antonio, TX.

For Appellee: N. Mark Ralls, Robert A. Ewert, Gonzales Hoblit Ferguson L.L.P., San Antonio, TX.

**Judges:** Opinion by: Karen Angelini, Justice. Sitting: Alma L. Lopez, Chief Justice, Karen Angelini, Justice, Sandee Byran Marion, Justice.

**Opinion by:** Karen Angelini

# Opinion

[*273] David and Arthur Lefton appeal a default judgment granted in favor of Dixie Griffith. We affirm the judgment of the trial court in part and reverse and remand the judgment of the trial court in part.

## BACKGROUND

Dixie Griffith leased a property owned by David and Arthur Lefton for use as a furniture store. According to Griffith, she was unable to pay her rent. The Leftons agreed to give her until November 1, 2000, to vacate. Instead of keeping their promise, [*274] however, they changed the locks on October 20, 2000. For eight days, they refused to give her access to the property. She was allowed access to the property on October 28, 2000, for two weekend days. Because of the Leftons' actions, Griffith alleges, she was forced her to sell the inventory of her furniture business at an extreme loss. Additionally, she was forced to sell her home to pay [**2] her creditors. She also suffered damage to credit reputation, lost profits, and mental anguish.

Griffith sued the Leftons for breach of contract, tortious interference, fraud, intentional infliction of emotional distress, and violation of the _Deceptive Trade Practices Act_. When the Leftons failed to answer the suit, Griffith moved for default judgment. The trial court granted default judgment in favor of Griffith on her DTPA claim, awarding her $ 350,000 in economic damages, $ 700,000 in trebled economic damages, $ 290,000 in mental anguish damages, $ 580,000 in trebled mental anguish damages, and $ 2,000 in attorney fees.

The Leftons filed a restricted appeal under _Texas Rule of Appellate Procedure 30_. See _TEX. R. APP. P. 30_ **HN1** ("A party who did not participate--either in person or through counsel--in the hearing that resulted in the judgment complained of and who did not timely file a postjudgment motion or request for findings of fact and conclusions of law, or a notice of appeal within the time permitted by _Rule 26.1(a)_, may file a notice of appeal within the time permitted by _Rule 26.1(c)_."). [1] **HN2** Because the Leftons failed to timely file an answer, the facts alleged in Griffith's [**3] petition are deemed admitted, except the amount of damages. _Tex. Commerce Bank, N. A. v. New, 3 S.W.3d 515, 516, 42 Tex. Sup. Ct. J. 1175 (Tex. 1999)_. The Leftons present the following issues for review:

(1) Did Griffith present legally and factually sufficient evidence to support the award of damages?

(2) Did Griffith show proof of service?

[**4] In their reply brief, the Leftons bring up two additional issues: first, they allege that Griffith cannot recover because she fails to establish that the Leftons _caused_ the damages awarded; second, they allege that Griffith cannot recover because her alleged facts do not constitute a cause of action under the DTPA. **HN4** A reply brief is limited in scope to responding to matters in an appellee's brief. _TEX. R. APP. P. 38.3_. Therefore, because the Leftons failed to bring up these issues in their original brief, they are not properly before this court. _Sunbeam Envtl. Servs., Inc. v. Tex. Workers' Comp. Ins. Facility, 71 S.W.3d 846, 851 (Tex. App.--Austin 2002, no pet.)_.

Even if these issues were properly before the court, however, because the Leftons failed to timely file an answer, the facts alleged in Griffith's petition are deemed admitted, except the amount of damages. _New, 3 S.W.3d at 516_. In her petition, [*275] Griffith alleges that the Leftons' actions "were a producing cause of damages to Plaintiff." She further alleges a DTPA cause of action by stating that "Defendants engaged in

---

[1] _Texas Rule of Appellate Procedure 25.1(d)(7)(A)_ **HN3** requires that a notice of restricted appeal must "state that the appellant is a party affected by the trial court's judgment but did not participate--either in person or through counsel--in the hearing that resulted in the judgment complained of." _TEX. R. APP. P. 25.1(d)(7)(A)_. _Texas Rule of Appellate Procedure 25.1(d)(7)(B)_ further requires that a notice of restricted appeal must "state that the appellant did not timely file either a postjudgment motion, request for findings of fact and conclusions of law, or notice of appeal." _TEX. R. APP. P. 25.1(d)(7)(B)_. Griffith argues that the Leftons failed to properly perfect their appeal because their notice of appeal fails to contain these statements. We have since granted leave, however, for the Leftons to so amend their notice of appeal, and they have done so. See _TEX. R. APP. P. 25.1(f)_ (allowing notice to be amended "on leave of the appellate court"). Accordingly, we overrule this issue on appeal.

unconscionable conduct as defined in *§ 17.50 of the Texas Business & Commerce Code*. [**5] " Thus, because the Leftons alleged causation and a DTPA claim, and because these allegations are admitted, the Leftons' argument is without merit.

## DISCUSSION

*I. Legal and Factual Sufficiency*

The Leftons contend that Griffith failed to present legally and factually sufficient evidence of damages.

**HN5** An appellant attacking the legal sufficiency of an adverse finding on which he did not have the burden of proof must demonstrate that there is no evidence to support the adverse finding. *Croucher v. Croucher, 660 S.W.2d 55, 58, 27 Tex. Sup. Ct. J. 59 (Tex. 1983)*. The reviewing court must consider all evidence in a light most favorable to the party in whose favor the verdict has been rendered and indulge every reasonable inference from the evidence in such party's favor. *Harbin v. Seale, 461 S.W.2d 591, 592, 14 Tex. Sup. Ct. J. 128 (Tex. 1970)*. If more than a scintilla of evidence exists to support the finding, the no-evidence challenge fails. *Formosa Plastics Corp. USA v. Presidio Eng'rs, 960 S.W.2d 41, 48, 41 Tex. Sup. Ct. J. 289 (Tex. 1998)*.

**HN6** A party attacking the factual sufficiency of an adverse finding on an issue on which the other party had the burden of proof must demonstrate that there [**6] is insufficient evidence to support the adverse finding. *Hickey v. Couchman, 797 S.W.2d 103, 109 (Tex. App.--Corpus Christi 1990, writ denied)*. In reviewing an insufficiency of the evidence challenge, the court must first consider, weigh, and examine all of the evidence which supports and which is contrary to the jury's determination. *Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445, 32 Tex. Sup. Ct. J. 329 (Tex. 1989)* (per curiam). Having done so, the court should set aside the verdict only if the evidence that supports the jury finding is so weak as to be clearly wrong and manifestly unjust. *Cain v. Bain, 709 S.W.2d 175, 176, 29 Tex. Sup. Ct. J. 214 (Tex. 1986)* (per curiam).

*A. Was Affidavit in Evidence?*

The record contains an affidavit by Griffith describing her damages. This affidavit is on file in the clerk's record and appears to have been filed *after* the entry of default judgment. The Leftons argue that because the affidavit was (a) not filed with the court at the time of the hearing, and (b) not admitted into evidence, we cannot know that the trial court ever considered it.

Griffith responds by pointing out that the trial court clearly references an affidavit [**7] during the hearing. The Leftons counter, however, that while the record reflects that the trial court referred to *an* affidavit at the default judgment hearing, there is no evidence that the trial court was referring to *Griffith's* affidavit.

It is clear that the trial court had Griffith's affidavit before it. At the hearing, Griffith's lawyer refers to the affidavit several times. Additionally, the trial court itself indicates that it had Griffith's affidavit before it:

THE COURT: Where is [the plaintiff]?

COUNSEL: Between Florida and Dallas.

THE COURT: Florida and--when did she leave?

COUNSEL: I am unaware of that answer.

THE COURT: Did she leave last week, or when did she leave?

[*276] COUNSEL: Honestly, Your Honor, I don't know.

THE COURT: What's your client's name?

COUNSEL: Dixie Griffith.

THE COURT: And you don't know--she's between Florida and where?

COUNSEL: Dallas.

THE COURT: And you don't know when she left.

COUNSEL: No, I'm not sure of that.

THE COURT: Huh?

COUNSEL: I am not sure of that, no.

THE COURT: You know why this puzzles me? Because this was--your client's affidavit was notarized today.

COUNSEL: That's correct. I have been in touch with her over [**8] the phone, and she faxed me her signature on that affidavit after we [had] discussed it, and I had a faxed copy to her.

The trial court's statement, "This was--your client's affidavit was notarized today," indicates that the trial judge had an affidavit of Griffith's before him and was looking at it as he made this statement. Furthermore, because Griffith's affidavit was notarized the same day as the hearing took place, this statement confirms that it was *Griffith's* affidavit that was before the trial court. Because it is clear the trial court considered Griffith's affidavit, we overrule this issue on appeal. *See New, 3 S.W.3d at 517* ("The trial court did not err when it considered the affidavits in rendering its default judgment.").

*B. Affidavit Testimony*

The Leftons next argue that Griffith's affidavit does not provide legally or factually sufficient evidence of economic damages, mental anguish damages, or attorney fees.

*1. Economic Damages*

The trial court awarded Griffith $ 350,000 in economic damages. In her affidavit, Griffith describes four types of economic damages: (1) the loss resulting from the sale of her inventory, which she **[**9]** values at $ 290,000; (2) the loss resulting from the sale of her home, which she values at $ 60,000; (3) the harm to her credit rating, which she values at $ 250,000; and (4) lost profits, which she values at $ 175,000. The Leftons argue that Griffith's testimony describing these four types of economic damages is legally and factually insufficient.

*a. Losses from Sale of Inventory and Sale of Home*

The Leftons first argue that Griffith's testimony describing the alleged losses from the sale of her inventory and home is legally and factually insufficient. Griffith's affidavit provides:

My inventory at the time of the forced sale was worth $ 300,000. I was forced to sell my entire inventory for only $ 10,000 to the only company that offered me a bid. Therefore, I lost $ 290,000 because the Defendants broke their promise and locked me out of the Premises and forced me to sell my inventory.

. . . .

Moreover, because the failure of my business deprived me of my only source of income, I was unable to pay my personal creditors. As a result, I was soon forced to sell my house, at a greatly reduced price, in an attempt to pay my business suppliers and personal creditors.

Because **[**10]** the Defendants' actions placed me in a position where I needed cash quickly in order to satisfy some of my creditors, I was forced to sell my personal residence as quickly as possible, which resulted in a loss of $ 60,000 on the sale of my house.

**[*277]** Citing *Porras v. Craig, 675 S.W.2d 503, 27 Tex. Sup. Ct. J. 515 (Tex. 1984)*, the Leftons argue that the above testimony is incompetent because it fails to refer to market value. In *Porras*, a case based on permanent damage to land, the court reversed an award of damages where the owner failed to testify to the market value of his property. *Id. 675 S.W.2d at 504*. In *Porras*, however, "the owner's testimony affirmatively showed that he referred to personal rather than market value." *Id. 675 S.W.2d at 505*. Here, Griffith's testimony does not affirmatively show that she was referring to personal rather than market value. Thus, this case is distinguishable from *Porras* on this basis. In fact, *Porras* affirms the general rule that **HN7** "an owner is qualified to testify about the market value of his property." *Id*. Because, therefore, an owner is qualified to testify about the market value of his property, and because Griffith's **[**11]** testimony does not affirmatively show that she was referring to personal rather than market value, we overrule this argument on appeal.

The Leftons also argue that the above testimony is incompetent because it is conclusory. There is no evidence, they argue, that the inventory Griffith sold for $ 10,000 was actually worth $ 300,000. We agree. **HN8** Documents that represent merely conclusory allegations will not support an amount awarded for unliquidated damages. *Jones v. Andrews, 873 S.W.2d 102, 107 (Tex. App.--Dallas 1994, no writ)*. Here, Griffith's allegations fail to provide a factual basis to support her conclusion. We do not know, for example, the type of furniture or even the amount of furniture she sold. As such, we have no factual basis upon which to affirm her conclusion. *See Brownlee v. Brownlee, 665 S.W.2d 111, 112, 27 Tex. Sup. Ct. J. 259 (Tex. 1984)* (holding that affidavits consisting only of conclusions are insufficient to raise an issue of fact). Accordingly, we hold that the evidence of loss from the sale of inventory is legally insufficient to support an award for damages.

The testimony regarding the sale of her home is equally conclusory. As the owner of her **[**12]** home, Griffith is clearly qualified to testify about the value of it. *Porras, 675 S.W.2d at 505*. Because, however, she fails to explain how she arrived at the conclusion that she lost $ 60,000 from having to sell her home to pay her creditors,

we have no way of knowing what she based her conclusion on. Her estimate could be purely speculative. *HN9* "There can be no recovery for damages which are speculative or conjectural." *Roberts v. U.S. Home Corp., 694 S.W.2d 129, 135 (Tex. App.--San Antonio 1985, no writ)* (reversing a default judgment award for damages to credit reputation). Accordingly, we hold that the evidence of loss from the sale of Griffith's home is legally insufficient to support an award of damages.

*b. Damage to Credit Reputation*

The Leftons next argue, and Griffith concedes, that Griffith's testimony regarding her damage to credit reputation is incompetent. Griffith's affidavit provides:

Further, as a result of the loss of my business, which was caused by the Defendants, my credit reputation was ruined because I was unable to pay my bills as they came due. This injury was a natural, probable, and foreseeable consequence of the Defendants' **[**13]** wrongful conduct. This injury to credit rating has caused extreme hardship over the past two years and will continue to cause hardship into the foreseeable future. I believe that this loss of credit rating has damaged me in the amount of $ 250,000.

*HN10* Texas law provides that in order to recover actual damages for loss of credit reputation, a plaintiff must first show that a loan was actually denied or a higher interest rate **[*278]** charged. *St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co., 974 S.W.2d 51, 53, 41 Tex. Sup. Ct. J. 1357 (Tex. 1998)*. Here, Griffith failed to allege any such fact. Again, "there can be no recovery for damages which are speculative or conjectural." *Roberts, 694 S.W.2d at 135*. Accordingly, we hold that the evidence of damage to credit reputation is legally insufficient to support an award of damages.

*c. Lost Profits*

The Leftons also argue that Griffith's testimony regarding lost profits is incompetent. Griffith's affidavit provides:

Because I was forced to sell my entire inventory to a competitor for a fraction of its value, I [had] insufficient cash to pay my suppliers and other creditors, ruining my valuable trade relationships. Therefore, **[**14]** as a result of Defendants' actions, Discount Furniture Warehouse went out of business permanently. I have been in business for eight (8) years and probably would

have been in business for at least five more years, probably more. I personally earned net profit of approximately $ 35,000 per year from the business. Therefore, I believe I am entitled to lost profits equal to that same income for the next five years, or $ 175,000.

*HN11* Recovery for lost profits does not require that the loss be susceptible to exact calculation. *Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc., 877 S.W.2d 276, 279, 37 Tex. Sup. Ct. J. 676 (Tex. 1994)*. However, the injured party must do more than show that it suffered some lost profits. *Id*. The loss amount must be shown by competent evidence with reasonable certainty. *Szczepanik v. First S. Trust Co., 883 S.W.2d 648, 649, 37 Tex. Sup. Ct. J. 860 (Tex. 1994)*; *Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 84, 35 Tex. Sup. Ct. J. 881 (Tex. 1992)*. This is a fact-intensive determination. *Heine, 835 S.W.2d at 84*. At a minimum, opinions of lost-profit estimates must be based on objective facts, figures, or data from which the lost-profits amount may be ascertained. **[**15]** *Szczepanik, 883 S.W.2d at 649*; *Heine, 835 S.W.2d at 84*. Although supporting documentation may affect the weight of the evidence, it is not necessary to produce in court the documents supporting the opinions or estimates. *Heine, 835 S.W.2d at 84*.

Here, Griffith's affidavit fails to provide a factfinder with sufficient data to determine her lost profits with reasonable certainty. Her "bare assertion" that she expected to make $ 35,000 in profit for the next five years because she made $ 35,000 in profit for the past eight years does not demonstrate a reasonably certain objective determination of lost profits. *See Heine, 835 S.W.2d at 85* *HN12* ("The bare assertion that contracts were lost does not demonstrate a reasonably certain objective determination of lost profits."). In fact, though she attributes her financial woes to "seasonal difficulties," the fact that she could not pay her rent undermines that conclusion. We hold that the evidence of lost profits is legally insufficient to support an award of damages.

*2. Mental Anguish*

The trial court awarded Griffith $ 290,000 in mental anguish damages. The Leftons argue **[**16]** that Griffith's affidavit does not support such an award. Griffith's affidavit provides:

As a result of Defendants' actions, I had irate customers calling my home and coming by my house at all hours of

the day and night. I suffered severe emotional distress and mental anguish as a result of numerous encounters with angry, frustrated customers whom I was unable to help. As a result of Defendants' intentionally cruel actions, I was unable to sleep, was depressed, and suffered **[*279]** from anxiety. Because I believe that the emotional injury I suffered was just as devastating as the loss of my business inventory, I believe that my damages for emotional and mental anguish also equal $ 290,000.

**HN13** Mental anguish damages are appropriate when there is *either* "direct evidence of the nature, duration, and severity of [plaintiffs'] mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine," *or* other evidence of "a high degree of mental pain and distress" that is "more than mere worry, anxiety, vexation, or anger." *Saenz v. Fid. & Guar. Ins. Underwriters, 925 S.W.2d 607, 614, 39 Tex. Sup. Ct. J. 743 (Tex. 1996)* (citing *Parkway Co. v. Woodruff, 901 S.W.2d 434, 444, 38 Tex. Sup. Ct. J. 828 (Tex. 1995)).* **[**17]** Here, Griffith does not establish the duration of her anguish. It is not clear how long she "was unable to sleep, was depressed, and suffered from anxiety."

Because Griffith does not establish "the nature, duration, and severity of mental anguish," she must show other evidence of "a high degree of mental pain and distress." *Parkway, 901 S.W.2d at 444.* Additionally, "the absence of [evidence of the nature, duration, and severity of mental anguish], particularly when it can be readily supplied or procured by the plaintiff, justifies close judicial scrutiny of other evidence offered on this element of damages." *Id.*

**HN14** Texas law also provides:

Not only must there be evidence of the existence of compensable mental anguish, there must also be some evidence to justify the amount awarded. . . . While the impossibility of any exact evaluation of mental anguish requires that juries be given a measure of discretion in finding damages, that discretion is limited. Juries cannot simply pick a number and put it in the blank. They must find an amount that, in the standard language of the jury charge, "would fairly and reasonably compensate" for the loss. . . . Reasonable compensation **[**18]** is no easier to determine than reasonable behavior--often it may be harder--but the law requires factfinders to determine both.

*Saenz, 925 S.W.2d at 614.*

Thus, Griffith must show: (1) that she suffered a high degree of mental pain and distress; and (2) that $ 290,000 is a fair and reasonable amount for the mental anguish she suffered. Here, Griffith's testimony that she "was unable to sleep, was depressed, and suffered from anxiety" fails to establish either. Griffith's distress, while understandable, "does not rise to the level of compensable mental anguish" as defined by Texas law. *Id.* Additionally, there is no evidence that $ 290,000 "is fair and reasonable compensation" for the amount she suffered. *Id.* Accordingly, we hold that the evidence of mental anguish is legally insufficient to support an award of damages.

### 3. Attorney Fees

The trial court awarded Griffith $ 2,000 in attorney fees. On appeal, the Leftons argue that there is insufficient evidence of attorney fees because the only reference to attorney fees in the record is unsworn statements by counsel during the hearing. The Leftons fail, however, to cite authority for this proposition. **[**19]** *TEX. R. APP. P. 38.1(h)*. Additionally, the Texas Civil Practices and Remedies Code provides: **HN15** "The court may take judicial notice of the usual and customary attorney's fees and of the contents of the case file without receiving further evidence in a proceeding before the court." *TEX. CIV. PRAC. & REM. CODE § 38.004(1)* (Vernon 1997). Moreover, **HN16** "even if the trial court did not state that it was taking such judicial notice, [the appellate **[*280]** court] may presume that the trial court did so." *Inwood Dad's Club, Inc. v. Aldine Indep. Sch. Dist., 882 S.W.2d 532, 542 (Tex. App.--Houston [1st Dist.] 1994, no writ)*. Here, the proceeding was before the court. Additionally, although the trial court did not state that it was taking judicial notice, we may presume that it did. *Id.* Accordingly, we hold that the evidence of attorney fees is legally and factually sufficient to support the award.

### II. Return of Service

The Leftons argue that the default judgment as to David Lefton must be set aside because "although the return [of service] bears a file stamp indicating that it was filed on November 14, 2002, the file stamp has not been **[**20]** signed by a representative of the District Clerk's Office." The Leftons fail to cite, however, any case law for the proposition that a file stamp is not valid if it is not signed by a representative of the district clerk's office. Accordingly, the Leftons failed to properly brief this issue. *TEX. R. APP. P. 38.1(h)*.

Additionally, their argument is without merit. Here, the stamp shows that David Lefton was served on

November 14, 2002. The default judgment was granted November 25, 2002. Accordingly, the return of service was on file for ten days before the default judgment was granted. *See* *TEX. R. CIV. P. 107* **HN17** ("No default judgment shall be granted in any cause until the citation . . . with proof of service as provided by this rule . . . shall have been on file with the clerk of the court ten days, exclusive of the day of filing and the day of judgment."). Because the Leftons provide no authority for their argument, and because the return of service was on file for ten days before the default judgment was granted, we overrule this issue on appeal.

**CONCLUSION**

Because there is insufficient evidence to support an award of damages for Griffith's loss from the sale of her [**21] inventory, loss from the sale of her home, lost profits, and damage to credit reputation, we reverse the trial court's award for economic damages and remand this cause for a new trial on economic damages. *See*

*Heine, 835 S.W.2d at 86* (holding that **HN18** when damages awarded in a default judgment after an uncontested hearing are supported by either legally or factually insufficient evidence, we must remand the case for a new trial on those damage issues); *Jackson v. Gutierrez, 77 S.W.3d 898, 904 (Tex. App.--Houston [14th Dist.] 2002, no pet.)* (reversing and remanding the trial court's awards for medical expenses, mental anguish, pain and suffering, and automobile repair, and affirming the award for lost wages).

Because there is insufficient evidence to support an award of damages for Griffith's mental anguish, we reverse the trial court's award for mental anguish and remand the cause for a new trial on mental anguish damages. *See* *Heine, 835 S.W.2d at 86*.

We affirm the trial court's award for attorney fees.

Karen Angelini, Justice





Caution
As of: Mar 30, 2015

DOUGLAS LEHMANN AND VIRGINIA LEHMANN, PETITIONERS v.
HAR-CON CORPORATION, RESPONDENT; MELVIN G. HARRIS AND HEL-
ENA M. HARRIS, PETITIONERS v. HARBOUR TITLE COMPANY, RE-
SPONDENT

NO. 99-0406 - consolidated with - NO. 99-0461

SUPREME COURT OF TEXAS

*39 S.W.3d 191*; *2001 Tex. LEXIS 6*; *44 Tex. Sup. J. 364*

January 26, 2000, Argued
February 1, 2001, Delivered

**NOTICE:**

[**1]

**PRIOR HISTORY:** ON PETITIONS FOR RE-
VIEW FROM THE COURT OF APPEALS FOR THE
FOURTEENTH DISTRICT OF TEXAS.

**DISPOSITION:** Judgments reversed, cases remand-
ed.

**JUDGES:** JUSTICE HECHT delivered the opinion of
the Court, in which CHIEF JUSTICE PHILLIPS, JUS-
TICE OWEN, JUSTICE ABBOTT, and JUSTICE
O'NEILL joined. JUSTICE BAKER filed a concurring
opinion in which JUSTICE ENOCH joined, except for
Part IV and the discussion of Inglish and Bandera, and in
which JUSTICE HANKINSON joined, except for Part
IV.

**OPINION BY:** Nathan L. Hecht

**OPINION**

[*192] In these two consolidated cases we revisit
the persistent problem of determining when a judgment
rendered without a conventional trial on the merits is
final for purposes of appeal. We consider only cases in
which one final and appealable judgment can be ren-

dered and not cases, like some probate and receivership
proceedings, in which multiple judgments final for pur-
poses of appeal can be rendered on certain discrete is-
sues. [1] And we consider a judgment's finality only for
purposes of appeal and not for other purposes, such as
issue and claim preclusion. [2] In *Mafrige v. Ross*, [3] we
held that a summary judgment [**2] is final if it con-
tains language purporting to dispose of all claims and
parties. We gave as one example of such language what
we have called a "Mother Hubbard" clause [4] -- a recita-
tion that all relief not expressly granted is denied. [5] Since
then, the routine inclusion of this general statement in
otherwise plainly interlocutory orders and its ambiguity
in many contexts have rendered it inapt for determining
finality when there has not been a conventional trial. We
no longer believe that a Mother Hubbard clause in an
order or in a judgment issued without a full trial can be
taken to indicate finality. We therefore hold that in cases
in which only one final and appealable judgment can be
rendered, a judgment issued without a conventional trial
is final for purposes of appeal if and only if either it ac-
tually disposes of all claims and parties then before the
court, regardless of its language, or it states with unmis-
takable clarity that it is a final judgment [*193] as to
all claims and all parties. In the two cases before us, the
court of appeals concluded that judgments that do not
meet this test were final and dismissed the appeals as
having been untimely perfected. [6] We reverse and [**3]
remand for consideration of the merits of the appeals.

1   *See Crowson v. Wakeham, 897 S.W.2d 779, 783 (Tex. 1995)* (involving probate proceedings); *Huston v. Federal Deposit Ins. Corp., 800 S.W.2d 845, 847 (Tex. 1990)* (involving receivership proceedings).

2   *See Street v. Second Court of Appeals, 756 S.W.2d 299, 301 (Tex. 1988).*

3   *866 S.W.2d 590 (Tex. 1993).*

4   *Teer v. Duddlesten, 664 S.W.2d 702, 704 (Tex. 1984).*

5   *Mafrige, 866 S.W.2d 590 n.1.*

6   *Lehmann v. Har-Con-Corp.,    S.W.2d   , 1998 Tex. App. LEXIS 4657 (Tex. App.--Houston [14th Dist.] 1998), 988 S.W.2d 415 (1999)* (op. on reh'g); *Harris v. Harbour Title Co.,    S.W.2d   , 1999 Tex. App. LEXIS 2708 (Tex. App.--Houston [14th Dist.] 1999).*

## I

### *Lehmann v. Har-Con Corp.*

Douglas and Virginia Lehmann sued the University of St. Thomas and Har-Con Corp. in the district court in Harris County to recover damages for injuries Douglas suffered in a construction [**4] accident. The University cross-claimed against Har-Con for indemnity. The Lehmanns settled with Har-Con and executed a release, agreeing in part to indemnify Har-Con against certain claims which had been or could be asserted by or through them. Virginia then filed an amended petition on behalf of her minor son against both defendants, claiming damages for loss of parental consortium because of his father's injuries. In response, Har-Con filed a counterclaim against Virginia and a third-party petition against Douglas, seeking indemnity from them under the terms of their prior release.

The Lehmanns and Har-Con all moved for summary judgment on Har-Con's indemnity claims. The district court denied the Lehmanns' motion and granted Har-Con's motion. The court's order granting Har-Con's motion stated in full:

[caption]

ORDER

On this 12 day of March, 1998 came on to be considered the Motion for Summary Judgment of HAR-CON CORPORATION. After considering the motion, the response, the summary judgment evidence and the argument of counsel, the Court is of the opinion that the motion should be in all things granted. It is therefore,

ORDERED, ADJUDGED AND DECREED that the Motion [**5] for Summary Judgment by HAR-CON CORPORATION be and it is hereby GRANTED.

All relief not expressly granted herein is denied.

Signed this the 12 day of March, 1998

s/

JUDGE PRESIDING

[s/ Attorneys for Har-Con Corporation]

The order did not reference Virginia's claims on behalf of her son against Har-Con, although it would appear that Har-Con's summary judgment on its indemnity claim would effectively bar recovery for Virginia's son. The order also did not reference Virginia's son's claims against the University, which would not appear to be affected by Har-Con's summary judgment. The order contained a "Mother Hubbard" clause stating that "all relief not expressly granted herein is denied."

The district clerk advised the Lehmanns by postcard that an interlocutory summary judgment order had issued. The record does not reflect whether the parties received a copy of the actual order after it was signed. The Lehmanns tell us that the practice of the district clerk in Harris County is not to send copies of orders to the parties but to give parties notice by postcard when orders are signed. The notice does not completely describe the content of the order.

The Lehmanns [**6] appear to have believed that the summary judgment order was interlocutory because they moved to sever it and Har-Con's claims into a separate action, ostensibly to make the summary judgment final. The court granted the motion to sever on the twenty-fifth day after the summary judgment order was signed. Twenty-eight days after the severance [*194] order was signed, the Lehmanns noticed their appeal from the summary judgment order.

If the summary judgment was not final until the severance order was signed, then the Lehmanns' appeal was timely. But the court of appeals held that the summary judgment order was final when it issued because of the Mother Hubbard clause and that the order was not modified by the severance so as to restart the time for perfecting appeal. [7] Because the Lehmanns did not perfect appeal within thirty days of the signing of the order as prescribed by the rules of appellate procedure, [8] the court dismissed the appeal for want of jurisdiction. In holding that the summary judgment order was final, the court followed our decision in *Mafrige*, although the court expressed concerns that the inclusion of a Mother Hubbard clause in an otherwise plainly interlocutory order [**7] should not make the order final.

7   *   S.W.2d   , 1998 Tex. App. LEXIS 4657; 988 S.W.2d 415* (op. on reh'g).

8   *See TEX. R. APP. P. 26.1* (appellate time limits).

We granted the Lehmanns' petition for review and consolidated it for argument and decision with *Harris v. Harbour Title Co.* [9]

9   *43 Tex. Sup. J. 94, 96* (Nov. 12, 1999).

*Harris v. Harbour Title Co.*

Melvin and Helena Harris sued five defendants -- Greenfield Financial Corp. and Larry J. Greenfield ("the Greenfield defendants), Tim Rice and Rice Development, Inc. ("the Rice defendants"), and Harbour Title Co. -- in the district court in Harris County on breach-of-contract and tort claims arising from a conveyance of real property. The court granted an interlocutory default judgment against Tim Rice on liability only, leaving for later a determination of the [**8] damages to be assessed against him. The Harrises nonsuited their claims against the Greenfield defendants. The fifth defendant, Harbour Title Co., moved for summary judgment, which the court granted with the following order:

[caption]

Order Granting Harbour Title Company's

Motion for Summary Judgment

On August 28, 1998, came on to be heard the Motion for Summary Judgment of one of the defendants, Harbour Title Company, and the Court having considered the Motion, together with any response, and the supplemental briefing filed by the parties to date is of the opinion that said Motion is with merit and should be granted. It is therefore

ORDERED that defendant Harbour Title Company's Motion for Summary Judgment is in all things granted; it is further

ORDERED that the Plaintiffs, Melvin G. Harris and Helena M. Harris take nothing as to any of their claims against Harbour Title Company.

All relief requested and not herein granted is denied.

SIGNED this 15 day of October 1998.

s/

JUDGE PRESIDING

APPROVED AND ENTRY REQUESTED:

[s/ Attorneys for Harbour Title Company]

Although the order did not reference the Harrises' pending claims against the Rice [**9] defendants, it nevertheless contained a Mother Hubbard clause stating that "all relief requested and not herein granted is denied."

The Harrises assert that they received notice of the order by a postcard that described the order as an interlocutory summary judgment, but the postcard is not in our record. The record does not reflect whether the parties obtained a copy of the order after it was signed. It appears that the district clerk followed her usual procedure of notifying the parties by   [*195]   postcard in lieu of providing copies of the order.

The district court apparently did not consider the summary judgment order to be final; forty-six days after it was signed, the court generated a form order setting the case for trial the next year. The Harrises, too, appear to have believed the summary judgment to be interlocutory; two weeks after the order issued setting the case for trial, the Harrises obtained what was captioned a "Final Default Judgment" against the Rice defendants. Twenty-five days later the Harrises noticed their appeal from Harbour Title's summary judgment.

If Harbour Title's summary judgment did not dispose of the Harrises' claims against the Rice defendants, and the [**10] default judgment against those defendants was the final order in the case, then the Harrises' appeal was timely. But following *Mafrige*, as it had done in *Lehmann*, the court of appeals concluded that the summary judgment order was final and therefore dismissed the appeal as not having been timely perfected. We granted the Harrises' petition for review and consolidated it with *Lehmann* for argument and decision. [10]

10   *43 Tex. Sup. J. 94, 96* (Nov. 12, 1999).

**II**

**A**

Though its origins are obscure and its rationale has varied over time, [11] the general rule, with a few mostly statutory exceptions, is that an appeal may be taken only from a final judgment. [12] A judgment is final for purposes of appeal if it disposes of all pending parties and claims in the record, except as necessary to carry out the decree. [13] (An order that does not dispose of all pending parties and claims may also be final for purposes of appeal in some instances, such as orders that resolve certain discrete [**11] issues in some probate [14] and receiverships [15] cases, but we exclude those cases from consideration here. Nor do we consider when a judgment may be final for purposes other than appeal, such as claim and issue preclusion. [16] ) Because the law does not require that a final judgment be in any particular form, whether a judicial decree is a final judgment must be determined from its language and the record in the case. Since timely perfecting appeal (as well as filing certain post-judgment

motions and requests) hangs on a party's making this determination correctly, certainty is crucial.

11    *See* CHARLES ALAN WRIGHT, AR-
THUR R. MILLER, & EDWARD H. COOPER,
FEDERAL PRACTICE & PROCEDURE §§
3906-3907 (1992).
12    *See, e.g., North East Indep. Sch. Dist. v. Al-
dridge, 400 S.W.2d 893, 895 (Tex. 1966); Gulf C.
& S.F. Ry. v. Fort Worth & N.O. Ry., 68 Tex. 98,
2 S.W. 199, 200 (Tex. 1886), op. on reh'g, 68 Tex.
106, 3 S.W. 564 (1887)*; see *TEX. CONST. art. V,
§ 3-b* (direct appeals to the Supreme Court); *TEX.
CIV. PRAC. & REM. CODE §§ 15.003(c)* (inter-
locutory joinder and intervention appeals), 51.012
(court of appeals jurisdiction), 51.014 (interlocu-
tory appeals); *TEX. GOV'T CODE §§ 22.001(c)*
(direct appeals), 22.225(d) (interlocutory appeal
to the Supreme Court).
[**12]
13    *See Jack B. Anglin Co., v. Tipps, 842
S.W.2d 266, 272 (Tex. 1992)*; *Linn v. Arambould,
55 Tex. 611, 617-18 (1881)* (surveying several
tests for determining when a judgment is final).
*See generally* 49 C.J.S. *Judgments* § 11 (1947);
*46 AM. JUR. 2D Judgments § 200-206* (1994).
14    *Crowson v. Wakeham, 897 S.W.2d 779, 783
(Tex. 1995).*
15    *Huston v. Federal Deposit Ins. Corp., 800
S.W.2d 845, 847 (Tex. 1990).*
16    *See Street v. Second Court of Appeals, 756
S.W.2d 299, 301 (Tex. 1988).*

From the beginning, however, certainty in deter-
mining whether a judgment is final has proved elusive.
What has vexed courts in this State and elsewhere is this:
must a final judgment dispose of all parties and claims
specifically, or may it do so by general language or even
by inference? If a specific disposition of each party and
[*196] claim is strictly required, a judgment apparently
intended by the parties and the trial court to be final and
appealable may not be. An appeal from such a judgment
must be dismissed [**13] or at least abated, resulting in
delay and a waste of the courts' and the parties' re-
sources. More importantly, if a judgment intended to be
final did not meet the strict requirements, then the case
would remain open, allowing the possibility of further
proceedings and appeal years later. On the other hand, if
a judgment may dispose of all parties and claims by gen-
eral language or inference, a party or trial court may
think that a judgment is interlocutory, only to be told
later by the appellate court after the time for appeal has
passed that the judgment was final. A party who is un-
certain whether a judgment is final must err on the side
of appealing or risk losing the right to appeal.

In 1881, after struggling with these problems for
many years, [17] we attempted to resolve them in the case
of *Linn v. Arambould.* [18] There we stated that a final
judgment after trial must dispose of the issues "intrinsi-
cally, and not inferentially." [19] That is, specificity was
strictly required. The results of this rule were predictable.
Appellate courts frequently declared shabbily drafted
judgments interlocutory even though the trial courts and
the parties had obviously intended for them to [**14]
be final. [20] Confused parties were spending time and
money attempting to appeal from possibly final judg-
ments, only to have the appellate courts dismiss the ap-
peals for want of jurisdiction. [21] As this Court later re-
flected on *Arambould*'s intrinsic-disposition requirement
for finality:

By its application most judgments easily became
black or white -- final or interlocutory; but all too often
judgments which were obviously intended to be final
were being held interlocutory because of careless
draftsmanship. The rule had to be changed to accommo-
date oversight or carelessness. [22]

17    *See Hanks v. Thompson, 5 Tex. 6, 8 (1849)*
(defining a final judgment as awarding the judi-
cial consequences which the law attaches to the
facts and determining the subject matter of the
controversy between the parties); *accord West v.
Bagby, 12 Tex. 34 (1854). See also Fitzgerald v.
Fitzgerald, 21 Tex. 415 (1858)*; *Hancock v. Metz,
7 Tex. 177 (1851)* (both holding that a judgment
for the defendant for costs did not constitute a fi-
nal judgment); *Warren v. Shuman, 5 Tex. 441,
450 (Tex. 1849)* (finding that a judgment that
awards costs without disposing of the subject
matter of the controversy is not a final judgment).
*See generally* 31 JEREMY C. WICKER, TEXAS
PRACTICE, CIVIL TRIAL & APPELLATE
PROCEDURE § 506, at 289-311 (1985) (chroni-
cling, in depth, the challenges of distinguishing
between final and interlocutory judgments in
various contexts beginning in the mid-19th cen-
tury).
[**15]
18    *55 Tex. 611 (1881).*
19    *Id. at 619.*
20    *See Aldridge, 400 S.W.2d at 895.*
21    *See, e.g., East & West Tex. Lumber Co. v.
Williams, 71 Tex. 444, 9 S.W. 436 (Tex. 1888)*;
*Hill v. Templeton, 25 S.W. 652 (Tex. Civ. App.
1894)*; *Mills v. Paul, 4 Tex. Civ. App. 503, 23
S.W. 395 (Tex. Civ. App. 1893).*
22    *Aldridge, 400 S.W.2d at 895.*

In 1896 we altered course. In *Rackley v. Fowlkes,* [23]
the plaintiff had, in a prior suit, sued for title to real

property and for rent for the four years the property was in the defendant's possession, but at trial he offered no evidence of the amount of rent due until after the evidence was closed, and because the offer was late the court refused to hear it. The court in that suit rendered judgment awarding title to the plaintiff without mentioning his claim for rent. When the plaintiff filed a second suit for the rent, the defendant asserted res judicata in defense. The trial court rendered judgment for the plaintiff, concluding [**16] that the rent claim had not been adjudicated in the prior suit, and the court of civil appeals affirmed. We reversed the judgments of the lower courts, not because the rent claim should have been adjudicated [*197] in the first suit, but because it *was* adjudicated:

The proposition seems to be sound in principle and well supported by authority that where the pleadings and judgment in evidence show that the pleadings upon which the trial was had put in issue plaintiff's right to recover upon two causes of action, and the judgment awards him a recovery upon one, but is silent as to the other, such judgment is prima facie an adjudication that he was not entitled to recover upon such other cause. This liberal construction of the judgment against the party who sought to recover therein is supported by the presumption that the court performed the duty devolved upon it upon the submission of the cause by disposing of every issue presented by the pleadings so as to render its judgment final and conclusive of the litigation, and by the further fact that the policy of the law favors the speedy settlement of litigation and opposes the harassing of the defendant with two suits for the same cause. [**17] [24]

23 *89 Tex. 613, 36 S.W. 77, 78 (Tex. 1896).*
24 *Rackley, 36 S.W. 77 at 78* (citations omitted).

Three years later we used the rule stated for purposes of res judicata in *Rackley* to determine whether a judgment was final for purposes of appeal. In *Davies v. Thomson*, [25] the plaintiffs sued for money and an interest in real property as their share of a joint venture. The trial court rendered judgment on a jury verdict awarding the plaintiffs money without mentioning the claim for an interest in real property. We held that the judgment disposed of both claims was therefore final and appealable. [26]

25 *92 Tex. 391, 49 S.W. 215 (Tex. 1899).*
26 *Davies, 92 Tex. 391, 49 S.W. 215 at 217.*

Neither *Rackley* nor *Davies* mentioned *Arambould* or attempted to reconcile their results with the rule in that case, thereby generating [**18] confusion in the appellate courts over how to determine finality in cases involving cross-claims and counterclaims. Some courts treated judgments that merely implicitly disposed of all claims as final, while other courts required that final judgments expressly adjudicate each claim. [27] In 1913, the Court resolved the conflict in *Trammell v. Rosen*, [28] rejecting the rule stated in *Arambould*. The plaintiff in *Trammell* sued on a promissory note secured by property that the defendant and his wife claimed was their homestead. The couple counterclaimed to establish their homestead claim and for damages for wrongful sequestration. The trial court instructed a verdict for the plaintiff on his claim and against the defendants on their counterclaim. The judgment recited the verdict and awarded damages to the plaintiff but did not mention the counterclaim. [29] Citing *Rackley*, the Court concluded that the judgment was final, reasoning that by granting the plaintiff's claim the trial court implicitly but necessarily denied the defendants' counterclaim. [30] Still, the Court strongly encouraged courts to expressly address each claim and party in final judgments to avoid further confusion: [**19]

We feel constrained to hold that the judgment of the trial court, although irregular and imperfect in form, is sufficient to support the appeal. However, we feel impelled to say, also, that we think that, as a matter of practice, and to avoid confusion, every final judgment should plainly, explicitly, and specifically dispose of each and every party to the cause, and of each and every issue therein presented by the pleadings. [31]

27 *See Trammell v. Rosen, 106 Tex. 132, 157 S.W. 1161, 1162 (Tex. 1913)* (listing the various appellate courts subscribing to each school of construction).
28 *Id.*
29 *Trammell, 157 S.W. at 1161.*
30 *Trammell, 157 S.W. at 1161-1163.*
31 *Trammell, 157 S.W. at 1163. See also Burton Lingo Co. v. First Baptist Church, 222 S.W. 203, 204* (Tex. Comm'n App. 1920, holding approved) (citing *Trammell* for support of its presumption that the judgment disposed of a claim).

[*198] Two cases decided after *Trammell* suggest that the entire record should be considered in determining [**20] whether a post-trial judgment is final. In *Hargrove v. Insurance Investment Corp.*, we held that a judgment for the plaintiff was final when "considered as a whole in the light of the entire record". [32] Similarly, in *Ferguson v. Ferguson*, we held that a judgment awarding the plaintiff recovery on some of her claims while silent as to others was final, stating that "in arriving at whether or not a judgment is final, the pleadings and evidence must also be taken into consideration". [33] Neither case should be read to deviate from the presumptive rule of

*Trammell*. We did not hold in either case that the record could be used to show that a post-trial judgment final on its face was really not final. In two other cases during the same time period we did not mention the record in applying *Trammell*. [34]

> 32    *142 Tex. 111, 176 S.W.2d 744, 746 (Tex. 1944)*.
> 33    *161 Tex. 184, 338 S.W.2d 945, 947 (Tex. 1960)*.
> 34    *Gamble v. Banneyer, 137 Tex. 7, 151 S.W.2d 586 (Tex. 1941)*; *Vance v. Wilson, 382 S.W.2d 107 (Tex. 1964)* (res judicata).

[**21]  In 1966, we reaffirmed *Rackley*, *Davies*, and *Trammell* in *Northeast Independent School District v. Aldridge*. [35] The school district sued Aldridge for breach of contract, and he asserted in his defense that he had contracted only as an agent for his principal. He also brought a third-party action against his principal, alleging that the principal was responsible for any damages to which the school district might be entitled. The trial court granted a partial summary judgment holding Aldridge personally liable to the district and directed that the case proceed to trial to determine the amount of damages to be awarded. The parties then stipulated to the amount of damages, and the trial court rendered judgment for the district against Aldridge based on the stipulation. The judgment did not mention Aldridge's third-party action against his principal. The court of civil appeals dismissed Aldridge's appeal, holding that the trial court's judgment was not final. [36] We held that the judgment against Aldridge disposed of the third-party action and was final for purposes of appeal. After reviewing the courts' historical difficulties in making finality determinations, we stated [**22]  the following rule for determining, in most instances, whether judgments in which parties and issues made by the pleadings are not disposed of in express language are, nevertheless, final for appeal purposes. When a judgment, not intrinsically interlocutory in character, is rendered and entered in a case regularly set for conventional trial on the merits, no order for a separate trial of issues having been entered . . ., it will be presumed for appeal purposes that the Court intended to, and did, dispose of all parties legally before it and of all issues made by the pleadings between such parties. [37]

> 35    *400 S.W.2d 893 (Tex. 1966)*.
> 36    *Aldridge v. Northeast Indep. Sch. Dist., 392 S.W.2d 607* (Tex. Civ. App.--San Antonio 1965), *rev'd and remanded*, *400 S.W.2d 893 (Tex. 1966)*.
> 37    *400 S.W.2d at 897-898*.

We added: "Of course, the problem [of determining whether judgments are final] can be eliminated entirely by a careful drafting of judgments [**23]  to conform to the pleadings or by inclusion in judgments of a simple statement that all relief not expressly granted is denied." [38] Inclusion of a catch-all statement -- which we later denominated a "Mother Hubbard" clause [39] -- would make clear that a post-trial judgment on the merits, presumed to have disposed of all claims, did indeed do so.

> 38    *Id. at 898*.
> 39    *Teer v. Duddlesten, 664 S.W.2d 702, 704 (Tex. 1984)*.

[*199]  **B**

The presumption that a judgment rendered after a conventional trial on the merits is final and appealable has proved fairly workable for nearly a century, but we have never thought that it could be applied in other circumstances, as we first explained nearly sixty years ago. In *Davis v. McCray Refrigerator Sales Corp.*, [40] the plaintiff sued for the unpaid balance of the purchase price of a refrigerator, and the defendant counterclaimed for cancellation of the debt and for damages for payments already made and lost merchandise due to improper refrigeration. [**24]  The defendant also filed a plea in abatement on the grounds that the plaintiff was a foreign corporation not licensed to do business in Texas and therefore not entitled to sue in state court. The trial court deferred ruling on the defendant's plea until after the case was tried on the merits. After the jury returned a verdict, the trial court rendered judgment both that the plaintiff's claim be dismissed and that the plaintiff take nothing. [41] The only basis the trial court had for dismissal was the defendant's plea in abatement, while the only basis for rendering a take-nothing judgment was plaintiff's failure of proof at trial. The judgment did not mention the defendant's counterclaim. The court of civil appeals rejected the defendant's argument that the judgment was interlocutory and reversed and rendered judgment for the plaintiff. [42] This Court reversed and dismissed the appeal. Citing *Trammell*, the Court acknowledged that while a final judgment need not expressly dispose of each issue so long as other provisions of the judgment necessarily imply that the unmentioned issues have been disposed of, a dismissal of the plaintiff's suit did not necessarily imply a disposal of [**25]  the defendant's cross-action. [43] The Court explained:

If the court had intended to merely sustain the plea in abatement and dismiss plaintiff's suit, and had intended to retain the defendant's cross-action for further consideration, it would have entered the very judgment that was entered in this case. The mere failure of the judgment to refer to defendant's cross-action was not suffi-

cient in itself to raise an inference that it was thereby intended to dispose of the cross-action. [44]

40    *136 Tex. 296, 150 S.W.2d 377 (Tex. 1941)*.
41    *McCray Refrigerator Sales Corp. v. Davis, 140 S.W.2d 477, 478* (Tex. Civ. App.--Fort Worth 1940), *rev'd, 136 Tex. 296, 150 S.W.2d 377 (Tex. 1941)*.
42    *Id.*
43    *150 S.W.2d at 378*.
44    *Id.*

Although the judgment did not "merely" sustain the plea in abatement but also decreed that the plaintiff take nothing, the inclusion of the dismissal in the judgment as the first basis for decision was enough to make [**26] *Trammell*'s presumptive finality rule inapplicable.

*Davis* may have departed too far from *Trammell*. The trial court's decree following a jury trial on the merits that the plaintiff take nothing without mention of the defendant's counterclaim should perhaps have been presumed to deny all relief, despite the alternative ruling that the plaintiff's claim should be dismissed. But regardless of *Davis*'s unusual circumstances, the case makes the point, which we expressly acknowledged in *Aldridge*, that "it will not be presumed that a judgment dismissing a plaintiff's suit on nonsuit, plea to the jurisdiction, plea in abatement, for want of prosecution, etc., also disposed of the issues in an independent cross-action." [45]

45    *Aldridge, 400 S.W.2d at 897*.

We have since held that "etc." includes default judgments and summary judgments. [46] The reason for not applying a presumption in any of these circumstances [*200] is that the ordinary expectation that supports the presumption that a judgment [**27] rendered after a conventional trial on the merits will comprehend all claims simply does not exist when some form of judgment is rendered without such a trial. On the contrary, it is quite possible, perhaps even probable these days in cases involving multiple parties and claims, that any judgment rendered prior to a full-blown trial is intended to dispose of only part of the case. Accordingly, the finality of the judgment must be determined without the benefit of any presumption.

46    See, e.g., *Houston Health Clubs, Inc. v. First Court of Appeals, 722 S.W.2d 692 (Tex. 1986)*, and the cases cited therein.

A judgment that finally disposes of all remaining parties and claims, based on the record in the case, is final, regardless of its language. [47] A judgment that actually disposes of every remaining issue in a case is not interlocutory merely because it recites that it is partial or refers to only some of the parties or claims. Thus, if a court has dismissed all of the claims in a case but one, [**28] an order determining the last claim is final. [48] This is settled law in Texas, and while there have been proposals to change it by rule, proposals that are currently pending consideration by this Court's Advisory Committee, we are not inclined to depart from it here. The language of an order or judgment cannot make it interlocutory when, in fact, on the record, it is a final disposition of the case.

47    *Farmer v. Ben E. Keith Co., 907 S.W.2d 495, 496 (Tex. 1995)* (per curiam); *H. B. Zachry Co. v. Thibodeaux, 364 S.W.2d 192, 193 (Tex. 1963)* (per curiam); *McEwen v. Harrison, 162 Tex. 125, 345 S.W.2d 706, 707 (Tex. 1961)*.
48    *Farmer, 907 S.W.2d at 496*; *H. B. Zachry Co., 364 S.W.2d at 193*; *McEwen, 345 S.W.2d at 707*.

But the language of an order or judgment *can* make it final, even though it should have been interlocutory, if that language expressly disposes of all claims and all parties. It is not enough, [**29] of course, that the order or judgment merely use the word "final". The intent to finally dispose of the case must be unequivocally expressed in the words of the order itself. But if that intent is clear from the order, then the order is final and appealable, even though the record does not provide an adequate basis for rendition of judgment. So, for example, if a defendant moves for summary judgment on only one of four claims asserted by the plaintiff, but the trial court renders judgment that the plaintiff take nothing on all claims asserted, the judgment is final -- erroneous, but final. [49] A judgment that grants more relief than a party is entitled to is subject to reversal, but it is not, for that reason alone, interlocutory. [50]

49    *Young v. Hodde, 682 S.W.2d 236 (Tex. 1984)* (per curiam); *Chessher v. Southwestern Bell Tel. Co., 658 S.W.2d 563, 564 (Tex. 1983)* (per curiam).
50    *Continental Airlines, Inc. v. Kiefer, 920 S.W.2d 274 (Tex. 1995)*.

Texas [**30] appellate courts, this Court included, have had difficulty determining when a judgment is final on its face -- by its own express terms, in other words -- even though it should not have been because no sufficient basis for rendering a final judgment was presented. In *Schlipf v. Exxon Corp.,* [51] the plaintiffs sued for gas royalties and prejudgment interest, and moved for summary judgment only on the royalties issue. Neither the defendant nor an intervenor moved for summary judgment against the plaintiffs. The trial court granted the

plaintiffs' motion, awarding the royalties claimed, but denied prejudgment interest. The judgment recited:

[*201] We held that this language conclusively disposed of all parties and issues, as it clearly did, although in reaching this conclusion, we reiterated our observation in *Aldridge* that the finality of a judgment would be made clear "by inclusion . . . of a simple statement that all relief not expressly granted is denied." [53] This observation, appropriate in *Aldridge* in reference to judgments after a conventional trial on the merits, was misleading in *Schlipf*, because the only "relief" properly under consideration when the order issued [**31] was that raised by the motion for summary judgment [54] -- the plaintiffs' entitlement to royalties. After a full trial on the merits, the statement in a judgment that all relief not requested is denied signifies finality; there is no expectation that the court tried only part of the case, absent an order for severance or separate trials. But after a motion for partial summary judgment, the same statement in a judgment is ambiguous. It may refer only to the motion on which the trial court is ruling, not to all claims of all parties, and not even to other claims of the movant.

> 51 *644 S.W.2d 453 (Tex. 1982)* (per curiam).

the relief herein granted Plaintiffs, . . . is in satisfaction of all of their claims and causes of action . . . and all claims and/or causes of action herein asserted by all parties herein and not herein granted are hereby in all things denied and concluded . . . . [52]

> 52 *Id. at 454.*
> [**32]
> 53 *Id.*
> 54 *See New York Underwriters Ins. Co. v. Sanchez, 799 S.W.2d 677, 678 (Tex. 1990)* (per curiam); *Young v. Hodde, 682 S.W.2d 236 (Tex. 1984)* (per curiam); *Chessher v. Southwestern Bell Tel. Co., 658 S.W.2d 563, 564 (Tex. 1983)* (per curiam).

Two years later, in *Teer v. Duddlesten*, we emphasized that the *Aldridge* language -- all relief not expressly granted is denied -- which we termed for the first time a "Mother Hubbard" clause, has no place in partial summary judgments because, by definition, those proceedings do not address all of the facts and issues in a case. [55] A Mother Hubbard clause, we said, could not convert a partial summary judgment into a final order. [56] Following *Teer*, most courts of appeals held that a Mother Hubbard clause could not make final a judgment rendered without a full trial, [57] although other courts reached the contrary conclusion. [58]

> 55 *Teer v. Duddlesten, 664 S.W.2d 702, 704 (Tex. 1984).*
> [**33]
> 56 *Id.*
> 57 *E.g., Bethurum v. Holland, 771 S.W.2d 719* (Tex. App.--Amarillo 1989, no writ); *Sakser v. Fitze, 708 S.W.2d 40, 42* (Tex. App.--Dallas 1986, no writ) (declaring that a Mother Hubbard clause in an order does not convert an intrinsically interlocutory partial summary judgment into a final judgment).
> 58 *E.g., Georgetown Assoc., Ltd. v. Home Fed. Sav. & Loan Ass'n, 795 S.W.2d 252, 253* (Tex. App.--Houston [14th Dist.] 1990, writ dism'd w.o.j.); *Hodde v. Young, 672 S.W.2d 45, 47* (Tex. App.--Houston [14th Dist.]) (holding that a judgment was final and appealable because it contained a Mother Hubbard clause), *writ ref'd, n.r.e., 682 S.W.2d 236 (Tex. 1984)* (per curiam) (noting that the erroneous rendition of a final judgment is not fundamental error).

We attempted to clarify matters in *Mafrige v. Ross*. [59] There, two plaintiffs sued some twelve defendants for malicious prosecution, slander, libel, conspiracy, and negligence. [60] No party other than the plaintiffs asserted any claims. [**34] The defendants, some individually and some in groups, filed a total of eight summary judgment motions, some directed against one of the plaintiffs and some against both. [61] Only one motion addressed both of the plaintiffs and all of the claims asserted; [62] even together, the other seven motions did not address both plaintiffs and all claims. [63] The trial court granted all eight motions with eight separate orders, one for each motion. [64] Each order stated that the [*202] plaintiff or plaintiffs, depending on whether the motion had been directed at one or both, were to take nothing against the movant or movants. [65] Thus, taken together, the eight orders provided that both of the plaintiffs were to take nothing against all of the defendants. On the plaintiffs' appeal, however, the court of appeals held that there was not a final judgment because most of the defendants had not moved for summary judgment on all claims by both plaintiffs and thus were not entitled to a final judgment, and the "take nothing" language of the orders did not make them final. [66] The court also held that if the orders had contained Mother Hubbard clauses they would have been final under this Court's precedents, [**35] although the court of appeals did not agree that that would have been the proper result. [67]

> 59 *866 S.W.2d 590 (Tex. 1993).*
> 60 *Id. at 590.*
> 61 *Id.*
> 62 *Ross v. Arkwright Mut. Ins. Co., 834 S.W.2d 385, 388-389* (Tex. App.--Houston [14th Dist.]

1992), *rev'd sub nom. Mafrige v. Ross, 866 S.W.2d 590 (Tex. 1993).*

63 *Id.*

64 *866 S.W.2d at 590-591.*

65 *Id.*

66 *Ross, 834 S.W.2d at 394.*

67 *Ross, 834 S.W.2d at 393-394.*

We reversed, holding that the "take nothing" language in the eight summary judgment orders disposed of all claims asserted by both plaintiffs against each of the defendants and thus constituted a final judgment. We then explained:

If a summary judgment order appears to be final, as evidenced by the inclusion of language purporting to dispose of all claims or parties, the judgment should be treated as final for purposes of appeal. If the judgment grants [**36] more relief than requested, it should be reversed and remanded, but not dismissed. We think this rule to be practical in application and effect; litigants should be able to recognize a judgment which on its face purports to be final, and courts should be able to treat such a judgment as final for purposes of appeal. [68]

68 *Mafrige, 866 S.W.2d at 592*; *accord Springer v. Spruiell, 866 S.W.2d 592 (Tex. 1993)* (per curiam).

As examples of "language purporting to dispose of all claims or parties," we gave not only the "take nothing" language of the orders before us, and the statement that summary judgment is granted as to all claims asserted, but also the standard Mother Hubbard clause -- that all relief not expressly granted is denied. [69] In so doing we revived the ambiguity created in *Schlipf* that *Teer* had tried to end.

69 *Mafrige, 866 S.W.2d at 590 n.1.*

[**37] The ambiguity has persisted in our decisions. In *Martinez v. Humble Sand & Gravel, Inc.*, [70] we held that the inclusion of a Mother Hubbard clause in an order did not necessarily make it final. There, some but not all of the defendants moved for summary judgment, and the trial court granted the motions, dismissing the plaintiff's cause of action against "those Defendants", but also ordering that summary judgment was proper "as to all remaining Defendants", thereby suggesting that the court intended to render a final summary judgment. [71] However, the trial court subsequently severed the summary judgment by order inviting other defendants to move on the same grounds. [72] Although this order contained a Mother Hubbard clause, we held that judgment had not been rendered for the non-moving defendants. [73]

70 *875 S.W.2d 311 (Tex. 1994)* (per curiam).

71 *Id. at 313.*

72 *Id.*

73 *Id.*

But in *Bandera Electric Cooperative, Inc. v. Gilchrist*, [74] we held that [**38] a Mother Hubbard clause in a summary judgment made it final. There the plaintiff moved for summary judgment on its claims without mentioning the defendant's counterclaims. [75] The defendant did not move for summary judgment. The trial court [*203] granted the plaintiff's motion by order that included a Mother Hubbard clause. We concluded that the order was final, albeit erroneous. [76] We attempted to explain that our ruling was consistent with *Martinez* because the conflict in the orders involved in that case showed that they were not final even though "a Mother Hubbard clause . . . would have created a final and appealable judgment". [77] Besides its obvious inadequacy in explaining the result in *Martinez*, this explanation suggested that a Mother Hubbard clause would by itself make any summary judgment final, contrary to our holding in *Teer*.

74 *946 S.W.2d 336 (Tex. 1997)* (per curiam).

75 *Id. at 337.*

76 *Id.*

77 *Id. at 337 n.2.*

Determining [**39] the significance of omitting a Mother Hubbard clause in an order has been no easier. In *Park Place Hosp. v. Estate of Milo*, we suggested that the absence of a Mother Hubbard clause indicated that a summary judgment was intended to be interlocutory. [78] There, the trial court granted summary judgment for three of five remaining defendants and later severed the judgment from the case. We concluded that the judgment did not become final for purposes of appeal until it was severed, in part based on the omission of a Mother Hubbard clause. But in two other cases we held that the omission of a Mother Hubbard clause did not make a summary judgment interlocutory that otherwise appeared final. In *Continental Airlines, Inc. v. Kiefer*, [79] the defendant moved for summary judgment "on all claims brought by" the plaintiffs. After the motion was filed, but before it was heard and decided, the plaintiffs amended their pleadings to add additional claims. The defendant did not amend its motion to address these later claims. The trial court granted what it entitled a "final summary judgment", dismissing the plaintiffs' cause of action" -- "cause", singular -- although multiple causes of action [**40] had been asserted. We held that the judgment was final, explaining as follows:

Finality "must be resolved by a determination of the intention of the court as gathered from the language of the decree and the record as a whole, aided on occasion

by the conduct of the parties." 5 RAY W. MCDONALD, TEXAS CIVIL PRACTICE § 27:4[a], at 7 (John S. Covell, ed., 1992 ed.); *see Ferguson v. Ferguson, 161 Tex. 184, 338 S.W.2d 945, 947 (Tex. 1960)*. In the circumstances described here, we think the district court intended to render a final, appealable judgment. . . . Neither the parties nor the court of appeals have suggested that the judgment was not final. [80]

> [78]   *909 S.W.2d 508, 510 (Tex. 1995).*
> [79]   *920 S.W.2d 274, 276 (Tex. 1996).*
> [80]   *Id. at 277.*

The judgment did not include a Mother Hubbard clause, but we did not find its omission significant. We reached a similar conclusion in *Inglish v. Union State Bank.* [81]

> [81]   *945 S.W.2d 810 (Tex. 1997)* (per curiam).

[**41]   In sum, our opinions have not been entirely consistent on whether the inclusion or omission of a Mother Hubbard clause does or does not indicate that a summary judgment is final for purposes of appeal. This ambivalence has resulted in considerable confusion in the courts of appeals. [82]

> [82]   *See, e.g.,* Elaine A. Carlson & Karlene S. Dunn, *Navigating Procedural Minefields: Nuances in Determining Finality of Judgments, Plenary Power, and Appealability*, 41 SO. TEX. L. REV. 953, 969-1001 (2000); William J. Cornelius & David F. Johnson, *Tricks, Traps, and Snares in Appealing a Summary Judgment in Texas*, 50 Baylor L. Rev. 813, 825-835 (1998).

## III

### A

Much confusion can be dispelled by holding, as we now do, that the inclusion of a Mother Hubbard clause -- by which we mean the statement, "all relief not granted is denied", or essentially those words -- [*204] does not indicate that a judgment rendered without a conventional trial is final for purposes of appeal. We overrule *Mafrige* [**42] to the extent it states otherwise. If there has been a full trial on the merits either to the bench or before a jury, the language indicates the court's intention to finally dispose of the entire matter, assuming that a separate or bifurcated trial is not ordered. But in an order on an interlocutory motion, such as a motion for partial summary judgment, the language is ambiguous. It may mean only that the relief requested *in the motion* -- not all the relief requested by anyone in the case -- and not granted by the order is denied. The clause may also have no intended meaning at all, having been inserted for no other reason

than that it appears in a form book or resides on a word processor. For whatever reason, the standard Mother Hubbard clause is used in interlocutory orders so frequently that it cannot be taken as any indication of finality.

As we have already explained, an order can be a final judgment for appeal purposes even though it does not purport to be if it actually disposes of all claims still pending in the case. Thus, an order that grants a motion for partial summary judgment is final if in fact it disposes of the only remaining issue and party in the case, even [**43]   if the order does not say that it is final, indeed, even if it says it is not final. (Again, we do not consider here the various kinds of cases in which there may be more than one final judgment for purposes of appeal.) Also, an order can be final and appealable when it should not be. For example, an order granting a motion for summary judgment that addressed all of the plaintiff's claims when it was filed but did not address claims timely added by amendment after the motion was filed may state unequivocally that final judgment is rendered that the plaintiff take nothing by his suit. Granting more relief than the movant is entitled to makes the order reversible, but not interlocutory. [83]

> [83]   *See Young v. Hodde, 682 S.W.2d 236, 237 (Tex. 1984)* (per curiam); *Chessher v. Southwestern Bell Tel. Co., 658 S.W.2d 563, 564 (Tex. 1983)* (per curiam); *Schlipf v. Exxon Corp., 644 S.W.2d 453 (Tex. 1983)* (per curiam).

While the present problems in determining whether an [**44]   order is a final judgment should be lessened significantly by denying the standard Mother Hubbard clause of any indicia of finality in any order not issued after a conventional trial, the difficulty in determining what does make an order final and appealable remains. One solution would be stricter requirements for the form of a final judgment. *Rule 58 of the Federal Rules of Civil Procedure* takes this approach by requiring that to be final a judgment must "be set forth on a separate document" and be entered by the clerk on the civil docket. The separate-document requirement was added to the rule in 1963 to remove uncertainty over whether a trial judge's opinion or order constituted a final judgment. [84] *Rule 58*, with its dual requirements, "'enhances certainty by insisting on formality.'" [85] The United States Supreme Court has insisted on strict compliance with the rule, quoting Professor Moore's observation that the rule

"'would be subject to criticism for its formalism were it not for the fact that something like this was needed to make certain when a judgment becomes effective, which has a most important bearing, inter alia, on the time for appeal and the making of post-judgment

[**45] motions that go to the finality of the judgment [*205] for purposes of appeal.'" [86]

> 84    *Bankers Trust Co. v. Mallis, 435 U.S. 381, 384-385, 55 L. Ed. 2d 357, 98 S. Ct. 1117 (1978).*
> 85    CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2781 (2d ed. 1995) (quoting Benjamin Kaplan, *Amendments of the Federal Rules of Civil Procedure, 1961-1963,* 77 HARV. L. REV. 801, 831 (1964)).
> 86    *United States v. Indrelunas, 411 U.S. 216, 220-221, 36 L. Ed. 2d 202, 93 S. Ct. 1562 (1973).*

The one recognized exception is a party's failure to object. [87]

> 87    *Bankers Trust, 435 U.S. at 387-388.*

The price of certainty, however, as federal rulemakers have come to realize, is that in many cases the failure to comply with *Rule 58* means that no final [**46] judgment was ever rendered, and the time for appeal remains open. [88] A proposed amendment to *Rule 58* would provide that if final judgment is not rendered on a separate document, it is deemed rendered on the sixtieth day after the clerk's entry on the civil docket. [89] While this proposal helps ensure that every case will be closed, it also makes it more likely that a party will not be aware that the time for appeal is running -- the problem the 1963 amendment to *Rule 58* was meant to cure -- because he does not know of the clerk's entry on the civil docket.

> 88    COMMITTEE ON RULES OF PRACTICE & PROCEDURE OF THE JUDICIAL CONFERENCE OF THE UNITED STATES, PRELIMINARY DRAFT OF PROPOSED AMENDMENTS TO THE FEDERAL RULES OF APPELLATE, BANKRUPTCY, CIVIL, AND CRIMINAL PROCEDURE 100-114 (Aug. 2000).
> 89    Id.

There may be other solutions to these dilemmas which could be implemented by changes in our own rules, and this Court's Advisory Committee is presently studying the issues. But we do not write rules by opinion. [90] [**47] We must decide what Texas law requires for finality given the present rules.

> 90    *State Dept. of Highways & Pub. Transp. v. Payne, 838 S.W.2d 235, 241 (Tex. 1992)*; *Alvarado v. Farah Mfg. Co., 830 S.W.2d 911, 915 (Tex. 1992).*

In the past we have tried to ensure that the right to appeal is not lost by an overly technical application of the law. [91] Fundamentally, this principle should guide in determining whether an order is final. Simplicity and certainty in appellate procedure are nowhere more important than in determining the time for perfecting appeal. From the cases we have reviewed here, we conclude that when there has not been a conventional trial on the merits, an order or judgment is not final for purposes of appeal unless it actually disposes of every pending claim and party or unless it clearly and unequivocally states that it finally disposes of all claims and all parties. An order that adjudicates only the plaintiff's claims against the defendant does not adjudicate [**48] a counterclaim, cross-claim, or third party claim, nor does an order adjudicating claims like the latter dispose of the plaintiff's claims. An order that disposes of claims by only one of multiple plaintiffs or against one of multiple defendants does not adjudicate claims by or against other parties. An order does not dispose of all claims and all parties merely because it is entitled "final", or because the word "final" appears elsewhere in the order, or even because it awards costs. Nor does an order completely dispose of a case merely because it states that it is appealable, since even interlocutory orders may sometimes be appealable. Rather, there must be some other clear indication that the trial court intended the order to completely dispose of the entire case. Language that the plaintiff take nothing by his claims in the case, or that the case is dismissed, shows finality if there are no other claims by other parties; but language that "plaintiff take nothing by his claims against X" when there is more than one defendant or other parties in the case does not indicate finality.

> 91    *Verburgt v. Dorner, 959 S.W.2d 615, 616-617 (Tex. 1997).*

[**49] To determine whether an order disposes of all pending claims and parties, it may of course be necessary for the appellate court [*206] to look to the record in the case. Thus, in the example just given, if the record reveals that there is only one plaintiff and only one defendant, X, the order is final, but if the record reveals the existence of parties or claims not mentioned in the order, the order is not final. On the other hand, an order that expressly disposes of the entire case is not interlocutory merely because the record fails to show an adequate motion or other legal basis for the disposition. The record may help illumine whether an order is made final by its own language, so that an order that all parties appear to have treated as final may be final despite some vagueness in the order itself, while an order that some party should not reasonably have regarded as final may not be final despite language that might indicate otherwise.

One may argue after *Aldridge* and *Mafrige* that it is perilous to suggest any particular language that will make a judgment final and appealable because that language can then be inserted in orders intended to be interlocutory. But to leave in [**50] doubt the degree of clarity required for finality creates its own problems. The Mother Hubbard clause proved to give no indication of finality not just because it found its way into every kind of order, but because it was inherently ambiguous, as we have explained. A statement like, "This judgment finally disposes of all parties and all claims and is appealable", would leave no doubt about the court's intention. An order must be read in light of the importance of preserving a party's right to appeal. If the appellate court is uncertain about the intent of the order, it can abate the appeal to permit clarification by the trial court. [92] But if the language of the order is clear and unequivocal, it must be given effect despite any other indications that one or more parties did not intend for the judgment to be final. An express adjudication of all parties and claims in a case is not interlocutory merely because the record does not afford a legal basis for the adjudication. In those circumstances, the order must be appealed and reversed.

[92] *TEX. R. APP. P. 27.2.*

[**51] **B**

Nothing in the order in *Lehmann* indicates that it is a final judgment, and it did not dispose of all pending claims and parties. The order in *Harris* states that plaintiffs take nothing as to "one of the defendants", but that language does not suggest that all of the plaintiffs' claims were denied. As the order recites and as the record demonstrates, the defendant named in the order was not the only defendant remaining in the case. Thus, we conclude that a final and appealable judgment was not rendered in either case.

We are concerned that in neither case were the non-movants provided a copy of the court's signed order but were merely sent notice by postcard that an order had been signed. The Rules of Civil Procedure do not require clerks to send all parties copies of all orders, only final orders. [93] Nevertheless, the practice of courts in some counties is to require that a party seeking an order provide copies and addressed, postage-paid envelopes for all other parties. The Court's Advisory Committee should consider whether the rules should require that all parties be given copies of all orders signed in a case.

[93] *See TEX. R. CIV. P. 306a(3).*

[**52] **IV**

We must respond briefly to the concurring opinion. It would hold that no "type of conclusory finality language can ever be read to grant more relief than requested by the parties." [94] This goes too far. The legitimate problem with Mother Hubbard clauses, which we failed to appreciate in *Mafrige*, is that they are ambiguous: one cannot be sure whether the denial of all relief other than what has been expressly [*207] granted is limited to relief requested in a motion or extends to all relief requested in the litigation. But it is a long way from the now well-established fact that Mother Hubbard clauses can understandably be misread to the concurring opinion's conclusion that clear language should be given no meaning. We require certainty for finality, but we cannot say that certainty is impossible.

[94] *Post, 39 S.W.3d 191, 2001 Tex. LEXIS 6, *89.*

The concurring opinion claims as authority for its position pre-*Mafrige* law, but before *Mafrige*, this Court repeatedly held that general language in a summary judgment finally disposed [**53] of the litigation even though no party had requested final relief. In *Schlipf v. Exxon Corp.* we held that an order granting the plaintiffs' motion for summary judgment on one of its claims and generally denying all other relief was final, even though no defendant had moved for summary judgment or requested the denial of any relief. [95] Similarly, in *Chessher v. Southwestern Bell Telephone Co.* we held that a summary judgment generally disposing of all four claims asserted by the plaintiff was final, even though the defendant moved for summary judgment on only one of the claims. [96] Again in *Young v. Hodde*, we agreed that a Mother Hubbard clause in an order granting summary judgment for the plaintiff disposed of a defendant's counterclaim, even though the plaintiff's motion had addressed only his own claims and not the counterclaim. [97] It has simply never been the law in Texas that a summary judgment generally disposing of all claims and parties is nevertheless interlocutory merely because rendition of a final judgment was improper. In essence, the concurring opinion's position is that a trial court has no jurisdiction to grant more relief than is requested, and that if [**54] it does so, its action is absolutely void. We do not agree that a court's *power* to act, as distinct from the proper exercise of that power, is defined by a party's request for relief.

[95] *644 S.W.2d 453 (Tex. 1982)* (per curiam).
[96] *658 S.W.2d 563 (Tex. 1983)* (per curiam). Although our opinion did not quote the trial court's order, an examination of the record in the case reveals that the order recited that the court had considered the defendant's motion for summary judgment, the plaintiff's responses, and the defendant's reply, and had notified the parties that "it had determined to grant the defendant's mo-

tion for summary judgment." The decretal portion of the order stated "that plaintiff, Paul G. Chessher, take nothing of and from defendant, Southwestern Bell Telephone Company. Costs of court are hereby taxed against plaintiff, Paul G. Chessher."

97   *Young v. Hodde, 682 S.W.2d 236, 236-237 (Tex. 1984)* (per curiam), *writ ref'd n.r.e., 672 S.W.2d 45* (Tex. App.--Houston [14th Dist.]).

[**55]  The concurring opinion acknowledges that its position may result in more appeals being taken from orders that look final but are really interlocutory, but it argues that appellate courts can easily deal with such problems by abating appeals to allow trial courts to clarify their orders. What the concurring opinion ignores is that trial courts and parties will assume that orders with general dispositive language mean what they say, only to learn months or years after an appeal should have been taken that no final judgment was ever rendered. JUSTICE BAKER would insist that every order granting summary judgment specifically identify: (1) the claims each party brought; (2) the grounds upon which each party seeks summary judgment; (3) each ground upon which the trial court granted summary judgment; and (4) each ground upon which the trial court denied summary judgment.

Any order that failed to meet these requirements would be interlocutory, according to JUSTICE BAKER, "*regardless* of how clearly it states that it is a final judgment disposing of all parties and issues." [98] The very real risk of such a rule is that thousands of judgments intended to be final would remain interlocutory [**56]  because they did not comply with all of these requirements. [*208]  This is precisely what has happened in the federal system, as we have already explained, even though the federal rules impose far fewer requirements on final judgments than the concurring opinion would.

> 98   *Post, 39 S.W.3d 191, 2001 Tex. LEXIS 6,* *94 (emphasis in original).

* * * * *

For the reasons we have explained, the judgments of the court of appeals in these cases are reversed, and the cases are remanded to that court for further proceedings.

Nathan L. Hecht

Justice

Opinion delivered: February 1, 2001

**CONCUR BY:** James A. Baker

**CONCUR**

**Argued January 26, 2000**

JUSTICE BAKER filed a concurring opinion in which JUSTICE ENOCH joined, except for Part IV and the discussion of *Inglish* and *Bandera*, and in which JUSTICE HANKINSON joined, except Part IV.

The Court granted these petitions in *Lehmann* and *Harris* to solve the *Mafrige* problems. The Court fails to do so. Thus, while I concur in the result the Court reaches, I cannot agree with the [**57]  reasoning it uses to reach that result.

In March 1993, we granted writ in *Mafrige v. Ross* to resolve the inherent problems in determining finality of summary judgments for purposes of appeal.  *866 S.W.2d 590 (Tex. 1993)*. There we recognized that determining finality had "been a recurring and nagging problem throughout the judicial history of this state." *Mafrige, 866 S.W.2d 590*. Thus, in a major departure from our prior jurisprudence, we created a new rule providing: "If a summary judgment order appears to be final, as evidenced by the inclusion of language purporting to dispose of all claims or parties, the judgment should be treated as final for purposes of appeal." *Mafrige, 866 S.W.2d 590 at 592*.

Despite the certainty we intended this bright-line rule to provide, the last seven years have proved that the *Mafrige* rule has created more problems than it solved--confusing the lower courts, operating as a trap for unwary litigants, and consistently bringing about arguably unjust and oftentimes absurd results. So, in November 1999, we granted the petitions in these cases to resolve the *Mafrige* problems. Inexplicably, the Court [**58]  begins its opinion by chronicling the evolution of the rules and presumptions governing finality of orders following a conventional trial on the merits from the middle of the last century to the present. [1] Then, with very little discussion of the problems *Mafrige* and its progeny created in determining summary judgment finality, the Court concludes that the solution is to maintain the principle of the *Mafrige* legal fiction--with only slight modification. However, rather than solve, the Court merely perpetuates the problems *Mafrige* created. The cases grappling to apply *Mafrige* illustrate that there is but one real solution. We should return to the principle we announced in *Teer v. Duddlesten*--that a Mother Hubbard clause simply "has no place in a partial summary judgment," and that a summary judgment order is not an appealable, final judgment unless it actually disposes of all parties and issues.  *664 S.W.2d 702, 703-04 (Tex. 1984)*. The Court states: "We do not write rules by opinion." *39 S.W.3d 191, 2001 Tex. LEXIS 6, *46*. The Court is right; we should not establish rules by judicial fiat. We should not have done so in *Mafrige* and we

should not have perpetuated the [**59] *Mafrige* problems with *Inglish* and *Bandera*. Any new summary judgment finality rule should be achieved by this Court's formally promulgating a new procedure rule. The Court should recognize this, overrule *Mafrige* and its progeny, and await a recommendation by [*209] our rules advisory committee. Because the Court refuses to take this path, I concur in the judgment only.

> 1   These rules and presumptions are irrelevant to the issues before the Court today. As we have repeatedly admonished--in *Mafrige*, in *Aldridge*, and even in the Court's opinion today--the rules governing finality after a conventional trial are wholly inappropriate for determining finality of summary judgments. *See Mafrige, 866 S.W.2d 590 at 592*; *North E. Indep. Sch. Dist. v. Aldridge, 400 S.W.2d 893, 897-98 (Tex. 1966)*; *Lehmann,    S.W.3d    , 1998 Tex. App. LEXIS 4657*.

## I. *MAFRIGE* AND ITS PROGENY

Before *Mafrige*, courts determined summary judgment finality by reviewing the live pleadings, the summary judgment [**60] motion, and the summary judgment order. *Harris County v. Nash, 22 S.W.3d 46, 49-50 (Tex. App.--Houston [14th Dist.] 2000, pet. filed)*; *Kaigler v. General Elec. Ins. Mortgage Corp., 961 S.W.2d 273, 275 (Tex. App.--Houston [1st Dist.] 1997, no pet.)*. A summary judgment was deemed final and appealable only if it expressly disposed of all parties and issues or if it was severed from the remainder of the suit. *Pan Am. Petroleum Corp. v. Texas Pac. Coal & Oil Co., 159 Tex. 550, 324 S.W.2d 200, 200 (Tex. 1959)* ("[A] summary judgment which does not dispose of all parties and issues in the pending suit is interlocutory and not appealable unless a severance of that phase of the case is ordered by the trial court.").

With *Mafrige*, this Court attempted to simplify this process by holding that the "magic language" of a Mother Hubbard or similar finality clause conclusively transforms an interlocutory summary judgment into a final, appealable order. *Mafrige, 866 S.W.2d at 592*. We have twice revisited *Mafrige* to clarify its scope. *See Inglish v. Union State Bank, 945 S.W.2d 810, 811 (Tex. 1997)* (holding [**61] that the *Mafrige* rule applies even when neither party appeals the erroneous summary judgment); *Bandera Elec. Coop., Inc. v. Gilchrist, 946 S.W.2d 336, 337 (Tex. 1997)* (explaining that when the *Mafrige* rule renders a partial summary judgment final for purposes of appeal, the appellate court should reverse and remand only the erroneously disposed claims). Unfortunately, *Mafrige* did little towards alleviating the lower courts' confusion--and *Inglish* and *Bandera* only compounded it. The Court's opinion suffers the same problem. Namely,

its slightly-modified *Mafrige* rule falls far short of remedying the myriad of problems the *Mafrige* fiction and its progeny created.

## A. FINALITY LANGUAGE

One source of confusion under *Mafrige* has been uncertainty about what language triggers its finality rule. In *Mafrige*, we held that a partial summary judgment is treated as final for appeal purposes when the order contains a Mother Hubbard clause stating that "all relief not expressly granted is denied" or other language "purporting to dispose of all claims or parties." *866 S.W.2d at 590 & n.1*, 592. We further clarified that [**62] "other" finality language includes "a statement that the summary judgment is granted as to all claims asserted by the plaintiff, or a statement that the plaintiff takes nothing against defendant." *Mafrige, 866 S.W.2d at 590 n.1.*; *see also Inglish, 945 S.W.2d at 811* (holding statement that "defendant is entitled to summary judgment in this case," and that plaintiff should "take nothing on account of his lawsuit" rendered partial summary judgment final for purposes of appeal); *Springer v. Spruiell, 866 S.W.2d 592, 593 (Tex. 1993)* (holding that summary judgment order reciting plaintiffs "have and recover nothing" purported to dispose of all parties and issues).

Despite these examples, some lower courts have refused to hold orders containing this exact language final for purposes of appeal. *E.g., Carey v. Dimidjian, 982 S.W.2d 556, 558 (Tex. App.--Eastland 1998, no pet.)* (holding that order containing Mother Hubbard clause was not final and appealable where the motion was labeled "Partial Summary Judgment" and the parties treated the order as interlocutory); *Hinojosa v. Hinojosa, 866 S.W.2d 67, 69-70* [**63] *(Tex. App.--El Paso 1993, no writ)* (holding that order containing Mother Hubbard clause did not render judgment final because it did not dispose of counterclaim). Other courts have struggled with what "other" language purports to render a judgment final--often reaching opposite conclusions about identical clauses. *Compare* [*210] *Postive Feed, Inc. v. Guthmann, 4 S.W.3d 879, 881 (Tex. App.--Houston [1st Dist.] 1999, no pet.)* (holding that order granting defendant's summary judgment "in all things" purported to be final), *with St. Paul Ins. Co. v. Mefford, 1998 Tex. App. LEXIS 7388*, No. 05-96-01581- CV (Tex. App.--Dallas Nov. 30, 1998, no pet.) (not designated for publication), 1998 WL 821537, at *2 [2] (holding that order granting defendant's summary judgment "in all things" did not purport to be final).

> 2   The unpublished opinions cited in Part I are cited only as examples, not as precedent. *See TEX. R. APP. P. 47.7.*

While the Court recognizes that the "routine inclusion of [a Mother Hubbard clause] in [**64] otherwise plainly interlocutory orders and its ambiguity in many contexts have rendered it inapt for determining finality," *39 S.W.3d 191, 2001 Tex. LEXIS 6*, *2, it ignores the obvious problems courts have faced interpreting *other* language "purporting to dispose of all claims or parties." *Mafrige, 866 S.W.2d at 592*. In fact, despite the Court's extensive analysis and discussion, its holding represents but a minor departure from *Mafrige*.

Its modified rule has two parts. The first represents no change in Texas law. It simply reiterates that a summary judgment order that *actually* disposes of all parties and issues is final for purposes of appeal. *39 S.W.3d 191, 2001 Tex. LEXIS 6*, *10. The second part provides that a Mother Hubbard clause is no longer enough to invoke the fiction that an otherwise interlocutory order is treated as final for purposes of appeal. Instead, to invoke the *Mafrige* fiction, an interlocutory order must now "clearly and unequivocally state[] that it finally disposes of all claims and all parties." *39 S.W.3d 191, 2001 Tex. LEXIS 6*, *47. The Court further explains that the statements "plaintiff take nothing by his claims in the case" and "this judgment finally disposes of all parties [**65] and all claims and is appealable" clearly and unequivocally state that an order is final. *39 S.W.3d 191, 2001 Tex. LEXIS 6*, *50. In essence, the Court's rule does no more than replace one set of magic language with another--while ignoring the reality that courts will likely face the same challenges deciding what language "clearly and unequivocally states" that an order is final, *39 S.W.3d 191, 2001 Tex. LEXIS 6*, *47, as they did deciding what other language clearly "purports to dispose of all claims or parties" under *Mafrige. 866 S.W.2d at 592*.

## B. OMITTED PARTIES

Applying *Mafrige* to omitted parties, like those in both *Lehmann* and *Harris*, has also troubled the lower courts. Specifically, they have struggled with deciding when finality language operates to render a summary judgment final against omitted parties. This issue often surfaces when both the summary judgment motion *and* the resulting order omit any specific reference to one or more parties. [3] In this situation, several courts have held that *Mafrige* applies, reasoning that issues and parties are co-extensive and thus if "an order disposes of all issues in a case, then it necessarily disposes of all parties to a case, [**66] and vice versa." *Kaigler, 961 S.W.2d at 276*; *see also Lehmann v. Har-Con Corp., 988 S.W.2d 415, 416-17* (Tex. App.--Houston [14th Dist.] 1999, pet. granted); *Harper v. Newton, 910 S.W.2d 9, 12 n.1* (Tex. App.--Waco), *rev'd sub nom. on other grounds*, *Dallas County v. Harper, 913 S.W.2d 207 (Tex. 1995)*.

3    This issue also arises when a trial court expressly mentions and disposes of a party even though that party was not mentioned in the motion for summary judgment. Here, the lower courts have been more willing to apply *Mafrige* and hold that the order purports to dispose of all parties and issues. *See, e.g., Mikulich v. Perez, 915 S.W.2d 88, 91-92* (Tex. App.--San Antonio 1996, no writ).

In contrast, other courts have interpreted *Mafrige* more narrowly, reasoning that an "order that explicitly grants a summary judgment in favor of less than all the defendants *does not* clearly evidence an intent to dispose of all claims [**67] against all defendants, especially those against whom [*211] summary judgment was not sought, regardless of the inclusion of a Mother Hubbard clause." *Lowe v. Teator, 1 S.W.3d 819, 823-24* (Tex. App.--Dallas 1999, pet. filed); *see also Midkiff v. Hancock E. Tex. Sanitation, Inc., 996 S.W.2d 414, 416* (Tex. App.--Beaumont 1999, no pet.); *Vanderwiele v. Llano Trucks, Inc., 885 S.W.2d 843, 845* (Tex. App.--Austin 1994, no writ).

Here the Court summarily dismisses this omitted parties problem:

Nothing in the order in *Lehmann* indicates that it is a final judgment, and it did not dispose of all pending claims and parties. The order in *Harris* states that plaintiff take nothing as to "one of the defendants", but that language does not suggest that all of the plaintiffs' claims were denied. As the order recites and as the record demonstrates, the defendant named in the order was not the only defendant remaining in the case. Thus, we conclude that a final appealable judgment was not rendered in either case.

*39 S.W.3d 191, 2001 Tex. LEXIS 6*, *51. Despite the presence of a Mother Hubbard clause, the trial court and parties in *Lehmann* continued treating the [**68] order as interlocutory--even in the face of this Court's admonishment that a Mother Hubbard clause indicates finality. [4] *988 S.W.2d at 416*. The Court now holds that the order did not purport to be final based solely on its new rule discounting the dispositive effect of Mother Hubbard clauses.

4    In fact, the district clerk sent all the parties (including those omitted from the summary judgment order) a postcard indicating that an "Order for Interlocutory Summary Judgment" had been signed. *Lehmann, 988 S.W.2d at 416*.

However, the Court's resolution merely sidesteps the real problem. What happens in the next case when, on facts identical to *Lehmann*, a trial court signs an interloc-

utory summary judgment with the Court's new magic language rather than a Mother Hubbard clause? We are right back where we started. Substituting one magic phrase for another leads nowhere.

The reality is simply that omitted parties oftentimes do not believe that a summary judgment order that they have [**69] not seen, that does not mention them, and that results from a hearing in which they did not participate will operate to dispose of them or their claims. But, under the Court's standard, if these parties do not perfect a timely appeal from the erroneous judgment, their right to appeal is forever lost. This result elevates form over substance and hinders parties' rights to have the merits of their claims considered. *See, e.g., Rodriguez v. NBC Bank, 5 S.W.3d 756, 763 n.4* (Tex. App.--San Antonio 1999, no pet.) (recognizing this Court's "express goal of reaching the merits of a cause of action, instead of dismissing actions on procedural technicalities").

## C. OMITTED CROSS-CLAIMS AND COUNTER-CLAIMS

The courts of appeals have also treated omitted cross-claims and counterclaims inconsistently--despite our holding in *Bandera*. In *Bandera*, the trial court signed an order with a Mother Hubbard clause that did not mention the defendant's counterclaims. *946 S.W.2d at 337*. This Court explained that "because the order contained a Mother Hubbard clause denying all other relief, it also purported to dispose of [the defendant's] counterclaims." *Bandera, 946 S.W.2d at 337*. [**70] But several courts have refused to apply *Mafrige* in this situation, maintaining that a summary judgment that does not mention counterclaims or cross-claims cannot purport to be final--regardless of whether it contains finality language. E.g., *Sommers v. Concepcion, 20 S.W.3d 27, 33* (Tex. App.--Houston [14th Dist.] 2000, pet. denied); *Hervey v. Flores, 975 S.W.2d 21, 25* (Tex. App.--El Paso 1998, pet. denied); *cf. Coleman Cattle Co., Inc. v. Carpentier, 10 S.W.3d 430, 433 n.2* (Tex. App.--Beaumont 2000, no pet.). Other courts have followed *Bandera*'s mandate, holding that finality language--such as "plaintiff takes nothing"--renders [*212] a judgment final for appeal purposes, despite omission of any reference to defendant's counterclaims. *In re Monroe, 2000 Tex. App. LEXIS 2159*, No. 05-99-01758- CV (Tex. App.--Dallas Mar. 31, 2000, orig. proceeding) (not designated for publication), 2000 WL 378519, at *1-2; *see also Kaigler, 961 S.W.2d at 275-76*.

The Court's rule does not provide a satisfactory remedy for this situation either. The Court states:

An order that adjudicates only the plaintiff's claims against the defendant does [**71] not adjudicate a counterclaim, cross-claim, or third party claim, nor does

an order adjudicating claims like the latter dispose of the plaintiff's claims. An order that disposes of claims by only one of multiple plaintiffs or against one of multiple defendants does not adjudicate claims by or against other parties. An order does not dispose of all claims and all parties merely because it is entitled "final," or because the word "final" appears elsewhere in the order, or even because it awards costs. Nor does an order completely dispose of a case merely because it states that it is appealable, since even interlocutory orders may sometimes be appealable. Rather, there must be some other clear indication that the trial court intended the order to completely dispose of the entire case.

*39 S.W.3d 191, 2001 Tex. LEXIS 6*, *47-48.

Under its modified finality rule, the lower courts' disagreement in this area will continue because too many questions are left unanswered. For example, should a "final" summary judgment order stating that defendant is granted summary judgment "in all things" dispose of a cross-claim by another defendant as well as the claim by the plaintiff that brought the original claim? In this [**72] situation, there is no doubt that the order is unambiguous. However, it is likewise clear, but not from the order, that the third party's claim against the defendant was never considered. Should an order granting summary judgment for a plaintiff that recites it is a final and appealable order be final for counterclaims not mentioned in the motion or order? The order unequivocally states that it is a final, appealable order. Nonetheless there is a counterclaim that has not been considered. The Court states that a summary judgment granted for a plaintiff "does not adjudicate a counterclaim" and then goes on to say that to make the order final there must be "some other clear indication that the trial court intended the order to completely dispose of the entire case." *39 S.W.3d 191, 2001 Tex. LEXIS 6*, *47-48. In the example above, does the additional statement that "this is a final, appealable order" provide this "other clear indication"? These very issues are repeatedly raised in the courts of appeals, and the Court's modified rule simply does not resolve them.

## D. TRIAL COURTS' AND PARTIES' INTENT

Differing philosophies about the effect the trial courts' and parties' intent should have on how [**73] *Mafrige* applies has created the most confusion and inconsistency. The courts of appeals have taken three approaches. Some courts apply a bright-line test, holding that a Mother Hubbard clause or other finality language *always* renders an order final for appeal purposes, regardless of any evidence of contrary intent. *E.g., Preston v. American Eagle Ins. Co., 948 S.W.2d 18, 20-21* & n.1 (Tex. App.--Dallas 1997, no writ) (holding that summary

judgment purported to be final despite fact it was entitled "partial summary judgment"); *cf. In re Cobos, 994 S.W.2d 313, 315* (Tex. App.--Corpus Christi 1999, orig. proceeding) ("As *Mafrige* and *Inglish* make clear, the intent of the trial court is not the controlling consideration in determining whether a judgment is final."). Other courts modify this approach, looking only within the four corners of the order and giving effect to any evidence of contrary intent found there. *E.g., Rodriguez, 5 S.W.3d at 763-64* (Tex. App.--San Antonio 1999, no pet.) ("Looking within the four corners of the summary judgment order, the plain language of the [*213] Mother Hubbard clause did not, and could not, [**74] purport to grant or deny any more relief than the relief which [the defendant] sought."); *Midkiff, 996 S.W.2d at 416* (looking to order "as a whole" to conclude that summary judgment order containing Mother Hubbard clause did not purport to be final).

Finally, despite our holding in *Inglish* that the trial court's intent is irrelevant in this context, other courts still refuse to apply *Mafrige* if there is evidence of contrary intent *anywhere* in the record. This usually occurs when the parties and court treat an order as interlocutory by continuing with the litigation rather than appealing the erroneous order. *E.g., Lowe, 1 S.W.3d at 823-24* (holding that summary judgment could not be final where the record reflected that there were parties who did not participate in the summary judgment proceeding); *Carey, 982 S.W.2d at 558* (relying, in part, on court's and parties' treatment of order containing Mother Hubbard clause as interlocutory to conclude judgment was not final).

The Court's solution to this problem is as confusing as the rule it seeks to supplant. It appears to reject the bright-line approach *Mafrige* espouses [**75] and instead adopt a rule combining the second and third approaches. First, the Court notes that an order is final for appeal purposes if it "unequivocally states that it finally disposes of all parties and all claims and is appealable." *39 S.W.3d 191, 2001 Tex. LEXIS 6, *47.* It also explains that "if the language of the order is clear and unequivocal, it must be given effect despite any other indications that one or more parties did not intend for the judgment to be final." *39 S.W.3d 191, 2001 Tex. LEXIS 6, *50.* From these statements, the Court's new rule walks and talks a lot like a bright-line *Mafrige* rule, with magic language establishing finality.

However, the Court also states that "to determine whether an order disposes of all pending claims and parties, it may of course be necessary for the appellate court to look to the record in the case." *39 S.W.3d 191, 2001 Tex. LEXIS 6, *49.* This sounds more like a pre-*Mafrige* rule, where a court must look to the record and the order to determine if an order actually disposes of all pending parties and issues.

Because of the lower courts' confusion and disagreement about the role of intent in determining finality, I am convinced that the Court has not provided a workable rule that clearly [**76] defines that role as it applies to determining summary judgment finality.

## E. APPLYING *MAFRIGE* TO NON-SUMMARY JUDGMENT ORDERS

Finally, the question of whether *Mafrige* applies outside the summary judgment context has confused the lower courts. Courts of appeals have applied *Mafrige* to a plea to the jurisdiction, *Webb v. HCM Mgmt. Corp., 1998 Tex. App. LEXIS 372*, No. 07-96-0369- CV (Tex. App.--Amarillo Jan. 12, 1998, pet. denied) (not designated for publication) 1998 WL 16033, at *1; an agreed judgment, *In re Cobos, 994 S.W.2d at 315-16*; a directed verdict, *e.g., Polley v. Odom, 957 S.W.2d 932, 943* (Tex. App.--Waco 1997, judgm't vacated); and a severance order, *Harris County Flood Control Dist. v. Adam, 988 S.W.2d 423, 427* (Tex. App.--Houston [1st Dist.] 1999, pet. filed). In contrast, at least one court has declined to apply *Mafrige* to a dismissal for want of jurisdiction. *In re Tejas, 1998 Tex. App. LEXIS 4405*, Nos. 01-98-00688-CV, 01-98-00689-CV, 01-98-00690-CV (Tex. App.--Houston [1st Dist.] July 13, 1998, orig. proceeding) (not designated for publication), 1998 WL 394562, at *1 n.1. And another has expressly refused to [**77] extend *Mafrige* to any order that is not a summary judgment. *Biltmore Swim & Racquet Club Recreational Ass'n v. McAbee, 1998 Tex. App. LEXIS 4812*, No. 05-98-00252- CV (Tex. App.--Dallas Aug. 10, 1998, no pet.) (not designated for publication), 1998 WL 459819, at *1.

In *Aldridge*, this Court held that a presumption of finality exists when an order is signed following a traditional trial on the [*214] merits. *Aldridge, 400 S.W.2d at 897-98.* But we specifically noted that such a finality presumption would not be appropriate in other contexts. *Aldridge, 400 S.W.2d at 897.* Then in *Mafrige* we carved out an exception to what we had said in *Aldridge* by holding that an irrebuttable finality presumption applies to summary judgments containing a Mother Hubbard or similar finality clause. *Mafrige, 866 S.W.2d at 592.* Here again, just as we had limited *Aldridge* to conventional trials on the merits, we expressly limited *Mafrige* to summary judgments. *Mafrige, 866 S.W.2d at 591* ("The issue is whether . . . a summary judgment, which purports to be final by the inclusion of Mother Hubbard language or its equivalent, should be treated [**78] as final for purposes of appeal."). Unfortunately, several courts of appeals have erroneously applied *Maf-*

*rige* in other contexts, causing confusion over how to determine finality of various other types of orders.

*Mafrige* and its progeny *are* limited to summary judgments--*with good reason*. No good can come of interjecting additional uncertainty into (1) conventional trials on the merits, to which the majority acknowledges the *Aldridge* presumption has "proved a fairly workable" rule, *39 S.W.3d 191, 2001 Tex. LEXIS 6*, *23, or (2) numerous other types of orders, when even the majority acknowledges that "the ordinary expectation" supporting a finality presumption "simply does not exist when some form of judgment is rendered without such a trial" because "it is quite possible, perhaps even probable these days . . . that any judgment rendered prior to a full-blown trial is intended to dispose of only part of the case." *39 S.W.3d 191, 2001 Tex. LEXIS 6*, *27.

However, the Court's opinion here implicates finality of all judgments. This expansion into issues not before the Court today can only cause mischief in areas already plagued by confusion. If the Court persists in adhering to *Mafrige*'s principles, it [**79] should at least limit its holding, as we did in *Mafrige*, to summary judgements.

## II. POLICY CONSIDERATIONS

Not surprisingly, the post-*Mafrige* era has given rise to considerable analysis by courts and commentators of both the competing policies *Mafrige* implicates and suggestions for reform. A few have applauded the bright-line rule. *See Kaigler, 961 S.W.2d at 275-76* (recognizing that the rule provides harsh results, but emphasizing that uniform enforcement "encourages attentiveness to correct judgments"); Boyce, Mafrige v. Ross *and the Pitfalls of Presumptions*, APPELLATE ADVOCATE, Nov. 1997, at 7 (opining that *Mafrige* "resolved the confusion created by prior contradictory language and flatly inconsistent holdings").

However, praises have been few and far between. Criticism has been the rule and the comments call for this Court to reconsider our decision:

What began as a benign growth allowing review of unripe claims on appeal, in *Mafrige*, became a malignant cancer cutting off causes of action before trial, in *Inglish*. If it were up to me, I would lock Mother Hubbard in the cupboard and return to the rule before *Aldridge* [**80] that a judgment is final and appealable only if it expressly disposes of all parties and all claims in the case. That appellants can even cite authority for the absurd result they seek, illustrates how wrong a turn the law has taken in this area--and how strong the need to right it.

*Harris County Flood Control Dist., 988 S.W.2d at 427-28* (Taft, J., concurring in denial of rehearing en banc); *see also, e.g., Lehmann, 988 S.W.2d at 418*

("*Mafrige* is not as clear to litigants as the supreme court believes it is . . . . In short, *Mafrige* has created several problems: 1) it is catching the parties by surprise . . .;2) it exalts form over substance; and 3) in more than a few situations, it ignores common sense."); Carlson & Dunn, *Navigating* [*215] *Procedural Minefields: Nuances in Determining Finality of Judgments, Plenary Power, and Appealability*, 41 S. TEX. L. REV. 953, 971 (2000) ("Despite the appeal of the certainty provided by this bright-line rule, the reality is that still, after seven years, it continues to operate as a trap for unwary litigants, bringing about arguably unjust and oftentimes draconian results."); Swanda, *Summary* [**81] *Judgment, Mother Hubbard Clauses, and* Mafrige v. Ross, APPELLATE ADVOCATE, May 1997, at 3 (complaining that the questions *Mafrige* raises "are just as elusive" as the questions it sought to resolve).

Strong policies support our practice of adhering to settled rules of law "unless there exists the strongest reasons for change." *Benavides v. Garcia, 290 S.W. 739, 740-41* (Tex. Comm'n App. 1927, judgm't adopted). But we have also recognized the "doctrine of stare decisis does not stand as an insurmountable bar to overruling precedent." *Gutierrez v. Collins, 583 S.W.2d 312, 317 (Tex. 1979)*. "Generally, we adhere to our precedents for reasons of efficiency, fairness, and legitimacy." *Weiner v. Wasson, 900 S.W.2d 316, 320 (Tex. 1995)*. However, when adherence to a judicially-created rule of law no longer furthers these interests, and "the general interest will suffer less by such departure, than from a strict adherence," we should not hesitate to depart from a prior holding. *Benavides, 290 S.W. at 740*. The lower courts' application of *Mafrige* over the last seven years illustrates undeniably that this is just such [**82] a case.

We intended *Mafrige*, *Inglish,* and *Bandera* to provide certainty to litigants. Instead, they have bred chaos. Most disturbing is that the casebooks are now replete with examples of dismissed cases where the parties and courts clearly intended an order containing finality language to be interlocutory. [5] *E.g., Inglish, 945 S.W.2d at 811*; *In re Cobos, 994 S.W.2d at 315-16*; *Pena v. Valley Sandia, Ltd., 964 S.W.2d 297, 298-99* (Tex. App.--Corpus Christi 1998, no pet.); *Kaigler, 961 S.W.2d at 275-76*. Even the Court acknowledges:

The ordinary expectation that supports the presumption that a judgment rendered after a conventional trial on the merits will comprehend all claims simply does not exist when some form of judgment is rendered without such a trial. On the contrary, it is quite possible, perhaps even probable these days in cases involving multiple parties and claims, that any judgment rendered prior to a full-blown trial is intended to dispose of only part of the case. Accordingly, the finality of the judgment must be determined without the benefit of any presumption.

*39 S.W.3d 191, 2001 Tex. LEXIS 6*, *26-27. Because [**83] of this reality, it is difficult to understand why the Court persists in adhering to *Mafrige*'s principles.

> 5 Oftentimes in these cases litigation continues to move forward. Any error in including magic finality language in a summary judgment is not discovered until it is too late; the appellate timetable has expired and the trial court has lost plenary power to act. The litigants have forever lost their right to complain of the judgment.

The author of the Court's opinion recently opined: "Appellate procedure should not be tricky. It should be simple, it should be certain, it should make sense, and it should facilitate consideration of the parties' argument on the merits. . . ." *Lane Bank Equip. Co. v. Smith S. Equip., Inc., 10 S.W.3d 308, 314 (Tex. 2000)* (Hecht, J., concurring). This Court has repeatedly refused to adopt positions which elevate form over substance. *See, e.g., Phillips v. Beaber, 995 S.W.2d 655, 658 (Tex. 1999)*; *Nueces Canyon Consol. Indep. Sch. Dist. v. Central Educ. Agency, 917 S.W.2d 773, 775-76 (Tex. 1996).* [**84] The Court here even recognizes that "simplicity and certainty in appellate procedure are nowhere more important than in determining the time for perfecting appeal." *39 S.W.3d 191, 2001 Tex. LEXIS 6*, *47. Unfortunately though, the Court declines to embrace this opportunity [*216] to effectuate meaningful change and provide certainty for courts and litigants. Instead the Court leaves them as it found them, grappling with determining whether summary judgment orders are fictitiously made final.

## III. THE SOLUTION

The Court notes: "We do not write rules by opinion. We must decide what Texas law requires for finality, given the present rules." *39 S.W.3d 191, 2001 Tex. LEXIS 6*, *46-47. Yet, the *Mafrige* finality rule this Court created represented such a major departure from prior Texas law. In fact, but for the judicially-created *Mafrige* rule, no one would dispute that "what Texas law requires for finality" of summary judgments is an order actually disposing of all parties and issues.

Rather than simply amend the *Mafrige* finality rule and perpetuate the problems the unworkable system *Mafrige* and its progeny created, the Court should focus on shaping a real solution--one providing the desired certainty and protecting [**85] parties' right to appellate review. This requires wiping the slate clean. *Mafrige* created enough problems with its fictional finality and its holding that trial courts can use magic language to create final summary judgments by granting relief not requested. *866 S.W.2d 590 at 591-92.* In *Inglish* we com-

pounded the problem by confirming that *Mafrige* applies even when the parties continue litigating rather than appealing a partial summary judgment made final under *Mafrige*. *Inglish, 945 S.W.2d at 811.* We completed the trilogy in *Bandera*, holding that when a party appeals a summary judgment granting more relief than requested, the court of appeals should address the merits of the appeal, remanding only the part of the judgment that exceeds the relief requested in the summary judgment motion. *946 S.W.2d at 337.* Undeniably, these rules were designed to simplify summary judgment finality. But, in application, these cases only demonstrate that we should have adhered to our own admonishments that this Court simply should not make rules by opinion. *E.g., Alvarado v. Farah Mfg. Co., 830 S.W.2d 911, 915 (Tex. 1992)* (explaining that we [**86] should not revise rules by opinion); *see also Verburgt v. Dorner, 959 S.W.2d 615, 619 (Tex. 1997)* (Baker, J., dissenting) (noting that this Court's jurisprudence forbids rule amendments by judicial fiat).

Thus, we should overrule *Mafrige*, *Inglish*, and *Bandera*--to the extent they created new rules by judicial fiat--and instead tackle the problems of summary judgment finality through our rulemaking process. Accordingly, we should return to our prior position that a Mother Hubbard clause (or other magic language) has no place in any summary judgment order--final or partial--and that a trial court may not *sua sponte* grant more relief than the parties request simply by adding conclusory finality language to a summary judgment order. Further, a summary judgment should be entitled to no presumption at all about whether it is final.

Returning to the law as it was pre-*Mafrige* requires determining the state of the law before *Mafrige*. *Mafrige* actually held two things: (1) that "'Mother Hubbard' language or its equivalent in an order granting summary judgment makes an otherwise partial summary judgment final for appeal purposes; " and (2) that if [**87] a summary judgment "grants more relief than requested, it should be reversed and remanded, but not dismissed." *866 S.W.2d 590, 592.*

Before *Mafrige*, this first holding was not the law. In *Teer v. Duddlesten* we held that:

There is no presumption in partial summary judgments that the judgment was intended to make an adjudication about all parties and issues. The Mother Hubbard clause that "all relief not expressly granted is denied" has no place in a partial summary judgment hearing. The concepts of a partial summary judgment on the one hand, and a judgment [*217] that is presumed to determine all issues and facts on the other, are inconsistent.

*664 S.W.2d at 704*. In *Mafrige* we recognized this earlier statement in *Teer*, but rejected it and held that finality language could render a partial summary judgment final for purposes of appeal. *866 S.W.2d 590 at 592*.

*Mafrige*'s second holding--that a summary judgment granting more relief than requested should be reversed and remanded, but not dismissed--does not appear to be an entirely new rule. In both *Teer* and *Chessher*, another pre-*Mafrige* case, we reversed and remanded (rather [**88] than dismissed) summary judgment orders after determining that they were interlocutory because they granted more relief than requested. *See Teer, 664 S.W.2d 702 at 705*; *Chessher v. Southwestern Bell Tel. Co., 658 S.W.2d 563, 564 (Tex. 1983). But see Ross v. Arkwright Mut. Ins. Co., 834 S.W.2d 385, 393* (Tex. App.--Houston [14th Dist.] 1992) (opining that these cases are "in direct contravention of *TEX. R. CIV. P. 166a(c)*" and discussing disagreement in the courts over whether summary judgment orders granting more relief than requested were interlocutory or appealable, but erroneous, judgments), *rev'd sub. nom. Mafrige, 866 S.W.2d at 590*. Thus, while the courts were not entirely in agreement, it appears we had already established the rule that a summary judgment order granting more relief than requested is not interlocutory--it is simply erroneous. For this reason, I agree with the Court that if an order actually does dispose of each claim and every party, it is an appealable judgment, even if it grants more relief than requested. This is consistent with the long-standing rule that if an order *actually* disposes of [**89] all parties and issues, it is final for appeal purposes. *E.g., Houston Health Clubs, Inc. v. First Court of Appeals, 722 S.W.2d 692, 693 (Tex. 1986)*. However, consistent with my view that we should overrule *Mafrige* and its progeny and recognize no presumption *for or against* finality, I do not believe any type of conclusory finality language can ever be read to grant more relief than requested by the parties. [6]

> 6   It would *not* be enough for a court to generally state "plaintiff takes nothing," "defendant is granted summary judgment in all things," or "this is a final appealable judgment." Conclusory finality clauses (i.e. "magic language") do not indicate that a trial court *actually* granted relief *not requested* for or against parties or issues are *not mentioned* in the order.

We should determine summary judgment finality by comparing the live pleadings and the summary judgment order. A summary judgment order should only be final if it matches the contents of the pleadings. [**90] And, as was the law before *Bandera*, a court of appeals should summarily reverse any summary judgment granting more

relief than requested, without any *sua sponte* severance of some issues while others are remanded.

Wiping the slate clean by overruling the rules created in *Mafrige*, *Inglish*, and *Bandera* while we study the best method of tackling summary judgment finality through our formal rule-promulgation process is the better solution for several reasons. First, this approach strikes a more reasonable balance between the competing policies of promoting certainty and preserving parties' rights to appellate review. And, under this approach, the trial court and the parties drafting summary judgment orders would have the burden, and *the incentive*, to ensure that the pleadings, summary judgment motions, and the summary judgment orders match. If a premature appeal is taken, the court of appeals need only compare the pleadings, motions, and order. If the order does not dispose of parties or issues raised in the pleadings, then it is interlocutory and the court must dismiss the appeal. [7] If the order explicitly [*218] disposes of issues and parties not raised in the motion, [**91] it is erroneous and the court must reverse the entire order.

> 7   Of course, this procedure would not apply if the order fell within the category of cases for which there can be more than one final judgment, or the category of orders for which a court of appeals has been granted statutory authority to review interlocutory orders.

Most importantly, this approach alters the consequences of poorly-drafted orders. Specifically, the consequence flowing from a poorly drafted order becomes the risk of a *premature* appeal rather than an *untimely* one. This eliminates the greatest risk *Mafrige* created--that an interlocutory order, contrary to the trial court's and (at least one party's) intent, will be fictitiously made final, starting the appellate and plenary power timetables even while the litigation continues. No one would argue that conducting a trial after the trial court's plenary power has expired is not a waste of judicial resources. Moreover, because overruling *Bandera* eliminates the benefits of [**92] a premature appeal, taking such an appeal would not be a cost-efficient mistake for litigants to make, increasing the incentive to ensure orders are more clearly drafted. If a premature appeal is nonetheless taken, it would not create an onerous burden for the appellate court. The opposing party need only file a brief pointing out that the pleadings, motion, and order do not match, leading to automatic remand or dismissal.

No one disputes that rules governing summary judgment finality could be helpful to the bench and bar and facilitate judicial efficiency. But history, as well as our own precedent, has shown that judicial opinions are not the place to achieve this. Any attempt to adhere to the *Mafrige* principle or retain parts of it while rejecting

others can only lead to more problems. Instead, this Court should overrule *Mafrige* and its progeny and start anew. As the Court even notes, our rules advisory committee is currently studying summary judgment finality. *39 S.W.3d 191, 2001 Tex. LEXIS 6*, *28. Retaining parts of *Mafrige*, *Inglish*, *Bandera* as modified by the Court's less-than-clear opinion today--only to follow with promulgation of a concurrent finality rule--will only lead [**93] to more confusion.

I agree that the cases here should be reversed. But, because the Court refuses to fix the problems its judicial rulemaking in *Mafrige* caused and allow our rulemaking process to work, I cannot join the Court's opinion.

## IV. RECOMMENDATION

I recognize that the Supreme Court of Texas Advisory Committee on Rules of Civil Procedure has been studying the problem of summary judgment finality. It has proposed an amendment to *Rule 166a of the Texas Rules of Civil Procedure*:

(j) Statement of Grounds. An order granting summary judgment must state the ground or grounds on which the motion was granted. No judgment may be affirmed on other grounds stated in the motion unless they are asserted by appellee in the appellate court as alternative grounds for affirmance.

I do not believe this proposed amendment goes far enough.

First I would suggest to the committee that they consider requiring each summary judgment order specifically identify: (1) the claims each party brings; (2) the grounds upon which each party seeks summary judgment; (3) each ground upon which the trial court granted summary judgment; and (4) each ground upon which the trial court [**94] denied summary judgment.

This solution is intuitive. In the vast majority of cases, this formality, rather than including magic language, would provide notice to parties about what has actually happened. In practice, this procedure alleviates many problems *Mafrige*'s finality rule has caused.

Under this approach, a summary judgment is not final unless the order specifically identifies each claim for relief, the grounds upon which each party seeks summary judgment, and the court's disposition [*219] of each claim and party. The appellate court's jurisdiction is determined only by looking at whether the trial court rendered an order expressly disposing of all remaining parties and issues. If the trial court errs by omitting certain claims or parties from the order, as happened in *Lehmann* and *Harris*, it is not a final order for purposes of appeal. Under this approach a party *never* loses its right to appeal based upon the finality of a summary judgment

order *that is silent* about the party or its claims or that *sua sponte* grants relief no party requested without mentioning the parties or claims--*regardless* of how clearly it states that it is a final judgment disposing [**95] of all parties and issues.

Most significantly, *in practice* this would lead to better drafting and fewer erroneous appeals. Specifically, if required to expressly list each ground upon which summary judgment is requested, trial courts are not likely to *add* grounds to their order that the summary judgment motion did not raise.

Second, I would suggest the committee consider a rule requiring that the prevailing party, who is charged with drafting the court's order, serve copies on all other parties at least ten days *before* the trial court is to sign and enter the order. Consistent with this suggestion, I agree with the Court's suggestion that the clerk send copies of all the actual signed orders--rather than just a postcard indicating that the court has signed an order.

The majority's author criticizes my first recommendation, asserting that there is a "very real risk" that requiring judges to be explicit in their summary judgment orders would result in "thousands of judgments intended to be final . . . remaining interlocutory." *39 S.W.3d 191, 2001 Tex. LEXIS 6*, *55. He contends that "this is precisely what has happened in the federal system even though the federal rules impose far fewer [**96] requirements on final judgments than the dissent would." *39 S.W.3d 191, 2001 Tex. LEXIS 6*, *56. Federal *Rule 58*, to which he refers, requires that *all final judgments* "be set forth on a separate document" and be entered by the clerk on the docket. *FED. R. CIV. P. 58*.

This criticism only serves to amplify the real dangers of straying outside the summary judgment context in these cases. How finality of different types of judgments is determined must be governed by the *nature* of the judgment. *Houston Health Clubs, Inc., 722 S.W.2d at 693* ("In determining whether a judgment is final, different presumptions apply depending on whether the judgment follows a conventional trial on the merits or results from default or a motion for summary judgment."). Cognizant of this, my recommendation, unlike Federal *Rule 58*, is limited to summary judgment finality.

The live pleadings define the issues in a case. The issues tried do not always mirror these pleadings. *See Vance v. Wilson, 382 S.W.2d 107, 108 (Tex. 1964)*. Nonetheless, we have repeatedly recognized that a presumption should exist that all issues presented by the pleadings are disposed of in a conventional trial on [**97] the merits. *See Aldridge, 400 S.W.2d at 897-98*; *Vance, 382 S.W.2d at 108*. This presumption can be rebutted by a contrary showing in the record. *See Richey v. Bolerjack, 589 S.W.2d 957, 959 (Tex. 1979)*. But absent

such a rebuttal, this presumption prevents judgments from languishing after trial based solely on variations in the pleadings and judgment. This presumption has saved us from the types of problems the federal system has experienced.

However, we sensibly limited this presumption to judgments "not intrinsically interlocutory in character." *Aldridge, 400 S.W.2d at 897*. We have also explained that summary judgments are intrinsically interlocutory and thus they should not be presumed final. *Houston Health Clubs, Inc., 722 S.W.2d at 693*. Thus, there is nothing illogical about requiring that finality language be explicit. And I respectfully disagree that my recommendation, limited to summary judgments, will cause such [*220] major havoc in the court system. Further, I believe the additional formality in this context is worth the certainty and protections such a rule provides.

### V. CONCLUSION

[**98] In Texas, the test for determining summary judgment finality has always been whether the judgment disposes of all parties and all issues raised in the pleadings. In *Mafrige* we created a legal fiction to simplify the process of determining finality. But *Mafrige* created more problems than it solved. It is beyond me why the Court insists on struggling through pages and pages of history about presumptions, magic language, and Mother Hubbard clauses instead of squarely considering the problems *Mafrige* caused and providing a solution. Its willingness to cling to this legal fiction, while refusing to recognize that our rulemaking in *Mafrige* and its progeny was not the correct solution, will only create more problems.

I concur in the judgment in these cases. But, because the Court declines to overrule *Mafrige*, *Inglish*, and *Bandera*, and await our promulgation of a rule governing summary judgment finality, I do not concur in its reasoning.

James A. Baker, Justice

February 1, 2001





Positive
As of: Mar 30, 2015

**LEJ DEVELOPMENT CORPORATION AND L.E. JOWELL, JR., APPELLANTS
v. SOUTHWEST BANK, APPELLEE**

**NO. 02-12-00088-CV**

**COURT OF APPEALS OF TEXAS, SECOND DISTRICT, FORT WORTH**

*407 S.W.3d 863*; *2013 Tex. App. LEXIS 9193*

**July 25, 2013, Delivered**

**PRIOR HISTORY:** [**1]
FROM THE 96TH DISTRICT COURT OF TAR-RANT COUNTY.

**COUNSEL:** FOR APPELLANT: THOMAS M. MICHEL, ROBLEY E. SICARD, GRIFFITH, JAY & MICHEL, LLP, FORT WORTH, TX.

FOR APPELLEE: KYLE T. GRAY, POPE, HARD-WICKE, CHRISTIE, SCHELL, KELLY & RAY, L.L.P., FORT WORTH, TX.

**JUDGES:** PANEL: GARDNER, MEIER, and GABRI-EL, JJ.

**OPINION BY:** ANNE GARDNER

**OPINION**

[*865] **I. Introduction**

By this restricted appeal, Appellants LEJ Develop-ment Corporation (LEJ) and L.E. Jowell, Jr. (Jowell Jr.) seek reversal of the trial court's September 22, 2011 de-fault judgment against them and in favor of Appellee Southwest Bank. Appellants argue in one issue that the trial court erred by rendering default judgment because service of citation was allegedly defective. We affirm.

**II. Background**

Southwest Bank filed suit against Appellants on August 10, 2011, alleging that LEJ had defaulted on a promissory note and that Jowell Jr. was liable on the note as guarantor. Citations were prepared for service, one directed to L.E. Jowell, Jr. and the other to LEJ Devel-opment Corporation by and through L.E. Jowell, Jr. The officer's returns reflect that both citations were personal-ly served on August 18 on "L.E. Jowell," not on "L.E. Jowell, Jr." The returns were filed with the court on Au-gust 22.

On September 19, Southwest Bank filed a motion to amend the returns and a motion for default judgment. Two amended officer's returns, each signed by the con-stable, were attached as exhibits [**2] to the motion to amend. The amended returns stated that L.E. Jowell, Jr. was the person on whom the constable had effectuated service of the citations to LEJ and Jowell Jr. on August 18.

On September 22, the trial court ordered that each of the original returns was "[t]hereby amended to reflect that Defendant L.E. Jowell, Jr. was served" and that LEJ "was served by and through its registered agent, L.E. Jowell, Jr." The trial court further ordered that the amended returns attached to Southwest Bank's motion to amend "should be and [were t]hereby authorized to be filed among the papers" of the case. Also on September 22, the trial court signed the "Final Default Judgment" against LEJ and Jowell Jr. The trial court's handwritten docket sheet reflects that the court signed the order

granting amendment of the returns before signing the default judgment. The amended returns were subsequently filed with the trial court clerk on October 3.

On December 7, 2011, Appellants filed a motion to fix date of notice and for new trial in which they claimed to have first acquired actual notice of the judgment on November 11, 2011. In an affidavit dated December 6, 2011, Jowell Jr. averred that he had [**3] incorrectly believed that Southwest Bank had to collect its debt from someone else before it could execute against his personal assets and that his misunderstanding led Appellants to not file an answer. Jowell Jr. also stated in the affidavit [*866] that he was misled into signing the loan documents at issue. Appellants later withdrew their motion to fix date of notice and for new trial, stating in open court their intention to instead rely upon their motion to dismiss for lack of jurisdiction. The trial court conducted a hearing on Appellants' motion to dismiss for lack of jurisdiction on February 2, 2012, and denied the motion. This restricted appeal followed.

### III. Discussion

Appellants argue in one issue that the trial court erred by rendering default judgment against them because they were not properly served. Within their sole issue, Appellants contend that *rule of civil procedure 118* requires notice to the defendant before amending returns, that the returns were not properly amended because they were not filed with the court prior to the judgment, that allowing amendment of the returns resulted in material prejudice to Appellants' substantial rights, and that the amended returns should [**4] have been but were not attached to the original citations.

### A. Standard of Review

In a restricted appeal, our review is limited to error that appears on the face of the record. *Fid. & Guar. Ins. Co. v. Drewery Constr. Co., 186 S.W.3d 571, 573 (Tex. 2006)*. When a default judgment is attacked by restricted appeal, we do not indulge any presumptions in favor of valid issuance, service, or return of service. *Reed Elsevier, Inc. v. Carrollton--Farmers Branch Indep. Sch. Dist., 180 S.W.3d 903, 905 (Tex. App.--Dallas 2005, pet. denied)*. Strict compliance with the procedural rules governing citation and return of service must affirmatively appear on the record if the default judgment is to withstand direct attack. *Primate Constr., Inc. v. Silver, 884 S.W.2d 151, 152 (Tex. 1994)*. Failure to show strict compliance on the face of the record renders any attempted service invalid and requires that we set aside the default judgment. *Reed Elsevier, Inc., 180 S.W.3d at 905-06*. But "strict compliance with the rules does not require 'obeisance to the minutest detail.'" *Williams v. Williams, 150 S.W.3d 436, 443-44 (Tex. App.--Austin*

2004, pet. denied)*. As long as the record as a whole shows that the citation [**5] was served on the defendant, service of process will not be invalidated. *Id. at 444*. Whether service strictly complied with the rules is a question of law that we review de novo. *Furst v. Smith, 176 S.W.3d 864, 869-70 (Tex. App.--Houston [1st Dist.] 2005, no pet.)*.

### B. *Rule of Civil Procedure 118*

### 1. Notice of Amendment to Returns of Service

Appellants first argue that the trial court erred by allowing amendment of the returns of service without giving them notice of the proposed amendment. Specifically, Appellants contend that *rule of civil procedure 118* "requires that a defendant receive notice of a request to the trial court to amend a return of service."

*Rule of civil procedure 118* states:

> At any time in its discretion and *upon such notice and on such terms as it deems just*, the court may allow any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued.

*Tex. R. Civ. P. 118* (emphasis added).

Appellants cite several cases to support their argument that "Texas cases support the argument that notice to a defendant is required before a court may enter an order amending [**6] a return in that the cases addressing an amended return and a default [*867] judgment almost all have notice to a defendant." But there is no holding within those cases that notice is always required, and the mere mention of notice to a defendant in a particular case does not mean that notice is always required. For example, one case cited by Appellants involved a bill of review filed months after the default judgment. The court of appeals merely noted that "after notice and hearing, the court below signed an order permitting the officer's return to be amended pursuant to *Rule 118 of the Texas Rules of Civil Procedure*." *Walker v. Brodhead, 828 S.W.2d 278, 281 (Tex. App.--Austin 1992, writ denied)* (holding trial court had jurisdiction twenty-two months after default judgment was final to order amendment of return of service). Notice was not at issue in that case. Each of Appellants' other cited authorities made similar, passing references to notice to the defendant, but none held that notice is always required before a return of service may be amended.[1] *See Higginbotham v. General Life & Acci. Ins. Co.., 796 S.W.2d*

695, 696-97 (Tex. 1990) (discussing trial court amendment of return during hearing [**7] on defendants' motion for new trial); *Gonzalez v. Tapia, 287 S.W.3d 805, 807-09 (Tex. App.--Corpus Christi 2009, pet. denied)* (holding trial court did not err by granting Tapia's motion to amend proof of service during pendency of Gonzalez's petition for bill of review); *Employer's Reinsurance Corp. v. Brock, 74 S.W.2d 435, 437 (Tex. Civ. App.--Eastland 1934, writ dism'd)* (noting that trial court permitted amendment of return during hearing on defendant's motion to set aside judgment).

> 1   We also note that, in a slightly different context, a defendant who has neither filed an answer nor appeared in a case is not entitled to notice of a hearing before a court can properly render default judgment because the defendant "received all the notice to which it was entitled when it was originally served with process." *Cont'l Carbon Co. v. Sea-Land Serv., Inc., 27 S.W.3d 184, 188-89 (Tex. App.--Dallas 2000, pet. denied)*; *see Long v. McDermott, 813 S.W.2d 622, 624 (Tex. App.--Houston [1st Dist.] 1991, no writ)*.

On its face, *rule 118* gives the trial court discretion to determine the notice and terms of notice the trial court "deems just" in a particular case, *see Tex. R. Civ. P. 118*, and our sister court [**8] has held that a trial court did not err by not requiring notice to the defendant of an amendment. *See Bavarian Autohaus, Inc. v. Holland, 570 S.W.2d 110, 113 (Tex. Civ. App.--Houston [1st Dist.] 1978, no writ)* (discussing *rule 118* and holding that trial court did not err "in not requiring that notice of the amendment be given to Bavarian Autohaus"). We therefore overrule Appellants' contention that *rule 118* always requires notice to a defendant before a return of service may be amended. Rather, the trial court has discretion to require notice or to permit amendment without notice. *Tex. R. Civ. P. 118*; *see Bavarian Autohaus, 570 S.W.2d at 113*. Thus, we cannot conclude that there is error apparent on the face of the record based on the lack of notice to Appellants before the returns were amended.

## 2. Amended Returns Relate Back to Original Returns

Appellants also argue that the default judgment must be set aside because the amended returns of service were not filed before the trial court rendered the default judgment. But Appellants do not cite any authority that requires the amended returns to be filed before rendition of the default judgment. The record is clear in this case that the returns [**9] were amended before judgment, and the Texas Supreme Court has held that the trial court may enter a postjudgment order granting amendment of a return of citation [*868] pursuant to *rule 118* while the trial court retains plenary power. *Higginbotham, 796*

*S.W.2d at 696* (holding recitation in order denying defendants' motions for new trial after default judgment and while trial court retained plenary power, indicating service was proper, was tantamount to order amending the return of citation under *rule 118* to reflect service during normal business hours at defendants' home offices, thus reflecting proper service); *see also Dawson v. Briggs, 107 S.W.3d 739, 745 (Tex. App.--Fort Worth 2003, no pet.)* (holding return properly amended while trial court retained plenary power although defendant had already perfected appeal from default judgment); *Mylonas v. Tex. Commerce Bank--Westwood, 678 S.W.2d 519, 521-22 (Tex. App.--Houston [14th Dist.] 1984, no writ)* (upholding default judgment following postjudgment amendment of return of service to show service at correct address).

The record is clear that the trial court in this case amended the returns before it rendered the default judgment. Although the trial [**10] court signed both the order authorizing amendment and the default judgment on September 22, 2011, the trial court's handwritten docket sheet reflects that the court signed the order expressly amending the returns before signing the final default judgment.[2] Moreover, the default judgment itself references the amended returns. And to the extent Appellants argue that the amended returns had not been on file for ten days prior to entry of the default judgment, "[t]he law is clear that when a return is amended under *Rule 118*, the amended return relates back and is regarded as filed when the original return was filed." *Walker, 828 S.W.2d at 282* (citing *Higginbotham, 796 S.W.2d at 696-97*); *Bavarian Autohaus, 570 S.W.2d at 113*; *Lafleaur v. Switzer, 109 S.W.2d 239, 241 (Tex. Civ. App.--Beaumont 1937, no writ)*; *Employer's Reinsurance Corp., 74 S.W.2d at 438*. That an amended return relates back to the filing date of the original return satisfies the requirement that a return of service be on file for at least ten days before entry of judgment. *Walker, 828 S.W.2d at 282*; *see Tex. R. Civ. P. 107*; *Bavarian Autohaus, 570 S.W.2d at 113*. The original returns were filed with the trial court on August [**11] 22, 2011, were on file for more than ten days before the trial court rendered the default judgment on September 22, 2011, and the amended returns relate back to the August 22, 2011 filing date for the original returns. *Walker, 828 S.W.2d at 282*.

> 2   In addition, the amended returns were signed by the constable on September 15, 2011, and were filed with the trial court on September 19, 2011, as exhibits to Southwest Bank's motion to amend the returns.

## 3. No Material Prejudice to Substantial Rights

Appellants also argue that the order allowing amendment of the returns materially prejudiced their substantial rights. In that regard, *rule of civil procedure 118* does not permit amendment of returns of service if "it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued." *Tex. R. Civ. P. 118*. Appellants' argument, however, is only that "[i]n this case, clearly material prejudice occurred to the substantial rights of the party served. Notably, the Appellants' right to appeal a case on which they have meritorious defenses has been materially prejudiced by the entry of the order allowing the amendment of the returns." Appellants [**12] do not explain how the trial court's order amending the returns materially prejudiced their substantial rights, and we note that two courts have [*869] held that a defendant's substantial rights are not materially prejudiced when the amended return corrects only a minor defect in the original return of citation. *See Mylonas, 678 S.W.2d at 522-23* (holding Mylonas not prejudiced by amendment showing service at address on Memorial Drive rather than Memorial Way); *see also Walker, 828 S.W.2d at 282* (holding Walker not prejudiced by amendment to show citation left with person over sixteen and to allow verification of facts shown on return). Appellants do not dispute that L.E. Jowell, Jr. was served with the citations on August 18, 2011, or that the returns of service, as amended, reflect the true facts of service. Under these circumstances, Appellants have not shown an error on the face of the record that would require the default judgment to be set aside.

## C. *Rule of Civil Procedure 107*

Appellants asserted at oral argument and contend in their supplemental brief that the default judgment must be set aside because the amended returns were not attached to the citations or verified as required by *rule of civil procedure 107*. [**13] *Rule of civil procedure 107* was amended effective January 1, 2012, but the version of *Rule 107* applicable to this case stated in relevant part as follows:

> The return of the officer or authorized person executing the citation shall be endorsed on or attached to the same; it shall state when the citation was served and the manner of service and be signed by the officer officially or by the authorized person. The return of citation by an authorized person shall be verified. . . .

*Tex. R. Civ. P. 107*, 733-34 S.W.2d XLV (1988, amended 1990) (hereinafter Former *Tex. R. Civ. P. 107*).[3]

3 The current version of *Rule 107* states that the return of service "may, but need not, be endorsed on or attached to the citation." *Tex. R. Civ. P. 107(a)*.

As to Appellants' contention that the amended returns are defective because they were not verified, the plain language of former *rule 107* required verification only when the return of citation was signed by an authorized person, not when the return was signed by an officer. *Id.*; *Myan Mgmt. Grp., L.L.C. v. Adam Sparks Family Revocable Trust, 292 S.W.3d 750, 752 (Tex. App.--Dallas 2009, no pet.)*. The rule did not require that an officer verify his or her signature. [**14] Former *Tex. R. Civ. P. 107*; *see Myan Mgmt. Grp., 292 S.W.3d at 752-53*. The constable who signed the returns and amended returns in this case was therefore not required to have his signature verified.

Appellants also contend that the amended returns were not "endorsed on or attached to" the original citations, thereby rendering service defective. Appellants rely on *Verlander Enters., Inc. v. Graham, 932 S.W.2d 259, 262 (Tex. App.--El Paso 1996, no writ)*. *Verlander* is distinguishable because the trial court's order that authorized amendment of the return of service in that case did not amend the return by its own terms but authorized the plaintiff to "have the return . . . corrected so as to conform to law [and to] withdraw the citation and forward it to the Sheriff of El Paso County, Texas, for proper return of citation," which the plaintiff failed to do. *Id. at 260*. Here, the trial court's order not only authorized amendment of the returns but also stated that each of the returns of service was "[t]hereby amended to reflect" service on Jowell Jr. and on L.E.J. through Jowell Jr. Moreover, unlike the order in *Verlander*, the trial court here did not order that the original citations be [**15] [*870] withdrawn from the trial court or forwarded to the sheriff for correction. And because the original citations were not withdrawn, the amended returns could not have been attached to or endorsed on the original citations because the original citations remained on file with the trial court clerk.

Appellants also rely on a statement from *Verlander* that "[a]lthough the second return was intended as an amendment of the first return pursuant to *Rule 118*, we do not read *Rule 118* to abrogate *Rule 107*'s requirement that the return, whether original or amended, be endorsed on or attached to the citation." *Id. at 262*. In addition to the foregoing mentioned differences, the court in *Verlander* noted a final caveat in *Higginbotham* that its holding was restricted to cases in which there is a record such as a hearing on a motion for new trial and an order expressly amending the return or an order that is tantamount to amending the return of citation. *See Verlander, 932 S.W.2d at 263*. The court of appeals in *Verlander*

pointed out that there was no such hearing nor was there an order expressly amending the return or that was tantamount to amendment but that the order merely authorized the plaintiff to [**16] have the sheriff correct the return. *Id*. In this case, there is an order expressly amending the return.

To the extent that the court in *Verlander* may have intended to hold that *rule 118* did not override the requirement of former *rule 107* that the return, whether amended or original, be endorsed on or attached to the citation, we respectfully disagree. Former *rule 107* did not mention amended returns of service. And although former *rule 107* required that a return of service be on file for at least ten days before the trial court could properly render default judgment, *see* Former *Tex. R. Civ. P. 107*,[4] Texas courts for decades have held that a return amended under *rule 118* relates back to and is regarded as filed when the original return was filed. *See Walker, 828 S.W.2d at 282*. Thus, a trial court could properly render default judgment when the original return had been on file for at least ten days even though the amended return had not. *Id*.; *see Higginbotham, 796 S.W.2d at 696-97*; *Bavarian Autohaus, 570 S.W.2d at 113*; *Employer's Reinsurance Corp., 74 S.W.2d at 438*; *see also Kubovy v. Cintas Corp., No. 01-02-00521-CV, 2003 Tex. App. LEXIS 4824, 2003 WL 21299938, at *3 (Tex. App.--Houston [1st Dist.] June 5, 2003, no pet.)* [**17] (mem. op.) ("[I]t has long been the law in Texas that the original and amended returns are read as one document."). In other words, when a return is amended under *rule 118*, the provisions of *rule 118* control over any potentially conflicting provisions of former *rule 107*. Given that Texas courts hold that *rule 118* takes prece-

dence over former *rule 107* in that context, it does not follow that *rule 118* would not take precedence in this context. Rather, it is sufficient that the initial return was endorsed on or attached to the original citation because the amended return relates back to the original return and because the original and amended returns are read together as one document. *See Higginbotham, 796 S.W.2d at 696-97*; *Walker, 828 S.W.2d at 282*; *Bavarian Autohaus, 570 S.W.2d at 113*; *Employer's Reinsurance Corp., 74 S.W.2d at 438*; *see also Kubovy, 2003 Tex. App. LEXIS 4824, 2003 WL 21299938, at *3*.

> 4    The current version of *rule 107* contains the same ten-day requirement. *See Tex. R. Civ. P. 107(h)*.

The original returns of service in this case were endorsed on the citations themselves, and the amended returns relate back to and are read together with the [*871] original returns. We hold that the amended returns of service [**18] in this case are not defective on the ground that they are not endorsed on or attached to the citation. We overrule Appellants' sole issue.

## IV. Conclusion

Having overruled LEJ and Jowell Jr.'s sole issue, we affirm the trial court's judgment.

ANNE GARDNER

JUSTICE

PANEL: GARDNER, MEIER, and GABRIEL, JJ.

DELIVERED: July 25, 2013

# *Lucas v. James Jolly Clark & Eonic Creations*

Court of Appeals of Texas, Third District, Austin

June 15, 2011, Filed

NO. 03-10-00474-CV

## Reporter

347 S.W.3d 800; 2011 Tex. App. LEXIS 4600

C. Michael Lucas, Appellant v. James Jolly Clark & Eonic Creations, Inc., Appellees

**Subsequent History:** Petition for review denied by *Clark v. Lucas, 2011 Tex. LEXIS 913 (Tex., Dec. 2, 2011)*

**Prior History:** [**1] FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT. NO. D-1-GN-10-001068, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING.

**Disposition:** Affirmed in Part; Reversed and Remanded in Part.

## Core Terms

request for admission, damages, unliquidated damages, default judgment, admissions, lost profits, deemed admitted, awards, trial court, admit, cause of action, sweepingly, pet

## Case Summary

### Procedural Posture

Appellees, a company and its founder, sued appellant investor for breach of contract and other tort claims. The District Court of Travis County, 200th Judicial District (Texas), issued a default judgment in favor of appellees and awarded them unliquidated damages. The investor appealed.

### Overview

Appellees sued the investor for various torts and breach of contract, and were awarded damages under a default judgment. The court affirmed the issuance of a default judgment, but reversed that portion of the judgment that awarded damages, and remanded. Appellees' request

for admission was akin to a request that the investor admit all allegations, including those concerning damages, as true, but such sweeping requests could not be deemed judicial admissions or provide any evidence to support a trial court's damages award, for purposes of *Tex. R. Civ. P. 243*. Relying on an embedded request for admission that precluded any presentation of evidence on unliquidated damages undermined *Rule 243*. No objection was necessary to reach the merits of the issue because the question was one of evidentiary sufficiency. As no evidence other than this request for admission existed supporting appellees' claims for unliquidated damages or proving the foreseeability of the damages, the evidence was insufficient to support the default judgment's unliquidated damages award.

### Outcome

The court affirmed the issuance of a default judgment, but reversed that portion of the default judgment that awarded unliquidated damages. The court remanded for further proceedings.

## LexisNexis® Headnotes

Civil Procedure > ... > Default & Default Judgments > Default Judgments > Entry of Default Judgments

Civil Procedure > Remedies > Damages > Monetary Damages

Contracts Law > ... > Measurement of Damages > Foreseeable Damages > Lost Profits

***HN1*** When a no-answer default judgment is rendered, the defendant's liability for all causes of action pleaded is conclusively established and all allegations of fact set forth in the petition are deemed admitted, except the amount of unliquidated damages. After a default judgment occurs, unliquidated damages, that is, damages not expressly provided for within a written instrument, must be proven to the trial court. *Tex. R. Civ.*

*P. 243*. Recovery for unliquidated damages in the form of lost profits requires that the injured party do more than show that it suffered some lost profits. The amount of the loss must be shown by competent evidence with reasonable certainty. To meet this reasonably-certain-evidence standard, opinions or estimates of lost profits must, at a minimum, be based on objective facts, figures, or data from which the amount of lost profits can be ascertained.

Civil Procedure > Remedies > Damages > Monetary Damages

**HN2** See *Tex. R. Civ. P. 243*.

Civil Procedure > ... > Methods of Discovery > Requests for Admissions > Effect of Admissions

Evidence > Types of Evidence > Judicial Admissions > Effects

**HN3** Generally, when a party fails to respond to a request for admission, either by timely answer, written objection, or motion to file late answers, the facts contained in the request are deemed admitted. Admissions, once deemed admitted, are judicial admissions and may not be contradicted.

Civil Procedure > ... > Methods of Discovery > Requests for Admissions > General Overview

**HN4** The primary purpose of requests for admissions is to simplify trials by eliminating matters about which there is no real controversy. They were never intended to be used as a demand upon a plaintiff or defendant to admit that he had no cause of action or ground of defense. Courts have cautioned that litigants should not be allowed to use requests for admissions as a tool to trap their opposition.

Civil Procedure > ... > Methods of Discovery > Requests for Admissions > Content & Form of Admissions

Constitutional Law > ... > Fundamental Rights > Procedural Due Process > Scope of Protection

**HN5** The rule regarding requests for admissions was designed, not as a trap to prevent the presentation of the truth in a full hearing but as a tool for the fair disposition of litigation with a minimum of delay. When a party uses deemed admissions to try to preclude presentation of the merits of a case, however, due process concerns may arise. Due process is the guiding rule and principle that applies when requests for admissions are not used as intended, and when a party

uses deemed admissions to try to preclude presentation of the merits of a case. Therefore, overly broad, merits-preclusive requests for admissions are improper and may not result in deemed admissions. A request is improper and will not be deemed admitted where the party requests that the opposing party admit or deny every allegation made in petition. Sweepingly broad requests for admission may not result in deemed admissions.

Civil Procedure > ... > Methods of Discovery > Requests for Admissions > Content & Form of Admissions

Civil Procedure > Remedies > Damages > Monetary Damages

**HN6** *Tex. R. Civ. P. 243* requires that, in unliquidated causes of action, the court shall hear evidence as to damages and shall render judgment therefor. *Tex. R. Civ. P. 243*. Relying on an embedded request for admission that precludes any presentation of evidence on unliquidated damages undermines the spirit of *Rule 243* and is not consistent with its purpose. Requests for admission were simply not meant to be used to wholly preclude a defendant from presenting his defense. This is particularly true in the context of the heightened evidentiary standard required to prove lost profits. The reasonably-certain-evidence standard requires that estimates of lost profits be based on facts, figures, or data. Such estimates must be founded in objective facts and cannot be generic or conclusory in nature.

Civil Procedure > ... > Methods of Discovery > Requests for Admissions > Objections to Requests for Admissions

**HN7** See Tex. R. Civ. P. 193.1.

Civil Procedure > ... > Methods of Discovery > Requests for Admissions > Objections to Requests for Admissions

**HN8** It is true that typically any challenge to a request for admission must be in compliance with Tex. R. Civ. P. 193.1. The question of a deemed admission's overbreadth only arises when a request for admission has been deemed admitted, which, by definition, occurs after a party has failed to timely respond or object to the request. No request for admission would be deemed admitted if the responding party had objected in writing within the parameters of Rule 193.1. Therefore, were the court to require a party to object in writing to a request for admission's overbreadth in order to preserve the issue on appeal, no appellate court would ever face the issue. Several other courts of appeals have, however, squarely addressed whether a "sweepingly

broad" request for admission may become a deemed admission when a party fails to respond. In addressing this issue, none of these courts concluded that a Rule 193.1 objection was required.

> Civil Procedure > ... > Methods of Discovery > Requests for Admissions > Content & Form of Admissions

> Civil Procedure > Appeals > Reviewability of Lower Court Decisions > Preservation for Review

> Civil Procedure > ... > Standards of Review > Substantial Evidence > Sufficiency of Evidence

*HN9* In viewing the effect of an overly broad request for admission, the court's analysis centers on whether a trial court is permitted to find that the request for admission irrefutably established the facts therein such that no additional evidence is required. In other words, the issue before the court concerns whether an overly broad request for admission, deemed true by the trial court, would be legally sufficient evidence to support a trial court's judgment for unliquidated damages. A sufficiency of the evidence question does not require an objection at the trial court to be heard on appeal. *Tex. R. App. P. 33.1(d)* provides that the insufficiency of evidence complaint may be made for first time on appeal.

> Contracts Law > ... > Damages > Types of Damages > Consequential Damages

> Contracts Law > ... > Measurement of Damages > Foreseeable Damages > General Overview

*HN10* Consequential damages may not be recovered unless they are foreseeable and traceable to the wrongful act and result from it.

> Civil Procedure > Appeals > Standards of Review > General Overview

*HN11* *Tex. R. App. P. 47.1* states that the court of appeals must only address issues necessary to final disposition of appeal.

**Counsel:** For Appellant: Mr. Barry K. Bishop, Clark, Thomas & Winters, PC, Austin, TX.

For Appellees: Mr. D. Todd Smith, Smith Law Group, PC, Austin, TX.

**Judges:** Before Chief Justice Jones, Justices Henson and Goodwin.

**Opinion by:** Diane M. Henson

# Opinion

[*801] Eonic Creations, Inc. and its founder, James Jolly Clark, (collectively, the "Appellees") sued investor C. Michael Lucas for breach of contract and various claims of tortious conduct. When Lucas failed to respond to the Appellees' petition, the trial court issued a default judgment in favor of the Appellees and awarded unliquidated damages of $75,000 to James Jolly Clark and $9,925,000 to Eonic Creations. Lucas appeals, claiming that the absence of a reporter's record from the default judgment hearing deprived Lucas of the ability to review the trial court's awards, that the trial court's unliquidated damages awards are not supported by sufficient evidence, and that the use of requests for admissions embedded within a petition to support the no-answer default judgment awards of unliquidated damages was "inappropriate" and undermined *Texas Rule of Civil Procedure 243*. We affirm the issuance of the default judgment, reverse that portion [**2] of the default judgment awarding unliquidated damages, and remand the case to the trial court for further proceedings consistent with this opinion.[1]

## BACKGROUND

On April 2, 2010, the Appellees sued Lucas for breach of contract, misappropriation of trade secrets, unjust enrichment, conversion, and aiding and abetting Eonic Creations' officers and employees in violating their fiduciary duties to the company. In their petition, the Appellees claimed that Lucas entered into a contract with Clark and promised to pay $60,000 to Clark for personal debts and $15,000 to Eonic Creations for certain patent rights to Eonic Creations' products. According to the Appellees' petition, Lucas also contracted to make a good faith effort to obtain a $600,000 small-business loan to further the business interests of Eonic Creations. The Appellees allege that Lucas failed to pay either sum of money and [*802] did not make a good faith effort to obtain the promised loan. In addition, the Appellees contend that Lucas enticed Robert Clark, CEO and acting president of Eonic Creations, and Paul Morganstern, engineer for Eonic Creations, to leave Eonic [**3] Creations and form a new company with Lucas using Eonic Creations' products and trade secrets. In their petition, the

---

[1] We also grant Lucas's pending motion to withdraw and substitute counsel.

Appellees sought injunctive relief and damages, including specific performance of Lucas's contractual obligations, compensatory damages, consequential damages of over $10 million in lost profits and loss of reputation, punitive damages, and attorney's fees and expenses.

The Appellees incorporated two requests for admissions into their original petition. The requests for admissions were as follows:

> Request for Admission 1: The contract attached to this petition as Exhibit A is a true and accurate copy of the contract that you signed and entered into on or about May 22, 2009.[2]

> Request for Admission 2: As a proximate result of your breaching the contract made the basis of this suit, the Plaintiffs have suffered consequential damages in an amount not less than ten million dollars.

Lucas did not file an answer to the petition nor did he respond to the requests for admissions.[3]

On June 23, 2010, the Appellees filed a motion for default judgment, claiming that Lucas's failure to respond to Request for Admission 2 constituted a deemed admission that Lucas's contractual breach caused the Appellees damages in the amount of $10 million. Appellees also attached an affidavit by their trial counsel averring that Lucas never served an answer on the Appellees and identifying reasonable and necessary attorney's fees. After "reviewing the Officers Return filed May 25, 2010 and considering the pleadings and official records on file including Plaintiff's Motion for Default Judgment as well as any evidence and arguments," the trial court issued a default judgment granting a permanent injunction and ordering Lucas to pay $75,000 in "actual damages" plus court costs, attorney's fees, and pre- and post-judgment interest to Clark and $9,925,000 in "actual damages" plus pre-

and post-judgment interest to Eonic Creations. Lucas did not file a motion for new trial, but filed a notice of appeal.

Lucas does not appeal the trial court's finding of [**5] liability, nor does he appeal the injunction against him or the attorney's fees and court costs awarded.[4] Lucas's only arguments on appeal involve the trial court's awards of unliquidated "actual damages," totaling $75,000 to Clark and $9,925,000 to Eonic Creations.

In three issues on appeal, Lucas argues that (1) the absence of a reporter's record from the default judgment hearing deprived Lucas and this Court of the ability to adequately review the trial court's damages awards, (2) the trial court's damages awards are not supported by legally and factually sufficient evidence, and (3) supporting a no-answer default judgment's unliquidated damages award with requests for admissions embedded in a petition is [*803] "inappropriate" and undermines *Texas Rule of Civil Procedure 243*.

## DISCUSSION

*HN1* When a no-answer default judgment is rendered, the defendant's liability for all causes of action pleaded is conclusively established and all allegations of fact set forth in the petition are deemed admitted, except the amount of unliquidated damages. *Dolgencorp of Tex., Inc. v. Lerma, 288 S.W.3d 922, 930 (Tex. 2009)* [**6] (per curiam); *Texas Commerce Bank, N.A. v. New, 3 S.W.3d 515, 516 (Tex. 1999)* (per curiam). After a default judgment occurs, unliquidated damages, i.e., damages not expressly provided for within a written instrument, must be proven to the trial court. *See Tex. R. Civ. P. 243.*[5] Recovery for unliquidated damages in the form of lost profits, as the Appellees have requested here, requires that the injured party do more than show that it suffered some lost profits. The amount of the loss must be shown by competent evidence with reasonable certainty. *Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d*

---

[2] Though the request for admission indicates that a copy of the contract was attached to the original petition, no copy of the contract exists in the appellate record.

[3] The Appellees also included requests [**4] for disclosure, interrogatories, and requests for production in their petition. Lucas did not respond to any of these discovery requests.

[4] Lucas represented in his brief that a bill of review is pending in the district court alleging that Lucas was never served with citation.

[5] *HN2* "If the cause of action is unliquidated or be not proved by an instrument in writing, the court shall hear evidence as to damages and shall render judgment therefor . . . ." *Tex. R. Civ. P. 243.*

*80, 84 (Tex. 1992)*. To meet this reasonably-certain-evidence standard, opinions or estimates of lost profits must, at a minimum, be based on objective facts, figures, or data from which the amount of lost profits can be ascertained. *Id*.

The Appellees rely solely on Request for Admission 2, which was embedded in their petition, to prove that they suffered $10 million dollars of unliquidated damages in the [**7] form of lost profits. Request for Admission 2 stated: "As a proximate result of your breaching the contract made the basis of this suit, the Plaintiffs have suffered consequential damages in an amount not less than ten million dollars." **HN3** Generally, when a party fails to respond to a request for admission, either by timely answer, written objection, or motion to file late answers, the facts contained in the request are deemed admitted. *Oliphant Fin., LLC v. Galaviz, 299 S.W.3d 829, 838 (Tex. App.—Dallas 2009, no pet.)*; *Sherman Acquisition II LP v. Garcia, 229 S.W.3d 802, 812 (Tex. App.—Waco 2007, no pet.)*. Admissions, once deemed admitted, are judicial admissions and may not be contradicted. *Oliphant Fin., 299 S.W.3d at 837*; *Sherman Acquisition, 229 S.W.3d at 812-13*. As all of Lucas's points on appeal are impacted by whether or not Request for Admission 2, standing alone, can support the trial court's $10 million default judgment, we will begin by addressing the purpose behind requests for admissions.

### Purpose of Requests for Admissions

**HN4** The primary purpose of requests for admissions is to "simplify trials by eliminating matters about which there is no real controversy." *Stelly v. Papania, 927 S.W.2d 620, 622 (Tex. 1996)* [**8] (citing *Sanders v. Harder, 148 Tex. 593, 227 S.W.2d 206, 208 (Tex. 1950))*. They were never intended to be used as a demand upon a plaintiff or defendant to admit that he had no cause of action or ground of defense. *Id*. Courts have cautioned that litigants should not be allowed to use requests for admissions as a tool to trap their opposition. See *Birdo v. Hammers, 842 S.W.2d 700, 701 (Tex. App.—Tyler 1992, no writ)*.

**HN5** The rule regarding requests for admissions "was designed, not as a trap to prevent the presentation of the truth in a full hearing but as a tool for the fair disposition of litigation with a minimum of delay." *Taylor v. Lewis, 553 S.W.2d 153, 160 (Tex. Civ. App.—Amarillo 1977, writ ref'd n.r.e.)*. When a party uses deemed admissions [*804] to try to preclude presentation of the

merits of a case, however, due process concerns may arise. *Wheeler v. Green, 157 S.W.3d 439, 443 (Tex. 2005)*; *In re Rozelle, 229 S.W.3d 757, 764 (Tex. App.—San Antonio 2007)* ("[Due process] is the guiding rule and principle that applies when requests for admissions are not used as intended, and when a party uses deemed admissions to try to preclude presentation of the merits of a case." (internal quotation marks and citation [**9] omitted)). Therefore, overly broad, merits-preclusive requests for admissions are improper and may not result in deemed admissions. *See In re Estate of Herring, 970 S.W.2d 583, 589 (Tex. App.—Corpus Christi 1998, no pet.)* (holding that admissions requesting party to "admit [wife] did not transfer community property . . . without your knowledge and consent" and "admit you have not been injured in any manner as a direct result of the alleged acts" were sweepingly broad and not deemed admitted); *Birdo, 842 S.W.2d at 701* (holding that request is improper and will not be deemed admitted where party requests that opposing party admit or deny every allegation made in petition); *Powell v. City of McKinney, 711 S.W.2d 69, 71 (Tex. App.—Dallas 1986, no writ)* (holding that request asking plaintiffs to "admit [they] no longer wish to pursue their cause of action in the above styled and numbered cause" was sweepingly broad and should not be deemed admitted); *see also LRT Record Servs., Inc. v. Archer, No. 05-00-00324-CV, 2001 Tex. App. LEXIS 1447, at *2-3 (Tex. App.—Dallas Mar. 7, 2001, no pet.)* (mem. op.) ("[S]weepingly broad requests for admission may not result in deemed admissions.").

### Effect [**10] of Request for Admission 2

The Appellees argue that the conclusory statement contained in Request for Admission 2 may, as the sole evidence on the matter, properly support a $10 million default judgment for lost profits, a damages component typically requiring an extensive and fact-intensive inquiry. This request for admission, however, is the type of overly broad, merits-preclusive request that other courts have cautioned against. Request for Admission 2, asking Lucas to admit that the Appellees have suffered $10 million in damages, aimed to eliminate Lucas's ability to present a defense to the only element at issue, proof of unliquidated damages. This request is akin to a request that Lucas admit all allegations made in the Appellees' petition, including those regarding damages, as true. Such sweeping requests for admissions cannot be deemed judicial admissions, *see Birdo, 842 S.W.2d at 701*, nor can they provide any evidence to support a trial court's damages award.

In making this determination, we must also consider **HN6** *Texas Rule of Civil Procedure 243*, requiring that, in unliquidated causes of action, the court "shall hear evidence as to damages and shall render judgment therefor." *Tex. R. Civ. P. 243*. **[**11]** Relying on an embedded request for admission that precludes any presentation of evidence on unliquidated damages undermines the spirit of *Rule 243* and is not consistent with its purpose. Requests for admission were simply not meant to be used in the way that the Appellees have used them here, i.e., to wholly preclude a defendant from presenting his defense. This is particularly true in the context of the heightened evidentiary standard required to prove lost profits. The reasonably-certain-evidence standard requires that estimates of lost profits be based on facts, figures, or data. Such estimates must be founded in objective facts and cannot be generic or conclusory in nature. *See Holt Atherton Indus., Inc., 835 S.W.2d at 84*. Considering this increased evidentiary standard, coupled with *Rule 243*'s requirement that the court hear evidence **[*805]** on unliquidated damages, this sweepingly broad request for admission is not sufficient to constitute conclusive evidence of the statement that it contains.

**Preservation of Issue on Appeal**

The Appellees argue that Lucas waived any objection to the request for admission when he failed to file a timely written objection to the response, as required by Rule 193.1. **[**12]** *See* Tex. R. Civ. P. 193.1 **HN7** ("A party must make an objection to written discovery in writing—either in the response or in a separate document—within the time for response."). While **HN8** it is true that typically any challenge to a request for admission must be in compliance with Rule 193.1, the facts at issue here present a unique situation. The question of a deemed admission's overbreadth only arises when a request for admission has been deemed admitted, which, by definition, occurs after a party has failed to timely respond or object to the request. No request for admission would be deemed admitted if the responding party had objected in writing within the parameters of Rule 193.1. Therefore, were we to require a party to object in writing to a request for admission's overbreadth in order to preserve the issue on appeal, no appellate court would ever face the issue. Several other courts of appeals have, however, squarely addressed whether a "sweepingly broad" request for admission may become a deemed admission when a party fails to respond. *See In re Estate of Herring, 970 S.W.2d at 589* (addressing "sweepingly broad" request

for admission despite lack of Rule 193.1 objection); *Birdo, 842 S.W.2d at 701* **[**13]** (same); *Powell, 711 S.W.2d at 71* (same); *see also LRT Record Servs., Inc., 2001 Tex. App. LEXIS 1447, at *2-3* (same). In addressing this issue, none of these courts concluded that a Rule 193.1 objection was required.

We agree with our sister courts that no objection was necessary to reach the merits of the issue in this Court. This is true because the question before us is one of evidentiary sufficiency rather than procedural error. **HN9** In viewing the effect of an overly broad request for admission, our analysis centers on whether a trial court is permitted to find that the request for admission irrefutably established the facts therein such that no additional evidence is required. In other words, the issue before us concerns whether an overly broad request for admission, deemed true by the trial court, would be legally sufficient evidence to support a trial court's judgment for unliquidated damages. A sufficiency of the evidence question does not require an objection at the trial court to be heard on appeal. *See Tex. R. App. P. 33.1(d)* (insufficiency of evidence complaint may be made for first time on appeal).

As no evidence other than this request for admission exists supporting the Appellees' **[**14]** claims for unliquidated damages or proving the foreseeability of such damages, *see Mood v. Kronos, 245 S.W.3d 8, 12 (Tex. App.—Dallas 2007, pet. denied)* **HN10** ("[C]onsequential damages may not be recovered unless they are foreseeable and traceable to the wrongful act and result from it.") (citing *Stuart v. Bayless, 964 S.W.2d 920, 921 (Tex. 1998))*, the evidence is neither legally nor factually sufficient to support the default judgment's unliquidated damages award. *See City of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex. 2005)*; *Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986)*. We sustain Lucas's second point on appeal.

Because we agree with Lucas that the evidence is insufficient to support the trial court's unliquidated damages award, we need not consider Lucas's first and third issues. *See* **HN11** *Tex. R. App. P. 47.1* (stating that court of appeals must only address **[*806]** issues necessary to final disposition of appeal).

**CONCLUSION**

Because we hold that the evidence is legally and factually insufficient to support the trial court's damages award, we affirm the issuance of the default judgment,

reverse that portion of the default judgment awarding the Appellees unliquidated damages, and remand the case for further [**15] proceedings consistent with this opinion.

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed in Part; Reversed and Remanded in Part

Filed: June 15, 2011

# *Marquez v. Greig*

Court of Appeals of Texas, First District, Houston

August 9, 2012, Opinion Issued

NO. 01-10-01118-CV

**Reporter**

2012 Tex. App. LEXIS 6551; 2012 WL 3228710

DAVE MARQUEZ, Appellant v. NIKKI GREIG, ON BEHALF OF TEXAS STARS CHEERLEADING, Appellee

**Prior History:** [*1] On Appeal from the 400th District Court, Fort Bend County, Texas. Trial Court Case No. 09-DCV-176744.

## Core Terms

service of process, trial court, certificate, default judgment, forwarded, face of the record, per curiam, nonresident, indicates

## Case Summary

### Procedural Posture

The 400th District Court, Fort Bend County, Texas, rendered a default judgment in favor of appellee teacher on behalf of a cheerleading school. Appellant buyer appealed.

### Overview

The buyer argued that the error was apparent on the face of the record because it showed that the Secretary of State forwarded the citation and petition to an incorrect address. The appellate court found that there were numerous indications in the record that the buyer's address was "2155 North Fairview," but the Secretary of State's certificate indicated that the citation and petition were forwarded to "2155 Northfairview." The return receipt indicated that the process sent to that address was "unclaimed." Given the notation on the return receipt and the multiple indications in the record that the buyer's actual address differed, if only slightly, from the address to which the Secretary of State forwarded service of process, the record did not affirmatively show strict compliance with the rules governing service of process.

### Outcome

The default judgment was reversed and the case remanded for further proceedings.

## LexisNexis® Headnotes

Civil Procedure > ... > Default & Default Judgments > Default Judgments > Entry of Default Judgments

Civil Procedure > Appeals > Record on Appeal

Civil Procedure > Appeals > Reviewability of Lower Court Decisions > Timing of Appeals

*HN1* Generally, if a defendant does not timely file an answer and a return of service has been on file for ten days, the plaintiff may take judgment by default, *Tex. R. Civ. P. 107(h)* & *239*. The defendant can prevail on a restricted appeal only if (1) it filed notice of the restricted appeal within six months after the judgment was signed, (2) it was a party to the underlying lawsuit, (3) it did not participate in the hearing that resulted in the judgment complained of and did not timely file any postjudgment motions or requests for findings of fact and conclusions of law, and (4) error is apparent on the face of the record, *Tex. R. App. P. 26.1(c)* & *30*. The face of the record consists of all the papers on file in the appeal.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Long Arm Jurisdiction

Civil Procedure > ... > Service of Process > Methods of Service > Service on Agents

*HN2* For a trial court to have jurisdiction over a nonresident defendant, the Secretary of State must forward copies of the citation and petition to the defendant as required by the long-arm statute. Under the long-arm statute, the Texas Secretary of State is an agent for service of process on a nonresident defendant who engages in business in this state but does not maintain a regular place of business in this state or a

designated agent for service of process, in any proceeding arising out of business done in Texas and to which the nonresident defendant is a party, *Tex. Civ. Prac. & Rem. Code Ann. § 17.044(b)* (2008). Once the Secretary of State is served with duplicate copies of process for a nonresident defendant that reflect the nonresident's name and home or home office address, it must immediately mail to the provided address a copy of the process by registered or certified mail with return receipt requested, *Tex. Civ. Prac. & Rem. Code Ann. § 17.045(a)*, *(d)*.

Civil Procedure > ... > Service of Process > Methods of Service > Service on Agents

Civil Procedure > Appeals > Notice of Appeal

*HN3* In a restricted appeal, there is no presumption in favor of valid service of process. The failure to affirmatively show strict compliance with the rules governing service of process renders the attempted service invalid and of no effect. However, absent fraud or mistake, the Secretary of State's certificate of service of process is conclusive evidence that it received and forwarded service as required by statute.

**Judges:** Panel consists of Justices Bland, Massengale, and Brown.

**Opinion by:** Michael Massengale

# Opinion

### MEMORANDUM OPINION

Appellant Dave Marquez brings this restricted appeal from a default judgment rendered in favor of appellee Nikki Greig on behalf of Texas Stars Cheerleading. Marquez argues that error appears on the face of the record because the Secretary of State's certificate of service of process indicates that the citation and original petition were delivered to an incorrect address. We reverse the default judgment and remand for further proceedings.

### Background

Nikki Greig filed a petition in district court alleging that Dave Marquez had contracted with her to provide dance and cheerleading choreography services. She alleged that Marquez performed pursuant to that contract, but his services were not of the grade and quality that he

had represented. The petition asserted multiple causes of action including breach of contract, violations of the Texas Deceptive Trade Practices Act, and fraud.

In the petition, Greig identified the Texas Secretary of State as the agent for service of process because Marquez lived **[*2]** at "2155 North Fairview" in Santa Ana, California. The citation likewise reflects that Marquez's street address was "2155 North Fairview." However, the Secretary of State's certificate of service of process reflects that copies of the citation and petition were forwarded by certified mail to "2155 Northfairview" in Santa Ana, California. The certificate further reflects that the return receipt bore a notation of "unclaimed." Marquez never answered or otherwise appeared in the trial court until filing his notice of appeal.

Several weeks after the Secretary of State's certificate was filed in the trial court, Greig filed a motion for default judgment. Although the motion acknowledged that the return receipt bore a notation of "unclaimed," it asserted that the Secretary of State had served Marquez with copies of the citation and petition. The motion stated that Marquez's last known address was "2155 North Fairview" in Santa Ana, California. A "Plaintiff's Certificate of Last Known Address" signed by Greig's counsel reflects that same address.

The trial court held a hearing on Greig's motion for default judgment. Following the hearing, the trial court signed an order granting the motion **[*3]** and rendering against Marquez a money judgment of $11,048.87 for damages, $4,125.00 for attorney's fees, and court costs. A notice of default judgment was sent to Marquez at "2155 North Fairview" in Santa Ana, California.

After the default judgment was signed by the trial court, Marquez timely filed notice of a restricted appeal.

### Analysis

In his sole issue, Marquez argues that error is apparent on the face of the record because it shows that the Secretary of State forwarded the citation and petition to an incorrect address. He contends that "2155 North Fairview," as his address appears in Greig's petition, is not the same as "2155 Northfairview," as his address appears in the Secretary of State's certificate of service of process. Therefore, Marquez argues, the record does not show compliance with the rules governing service of process, the default judgment must be reversed, and the case must be remanded for a new trial.

Although Greig has not filed an appellee's brief, she has filed a motion to dismiss the appeal. She contends that the record demonstrates that Marquez was properly served at his home address. This court ordered that Greig's motion be carried with submission of the case.

*HN1* Generally, **[\*4]** if a defendant does not timely file an answer and a return of service has been on file for ten days, the plaintiff may take judgment by default. *See* *Tex. R. Civ. P. 107(h)* & *239*. The defendant can prevail on a restricted appeal only if (1) it filed notice of the restricted appeal within six months after the judgment was signed, (2) it was a party to the underlying lawsuit, (3) it did not participate in the hearing that resulted in the judgment complained of and did not timely file any postjudgment motions or requests for findings of fact and conclusions of law, and (4) error is apparent on the face of the record. *Tex. R. App. P. 26.1(c)* & *30*; *Ins. Co. of Pa. v. Lejeune, 297 S.W.3d 254, 255 (Tex. 2009)* (per curiam). The only matter at issue in this restricted appeal is whether error is apparent on the face of the record. The face of the record consists of all the papers on file in the appeal. *Norman Commc'ns v. Tex. Eastman Co., 955 S.W.2d 269, 270 (Tex. 1997)* (per curiam).

*HN2* For a trial court to have jurisdiction over a nonresident defendant, the Secretary of State must forward copies of the citation and petition to the defendant as required by the long-arm statute. *Comm'n of Contracts of Gen. Exec. Comm. v. Arriba, Ltd., 882 S.W.2d 576, 585 (Tex. App.—Houston [1st Dist.] 1994, no pet.)* **[\*5]** (citing *Whitney v. L & L Realty Corp., 500 S.W.2d 94, 96 (Tex. 1973))*. Under the long-arm statute, the Texas Secretary of State is an agent for service of process on a nonresident defendant who engages in business in this state but does not maintain a regular place of business in this state or a designated agent for service of process, in any proceeding arising out of business done in Texas and to which the nonresident defendant is a party. *See* *Tex. Civ. Prac. & Rem. Code Ann. § 17.044(b)* (West 2008). Once the Secretary of State is served with duplicate copies of process for a nonresident defendant that reflect the nonresident's name and home or home office address, it must immediately mail to the provided address a copy of the process by registered or certified mail with return receipt requested. *See id*. *§ 17.045(a)*, *(d)*.

*HN3* In a restricted appeal, there is no presumption in favor of valid service of process. *Primate Const., Inc. v. Silver, 884 S.W.2d 151, 152 (Tex. 1994)* (per curiam); *Uvalde Country Club v. Martin Linen Supply Co., 690 S.W.2d 884, 885 (Tex. 1985)* (per curiam). The failure to affirmatively show strict compliance with the rules governing service of process renders the **[\*6]** attempted service invalid and of no effect. *Uvalde Country Club, 690 S.W.2d at 885*. However, absent fraud or mistake, the Secretary of State's certificate of service of process is conclusive evidence that it received and forwarded service as required by statute. *Capitol Brick, Inc. v. Fleming Mfg. Co., 722 S.W.2d 399, 401 (Tex. 1986)*.

Marquez analogizes this case to *Royal Surplus Lines Insurance Co. v. Samaria Baptist Church, 840 S.W.2d 382 (Tex. 1992)* (per curiam). In that case, the plaintiff unsuccessfully attempted service of process on the defendant's registered agent. *Id. at 382*. Pursuant to the Texas Non-Profit Corporation Act, the plaintiff then attempted service through the Secretary of State. *Id*. The address of the defendant's registered agent was listed in the Secretary's public records as "1201 Bessie." *Id. at 383*. However, the Secretary's certificate reflected that it sent the citation and petition to "1201 Bassie," and the letter was returned with the notation "unclaimed." *Id*. The defendant did not appear, and the trial court rendered a default judgment. *Id. at 382*. On appeal, the court of appeals reversed the default judgment and remanded for a new trial. *Id. at 383*. In **[\*7]** denying the plaintiff's application for writ of error, the Supreme Court noted that "[a] typographical error in the forwarding address typed by the Secretary is grounds to set aside a default judgment based on substituted service." *Id*.

This case is analogous to *Royal Surplus Lines*. There are numerous indications in the record that Marquez's address is "2155 North Fairview," but the Secretary of State's certificate indicates that the citation and petition were forwarded to "2155 Northfairview." The return receipt, like the one in *Royal Surplus Lines*, indicates that the process sent to that address was "unclaimed." Given the notation on the return receipt and the multiple indications in the record that Marquez's actual address differed, if only slightly, from the address to which the Secretary of State forwarded service of process, we hold that the record does not affirmatively show strict compliance with the rules governing service of process. *See* *Uvalde Country Club, 690 S.W.2d at 885*. Accordingly, we sustain Marquez's issue on appeal, reverse the default judgment, and remand the case for further proceedings. *See* *Royal Surplus Lines, 840 S.W.2d at 383*.

**Conclusion**

We deny as moot Greig's **[*8]** motion to dismiss the appeal. We reverse the judgment and remand the case for further proceedings.

Michael Massengale

Justice

**JUDGMENT**

This case is an appeal from the final judgment signed by the trial court on June 14, 2010. After submitting the case on the appellate record and the arguments properly raised by the parties, the Court holds that there was reversible error in the trial court's judgment. Accordingly, the Court **reverses** the trial court's judgment and **remands** the case to the trial court for further proceedings.

The Court **orders** that the appellee, Nikki Greig, on behalf of Texas Stars Cheerleading, pay all appellate costs.

The Court **orders** that this decision be certified below for observance.

Judgment rendered August 9, 2012.



2 of 2 DOCUMENTS



Analysis
As of: Mar 30, 2015

**KENNETH MCCLAIN, Appellant v. USA TODAY NEWSPAPER, USA TODAY INTERNET ARTICLE DIVISION, USA TODAY JOURNALIST KEVIN MCCOY, USA TODAY JOURNALIST PAUL OVERBERG, AND DALLAS COUNTY SHERIFF'S OFFICE, Appellees**

**No. 05-08-01123-CV**

**COURT OF APPEALS OF TEXAS, FIFTH DISTRICT, DALLAS**

*2010 Tex. App. LEXIS 4542*

**June 17, 2010, Opinion Filed**

**SUBSEQUENT HISTORY:** Released for Publication July 30, 2010.
Rehearing denied by *McClain v. USA Today Newspaper, 2010 Tex. App. LEXIS 6117 (Tex. App. Dallas, July 19, 2010)*

**PRIOR HISTORY:** [*1]
On Appeal from the County Court at Law No. 4, Dallas County, Texas. Trial Court Cause No. CC08-01140D.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellant, a pro se litigant, sought review of a decision of the County Court at Law No. 4, Dallas County, Texas, granting summary judgment in favor of appellees, a newspaper and two journalists. Because the appeal appeared to be untimely, the court directed the parties to file letter briefs addressing the court's jurisdiction over the appeal.

**OVERVIEW:** The litigant timely filed a notice of appeal with the trial court only. He failed to serve a copy of the notice of appeal on the other parties to the trial court's judgment, and failed to file a copy with the appellate court clerk, as required by *Tex. R. App. P. 9.5, 25.1(e)*. Twelve days later, he filed a motion to strike his notice of appeal and a motion to vacate judgment. He

acknowledged he deliberately and intentionally failed to serve the notice of appeal on all parties to the judgment. It was also clear that he did not intend his May 1st notice of appeal to be a bona fide attempt to invoke the court's jurisdiction. The motion to vacate judgment had the same effect as a motion to modify the judgment and was sufficient to extend the time within which to perfect an appeal under *Tex. R. App. P. 26.1*. Therefore, the notice of appeal was due by July 14, 2008; the litigant's second notice of appeal filed on August 7, 2008 was untimely. Although the litigant mistakenly believed he had 90 days from the date on which he filed his motion to vacate judgment to perfect his appeal, the time should have been calculated from the date the judgment was signed under *rule 26.1(a)(2)*.

**OUTCOME:** The court dismissed the appeal for want of jurisdiction.

**LexisNexis(R) Headnotes**

*Civil Procedure > Appeals > Reviewability > Notice of Appeal*
[HN1] *Tex. R. App. P. 37.1* requires an appellate clerk to notify the parties of a defect in a notice of appeal so it can be remedied.

*Civil Procedure > Appeals > Reviewability > Time Limitations*

[HN2] Absent a filing that extends the deadline, a party has thirty days from the judgment is signed to file a notice of appeal. *Tex. R. App. P. 26.1*. If a party timely files a motion to modify the judgment, notice of appeal must be filed within ninety days after the judgment is signed. *Tex. R. App. P. 26.1(a)(2)*.

*Civil Procedure > Appeals > Reviewability > Time Limitations*

[HN3] The Rules of Appellate Procedure calculate the period within which one must perfect an appeal from the time the judgment is signed, not from the filing of a pleading.

*Civil Procedure > Appeals > Reviewability > Time Limitations*

[HN4] The rules of appellate procedure provide for additional time within which to file a notice of appeal. *Tex. R. App. P. 26.3*.

*Civil Procedure > Appeals > Reviewability > Time Limitations*

[HN5] A notice of appeal filed outside the fifteen-day period provided by *Tex. R. App. P. 26.3* will not invoke the appellate court's jurisdiction.

*Civil Procedure > Parties > Self-Representation > Pleading Standards*

[HN6] Although we construe pro se pleadings and briefs liberally, we hold pro se litigants to the same standards as licensed attorneys and require them to comply with applicable laws and rules of procedure. To do otherwise would give a pro se litigant an unfair advantage over a litigant who is represented by counsel.

*Civil Procedure > Appeals > Reviewability > Time Limitations*

[HN7] The timely filing of a notice of appeal is jurisdictional. *Tex. R. App. P. 25.1(b)*.

**COUNSEL:** For APPELLANT: Kenneth McClain, PINE KNOT, KY.

For APPELLEE: Greg Long, Assistant District Attorney, Dallas, TX; Laura Lee Prather, Catherine Lewis Robb, Sedgwick, Detert, Moran & Arnold, LLP, Austin, TX.

**JUDGES:** Before Justices Richter, Lang-Miers, and Murphy. Opinion By Justice Richter.

**OPINION BY:** MARTIN RICHTER

**OPINION**

**MEMORANDUM OPINION**

Opinion By Justice Richter

This is an attempted appeal from the trial court's order granting summary judgment in favor of USA Today Newspaper, USA Today Internet Article Division, USA Today journalist Kevin McCoy, and USA Today journalist Paul Overberg (collectively, USA Today). Pro se appellant Kenneth McClain timely filed a notice of appeal on May 1, 2008, with the trial court only. He failed to serve a copy of the notice of appeal on the other parties to the trial court's judgment, and failed to file a copy with the appellate court clerk, as required by the rules of appellate procedure. See *TEX. R. APP. P. 9.5, 25.1(e)*.

Twelve days later, on May 12, 2008, McClain filed a motion to strike his notice of appeal, a motion to vacate judgment, and a motion for findings of fact and conclusions of law. In his motion to strike notice of appeal, McClain stated, "[i]n anticipation of filing my motion to vacate judgment and motion for finding of fact and conclusions of law, and motion to [*2] strike notice of appeal, I did not serve defendants yet under *T.R.A.P. 25.1(e)*. I will re-file my notice of appeal within 90 days after my motion to vacate judgment is filed." McClain did not intend for his May 1, 2008 notice of appeal to invoke the jurisdiction of this Court. McClain acknowledged he deliberately and intentionally failed to comply with the rules of appellate procedure by not serving a copy of the May 1, 2008 notice of appeal on all parties to the judgment.

Furthermore, the May 1, 2008 notice of appeal was defective. See *TEX. R. APP. P. 9.5, 25.1(e)*. [HN1] *Rule 37.1 of the rules of appellate procedure* requires an appellate clerk to notify the parties of a defect in a notice of appeal so it can be remedied. See *TEX. R. APP. P. 37.1*; see *Feist v. Berg, No. 12-04-00004-CV, 2004 Tex. App. LEXIS 1260, 2004 WL 252785, at *1 (Tex. App.--Tyler Feb. 11, 2004, pet. denied)* (mem. op.). However, in this case, the appellate clerk did not have the opportunity to notify McClain of the defect in his notice of appeal because a copy of the notice was not filed with the appellate court clerk. Additionally, it is clear from McClain's motion to strike the notice of appeal that he was aware of the defect in his notice of [*3] appeal, had an opportunity to remedy the defect, and deliberately elected not to do so. It is also clear from his motion to strike appeal

that McClain did not intend his May 1st notice of appeal to be a bona fide attempt to invoke the appellate court's jurisdiction. *See Verburgt v. Dorner, 959 S.W.2d 615, 616 (Tex. 1997).*

[HN2] Absent a filing that extends the deadline, a party has thirty days from the judgment is signed to file a notice of appeal. *TEX. R. APP. P. 26.1.* If a party timely files a motion to modify the judgment, notice of appeal must be filed within ninety days after the judgment is signed. *TEX. R. APP. P. 26.1(a)(2).* McClain's motion to vacate judgment had the same effect as a motion to modify the judgment and was sufficient to extend the time within which to perfect an appeal. *See Ramirez v. Williams Bros. Constr. Co., Inc., 870 S.W.2d 551, 552 (Tex. App.--Houston [1st Dist.] 1993, no pet.)* (any post-judgment motion which, if granted, results in a substantive change in the original judgment extends the time for perfecting an appeal). Accordingly, McClain's notice of appeal was due by July 14, 2008.

McClain filed his second notice of appeal on August 7, 2008. Again, McClain [*4] filed his notice with the trial court only. There is nothing in the record to indicate McClain served a copy of the second notice of appeal on the other parties to the trial court's judgment. He did not file a request for an extension of time within which to file his notice of appeal. Because the August 7, 2008 notice of appeal appeared to be untimely as to the April 14, 2008 judgment and May 12, 2008 motion to vacate, we directed the parties to file letter briefs addressing our jurisdiction over the appeal.

In his letter brief, McClain argued that his May 1, 2008 notice of appeal was valid, timely, and sufficient to perfect his appeal. McClain also argued that his August 7, 2008 notice of appeal was timely filed because the motions he filed extended his deadline for filing by ninety days. The record reflects McClain mistakenly believed he had ninety days from the date on which he filed his motion to vacate judgment to perfect his appeal, instead of ninety days from the date the judgment was signed. *See TEX. R. APP. P. 26.1(a)(2)*; *see also Farmer v. Ben E. Keith Co., 907 S.W.2d 495, 496 (Tex. 1995)*

[HN3] ("The Rules of Appellate Procedure calculate the period within which one must perfect [*5] an appeal *from the time the judgment is signed, not from the filing of a pleading.*") (emphasis in original).

[HN4] The rules of appellate procedure provide for additional time within which to file a notice of appeal. *See TEX. R. APP. P. 26.3.* However, McClain cannot obtain the benefit of *rule 26.3* because he did not file his notice of appeal within fifteen days of the deadline for filing the notice of appeal. *Id.*; *see also Verburgt, 959 S.W.2d at 617* (holding motion for extension is implied if perfecting instrument is filed within fifteen days of its due date). [HN5] A notice of appeal filed outside the fifteen-day period provided by *rule 26.3* will not invoke the appellate court's jurisdiction. *Id.*; *see also Owusu v. Citibank (South Dakota), N.A., No. 05-09-00834-CV, 2009 Tex. App. LEXIS 7376, 2009 WL 3003187, at *1 (Tex.App.--Dallas Sept. 22, 2009, no pet.)* (mem. op.).

[HN6] Although we construe pro se pleadings and briefs liberally, we hold pro se litigants to the same standards as licensed attorneys and require them to comply with applicable laws and rules of procedure. *Pena v. McDowell, 201 S.W.3d 665, 667 (Tex. 2006)*; *Mansfield State Bank v. Cohn, 573 S.W.2d 181, 184-85 (Tex. 1978)*; *Drum v. Calhoun, 299 S.W.3d 360, 364 (Tex. App.--Dallas 2009, pet. denied).* [*6] To do otherwise would give a pro se litigant an unfair advantage over a litigant who is represented by counsel. *Cooper v. Circle Ten Council Boy Scouts of Am., 254 S.W.3d 689, 693 (Tex. App.--Dallas 2008, no pet.).*

[HN7] The timely filing of a notice of appeal is jurisdictional. *TEX. R. APP. P. 25.1(b)*; *see Owusu, 2009 Tex. App. LEXIS 7376, 2009 WL 3003187, at *1.* Because McClain's first notice of appeal was defective and his second notice of appeal was untimely, we do not have jurisdiction over this appeal.

We dismiss this appeal for want of jurisdiction.

MARTIN RICHTER

JUSTICE

# *McDonald v. Newmyer*

Court of Appeals of Texas, First District, Houston

April 6, 1989

No. 01-88-00188-CV

**Reporter**

775 S.W.2d 652; 1989 Tex. App. LEXIS 765

FLOYD E. MCDONALD, Appellant v. YVONNE NEWMYER, Appellee

**Subsequent History:** [**1] Rehearing Denied September 14, 1989.

**Prior History:** On Appeal from the 335th District Court Burleson County, Texas, Trial Court.

## Core Terms

cost bond, days, motion for a new trial, perfecting an appeal, perfect, appellate record, bankruptcy court, trial court, trial judge, dism'd

## Case Summary

### Procedural Posture

Appellant movant sought review of a judgment from the 335th District Court, Burleson County (Texas), and filed his cost bond for appeal 346 days after the trial court signed the final judgment.

### Overview

Appellant movant filed a motion for a new trial following the trial court's final judgment. While the motion was pending, appellee debtor filed bankruptcy proceedings which stayed the district court action, however, the record did not indicate the date on which appellee filed for bankruptcy protection. The bankruptcy court granted relief from stay, and the court held that even if it assumed that the stay was in effect from the date the judgment was signed until the date the bankruptcy court granted relief from stay, appellant did not timely perfect his appeal because his cost bond was filed 114 days after the bankruptcy lifted the stay and 346 days after the trial judge signed the judgment. The court on its own motion, dismissed the appeal for want of jurisdiction.

### Outcome

The court dismissed appellant movant's appeal on its own motion for want of jurisdiction because the appellate record did not affirmatively reflect appellant's timely perfection of his appeal.

## LexisNexis® Headnotes

Civil Procedure > Appeals > Appellate Jurisdiction > General Overview

Civil Procedure > Appeals > Record on Appeal

*HN1* The appellate record must affirmatively reflect a reviewing court's jurisdiction.

Civil Procedure > Appeals > Reviewability of Lower Court Decisions > Timing of Appeals

*HN2* A reviewing court has no authority to entertain an appeal where the appellant does not timely perfect the appeal.

Civil Procedure > Judgments > Relief From Judgments > General Overview

Civil Procedure > Judgments > Relief From Judgments > Motions for New Trials

Civil Procedure > Appeals > Reviewability of Lower Court Decisions > Timing of Appeals

*HN3* An appellant perfects the appeal by filing a cost bond, deposit of cash, or affidavit of inability to pay within 90 days from the date of judgment when a motion for new trial is filed. *Tex. R. App. P. 40(a)*, *41(a)(1)*.

Civil Procedure > Appeals > Reviewability of Lower Court Decisions > Timing of Appeals

*HN4* The filing of the cost bond is a necessary and jurisdictional step in perfecting an appeal.

**Counsel:** Preston C. Goodwin, Hagerman & Seureau, Spring, for appellant.

Joan E. Scroggins, Caldwell, for appellee.

**Judges:** Warren, Dunn and Hughes, JJ.

**Opinion by:** PER CURIAM

## Opinion

 [*653]  This Court, on its own motion, dismisses this appeal for want of jurisdiction.

*HN1* The appellate record must affirmatively reflect our jurisdiction. *University Interscholastic League v. Payne*, 635 S.W.2d 754, 756 (Tex.App. -- Amarillo 1982, writ dism'd); *Stegall v. Cameron, 601 S.W.2d 771, 773* (Tex.Civ.App. -- Dallas 1980, writ dism'd). *HN2* We have no authority to entertain an appeal where the appellant does not timely perfect the appeal. *Wadkins v. Diversified Contractors, 714 S.W.2d 136, 137* (Tex. App. -- Houston [1st Dist.] 1986, no writ). *HN3* An appellant perfects the appeal by filing a cost bond, deposit of cash, or affidavit of inability to pay within 90 days from the date of judgment when a motion for new trial is filed. *Tex. R. App. P. 40(a)*, *41(a)(1)*. *HN4* The filing of the cost bond is a necessary and jurisdictional step in perfecting an appeal. *Davies* **[**2]** *v. Massey*, 561 S.W.2d 799, 801 (Tex.1978).

Here, the trial court signed its final judgment on February 10, 1987. Appellant filed his motion for new trial on February 26, 1987. Under ordinary circumstances, this motion would have been overruled by operation of law on April 26, 1987. *Tex. R. Civ. P. 329b(c)*. Appellant would have had to perfect his appeal by May 11, 1987, 90 days after the trial judge signed the judgment. *Tex. R. App. P. 41(a)(1)*. Appellant did not file his cost bond until January 22, 1988, 346 days after the trial judge signed the judgment.

The record before us does indicate that, while the motion for new trial was pending, appellee Yvonne Newmyer filed bankruptcy proceedings, which stayed the district court action. *See 11 U.S.C. § 362 (1982)*.

On September 30, 1987, the bankruptcy court granted relief from the stay. (Appellant filed a certified copy of this order with the trial court.) There is nothing in the record that indicates when appellee filed for bankruptcy protection or how long the stay tolled the appellate timetable. Even if we assume, however, that the stay was in effect from the date the judgment was signed until September 30, 1987, appellant **[**3]** did not timely perfect his appeal. Appellant filed his cost bond 114 days after the bankruptcy court lifted the stay. That filing was not timely.

The appellate record does not affirmatively reflect appellant's timely perfection of his appeal..

We dismiss the appeal.

Panel consists of Justice Warren, Dunn, and Hughes.

Judgment rendered and opinion delivered April 6, 1989





Caution
As of: Mar 30, 2015

**Memorial Hospital Of Galveston County, et al., Petitioners, v. Zelma Lee Gillis, Respondent**

**No. C-6709**

**SUPREME COURT OF TEXAS**

*741 S.W.2d 364*; *1987 Tex. LEXIS 391*; *31 Tex. Sup. J. 77*

**November 18, 1987, Decided**

**SUBSEQUENT HISTORY:**     [**1]

**PRIOR HISTORY:**     FROM GALVESTON COUNTY, FIRST DISTRICT.

**COUNSEL:** Petitioner: Mr. Scott Lyford, Office of the Atty., Galveston Co.

Respondent: Mr. Scott A. Sanes, Hardy, Milutin & Johns.

**OPINION BY:** PER CURIAM

**OPINION**

[*365]   Forty days after the trial court had dismissed her worker's compensation suit for want of prosecution, Zelma Lee Gillis filed an unverified motion to reinstate. Gillis' motion stated the nature of her action, explained the cause for the delay in prosecution, and claimed that her suit had merit. Following a hearing on her motion, the trial court reinstated her action. The record does not reflect what transpired at that hearing, and the order reinstating the cause does not recite the trial court's findings or the grounds for reinstatement. The action later went to trial, where Gillis had judgment on a jury verdict awarding some $ 52,000 for her injuries. The court of appeals affirmed.   *731 S.W.2d 692*. On September 19, 1987, we refused Memorial Hospital's application for writ of error, finding no reversible error. The

court grants Memorial Hospital's motion for rehearing, and without hearing oral argument reverses the judgment of the court of appeals and vacates [**2]   the judgment of the trial court. The opinion of the court of appeals conflicts with *TEX. R. CIV. P. 306(a)*.

The procedure for obtaining relief from a dismissal for want of prosecution is set forth in *TEX. R. CIV. P. 165a*. In pertinent part, *Rule 165a* states:

> [a] motion to reinstate shall set forth the grounds therefor and be verified by the movant or his attorney. It shall be filed with the clerk within 30 days after the order of dismissal is signed or within the period provided by *Rule 306a*.

It is undisputed that Gillis' motion was not filed within thirty days of the signing of the order dismissing her action. The question is whether it was filed within the time period provided by *TEX. R. CIV. P. 306a*. *Rule 306a* provides that a party who did not have notice or knowledge of a judgment or order may be afforded thirty days from the date he acquired such notice or knowledge in order to invoke the trial court's plenary jurisdiction, provided that he can:

> . . . prove in the trial court, on sworn motion and notice, the date on which the party or his attorney first either received a notice of the judgment or acquired actual

knowledge of the signing and that this [**3] date was more than twenty days after the judgment was signed.

*TEX. R. CIV. P. 306a (5)*. Compliance with the time periods prescribed by these rules is a jurisdictional prerequisite. Unless a party establishes in the manner prescribed by the rule that he had no notice or knowledge of the judgment, the general rule prevails: a trial court's power to reinstate a cause after dismissal expires thirty days after the order of dismissal is signed. *Harris County v. Miller, 576 S.W.2d 808 (Tex. 1979)*.

There is nothing in the record to indicate that Gillis sustained her burden of proving to the trial court that she had no notice or knowledge of the order dismissing her cause within twenty days of its rendition. In her motion for reinstatement, Gillis did not allege that she had no notice or [*366] knowledge of the order. The order granting her motion for reinstatement does not recite that Gillis had no notice or knowledge of the dismissal. No statement of facts has been brought before us that would indicate that Gillis sustained her burden of proof at the reinstatement hearing. Gillis supplied the court of appeals with a supplemental transcript, which contained a copy of the [**4] postcard notices sent by the district clerk to the attorneys for the parties in order to notify them of the dismissal. *See TEX. R. CIV. P. 306a (3)*. The postcards indicate the date of dismissal and the date upon which the postcards were sent. However, there is nothing to indicate that the trial court considered these postcard notices at the hearing, nor is there anything in the record to negate the possibility that Gillis or her attorney acquired actual knowledge of the dismissal within twenty days of its signing. *Rule 306a* plainly requires that this proof be made in the trial court, not the court of appeals. Since Gillis did not establish the applicability of *Rule 306a (4)* in the trial court in the manner prescribed by the rule, the trial court was without jurisdiction to reinstate her cause upon a motion filed forty days after dismissal. The subsequent judgment in Gillis' favor was therefore a nullity, and the court of appeals erred in affirming it.

The judgment of the court of appeals is reversed, and the judgment of the trial court in Gillis' favor is vacated. The trial court's order dismissing Gillis' cause for want of prosecution is reinstated.





Caution
As of: Mar 30, 2015

**OSCAR ORTIZ, Appellant, v. AVANTE VILLA AT CORPUS CHRISTI, INC.,
Appellee.**

**NUMBER 13-96-030-CV**

**COURT OF APPEALS OF TEXAS, THIRTEENTH DISTRICT, CORPUS
CHRISTI**

*926 S.W.2d 608*; *1996 Tex. App. LEXIS 3302*

**June 13, 1996, delivered**
**June 13, 1996, filed**

**SUBSEQUENT HISTORY:** [**1] Released for Publication July 18, 1996. Rehearing Overruled August 29, 1996.

**PRIOR HISTORY:** On appeal from the 319th District Court of Nueces County, Texas.

**COUNSEL:** Rene Rodriguez, 433 S. Tancahua, Corpus Christi, TX 78401.

Carlos Villarreal, 1100 First City Tower II, 555 North Carancahua, Corpus Christi, TX 78478.

**JUDGES:** Before Chief Justice Seerden, and Justices Dorsey and Chavez

**OPINION**

[*610] **OPINION**

Opinion Per Curiam

The question presented is whether a default judgment is final. Oscar Ortiz, individually and on behalf of the estate of Feliciana Ortiz, and three siblings sued Avante Villa for the death of their mother while she was in the defendant's care. A default judgment was granted the plaintiffs but, upon motion of the defendant, a new trial was granted. The defendant later took a summary judgment, and plaintiff appeal. Upon our examination of the transcript we questioned the finality of the initial default judgment, which, if it were final, would preclude our jurisdiction over the later summary judgment. The parties submitted briefs on the issue. We hold the default judgment was a final appealable judgment and dismiss this attempted appeal from the summary judgment [**2] for want of jurisdiction.

The trial court signed a "FINAL JUDGMENT BY DEFAULT" in favor of appellant on January 9, 1995, and appellee received notice within 20 days. *See TEX. R. CIV. P. 306a(4)*. Appellee filed its motion for new trial February 21 -- 43 days after the default judgment was signed. *Rule 329b* provides that a motion for new trial must be filed within 30 days after the signing of the judgment, and the court has plenary power to grant a new trial for only 30 days after the judgment has been signed if no motion for new trial is filed. *See id.* 329b(a), (d). There can be only one final judgment in a cause. *Id.* 301. If the default judgment is final, any later action by the trial court is void, including the subsequent summary judgment.

Appellee contends the default judgment was not final for several reasons, concluding that the trial court had jurisdiction to grant its motion for new trial although filed and acted on beyond the 30 day limit. We will address each of appellee's arguments about why the default judgment is not final.

## ALLEGED INADEQUACY OF JUDGMENT'S "MOTHER HUBBARD" CLAUSE

A judgment must dispose of all parties and all issues before the trial [**3] court in order for it to be considered final and appealable. *Park Place Hosp. v. Estate of Milo, 909 S.W.2d 508, 510 (Tex. 1995)*. When a judgment is entered at the conclusion of a trial on the merits, "it will be presumed for appeal purposes that the court intended, and did, dispose of all parties legally before it and of all issues made by the pleadings" and to be final. *Northeast Independent School District v. Aldridge, 400 S.W.2d 893, 898 (Tex. 1966)*. However, a default judgment is not presumed to be a final judgment. *Houston Health Clubs v. First Court of Appeals, 722 S.W.2d 692, 693 (Tex. 1986)*. Instead we must consider the language of the judgment, the record as a whole, and any relevant conduct of the parties to determine whether the trial court intended to dispose of all [*611] parties and issues. *Continental Airlines, Inc. v. Kiefer, 920 S.W.2d 274, 39 Tex. Sup. J. 468, 469 (1996)*.

The five plaintiffs in this case sued the defendant for damages for the wrongful death of their mother. Under the survival statute, they also sought money damages that the mother would have been entitled to had she lived. There was only one defendant. The default judgment [**4] awarded money damages to the plaintiffs. It disposed of all claims the plaintiffs were making on the sole defendant. There were no issues raised in the pleadings that were not disposed of in the judgment; the judgment gave full and complete relief for all plaintiffs against all defendants.

Appellee argues the Mother Hubbard clause in the default judgment under review is deficient because it recites, "All relief not specifically *requested* [1] herein is hereby denied." However, a Mother Hubbard clause becomes critical when the specific relief awarded in the judgment is less than that sought in the pleadings, and the "catch all" clause sweeps out those claims that were not specifically reached. The Mother Hubbard clause is not essential in the default judgment under consideration because all claims for relief are addressed in that judgment.

> 1 We emphasize the word "requested" to show how this clause differs from a typical Mother Hubbard clause. *Cf. Mafrige v. Ross, 866 S.W.2d 590, 590 n. 1 (Tex. 1993)* ("A Mother Hubbard clause generally recites that all relief not expressly granted is denied.")

[**5] We must consider the judgment in its entirety and look beyond the putative Mother Hubbard clause. *Martinez,* 875 S.W.2d at 313-14. The default judgment provides, "Plaintiffs are allowed such writs and process as may be necessary in the enforcement and collection of this judgment," and is entitled, "FINAL JUDGMENT BY DEFAULT." Both of these provisions indicate the judgment was intended to be a final judgment. *See Continental Airlines, 39 Tex. Sup. Ct. J. at 469.*

The default judgment here was granted with the intent to dispose of all parties and all issues, and the judgment disposed of all parties and claims raised by the pleadings. It does not fail to be a final judgment because the Mother Hubbard clause is deficient.

## ALLEGED AMBIGUITY RISING FROM UNASCERTAINABLE AWARD

Judgments must be sufficiently certain so a ministerial officer may determine the parties' rights under the judgment in order to carry it into execution. *Stewart v. USA Custom Paint & Body Shop, 870 S.W.2d 18, 20 (Tex. 1994)*. If the amount awarded by the judgment cannot be determined, the judgment is interlocutory. *H.E. Butt Grocery Co. v. Bay, 808 S.W.2d 678, 680* (Tex. App.--Corpus Christ [**6] 1991, writ denied). Appellee's next two complaints attack the finality of the default judgment on grounds that it is ambiguous and awards an unascertainable amount.

### Award of Prejudgment Interest

Appellee contends that the "FINAL JUDGMENT BY DEFAULT" is not final because it does not state how prejudgment interest should be calculated. However, this is a wrongful death suit and the method of calculating prejudgment is established by statute. *See* TEX. REV. CIV. STAT. ANN. art. 5069-1.05 § 6(a) (Vernon Supp. 1996). When the rate and means of calculating interest is a matter of law, it need not be stated in the judgment.

We have held that a judgment is interlocutory if it awards prejudgment interest but fails to specify which of two distinct but potentially applicable methods should be used to calculate the interest. *H.E Butt Grocery, 808 S.W.2d at 680-81*. However, we specifically noted that the suit did not involve a wrongful death claim. *Id. at 680*. The distinction between a suit based on a contract and a wrongful death suit is significant because there is only one method of calculating prejudgment interest in a wrongful death case. *See id. at 681*.

### Amount [**7] of Award to Each Party

Appellee further argues that the default judgment is not final because it does not specifically allocate how the total judgment is [*612] to be divided among the appellants. Appellee primarily supports its argument with *Mullen v. Roberts, 423 S.W.2d 576 (Tex. 1968)*.

The *Mullen* case involved plaintiffs requesting specific money damages in differing amounts under separate causes of action based on dissimilar theories of recovery. *Mullen, 423 S.W.2d at 578* (some plaintiffs sued for breach of contract but others sued for fraud). The *Mullen* court found the aggregate award at variance with the plaintiffs' petition because they pleaded separate and distinct causes of action seeking damages appropriate to their particular claims. *Id. at 578-79.*

In the present case, appellants are jointly suing over the death of their mother. The more analogous case is *Lewis v. Hall, 271 S.W.2d 447* (Tex. Civ. App.--Fort Worth 1954, writ ref'd n.r.e.). The *Lewis* case involved a summary judgment awarding an aggregate sum to the legatees of Lena Hall. As in our case, the appellants in *Lewis* complained that "the judgment does not apportion [**8] any particular amounts to the individual appellees." The *Lewis* court held, "It is of no concern of appellant how the various appellees divide up the money, or if they should get into litigation among themselves over such division." *Id. at 451.* We agree. The "FINAL JUDGMENT BY DEFAULT" resolves appellee's liability on the appellants' joint claims. How much each plaintiff receives in what capacity may be resolved by interpleader or in another forum; it should not interfere with the enforceability of the judgment.

*ALLEGED IMPROPER SERVICE*

Finally, appellee attacks the default judgment by claiming that appellants' service of process was inadequate. Appellee argues that the return of service does not identify the method of service or the document served, does not state how many copies of the petition were served, and does not properly name appellee.

The return of service recites that it was executed "by delivering to AVANTE VILLA AT CORPUS CHRIST BY DELIVERING TO PRENTICE HALL [2] BY DELIVERING TO PAT WIGGINS OPERATIONS SPECIALIST." The return of service states the manner of service as required by *Rule 107. See TEX. R. CIV. P. 107.*

> 2   Appellee has not complained before this court or before the trial court that Prentice Hall was not its registered agent as the citation and petition both suggest.

[**9] Appellee next claims the citation is defective because it does not state how many copies of the petition were served with the citation. We find no such requirement that the return of service state how many copies of the petition accompany the citation.

Next, appellee argues that the return of service does not "properly state the name of the item that was served."

However, the citation identifies the document served as "the PLAINTIFFS' ORIGINAL PETITION," which is exactly how the petition is entitled. Later in the citation, the petition is abbreviated as "PLTFS' ORIGINAL PET." The return of service refers to the petition as "the Petition attached" to the citation. These descriptions of the document served meet the requirements of *Rule 107 Id.; see also Herbert v. Greater Gulf Coast Enters., Inc., 915 S.W.2d 866, 871* (Tex. App.--Houston [1st Dist.] 1995, n.w.h.); *Woodall v. Lansford, 254 S.W.2d 540, 543* (Tex. Civ. App--Fort Worth 1953, no writ).

Finally, appellee contends that it is misnamed in the citation and return of service. However, the citation identifies appellee as "AVANTE VILLA AT CORPUS CHRISTI, INC." Appellee is later identified as "AVANTE VILLA @ CORPUS CHRISTI, [**10] INC." in the style of the case and as "AVANTE VILLA AT CORPUS CHRISTI" in the return Of service. Appellee contends that this is improper because of the omission of the accent from "Avante," because of the substitution of the symbol "@" for the word "at," and because of the omission of "Inc." We hold that these defects do not invalidate service.

A default judgment cannot withstand attack unless the record affirmatively" [*613] shows strict compliance with rules for service of process. *Primate Constr., Inc. v. Silver, 884 S.W.2d 151, 152 (Tex. 1994).* However, strict compliance does not require "obeisance to the minutest detail." *Herbert, 915 S.W.2d at 871.* Errors such as mistaken capitalization in the defendant's name and spelling errors too minor to raise any doubt that the correct person was served are insufficient to invalidate service. *See McDonough v. Williamson, 742 S.W.2d 737, 740* (Tex. App.--Houston [14th Dist.] 1987, no writ); *Payne & Keller Co. v. Word, 732 S.W.2d 38, 41* (Tex. App.--Houston [14th Dist.] 1987, writ ref'd n.r.e.). The omission of the accent mark and the substitution of the symbol "@" for the word "at" are akin to the errors that [**11] do not invalidate service. Moreover, omission of a corporate designation from the return of service does not invalidate service when the citation and attached petition both fully name the defendant with the proper designation. *See Stephenson v. Corporate Servs., Inc., 650 S.W.2d 181, 183* (Tex. App--Tyler 1983, writ ref'd n.r.e.). We hold that service is facially valid.

*CONCLUSION*

We hold that the "FINAL JUDGMENT BY DEFAULT" was the final judgment in this case. Without a timely motion for new trial the trial court had only 30 days from the date the judgment was signed to grant a new trial, and the motion for new trial must be filed within 30 days of the signing of the judgment. *TEX. R. CIV. P. 306a(4), 329b(d).* Once the 30 days had run,

appellee's remedies against the default judgment were restricted to a writ of error filed in this court or a bill of review filed in the trial court. *McEwen v. Harrison, 162 Tex. 125, 345 S.W.2d 706, 710-11 (Tex. 1961)*. Because we cannot construe the motion for new trial as a bill of review, we hold that the trial court had no authority to set aside the default judgment or to grant the subsequent summary judgment.

Because there can be [**12] only one final judgment in a cause, and the default judgment was final, we dismiss this appeal from the purported summary judgment for want of jurisdiction.

PER CURIAM

Opinion delivered and filed on this

the 13th day of June, 1996.





Questioned
As of: Mar 30, 2015

**Payne & Keller Company, Appellant, v. Peggy A. Word, Appellee**

**No. A14-86-712-CV**

**COURT OF APPEALS OF TEXAS, Fourteenth District, Houston**

***732 S.W.2d 38*; *1987 Tex. App. LEXIS 7231***

**May 7, 1987, Decided**
**May 7, 1987, Filed**

**PRIOR HISTORY:** [**1] Appeal from the 295th District Court of Harris County, Cause No. 85-33051.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellant employer sought review of a judgment from the 295th District Court of Harris County (Texas), which entered a default judgment against appellant in an action regarding an automobile collision with appellant's employee.

**OVERVIEW:** The trial court entered a default judgment against appellant employer in an action regarding an automobile collision with appellant's employee. Appellant challenged the default judgment on several points of error. On appeal, the court held that the default judgment was not void because the constable's printed signature on the citation complied with *Tex. R. Civ. P. 107*. Next, the court held that the constable's minor misspelling of registered agent's name was not a sufficient indication that the wrong person was served with process. The court found the trial court properly denied appellant's motion for new trial because it was not timely filed. The court found appellee's evidence that supported her claim for unliquidated damages was presumably properly authenticated and admissible because appellant did not demonstrate to the contrary. The court found that the trial court's award of prejudgment interest was not supported

by the pleadings. The court modified the judgment by excluding $ 36,630.25 awarded as prejudgment interest. The court affirmed the trial court's judgment.

**OUTCOME:** The court affirmed the default judgment entered against appellant employer in an action regarding an automobile collision with appellant's employee because the service of process was not defective, and appellant did not timely file its motion for new trial.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Service of Process > General Overview*
[HN1] In the absence of statutory direction as to the method of signing, a constable's printed signature strictly complies with *Tex. R. Civ. P. 107*.

*Civil Procedure > Pleading & Practice > Service of Process > General Overview*
[HN2] An affirmative showing of compliance with *Tex. R. Civ. P. 107* is not defeated merely because a constable fails to cross out the word defendant on a preprinted form.

*Civil Procedure > Judgments > Relief From Judgment > Motions for New Trials*

[HN3] *Tex. R. Civ. P. 329b* provides that a motion for new trial must be filed within thirty days after a judgment is signed.

*Civil Procedure > Pleading & Practice > Motion Practice > General Overview*
*Civil Procedure > Judgments > Relief From Judgment > Motions for New Trials*

[HN4] *Tex. R. Civ. P. 306a(4)* provides that if a party does not receive notice of a judgment within 20 days of the signing thereof, then the time periods controlling the filing of a motion for new trial shall begin on the date that the party or his attorney receives the notice or actual knowledge of the signing.

*Civil Procedure > Judgments > Relief From Judgment > Motions for New Trials*

[HN5] In order to establish the applicability of *Tex. R. Civ. P. 306a(4)*, appellant is required to prove in the trial court, on sworn motion and notice, the date on which the party or his attorney first either receives the notice of the judgment or acquires actual knowledge of the signing, and that this date is more than 20 days after the judgment is signed. *Tex. R. Civ. P. 306a(5)*.

*Evidence > Authentication > Self-Authentication*

[HN6] *Tex. R. Evid. 902(10)(a)* provides that records accompanied by an affidavit are admissible subject to certain conditions, which are that the records and affidavit be filed with the clerk at least 14 days prior to the date trial commences, and that the notice of the filing be served on the opposing party. This rule, however, does not preclude authentication of evidence by other means that do not have the 14-day notice requirement. *Tex. R. Evid. 901*.

*Civil Procedure > Pleading & Practice > Service of Process > General Overview*
*Civil Procedure > Remedies > Judgment Interest > Prejudgment Interest*

[HN7] New citation is necessary for a party who has not appeared when plaintiff by an amended petition seeks a more onerous judgment than prayed for in the original pleading.

**COUNSEL:** Rodney P. Bridgers, Jr., for Plaintiff or Petitioner.

Michael C. Neel, For Defendant or Respondent.

**JUDGES:** Chief Justice J. Curtiss Brown and Justices Robertson and Cannon.

**OPINION BY:** CANNON

**OPINION**

[*39] This is an appeal by writ of error from a default judgment. In five points of error, appellant complains that: (1) the return of citation is defective; (2) the damages awarded by the judgment are not supported by the pleadings, nor the evidence; and (3) the motion for new trial was erroneously denied. We agree that some of the damages are unsupported by the pleadings, and, accordingly, modify the judgment of the court below and affirm it as modified.

The cause of action arose from an automobile collision between appellee, Peggy Word, and Richard H. Jones (Jones). Appellee filed suit against appellant, Payne & Keller Company, on June 4, 1985, alleging that her car was struck from the rear by Jones's vehicle. Further, she alleged, at the time of the collision, Jones was in the course and scope of his employment for appellant. Appellee pleaded as damages her medical expenses; past and future [**2] lost wages; past and future physical pain and mental anguish; court costs; and interest on the judgment.

The petition was served on appellant's registered agent, Philippe Petitfrere, on June 19, 1985. Appellant, however, did not answer. On January 10, 1986, appellee filed a supplemental petition asking for prejudgment interest. This supplemental petition was not served on appellant.

On January 24, 1986, a default judgment was entered against appellant for $ 285,630.25 plus post judgment interest and court costs. The judgment recited that the cause of action was unliquidated and that appellee was entitled to damages upon [*40] good and sufficient evidence presented to the court. Included in the judgment was the sum of $ 35,630.25 for prejudgment interest. Appellant filed an untimely motion for new trial on March 27, 1986, which was not granted. Appellant's appeal by writ of error was subsequently filed.

In point of error one, appellant maintains that the default judgment is void because the constable's return fails to state the name of the constable who executed the service of citation as required by *Tex. R. Civ. P. 107*. In support of this point, appellant relies on our case, [**3] *Houston Pipe Coating Co., Inc. v. Houston Freightways, Inc., 679 S.W.2d 42* (Tex. App. -- Houston [14th Dist.] 1984, writ ref'd n.r.e.), wherein we stated that *Rule 107* requires that the return must be signed by the sheriff or constable or by a deputy who indicates for whom he

or she acted as deputy. We acknowledge that *Houston Pipe Coating Co., Inc.* is the applicable rule of law in this case. However, contrary to appellant's assertions, the citation and officer's return satisfies the requirements of *Houston Pipe Coating Co., Inc.*

In *Houston Pipe Coating Co., Inc., 679 S.W.2d at 45*, we held: [HN1] "In the absence of statutory direction as to the method of signing, Constable Maxon's printed signature strictly complies with *Rule 107*." Here, the citation and officer's return was marked with a file stamp that stated:

1985 Jun 19 PM 1:57

R.C. Martinez

Constable, Precinct No. 6Harris County, Texas

Thus we find, in accordance with the holding of *Houston Pipe Coating Co., Inc.*, that Constable Martinez's printed signature strictly complies with *Tex. R. Civ. P. 107*. Point of error one is overruled.

In point of error two, appellant complains [**4] that the return fails to correctly set forth the manner of service as required by *Tex. R. Civ. P. 107* because the return indicates that the wrong individual was served in the wrong capacity. Specifically, appellant asserts that the petition and citation state that service is to be on Payne & Keller Company, by serving its registered agent, Philippe Petitfrere (Petitfrere). However, the officer's return states that service was executed "by delivering to Philipee Petitfreere defendant, . . . ." Thus, appellant argues, because the registered agent's name was misspelled by the officer, and because the word "defendant," preprinted on the citation and return form, appears after Petitfrere's name, strict compliance with *Tex. R. Civ. P. 107* is not shown and the default judgment is void.

In arguing for reversal on the basis of the misspelling of Petitfrere's name by the deputy, appellant relies on *Uvalde Country Club v. Martin Linen Supply Co., 690 S.W.2d 884 (Tex. 1985)*. We find, however, that the facts in *Uvalde Country Club* and the cases cited therein are distinguishable from the facts before us. In *Uvalde Country Club*, citation was directed to Uvalde Country Club by serving [**5] its registered agent, "Henry Bunting." The sheriff's return on the citation showed delivery to "Henry Bunting." However, the original petition alleged that the registered agent was "Henry Bunting, Jr." The Texas Supreme Court stated that the record did not show that the person served with citation, "Henry Bunting," was authorized to receive service or that he was connected with the appellant, because the

petition alleged that the registered agent was "Henry Bunting, Jr." Thus, the supreme court held, the record did not reflect strict compliance with the rules of civil procedure relating to issuance, service, and return of citation. In *Faver v. Robinson, 46 Tex. 204 (1876)* (cited in *Uvalde Country Club*), a default judgment was reversed and remanded because suit was brought against John R. Favers, citation was issued to John R. Favers, and the return indicated that John R. Favers was served with the petition. However, a default judgment was taken against John R. Faver. The court stated that a petition, citation, and service against Favers does not warrant a judgment by default against Faver. In *Hendon v. Pugh, 46 Tex. 211 (1876)* (cited in *Uvalde Country Club*), a default [**6] judgment was reversed and remanded because the return indicated that service was on [*41] "J.N. Hendon." However, the defendant, against whom judgment was rendered, was J.W. Hendon. The court held that the return failed to show, with reasonable certainty, that the citation was served on the defendant in the suit. Clearly, in these cases, there is some uncertainty concerning whether the person against whom judgment was taken, or who was served as the registered agent, was the correct person.

Here, however, there is no uncertainty. The petition and citation both indicate that the registered agent was "Philippe Petitfrere." The constable's minor misspelling of Petitfrere's name is not a sufficient indication that service was not had upon the correct person. We find that the face of the record reflects strict compliance with *Tex. R. Civ. P. 107*.

Further, we find no merit in appellant's argument that the return does not reflect that Petitfrere was served in the correct capacity. In considering the record as a whole, including the original petition, the citation, and the return, we find that service was had upon appellant by delivering citation and petition to its registered agent, [**7] Philippe Petitfrere. Moreover, [HN2] an affirmative showing of compliance with *Tex. R. Civ. P. 107* will not be defeated merely because the constable failed to cross out the word "defendant" on a preprinted form. *See Houston Pipe Coating Co., Inc., 679 S.W.2d at 44-45* (court stated that it was unnecessary to cross out the alternate mode of service on the return). Point of error two is overruled.

In point of error four, appellant maintains that it satisfied the test in *Craddock v. Sunshine Bus Lines, Inc., 134 Tex. 388, 133 S.W.2d 124 (1939)* and thus the trial court erred in failing to grant its motion for new trial. We note, however, that appellant's motion for new trial was filed March 27, 1986, sixty-two days after the final judgment was signed. [HN3] *Texas Rule of Civil Procedure 329b* provides that a motion for new trial must be

filed within thirty days after the judgment is signed. Thus, appellant's motion for new trial was filed untimely.

We note, however, that in its motion for new trial, appellant alleged that its motion was timely filed under the provisions of *Tex. R. Civ. P. 306a(4)*. This court has previously considered this argument in an attempted direct appeal filed by [**8] appellant and found it to be without merit. [HN4] *Rule 306a(4)* provides, in part, that if a party has not received notice of a judgment within twenty days of the signing thereof, then the time periods controlling the filing of a motion for new trial shall begin on the date that the party or his attorney received notice or actual knowledge of the signing. [HN5] In order to establish the applicability of *Tex. R. Civ. P. 306a(4)*, appellant was "required to prove in the trial court, on sworn motion and notice, the date on which the party or his attorney first either received a notice of the judgment or acquired actual knowledge of the signing and that this date was more than twenty days after the judgment was signed." *Tex. R. Civ. P. 306a(5)*. However, appellant failed to obtain a hearing on this motion or a fact finding from the trial court stating when appellant received notice of the judgment. Without this fact finding, we were unable to determine whether appellant met his burden of proving that the provisions of *Tex. R. Civ. P. 306a(4)* applied to extend the time for filing its motion for new trial. Thus, we concluded in our unpublished opinion of *Payne Keller Co. v. Word*, No. A14-86-394-CV [**9] (Tex. App. -- Houston [14th Dist.] June 26, 1986) that appellant's motion for new trial was filed untimely. Point of error four is overruled.

In point of error five, appellant maintains that appellee offered no competent evidence to support her unliquidated damages. Specifically, appellant complains that the affidavits presented by appellee during the damages hearing were not served on appellant at least fourteen days before the hearing as required by *Tex. R. Evid. 902(10)(a)*. In essence, appellant is maintaining that appellee's affidavits from various health providers were not properly authenticated and thus, were inadmissible.

[*42] *Rule 902(10)(a)* is an evidentiary rule providing for self-authentication of business records accompanied by affidavit. [HN6] It provides that records accompanied by an affidavit are admissible subject to certain conditions, two of which are that the records and affidavit be filed with the clerk at least fourteen days prior to the date trial commences and that notice of the filing be served on the opposing party. This rule, however, does not preclude authentication of evidence by other means, which do not have the fourteen-day notice requirement. [**10] *See Tex. R. Evid. 901*. Appellant has failed to obtain a statement of facts from the hearing on damages. Nor has appellant demonstrated that he was precluded from obtaining statement of facts. Without a statement of facts to review, we cannot determine whether appellant's affidavits were authenticated by another means. Thus, we presume the authenticity of the affidavits supporting appellant's damages. Consequently, we find competent evidence to support the judgment for damages. Point of error five is overruled.

In point of error three, appellant complains that the award of prejudgment interest is not supported by the pleadings. We agree. Appellee filed a supplemental petition asking for prejudgment interest. Appellant was never served with a copy of the supplemental petition. [HN7] New citation is necessary for a party who has not appeared when the plaintiff, by an amended petition, seeks a more onerous judgment than prayed for in the original pleading. *Weaver v. Hartford Accident and Indemnity Co., 570 S.W.2d 367, 370 (Tex. 1978)*. We hold this rule applies with equal force where a supplemental petition is filed rather than an amended petition. Consequently, we sustain point of error [**11] three and modify the judgment by excluding the $ 35,630.25 awarded as prejudgment interest.

The judgment of the court below is affirmed as modified.





Positive
As of: Mar 30, 2015

**WILLIAM ESPINOZA PENA, PETITIONER, v. DAVID MCDOWELL, INDI-VIDUALLY AND IN HIS OFFICIAL CAPACITY, ET AL., RESPONDENTS**

**NO. 05-0546**

**SUPREME COURT OF TEXAS**

*201 S.W.3d 665*; *2006 Tex. LEXIS 788*; *49 Tex. Sup. J. 1017*

**August 31, 2006, Opinion Delivered**

**SUBSEQUENT HISTORY:** Released for Publication October 20, 2006.
Related proceeding at *Pena v. McDowell, 2007 Tex. App. LEXIS 2559 (Tex. App. Tyler, Mar. 30, 2007)*

**PRIOR HISTORY:** [**1] ON PETITION FOR REVIEW FROM THE COURT OF APPEALS FOR THE TWELFTH DISTRICT OF TEXAS.
*Pena v. McDowell, 2004 Tex. App. LEXIS 9664 (Tex. App. Tyler, Oct. 29, 2004)*

**COUNSEL:** For PETITIONER: Mr. William Espinoza Pena, Pro se, Abilene, TX.

For RESPONDENT: Mr. David W. McDowell, Pro se, Tennessee Colony, TX.

For AMICUS CURIAE: Honorable Greg Abbott, AT-TORNEY GENERAL of TEXAS, Mr. Barry Ross McBee, Mr. Edward D. Burbach, Mr. David A. Talbot, Jr.,Ms. Kimberly L. Fuchs, Mr. Rafael Edward Cruz, OFFICE of the ATTORNEY GENERAL, Austin, TX.

**OPINION**

[*665] **PER CURIAM**

William Pena, an inmate incarcerated at the Angleton unit of the Texas Department of Criminal Justice--Institutional Division, filed suit against the Department as well as several individual defendants, including the Office of the Attorney General, alleging various tort claims and violations of his state and federal constitutional rights. The trial court dismissed Pena's suit with prejudice as "frivolous or malicious." The court of appeals affirmed the dismissal but reformed the trial court's judgment to read "without prejudice." *Pena v. McDowell, 2004 Tex. App. LEXIS 9664, No. 12-03-00141-CV, 2004 WL 2423546, at *4 (Tex. App.--Tyler Oct. 29, 2004, no pet.)*. This was based on the assumption that the trial court had dismissed Pena's suit for failure to [*666] comply with *section 14.004 of the Civil Practices and Remedies Code*, which requires an inmate to list, with particularity, the operative facts of any suit previously filed *in forma pauperis* by the inmate. *2004 Tex. App. LEXIS 9664, [WL] at *3-4* [**2] Under Texas law, such an error may be corrected through an amended pleading, so a dismissal with prejudice is not appropriate. *See id.* (citing *Thomas v. Skinner, 54 S.W.3d 845, 847 (Tex. App.--Corpus Christi 2001, pet. denied))*.

Pena thereupon re-filed his suit. The trial court, acting *sua sponte*, again dismissed the case with prejudice as frivolous. Although Pena filed motions for reconsideration and for an evidentiary hearing, the trial court did not rule on either request. Pena filed a notice of appeal.

Immediately thereafter, the clerk of the Twelfth Court of Appeals sent Pena a letter that read, in relevant part:

Pursuant to *TEX. R. APP. P. 37.1*, notice is hereby given that the notice of appeal filed in this case fails to contain the information specifically required by *TEX. R. APP. P. 25.1(e)*. You are hereby notified pursuant to *TEX. R. APP. P. 42.3*, that unless a proper notice of appeal is filed with the trial court on or before Monday, May 9, 2005, the appeal will be referred to the Court for dismissal.

(emphasis omitted). Pena did not respond to this letter, and [**3] the court summarily dismissed his appeal, citing Pena's failure to comply with *Rule 25.1(e)* of the Rules of Appellate Procedure. [1] ___ S.W.3d ___ (Tex. App.--Tyler 2005, pet. filed).

> 1 Pena claims that he did not respond to the letter because he believed he had complied with *Rule 25.1(e)*. Additionally, Pena alleges that someone from the clerk's office of the court of appeals notified him in a May 5, 2005 letter (received May 11, 2005) that he had perfected his appeal. A copy of that letter, however, has not been included in the record.

*Rule 25.1(e)* requires that a notice of appeal in a civil case "be served on all parties to the trial court's final judgment." The court of appeals apparently dismissed the appeal because the notice of appeal failed to show on its face that the Office of the Attorney General had been properly notified of the appeal. However, the defect in Pena's notice of appeal does not appear to be that he failed to *actually* serve the [**4] Office of the Attorney General. Pena maintains in his brief that he did mail a copy of the notice of appeal to the Office of the Attorney General, and the amicus brief submitted on behalf of the Attorney General carefully avoids contradicting this statement. Instead, the Attorney General's position (and that of the court of appeals in the decision below) is that Pena's failure to include the name and address of the Attorney General on the *certificate of service* attached to the notice of appeal constitutes a violation of *Rule 25.1(e)*.

However, *Rule 25.1(e)* makes no mention of a certificate of service. Indeed, nowhere in *Rule 25* are litigants directed to include a certificate of service with their notice of appeal or as to what the contents of such a certificate ought to be. *Rule 25.1(e)* merely requires actual service on all parties to the trial court's judgment. A certificate of service is simply one method of demonstrating that actual service occurred and is addressed within an entirely different section of the Rules of Appellate Procedure. *See TEX.R.APP.P.9.5(d)* ("A document presented for filing must contain proof of service in the form of either an [**5] acknowledgment of service by the person served or a certificate of service.").

And while it is true that Pena's failure to include the Attorney General's name and address on his certificate of service violates *Rule 9.5(d)*, it does not, strictly [*667] speaking, violate *Rule 25.1(e)*--the only basis cited for the inadequacy of his notice of appeal and the stated reason for the dismissal of his appeal. As a result, the dismissal of the appeal cannot be sustained on that ground.

We recognize that courts of appeals have routinely dismissed similar cases on the basis of *Rule 25.1(e)* even though a dismissal under *Rule 9.5(d)* would have been more appropriate. *See McCaleb v. Descisciolo, 2005 Tex. App. LEXIS 3795, No. 12-05-00122-CV, 2005 WL 1177062, at *1 (Tex. App.--Tyler May18, 2005, no pet.)*; *Guajardo v. Guajardo, 2003 Tex. App. LEXIS 2538, No. 13-02-364-CV, 2003 WL 1562553, at *1 (Tex. App.--Corpus Christi Mar. 27, 2003, no pet.)*. However, other courts have properly cited *Rule 9.5(d)* where appropriate. *See Reiners v. Reiners, 2005 Tex. App. LEXIS 411, No. 10-04-00359-CV, 2005 WL 114669, at *1 (Tex. App.--Waco Jan. 19, 2005, no pet.)*.

While an experienced attorney might have been able to discern from the court's citation [**6] to *Rule 25.1(e)* that there was a problem with the certificate of service, our decision today does not amount to a special accommodation to a pro se litigant. To the contrary, it has long been our position that pro se litigants are not exempt from the rules of procedure. *Wheeler v. Green, 157 S.W.3d 439, 444, 48 Tex. Sup. Ct. J. 408 (Tex. 2005)*; *Mansfield State Bank v. Cohn, 573 S.W.2d 181, 184-85, 22 Tex. Sup. Ct. J. 43 (Tex. 1978)*. Rather, any litigant is entitled to relief from an erroneous decision of a court even though, as in this case, an experienced attorney might have been able to discern the actual reason for dismissal.

*Rule 37.1 of the Rules of Appellate Procedure* clearly requires an appellate clerk to notify the parties of a defect in the notice of appeal so that the appealing party can remedy the defect. Here, the appellate clerk failed to correctly identify the defect in Pena's notice of appeal and give him a chance to correct the mistake.

Accordingly, without hearing oral argument, *see TEX. R. APP. P. 59.1*, we reverse the court of appeals' judgment and remand the case to that court for proceedings consistent with this opinion. [2]

> 2 Pena's pending motions requesting a temporary restraining order, preliminary injunction, and judicial notice are hereby denied.

201 S.W.3d 665, *; 2006 Tex. LEXIS 788, **;
49 Tex. Sup. J. 1017

[**7]





Positive
As of: Mar 30, 2015

**D. PRIEST & VAN ZANDT COMMISSION COMPANY, INC., Appellants v. TEX. ANIMAL HEALTH COMMISSION, Appellee**

**No. 05-88-01417-CV**

**COURT OF APPEALS OF TEXAS, Fifth District, Dallas**

*780 S.W.2d 874*; *1989 Tex. App. LEXIS 3142*

**November 6, 1989**

**PRIOR HISTORY:**    [**1]    On Appeal from 294th Civil District Court, Van Zandt County, Texas, Trial Court Cause No. 87-389.

**COUNSEL:** Molly D. Shannon, Austin, Texas.

Mark J. Calabria, Rebecca L. Calabria, Kaufman, Texas.

**JUDGES:** Justices Howell, Linda Thomas and Ovard. Dissenting Opinion By Justice Charles Ben Howell.

**OPINION BY:** THOMAS

**OPINION**

[*875]    D. Priest and Van Zandt Commission Company (hereafter collectively "Priest") appeal from a permanent injunction entered by summary judgment, enjoining Priest from: 1) failing to maintain proper cattle ownership records for cattle sold through them; 2) refusing to allow Texas Animal Health Commission (hereafter "Commission") representatives to examine such records; and 3) failing to brand cattle exposed to brucellosis. In two points of error, Priest contends that the trial court erred in granting the Commission's motion for summary judgment because: 1) the summary judgment evidence did not entitle the Commission to judgment as a matter of law and did not establish that there were no genuine issues of material fact; and 2) the affidavits and attachments to the Commission's motion for summary judg-

ment were inadequate as a matter of law to establish [**2]    that no material issue of fact existed. We agree that the proof failed to establish that Priest failed to keep records as required by law. We conclude, however, that the other grounds for injunction were properly established. Thus, the trial court's judgment is affirmed in part and reversed and remanded in part.

STANDARDS OF REVIEW

A. *Permanent Injunction*

A successful applicant for injunctive relief must demonstrate the following four grounds for relief: 1) the existence of a wrongful act; 2) the existence of imminent harm; 3) the existence of irreparable injury; and 4) the absence of an adequate remedy at law. *Frey v. DeCordova Bend Estates Owners Ass'n, 632 S.W.2d 877, 881* (Tex. App. -- Fort Worth 1982), *aff'd, 647 S.W.2d 246 (Tex. 1983).*

The grant or refusal of a permanent or temporary injunction is ordinarily within the sound discretion of the trial court and, on appeal, review of the trial court's action is limited to the question of whether the action constituted a clear abuse of discretion. *Janus Films Inc. v.* [*876]    *City of Fort Worth, 163 Tex. 616, 617, 358 S.W.2d 589, 589 (1962)* (temporary injunction); *Mejerle v. Brookhollow Office Products* [**3]    *, 666 S.W.2d 192, 193* (Tex. App. -- Dallas 1983, no writ) (temporary injunction); *Electronic Data Sys. Corp. v. Powell, 508 S.W.2d 137, 139* (Tex. Civ. App. -- Dallas 1974, no writ)

(temporary injunction, but suggesting that abuse of discretion standard applies to all injunctions); *Lee v. Bowles, 397 S.W.2d 923, 926 (Tex. Civ. App. -- San Antonio 1965, no writ)* (permanent injunction). Where the facts conclusively show a party is violating the substantive law it becomes the duty of the court to enjoin the violation and in such case there is no discretion to be exercised. *City of Houston v. Memorial Bend Util. Co., 331 S.W.2d 418, 422 (Tex. Civ. App. -- Houston 1960, writ ref'd n.r.e.)*.

Although a litigant has the right to a trial by jury in an injunction action, only ultimate issues of fact are submitted for jury determination. *State v. Texas Pet Foods, Inc., 591 S.W.2d 800, 803 (Tex. 1979)*. The jury does not determine the expediency, necessity or propriety of equitable relief. *Id.; Alamo Title Co. v. San Antonio Bar Ass'n, 360 S.W.2d 814, 816 (Tex. Civ. App. -- Waco 1962, writ ref'd n.r.e.)*. As the supreme court has noted:

> We do not consider the question [**4] of likelihood of [defendant's] resumption or continuation of the acts enjoined as being an ultimate issue of fact for the jury. . . . A jury in equity, even under a blended system, does not decide the issue of expediency, necessity or propriety of equitable relief. . . . It was an element deducible from the circumstances for the court to consider in determining whether wrong or injury might be anticipated and whether chancery powers should be exercised. It constituted here, in effect, a mixed question of law and fact at most. Such questions are not for the jury in injunction cases.

*Texas Pet Foods, 591 S.W.2d at 803, quoting Alamo Title Co., 360 S.W.2d at 816*.

B. *Summary Judgment*

The function of a summary judgment is not to deprive a litigant of his right to a full hearing on the merits of any real issue of fact, but to eliminate patently unmeritorious claims and untenable defenses. *Gulbenkian v. Penn, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952)*. Under *rule 166a of the Texas Rules of Civil Procedure*, summary judgment may be rendered only if the pleadings, depositions, admissions, interrogatory answers, and affidavits show 1) that there is no genuine [**5] issue as to any material fact *and* 2) that the moving party is entitled to judgment as a matter of law. *TEX. R. CIV. P. 166a(c)*.

The applicable standards for reviewing a summary judgment may be summarized as follows:

> 1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.
>
> 2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.
>
> 3. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985); Montgomery v. Kennedy, 669 S.W.2d 309, 310-11 (Tex. 1984)*. With the standards of review for injunction and for summary judgment in mind, we turn to the summary judgment proof offered in support of Priest's violations of the Texas Agriculture Code.

FAILURE TO KEEP PROPER RECORDS

The Texas Agriculture Code requires that each livestock auction commission merchant keep a record of transportation of livestock to and from the place of sale, [**6] including the name and address of the original owner and the purchaser of the livestock. *TEX. AGRIC. CODE ANN. § 147.042* (Vernon 1982). The statute provides that the commission merchant shall retain the records for at least one year after the date of sale. *Id. § 147.042(d)*.

[*877] The Commission also points to *section 147.041 of the Texas Agriculture Code* and to rule 35.2(e) of the Texas Bovine Brucellosis Regulations promulgated by the Commission pursuant to sections 161.046 and 163.061 of the Texas Agriculture Code, as requiring Priest to keep records of the names and addresses of sellers and purchasers of cattle. *Section 147.041* requires Priest to keep records of all livestock sold. *TEX. AGRIC. CODE ANN. § 147.041(a)*. It does not explicitly state that Priest must keep records including the name and address of sellers and purchasers of livestock, although the statute requires him to file with the commissioners court a quarterly report containing this information. *TEX. AGRIC. CODE ANN. § 147.041(c)*. Because the statute does not specifically require Priest to keep the information the Commission contends he failed to keep, we conclude that violation of this provision will [**7] not support the injunction. Rule 35.2(e) provides that the market will supply certain

information to the veterinarian making a market test of cattle, including the full name and address, including zip code, of the owner of the cattle at the time the cattle are delivered to the market. Again, although the rule certainly implies a requirement to keep records in order to supply the information to the veterinarian, there is no explicit requirement that Priest keep such records. The Commission has not alleged that Priest failed to give the required information to the veterinarian. Thus, violation of rule 35.2(e) will not support the injunction.

As proof that Priest failed to keep records including the name and address of the original owner and the purchaser, the Commission attached to its motion for summary judgment Priest's answers to interrogatories, an affidavit of Wayne Rogers, a postmaster, and excerpts from the United States Government Manual pertaining to mail. The Commission served on Priest two sets of interrogatories. The sixty questions in the two sets each asked Priest to: "Provide full name, address including county and telephone number for seller/original owner of [certain [**8] cattle identified by back tag number] sold through Van Zandt Commission Company, Inc. on [a certain date]." The dates of sales were between January 4, 1986 and December 20, 1986. Priest's answers to the interrogatories were served on counsel on June 17, 1988. Priest's responses to a number of the interrogatories included name, address including route number and box number or street address, city and state, and zip code. Several interrogatory answers included a name and route number, city and state, but did not include a box number and zip code. Others included a name, city and state, or merely a name. In response to one interrogatory asking for the name and address of the seller/original owner of back tag #74 493 sold through Van Zandt Commission Company on November 22, 1986, Priest responded, "Information not available." The affidavit of the postmaster and the excerpts from the Government Manual concerning the elements of a proper address were offered to show that the information provided by Priest did not, in many respects, constitute full names and addresses.

The Commission's theory for summary judgment was that Priest's inability to produce names and addresses for his responses [**9] to the interrogatories was proof that, as a matter of law, Priest did not keep the records required by the Agriculture Code. The hypothesis is compelling, except for one failing. The Agriculture Code required Priest to retain records from sales for only one year. TEX. AGRIC. CODE ANN. *§ 147.042(d)*. The fact that Priest could not produce information on June 17, 1988, concerning sales in 1986, constitutes no proof that Priest failed to keep the records of sale for one year as required by the Code. In fact, Priest stated in his affidavit that he has always maintained the proper records.

Such statements of the nonmovant must be taken as true. *Nixon, 690 S.W.2d at 548*.

We recognize that Priest did not raise this precise argument in his response to summary judgment, nor in his brief on appeal. We note, however, that this point concerns a deficiency of proof that Priest is entitled to raise without first complaining [*878] in his response to the motion for summary judgment. No response from the nonmovant is required when the movant's summary judgment proof is legally insufficient. *Cove Investments, Inc. v. Manges, 602 S.W.2d 512, 514 (Tex. 1980)*. Further, Priest's points [**10] of error aver generally that the trial court erred in granting the summary judgment because the Commission failed to prove its entitlement to such judgment. These points embrace all reasons for the failure of proof which rendered the granting of the summary judgment improper. *Id. at 517*. We hold that the summary judgment proof failed to establish the Commission's entitlement to summary judgment on the basis of a failure by Priest to maintain proper records. Without proof of unlawful conduct or proof of intent to commit such conduct, injunctive relief is improper. *Frey, 632 S.W.2d at 881*. We sustain that portion of point of error one contending that the Commission failed to establish its right to judgment on the ground of failure to keep proper records.

REFUSAL OF ACCESS TO RECORDS

*Section 147.042 of the Texas Agriculture Code* provides that the commission merchant shall prepare the transportation records referenced above and make them available for public inspection within twenty-four hours after receipt of the livestock and that these records are to be retained for at least one year after the date of sale. *TEX. AGRIC. CODE ANN. § 147.042*. The Commission contended that [**11] Priest had refused to allow Commission representatives to examine these records. As proof, the Commission offered the affidavit of Richard Hanson, Animal Health Inspector. Hanson averred that on several occasions in the exercise of his official duties he had attempted to examine the records of the Van Zandt Commission Company and was told by Priest or his wife, who acted as bookkeeper for the company, that he would not be allowed to view any of the records unless he brought a search warrant. He lists several dates upon which he was refused access to the records, such dates being within one year of sales referenced in the interrogatories.

Priest argues that Hanson's affidavit will not support summary judgment because Hanson is an interested witness. *Rule 166a of the Texas Rules of Civil Procedure* provides that a summary judgment may be based on uncontroverted evidence of an interested witness if the evidence is clear, positive and direct, otherwise credible and

free from contradictions and inconsistencies, and could have been readily controverted. *TEX. R. CIV. P. 166a(c)*; *Republic Nat'l Leasing Corp. v. Schindler, 717 S.W.2d 606, 607 (Tex. 1986)*. We conclude that the statements [**12] in Hanson's affidavit that on several listed dates he was refused access to records by Priest and his wife are clear, positive, direct and could have been readily controverted. Further, this evidence was not controverted by Priest. Thus, the summary judgment could be based upon Hanson's affidavit. Hanson clearly stated that he was not allowed to view records which the Agriculture Code required Priest to retain and make available for public inspection. We hold that this evidence established the Commission's entitlement to summary judgment on this ground as a matter of law.

FAILURE TO BRAND CATTLE EXPOSED TO BRUCELLOSIS

The Texas Bovine Brucellosis Regulations require cattle infected with brucellosis and cattle exposed to infected cattle to be appropriately branded. Cattle identified as being infected with brucellosis are branded on the left jaw with the letter "B." Cattle from the same herd as any infected cattle are considered suspects, and are to be branded on the left jaw with the letter "S." Tex. Animal Health Comm'n, *4 TEX. ADMIN. CODE § 35.2(h) (West Oct. 15, 1988)* (brucellosis). All exposed cattle are to be branded prior to moving, except that cattle on the premise of origin [**13] may be moved to a livestock market where they are to be identified by "S" brand upon arrival. *Id. § 35.2(h)(2)*.

As proof that Priest had moved suspect cattle without first "S" branding them, the Commission offered the affidavits of Rick Nabors, director of the State-Federal laboratories [*879] in Texas, and veterinarian Edward L. Ptacek. In addition, Nabors's affidavit was accompanied by documents reflecting the results of brucellosis tests of cattle passing through the Van Zandt market. Nabors stated that he is a microbiologist and that the attached documents correctly reflect that brucellosis tests were conducted on blood samples received from a herd of cattle owned by the Malouf Ranch. The test results on two animals, identified by backtag numbers, were positive. Nabors averred further, "Based on the card test, the veterinarian classified both animals as reactors [infected with brucellosis]. The State-Federal laboratory tests confirm his results." Edward Ptacek stated that he had been employed by the Commission as the director of Area 5, the area in which the Van Zandt Commission Company conducted business. On a certain date, he personally observed seventy-three head [**14] of cattle from the Malouf Ranch, which herd contained two brucellosis-infected animals, being moved without proper "S" branding as required for the seventy-one exposed cattle.

Priest argues that Nabors's affidavit and attachments do not support the summary judgment because the affidavit contains hearsay, is not based upon personal knowledge, and fails to establish the admissibility of the attachment. Priest's hearsay complaint is directed to the statement that "the veterinarian classified both animals as reactors." We agree that such statement is inadmissible hearsay, properly objected to in Priest's response to the motion for summary judgment, and should be disregarded. Priest further contends that this hearsay statement shows that Nabors's affidavit is not based on personal knowledge, but rather upon the statement of some unknown veterinarian. We disagree. The affidavit states that Nabors confirmed this statement from his own laboratory tests. Priest also argues that the documents attached to Nabors's affidavit are inadmissible because the documents are not directly referenced or identified in the affidavit, the affidavit does not reflect whether the attachments are true and correct [**15] copies of the originals, and the affidavit does not establish the admissibility of the documents.

Priest is mistaken in stating that the affidavit does not refer to the documents. The affidavit clearly states, "The attached documents correctly reflect . . ."; thus, the affidavit does directly reference the documents. Priest's argument that the affidavit fails to state that the copies are true and correct copies is more troublesome. Priest correctly states that such words are not used. *Rule 166a* states that attachments referred to in an affidavit shall be sworn or certified copies. *TEX. R. CIV. P. 166a(e)*. Documents which are not sworn to or certified in any way do not constitute summary judgment proof. *Lopez v. Hink, 757 S.W.2d 449, 450* (Tex. App. -- Houston [14th Dist.] 1988, no writ).

The supreme court has held, however, that copies of documents which are attached to a *properly prepared affidavit* are sworn copies within the meaning of *rule 166a*. *Schindler, 717 S.W.2d at 607*; *Zarges v. Bevan, 652 S.W.2d 368, 369 (Tex. 1983)*. An affidavit which avers that the documents are true and correct copies is considered a properly prepared affidavit. *Schindler, 717* [**16] *S.W.2d at 607*. *Schindler* does not, however, limit a properly prepared affidavit to one containing these magic words. We hold that Nabors's statement that the documents accurately reflect the results of tests performed by the laboratory he supervises properly verified the documents.

Priest's last complaint directed to Nabors's affidavit and attached documents is that the affidavit fails to establish the admissibility of the attachments "with respect to who made the document, when they were prepared or whether or not they were business records." Priest does not aid us with citation to authority; nevertheless, we discern that his complaint is that the documents were

hearsay in that they were not shown to be admissible business records. Priest raises this complaint for the first time on appeal. Because he failed to raise this hearsay objection in his response to the motion for summary judgment, he has waived any complaint as to [*880] consideration of inadmissible evidence as part of the summary judgment record. *Dolenz v. A.B., 742 S.W.2d 82, 83-84 n.2* (Tex. App. -- Dallas 1987, writ denied).

Priest attacks Ptacek's affidavit because the witness references "the foregoing [**17] test records," an apparent reference to the documents attached to Nabors's affidavit, which preceded Ptacek's affidavit when presented to the court. Priest again complains that the documents were not properly sworn. We reiterate that Nabors's affidavit properly verified the exhibit. Priest further complains that the referenced document was not attached to Ptacek's affidavit. *Rule 166a(e)* provides that sworn copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or *served therewith*. Priest does not contend that the documents attached to Nabors's affidavit were not served together with Ptacek's affidavit when the Commission's motion for summary judgment was served.

Having determined what parts of the summary judgment proof may be considered, we turn now to the sufficiency of that proof. Nabors stated that two animals from the Malouf herd tested positive for brucellosis, and were therefore considered reactors. The test results show that the test was conducted at Priest's facility. Further, Ptacek stated that he personally observed, at the Van Zandt Commission Company, suspect cattle that were moved without first being branded "S".

We conclude [**18] that the summary judgment proof showed that Priest had moved suspect cattle without first branding the cattle with the letter "S" as required by the Texas Bovine Brucellosis Regulations promulgated by the Commission. Thus, the Commission established its entitlement to summary judgment on this ground as a matter of law.

SUMMARY

We hold that the trial court properly granted the summary judgment concluding that Priest had refused to allow Commission representatives to examine records and that Priest had allowed suspect cattle to be moved without first branding them as required by state regulations. We also conclude that the trial court did not abuse its discretion in entering the permanent injunction on these grounds. We further hold that the evidence failed to show that, as a matter of law, Priest failed to keep records as required by law. Thus, we conclude that the trial court abused its discretion in entering the injunction on this ground. We reverse the summary judgment on this ground and remand for further proceedings. In addition,

the permanent injunction enjoining Priest from failing to maintain proper records is dissolved.

Before Justices Howell, Linda Thomas and Ovard.

[**19] Dissenting opinion by Justice Charles Ben Howell.

**DISSENT BY:** HOWELL

**DISSENT**

Dissenting Opinion By Justice Charles Ben Howell

I dissent. The majority opinion will not stand up to close analysis.

(1) The majority concludes by affirming on grounds that "the trial court did not abuse its discretion." The wrong test has been applied. Summary judgment will not lie unless the movant shows his entitlement thereto *as a matter of law*. It is error to award an injunction through the summary judgment process unless the movant's proof is such that the trial court is wholly without discretion. Only where the summary judgment evidence is such that it demonstrates that the denial of relief would be a clear abuse of discretion may a permanent injunction be entered in response to a motion for summary judgment. Otherwise, as in the case at hand, the movant has not met his burden to show that he is entitled to recover, as a matter of law.

(2) At the outset, the majority recites a four-fold test that the movant must satisfy in order to obtain a permanent injunction. This dissent will assume for the time being that the State sufficiently proved the existence of unlawful conduct. However, the record [**20] is bereft of any showing upon the other three elements, imminent harm, irreparable injury, and no adequate remedy at law. After firmly declaring that such a showing is required, the majority has no comment on the State's failure to make a showing upon the three latter elements [*881] which it has held (and correctly so) to be necessary.

(3) The majority declares that injunction is a discretionary remedy and declares that appellate review is "limited to the question whether the action constituted a clear abuse of discretion." However, all of the cases cited involved the issuance of an injunction following a trial on the merits. As already stated, in order to fulfill the summary judgment requirement that the movant show himself entitled to judgment "as a matter of law," the movant must have demonstrated to the trial court that it was without discretion to deny the injunction. [1]

> 1    The majority states that "where the facts conclusively show a party is violating the substantive law it becomes the duty of the court to enjoin the violation," citing *City of Houston v. Memorial*

*Bend Util. Co., 331 S.W.2d 418, 422* (Tex. Civ. App. -- Houston [1st Dist.] 1960, writ ref'd n.r.e.). However, a reading of *Memorial Bend* reveals that its declaration was far too broad. In that case, a utility company unilaterally increased its monthly rates in violation of a valid city ordinance. The defendant utility gave every indication that it intended to continue charging its unlawful rates unless restrained. The appellate court, finding the ordinance valid, held that the trial court committed a clear abuse of discretion in refusing a temporary injunction. Laying aside the fact the *Memorial Bend* only involved a temporary injunction, there are many differences from the case at hand, particularly with respect to proof that the defendant's unlawful conduct would continue unless enjoined and the lack of a showing of irreparable injury.

[**21] It is rare that a plaintiff by motion for summary judgment is able to meet, as a matter of law, the rigorous demands of the equity which must be satisfied before an injunction may issue. Equitable relief is discretionary relief. The trial court must engage in a balancing of the equities. In the ordinary instance, the applicant must plead and prove that he has no adequate remedy at law. Equity will not, in the ordinary instance, engage in the enforcement of the criminal law. It is further well established that he who seeks equity must do equity, that equity aids the vigilant, that equity will not do a vain or useless thing, and that equity only exacts restitution, never vengeance.

The plaintiff Commission appears to rely on two statutes for exemption from the principles of equity ordinarily applicable in cases such as this. Neither statute expressly entitles state officials or state agencies to equitable relief except in compliance with the rules of general application. It is a well established principle that the state, its agencies, and its officials enter court and litigate on the same basis and subject to the same requirements of law as private individuals. We should be very slow [**22] to read into the statutes in question any special provisions in favor of the Commission.

The first of the statutes invoked is, by far, the most specific in its application. *Section 161.131 of the Texas Agriculture Code* provides that "any citizen" may sue to enjoin violations of "this chapter." *TEX. AGRIC. CODE ANN. § 161.131(a)* (Vernon 1982). However, it is doubtful if that statute has any application because it expressly exempts subchapter F, being sections 161.111 through 161.116 entitled "Regulation of Livestock Markets." It appears that the violations found by the majority simply do not fall within the injunction provision of the code.

Seemingly, the Commission would sidestep this problem by arguing that it seeks to enjoin violations of its rules (which do little or nothing more than parrot the provisions of the statutes) rather than violations of the statute pertaining to "Livestock Markets." *Id.* §§ 161.111 through 161.116. However, it is well settled that an administrative agency has no power to adopt rules that defeat the plain meaning of statutes.

When we search for the rule-making authority of the Commission, we find that the statutes contain several grants to the [**23] Commission of authority to promulgate rules. First of all, the exempted subchapter contains rule-making authority. *Id*. §§ 161.111 through 161.116. However, if there is no authority to enforce the statute by injunction, there can be no authority to enforce by injunction the rule-making authority contained in the same statute. After all, water can rise no higher than its source.

[*882] Other parts of the same chapter describe the powers and duties of the Commission, and contain additional provisions authorizing entry and granting rule making power. There are also provisions outside of the exempted subchapter relating to the inspection, treatment, quarantine, and sale or marketing of diseased animals.

Another chapter of the Code, entitled "Livestock Commission Merchants," contains, among other things, record-keeping and inspection provisions. *Id.* §§ 147.001-147.065 (Vernon 1982 & Vernon Supp. 1989). Still another chapter entitled "Brucellosis Control Areas," sections 163.001 through 163.087, contains further provisions relating to rule-making, entry, reports, testing, branding, and handling of diseased animals. *Id.* §§ 163.001-163.087 (Vernon 1982 & Vernon Supp. 1989).

[**24] The Commission would apparently argue that the rules upon which it relies were not promulgated under authority of section 161.112, a portion of "this chapter" to which the injunction provision is expressly inapplicable. Presumably, the argument is that the rules were adopted under authorizations found elsewhere from sections 161.111 through 161.116 and that the rules are therefore not affected by the no-injunction proviso of *section 161.131(a)*.

The easy answer to this argument is that *the specific controls over the general*. Inasmuch as the statutory scheme expressly makes the injunction provision inapplicable to "Livestock Markets" and to the rule making authority pertaining to "Livestock Markets," we must hold that the Commission may not subvert the clear statutory command through the adoption of rules pertaining to "Livestock Markets" on the basis of generalized rule-making authority contained elsewhere in the Code. Any other construction operates to nullify a clear decla-

ration of legislative intent. *TEX. AGRIC. CODE ANN. § 161.131(a)* (Vernon 1982).

The other statutory authorization for injunctive relief upon which the Commission would rely is contained in the Administrative [**25] Procedure and Texas Register Act. *TEX. REV. CIV. STAT. ANN. art. 6252-13a, § 19A* (Vernon Supp. 1989). This statute has such broad and general application that we must be slow indeed to import into it any special prerogatives on the part of the State, its officials, and its agencies to obtain injunctive relief. We must hold that this latter statute is no more than a general statement of principle that the State, its agencies, and its employees may obtain injunctive relief wherever the usages of equity forged out over the centuries make injunctive relief available and appropriate.

The foregoing analysis cannot, by any means, be interpreted as a holding that the statutes just discussed preclude the Commission from injunctive relief. *Sections 65.001 through 65.031 of the Texas Civil Practice and Remedies Code* generally regulate the availability of injunction for all litigants. *TEX. CIV. PRAC. & REM. CODE ANN. §§ 65.001-65.031* (Vernon 1986); *see also TEX. R. CIV. P. 693*. This analysis of the injunction statutes returns to the point from which it departed. *No*, this defendant and its operations as a livestock commission market are not wholly exempt from being forced through the [**26] issuance of an injunction to comply with the Agriculture Code. *Yes*, the writ is available on suit by the Commission. However, the Commission enters the courts of this State on the same basis as any other litigant, being neither more entitled nor less entitled to injunctive relief than any other citizen.

One reservation must be made to the foregoing statement. A state official or agency cannot be held to the exacting standard of irreparable injury to which a private litigant is generally held. Where a public official is expressly charged with the enforcement of a regulatory scheme, if we were to hold that he must show irreparable injury to himself, to state property or to the state treasury, we would obviously be effectively denying the State, and those through whom it must act, of injunctive relief in virtually all cases. The irreparable injury requirement is satisfied on behalf of the State when it shows the threat of clear, immediate and substantial injury, of an irreparable nature, to the protected class or to a specific group through violation of the regulatory provision which the [*883] State officer or agency is charged by law to enforce. Thus, the irreparable injury [**27] requirement was satisfied in the case of *Gluck v. Texas Animal Health Comm'n, 501 S.W.2d 412, 415* (Tex. Civ. App. -- San Antonio 1973, writ ref'd n.r.e.). In that case, the landowner refused to allow his cattle to be tested for brucellosis. The trial court issued an injunction via motion for summary judgment. The appellate court

affirmed: "Irreparable harm would be threatened to the cattle industry of Frio County if appellant cannot be compelled to comply with the statute." An outbreak of the disease was then manifest in the area and all herds were being mandatorily tested. In order to control the spread of the infection, immediate and widespread testing was imperative. The irreparable injury requirement was satisfied. *Id.*

Having outlined the principles upon which this case should be decided, this dissent turns to the specifics. Our majority has found that the defendant committed two violations of the Agriculture Code. On several occasions, defendant refused to allow inspection of his records by Commission personnel. Proof that the infraction occurred and that it was repeated does not necessarily prove irreparable injury. In fact there was no showing that defendant was attempting [**28] to hide the fact that he was engaged in the practice of dealing in diseased cattle, if such be the real contention of the plaintiff Commission. By his affidavit, defendant has offered the following explanation of his conduct:

> I have previously understood from other livestock barn owners that they were sued by animal owners for revealing or producing records. I now understand that such records are public in nature and must be produced at all times upon request. . . . I have no intention of violating the laws of the State of Texas in the future.

By its summary judgment, the trial court has deprived defendant of the opportunity to present his testimony in person to the trier of fact. Had the trier of fact believed that defendant was sincere and credible, had the trier of fact decided that no harm was done, had the trier of fact decided that future violations were unlikely, did the trier of fact possess the discretion, after the plenary hearing, to deny injunctive relief to the Commission? Of course, he did. By the same measure, it was error to enter a summary judgment in this case. It is not the office of summary judgment to substitute trial by affidavit for trial upon the [**29] merits with live witnesses for both sides. The office of summary judgment is limited to the elimination of patently unmeritorious claims.

The other violation found against defendant was that a herd containing two diseased animals passed through defendant's premises without being branded in accordance with the rules and statutes. However, unlike *Gluck*, the cattle in question had gone far from defendant's premises when summary judgment was rendered. Our trial court could do naught but enjoin future conduct of a similar nature. However, there was no claim of any con-

tinued pattern of activity, no claim that defendant routinely allowed diseased cattle to be sold through his premises, or even that defendant or anyone in authority at defendant's premises knew that the cattle in question were either subject to the disease or that they had not been branded as suspects.

It is not to be doubted that the statute imposes affirmative duties on a livestock market operator. He has the affirmative duty to see to it that diseased cattle are not sold through his premises in violation of the law. However, in the absence of some showing of dereliction of duty, in the absence of some showing of the [**30] threat of future violations of the same sort, the trial court after hearing the evidence in full must deny injunctive relief upon this count. The Commission has not made prima facie proof of its entitlement to an injunction simply by proving one single past incident and offering no evidence of culpability and no evidence of any likelihood of recurrence.

Injunction is a harsh remedy and must be carefully regulated and confined to proper cases. *Raine v. Searles, 302 S.W.2d 486, 487* (Tex. Civ. App. -- El Paso 1957, no writ). Injunctions are issued only to prevent imminent [*884] harm. *Lloyd v. Alaska Worldwide, Inc., 550 S.W.2d 343, 348* (Tex. Civ. App. -- Dallas 1977, no writ). In the absence of a showing that the acts complained of probably will occur again, acts occurring prior to the suit will not furnish a basis for injunctive relief. *Edgar v. Glenn W. Turner Enterprises, 487 S.W.2d 847, 849* (Tex. Civ. App. -- Austin 1972, no writ); *see Knopf v. Standard Fixtures Co., 581 S.W.2d 504, 506* (Tex. Civ. App. -- Dallas 1979, no writ); *Burklund v. Hackett, 575 S.W.2d 389, 392* (Tex. Civ. App. -- Tyler 1978, no writ). The purpose of injunctive relief is to halt [**31] wrongful acts that are threatened or in the course of accomplishment, rather than to grant relief against past actionable wrongs or to prevent the commission of wrongs not imminently threatened.

*Texas Employment Comm'n v. Martinez, 545 S.W.2d 876, 877* (Tex. Civ. App. -- El Paso 1976, no writ).

At the trial upon the merits, the Commission will further be burdened to present evidence that it has no adequate remedy at law. A corollary to this rule provides that the remedy of injunction is not available to prevent violations of the criminal law. Each of the infractions for which defendant has been enjoined is punishable as a misdemeanor. In addition, *sections 147.021 through 147.029 of the Agriculture Code* require defendant to provide a bond. Suit on the bond is an available recourse with respect to some, if not all, of the infractions here alleged. TEX. AGRIG. CODE ANN. §§ 147.021-147.029 (Vernon 1982). The Commission has asked for and received injunctive relief without a showing that it ever sought these statutory remedies or why they would not be effectual. Without such a showing, the Commission is not entitled to injunctive relief.

*Gluck* does not hold to the contrary. The [**32] real thrust of *Gluck* is that the immediacy of the situation -- the ongoing spread of an epidemic -- required relief that the criminal law could not expeditiously provide. If *Gluck* made any broader ruling, it should be disavowed. If the Commission desires to bypass the remedies set forth on the face of the statute, it must explain its reasons for doing so. Without an adequate explanation, injunction must be denied.

Again, the objective of equity is restitution, not vengeance. For the refusal to allow the inspection of records upon request, as required by law, a fine is a singularly appropriate remedy. Why did the Commission forgo such a plain and apparently adequate remedy? The record is entirely silent. Likewise, isolated instances of misbranding can be addressed by the criminal law. Until and unless the Commission adequately explains its failure to seek these remedies, injunction must be denied.

I therefore dissent. For the reasons given, this case must be reversed and remanded for trial upon its merits.

# *Primate Constr. v. Silver*

Supreme Court of Texas

September 15, 1994, Delivered

No. 94-0723

**Reporter**

884 S.W.2d 151; 1994 Tex. LEXIS 130; 37 Tex. Sup. J. 1216

PRIMATE CONSTRUCTION, INC., PETITIONER v. JIM SILVER, SUZANNE SILVER AND SILVER INSPECTION SERVICES, INC., RESPONDENTS

**Prior History:** **[\*\*1]** ON APPLICATION FOR WRIT OF ERROR TO THE COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS.

## Core Terms

recited, court of appeals, return of service, default

## Case Summary

### Procedural Posture

Defendant employer applied for a writ of error against a default judgment from the Court of Appeals for the Fourteenth District of Texas entered in favor of plaintiffs, who were injured in an automobile accident involving an employee. The employer claimed that there was error in that the sheriff's pre-printed return of service did not show that the employer was served with a version of plaintiffs' petition naming the employer as a defendant.

### Overview

The employee and plaintiffs were involved in an automobile accident. Plaintiffs were injured and filed suit. Their original petition named only the employee as defendant; plaintiffs' second amended petition named the employer. The trial court granted default judgment for plaintiffs. The appellate court affirmed the judgment. The record indicated that the citation was attached to a true and correct copy of plaintiffs' second amended petition; however, the sheriff's pre-printed return of service form indicated that the employer was served with a true and correct copy of only plaintiffs' original petition. The court granted the employer's application for a writ of error, pursuant to Tex. R. App. P. 170, and

reversed the default judgment. The court observed that in order to be entitled to reversal by writ of error, a party who did not participate at trial had six months in which to show error on the face of the record. Thus, because the sheriff's return showed that the employer was served with a version of plaintiffs' petition in which the employer was not named as a defendant, the lower appellate court erred in finding no error on the face of the record.

### Outcome

The court granted the employer's application for writ of error and reversed a default judgment that was entered for plaintiffs. The court remanded the cause to the trial court.

## LexisNexis® Headnotes

Civil Procedure > Appeals > Reviewability of Lower Court Decisions > Timing of Appeals

***HN1*** In order to be entitled to reversal by writ of error, a party who did not participate at trial has six months in which to show error on the face of the record.

Civil Procedure > ... > Pleadings > Service of Process > General Overview

Civil Procedure > Judgments > Pretrial Judgments > General Overview

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > General Overview

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Default Judgments

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Relief From Default

***HN2*** Strict compliance with the rules for service of citation must affirmatively appear on the record in order for a default judgment to withstand direct attack. There are no presumptions in favor of valid issuance, service,

and return of citation in the face of a writ of error attack on a default judgment.

Civil Procedure > ... > Pleadings > Service of Process > General Overview

Civil Procedure > Judgments > Pretrial Judgments > General Overview

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > General Overview

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Default Judgments

*HN3* A return of service is not a trivial, formulaic document. It has long been considered prima facie evidence of the facts recited therein. The recitations in the return of service carry so much weight that they cannot be rebutted by the uncorroborated proof of the moving party. The weight given to a return is no less when the recitations impeach the judgment than when they support it.

Civil Procedure > ... > Pleadings > Service of Process > General Overview

*HN4* It is the responsibility of the one requesting service, not the process server, to see that service is properly accomplished. *Tex. R. Civ. P. 99(a)*. This responsibility extends to seeing that service is properly reflected in the record. The Rules of Civil Procedure allow for liberal amendment of the return of service to show the true facts of service. *Tex. R. Civ. P. 118*. If the facts as recited in a sheriff's return, pre-printed or otherwise, are incorrect and do not show proper service, the one requesting service must amend the return prior to judgment.

**Opinion by:** PER CURIAM

# Opinion

[*152] PER CURIAM

On appeal by writ of error from default judgment, we consider whether Defendant Primate Construction Co., Inc. has shown error on the face of the record because the sheriff's pre-printed return of service states that Primate Construction was served with a version of the plaintiff's petition in which it was not named as a defendant. Pursuant to Rule 170 of the Texas Rules of Appellate Procedure, a majority of the court grants Petitioner's application for writ of error and, without hearing oral argument, reverses the judgment of the court of appeals and remands the cause to the trial court.

Jim Silver, Suzanne Silver and Silver Inspection Services, Inc. originally filed suit against Gary Wayne Martin, the driver of the car with which they collided and an employee of Primate Construction, Inc. Primate Construction was first named as a defendant in Plaintiffs' Second Amended Petition. The citation in the record indicates that the citation was attached to a true and correct copy of Plaintiffs' *Second Amended* Petition; however, the pre-printed [**2] return of service form, signed by the sheriff, indicates that Primate Construction was served with a true and correct copy of the Plaintiffs' *Original* Petition. When Primate Construction failed to answer, the plaintiffs took a default judgment, from which Primate Construction appealed by writ of error to the court of appeals.

*HN1* In order to be entitled to reversal by writ of error, a party who did not participate at trial has six months in which to show error on the face of the record. *Brown v. McLennan County Children's Protective Services, 627 S.W.2d 390, 392 (Tex. 1982)*. Because the sheriff's return shows that the defendant was served with a version of the plaintiffs' petition in which Primate Construction was not named as a defendant, the court of appeals erred in finding no error on the face of the record.

For well over a century, this court has required that *HN2* strict compliance with the rules for service of citation affirmatively appear on the record in order for a default judgment to withstand direct attack. *Wilson v. Dunn, 800 S.W.2d 833, 836 (Tex. 1990)*; *Ulvade Country Club v. Martin Linen Supply Co., 690 S.W.2d 884, 886 (Tex. 1985)*; *McKanna v. Edgar* [**3] , 388 S.W.2d 927, 929 (Tex. 1965); *Flynt v. Kingsville, 125 Tex. 510, 82 S.W.2d 934 (1935)*; *Sloan v. Batte, 46 Tex. 215, 216 (1876)*; *Roberts v. Stockslager, 4 Tex. 307 (1849)*. There are no presumptions in favor of valid issuance, service, and return of citation in the face of a writ of error attack on a default judgment. *Ulvade*, 690 S.W.2d at 836; *McKanna, 388 S.W.2d at 929*; *Flynt, 82 S.W.2d at 934*. Here, the plaintiffs argue that there is no error because the blanks filled in on the citation show the correct petition was attached, while the only evidence to the contrary is a form on which the sheriff made no affirmative alteration. This argument ignores the weight given to the recitations in the sheriff's return as proof of service.

*HN3* The return of service is not a trivial, formulaic document. It has long been considered prima facie

evidence of the facts recited therein. *Pleasant Homes v. Allied Bank of Dallas, 776 S.W.2d 153, 154 (Tex. 1989)*; *Gatlin v. Dibrell, 74 Tex. 36, 11 S.W. 908, 909 (1889)* ("The return of the officer imports absolute verity, and was sufficient to authorize the rendition of judgment upon default . . . ."). *See also Gerland's* [**4] *Food Fair, Inc. v. Hare*, 611 S.W.2d 113, 116 (Tex. Civ. App.--Houston [1st Dist.] 1980, writ ref'd n.r.e.); *Pierce-Fordyce Oil Ass'n v. Staley*, 190 S.W. 814, 815 (Tex. Civ. App.--Amarillo 1916, no writ). The recitations in the return of service carry so much weight that they cannot be rebutted by the uncorroborated proof of the moving party. *Ward v. Nava, 488 S.W.2d 736, 738 (Tex. 1972)*; *Sanders v. Harder, 148 Tex. 593, 227 S.W.2d 206, 209 (Tex. 1950)*; *Gatlin, 11 S.W. at 909*; *Pierce-Fordyce*, 190 S.W. at 815. The weight given to the return is no less when the recitations impeach the judgment than when they support it. [1]

[**5] The officer's return does not cease to be prima facie evidence of the facts of [*153] service simply because the facts are recited in a form rather than filled in by the officer. *HN4* It is the responsibility of the one requesting service, not the process server, to see that service is properly accomplished. *Tex. R. Civ. P. 99(a)*. This responsibility extends to seeing that service is properly reflected in the record. The Rules of Civil Procedure allow for liberal amendment of the return of service to show the true facts of service. *Tex. R. Civ. P. 118*. If the facts as recited in the sheriff's return, pre-printed or otherwise, are incorrect and do not show proper service, the one requesting service must amend the return prior to judgment. Under the current state of the record, the only proof that Primate Construction was served with anything at all is a return which recites service of a pleading in which it had not been sued.

Proper service not being affirmatively shown, there is error on the face of the record, and the court of appeals erred in holding otherwise. Pursuant to Rule 170 of the Texas Rules of Appellate Procedure, a majority of the court grants the application for writ [**6] of error of Primate Construction Co., Inc. and, without hearing oral argument, reverses the judgment of the court of appeals and remands the cause to the trial court.

OPINION DELIVERED: September 15, 1994

---

[1] Primate Construction also argues that the record does not demonstrate the authority of person served to accept service of process on its behalf; however, the Court of Appeals correctly decided this point. The Sheriff's return recited that the person served was Primate Construction's registered agent. A registered agent is authorized to accept service of process for the corporation. Tex. Bus. & Com. Code Ann. § 2.11 (Vernon 1980). The return is prima facie evidence of a person's status as a registered agent in the same way that it is prima facie evidence of a corporate officer's status. *See Pleasant Homes, Inc. v. Allied Bank of Dallas, 776 S.W.2d 153, 154 (Tex. 1989)*.

# *Quaestor Invs., Inc. v. Chiapas*

Supreme Court of Texas

July 1, 1999, Opinion Delivered

No. 98-0835

**Reporter**

997 S.W.2d 226; 1999 Tex. LEXIS 85; 42 Tex. Sup. J. 1016

QUAESTOR INVESTMENTS, INC., PETITIONER v. STATE OF CHIAPAS, A STATE OF THE UNITED MEXICAN STATES, RESPONDENT

**Prior History:** **[**1]** ON PETITION FOR REVIEW FROM THE COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS.

**Disposition:** Vacated the judgment of the court of appeals, and dismissed appeal.

## Core Terms

state court, remand order, timetable, court of appeals, writ of error, mailed, federal district court, certified copy, federal court, revesting, default judgment, writ petition, recommence

## Case Summary

### Procedural Posture

Petitioner investment company sought review of a judgment from the Court of Appeals for the First District of Texas, which denied petitioner's motion to dismiss respondent Mexican state's writ of error to appeal a default judgment. Petitioner asserted that the writ of error was not filed within the six-month time period required under *Tex. R. App. P. 59.1*, following an attempt by respondents to remove the case to federal court.

### Overview

Judgment reversed against petitioner investment company's motion to dismiss for want of jurisdiction after respondent Mexican state filed a writ of error to appeal a default judgment. The court held that the writ of error was not filed within the required six-month time period of *Tex. R. App. P. 59*. Petitioner's obtained a default judgment against respondent in state court.

With only 14 days remaining in its six-month window to appeal the default judgment, respondent removed the case to federal court, which suspended the limitations period. The federal court found the removal to be untimely, and remanded the action back to state court. Respondent filed its writ of error eight months later. The court held that the appeals timetable recommenced upon the re-vesting of jurisdiction in the state court, which occurred when the federal court executed the remand order and mailed a copy to the state court. The court rejected the lower court's reasoning that under *Tex. R. Civ. P. 237a*, the timetable did not recommence until the party seeking remand gave notice to the other party. Accordingly, the court vacated the judgment of the lower court and dismissed respondent's writ of error.

### Outcome

The court vacated the judgment that denied petitioner investment company's motion to dismiss respondent Mexican state's writ of error to appeal. The court found that the appellate timetable recommenced when the federal court executed the remand order and mailed a copy to the state court. Finding that respondent failed to file the writ of error within six months of that event, the court dismissed respondent's appeal.

## LexisNexis® Headnotes

Civil Procedure > Appeals > Appellate Jurisdiction > Final Judgment Rule

Governments > Legislation > Statute of Limitations > Time Limitations

*HN1* The four elements necessary for review by writ of error are: (1) the petition must be brought within six months of the date of judgment; (2) by a party to the suit; (3) who did not participate in the trial; and (4) error must be apparent from the face of the record. The six-month time limit is mandatory and jurisdictional.

Civil Procedure > ... > Removal > Postremoval Remands > General Overview

Civil Procedure > ... > Removal > Postremoval Remands > Jurisdictional Defects

Governments > Courts > Clerks of Court

*HN2* Remanding a case to state court terminates the jurisdiction of a federal district court over that case. There is no requirement that the state court take any action to reassert jurisdiction. In answering the question of when a jurisdictional transfer occurs between federal and state court, most courts have looked to *28 U.S.C.S. § 1447(c)*, which provides, in part, that: a certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case. These courts have interpreted this language to mean that the federal court loses jurisdiction once the federal court clerk has mailed a certified copy of the remand order to the state court clerk.

Civil Procedure > ... > Removal > Postremoval Remands > General Overview

Civil Procedure > ... > Removal > Postremoval Remands > Jurisdictional Defects

*HN3* Looking to the language of *28 U.S.C.S. § 1447(c)*, as well as *§ 1447(d)*, which makes *§ 1447(c)* remands unappealable, courts recognize the need for a determinable jurisdictional event after which the state court can exercise control over the case without further fear of further federal interference. Courts have then identified the mailing of the certified copy of the remand order as the key jurisdictional event, because a remand order is not self-executing.

## Opinion

[*227] Per Curiam

With fourteen days remaining in its six-month window to appeal a default judgment by writ of error, the State of Chiapas removed this case to federal district court. The federal district court remanded to state district court pursuant to *28 U.S.C. § 1447(c)*. Approximately eight months later, Chiapas filed its petition for writ of error. Quaestor Investments, Inc., moved to dismiss for want

of jurisdiction, arguing that the petition for review was not timely filed. Thus, the question in this case is when did the appellate timetable recommence after remand? The court of appeals held that the timetable did not recommence until the party seeking remand had given notice to the other party in the case. *State of Chiapas v. Quaestor Investments, Inc., 982 S.W.2d 144*. We disagree and hold that the appellate timetable recommences upon the revesting of jurisdiction in the state court, which occurs when the federal district court executes the remand order and mails a certified copy of the remand order to the state court. We conclude in this case that the State [**2] of Chiapas failed to file its petition for writ of error within the time frame provided by the Texas Rules of Appellate Procedure, and accordingly vacate the judgment of the court of appeals and dismiss the appeal.

During the mid-1980s, Quaestor Investments, Inc., a Texas corporation, purchased coffee from cooperatives located in the State of Chiapas, a State of the United Mexican States. After conflicts in their business relationship, Quaestor sued the cooperatives in a Texas district court in 1986. The cooperatives did not answer, and the court granted a default judgment for Quaestor.

In March 1994, Quaestor sued the State of Chiapas, alleging fraud and conspiracy to prevent Quaestor from executing the default judgment on the cooperatives' assets. Chiapas did not answer. On April 19, 1995, the court granted a default judgment for Quaestor, and in May 1995, Quaestor began proceedings to collect on its judgment.

On October 5, 1995, Chiapas removed the lawsuit to federal court pursuant to *28 U.S.C. § 1441(d)*. The federal district court ruled that the removal was untimely and on December 28, 1995, remanded the case to state court pursuant to *28 U.S.C. § 1447(c)*. On February 2, [**3] 1996, Chiapas appealed the remand order to the United States Court of Appeals for the Fifth Circuit, which dismissed the appeal for want of jurisdiction on August 16, 1996.

On August 29, 1996, Chiapas filed a petition for writ of error to the court of appeals. [1] Quaestor moved the court to dismiss Chiapas's petition for writ of error as untimely. The court of appeals overruled Quaestor's

---

[1] This case concerns a writ of error appeal filed in 1996 under rule 45 of the former Rules of Appellate Procedure. *See* TEX. R. APP. P. 45, 49 Tex. B.J. 570 (Tex. 1986, superseded 1997). Restricted appeals replace writ of error appeals under the new Rules of Appellate Procedure. *See* TEX. R. APP. P. 30.

motion to dismiss and later reversed the default judgment and remanded the case to the trial court. *982 S.W.2d at 144-145*. Quaestor petitioned for review of the court of appeals' judgment, complaining about the denial of its motion to dismiss.

*HN1* The four elements necessary for review by writ of error are: (1) **[**4]** the petition must be brought within six months of the date of judgment; (2) by a party to the suit; (3) who did not participate in the trial; and (4) error must be apparent from the face of the record. *See Stubbs v. Stubbs, 685 S.W.2d 643, 644 (Tex. 1985)*. The six-month time limit is mandatory and jurisdictional. *See Linton v. Smith, 137 Tex. 479, 154 S.W.2d 643, 645 (Tex. 1941)*.

Quaestor does not contest that filing the removal suspended the appellate timetable. And Chiapas acknowledges that when **[*228]** it removed the case to federal court on October 5, 1995, it had fourteen days left to file its petition for writ of error. Thus, the only issue presented is when the appellate timetable began to run again.

Quaestor argues that the timetable recommenced when the federal district court entered its remand order (December 28, 1995) or when the state court acknowledged receipt of the remand order (January 10, 1996). Chiapas responds that the timetable recommenced when the Fifth Circuit dismissed the appeal of the remand order (August 16, 1996) or when Chiapas mailed a copy of the remand order to the state district clerk (September 6, 1996). Either of Chiapas' dates would make its August **[**5]** 29, 1996 writ of error appeal timely while either of Quaestor's dates would make the appeal untimely.

The court of appeals determined that the state court reacquired jurisdiction on the date the federal court clerk mailed a certified copy of the remand order to the state court clerk. The court further concluded that when the appellate timetable recommenced was determined not by the revesting of jurisdiction, but rather depended upon the procedural implications of that revesting under Texas law. The court looked to Texas procedural rules for its answer: (1) *Rule of Civil Procedure 237a*, which provides that a defendant need not answer in a remanded case until fifteen days after the plaintiff files the remand order with the state court and gives written notice of the filing to the adverse parties' attorneys; and (2) current *Rule of Appellate Procedure 8*, which provides that affirmative action is required by a party or

the court to reinstate an appeal stayed by a bankruptcy proceeding. Concluding that these rules require affirmative action before procedural timetables restart, the court similarly determined that the appellate timetable should not recommence until the party seeking remand **[**6]** acts affirmatively by giving notice to the other party. While we agree with the court of appeals' determination of when state court jurisdiction revested, we disagree that we must look any further than that date to determine when the timetable for filing a writ of error appeal began to run again.

*HN2* Remanding a case to state court terminates the jurisdiction of a federal district court over that case. *See Hunt v. Acromed Corp., 961 F.2d 1079, 1081 (3d Cir. 1992); Browning v. Navarro, 743 F.2d 1069, 1078 (5th Cir. 1984)*. There is no requirement that the state court take any action (*e.g.*, entering the order in the state court docket) to reassert jurisdiction. *See Mathewson v. Aloha Airlines, Inc., 82 Haw. 57, 919 P.2d 969, 985-86 (Haw. 1996)*. In answering the question of when a jurisdictional transfer occurs between federal and state court, most courts, including the court of appeals in this case, have looked to *28 U.S.C. § 1447(c)*, which provides, in part, that: "A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case." These courts have interpreted this language to mean **[**7]** that the federal court loses jurisdiction once the federal court clerk has mailed a certified copy of the remand order to the state court clerk. *See McClelland v. Gronwaldt, 155 F.3d 507, 513 & n.15 (5th Cir. 1998); Trans Penn Wax Corp. v. McCandless, 50 F.3d 217, 225 (3d Cir. 1995); Hunt, 961 F.2d at 1081; see also Seedman v. United States Dist. Court, 837 F.2d 413, 414 (9th Cir. 1988); Browning, 743 F.2d at 1078; Federal Deposit Ins. Corp. v. Santiago Plaza, 598 F.2d 634, 636 (1st Cir. 1979)*. *But see In re Lowe, 102 F.3d 731, 735 (4th Cir. 1996)* (holding that jurisdiction returns to the state court when the district court enters the remand order); *New Mexico ex rel. Village of Los Ranchos De Albuquerque v. City of Albuquerque, 889 P.2d 204, 206-07 (N.M. Ct. App. 1993)* (same).

In *McCandless*, the Third Circuit Court of Appeals explained the rationale behind the general rule. *HN3* Looking to the language of *section 1447(c)*, as well as *section 1447(d)*, which makes *section 1447(c)* remands **[*229]** unappealable, the court recognized the need for a "determinable jurisdictional event after which the state court can exercise control over the case without further

fear **[**8]** of further federal interference." *50 F.3d at 225*. The court then identified the mailing of the certified copy of the remand order as the "key jurisdictional event," because a remand order is not self-executing. *Id.*

We agree with the Third Circuit's reasoning, and following the majority rule as did the court of appeals, we hold that jurisdiction revests in the state court when the federal district court executes the remand order and mails a certified copy to the state court. To the extent that earlier Texas court of appeals cases indicate that jurisdiction revests when the federal court executes the remand order, we disapprove of that language. *See Brogdon v. Ruddell, 717 S.W.2d 675, 677* (Tex. App. -- Texarkana 1986, writ ref'd n.r.e.); *Reimer v. Scott, 666 S.W.2d 384, 385* (Tex. App. -- Houston [14th Dist] 1984, writ dism'd); *Brown v. State Farm Mut. Auto. Ins. Co., 449 S.W.2d 93, 96* (Tex. Civ. App. -- Fort Worth 1969, no writ).

We are further persuaded that nothing more is required to recommence the appellate timetable than the state court's reaquiring jurisdiction over a case. Just as the filing of the removal suspends the appellate timetable, the completed remand **[**9]** begins it again. No Texas procedural rule imposes a notice requirement under these circumstances. The court of appeals erred when it inferred from *civil procedure rule 237a* and appellate *rule 8* that any further affirmative action was needed.

In support of its motion to dismiss, Quaestor provided a certified copy of the federal court docket sheet in this case. The docket sheet indicates that the remand order was signed and mailed on December 28, 1995. Therefore, jurisdiction revested in the state court and the appellate timetable recommenced on that day. The time for appealing by writ of error appeal expired fourteen days later on January 11, 1996. Because the State of Chiapas did not file its writ of error appeal until August 29, 1996, the court of appeals did not have jurisdiction to hear the appeal. Accordingly, without hearing oral argument, the Court grants Quaestor's petition for review, vacates the judgment of the court of appeals, and dismisses the appeal. *See TEX. R. APP. P. 59.1*.

OPINION DELIVERED: July 1, 1999

# *Ragsdale v. Progressive Voters League*

Supreme Court of Texas

December 31, 1990, Delivered

No. D-0171

## Reporter

801 S.W.2d 880; 1990 Tex. LEXIS 156; 34 Tex. Sup. J. 254

PAUL RAGSDALE, Petitioner v. PROGRESSIVE VOTERS LEAGUE, Respondent

**Prior History:** [**1] From Dallas County, Fifth District.

## Core Terms

attorney's fees, circumstances, contradicted, trial court, appeals, interested witness, Election, damages

## Case Summary

### Procedural Posture

Petitioner election candidate challenged the ruling of the District Court for Dallas County (Texas), which granted him injunctive relief but denied him damages and attorney's fees in his suit against respondent voter league for violations of the Texas Election Code.

### Overview

Petitioner election candidate was seeking reelection as state representative for a particular county. Petitioner investigated respondent voter league's campaign activities and discovered that the campaign treasurer had not been designated as required by the election code. Petitioner sued respondent for violations of the Texas Election Code. He was granted injunctive relief, but was denied damages and attorney's fees. On remand, the trial court awarded damages of $ 1 and $ 150 for attorney's fees. Petitioner appealed again and the court of appeals reformed the judgment holding that the statutory penalty of twice the amount that respondent had illegally spent on the rival candidate was required as damages. On final review, the court held that it was clear that the trial court abused its discretion in awarding only $ 150 for attorney's fees. Therefore, the court remanded the cause to the trial court for a new trial on attorney's fees.

### Outcome

The court reversed the decision of the trial court which only awarded $ 150 in attorney's fees to petitioner election candidate. On review, the court stated that there was clear, direct and positive evidence to prove that petitioner was entitled to a larger award for attorney's fees from respondent voter league and that the trial court abused its discretion when it made its award.

## LexisNexis® Headnotes

Civil Procedure > Remedies > Costs & Attorney Fees > General Overview

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

*HN1* In awarding attorney's fees the trial court, as the trier of fact, must take into account various factors such as: the nature and complexity of the case; the nature of the services provided by counsel; the time required for trial; the amount of money involved; the client's interest that is at stake; the responsibility imposed upon counsel; and the skill and expertise required. Ordinarily, the allowance of attorney's fees rests with the sound discretion of the trial court and will not be reversed without a showing of abuse of that discretion.

Evidence > ... > Testimony > Credibility of Witnesses > General Overview

*HN2* It is the general rule that the testimony of an interested witness, such as a party to the suit, though not contradicted, does no more than raise a fact issue to be determined by the jury. But there is an exception to this rule, which is that where the testimony of an interested witness is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law.

Evidence > ... > Testimony > Credibility of Witnesses > General Overview

Evidence > ... > Credibility of Witnesses > Impeachment > General Overview

*HN3* The exception to the interested witness rule is especially true where the opposing party has the means and opportunity of disproving the testimony, if it is not true, and fails to do so. In other words, failure to contradict is another factor to be considered by the court; but it does not necessarily preclude the holding that a fact issue is raised when there are circumstances in evidence tending to discredit or impeach the testimony of the interested witness.

Civil Procedure > Judgments > Pretrial Judgments > General Overview

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > General Overview

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Default Judgments

Civil Procedure > Remedies > Costs & Attorney Fees > General Overview

Evidence > ... > Testimony > Credibility of Witnesses > General Overview

*HN4* In order for the court to award an amount of attorneys' fees as a matter of law, the evidence from an interested witness must not be contradicted by any other witness or attendant circumstances and the same must be clear, direct and positive, and free from contradiction, inaccuracies and circumstances tending to case suspicion thereon. The court, as a trier of fact, may award attorneys' fees as a matter of law in such circumstances, especially when the opposing party has the means and opportunity of disproving the testimony or evidence and fails to do so. In default judgment situations, the same rule applies if there is evidence presented to the trial court which meets the same criteria.

**Counsel:** Hughes, Mr. Jerry Lee, Bliss & Hughes, Dallas, Texas, Collins, Mr. John E., Dallas, Texas, for Petitioner.

Hicks, Sr., Mr. Donald W., Law Ofcs of Donald W. Hicks, Sr., P.C., Dallas, Texas, for Respondent.

**Opinion by:** PER CURIAM

## Opinion

[*881] Paul Ragsdale sued the Dallas County Democratic Progressive Voters League for violations of the Election Code. [1] He was granted injunctive relief, but was denied damages and attorney's fees. *743 S.W.2d 338*. On remand the trial court awarded damages of $ 1 and $ 150 for attorney's fees. Ragsdale again appealed and the court of appeals reformed the judgment holding that the statutory penalty of twice the amount that the committee had illegally spent on the rival candidate is required; and, holding an abuse of discretion, severed the attorney's fees portion remanding that issue for a new trial. *790 S.W.2d 77*. We affirm the judgment of the court of appeals regarding the damages issue, but reverse and render judgment for Ragsdale awarding the amount of attorney's fees that evidence at trial showed to be reasonable and uncontroverted in the amount of $ 22,500.

[**2] Paul Ragsdale was seeking reelection as state representative from Dallas County District 110. The PVL was organized in 1936 as an educational purpose group. The group had evolved to the point that it sponsored activities that promoted awareness of issues affecting minorities. Although the PVL had previously endorsed Paul Ragsdale, it was active in the primary election in 1986 supporting an opponent. Ragsdale investigated the PVL's campaign activities and discovered that the campaign treasurer had not been designated as required by the Election Code. Ragsdale filed suit seeking an injunction and damages. This decision today is subsequent to two trials and their attendant appeals.

The court of appeals has correctly awarded the statutory penalty for the violations of the Election Code. The Code also authorizes an award of reasonable attorney's fees. [2] Uncontroverted evidence was presented at trial that the attorney's fees for this cause of action, which began with a temporary injunction in April 1986, totaled $ 22,500. *HN1* In awarding attorney's fees the trial court, as the trier of fact, must take into account various factors such as: the nature and complexity of the case; the nature [**3] of the services provided by counsel; the

---

[1] The suit was filed under sections 251.002(f)(2), 251.002(g) and 251.008(a) of the Texas Elation Code. Now codified at Tex. Elec. Code Ann. § 253.031 (Vernon's Supp. 1990).

[2] Now codified at § 253.131(d)(2) Tex. Elec.Code Ann. (Vernon's Supp. 1990).

time required for trial; the amount of money involved; the client's interest that is at stake; the responsibility imposed upon counsel; and the skill and expertise required. *Gulf Paving Co. v. Lofstedt, 144 Tex. 17, 188 S.W.2d 155 (1945)* (time required); *Vaughn v. Gunter, 458 S.W.2d 523* (Tex.Civ.App. -- Dallas), *aff'd, 461 S.W.2d 599 (Tex. 1970)* (client's interest and money involved); *Weatherly v. Longoria,* 292 S.W.2d 139 (Tex. Civ. App. -- San Antonio 1956, writ ref'd n.r.e.) (skill required). *Accord Tuthill v. Southwestern Public Service Co., 614 S.W.2d 205* (Tex Civ. App. -- Amarillo 1981, writ ref'd n.r.e.). Ordinarily, the allowance of attorney's fees rests with the sound discretion of the trial court and will not be reversed without a showing of abuse of that discretion.

 [*882] *HN2* It is the general rule that the testimony of an interested witness, such as a party to the suit, though not contradicted, does no more than raise a fact issue to be determined by the jury. But there is an exception to this rule, which is that where the testimony of an interested witness is not contradicted by any other witness, [**4] or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law.

*Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 166 S.W.2d 904, 908 (1942)*.

*Accord*, *McGilliard v. Kuhlmann, 722 S.W.2d 694 (Tex. 1986)*.

*HN3* The exception to [this] interested witness rule . . . is *especially true* where the opposing party has the means and opportunity of disproving the testimony, if it is not true, and fails to do so . . . . In other words, failure to contradict is another factor to be considered by the court; but it does not necessarily preclude the holding that a fact issue is raised when, as here, there are circumstances in evidence tending to discredit or impeach the testimony of the interested witness.

*Anchor Casualty Co. v. Bowers, 393 S.W.2d 168, 169-170 (Tex. 1965)*(emphasis in original).

 [**5] While the present case fits the exception to the general rule, we do not mean to imply that in every case when uncontradicted testimony is offered it mandates an award of the amount claimed. For example, even though the evidence might be uncontradicted, if it is unreasonable, incredible, or its belief is questionable, then such evidence would only raise a fact issue to be determined by the trier of fact. *HN4* In order for the court to award an amount of attorneys' fees as a matter of law, the evidence from an interested witness must not be contradicted by any other witness or attendant circumstances and the same must be clear, direct and positive, and free from contradiction, inaccuracies and circumstances tending to case suspicion thereon. The court, as a trier of fact, may award attorneys' fees as a matter of law in such circumstances, especially when the opposing party has the means and opportunity of disproving the testimony or evidence and fails to do so. In default judgment situations, the same rule applies if there is evidence presented to the trial court which meets the same criteria. In this situation the evidence may be uncontradicted, but the trial judge could find some of the [**6] claimed fees to be unreasonable, unwarranted, or some other circumstance which would make an award of the uncontroverted claim wrong. In the present case it is clear that the trial court abused its discretion in awarding only $ 150 in attorney's fees. Ragsdale's attorneys testified as to the time involved, the nature of the services that were rendered, and the reasonableness of the fees charged. This evidence was uncontroverted. We hold the evidence is clear, direct and positive, and not contradicted by any other witness or attendant circumstances, and there is nothing to indicate otherwise. In the interest of judicial economy, we reverse the judgment of the court of appeals that remanded the attorney's fees issue for a new trial and render judgment for Ragsdale.

Accordingly, we grant the application of Paul Ragsdale, and pursuant to Tex. R. App. P. 170, without hearing oral argument, a majority of this court affirms that portion of the court of appeals judgment awarding damages and penalties under the Election Code, and reverses that portion which remanded the cause to the trial court for a new trial on attorney's fees. Judgment is rendered in favor of Ragsdale for attorney's fees [**7] in the amount of $ 22,500.





Positive
As of: Mar 30, 2015

**REED ELSEVIER, INC. d/b/a LEXIS NEXIS, Appellant v. CARROLL-TON-FARMERS BRANCH INDEPENDENT SCHOOL DISTRICT, COUNTY OF DALLAS, AND CITY OF FARMERS BRANCH, Appellees**

**No. 05-04-00821-CV**

**COURT OF APPEALS OF TEXAS, FIFTH DISTRICT, DALLAS**

*180 S.W.3d 903*; *2005 Tex. App. LEXIS 10313*

**December 12, 2005, Opinion Filed**

**SUBSEQUENT HISTORY:** Released for Publication January 17, 2005.
Petition for review denied by *Carrollton-Farmers Branch Indep. Sch. Dist. v. Reed Elsevier, Inc., 2006 Tex. LEXIS 452 (Tex., May 5, 2006)*

**PRIOR HISTORY:** [**1] On Appeal from the 191st Judicial District Court, Dallas County, Texas. Trial Court Cause No. TX03-41181-T-J.

**DISPOSITION:** REVERSED and REMANDED.

**COUNSEL:** For APPELLANT: Mr. Bryan P. Neal, Thompson & Knight, P.C., Dallas, TX.

For APPELLEE: Mr. Daniel K. Bearden, Dallas, TX; Gregg M. McLaughlin, Perdue, Brandon, Fielder, Collins & Mott, L.P., Arlington, TX; Edward Lopez, Jr., Shelia Fuqua Carter, Linebarger Goggan Blair Sampson, LLP, Dallas, TX.

**JUDGES:** Before Justices Moseley, Francis, and Mazzant. Opinion By Justice Moseley.

**OPINION BY:** JIM MOSELEY

**OPINION**

[*904] Opinion By Justice Moseley

Reed Elsevier, Inc. d/b/a Lexis Nexis brings a restricted appeal from a default judgment in favor of Carrollton-Farmers Branch Independent School District (CFBISD), County of Dallas, and City of Farmers Branch for delinquent property taxes. Reed Elsevier contends there is fatal error shown on the face of the return of service. Reed Elsevier argues service of process was defective because the return does not identify the person served as an agent of its corporate registered agent. We agree and we reverse the trial court's judgment and remand the cause for further proceedings consistent with this opinion.

**I. Factual and Procedural Background**

In its original petition for delinquent ad valorem taxes, CFBISD described defendant as follows:

Reed Elsevier, Inc. d/b/a Lexis Nexis

Successor in Interest to Courtlink Corporation d/b/a JusticeLink,

by serving Registered Agent, Lexis Document Services, Inc., at:

3610-2 Josey [**2] Lane, Suite # 223 Carrollton, TX 75007

The citation for personal service is addressed to the same above description and address for defendant. The return of service indicates service was completed by "delivering to the within named Reed Elsevier Inc DBA Lexis Nexis Successor in Interest to Courtlink Corporation DBA JusticeLink By delivering to Reg Agent Lexis Document Services Inc By delivering to Danielle Smith."

Reed Elsevier did not file an answer or appear in court and a default judgment was signed on December 3, 2003. Reed Elsevier filed a notice of restricted appeal, with a motion for extension of time to file restricted appeal, on June 16, 2004. Appellant's motion for extension was granted by this Court, and its restricted appeal deemed timely.

## II. Restricted Appeal

A restricted appeal must: (1) be brought within six months after the trial court signs the judgment; (2) by a party; (3) who did not participate in the trial; and (4) the error complained of must be apparent on the face of the record. *TEX. RS. APP. P. 26.1(c)*, *30*; *Sutton v. Hisaw & Assocs.* [*905] *Gen. Contractors, Inc., 65 S.W.3d 281, 284 (Tex. App.-Dallas 2001, pet. denied)*. For purposes [**3] of a restricted appeal, the face of the record consists of all the papers on file before the judgment as well as any reporter's record. *Norman Communications v. Texas Eastman Co., 955 S.W.2d 269, 270, 41 Tex. Sup. Ct. J. 83 (Tex. 1997)*. In this case, the first three elements of a restricted appeal are not contested. Rather the dispute concerns whether there is error on the face of the record. [1]

> 1 There is no reporter's record in this appeal. On the face of clerk's record, we can not tell whether Reed Elsevier and its registered agent Lexis Document Services, Inc. are domestic or foreign corporations. However, such status is not critical to our resolution of this restricted appeal. *Cf. Infra-Pak (Dallas), Inc. v. Narmour, 852 S.W.2d 565, 567 (Tex. App.-Dallas 1992, no writ)* (concluding in regular appeal no distinction between proof of proper service on a foreign and a domestic corporation).

## III. Applicable Law on Service of Process

A default judgment cannot withstand direct attack by a defendant [**4] who complains he was not served in strict compliance with applicable requirements. *Wilson v. Dunn, 800 S.W.2d 833, 836, 34 Tex. Sup. Ct. J. 60 (Tex. 1990)*. In a direct attack on a default judgment, there are no presumptions in favor of valid issuance, service, and return of citation. *See Primate Constr. Inc. v. Silver, 884 S.W.2d 151, 152, 37 Tex. Sup. Ct. J. 1216 (Tex. 1994)* (per curiam). The return of service has long

been considered prima facie evidence of the facts recited therein. *Id. at 152*. In a restricted appeal, defective service of process constitutes error apparent on the face of the record. *See id. at 153*.

A domestic or foreign corporation authorized to transact business in Texas may be served with process through its president, any vice president, or its registered agent. *See TEX. BUS. CORP. ACT ANN. Arts. 2.11, 8.10* (Vernon 1980). A corporation may act as the registered agent for another domestic or foreign corporation. *See TEX. BUS. CORP. ACT ANN. Art. 2.09* (Vernon Supp. 2004-05), *Art. 8.08* (Vernon 1980). Although a corporation may act as the registered agent for another corporation, [**5] a corporation is not a person capable of accepting process, and must be served through its agents. *See All Commercial Floors, Inc. v. Barton & Rasor, 97 S.W.3d 723, 727 (Tex. App.-Fort Worth 2003, no pet.)*. The record must show whether the person served was in fact such an agent for the corporation acting as the registered agent. *See Nat'l. Med. Enter. of Texas, Inc. v. Wedman 676 S.W.2d 712, 715 (Tex. App.-El Paso 1984, no writ)* (holding domestic corporate defendant was properly served where return identified person served with citation as registered agent for defendant's corporate registered agent); *White Motor Co. v. Loden, 373 S.W.2d 863, 865 (Tex. Civ. App.-Dallas 1963, no writ)* (holding record did not show person served with citation was authorized agent for accepting service for corporate registered agent for foreign corporation defendant).

## IV. Discussion

In this case, the return does not indicate the capacity of "Danielle Smith" or why she was served with process. Her name is handwritten on the face of the citation without designation of her status with Lexis Document Services, Inc. The return merely recites service [**6] "by delivering to Danielle Smith," without explaining her authority to receive service. Neither the return nor any other portion of the record designates her authority to receive service on behalf of Reed Elsevier's registered agent. Without indication of her capacity to receive service on the face of [*906] the record, the granting of the default judgment was improper. *See Primate Constr. Inc., 884 S.W.2d at 153*; *see also Nat'l. Med. Enter. of Texas, Inc., 676 S.W.2d at 715*; *White Motor Co., 373 S.W.2d at 865*.

## V. Conclusion

Having determined there is error on the face of the record regarding proper service on Reed Elsevier's registered agent, we find the trial court lacked jurisdiction to enter the default judgment against Reed Elsevier. Finding this error dispositive of this appeal, we do not need to address appellant's remaining issues. *See TEX. R. APP.*

*P. 47.1.* We reverse the trial court's judgment and remand this case for further proceedings.

JIM MOSELEY

JUSTICE





Positive
As of: Mar 30, 2015

**MARIA REGALADO, D/B/A, FRED REGALADO BAIL BONDS, Appellant, v. THE STATE OF TEXAS, Appellee.**

**NUMBER 13-95-271-CV**

**COURT OF APPEALS OF TEXAS, THIRTEENTH DISTRICT, CORPUS CHRISTI**

*934 S.W.2d 852*; *1996 Tex. App. LEXIS 4973*

**November 7, 1996, delivered**
**November 7, 1996, filed**

**PRIOR HISTORY:** [**1] On appeal from the 275th District Court of Hidalgo County, Texas.

**DISPOSITION:** Affirmed

**COUNSEL:** For APPELLANT: Crispin (C.J.) Quintanilla, III, Quintanilla & Palacios, Attorneys at Law, McAllen, TX. Keith C. Livesay, Attorney at Law, McAllen, TX.

For APPELLEE: Rene Guerra, District Attorney, Theodore C. Hake, William McPherson, Traci A. Sellman, Assistant District Attorneys, Edinburg, TX.

**JUDGES:** Before Chief Justice Seerden and Justices Dorsey and Chavez. Opinion by Chief Justice Seerden

**OPINION BY:** ROBERT J. SEERDEN

**OPINION**

[*853] OPINION

Opinion by Chief Justice Seerden

Maria Regalado, appellant, files this appeal by writ of error, asking this court to overturn a default judgment entered against her. By two points of error, she asserts that the trial court erred in granting a default judgment because the citation and service of process were defective. We affirm.

Maria Regalado, d/b/a Fred Regalado Bail Bonds, surety on the bond of Armando Pineda, appeals from a default judgment entered for the State in a bond forfeiture proceeding. Pineda failed to appear at arraignment, a judgment *nisi* issued, and service of process was effected on appellant by way of *scire* [**2] *facias* commanding her to appear and show cause why the judgment of forfeiture should not become final. Appellant failed to appear or answer the *scire facias* and a default judgment was rendered against her.

Upon learning of entry of the default judgment, appellant filed a motion for new trial seeking to have the default judgment set aside. After a hearing, the trial court orally granted the motion for new trial; however, the trial court signed the written order granting the new trial after its plenary power to do so had lapsed. Upon motion by the State, the trial court, because of lack of jurisdiction, subsequently rescinded the order granting the new trial. Appellant now attacks the default judgment by a writ of error to this court. Specifically, appellant raises two points of error challenging the validity of the service of process in the case below.

To prevail in her appeal by writ of error, appellant must (1) file the writ within six months after the final judgment is signed; (2) be a party to the lawsuit; (3) not

have participated in the actual trial of the case; and (4) show error apparent from the face of the record. *Stubbs v. Stubbs, 685 S.W.2d 643, 644 (Tex.* [**3] *1985)*; *Flores v. H.E. Butt Grocery Co., 802 S.W.2d 53, 55* (Tex. App.--Corpus Christi 1990, no writ). The State concedes that the first three requirements were met. Therefore, at issue is whether there is error apparent on the face of the record.

By her first point of error, appellant claims that the service of process was defective because she was not personally served with the *scire facias*. Specifically, she contends that the hand-written notation "c/o Maria Regalado" on the return of the citation, when given a fair, reasonable and natural construction, indicates that process was not served on her personally.

When a default judgment is attacked by writ of error, it is essential that the record affirmatively show strict compliance with the provided manner and mode of service of process. *Primate Constr. v. Silver, 884 S.W.2d 151, 152 (Tex. 1994)*; *McKanna v. Edgar, 388 S.W.2d 927, 929 (Tex. 1965)*; *HB & WM, Inc. v. Smith, 802 S.W.2d 279, 281* (Tex. App.--San Antonio 1990, no writ). A default judgment cannot withstand a direct attack by a defendant who shows that he was not served in strict compliance with the law. *Wilson v. Dunn, 800 S.W.2d 833, 836 (Tex.* [**4] *1990)*. Failure to affirmatively show strict compliance with the rules of civil procedure renders the attempted service invalid, of no effect, and incapable of supporting a default judgment. *Uvalde Country Club v. Martin* [*854] *Linen Supply Co., Inc, 690 S.W.2d 884, 885 (Tex. 1985)*. Accordingly, when such strict compliance is **NOT** demonstrated, there is error on the face of the record, and reversal of the judgment is warranted.

Strict compliance, however, does not require "obeisance to the minutest detail." *Herbert, 915 S.W.2d 866, 871* (Tex. App.--Houston [1st Dist.] 1995, no writ); *Ortiz v. Avante Villa at Corpus Christi, Inc., 926 S.W.2d 608, 613* (Tex. App.--Corpus Christi 1996, writ requested). As long as the citation and return show, with reasonable certainty, that the citation was served on the defendant in the suit, service of process will not be invalidated. *See Ortiz v. Avante Villa at Corpus Christi, Inc., 926 S.W.2d at 613* (the omission of the accent mark and the substitution of the symbol " at " for the word "at" are akin to the errors that do not invalidate service); *Payne & Keller Co. v. Word, 732 S.W.2d 38, 41* (Tex. App.--Houston [**5] [14th Dist.] 1987, writ ref'd n.r.e.) (judgment upheld where petition and citation reflected registered agent "Philippe Petitfrere," the return reflected "Philip**e** Pet-itfr**ee**re"); *Popkowsi v. Gramza, 671 S.W.2d 915, 918* (Tex. App.--Houston [1st Dist.] 1984, no writ) (judgment upheld where there was dispute of fact whether hand-written return of service said "Michael Pop**r**owski" or "Michael Pop**k**owski").

Additionally, both parties point out that a return should be given a fair, reasonable, and natural construction to its intent and meaning. *Brown-McKee, Inc. v. J. F. Bryan & Assoc., 522 S.W.2d 958, 959* (Tex. Civ. App.--Texarkana 1975, no writ)(in a writ of error proceeding directly attacking default judgment, the return should receive a fair, reasonable, and natural construction, and effect given to its plain intent and meaning). *See also Garza v. Zavala, 905 S.W.2d 312, 313* (Tex. App.--San Antonio 1995, no writ); *Bavarian Autohaus, Inc. v. Holland, 570 S.W.2d 110, 114* (Tex. Civ. App.--Houston [1st Dist.] 1978, no writ). In fact, both parties concede that the validity of appellant's first point of error (as well as the service of [**6] process in this case) is contingent upon the fair and reasonable construction of the "c/o" symbol.

In the case at hand, the citation names "Maria Regalado, DBA Fred Regalado Bail Bond" as the defendant and states that a true copy was "delivered to SURETY MARIA REGALADO on the 15 day of 12, 1994." The return states that a true copy of the citation was delivered to "Name: c/o Maria Regalado." In our opinion, the only fair and reasonable construction of the officer's return indicates that the executing officer left the citation *in the care of* Maria Regalado; that is, in Maria Regalado's own hands. We conclude that the return and the citation, giving both a fair, reasonable, and natural interpretation, show with reasonable certainty that the citation was personally served on Maria Regalado. Accordingly, we hold that the record affirmatively shows that Maria Regalado, doing business of Fred Regalado Bail Bonds, was personally served in strict compliance with the provided manner and mode of service of process. Appellant's first point of error is overruled.

In her second point of error, appellant contends that the trial court erred in granting a default judgment because the citation [**7] was improper. Appellant maintains that the citation is improper because it implies that a petition was being served when, in fact, no petition was either filed or served. Consequently, according to appellant, the resulting default judgment rendered herein was also improper. We disagree.

Keeping in mind the need to show strict compliance with the rules of service and citation in the face of a direct attack on a default judgment (see above), we note that a bail bond forfeiture proceeding is a criminal proceeding governed by the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 22 (Vernon 1989 and Supp. 1997). All forfeiture proceedings declared upon a bond shall be governed by the same rules that apply to other civil suits. *See TEX. CODE CRIM.*

*PROC. ANN. art. 22.10* (Vernon 1989 and Supp. 1997)*; Dees v. State, 865 S.W.2d 461, 462 (Tex. Crim. App. 1993)*; *State v. Sellers, 790 S.W.2d 316, 321 (Tex. Crim. App. 1990)*. Furthermore, in a bond forfeiture proceeding, the citation is sufficient if it is in the form provided for citations in civil cases. [*855] *TEX. CODE. CRIM. PROC. ANN. art. 22.04* (Vernon 1989 and Supp. 1997). Article 22.04 provides:

> A [**8] citation shall be sufficient if it be in the form provided for citations in civil cases in such court; provided, however, that a copy of the judgment of forfeiture entered by the court shall be attached to the citation and the citation shall notify the parties cited to appear and show cause why the judgment of forfeiture should not be made final.

*TEX. CODE CRIM. PROC. ANN. art. 22.04* (Vernon 1989 and Supp. 1997).

Significant to the resolution of this point of error, is the fact that the Texas Rules of Civil Procedure command that reference be made in a civil citation to the filed petition which commenced the suit. *See TEX. R. CIV. P. 99*. *Rule 99* provides:

> c. Notice. The citation shall include the following notice to the defendant: "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued the citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

*TEX. R. CIV. P. 99(c)*. It is this exact language, along with other similar references, that appellant points to in

support [**9] of her claim that the citation and the resulting default judgment rendered herein is improper.

We find that the citation in this case was in the form provided by *TEX. R. CIV. P. 99*. In fact, the language found in the first paragraph of the citation is the exact language prescribed by *Rule 99*. *See TEX. R. CIV. P. 99(c)*. Additional references to a petition, or the fact that the judgment *nisi* is referred to as a petition, do not make it any less clear that appellant was served with the appropriate documents. [1] As stated above, "even strict compliance does not require such absolute obeisance to the minutest detail." *Herbert, 915 S.W.2d at 871*; *Ortiz v. Avante Villa at Corpus Christi, Inc., 926 S.W.2d at 613*.

> 1 The citation or *scire facias* provided by the statute constitutes the State's pleadings in a bond forfeiture case. *Blue v. State, 170 Tex. Crim. 449, 341 S.W.2d 917, 919 (1960)*; *Pollock v. State, 164 Tex. Crim. 404, 299 S.W.2d 294, 296 (1956)*. In such a proceeding, the *scire facias* serves the purpose of both a petition and a citation. *Hokr v. State, 545 S.W.2d 463, 467 (Tex. Crim. App. 1977)* (citing *Hester v. State, 15 Texas Ct. App. 418 (1884))*. A separate petition is not necessary.

[**10] Additionally, as required by *TEX. CODE CRIM. PROC. ANN. art. 22.04*, a copy of the judgment *nisi* was attached and the citation notified the parties cited to appear and show cause why the judgment should not be made final. The citation in this case was in compliance with the requirements of Article 22 of the Code of Criminal Procedure. Accordingly, we find appellant's claim of a fatal defect in the citation to be without merit and overrule appellant's second point of error.

Having overruled all points of error, we affirm the judgment of the trial court.

ROBERT J. SEERDEN, Chief Justice

Opinion delivered and filed this the 7th day of November, 1996.




Caution
As of: Mar 30, 2015

**ROSEDALE PARTNERS, LTD., Relator v. 131ST JUDICIAL DISTRICT COURT, BEXAR COUNTY, TEXAS, JUDGE PETER MICHAEL CURRY, and JUDGE CAROL HABERMAN, Respondents**

**Cause No. 04-93-00732-CV**

**COURT OF APPEALS OF TEXAS, FOURTH DISTRICT, SAN ANTONIO**

*869 S.W.2d 643*; *1994 Tex. App. LEXIS 344*

**January 12, 1994, Delivered**
**January 12, 1994, Filed**

**PRIOR HISTORY:** [**1] From the 166th District Court of Bexar County. Trial Court No. 93-CI-03259. Peter Michael Curry and Carol Haberman, Judges Presiding

**DISPOSITION:** RELATOR'S PETITION FOR WRIT OF MANDAMUS DENIED.

**COUNSEL:** For Relator: Richard Jackson, RICHARD JACKSON & ASSOCIATES, 3738 Oak Lawn, Suite 101, Dallas, TX 75219.

For Respondents: Bernard Lifshutz, c/o John M. Killiam, 445 West Sunset Road, San Antonio, TX 78209.

**JUDGES:** Sitting: Shirley W. Butts, Justice, Orlando Garcia, Justice, Tom Rickhoff, Justice

**OPINION BY:** ORLANDO GARCIA

**OPINION**

[*644] **OPINION**

ON RELATOR'S PETITION FOR WRIT OF MANDAMUS

Opinion by: Orlando Garcia, Justice

This is an original proceeding in which the relator, Rosedale Partners, Ltd., is seeking to: (1) dissolve an injunction enjoining a sheriff's sale and other execution efforts, (2) dissolve an order granting real party's motion for new trial, and (3) reinstate previous orders allowing execution on real party's property. The issue presented is whether the orders complained of were signed after the trial court lost its plenary power over the underlying default judgment.

The determination of whether the trial court retained jurisdiction to issue the complained of [**2] orders hinges on the finality of the default judgment. Relator contends the default judgment was a final judgment even though it did not provide all the relief requested. The real party in interest, Bernard Lifshutz, maintains that the judgment was interlocutory because it did not expressly or by implication dispose of the requests for attorney's fees and prejudgment interest. We agree that the default judgment did not dispose of all issues expressly or by implication and therefore is interlocutory. Thus, the trial court retained plenary power to grant the new trial and to issue the orders terminating the collection efforts.

In January of 1993, Rosedale Partners, Ltd. (Rosedale) purchased an unpaid promissory note executed by Bernard L. Lifshutz. According to Rosedale, the unpaid deficiency balance at the time it purchased the note was $ 7,047,841.20. On March 5, 1993, Rosedale

filed suit against Mr. Lifshutz seeking to recover: (1) the unpaid balance of $ 7,047,841.20, (2) interest on this balance from the date of purchase until date of payment, and (3) attorney's fees. On May 24, 1993, the trial court entered a default judgment and awarded Rosedale $ 7,047,841.20, as the past due [**3] principal and interest at the time of filing suit, and post judgment interest. No motion for new trial was filed within thirty days of the entry of the default judgment.

Following the default judgment, Rosedale conducted post judgment discovery. Pursuant to a subpoena, Mr. Lifshutz appeared for a post judgment deposition and produced voluminous documents to Rosedale. Based on the information obtained from the deposition, Rosedale secured: (1) the entry of a charging order concerning the recovery of partnership interests, (2) the issuance of two writs of garnishment, and (3) the issuance of [*645] an execution on the judgment with the sheriff of Bexar County posting certain personal property for sheriff's sale. Mr. Lifshutz counter by filing a motion to set aside the default judgment, a motion to dissolve the order of the sheriff's sale, a motion to dissolve the writs of garnishment, and an application for an injunction. All of the motions were based upon the premise that the default judgment was interlocutory. Judge Curry entered the order dissolving the writs of garnishment, dissolving the execution and order of sheriff's sale, and granting a new trial. Judge Haberman entered [**4] the injunction order and the order dismissing the charging order. Rosedale then filed its petition for writ of mandamus requesting that the previous orders of the trial court be reinstated and the injunction enjoining its collections efforts be dissolved. Rosedale contends that the default judgment in the underlying case was final and could not be affected or modified by the respective trial judges on any basis.

## I. MANDAMUS REVIEW

A writ of mandamus will issue to correct a clear abuse of discretion by a trial court or to correct a violation of a duty imposed by law if no other remedy at law is available to the relator. *Walker v. Packer, 827 S.W.2d 833, 839* (Tex. 1992, orig. proceeding); *Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 917* (Tex. 1985, orig. proceeding). An abuse of discretion occurs when a trial court "reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Johnson, 700 S.W.2d at 917*. A trial court does not have discretion in determining what the law is or in applying the law to the given facts. *Walker, 827 S.W.2d at 840*. The clear failure by a trial court to analyze or apply the law correctly [**5] constitutes an abuse of discretion which could result in appellate reversal by extraordinary writ. *Id.* However, mandamus will not is-

sue when a clear and adequate remedy at law exists such as a normal appeal. The writ will issue "only in situations involving manifest and urgent necessity and not for grievances that may be addressed by other remedies." *Id.* Mandamus has been granted in cases concerning the finality of default judgments and the granting of new trials after the trial court lost jurisdiction. *Houston Health Clubs, Inc. v. First Court of Appeals, 722 S.W.2d 692 (Tex. 1986)*; *Schoenfeld v. Onion, 647 S.W.2d 954 (Tex. 1983)*.

Rosedale contends that the trial court abused its discretion in finding the default judgment interlocutory, dissolving the various collection orders, and granting a new trial because the trial court lost all jurisdiction, as a matter of law, thirty days after the date the default judgment was entered. Rosedale maintains that unless the orders barring its collection efforts are dissolved, it will be harmed because it may not be able to collect the judgment against the real party's assets due to the large amount of other outstanding judgments [**6] against Mr. Lifshutz.

In response to Rosedale's petition, the real party claims that Rosedale has failed to comply with the mandatory requirements of rule 121(a) (2) (C) and (F) of the Texas Rules of Appellate Procedure because its petition fails to be accompanied by a certified or sworn copy of the orders complained of and fails to include an affidavit verifying the truth of all factual allegations made in the petition. In reviewing Rosedale's petition, we find that the verification contained in the petition was signed only by the notary public and not by the relator or its representative. In oral argument, relator maintained that the verification was sufficient citing *Republic Nat'l Leasing Corp. v. Schindler, 717 S.W.2d 606 (Tex. 1986)*, and *Stocking v. Biery, 677 S.W.2d 792* (Tex. App.--San Antonio 1984, orig. proceeding).

In *Schindler,* the supreme court stated that copies of documents attached to a properly prepared affidavit are sworn copies under rule 166A(e). However, in the instant case, we do not have a properly prepared affidavit before us. Moreover, in *Stocking v. Biery,* the court noted that a certified copy of the trial court's order was submitted in [**7] the mandamus but the other documents were uncertified. The court found that the uncertified documents did not meet the requirements and were not properly before the court. In the instant case, we have been provided with copies of the various orders [*646] and exhibits along with a verification signed by a notary public. However, a verification signed only by a notary public and not by the relator does not meet the procedural requirements of rule 121 of the Texas Rules of Appellate Procedure. *Cronen v. Smith, 812 S.W.2d 69, 70* (Tex. App.--Houston [1st Dist. 1991, orig. proceeding [leave denied]). Consequently, we have not been furnished with

certified or sworn copies of the exhibits, and we do not have a proper verification of the factual assertions contained in the petition. *Id.* Ordinarily, the motion for leave to file would be overruled. However, because we have already granted relator's motion for leave to file its petition for writ of mandamus, we will address the merits of the petition in the interest of judicial economy because relator may correct these technical defects and refile its petition. *Id.*

## II. DEFAULT JUDGMENT

Rosedale claims that the default [**8] judgment entered is final despite the fact that Rosedale had asked for three categories of relief in its original petition but was granted only one category of relief in the judgment. [1] Rosedale asserts that by the omission of the other categories of relief requested, the trial court intended to grant only the relief awarded and to deny the other requested relief. In support of this theory, Rosedale refers to the language in the last sentence of the default judgment which states "for all of which let execution issue." Rosedale maintains that because execution is available only at the entry of a final judgment, the inclusion of that phrase indicates the judgment is final and conclusive on all matters before the court. Rosedale acknowledges that a final judgment must dispose of all parties and issues, but argues that the parties and issues may be disposed of by necessary implication. As further evidence that the judgment is final, Rosedale notes that the docket sheet shows an entry, contemporaneous with the entry of the default judgment, indicating "case closed." Rosedale argues that all these factors indicate the judgment is final. Additionally, during oral argument, Rosedale argued [**9] that the order is final because Rosedale had abandoned Its claims for attorney's fees and prejudgment interest.

> 1 The petition set out that the total sum due from the defendant on the date of conveyance to Rosedale totalled $ 7,047,841.20 and that in addition to that sum, accrued interest had accumulated on the past due amount. Rosedale sought recovery of this interest from the date of the conveyance until date of payment. In addition, Rosedale requested attorney's fees. However, the default judgment awarded $ 7,047,841.20 as the past due principal and interest at the time the suit was filed, plus interest on the unpaid sum at the rate of eighteen percent (18%) per annum from date of judgment until date of payment.

A final judgment is one that disposes of all parties and all issues involved in a lawsuit. *Houston Health Clubs v. First Court of Appeals, 722 S.W.2d 692, 693 (Tex. 1986).* The determination of the finality of a judg-

ment may sometimes be ascertained based upon the intention of the trial court [**10] as gleaned from the language of the decree, the record as a whole, and the conduct of the parties. *Highway Contractors, Inc. v. West Texas Equip. Co., Inc., 584 S.W.2d 382, 384 (Tex. Civ. App.--Amarillo 1979, no writ); see Harper v. Welchem, Inc., 799 S.W.2d 492, 495 (Tex. App.--Houston [14th Dist.] 1990, no writ)* (determinative factor in interpreting judgment is intention of court). However, in determining whether the judgment is final, different presumptions apply depending upon whether the judgment is made following a conventional trial on the merits or results from a default judgment or motion for summary judgment. *Houston Health Clubs, 722 S.W.2d 692.* The judgment is presumed final following a conventional trial on the merits. *North East Indep. School Dist. v. Aldridge, 400 S.W.2d 893, 898 (Tex. 1966).* However, in the context of default or summary judgments, the *Aldridge* presumption does not apply. *Houston Health Clubs, 722 S.W.2d at 693.* Rosedale acknowledges the existence of the *Aldridge* presumption but argues that it cannot be interpreted to mean that there is a presumption *against* finality in default judgments. Rosedale claims there is [**11] simply no presumption, and we must look to the trial court's file for evidence of whether the judgment was intended to be final.

### A. "Case Closed" Notation

As evidence of the intent to make the judgment final, Rosedale points to the [*647] notation on the court's docket indicating "case closed." The supreme court has stated that "a docket entry may supply facts in certain situations" but it may not prevail over or contradict a final judicial order. *N-S-W Corp. v. Snell, 561 S.W.2d 798, 799 (Tex. 1977).* One court has interpreted the certain situations referred to in *N-S-W* as correcting clerical errors in judgments or determining the meaning of words used in a judgment. *Energo Int'l Corp. v. Modern Indus. Heating, Inc., 722 S.W.2d 149, 151 n.2 (Tex. App.--Dallas 1986, no writ).* Otherwise, docket entries are considered to be a memorandum made for the convenience of the clerk and the trial court and not a part of the record to be considered. *Roever v. Roever, 824 S.W.2d 674, 676 (Tex. App.--Dallas 1992, no writ).* From the limited record before us, we do not find that the case closed notation evidences intent by the trial court to make the default judgment [**12] final.

### B. "Let Execution Issue"

Rosedale also contends that the phrase "for all of which let execution issue" evidences the trial court's intent to make the judgment final. We have found no authority, and relator did not provide us with any, indicating that the use of the execution issue phrase evidences

the intent to make the judgment final. [2] Moreover, judgments containing directives that execution issue have been found to be interlocutory. *See Macarangal v. Andrews, 838 S.W.2d 632, 634* (Tex. App.--Dallas 1992, orig. proceeding [leave denied]) (order listing entity as a party, dismissing the cause, and providing for execution did not show intent of trial court to dispose of all parties and claims); *McClennahan v. First Gibraltar Bank, 791 S.W.2d 607, 608-09* (Tex. App.--Dallas 1990, no writ) (judgment contained let execution issue phrase but court found summary judgment interlocutory for failure to dispose of counterclaim).

> 2    However, had the default judgment included language purporting to dispose of all claims and/or parties (Mother Hubbard language), it would have clearly evidenced the trial court's intent to dispose of all claims. *Mafrige v. Ross, 866 S.W.2d 590, 37 Tex. Sup. Ct. J. 82, 84* (Oct. 27, 1993).

[**13] **C. Disposition of Issues by Necessary Implication**

Rosedale asserts that in addition to evidencing the intent to make the judgment final, the let execution issue phrase indicates that the claims for attorney's fees and prejudgment interest were disposed of by necessary implication. We disagree. Although it is well-settled that it is not "essential that the judgment in express terms specifically dispose of each issue" in order to be final, it is essential that the inference that the judgment does dispose of a particular issue follows as a necessary implication. *Davis v. McCray Refrigerator Sales Corp., 136 Tex. 296, 150 S.W.2d 377, 378 (1941)*; *see Matelski v. Matelski, 840 S.W.2d 124, 126-27* (Tex. App.--Fort Worth 1992, no writ) (by enforcing partition agreement, court necessarily denied claim that party was under duress when signing agreement); *Chem-Gas Engineers, Inc. v. Texas Asphalt & Refining Co., 395 S.W.2d 690, 691* (Tex. Civ. App.--Waco 1965, writ ref'd n.r.e.)(when plaintiff's action seeking adjudication of priority and foreclosure of lien dismissed, no right, equities, or issues left for adjudication between the parties; judgment disposed of plaintiff's [**14] claim for debt which could only be established via a lien by necessary implication). In the instant case, the court awarded the alleged amount of the note and post judgment interest. No mention was made as to the prejudgment interest or the attorney's fees as requested in the petition nor did the award of the note amount plus interest preclude the award of prejudgment interest or attorney's fees. Therefore, we do not find that these claims were disposed of by necessary implication.

**D. Final Judgment Disposes of All Parties and Issues**

In order for a judgment to be final, it must dispose of all parties and all issues involved in the lawsuit. *Houston Health Clubs v. First Court of Appeals, 722 S.W.2d 692, 693 (Tex. 1986)*. Relator contends that all issues were disposed of because it abandoned its claims for prejudgment interest and attorney's fees. Although we note that one court has allowed a party to [*648] abandon or waive a request for punitive damages and impart the requisite finality to a judgment without informing the trial court of the decision to do so, in that case the court held it was not necessary to notify the trial court in order to show that the jurisdiction [**15] of the appellate court had been successfully invoked. *Jones v. Griege, 803 S.W.2d 486, 487-88* (Tex. App.--Dallas 1991, no writ).

In *Griege,* the court concluded that Griege's notice to the appellate court of his decision to waive the request for punitive damages established that the judgment was now final and the appellate court had jurisdiction over the appeal. *Id. at 489.* However, in the instant case, it is crucial for us to know when Rosedale decided to abandon or waive its remaining requests in order to determine when the trial court's plenary power expired. In the record before us, we do not have any evidence of an amended petition deleting the claims for prejudgment interest and attorney's fees, an affidavit explaining when the claim was abandoned, or any other evidence indicating Rosedale's intent to abandon the remaining claims prior to the filing of the motion for new trial. [3] Therefore, we do not know if Rosedale abandoned its claims at the time the default judgment was signed, at the time the motion for new trial was filed, or during oral argument when the abandonment argument was first presented. Because we are unable to ascertain the finality of the judgment [**16] based on the abandonment of issues argument, we must review the judgment on its face to determine its finality.

The default judgment in this case provides the following:

> It is therefore ORDERED, ADJUDGED and DECREED that Judgment is entered in favor of the Plaintiff Rosedale Partners, Ltd. against the Defendant Bernard Lifshutz in the amount of $ 7,047,841.20, the past due principal and interest at the time of filing of this suit, plus interest on this unpaid sum at the rate of eighteen percent (18%) per annum from date of Judgment until date of payment, for all of which let execution issue.

However, in reviewing plaintiff's original petition, we find that the following requests were made:

> In addition to this sum [the $ 7,047,841.20], accrued interest as allowed by law is also accumulating on the past due sum shown above, and recovery of this interest from the date of such conveyance until date of payment is also sought by this suit. . . . Pursuant to the terms of the Notes themselves, the Plaintiff is entitled to recover a sum equal to fifteen percent (15%) additional on the amount of principal and interest owing, as attorneys' fees, and for the recovery [**17] of this additional sum claim is also made.

In *Houston Health Clubs,* the court found that a default judgment was interlocutory because it not dispose of the punitive damage issue. *Id.* In that case, a default judgment was granted to the landlord for all the relief sought except for punitive damages. The punitive damage issue was not mentioned either expressly or by implication. The court held that because the default judgment remained interlocutory, the trial court retained jurisdiction to set it aside and grant a new trial. *Id. 722 S.W.2d at 694*; *see H.E. Butt Grocery Co. v. Bay, Inc., 808 S.W.2d 678, 680* (Tex. App.--Corpus Christi 1991, writ denied) (where three possible authorities existed under which prejudgment interest could be awarded, failure to recite specific interest rate in default judgment case rendered judgment interlocutory). Moreover, in *Hunt Oil Co. v. Moore, 639 S.W.2d 459, 460 (Tex. 1982)*, a judgment, which did not mention the claim for prejudgment interest, was considered Interlocutory until the court entered another judgment which tracked the language of the first judgment and added language which denied all other relief not expressly [**18] granted. The court found that the interlocutory judgment not only failed to address the claim for prejudgment interest but also ordered an accounting to be filed at a subsequent time. *Id. at 460*; *see New York Underwriters Ins. Co. v. Sanchez, 799 S.W.2d 677, 678 (Tex. 1990)* (judgment which did not mention or [*649] dispose of counterclaim for attorney's fees interlocutory).

> 3 Both parties agreed during oral argument that no hearing was held at the time the default judgment was signed. Relator acknowledged that the default judgment was mailed to the judge in order to obtain her signature.

In the instant case, the trial court did not dispose of all the issues before it. Rosedale prayed not only for the amount of the note but also requested prejudgment interest and attorney's fees. Therefore, we hold that the default judgment entered was interlocutory, and the trial court retained jurisdiction to grant the new trial and dissolve its previous orders. Accordingly, the petition for writ of mandamus [**19] is denied.

ORLANDO GARCIA,

Justice



1 of 1 DOCUMENT

**SHEIK TEHUTI, Appellant v. BARRETT DAFFIN FRAPPIER TURNER & EN-GEL, LLP, MARY DAFFIN, ROBERT FRAPPIER, STEVE TURNER, BRIAN ENGEL, AND CHALISE ESTES, Appellees**

**No. 05-11-00449-CV**

**COURT OF APPEALS OF TEXAS, FIFTH DISTRICT, DALLAS**

*2011 Tex. App. LEXIS 7375*

**September 9, 2011, Opinion Issued**

**SUBSEQUENT HISTORY:** Released for Publication October 21, 2011.

**PRIOR HISTORY:** [*1]
On Appeal from the 193rd Judicial District Court, Dallas County, Texas. Trial Court Cause No. DC-10-15953.

**COUNSEL:** For APPELLANT: Sheik Tehuti, Fort Worth, TX.

For APPELLEE: Steven A. Leyh, LEYH & PAYNE, L.L.P., Houston, TX.

**JUDGES:** Before Justices FitzGerald, Francis, and Lang-Miers. Opinion By Justice FitzGerald.

**OPINION BY:** KERRY P. FITZGERALD

**OPINION**

**MEMORANDUM OPINION**

Opinion By Justice FitzGerald

Sheik Tehuti appealed the trial court's March 30, 2011 default judgment in favor of appellees. The judgment on its face appeared to be interlocutory in that it did not dispose of appellees' claim for prejudgment interest, nor did it contain language indicating it was disposing of all claims and parties and was intended to be final. *See Lehmann v. Har-Con Corp., 39 S.W.3d 191, 200 (Tex. 2001)*. Therefore, by letter dated June 27, 2011, the Court directed the parties to file letter briefs addressing our jurisdiction over the appeal.

Appellant responded with a brief that appears to address the merits of the default judgment rather than the jurisdictional issue. The only reference that might be construed as directed to the jurisdictional question is appellant's statement that the "district court had ruled on a core issue important to the appeal." This, however, does not explain why the judgment is not interlocutory. Appellees responded that [*2] the March 30, 2011 judgment is interlocutory and we do not have jurisdiction over the appeal. We agree with appellees.

Appellate jurisdiction is never presumed. *Brashear v. Victoria Gardens of McKinney, L.L.C., 302 S.W.3d 542, 546 (Tex. App.--Dallas 2009, no pet.)* (op. on reh'g). Unless the record affirmatively shows the propriety of appellate jurisdiction, we must dismiss the appeal. *See id*. Subject to a few exceptions not applicable here, we have jurisdiction only over appeals from final judgments--judgments that dispose of all pending parties and claims. *See Lehmann, 39 S.W.3d at 195*; *Beckham Grp., P.C. v. Snyder, 315 S.W.3d 244, 245 (Tex. App.--Dallas 2010, no pet.)*.

In this case, the trial court's March 30, 2011 judgment neither affirmatively disposes of appellees' claim for prejudgment interest nor contains language indicating that all claims and parties have been disposed of and the judgment is intended to be final. *See Lehmann, 39 S.W.3d at 200*. Therefore, the judgment is not final. Absent a final judgment, we have no jurisdiction over the appeal. *See id. at 195*.

We dismiss the appeal for want of jurisdiction.                    JUSTICE

KERRY P. FITZGERALD

# *Sherman Acquisition II LP v. Garcia*

Court of Appeals of Texas, Tenth District, Waco

June 20, 2007, Opinion Delivered; June 20, 2007, Opinion Filed

No. 10-06-00013-CV

**Reporter**

229 S.W.3d 802; 2007 Tex. App. LEXIS 4793

SHERMAN ACQUISITION II LP, Appellant v. TONIE GARCIA, Appellee

**Prior History:** [**1] From the County Court at Law No. 1. McLennan County, Texas. Trial Court No. 20050487CV1.

**Disposition:** Reversed and rendered.

## Core Terms

trial court, default judgment, damages, sworn, request for admission, liquidated, attorney's fees, unliquidated damages, merits, pet, no writ, allegations, admissions, original petition, conclusively, unidentified, deemed admitted, judicial notice, unliquidated, hearsay, card, hear, take nothing judgment, entitled to judgment, amount of damages, judgment rendered, court of appeals, fact finding, contents

## Case Summary

### Procedural Posture

Appellant creditor challenged a take-nothing judgment entered by the County Court at Law No. 1, McLennan County, Texas, after a trial on the merits before the court in the creditor's action against appellee debtor on a sworn account and for quantum meruit to recover an unpaid credit card debt. The debtor had not filed an answer or otherwise made an appearance. Although the creditor requested a default judgment, the trial court did not grant it.

### Overview

The debtor did not appear at the trial on the merits. The creditor presented no live testimonial evidence of its damages but had an attorney fee affidavit and an affidavit purporting to address the merits of its claim.

The court held that the creditor was not entitled to a judgment for a suit on sworn account. The case involved the extension of credit. Some credit extensions were to fund the purchase of goods or services at the point of purchase; others were alleged to have been cash advances. The creditor had not properly pleaded a claim upon which a suit on a sworn account for those types of transactions could be based. The trial court erred in not granting a default judgment under *Tex. R. Civ. P. 239* on liability, but not on damages. While the creditor did not bring itself within the rule regarding a suit on a sworn account, its allegations were sufficient to allege a traditional suit for breach of contract. Although the court disagreed with the creditor's conclusion that the damages were liquidated, sufficient evidence of damages was presented to prove its damages pursuant to *Tex. R. Civ. P. 243*. Accordingly, the trial court erred in not rendering judgment for the creditor.

### Outcome

The court reversed the trial court's judgment and rendered judgment for the creditor.

## LexisNexis® Headnotes

Contracts Law > Breach > Breach of Contract Actions > General Overview

Contracts Law > ... > Sales of Goods > Title, Creditors & Good Faith Purchasers > Passing of Titles

*HN1* A suit on a sworn account must be based upon a transaction involving a sale on one side and a purchase on the other whereby title to personal property passes from one to another.

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > General Overview

Civil Procedure > Appeals > Appellate Jurisdiction > Interlocutory Orders

**HN2** Ordinarily, the denial of a default judgment is an interlocutory order not subject to appeal. This is the natural result of the denial of a motion that does not result in a judgment because the refusal to rule on, or the denial of, a dispositive motion, does not normally result in a ruling or other final judgment about which complaint can be made. Usually, after the denial, or refusal to rule, the proceedings progress and are ultimately resolved and the denial or refusal to rule on the motion becomes moot because other events in the proceeding have resulted in a judgment.

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > General Overview

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

**HN3** Review of the denial of a motion for default judgment is under the abuse of discretion standard.

Civil Procedure > ... > Default & Default Judgments > Default Judgments > Entry of Default Judgments

**HN4** A plaintiff is generally entitled to a default judgment against a defendant who fails to file an answer within the time allowed and fails to appear when the trial court calls the case for trial. *Tex. R. Civ. P. 239*. A defendant who neither answers nor appears has "admitted" the facts properly pled and the justice of the opponent's claim.

Contracts Law > Breach > Breach of Contract Actions > General Overview

**HN5** A suit on a sworn account is a special type of suit on a contract.

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Default Judgments

**HN6** A default judgment on liability does not address the merits of the allegations regarding unliquidated damages.

Civil Procedure > ... > Default & Default Judgments > Default Judgments > Entry of Default Judgments

Contracts Law > ... > Damages > Types of Damages > Liquidated Damages

Evidence > Types of Evidence > Judicial Admissions > Effects

**HN7** Once a default judgment is taken against a non-answering defendant on an unliquidated claim, all allegations of fact set forth in the petition are deemed admitted, except for the amount of damages. If the claim is liquidated and proved by an instrument in writing, the damages shall be assessed by the court, or under its direction, unless the defendant demands and is entitled to a trial by jury. *Tex. R. Civ. P. 241*. A claim is liquidated if the amount of damages caused by the defendant can be accurately calculated from (1) the factual, as opposed to conclusory, allegations in the petition, and (2) an instrument in writing. Whether a claim is liquidated must be determined from the language of the petition, as a seemingly liquidated claim may be unliquidated because of pleading allegations which require proof for resolution. If the damages being claimed are unliquidated, the court rendering a default judgment must hear evidence as to damages. *Tex. R. Civ. P. 243*. *Rule 243* does not prescribe either the manner in which the hearing is to be conducted or the character of evidence which is required. *Tex. R. Civ. P. 243*. However, it is error for the trial court to fail to conduct a hearing and to require proof of unliquidated damages before rendering default judgment for such damages.

Contracts Law > ... > Damages > Types of Damages > Liquidated Damages

**HN8** Examples of unliquidated damages are personal injury damages, claims based on repair estimates, and the determination of property value absent written instruments verifying the value. A claim is liquidated if the amount of damages may be accurately calculated by the trial court from the factual, as opposed to the conclusory, allegations in a plaintiff's petition and the instrument in writing.

Contracts Law > ... > Damages > Types of Damages > Liquidated Damages

**HN9** When a claim is for unliquidated damages, a court shall hear evidence as to damages and shall render judgment therefor. *Tex. R. Civ. P. 243*. For an unliquidated claim, testimony of the total amount due is sufficient to support an award of damages, and the testimony may be supplied by affidavits.

Contracts Law > ... > Damages > Types of Damages > Liquidated Damages

**HN10** See *Tex. R. Civ. P. 243*.

Contracts Law > ... > Damages > Types of Damages > Liquidated Damages

Evidence > ... > Statements as Evidence > Hearsay > General Overview

*HN11* *Tex. R. Evid. 802* states that inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay. Nothing in *Rule 802* limits its application to contested hearings. The rule is not ambiguous and requires no explication. Because unobjected to hearsay constitutes probative evidence, it satisfies the requirement of *Tex. R. Civ. P. 243* that there be evidence of unliquidated damages.

Civil Procedure > ... > Default & Default Judgments > Default Judgments > Entry of Default Judgments

Contracts Law > ... > Damages > Types of Damages > Liquidated Damages

Evidence > ... > Statements as Evidence > Hearsay > General Overview

*HN12* A trial court may rely on affidavits in proving unliquidated damages in default judgments; in fact, it is error to not consider the affidavits. *Tex. R. Evid. 802*, the hearsay rule, will not prevent use of evidence in the form of affidavits. Affidavits are probative evidence of unliquidated damages. Testimony of the total amount due under a written instrument is legally sufficient to support an award of that amount in a default judgment proceeding. But not just any affidavit will do. An affidavit which does not positively and unqualifiedly represent the facts as disclosed in the affidavit to be true and within the affiant's personal knowledge is legally insufficient.

Evidence > Types of Evidence > Judicial Admissions > Effects

*HN13* Admissions, once deemed admitted, are judicial admissions and a party may not then introduce controverting testimony in the legal proceeding related thereto. Deemed admissions may be employed as proof; and once admissions are deemed admitted by operation of law and where said admissions fully support each element of a cause of action, including damages, they will fully support a judgment based thereon. This is because unanswered requests for admissions are deemed admitted without the necessity of a court order and any matter thus admitted is conclusively established as being true. Tex. R. Civ. P. 198.2(c), 198.3. Thus, the facts admitted may not be contradicted by evidence at the trial.

**Counsel:** For APPELLANT/RELATOR: Jeffrey J. Chen, HULL & ASSOCIATES, PC, Houston, TX.

For APPELLEE/RESPONDENT: Tonie Garcia, Pro se, Waco, TX.

**Judges:** Before Chief Justice Gray, Justice Vance, and Justice Reyna.

**Opinion by:** TOM GRAY

## Opinion

[*804] **OVERVIEW**

This appeal is from a take nothing judgment after a trial on the merits before the court. Sherman Acquisition II LP sued Tonie Garcia in county court on a sworn account and for quantum meruit [1] to [*805] recover an unpaid credit card debt. Garcia did not file an answer or otherwise make an appearance. Sherman requested a default judgment. The trial court did not grant default judgment to Sherman, but rather set the case for a trial on the merits. Garcia did not appear at the trial on the merits. Upon Sherman's request, the trial court took judicial notice of the contents of its file. Sherman presented no live testimonial evidence of its damages but included in the court's file was an attorneys fee affidavit and an affidavit purporting to address the merits of its claim. The trial court rendered a take nothing judgment. This appeal followed.

Sherman vigorously asserts that its case is a suit on a sworn account and that it was entitled to judgment by the rules applicable to suits on sworn account, or alternatively by the rules applicable to default judgments, or finally by the evidence at the trial on the merits on both liability and damages. After a discussion of the background of this appeal, we first address the issue of whether Sherman was entitled to a judgment for a suit on sworn account. Because we determine that it is not, we then move to the question of whether Sherman was entitled to a default judgment, and whether it was error for the trial court to deny or refuse

---

[1] The existence of a contract, as more fully explained below, bars recovery under quantum meruit. *Murray v. Crest Const., Inc.*, 900 S.W.2d 342, 345 (Tex. 1995); *Pepi Corp. v. Galliford*, No. 01-05-00788-CV 2007 Tex. App. LEXIS 1018, *10 (Tex. App.-Houston [1st Dist.] Feb. 8, 2007, no pet.). [**2] Accordingly, quantum meruit will not be further discussed herein.

to grant default judgment, on both, or either, liability and damages. Because we determine that the trial court erred in not granting a default judgment on liability, but not on damages, we then must proceed to determine whether the trial court erred by rendering a take nothing judgment after a trial on the merits against Sherman. Because we determine that Sherman conclusively proved its damages, we ultimately conclude that the trial court erred in not rendering judgment for Sherman and, [**3] therefore, we reverse the trial court's judgment and render judgment for Sherman.

## BACKGROUND

Garcia ran up a debt on his Metris credit card account. He failed to pay. Sherman acquired the debt from Metris and then sued Garcia to collect the debt. In addition to the petition, Sherman included a Request for Disclosures and Request for Admissions in the petition. Garcia did not file an answer or make an appearance. Not surprisingly, Garcia, in addition to not answering the claims in the petition, also did not answer the Requests for Admissions. Service of the petition and the Request for Admissions was reflected on the return of service.

Sherman filed a motion for default judgment on July 18, 2005. Rather than a ruling on the motion for default judgment, on July 18, 2005 the case was set for trial on November 4, 2005.

The trial on the merits was held on November 4, 2005. No jury trial having been requested, the case was tried to the court. At the trial before the court, Sherman did not specifically object to the trial court's failure or refusal to rule on any motion but Sherman did draw the trial court's attention to its entitlement to judgment based on the contents of the court's file. Sherman [**4] specifically asked the court to take judicial notice of the court's file and requested a judgment in its favor.

The trial court took judicial notice of the contents of the court's file, which contained the petition, affidavits regarding the claim and attorneys fees, and Request for Admissions to which no response had been filed.

A take nothing judgment was rendered on November 4, 2005.

[*806] Sherman requested findings of fact and conclusions of law.

Findings of fact and conclusions of law were filed.

Notice of Appeal was filed.

## TRIAL ON THE MERITS

The reporter's record on this entire trial on the merits is as follows:

PROCEEDINGS

NOVEMBER 4, 2005

THE COURT: Okay. This is 20050487CV1. Mr. Fisher?

MR. FISHER: Thank you, Your Honor. For the record, my name is John B. Fisher, III, and I am an attorney. I practice law in Waco, McLennan County, Texas. Hull & Associates, the attorneys for the Plaintiffs in this lawsuit, have asked me to appear today solely for the purpose of moving for a judgment, and I have some brief evidence I would like to present to the Court.

THE COURT: All right.

MR. FISHER: I would like to request the Court to take judicial notice of the case file that the Court presently has in his [**5] possession.

THE COURT: All right.

MR. FISHER: I would, second, like to be sworn in.

(Witness duly sworn)

THE COURT: All right. Proceed.

JOHN B. FISHER, III

having been first duly sworn, testified as follows:

DIRECT EXAMINATION

BY MR. FISHER:

I will testify as follows: That I am John B. Fisher, III, and that I am an attorney and I practice law in Waco, McLennan County, Texas, and the following testimony is not of personal knowledge. It is based strictly on information and belief.

And that testimony would be that it is my understanding that the Defendant incurred a credit card debt to a company called Metris, and that that debt was subsequently bought by the Plaintiff herein, Sherman Acquisition. And it is my understanding, based on information and

belief, that that debt is a legitimate debt that is unpaid and that the Plaintiff is entitled to recover the money that they have sued for.

Also, I would like to testify, based on information and belief, that included in the Plaintiff's Original Petition are Requests for Admissions that have not been responded to as of this date, in any manner.

And that's all the testimony I have, Your Honor.

THE COURT: Anything else, Mr. Fisher?

MR. FISHER: Did the Court [**6] want to hear any type of argument?

THE COURT: I will hear anything you want to present, Mr. Fisher.

MR. FISHER: Thank you, Your Honor.

FINAL ARGUMENT

MR. FISHER: I would like to say to the Court that I believe that *Rule 241 of the Texas Rules of Civil Procedure* is applicable in this situation because we have a liquidated amount that is proven by an instrument in writing, and I believe that the pleadings are sufficient to give the Defendant notice of what they were sued for and why they were sued, [*807] and I think the Requests for Admissions certainly bolster those other reasons, and therefore, believe that when the Defendant hasn't appeared and in any way contested the charges, which constitutes a type of tacit admission, that it's a legitimate claim, that the Plaintiff is entitled to the judgment requested.

Thank you, Your Honor.

THE COURT: Mr. Fisher, I am going to deny the relief prayed for and order that the Plaintiff take nothing for this suit. Anything further?

MR. FISHER: No, Your Honor.

## THE APPEAL

Sherman brings three issues. The issues are as follows:

1. The trial court erred in ordering that the Plaintiff take nothing by way of its suit.

2. The trial court erred in not granting the Plaintiff's [**7] Default Judgment; and

3. The trial [court] improperly set the matter for trial.

All three issues are somewhat interrelated, and will be discussed as necessary, as described above.

## SWORN ACCOUNT

If Sherman properly pleaded a suit on a sworn account, it is entitled to judgment, not so much because of the default of Garcia, but because Garcia did not file a sworn denial of the account. *See TEX. R. CIV. P. 185*. But as the trial court properly noted, **HN1** a suit on a sworn account must be based upon a transaction involving "a sale on one side and a purchase on the other whereby title to personal property passes from one to another." *Tully v. Citibank (S.D.), N.A., 173 S.W.3d 212, 216 (Tex. App.-Texarkana 2005, no pet.)*. This case involves the extension of credit. Some credit extensions were to fund the purchase of goods or services at the point of purchase; others are alleged to have been cash advances. Sherman has not properly pleaded a claim upon which a suit on a sworn account for these types of transactions can be based.

## DEFAULT JUDGMENT

**HN2** Ordinarily, the denial of a default judgment is an interlocutory order not subject to appeal. *Aguilar v. Livingston, 154 S.W.3d 832, 833 (Tex. App.-Houston [14th Dist.] 2005, no pet.)*. [**8] This is the natural result of the denial of a motion that does not result in a judgment because the refusal to rule on, or the denial of, a dispositive motion, does not normally result in a ruling or other final judgment about which complaint can be made. Usually, after the denial, or refusal to rule, the proceedings progress and are ultimately resolved and the denial or refusal to rule on the motion becomes moot because other events in the proceeding have resulted in a judgment.

We have previously reviewed the denial of a motion for default judgment which was filed and ultimately denied after an answer was filed. *Aguilar v. Alvarado, 39 S.W.3d 244, 248 (Tex. App.-Waco 1999, pet. denied)* ("Rather, Aguilar's first request for a default judgment occurred in his motion, filed *after* Alvarado filed his answer, in which he asked the trial court to strike Alvarado's answer and enter a default judgment."). And at least one other appellate court, citing our *Aguilar* case, has considered the denial of a default judgment when, as here, the denial is challenged in an appeal from a final judgment or order. *Aguilar v. Livingston, 154 S.W.3d 832, 833*

*(Tex. App.-Houston [14th Dist.] 2005, no pet.)*. **[**9]** *HN3* Review of the denial of a motion for default judgment is under the abuse of discretion standard. *Id.*

**[*808]** Initially we must determine whether the trial court's failure or refusal to grant a default judgment was properly preserved. In *Aguilar v. Alvarado*, the motion was made and specifically denied after the answer had been filed. Thus, as with any issue that needs to be preserved, Aguilar had pursued the objection to an adverse ruling. *See TEX. R. APP. P. 33.1*. The appellant, Aguilar, was arguing that the trial court, notwithstanding that an answer had been filed, should have granted the motion for default judgment.

In the present case, however, there is some question whether proceeding to trial without an express ruling on the motion would be a waiver of the motion by Sherman. Alternatively, it could be argued, that setting the case for trial rather than granting default judgment was an implied denial of the motion by the trial court. *TEX. R. APP. P. 33.1(a)(2)(A)*. Or finally, a third alternative argument is whether preservation would require that the movant object to the trial court's failure or refusal to rule on the motion. *TEX. R. APP. P. 33.1(a)(2)(B)*.

At the trial on the merits, in **[**10]** Sherman's opening statement, consisting of one paragraph, Sherman advised the court that it was there to move for judgment. And in its closing argument, also of only one paragraph, Sherman specifically argued that it was entitled to judgment under *Rule 241 of the Texas Rules of Civil Procedure* (default judgment on liquidated damages). Immediately thereafter, the trial court rendered a take nothing judgment against Sherman. Because it is clear that Sherman did not waive its claimed right to a default judgment and continued to press the court for a default judgment based upon the contents of the court's file, and further because it is clear that the trial court understood Sherman's request, we conclude that the issue of whether the trial court erred in failing to render a default judgment was adequately preserved. *TEX. R. APP. P. 33.1*.

### LIABILITY AND DAMAGES

We now address the question of whether the trial court erred in not rendering a default judgment in favor of Sherman on either, or both, liability and damages. *HN4* A plaintiff is generally entitled to a default judgment against a defendant who fails to file an answer within the time allowed and fails to appear when the trial court

calls **[**11]** the case for trial. *TEX. R. CIV. P. 239*. A defendant who neither answers nor appears has "'admitted' the facts properly pled and the justice of the opponent's claim." *Stoner v. Thompson, 578 S.W.2d 679, 682 (Tex. 1979)*.

Just because we have determined that this was not a suit on a sworn account, we cannot disregard the remaining allegations if they support a claim for breach of contract. *HN5* A suit on a sworn account is a special type of suit on a contract. We hold that while Sherman did not bring itself within the rule regarding a suit on a sworn account, its allegations are sufficient to allege a traditional suit for breach of contract. After reviewing the original petition, we find that it contained a sufficient allegation of breach of contract, and the trial court should have entered default judgment for Garcia's liability on the claim upon that basis. The trial court abused its discretion in failing to enter the default judgment. But this is only as to liability. *HN6* A default judgment on liability does not address the merits of the allegations regarding unliquidated damages. *Transp. Concepts, Inc. v. Reeves, 748 S.W.2d 302, 304 (Tex. App.-Dallas 1988, no writ)*.

### LIQUIDATED DAMAGES VS. UNLIQUIDATED **[**12]** DAMAGES

The general topic of default judgments and the critical distinction between **[*809]** liquidated and unliquidated damages is addressed in an excellent opinion by Justice Johnson, now on the Texas Supreme Court, when he was a justice on the Seventh Court of Appeals in Amarillo. *Arenivar v. Providian Nat'l Bank, 23 S.W.3d 496, 497-498 (Tex. App.-Amarillo 2000, no pet.)*. As Justice Johnson explained,

> *HN7* Once a default judgment is taken against a non-answering defendant on an unliquidated claim, all allegations of fact set forth in the petition are deemed admitted, except for the amount of damages. *Texas Commerce Bank, Nat. Ass'n v. New, 3 S.W.3d 515, 516 (Tex. 1999)*. If the claim is liquidated and proved by an instrument in writing, the damages shall be assessed by the court, or under its direction, unless the defendant demands and is entitled to a trial by jury. *TEX. R. CIV. P. 241*. A claim is liquidated if the amount of damages caused by the defendant can be accurately calculated from (1) the factual, as opposed to conclusory, allegations in the petition, and (2) an instrument

in writing. *Pentes Design, Inc. v. Perez, 840 S.W.2d 75, 79 (Tex. App.-Corpus Christi 1992, writ denied)*. Whether [**13] a claim is liquidated must be determined from the language of the petition, as a seemingly liquidated claim may be unliquidated because of pleading allegations which require proof for resolution. *See Irlbeck v. John Deere Co., 714 S.W.2d 54, 57 (Tex. App.-Amarillo 1986, writ ref'd n.r.e.)*.

If the damages being claimed are unliquidated, the court rendering a default judgment must hear evidence as to damages. *Rule 243*; *Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 83 (Tex. 1992)*. *Rule 243* does not prescribe either the manner in which the hearing is to be conducted or the character of evidence which is required. *Rule 243*; *see New, 3 S.W.3d at 516-17* (affidavits are sufficient evidence to support unliquidated damages award). However, it is error for the trial court to fail to conduct a hearing and to require proof of unliquidated damages before rendering default judgment for such damages. *See Jones v. Andrews, 873 S.W.2d 102, 107 (Tex. App.-Dallas 1994, no writ)*.

*Arenivar v. Providian Nat'l Bank, 23 S.W.3d 496, 497-498 (Tex. App.-Amarillo 2000, no pet.)*.

*HN8* Examples of unliquidated damages are personal injury damages, claims based on repair estimates, and the determination of property [**14] value absent written instruments verifying the value. *See Jones v. Andrews, 873 S.W.2d 102, 107 (Tex. App.-Dallas 1994, no writ)* (damages for personal injuries are unliquidated); *Alvarado v. Reif, 783 S.W.2d 303, 305 (Tex. App.-Eastland 1989, no writ)* (claim for damages based on repair estimate is not a liquidated damage); *Willacy County Appraisal Review Bd. v. South Padre Land Co., 767 S.W.2d 201, 204 (Tex. App.-Corpus Christi 1989, no writ)* (determination of property value is not liquidated demand where only evidence of property value was the conclusory allegation of value in plaintiff's unsworn petition).

A claim is liquidated if the amount of damages may be accurately calculated by the trial court from the factual, as opposed to the conclusory, allegations in plaintiff's petition and the instrument in writing. *Novosad v. Cunningham, 38 S.W.3d 767, 773 (Tex. App.-Houston [14th Dist.] 2001, no pet.)* (suit to recover amount due

for professional services was a liquidated claim proven by written instruments); *Mantis v. Resz, 5 S.W.3d 388, 392 (Tex. App.-Fort Worth 1999, pet. denied)*, *overruled on other grounds*, *Sheldon v. Emergency Medicine Consultants, 43 S.W.3d 701, 702-03 (Tex. App.-Fort Worth* [*810] *2001, no pet.)* [**15] (in a suit on a sworn account, the petition with an attached sworn account and verified affidavit of the sworn account was a liquidated claim proved by written instruments); *Sheshunoff & Co. v. Scholl, 560 S.W.2d 113, 115 (Tex. Civ. App.-Houston [1st Dist.] 1977)*, *rev'd on other grounds*, *564 S.W.2d 697 (Tex. 1978)* (no further proof was required in suit to recover damages for breach of employment contract because the claim for damages was liquidated and proved by the employment contract attached to the petition). We disagree with Sherman's conclusion that the damages here are liquidated. As explained below, we agree, however, that sufficient evidence of damages was presented to prove Sherman's damages.

## UNLIQUIDATED DAMAGES

Having found that Sherman was entitled to a default judgment based on the petition's allegations regarding liability and the defendant's failure to answer, our decision leaves Sherman with the need to prove its unliquidated damages. Sherman alleges it proved damages via an affidavit or, alternatively, deemed admissions.

At the trial, Sherman submitted damages evidence in the form of request for admissions that were deemed admitted and affidavits. We will address those [**16] in reverse order.

## AFFIDAVIT

*HN9* When a claim is for unliquidated damages, "the court shall hear evidence as to damages and shall render judgment therefor …" *TEX.R. CIV. P. 243*; *Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 83 (Tex. 1992)*. For an unliquidated claim, testimony of the total amount due is sufficient to support an award of damages, and the testimony may be supplied by affidavits. *Texas Commerce Bank v. New, 3 S.W.3d 515, 517 (Tex. 1999)*; *Barganier v. Saddlebrook Apartments, 104 S.W.3d 171, 173 (Tex. App.-Waco 2003, no pet.)*; *Irlbeck v. John Deere Co., 714 S.W.2d 54, 57 (Tex. App.-Amarillo 1986, no writ)*.

In the past, the first issue has been whether affidavits constitute evidence as required by *Rule 243*. That rule provides:

*HN10* If the cause of action is unliquidated or be not proved by an instrument in writing, the court shall hear evidence as to damages and shall render judgment therefor, unless the defendant shall demand and be entitled to a trial by jury in which case the judgment by default shall be noted, a writ of inquiry awarded, and the cause entered on the jury docket.

*TEX. R. CIV. P. 243*.

Although several courts of appeals had held that affidavits constitute evidence **[**17]** of unliquidated damages, at least one court of appeals held that they did not. *New v. Texas Commerce Bank, 971 S.W.2d 711, 714 (Tex. App.-Austin 1998)*, rev'd in part, *3 S.W.3d 515 (Tex. 1999)*. To reject the affidavit the court of appeals had concluded that *Rule 802 of the Texas Rules of Evidence*, the hearsay rule, prevents the use of affidavits "because the application of *Rule 802* anticipates opposing counsel's and/or an opposing party's presence at the hearing to object to such inadmissible hearsay." *Id*. The lower court in *New* further concluded, therefore, that a trial court does not hold "an evidentiary hearing merely by accepting the affidavits attached to [the] motion." *Id*.

The Texas Supreme Court held that the court of appeals was incorrect, holding

*HN11* *Rule 802* says, "Inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay." Nothing in *Rule 802* limits its application to contested hearings. The rule is not ambiguous and requires no explication. Consequently we will **[*811]** give it none. Because unobjected to hearsay constitutes probative evidence, it

satisfies the requirement of *Rule 243* that there be evidence of unliquidated damages. **[**18]** The trial court did not err when it considered the affidavits in rendering its default judgment.

*Texas Commerce Bank v. New, 3 S.W.3d 515, 517 (Tex. 1999)*.

In the case now before this Court, it appears that the trial court concluded that damages could not be properly proven through affidavit. To the contrary, *HN12* a trial court may rely on affidavits in proving unliquidated damages in default judgments; in fact it is error to not consider the affidavits. *Id*. *Rule 802 of the Texas Rules of Evidence*, the hearsay rule, will not prevent use of evidence in the form of affidavits. *Id*. Affidavits are probative evidence of unliquidated damages. *Id*. "Testimony of the total amount due under a written instrument is legally sufficient to support an award of that amount in a default judgment proceeding." *Id*.

But not just any affidavit will do. Sherman's affidavit in support of damages is signed by an unidentified "attorney in fact," states the amount due on the account, and that the "amount is within the knowledge of affiant just and true." An affidavit which does not positively and unqualifiedly represent the facts as disclosed in the affidavit to be true and within the affiant's personal knowledge is **[**19]** legally insufficient. *Humphreys v. Caldwell, 888 S.W.2d 469, 470 (Tex. 1994)*. The trial court rejected the evidentiary value of the affidavit. Specifically, as to the affidavit relied upon to prove damages, the trial court found the affiant's source of knowledge was not stated and, as such it was not adequate for the purposes of proving Sherman's damages. [2] We agree. Accordingly, the affidavit is not sufficient as evidence of Sherman's damages.

---

[2] The findings of fact relevant to the affidavit are as follows:

FINDING OF FACT NO. 5. Plaintiff attached to its original petition an *Affidavit* of an unidentified individual.

FINDING OF FACT NO. 6. The affidavit of the unidentified individual claimed that the unidentified individual was *Attorney in Fact for Sherman Acquisition II LP*.

FINDING OF FACT NO. 7. The affidavit of the unidentified individual did not claim that the unidentified individual was a representative of Metris in any capacity.

FINDING OF FACT NO. 8. The affidavit of the unidentified individual failed to state any facts supporting the statement that the unidentified individual had personal knowledge about the subject matter of this suit.

These findings have not been attacked on **[**20]** appeal.

## ATTORNEY'S FEE AFFIDAVIT

The other affidavit in the record was from one of Sherman's attorneys. We believe it was legally sufficient to support an attorney's fee award. It stated that the affiant is a duly licensed attorney, that he was familiar with the usual and customary attorney's fees in McLennan County, and, based on his knowledge of the services rendered to Sherman on this matter, $ 2,224.03 was a reasonable and customary fee for prosecuting this claim. Because there was no controverting evidence, this was legally sufficient to establish an award for and Sherman's entitlement to attorney's fees. *Texas Commerce Bank v. New, 3 S.W.3d 515, 516-518 (Tex. 1999)*.

## REQUEST FOR ADMISSIONS

## (DAMAGES AND ATTORNEY'S FEES [3])

Sherman served a request for admissions, as part of its petition, on Garcia. **[*812]** Garcia did not file an answer or other response. The requests were, therefore, deemed admitted. TEX. R. CIV. P. 198.2(c). The deemed admissions included the following:

> 3. Defendant understood from the time the account made a basis of Plaintiff's Original Petition was opened that use of the credit card results in a loan being made to Defendant for the amount charged or cash advance requested.

> 4. **[**21]** Defendant understood from the time the account made a basis of Plaintiff's Original Petition was opened that Defendant is required and obligated to repay all charges or cash advances incurred on the account.

> 6. Defendant made the purchases and took cash advances using the credit card made a basis of Plaintiff's Original Petition.

> 15. Defendant did promise to pay Plaintiff for said account.

> 17. Defendant has failed to pay Plaintiff for said account.

> 18. Plaintiff made written demand upon Defendant for payment of said account.

> 19. Written demand was made for payment of said account more than 30 days prior to filing this lawsuit.

> 20. Defendant has breached the contract made a basis of Plaintiff's Original Petition.

> 21. Defendant presently owes Plaintiff the amount of $ 6,672.08 on said account.

> 26. The terms of the credit card agreement made a basis of Plaintiff's Original Petition allowed Defendant to be charged late fees if Defendant's monthly payments were late and over credit limit fees if Defendant exceeded the credit limit.

> 27. A reasonable attorney fee for Plaintiff's attorney for the prosecution of this lawsuit would be at least the amount of $ 2,224.03.

The request for admissions was imbedded in the petition. No objection is made to this procedure and by our holding we express no opinion upon the propriety of this form of request for admissions or its service. *See Steffan v. Steffan, 29 S.W.3d 627, 629-631 (Tex. App.-Houston [14th Dist.] 2000, pet. denied)*. The trial court took judicial notice of the contents of its file. The file included the request for admissions and proof of service in the form of a return of service contained in the file.

In examining the record before us, Garcia failed to timely answer the request for admissions, or to file written objections, or to file a motion to file answers late. They were, therefore, deemed admitted. *HN13* Admissions, once deemed admitted, are judicial admissions and Garcia may not then introduce controverting testimony in the legal proceeding related thereto. *Shaw v. National County Mut. Fire Ins. Co., 723 S.W.2d 236, 238 (Tex. App.-Houston [1st Dist.] 1986, no writ)*. **[**23]** Deemed admissions may be employed as proof, *Elkins v. Jones, 613 S.W.2d 533, 534 (Tex. Civ. App.-Austin 1981, no writ)* (summary judgment); and once admissions are deemed admitted by operation of law and where said admissions fully support each element of a cause of action, including damages, they will fully support a judgment based thereon. This is because unanswered requests for admissions are

---

[3] The holding that the deemed admissions **[**22]** are sufficient to conclusively establish attorney's fees is an alternative holding to the sufficiency of the attorney's fee affidavit. We note that the deemed admissions would also support all of the elements of a suit for breach of contract as an alternative to Sherman's entitlement to a default judgment on liability.

deemed admitted "without the necessity of a court order" and any matter thus admitted is "conclusively established" as being **[\*813]** true. TEX. R. CIV. P. 198.2(c), 198.3. Thus, the facts admitted may not be contradicted by evidence at the trial. *Marshall v. Vise, 767 S.W.2d 699, 700 (Tex. 1989)*; *Shaw v. National County Mut. Fire Ins. Co., 723 S.W.2d 236, 238 (Tex. App.-Houston [1st Dist.] 1986, no writ)*.

Because the trial court would have been able to ascertain the amount of damages and attorney's fees based on the request for admissions, we conclude that the evidence conclusively established the amount of damages to Sherman and attorney's fees and that the trial court erred in failing to render judgment for Sherman.

## CONCLUSION

The trial court erred in determining that Sherman take nothing because Sherman **[\*\*24]** conclusively established the amount of Sherman's damages. Sherman was entitled to a default judgment on liability. At the trial on the merits, the file of which the trial court took judicial notice contained the request for admissions.

This was conclusive evidence of damages and attorney's fees which could not be contradicted. We reverse the judgment of the trial court and render the judgment the trial court should have rendered, *TEX. R. APP. P. 43.2(c)*, for damages in the amount of $ 6,672.08, attorney's fees in the amount of $ 2,224.03, prejudgment interest on $ 6,672.08 from July 13, 2004 to November 4, 2005 at the rate of 6% per annum, and postjudgment interest at the rate of 6% per annum on the amount of the judgment from November 5, 2005 until paid.

TOM GRAY

Chief Justice

Before Chief Justice Gray,

Justice Vance, and

Justice Reyna

Reversed and rendered

Opinion delivered and filed June 20, 2007

# *Southwestern Bell Mobile Sys. v. Franco*

Supreme Court of Texas

June 5, 1998, Delivered

No. 97-0989

**Reporter**

971 S.W.2d 52; 1998 Tex. LEXIS 96; 41 Tex. Sup. J. 930; 14 I.E.R. Cas. (BNA) 54

SOUTHWESTERN BELL MOBILE SYSTEMS, INC., PETITIONER v. ODILIA FRANCO AND PATRICIA MENDEZ, RESPONDENTS

**Prior History:** [**1] ON PETITION FOR REVIEW FROM THE COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS.

**Disposition:** Southwestern Bell's petition for review granted and, without hearing oral argument, court of appeals' judgment on claims for intentional infliction of emotional distress and for punitive damages reversed, and judgment rendered that Franco and Mendez take nothing on these claims. Court of appeals' judgment on Franco's reinstatement affirmed. Court of appeals' judgment on Franco's attorney's fees affirmed, but judgment reversed and rendered that Mendez not recover attorney's fees.

## Core Terms

damages, reinstatement, attorney's fees, intentional infliction of emotional distress, trial court, termination, outrageous, award of attorney's fees, court of appeals, fired, prevailing party, no evidence, punitive, nominal, sexual

## Case Summary

### Procedural Posture

Petitioner telephone company requested review of a decision of the Court of Appeals, 13th District (Texas), which affirmed an award of actual and punitive damages to respondent employees, based on intentional infliction of emotional distress, and remanded for proof of attorney's fees. Petitioner asserted that the evidence was legally insufficient, reinstatement was improper, and attorney's fees were unwarranted.

### Overview

Petitioner telephone company requested review of an appeals court decision, which affirmed an award of actual and punitive damages to respondents, customer service employees, based on intentional infliction of emotional distress (IIED), and remanded for proof of attorney's fees. Six months prior to termination for defrauding petitioner, respondents complained of sexual harassment. Respondents, in turn, sued for retaliatory discharge. Petitioner asserted that the evidence was legally insufficient, reinstatement was improper, and attorney's fees unwarranted. The lower court held that wrongful termination of respondents was so extreme and outrageous that it supported a finding of IIED. The lower court found respondents might get attorney's fees, upon proof. One respondent sued for unlawful discrimination and requested reinstatement. Respondents sought attorney's fees under *Tex. Lab. Code § 21.259*. The court reversed appeals court's judgment for IIED and punitive damages because evidence was legally insufficient. The court affirmed one respondent's reinstatement and awarded her attorney's fees, but denied fees for remaining respondent, who received only nominal damages.

### Outcome

The court reversed appeals court's judgment for intentional infliction of emotional distress and punitive damages in favor of petitioner telephone company because evidence presented by respondents, customer service employees, was legally insufficient. One respondent's reinstatement and award of attorney fees was affirmed. The other respondent was denied fees, as she received only nominal damages.

## LexisNexis® Headnotes

Torts > ... > Pain & Suffering > Emotional Distress > Evidence

Torts > Intentional Torts > Intentional Infliction of Emotional Distress > General Overview

Torts > Intentional Torts > Intentional Infliction of Emotional Distress > Elements

**HN1** To recover for the tort of intentional infliction of emotional distress, a plaintiff must prove that: (1) the defendant acted intentionally or recklessly; (2) the conduct was "extreme and outrageous"; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe.

Civil Procedure > ... > Standards of Review > Substantial Evidence > General Overview

**HN2** In reviewing "no evidence" points of error, the court must consider the evidence and draw all inferences in the light most favorable to the verdict. If the evidence is legally sufficient when viewed in this light, then the court may not reverse the trial court's judgment.

## Opinion

[*53]  PER CURIAM

Is wrongful termination of employment so extreme and outrageous that, without more, it will support a jury finding of intentional infliction of emotional distress? The court of appeals held that it is. [1] It is not. Furthermore, the respondents' punitive damages cannot stand without the intentional-infliction claim. But, the court of appeals' judgment is correct to the extent that it affirmed the trial court's order reinstating Odilia Franco. Further, there is no error in that portion of the judgment reversing and remanding the trial court's order of attorney's fees for Franco. We reverse, however, as [**2]  to Patricia Mendez's attorney's fees and hold that Mendez may not recover such fees. Consequently, we reverse in part and affirm in part the court of appeals' judgment.

The Corpus Christi branch of Southwestern Bell Mobile Systems employed Franco and Mendez as customer service representatives. In May 1990, Southwestern Bell fired Franco for numerous absences and poor job performance. At that time, Franco informed Southwestern Bell Vice President John Brantley that the director of operations had made unwelcome sexual comments to her and to other female employees. Franco, Mendez, and several other women participated in the ensuing investigation, which resulted in

Southwestern Bell firing the director of operations. Southwestern Bell rehired Franco on a probationary basis and amended her employment file to read that sexual harassment caused her absenteeism.

In November 1990, Southwestern Bell fired Franco and Mendez for allegedly misappropriating air-time credit certificates and defrauding Southwestern [**3]  Bell. Southwestern Bell Director of Finance Joe Villarreal met with each woman to inform her of her termination and the reasons for it. Franco and Mendez subsequently filed charges of unlawful discrimination with the Corpus Christi Human Relations Commission, an arm of the Texas Commission for Human Rights (TCHR).

Franco and Mendez sued Southwestern Bell, alleging retaliatory discharge, intentional infliction of emotional distress, and defamation. After receiving TCHR permission to sue for civil rights violations, Franco filed a second suit alleging unlawful discrimination and seeking reinstatement. The two suits were consolidated for trial. The jury found no defamation but did find that retaliatory discharge occurred, although it awarded no damages on that claim. The jury found for and awarded Franco $ 25,500 and Mendez $ 20,000 in damages for intentional infliction of emotional distress. Also, the jury awarded Franco $ 20,000 and Mendez $ 25,500 in punitive damages.

Franco and Mendez filed multiple post-verdict motions, including one asking for equitable relief in the form of reinstatement or rehiring, and one seeking attorney's fees under *section 21.259 of the Texas Labor Code*, [**4]  which allows a plaintiff who successfully alleges an unlawful employment practice to collect attorney's fees. Southwestern Bell, in turn, moved for a judgment notwithstanding the verdict.

The trial court rendered judgment ordering that Franco and Mendez each recover $ 68,250 plus $ 22,750 in attorney's fees. It is unclear why the trial court ordered that each [*54]  plaintiff recover $ 68,250 in damages when the jury awarded each of them only $ 45,500. It appears that the trial court may have included attorney's fees twice. The trial court also ordered Southwestern Bell to reinstate Franco as a collection representative. Southwestern Bell appealed the finding of intentional infliction of emotional distress, the award of attorney's fees, and Franco's reinstatement. The court of appeals affirmed Franco's reinstatement and the award of actual

---

[1]  951 S.W.2d 218.

and punitive damages to both Franco and Mendez based on intentional infliction of emotional distress. [2]

[**5]    The court of appeals also held that, although an award of attorney's fees was proper in this case, Franco and Mendez had not properly proven the fees. [3] The court of appeals remanded for proof supporting the fees. [4]

We turn first to Southwestern Bell's argument that no evidence supports the award for intentional infliction of emotional distress. **HN1** To recover for the tort of intentional infliction of emotional distress, a plaintiff must prove that: (1) the defendant acted intentionally or recklessly; (2) the conduct was "extreme and outrageous"; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. [5] We are here concerned with the second element, which requires that the conduct be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." [6]

Southwestern Bell argues that the [**6] evidence was legally insufficient because Franco and Mendez produced no evidence of extreme or outrageous conduct. **HN2** In reviewing "no evidence" points of error, we must consider the evidence and draw all inferences in the light most favorable to the verdict. [7] If the evidence is legally sufficient when viewed in this light, then we may not reverse the trial court's judgment. [8]

Franco and Mendez rely mainly upon their evidence that they were fired in retaliation for reporting sexual harassment. However, the mere fact of termination of employment, even if the termination is wrongful, is not legally sufficient evidence that the employer's conduct was extreme and outrageous under the rigorous standard that we established in *Twyman.* [9]

[**7]    Perhaps recognizing that termination alone is insufficient evidence, Franco and Mendez also attempted to prove that Southwestern Bell's agents behaved in an extreme and outrageous manner during the termination. Specifically, Franco and Mendez produced evidence that Southwestern Bell fired them in the unnecessary presence of coworkers, forced them to collect and remove their belongings in front of others, and immediately took steps to repossess car phones that Southwestern Bell owned. This evidence falls far short of being legally sufficient to prove that Southwestern Bell's conduct was extreme and outrageous. [10]

No evidence supports the jury finding of intentional infliction of emotional distress, [*55] and so the finding cannot support the judgment. Additionally, because no evidence supports the claim for which actual damages were awarded, we must reverse the punitive damages award. [11]

[**8]    Turning to the reinstatement order, Southwestern Bell argues that the court of appeals erred in affirming the reinstatement order because Franco's pleadings did not seek reinstatement, because Franco requested reinstatement in a post-verdict hearing before the trial court, and because reinstatement would disrupt

---

[2]    951 S.W.2d at 225, 226, 229.

[3]    951 S.W.2d at 226-27.

[4]    *Id.*

[5]    *See Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (citing RESTATEMENT (SECOND) OF TORTS § 46, cmt. d.).

[6]    *Id.*

[7]    *See, e.g., Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 51 & n.1 (Tex. 1997).

[8]    *See, e.g., Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 24 (Tex. 1994).

[9]    *See Diamond Shamrock Ref. & Mktg. Co. v. Mendez*, 844 S.W.2d 198, 202 (Tex. 1992) (holding that evidence that an employer wrongfully accused an employee of thievery and fired him is legally insufficient); *Beiser v. Tomball Hosp. Auth.*, 902 S.W.2d 721, 725 (Tex. App.--Houston [1st Dist.] 1995, writ denied) (holding that termination in violation of a whistleblower statute is not in itself extreme and outrageous); *see also Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 649, 654 (5th Cir. 1994) ("Even though conduct may violate Title VII as sexual harassment, it does not necessarily become intentional infliction of emotional distress under Texas law.").

[10]    *See Wornick Co. v. Casas*, 856 S.W.2d 732, 735 (Tex. 1993); *Diamond Shamrock*, 844 S.W.2d at 202.

[11]    *See Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996).

Southwestern Bell's workplace. We reject each of these as grounds for reversal. First, Franco's Original Petition alleging unlawful employment practices "requests that she reinstated [sic] with back pay retroactive to the date of her termination." Typographical errors notwithstanding, this request very clearly states a reinstatement claim. Furthermore, this pleading was not superseded merely because it was consolidated into the previously filed suit. [12]

Second, the jury found that Southwestern Bell discharged Franco and Mendez in retaliation for their complaints of sexual harassment, an unlawful employment practice under *Texas Labor Code sections 21.051* and *21.055*. [**9] This finding specifically empowered the trial court to prohibit such acts by injunction and to "order additional equitable relief as may be appropriate . . . [including] hiring or reinstating with or without back pay." [13]

Third, although Southwestern Bell produced some evidence that Franco's return might be disruptive, other evidence indicated that Southwestern Bell was opening a new office in Corpus Christi and that Southwestern Bell's employees would be willing to try to work with Franco. When facts are disputed, we cannot conclude that the trial court abused its discretion in ordering reinstatement.

We now consider Southwestern Bell's final assertion: that the trial court abused its discretion in ordering attorney's fees for Franco and Mendez because the jury awarded no damages on the retaliatory discharge claim -- the only claim that can support an award of attorney's fees. Southwestern Bell cites *Farrar v. Hobby* [14] for the proposition that a plaintiff who [**10] receives nominal or zero damages is not entitled to attorney's fees.

In *Farrar*, the plaintiff alleged that various state-actor defendants had violated his civil rights. [15] Although the jury agreed that the plaintiff's civil rights were violated, they found that the defendants' actions were nevertheless not a proximate cause of the plaintiff's injury. [16] The trial court entered judgment that the plaintiff take nothing, and the court of appeals remanded for entry of judgment ordering nominal damages of $ 1. [17] The United States Supreme Court considered whether the plaintiff was entitled to attorney's fees as a "prevailing party" due to the finding of civil-rights violations and in spite of the nominal damages. [18] The Court held that the plaintiff was within the definition of a "prevailing party," but nevertheless rejected the award of attorney's fees because the plaintiff failed to prove damages -- an essential element for recovery. [19] In such a case, the Court reasoned, "the only [**11] reasonable fee is usually no fee at all." [20]

Franco and Mendez attempted to recover attorney's fees in this case under *Texas Labor Code section 21.259*, which, like its federal counterpart, gives the trial court discretion to award reasonable attorney's fees to a "prevailing party." We hold that, like the *Farrar* plaintiff, Franco and Mendez were prevailing parties within the meaning of [*56] *section 21.259*. Therefore, we must decide whether Southwestern Bell is correct in asserting that, despite Franco's and Mendez's status as prevailing parties, the jury's award of zero damages on the retaliatory discharge claim precludes an award of attorney's fees.

Southwestern Bell seems to confuse the jury's verdict with the trial court's judgment. It is the judgment, not the verdict, that we must consider in determining whether attorney's fees are proper. In *Farrar*, [**12] the Supreme Court considered a *judgment* for nominal damages of $

---

[12]   *Cf.* TEX. R. CIV. P. 65.

[13]   TEX. LAB. CODE § 21.258(a), (b)(1).

[14]   506 U.S. 103, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992).

[15]   *See* 506 U.S. at 105-06.

[16]   *See* *id.* at 106.

[17]   *See* *id.* at 107.

[18]   *See* *id.* at 105.

[19]   *See* *id.* at 115.

[20]   *Id.*

1. [21] In this case, we consider a *judgment* that ordered reinstatement for Franco, although it did not order meaningful relief for Mendez that has not been reversed on appeal. *Farrar* speaks to the case of a "plaintiff who seeks compensatory damages but receives no more than nominal damages." [22] Mendez is such a plaintiff, and therefore should not recover attorney's fees. However, *Farrar* does not consider whether attorney's fees are proper for a plaintiff who wins a judgment awarding equitable relief, as Franco did. The award of attorney's fees to Franco was not an abuse of discretion.

Under *Texas Rule of Appellate Procedure 59.1*, we grant Southwestern Bell's petition for review and, without hearing oral argument, reverse the court of appeals' judgment on the claims for intentional infliction of emotional distress and for punitive damages, and render judgment that Franco and Mendez [**13] take nothing on these claims. We affirm the court of appeals' judgment on Franco's reinstatement. We also affirm the court of appeals' judgment on Franco's attorney's fees, but reverse and render judgment that Mendez not recover attorney's fees.

Opinion delivered: June 5, 1998

---

[21] *See* *id.* at 107.

[22] *Id.* at 115.



Caution
As of: Mar 30, 2015

**JAMES STEPHENSON, a/k/a JIM STEPHENSON, ET AL., Appellants v. COR-PORATE SERVICES, INC., d/b/a LITHOCRAFT FINE PRINTING, Appellees**

**No. 12-81-0073-CV**

**COURT OF APPEALS OF TEXAS, Twelfth District, Tyler**

*650 S.W.2d 181*; *1983 Tex. App. LEXIS 4283*

**March 31, 1983**

**PRIOR HISTORY:** [**1] Appeal from the 127th Judicial District Court of Harris County, Texas.

**COUNSEL:** Thomas J. Gavronovic, Houston, Texas, for Appellant.

George M. Bishop, Houston, Texas, for Appellee.

**JUDGES:** Paul S. Colley, Associate Justice.

**OPINION BY:** COLLEY

**OPINION**

[*182] This is an appeal by writ of error challenging the entry of a default judgment against appellants. On April 1, 1980, Corporate Services, d/b/a Lithocraft Fine Printing, hereinafter appellee, filed a suit with sworn account annexed against James Stephenson, a/k/a Jim Stephenson, individually and doing business as Jim Stephenson Investments and Jim Stephenson Co., the Stephenson Foundation, Inc., a nonprofit corporation, Franklin National Corp., Ltd., a Cayman Island (foreign) corporation and Jim Stephenson Company, Inc., a Texas corporation, hereinafter appellants. The suit sought recovery jointly and severally against appellants of the sum of $60,228.27 and interest thereon for an unpaid account for printing services, materials and postage furnished appellants by appellee. Appellee also sought attorney's

fees under Article 2226, V.A.C.S., in the amount of $20,000.00.

A statement of facts was filed in the appeal [**2] by appellee and reflects that, after the issuance, service, return and filing of citation in the cause the trial court called the case for trial and conducted an evidentiary hearing on damages and attorney's fees on October 21, 1980. Appellee appeared by counsel and Cecil Smith, its representative, and the appellants having theretofore failed to appear or file answers also failed to appear at the call of the case for trial. Cecil Smith, who was the general manager of Lithocraft Fine Printing, was sworn and testified for appellee. The witness testified that he was acquainted with the appellant, James Stephenson, a/k/a Jim Stephenson and that Stephenson had ordered various printing jobs done and instructed the appellee to bill Franklin National Corp., Ltd., or Stephenson Foundation therefor; that Stephenson paid previous printing bills to appellee from all of such companies; and that $60,228.27 was due and owing and unpaid by the appellant to appellee on the printing account. Appellee also introduced into evidence a written agreement signed by appellant Jim Stephenson (Plaintiff's Exhibit No. 3, Transcript p. 19) in which Jim Stephenson personally guaranteed the payment of all indebtedness [**3] owed by Stephenson Foundation no later than December 1, 1979. Sharolyn Wood, attorney for appellee, testified that a reasonable attorney's fee in the case would be $20,000.00. Following this hearing the trial court signed a default judgment in favor of appellee against

appellants, jointly and severally, for $60,228.27 damages, prejudgment interest in the amount of $3,486.11, and attorney's fees in the amount of $20,000.00, together with all costs and with interest on the judgment sum at the rate of 9% per annum until paid. On April 20, 1981, appellants filed this petition for writ of error.

In their brief appellants raise three points of error. The first point alleges error in entering the default judgment against appellant, Franklin National Corp., Ltd., and Jim Stephenson Company, Inc., because the officer's return on the citation does not show service on the proper party. The return [*183] on the citation served on appellant, Franklin National Corp., Ltd., reads:

CONSTABLE'S RETURN

Received this writ on the 23 of July, 1980 at 10:23 o'clock A.M., and executed the same in Harris County, Texas, on the 27 day of Sept., 1980, at 7:50 [**4] o'clock P.M., by summoning the FRANKLIN NATIONAL CORP.,

(by delivering to JIM STEPHENSON, in person, a corporation President

(by leaving in the principal office during office hours

     of said CORPORATION a true copy of this writ, together with accompanying certified copy plaintiff's original petition.

ED "TRACY" MAXON, Constable Precinct No. 5 Harris County, Texas

   By /s/ J. LOOP, Deputy

The return on the citation served on appellant, Jim Stephenson Company, Inc., reads:

CONSTABLE'S RETURN

Received this writ on the 23 day of July, 1980 at 10:23 o'clock A.M., and executed the same in Harris County, Texas, on the 27 day of Sept., 1980, at 7:50 o'clock P.M., by summoning the JIM STEPHENSON COMPANY, INC.,

(by delivering to JAMES STEPHENSON, in person, a corporation PRESIDENT

(by leaving in the principal office during office hours

     of the said CORPORATION a true copy of this writ, together with accompanying certified copy plaintiff's original petition.

ED "TRACY" MAXON, Constable Precinct No. 5 Harris County, Texas

   By /s/ J. LOOP [**5], Deputy

In support of their argument appellants cite, among other cases, *Southern Pacific Co. v. Block, 84 Tex. 21, 19 S.W. 300 (Tex. 1892)*. It is clear that a default judgment, not supported by proper service of process, is void. In a direct attack by writ of error on the judgment, no presumption obtains from the recitation in the default judgment that proper service was had. Strict compliance with the law regarding service of process must be affirmatively shown by the transcript unless the defendants in the judgment made an appearance before judgment. *Flynt v. City of Kingsville, 125 Tex. 510, 82 S.W.2d 934* (Tex. Comm'n App. 1935, opinion adopted); *McKanna v. Edgar, 388 S.W.2d 927 (Tex. 1965)*.

In our case, *Franklin National Corp., Ltd.*, was named as a defendant upon whom service could be had by serving the president, Jim Stephenson. As above set forth the return made by the deputy constable recites that the citation (writ) was executed by ". . . summoning the Franklin National Corp . . . ." The question then is posed, does the well-established "strict compliance" rule announced in *Flynt* and *McKanna* above render the default judgment void [**6] as to Franklin National Corp., Ltd., because the officer's return failed to write the word "Ltd." after the word "Corp."? Appellants argue that *Southern Pacific Co., supra*, controls. We do not agree. In that case plaintiff intended to sue Southern Pacific Company, but in fact sued Southern Pacific Railroad Company. The citation was directed to Southern Pacific Railroad Company and the return showed service on Southern Pacific Company. In the case before us appellee named the appellant, Franklin National Corp., Ltd., as a party defendant. The citation directed service on Franklin National Corp., Ltd., by serving Jim Stephenson as president. The return though reciting service was accomplished by summoning Franklin National Corp. by delivery to Jim Stephenson as president a true copy of the writ and a ". . . certified copy of Plaintiff's Original Petition." *Southern Pacific Co.* is obviously distinguishable on the facts as shown by the transcript here. *In that case the intended defendant was not named in the pleading* and the citation was not *directed* to Southern Pacific Co., but to Southern Pacific Railroad Co.

Service of process in this case is governed by *Article* [**7] *2.11, Texas Business Corp. Act*, V.A.C.S., which reads in part: "A. The president . . . of the corporation shall be agent of such corporation upon whom any process, notice, . . . may be served."

[*184] We have carefully reviewed the transcript in this case and note that in Paragraph 1 of appellee's original petition it is alleged, "Defendant Franklin National Corp., Ltd., may be served with citation by serving its president, Jim Stephenson . . . in Harris County, Texas." The purpose of citation is to give notice to a de-

fendant that he has been sued and by whom and for what so that due process will be served and the defendant will have an opportunity to appear and defend the action. *Sgitcovich v. Sgitcovich, 236 S.W.2d 861, 864* (Tex. Civ. App. -- Galveston 1951), rev'd on other grounds, *150 Tex. 398, 241 S.W.2d 142*; *Gilbert v. Lobley, 214 S.W.2d 646, 650* (Tex. Civ. App. -- Fort Worth 1948, no writ). In this case an examination of the full record, including the pleadings of appellee and the citation and return thereon, shows affirmatively that appellant, Franklin National Corp., Ltd., was served with proper process sufficient to put it upon notice of the suit. [**8] *See, Helfman Motors, Inc. v. Stockman, 616 S.W.2d 394* (Tex. Civ. App. -- Fort Worth 1981, writ ref'd n.r.e.). And in so holding we decline to follow *Mecca Fire Ins. Co. v. Campbell, 145 S.W. 630* (Tex. Civ. App. -- Galveston 1912, no writ) and adopt the statement in that case made in dissent by Justice Reese at 632: ". . . It would seem to be a sacrifice of substance to form . . ." to hold in this case that Jim Stephenson alleged to be the president of Franklin National Corp., Ltd., was not apprised by the service here that Franklin National Corp., Ltd., was sued by appellee. In fact, the transcript reflects that on October 30, 1980, (within ten days after the entry of the default judgment) appellant Franklin National Corp., Ltd., filed a motion to set aside the default judgment and for new trial on the grounds that Jim Stephenson was not an officer of said company and was not authorized to accept service. This motion was overruled on November 26, 1980, and the form of the order was approved by appellant's counsel, Thomas J. Gavranovic. We believe that we have given the officer's return a fair, reasonable and natural construction, and considering the record as a [**9] whole, have given effect to the plain meaning and intent of the citation and return. 72 C.J.S., Process Section 97; *62 Am Jur 2d, Process, Section 165.*

All other cases cited on this point by appellant, including *Brown-McKee, Inc. v. J. F. Bryan & Assoc., 522 S.W.2d 958* (Tex. Civ. App. -- Texarkana 1975, no writ), are all distinguishable on their facts.

Appellants' point 1, as it refers to the service of process on Jim Stephenson Company, Inc., contends that since the citation directed service on it by serving Jim Stephenson, its president, and the return shows that the process was delivered to James Stephenson, its president, such is fatally defective. There is no merit to such argument. The officer's return that James Stephenson was president of the corporation is prima facie evidence of that fact. *Employer's Reinsurance Corp. v. Brock, 74 S.W.2d 435* (Tex. Civ. App. -- Eastland 1934, writ dism'd); *LaFleaur v. Switzer, et al., 109 S.W.2d 239 at 241* (Tex. Civ. App. -- Beaumont 1937, no writ). Appellant's point 1 is overruled.

By their second point appellants attack the sufficiency of the sworn account attached to the petition as being insufficiently itemized, and [**10] by their third point claim the default judgment must be struck down because of variances between invoices and itemized accounts. Appellants do not point out or set forth any such claimed discrepancies or cite any authorities to support the point. However, we have carefully reviewed the account and pleading of the appellee and find that the petition alleges the sale and delivery of services and goods, wares and merchandise described in Exhibit A; the petition further alleges that the appellants promised to pay and failed to do so, and alleged reasonable attorney's fees on the part of the appellee in the sum of $20,000.00. Exhibit A attached to the pleading includes the affidavit of the account in proper form with a summary of the individual transactions and their respective dates, which are the subject matter of this suit, and the amount due on each of said invoices. Ledger sheets attached to [*185] the account also show a systematic entry of credits and debits in the account and the resulting balances and dates thereof beginning on April 30, 1979, and ending on January 31, 1980. Then follows seven individual invoices as a part of the account, numbered and dated with adequate [**11] description of printing jobs done and charges therefor, together with the dates thereof. Therefore we hold that appellee sufficiently complied with *Tex. R. Civ. P. 185*, and that the account shows with a reasonable degree of certainty the nature each item, i.e., each printing job done, the charges made therefor and the dates of each transaction. *Boucher v. City Paint & Supply, Inc., 398 S.W.2d 352* (Tex. Civ. App. -- Tyler 1966, n.w.h.); see also *Williamsburg Nursing Home, Inc. v. Paramedics, Inc., 460 S.W.2d 168* (Tex. Civ. App. -- Houston [1st Dist.] 1970, n.w.h.). Appellant's second point is overruled.

As earlier stated in the opinion an evidentiary hearing was conducted by the trial court on the issue of damages and attorney's fees. In that hearing appellee introduced sufficient evidence to establish the furnishing of the printing services, materials and postage by appellee to appellants which was the subject of the sworn account. The testimony of Mr. Smith established the debt as being unpaid in the amount sued for. No complaint is made in this appeal regarding the sufficiency of the evidence to support the award of attorney's fees made by the trial court because [**12] of the nature of the mode of review of the judgment sought by appellants. Thus, since we have found that Franklin National Corp., Ltd., and Jim Stephenson Company, Inc., are properly before the court, that appellee alleged a cause of action requiring an answer on the part of all appellants, each of whom failed to appear and answer but wholly made default, the cause of action alleged was admitted. *Watson v. Sheppard Federal Credit Union, 589 S.W.2d 742, 744* (Tex.

Civ. App. -- Fort Worth 1979, writ ref'd n.r.e.); proper proof of damages and attorney's fees being made, the default judgment is upheld. *TXXN, Inc. v. D/FW Steel Co., 632 S.W.2d 706, 707* (Tex. App. -- Fort Worth 1982, no writ); *Jones v. Ben Maines Air Conditioning, 621 S.W.2d 437* (Tex. Civ. App. -- Texarkana 1981, no writ).

The judgment of the trial court is affirmed.

# *Sutton v. Hisaw & Assocs. Gen. Contrs., Inc.*

Court of Appeals of Texas, Fifth District, Dallas

November 30, 2001, Opinion Filed

No. 05-01-00002-CV

## Reporter

65 S.W.3d 281; 2001 Tex. App. LEXIS 8001

RANDY SUTTON, Appellant v. HISAW & ASSOCIATES GENERAL CONTRACTORS, INC. AND RICHARD L. HISAW INDIVIDUALLY, Appellees

**Subsequent History:** **[**1]** Rehearing Denied January 14, 2002. Released for Publication January 14, 2002. Petition for Review Denied March 28, 2002.

**Prior History:** On Appeal from the 44th Judicial District Court. Dallas County, Texas. Trial Court Cause No. DV99-05835.

**Disposition:** REVERSED and RENDERED.

## Core Terms

Contractors, materials, no evidence, cause of action, damages, contends, trial court's judgment, legal insufficiency, default judgment, field house

## Case Summary

### Procedural Posture

After losing a money judgment to another party, plaintiff contractor filed a lawsuit against defendant worker to recover the damages awarded in the prior suit. The contractor asserted causes of action for fraud, breach of contract, and quantum meruit. The 44th Judicial District Court, Dallas County, Texas, rendered a post-answer default judgment in favor of the contractor. The worker later filed a notice of restricted appeal.

### Overview

The contractor was the general contractor for a construction project to build a field house for a school district. Contractor hired a subcontractor to perform the electrical work. The worker was an employee of the subcontractor. In performing its work, the subcontractor purchased materials from an electric supply company. Later, the worker signed two partial lien releases stating all materials used in the field house were paid for. He signed these lien releases as "co-owner of the subcontractor." The materials were never paid for. The supplier sued the contractor and recovered a large judgment. The contractor then sued the worker. On appeal, the worker contended there was insufficient evidence to establish the essential elements of the contractor's fraud cause of action. Because the appeals court found there was no evidence of either reliance or damages caused by any misrepresentation, it held the evidence was legally insufficient to support the judgment in favor of the contractor based on his fraud cause of action. The absence of any evidence to support at least one element of each of the contractor's causes of action constituted error apparent on the face of the record.

### Outcome

The appeals court reversed the trial court's judgment and remanded the case.

## LexisNexis® Headnotes

Civil Procedure > Remedies > Writs > General Overview

Governments > Legislation > Statute of Limitations > Time Limitations

*HN1* A restricted appeal is a direct attack on a trial court's judgment. A restricted appeal must (1) be brought within six months after the trial court signs the judgment, (2) by a party to the suit who did not participate in the actual trial, and (3) the error complained of must be apparent on the face of the record.

Civil Procedure > Remedies > Writs > General Overview

*HN2* In a restricted appeal, an appellant is afforded the same scope of review as an ordinary appeal, which includes a review of the entire case. A review of the

entire case includes a review of legal and factual sufficiency claims.

Civil Procedure > Appeals > Standards of Review > General Overview

**HN3** A legal sufficiency, or no-evidence point of error, is a question of law. An appellant who is challenging the legal sufficiency of the evidence must demonstrate that no evidence exists to support the judgment. In reviewing a legal sufficiency point of error, an appellate court looks to see whether any evidence supports the judgment. If there is more than a scintilla of evidence, the appellate court upholds the judgment.

Civil Procedure > Appeals > Standards of Review > Clearly Erroneous Review

**HN4** When an appellant challenges the factual sufficiency of the evidence, the appellant must establish the evidence is factually insufficient to support the judgment. In reviewing such issues, an appellate court considers all the evidence presented at trial. The appellate court may only set aside a finding for factual insufficiency if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

Torts > Business Torts > Fraud & Misrepresentation > General Overview

**HN5** A fraud cause of action requires: (1) a material misrepresentation, (2) that was either known to be false when made or was asserted without knowledge of its truth, (3) which was intended to be acted upon, (4) which was relied upon, and (5) which caused injury.

Contracts Law > Breach > Breach of Contract Actions > General Overview

Contracts Law > Breach > Breach of Contract Actions > Elements of Contract Claims

Contracts Law > Breach > General Overview

Contracts Law > Standards of Performance > Delivery & Tender

Contracts Law > Remedies > Equitable Relief > Quantum Meruit

**HN6** The elements of a breach of contract action are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach.

Contracts Law > Remedies > Equitable Relief > General Overview

**HN7** The elements of a quantum meruit claim include proof of (1) valuable services that were rendered or materials furnished, (2) for the person sought to be charged, (3) which services and materials were accepted by the person sought to be charged, used, and enjoyed by him, (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged.

**Counsel:** FOR APPELLANT: Robert Smith Morris, The Hammerle Law Firm, Denton, Tx.

FOR APPELLEES: Jeffrey Robert Sandberg, McGuire, Craddock & Strother, P.C., Dallas, TX.

**Judges:** Before Justices Kinkeade, Richter, and Francis. Opinion By Justice Richter.

**Opinion by:** MARTIN RICHTER

# Opinion

Opinion By Justice Richter

 **[\*283]** In this restricted appeal, Randy Sutton contends the trial court erred in rendering a post-answer default judgment in favor of Hisaw & Associates General Contractors, Inc. and Richard L. Hisaw individually (collectively Hisaw), because the evidence is legally and factually insufficient. We agree with Sutton that the evidence is legally insufficient and, therefore, reverse the trial court's judgment.

**BACKGROUND**

Hisaw was the general contractor for a construction project to build a field house for the Carrollton Independent School District. Hisaw hired D.R. Contractors as a subcontractor to perform electrical work **[\*284]** on the field house. Sutton was an employee of D.R. Contractors. In performing this subcontracting work, D.R. Contractors purchased materials from Crawford Electric Supply Company (Crawford). Subsequently, Sutton signed two partial lien releases stating that, as of particular dates, all materials **[\*\*2]** used in building the field house were paid for. Sutton signed these lien releases as "co-owner of D.R. Contractors." These facts are undisputed.

Hisaw makes various other allegations in the petition. The petition states Hisaw paid D.R. Contractors for its work, primarily based on the assertions in the liens. Subsequently, Hisaw received notice from Crawford that it had not been paid for the materials D.R. Contractors used on the field house. Crawford eventually filed suit against Hisaw and recovered a judgment in the amount of $ 148,398.38.

Hisaw then instituted this lawsuit against Sutton and others to recover the damages awarded in the Crawford suit. Hisaw asserted causes of action for fraud, breach of contract, quantum meruit, and indemnity by express agreement. Sutton filed a general denial. Sutton did not appear for trial, and the trial court rendered a post-answer default judgment. Three months later, after the time expired for filing a traditional appeal, Sutton filed a notice of restricted appeal.

## DISCUSSION

In issue one, Sutton contends he has met the requirements for a restricted appeal. *HN1* A restricted appeal is a direct attack on the trial court's judgment. [**3] *Gen. Elec. Co. v. Falcon Ridge Apartments Joint Venture, 811 S.W.2d 942, 943 (Tex. 1991)*. A restricted appeal must (1) be brought within six months after the trial court signs the judgment, (2) by a party to the suit who did not participate in the actual trial, and (3) the error complained of must be apparent on the face of the record. *Norman Communications v. Tex. Eastman Co., 955 S.W.2d 269, 270 (Tex. 1997)*. *HN2* In a restricted appeal, an appellant is afforded the same scope of review as an ordinary appeal, which includes a review of the entire case. *Id.* A review of the entire case includes a review of legal and factual sufficiency claims. *Id.*

Hisaw concedes Sutton has met the first two requirements for a restricted appeal, and we agree. Sutton brought the appeal within six months of the judgment. He was also a party to the suit, but did not participate in the trial. Therefore, we resolve issue one in Sutton's favor and have jurisdiction to review the record to determine whether there is error on the face of the record.

In issue two, Sutton challenges the legal and factual sufficiency of the evidence to support the trial court's judgment. Sutton [**4] contends there was no evidence or, alternatively, insufficient evidence to establish the essential elements of Hisaw's fraud cause of action.

*HN3* A legal sufficiency, or no-evidence point of error, is a question of law. *R.S. v. B.J.J., 883 S.W.2d 711, 715* (Tex. App.-Dallas 1994, no writ). An appellant who is challenging the legal sufficiency of the evidence must demonstrate that no evidence exists to support the judgment. *Casino Magic Corp. v. King, 43 S.W.3d 14, 19* (Tex. App.-Dallas 2001, pet. denied). In reviewing a legal sufficiency point of error, we look to see whether any evidence supports the judgment. *See id.* If there is more than a scintilla of evidence, we uphold the judgment. *See id*. In contrast, *HN4* when an appellant challenges the factual sufficiency of the evidence, the appellant must establish the evidence is factually insufficient to support the judgment. *See id.* In reviewing such issues, we consider [*285] all the evidence presented at trial. *See R.S., 883 S.W.2d at 715*. We may only set aside a finding for factual insufficiency if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and [**5] unjust. *See id.*

In this case, Sutton argues there is no evidence, or factually insufficient evidence, to support the judgment. Specifically, Sutton contends Hisaw presented insufficient evidence of reliance and damages.

*HN5* A fraud cause of action requires: (1) a material misrepresentation, (2) that was either known to be false when made or was asserted without knowledge of its truth, (3) which was intended to be acted upon, (4) which was relied upon, and (5) which caused injury. *Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001)* (citing *Formosa Plastics Corp. U.S.A. v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 47 (Tex. 1998))*.

After Sutton did not appear for trial, Hisaw moved for a default judgment. At the default judgment hearing, Hisaw called no witnesses to testify. Instead, Hisaw offered the following: (1) the contract between D.R. Contractors and Hisaw, (2) two partial waivers of liens signed by Sutton as co-owner of D.R. Contractors, (3) a transcript of Sutton's testimony in a different case, (4) a judgment from a different case, and (5) an affidavit of attorney's fees.

We now review this evidence presented at the hearing [**6] to determine whether Hisaw presented any evidence of the essential elements of his fraud cause of action. In the petition, Hisaw contends he paid Sutton for the materials and labor based on the assertions in the waivers, particularly the assertion that all materials had been paid for. At the hearing on the default

judgment, Hisaw presented the waivers, but presented no evidence establishing that he paid Sutton based on any assertions in the waivers. Therefore, Hisaw presented no evidence that he relied on any misrepresentations. In addition, Hisaw contends Crawford sued him for payment of materials D.R. Contractors used on the field house and recovered a judgment in the amount of $ 148,398.38. However, while Hisaw offered a judgment in a suit between Crawford and Hisaw awarding this exact amount of damages, he did not present any evidence tying this judgment to any actions of Sutton. Therefore, there is no evidence of injury caused by any misrepresentation. Because we conclude there is no evidence in the record of either reliance or damages caused by any misrepresentation, we conclude the evidence is legally insufficient to support the trial court's judgment in favor of Hisaw based [**7] on his fraud cause of action.

Hisaw also asserted causes of action for breach of contract, quantum meruit, and indemnity by express agreement. *HN6* The elements of a breach of contract action are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach. *Frost Nat'l Bank v. Burge, 29 S.W.3d 580, 593* (Tex. App.-Houston [14th Dist.] 2000, no pet.). We have already concluded Hisaw failed to establish any damages as a result of any actions caused by Sutton. Therefore, Hisaw failed to present any evidence of one of the elements of a breach of contract action and, thus, failed to present legally sufficient evidence to establish a breach of contract.

*HN7* The elements of a quantum meruit claim include proof of (1) valuable services that were rendered or materials furnished, (2) for the person sought to be charged, (3) which services and materials were accepted by the person sought to be charged, used, and enjoyed by him, (4) [*286] under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing [**8] such

services was expecting to be paid by the person sought to be charged. *Bashara v. Baptist Mem'l Hosp. Sys., 685 S.W.2d 307, 310 (Tex. 1985)*. Hisaw presented no evidence that he presented services or materials to Sutton. Therefore, there is legally insufficient evidence to establish a quantum meruit cause of action.

Finally, as to Hisaw's cause of action for indemnity by express agreement, we acknowledge that the partial waiver of lien provides at least some evidence of an agreement for Sutton to indemnify Hisaw for any damages "sustained by reason of labor performed and/or materials and supplies furnished . . . on said project." However, Hisaw presented no evidence to support his allegation he was sued for materials that were not paid for by D.R. Contractors and Sutton. Without evidence of such a suit, there is no evidence Sutton is liable for failure to indemnify. Therefore, there is legally insufficient evidence to establish a cause of action for indemnity.

The absence of any evidence to support at least one element of each of Hisaw's causes of action constitutes error apparent on the face of the record. See *Casino Magic Corp., 43 S.W.3d at 20*. [**9] We resolve Sutton's second issue in his favor.

**CONCLUSION**

Our disposition of Sutton's second issue makes it unnecessary for us to consider his remaining issues. See *TEX. R. APP. P. 47.1*. Having concluded there is legally insufficient evidence to support the judgment, we are required to reverse and render. See *Nat'l Life Accident Ins. Co. v. Blagg*, 438 S.W.2d 905, 909 (Tex. 1969). We reverse the trial court's judgment and render judgment that Hisaw take nothing on his claims against Sutton.

MARTIN RICHTER

JUSTICE

# *Texas Commerce Bank v. New*

Supreme Court of Texas

September 9, 1999, Opinion Delivered

NO. 98-0744

**Reporter**

3 S.W.3d 515; 1999 Tex. LEXIS 105; 42 Tex. Sup. J. 1175

TEXAS COMMERCE BANK, NATIONAL ASSOCIATION, N/K/A CHASE BANK OF TEXAS, NATIONAL ASSOCIATION, PETITIONER v. ROBIN NEW D/B/A RIVER CITY AUTO SALES AND WILLIAM PACHECO D/B/A PACHECO MOTOR CAR SALES, RESPONDENTS

**Subsequent History:** [**1] As Amended September 9, 1999.

**Prior History:** ON PETITION FOR REVIEW FROM THE COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS.

**Disposition:** Reversed the judgment on the issue of damages and attorney's fees, and remanded to the trial court for entry of judgment for Texas Commerce Bank consistent with this opinion.

## Core Terms

attorney's fees, legally sufficient, court of appeals, hearsay, unliquidated damages, default judgment, damages, trial court, deposit, checks

## Case Summary

### Procedural Posture

Petitioner bank sought review of the judgment of the Court of Appeals for the Third District of Texas that affirmed the default judgment entered by the trial court, but reversed the award of unliquidated damages and attorneys' fees based solely on affidavits submitted by petitioner, in an action claiming fraud, breach of contract, conspiracy, and civil theft by respondent car salesmen.

### Overview

Respondent salesmen were partners in a series of cyclical transactions involving petitioner and another

bank, which resulted in losses to petitioner bank. The scheme involved deposits of insufficient funds checks from the two banks to make it appear that each account had more on deposit than was actually the case. The other bank discovered the scheme and stopped payment on its checks, resulting in debits and overdrafts being charged by petitioner. Petitioner sued for fraud, breach of contract, conspiracy, and civil theft. When respondents failed to answer, default judgment was entered and damages and attorneys' fees were awarded on the basis of affidavits submitted by petitioner. The judgment was upheld on appeal, but the damages and fees award was reversed. Petitioner sought review. In affirming with respect to the default judgment, but reversing with respect to the damages and fees issue, the court ruled that *Tex. R. Civ. P. 243* and *802* did not bar use of affidavits as evidence of unliquidated damages. Because unobjected-to hearsay constituted probative evidence, affidavits satisfied the requirement of *rule 243* that there be evidence of unliquidated damages.

### Outcome

The judgment was affirmed with respect to the issue of liability under the default judgment, but reversed on the damages and fees issue, because respondents failed to answer the complaint and because affidavits could constitute probative evidence for purposes of an unliquidated damages hearing.

## LexisNexis® Headnotes

Civil Procedure > Judgments > Pretrial Judgments > General Overview

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Default Judgments

Contracts Law > ... > Types of Damages > Compensatory Damages > General Overview

Torts > Remedies > Damages > General Overview

**HN1** See *Tex. R. Civ. P. 243*.

> Evidence > ... > Statements as Evidence > Hearsay > General Overview

**HN2** See *Tex. R. Civ. P. 802*.

> Civil Procedure > Judgments > Pretrial Judgments > General Overview

> Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > General Overview

> Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Default Judgments

> Contracts Law > ... > Types of Damages > Compensatory Damages > General Overview

> Torts > Remedies > Damages > General Overview

**HN3** Nothing in *Tex. R. Civ. P. 802* limits its application to contested hearings. The rule is not ambiguous and requires no explication. Because unobjected to hearsay constitutes probative evidence, it satisfies the requirement of *Tex. R. Civ. P. 243* that there be evidence of unliquidated damages. Thus, a trial court does not err when it considers affidavits in rendering a default judgment.

> Civil Procedure > Judgments > Pretrial Judgments > General Overview

> Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > General Overview

> Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Default Judgments

> Contracts Law > ... > Types of Damages > Compensatory Damages > General Overview

**HN4** Testimony of the total amount due under a written instrument is legally sufficient to support an award of that amount in a default judgment proceeding.

> Civil Procedure > Remedies > Costs & Attorney Fees > General Overview

**HN5** An uncontested affidavit that establishes a prima facie case for attorney's fees is legally sufficient to support an attorney's fees award.

**Counsel:** For PETITIONER: Mr. C.W. "Rocky" Rhodes, Locke Liddell & Sapp, Austin, TX. Mr. G. Alan Waldrop, Locke Liddell & Sapp, Austin, TX. Ms. Barbara M. Ellis, Austin, TX. Ms. Susan P. Kravik, Chase Bank of Texas, National Association, Dallas, TX.

For RESPONDENT: Mr. William B. Gammon, Austin, TX.

## Opinion

**[\*515]** Per Curiam

Texas Commerce Bank obtained a default judgment against Robin New, d/b/a River City Auto Sales, and William Pacheco, d/b/a Pacheco's Motor Car Sales. To support its motion for default judgment, Texas Commerce presented three affidavits. No oral testimony was taken at the default judgment hearing. On appeal, the court of appeals held that the affidavits, constituting hearsay, were not evidence under *Rule 243 of the Texas Rules of Civil Procedure*, which requires that the trial court "hear evidence" on unliquidated **[\*516]** damages. [1] The court of appeals further held that even if affidavits constitute **[\*\*2]** evidence under *Rule 243*, these affidavits were not legally sufficient to support the trial court's judgment. Accordingly, the court of appeals affirmed on the issue of New and Pacheco's liability and reversed and remanded for a new trial on the issue of unliquidated damages and attorney's fees. [2]

We conclude that because unobjected-to hearsay is, as a matter of law, probative evidence, affidavits can be evidence for purposes of an unliquidated-damages hearing pursuant to *Rule 243*. We further conclude that the affidavits here are legally sufficient to support the trial court's judgment on both damages and attorney's fees. Consequently, we affirm the court of appeals' judgment on the issue of liability, reverse on the issue of unliquidated damages and attorney's fees, and render judgment for Texas Commerce Bank.

At the outset, Texas Commerce contends that New and Pacheco did not preserve for the court of appeals' consideration the issues of whether **[\*\*3]** the affidavits constituted evidence of unliquidated damages under *Rule 243* or whether the affidavits, if evidence, were legally sufficient. We assume without deciding that these issues were properly preserved.

In addressing the merits, the court of appeals correctly stated:

---

[1]  TEX. R. CIV. P. 243.

[2]  971 S.W.2d 711.

It is well settled that once a default judgment is taken against a non-answering defendant on an unliquidated claim, all allegations of fact set forth in the petition are deemed admitted, except the amount of damages. [citations omitted] [3]

Therefore, we know that New and Pacheco were partners in a check-kiting scheme that resulted in a loss to Texas Commerce. New would deposit checks into his Texas Commerce account drawn against insufficient funds in Pacheco's Norwest Bank checking account. Before the normal banking deadlines for return of items drawn on insufficient funds ran, New would write checks on the Texas Commerce account for deposit in Pacheco's Norwest account to cover the overdraft created [**4] in the Norwest account by the previous day's checks. Then Pacheco would write additional checks from the Norwest account for deposit to the Texas Commerce account to cover the overdraft that would appear in New's Texas Commerce account. This scheme had the effect of keeping a group of checks "floating" in the banking system that were not supported by real deposits. Norwest discovered this scheme and stopped payment on all checks drawn from Pacheco's Norwest account. As a result, several items New deposited in his Texas Commerce account were returned. Texas Commerce charged these items as debits on New's account, resulting in an overdraft that neither New nor Pacheco covered.

Texas Commerce filed suit against New and Pacheco for various causes of action, including fraud, breach of contract, conspiracy to defraud, and violations of the civil theft statute. [4] When New and Pacheco did not answer, Texas Commerce filed a motion for default judgment asking among other relief to be awarded damages and attorney's fees. This the trial court granted. And the court of appeals reversed in part.

[**5] The first issue is whether affidavits constitute evidence as required by *Rule 243*. That rule provides:

**HN1** If the cause of action is unliquidated or be not proved by an instrument in writing, *the court shall hear evidence as to damages* and shall render judgment therefor, unless the defendant shall demand and be entitled to a trial by jury in [*517] which case the judgment by default shall be noted, a writ of inquiry awarded, and the cause entered on the jury docket. [5]

Although several courts of appeals have held that affidavits can constitute evidence of unliquidated damages, [6] the court of appeals here held that they cannot. It concluded that *Rule 802 of the Texas Rules of Evidence*, the hearsay rule, prevents the use of affidavits "because the application of *Rule 802* anticipates opposing counsel's and/or an opposing party's presence at the hearing to object to such inadmissible hearsay." [7] It further concluded, therefore, that a trial court does not hold "an evidentiary [**6] hearing merely by accepting the affidavits attached to [the] motion." [8]

The court of appeals is incorrect. **HN2** *Rule 802* says, "Inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay." [9] **HN3** Nothing in *rule 802* limits its application to contested hearings. The rule is not ambiguous and requires no explication. Consequently we will give it none. [**7] [10] Because unobjected to hearsay constitutes probative evidence, it satisfies the requirement of *Rule 243* that there be evidence of unliquidated damages. The trial court did not err when it considered the affidavits in rendering its default

---

[3] 971 S.W.2d at 713.

[4] *See* TEX. CIV. PRAC. & REM. CODE §§ 134.001-.005.

[5] TEX. R. CIV. P. 243 (emphasis added).

[6] *See, e.g., Irlbeck v. John Deere Co., 714 S.W.2d 54, 57-58* (Tex. App.--Amarillo 1986, writ ref'd n.r.e.); *K-Mart Apparel Fashions Corp. v. Ramsey, 695 S.W.2d 243, 247* (Tex. App.--Houston [1st Dist.] 1985, writ ref'd n.r.e.); *Naficy v. Braker, 642 S.W.2d 282, 285* (Tex. App. --Houston [14th Dist.] 1982, writ ref'd n.r.e.); *Angelo v. Champion Restaurant Equip. Co., 702 S.W.2d 209, 211* (Tex. App.--Houston [1st Dist.] 1985), *rev'd on other grounds*, **713 S.W.2d 96 (Tex. 1986)**.

[7] 971 S.W.2d at 714.

[8] *Id.*

[9] TEX. CIV. R. EVID. 802; *see also Irlbeck, 714 S.W.2d at 57-58* (concluding that Rule 802 provides for hearsay admitted without objection to support a default judgment for damages and attorney's fees).

[10] *See Bridgestone/Firestone, Inc. v. Glyn-Jones, 878 S.W.2d 132, 133 (Tex. 1994)*.

judgment.

The court of appeals also concluded that the affidavits here were conclusory and, therefore, not legally sufficient to support the trial court's award for unliquidated damages and attorney's fees. [11] Texas Commerce presented three affidavits at the default judgment hearing. Two of the affidavits were from Texas Commerce vice presidents, Thomas Neville and Richard Bott. Neville explained the details of the check-kiting scheme and that, as a [**8] result, the Texas Commerce account had a considerable overdraft balance. Bott stated that he had reviewed pertinent bank records and that the Texas Commerce account was overdrawn in the amount of $ 729,510.96.

*HN4* Testimony of the total amount due under a written instrument is legally sufficient to support an award of that amount in a default judgment proceeding. [12] Texas Commerce's bank officers' affidavits aver personal knowledge of the facts, describe the scheme resulting in the bank's loss, and identify the total amount owed on the overdrawn Texas Commerce account. The affidavits are legally sufficient to support the trial court's damage award.

[**9] The third affidavit, from Texas Commerce legal counsel G. Alan Waldrop, was legally sufficient to support the trial court's attorney's fees award. Waldrop testified that among other things, Texas Commerce had a contract with New entitling Texas Commerce to recover its reasonable attorneys' fee. He further testified that he is a duly licensed attorney, that he was familiar with the usual and customary attorney's fees in Travis County, [*518] and, based on his knowledge of the services rendered to Texas Commerce on this matter, which he detailed, $ 30,000 was a reasonable fee for prosecuting Texas Commerce's claims. This was legally sufficient to support the trial court's judgment for attorney's fees. [13]

[**10] Accordingly, pursuant to *Rule 59.1 of the Texas Rules of Appellate Procedure*, the Court grants the petition for review of Texas Commerce Bank and, without hearing oral argument, affirms the court of appeals' judgment on liability, reverses the judgment on the issue of damages and attorney's fees, and remands to the trial court for entry of judgment for Texas Commerce Bank consistent with this opinion.

Opinion delivered: September 9, 1999

---

[11] 971 S.W.2d at 714-15.

[12] *See Irlbeck, 714 S.W.2d at 57-59*. *See also, e.g., 8920 Corp. v. Alief Alamo Bank, 722 S.W.2d 718, 720* (Tex. App.--Houston [14th Dist.] 1986, writ ref'd n.r.e.); *American 10-Minute Oil Change, Inc. v. Metropolitan Nat'l Bank-Farmers Branch, 783 S.W.2d 598, 601* (Tex. App.--Dallas 1989, no writ).

[13] *See, e.g., Cap Rock Elec. Coop. v. Texas Utils. Elec. Co., 874 S.W.2d 92, 101-02* (Tex. App.--El Paso 1994, no writ) (uncontested *HN5* affidavit establishing prima facie case for attorney's fees legally sufficient to support attorney's fees award); *Murrco Agency, Inc. v. Ryan, 800 S.W.2d 600, 606* (Tex. App.--Dallas 1990, no writ).



⚠
Caution
*As of: Mar 30, 2015*

**JOHN VERBURGT, INDIVIDUALLY AND A/N/F OF THOMAS VERBURGT, TIMOTHY VERBURGT AND JOSEPH VERBURGT, PETITIONERS v. PATRICIA M. DORNER AND THE METHODIST MISSION HOME, RESPONDENTS**

**No. 96-1026**

**SUPREME COURT OF TEXAS**

*959 S.W.2d 615*; *1997 Tex. LEXIS 124*; *41 Tex. Sup. J. 138*

**April 24, 1997, Argued
December 4, 1997, Delivered**

**PRIOR HISTORY:** [**1] ON APPLICATION FOR WRIT OF ERROR TO THE COURT OF APPEALS FOR THE NINTH DISTRICT OF TEXAS.

**DISPOSITION:** Reversed and remanded.

**JUDGES:** JUSTICE SPECTOR delivered the opinion of the Court, in which CHIEF JUSTICE PHILLIPS, JUSTICE GONZALEZ, JUSTICE HECHT, AND JUSTICE OWEN join. JUSTICE ENOCH, joined by JUSTICE ABBOTT AND JUSTICE HANKINSON, filed a dissenting opinion. JUSTICE BAKER filed a dissenting opinion.

**OPINION BY:** ROSE SPECTOR

**OPINION**

[*615] In this case, we decide whether the court of appeals erred in dismissing an appeal for want of jurisdiction. The appellant, John Verburgt, filed a cost bond on the thirty-fourth day after the trial court rendered judgment against him. Verburgt mistakenly believed that he had timely complied with *Rule 41(a)(1) of the Rules of Appellate Procedure* in filing the bond and did not concurrently move to extend the time to file under *Rule 41(a)(2)*. [1] We hold that a motion for extension of time is implied when a party, acting good faith, files a cost bond within the fifteen-day period in which *Rule 41(a)(2)*

permits parties to file a motion to extend. We therefore reverse the judgment of the court of appeals and remand to that court.

1    The Texas Rules of Appellate Procedure were renumbered and substantially revised on September 1, 1997. *See 60 TEX. B.J. 876 (1997)*. All references to the Rules of Appellate Procedure in this opinion are to the rules in effect before that date.

[**2] Verburgt, in his individual capacity and as his children's next friend, sued Constance Clear, Patricia Dorner, and the Methodist Mission Home for intentional infliction of emotional distress and negligent interference with familial relationships. After Verburgt nonsuited Clear, the trial court granted summary judgment for the remaining defendants. The judgment was signed on October 10, 1995. Because no motion for new trial was filed, Verburgt's cost bond was due within thirty days, by November 9th. *See TEX. R. APP. P. 41(a)(1)*. [2] Verburgt did not file the [*616] bond until November 13th, nor did he file a motion to extend the time to file the bond within fifteen days of the bond's due date. *See TEX. R. APP. P. 41(a)(2)*. [3]

2    *Rule 41(a)(1)* provides:

When security for costs on appeal is required, the bond or affi-

davit in lieu thereof shall be filed with the clerk within thirty days after the judgment is signed, or, within ninety days after the judgment is signed if a timely motion for new trial has been filed by any party or if any party has timely filed a request for findings of fact and conclusions of law in a case tried without a jury. If a deposit of cash is made in lieu of bond, the same shall be made within the same period.

[**3]

3   *Rule 41(a)(2)* provides:

An extension of time may be granted by the appellate court for late filing of a cost bond or notice of appeal or making the deposit required by paragraph (a)(1) or for filing the affidavit, if such bond or notice of appeal is filed, deposit is made, or affidavit is filed not later than fifteen days after the last day allowed and, within the same period, a motion is filed in the appellate court reasonably explaining the need for such extension. If a contest to an affidavit in lieu of bond is sustained, the time for filing the bond is extended until ten days after the contest is sustained unless the trial court finds and recites that the affidavit is not filed in good faith.

Several weeks later, the court of appeals ordered Verburgt to show cause why it should not dismiss his appeal for lack of jurisdiction. Verburgt's response demonstrated that his counsel had simply miscalculated the date the bond was due. *See Verburgt v. Dorner, 928 S.W.2d 654, 655 (Tex. 1996)*. Initially, the court of appeals decided to retain jurisdiction of Verburgt's appeal. But [**4] on rehearing *en banc*, the court reversed itself.

The court of appeals in this case recognized the "patent unfairness" of the result it reached:

We are, therefore, confronted with the question of whether the appellate rules

condone a result that allows a litigant who knows he is late with his bond to save his appeal, but rejects the appeal of the litigant who erroneously, but in good faith, believes he has timely filed his bond and, thus satisfied, also believes he has no need to file for an extension of time.

*Id.* Although it acknowledged the arbitrariness of dismissal under these circumstances, the court of appeals nevertheless believed that the interest in finality of judgments outweighed the policy of disposing of appeals on their merits. *Id. at 656.*

In dismissing Verburgt's appeal, the appellate court also relied largely upon a decision by the Court of Criminal Appeals, *Olivo v. State, 918 S.W.2d 519 (Tex. Crim. App. 1996)*. But the Court of Criminal Appeals itself recognized in *Olivo* that its approach to the perfection of appeals in criminal cases has differed significantly from our more liberal approach. *See Olivo, 918 S.W.2d at 524-525*; [**5] *compare Jones v. State, 796 S.W.2d 183, 186-87 (Tex. Crim. App. 1990)* (holding that Rule 83 of the Texas Rules of Appellate Procedure did not entitle appellant who filed defective notice of appeal to amend notice beyond the time allowed by *Rule 41(a)(2)* when the appellant had not requested an extension of time under *Rule 41(b)(2)*) *with Grand Prairie Indep. Sch. Dist. v. Southern Parts Imports, Inc., 813 S.W.2d 499, 500 (Tex. 1991)* (holding that an appellate court may not dismiss an appeal when the appellant filed the wrong instrument required to perfect the appeal without giving the appellant an opportunity to correct the error).

This Court has never wavered from the principle that appellate courts should not dismiss an appeal for a procedural defect whenever any arguable interpretation of the Rules of Appellate Procedure would preserve the appeal. We have repeatedly held that a court of appeals has jurisdiction over any appeal in which the appellant files an instrument in a bona fide attempt to invoke the appellate court's jurisdiction. *Linwood v. NCNB Texas, 885 S.W.2d 102, 103 (Tex. 1994)*; *Grand Prairie Indep. Sch. Dist., 813 S.W.2d at 500*. Our decisions reflect [**6] the policy embodied in our appellate rules that disfavors disposing of appeals based upon harmless procedural defects. [4] *See Grand Prairie Indep. Sch. Dist., 813 S.W.2d at 500*. Thus, we have instructed the courts of appeals to construe the Rules of Appellate Procedure reasonably, yet liberally, so that the [*617] right to appeal is not lost by imposing requirements not absolutely necessary to effect the purpose of a rule. *See Jamar v. Patterson, 868 S.W.2d 318, 319 (Tex. 1993)*; *see also Crown Life Ins. Co. v. Estate of Gonzalez, 820 S.W.2d 121, 121-22 (Tex. 1991)*; *Gay v. City of Hillsbo-*

ro, 545 S.W.2d 765, 766 (Tex. 1977). As the dissenting justice in the court of appeals pointed out, the result the court of appeals reached was not "absolutely necessary" under these facts. *Verburgt, 928 S.W.2d at 657* (Duncan, J., dissenting) ("The issue is not whether the rules *condone* a patently unfair result but whether they *require* it.") (emphasis in original). Here, the court of appeals acknowledged that Verburgt demonstrated that he had made a bona fide attempt to timely perfect an appeal. *See Verburgt, 928 S.W.2d at 655.*

> 4    Under *Rule 46(f)*, on motion to dismiss an appeal for a defect in form or substance in any bond, "the appellate court may allow the filing of a new bond or the making of a new deposit in the trial court on such terms as the appellate court may prescribe." Rule 83 provides that "[a] judgment shall not be affirmed or reversed or an appeal dismissed for defects or irregularities, in appellate procedure, either of form or substance, without allowing a reasonable time to correct or amend such defects or irregularities . . . ."

[**7]   We hold that a motion for extension of time is necessarily implied when an appellant acting in good faith files a bond beyond the time allowed by *Rule 41(a)(1)*, but within the fifteen-day period in which the appellant would be entitled to move to extend the filing deadline under *Rule 41(a)(2)*. Our holding does not indefinitely extend the time in which parties may perfect an appeal, as Justice Enoch implies. Instead, once the period for granting a motion for extension of time under *Rule 41(a)(2)* has passed, a party can no longer invoke the appellate court's jurisdiction. It also does not alter the time for perfecting an appeal beyond the period authorized by *Rule 41(a)*. Nor does our holding undermine finality of judgments, as the court of appeals believed. *See 928 S.W.2d at 656.* Parties who prevail in the trial court will still know within the time specified in *Rule 41(a)(2)* whether their opponents will seek to perfect an appeal. We decline to elevate form over substance, as the dissenters would.

Accordingly, we reverse the judgment of the court of appeals and remand to that court to allow it to determine whether Verburgt offered a reasonable explanation for his failure to timely [**8]   file his bond. *See* TEX. R. APP. 41(a)(2). [5]

> 5    The Texas Supreme Court cases cited by the dissenters are distinguishable from this case. In *Davies v. Massey, 561 S.W.2d 799, 800 (Tex. 1978)*, the appellant mailed his cost bond a day before it was due, but the bond was received eight days late. We held that the appellant timely perfected his appeal under *Rule 5 of the Texas*

*Rules of Civil Procedure. Id. at 801.* It presents no inconsistency with this case. *Glidden Company v. Aetna Casualty & Surety Company, 155 Tex. 591, 291 S.W.2d 315, 317 (Tex. 1956)*, was a 1956 case in which the Court held that the court of appeals should have dismissed an appeal in which the appellant filed its bond one day late. At the time we decided *Glidden*, the rules allowed for no extension of time to file a cost bond, regardless of good cause. *See Glidden, 291 S.W.2d at 318* ("It is well settled, that the requirement that the bond be filed within thirty days is mandatory and jurisdictional, and that the time prescribed cannot be dispensed with or enlarged by the court for any reason."). We disapprove of *Miller v. Miller, 848 S.W.2d 344* (Tex. App.--Texarkana 1993, no writ), *El Paso Sharky's Billiard Parlor, Inc. v. Amparan, 831 S.W.2d 3* (Tex. App.--El Paso 1992, writ denied), and any other authorities in which the court of appeals has dismissed an appeal when the appellant has made a bona fide attempt to invoke the appellate court's jurisdiction by filing a bond within the fifteen days of the date the bond was due.

[**9]   Rose Spector

Justice

OPINION DELIVERED: December 4, 1997

**DISSENT BY:** Craig T. Enoch James A. Baker

**DISSENT**

JUSTICE ENOCH, joined by JUSTICE ABBOTT AND JUSTICE HANKINSON, dissenting.

From today forward, one need no longer timely appeal to invoke an appellate court's jurisdiction. But just two months ago, this Court retained the longstanding rule that only a timely filed appeal invokes appellate jurisdiction. [1] We insisted that to perfect appeal in a civil case, the notice of appeal *must* be filed within the time prescribed in the rules. *See* TEX. R. APP. P. 26.1. Further, we insisted that to extend the time in which to file the notice of appeal, one must file *not only* the notice of appeal, *but in addition "*a motion" that "*must* state: . . .[among other things] the facts relied on to reasonably explain the need for an extension." *TEX. R. APP. P. 26.3, 10.5(b)(1)(C).*

Like our new rules, the plain language of the rule that applies to this case, *Rule 41(a)(2)*, mandates that the appeal be timely; consequently, it compels the result the court of appeals reached in this [*618]   case. Is this a bad result? For the hopeful appellant, [**10]   perhaps

(assuming that the appeal is, in fact, meritorious). But denuding the Court's rules to achieve the Court's chosen result is bad law. I dissent.

1   In addition, we specifically stated that while other appellate rules may be suspended from time to time for good cause, "an appellate court may . . . *not* . . . alter the time for perfecting an appeal in a civil case." *TEX. R. APP. P. 2* (emphasis added).

*Rule 41(a)(2)* permits a party who fails to timely appeal to seek an extension of time. But to do so, the party has to file, within fifteen days of the original due date, *both* the cost bond *and* a motion for extension of time reasonably explaining the need for the extension. The majority's holding, that an "implicit motion" is filed if a would-be appellant files late and files only a cost bond, *Verburgt v. Dorner, 959 S.W.2d 615 (1997)*, simply ignores the rule's requirement that *both* instruments must be filed. Moreover, *Rule 41(a)(2)* gives the court of appeals discretion whether to allow [**11] an extension of time, but this discretion is triggered only by the filing of a motion reasonably explaining the need for the extension. In the absence of a motion, the court of appeals' discretion is never invoked and the late-filed cost bond has no effect. Here, Verburgt did not file a motion to extend time, and he did not file the cost bond timely. He simply did not do what *Rule 41(a)(2)* clearly requires.

The Court does not cite a single case holding that the untimely filing of an appeal can still be a *bona fide* attempt to invoke the court of appeals' jurisdiction. To the contrary, we have consistently and routinely held that the appeal must be filed timely. *See Davies v. Massey, 561 S.W.2d 799, 801 (Tex. 1978)* ("Filing a cost bond . . . is a necessary and jurisdictional step in perfecting an appeal."); *Glidden Co. v. Aetna Cas. & Sur. Co., 155 Tex. 591, 291 S.W.2d 315, 318 (Tex. 1956)* ("It is well settled . . . that the requirement that the bond be filed within thirty days is mandatory and jurisdictional."). Indeed, the court of appeals' decision in this case is predicated on this crucial point:

While the supreme court has liberally construed the rules regarding [**12] the instruments necessary to confer jurisdiction, we do not discern a retreat in that court from the fundamental requirement that in order to invoke the jurisdiction of the court of appeals, some instrument, whether or not it is the correct instrument, must be timely filed.

*Verburgt, 928 S.W.2d at 656* (explaining two decisions on which the Court relies today: *Linwood v. NCNB Texas, 885 S.W.2d 102, 103 (Tex. 1994)* and *Grand Prairie Indep. Sch. Dist. v. Southern Parts Imports, Inc., 813 S.W.2d 499, 500 (Tex. 1991))*; *see also Olivo v. State, 918 S.W.2d 519, 524 (Tex. Crim. App. 1996)* (correctly noting that the "liberal policy" espoused by this Court in *Linwood* and *Grand Prairie* "concerns the substitution of a correct instrument for an incorrect instrument, *which has been timely filed*").

I agree with the majority that "appellate courts should not dismiss an appeal for a procedural defect whenever any *arguable interpretation* of the Rules of Appellate Procedure would preserve the appeal ." *Verburgt v. Dorner, 959 S.W.2d 615, 616 (1997)* (emphasis added)(citing *Linwood* and *Grand Prairie*). [2] But surely that interpretation must be [**13] *arguable*. Interpreting *Rule 41(a)(2)* in contradiction to its plain language is not arguable; indeed, it is remarkably harmful to the concept of justice.

2   In fact, the thrust of our new rules is to eliminate the procedural traps often encountered under our former rules. *See* Nathan L. Hecht & E. Lee Parsley, *Procedural Reform: Whence and Whither, in* MATTHEW BENDER C.L.E., PRACTICING LAW UNDER THE NEW RULES OF TRIAL AND *APPELLATE PROCEDURE 1-12* (Nov. 1997) (explaining that the 1997 revisions to the rules of appellate procedure "are meant to take the traps out of TRAP"). In its understandable zeal to get rid of "traps," however, the majority unfortunately has lost sight of the significant concept of timeliness as a prerequisite to proper invocation of the court of appeals' jurisdiction. As indicated above, even the new rules of appellate procedure require, as they must, that a party must be *timely* to invoke the court of appeals' jurisdiction.

Under any number of circumstances, time plays a critical [**14] role in justice. For example, statutes of limitation and repose exist to ensure that claims are made in a timely fashion. *See, e.g., Trinity River Auth. v. URS Consultants, Inc., 889 S.W.2d 259, 263 (Tex. 1994)* ("We start with the unassailable premise that statutes of limitation, in general, serve a public function. They compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend while witnesses [*619] are available and the evidence is fresh in their minds.") (quoting *Robinson v. Weaver, 550 S.W.2d 18, 20 (Tex. 1977))*. Timely exercise of one's appellate rights is no less significant to predictability, and consequently, to justice. Failure to timely file an appeal has always been a *jurisdictional* error that pre-

cludes an appellate court from reaching the merits. *See Davies, 561 S.W.2d at 801*; *Glidden, 291 S.W.2d at 318.* It rightfully should remain so.

The majority's flawed reasoning is also apparent from the cases it cites. In *Linwood* and *Grand Prairie,* we held that a party's *bona fide* attempt to invoke the appellate court's jurisdiction will preserve its appeal. What is [**15] clearly apparent in these opinions is that the procedural defect, which rendered the party's effort at appeal only a *bona fide* attempt, was correctable. Concomitantly, the hopeful appellant had the obligation to correct this defect. But how would one correct untimeliness? One can't. Neither of these cases remotely signals a retreat from the principle that a party must *timely* appeal to invoke the court's jurisdiction.

The majority responds to my criticism by claiming that its decision "does not indefinitely extend the time in which parties may perfect an appeal" because parties supposedly "will still know within the time specified in *Rule 41(a)(2)* whether their opponents will seek to perfect an appeal." ___ S.W.2d at ___. My colleagues demonstrate that they do not understand what they do. The "indefiniteness" has nothing to do with not knowing whether an appeal will be filed within thirty days or forty-five days. It has everything to do with not knowing when the Court will simply "imply" a condition that never occurred to reach the result it prefers. When next will the Court "imply" filings that were never made? If the clear language of its own rules does not constrain the [**16] Court, then what will? If this is not "indefinite," then perhaps I do not understand the meaning of the word.

Finally, the majority mistakenly believes that ignoring its own rules somehow enhances "fairness." Playing by the rules is fair. Changing the rules to produce a particular result is not.

The judgment of the court of appeals should be affirmed. I dissent. [3]

> [3] Like Justice Baker, I also dissent to *Verburgt*'s companion cases. *See Harlan v. Howe State Bank, 958 S.W.2d 380 (Tex. 1997)*; *Holmes v. Home State County Ins., 958 S.W.2d 381 (Tex. 1997)*; *Boyd v. American Indem. Co., 958 S.W.2d 379 (Tex. 1997)* (Justice Hankinson, who joins me in this dissent, is not sitting in *Boyd*, and therefore joins this footnote only as it relates to *Harlan* and *Holmes*).

Craig T. Enoch,

Justice

OPINION DELIVERED: December 4, 1997 JUSTICE BAKER, dissenting.

The court of appeals reached the decision required by applying the plain and unambiguous language of *Rule 41(a)(2). See TEX. R.* [**17] *APP. P. 41(a)(1)* and *(2)*; *Davies v. Massey, 561 S.W.2d 799, 801 (Tex. 1978)*; *Glidden Co. v. Aetna Cas. & Sur. Co., 155 Tex. 591, 291 S.W.2d 315, 318 (Tex. 1956)*; *see also Miller v. Miller, 848 S.W.2d 344, 345* (Tex. App.--Texarkana 1993, no writ); *El Paso Sharky's Billiard Parlor, Inc. v. Amparan, 831 S.W.2d 3, 5* (Tex. App.--El Paso 1992, writ denied).

The Court's opinion dispenses with *Rule 41(a)(2)*'s requirements, and amends the rule by judicial fiat. The Court's opinion is contrary to its own precedent. *See State Dept. of Highways v. Payne, 838 S.W.2d 235, 241 (Tex. 1992)*( "We do not revise our rules by opinion."); *Alvarado v. Farah Mfg. Co., 830 S.W.2d 911, 915 (Tex 1992)*(same). I would deny the writ [1] . Because the Court decides otherwise, I dissent.

> [1] I also dissent to *Verburgt's* companion cases. *See Boyd v. American Indem. Co., 958 S.W.2d 379 (Tex. 1997)*; *Harlan v. Howe State Bank, 958 S.W.2d 380 (Tex. 1997)*; *Holmes v. Home State County Ins., 958 S.W.2d 381 (Tex. 1997)*.

[**18] James A. Baker,

Justice

OPINION DELIVERED: December 4, 1997

# *Whitaker v. Rose*

Court of Appeals of Texas, Fourteenth District, Houston

February 6, 2007, Judgment Rendered ; February 6, 2007, Opinion Filed

NO. 14-04-01178-CV

**Reporter**

218 S.W.3d 216; 2007 Tex. App. LEXIS 842

MARCUS DUNTE WHITAKER, Appellant v. LOIS ROSE, JOHN ROSE, JR., and JOHN ROSE, III, Appellees

**Prior History:** [**1] On Appeal from the County Court at Law No. 1. Harris County, Texas. Trial Court Cause No. 805,739.

**Disposition:** Affirmed in Part and Reversed and Remanded in Part.

## Core Terms

damages, default judgment, trial court, elements of damages, mental anguish, unliquidated damages, medical care, no evidence, no-answer, amounts, awarding damages, pet, pain and suffering, medical expenses, new trial, causal nexus, total damage, lost wages, default, pain

## Case Summary

### Procedural Posture

Appellant family members sued appellee driver for injuries sustained in an automobile accident. The driver was properly served but failed to answer. The County Court at Law No. 1 of Harris County, Texas, granted the family's motion for default judgment, and entered the default judgment based upon documentary evidence supplied by the family regarding their damages. The driver filed a restricted appeal.

### Overview

In his restricted appeal, the driver alleged three grounds for setting aside the default judgment and granting a new trial: (1) no reporter's record was made at the default judgment hearing; (2) the family members failed to prove their damages; and (3) the judgment failed to distinguish between reversible and non-reversible damages. The appellate court found that because the family members provided the trial court with affidavits in support of their damages, the lack of a reporter's record did not constitute error. However, because the doctors' reports submitted by the family members were statements of facts about the medical care they received, but were not under oath, they did not satisfy the affidavit requirement of *Tex. Civ. Prac. & Rem. Code Ann. § 18.001* (1997). And because the trial court did not specify the damage elements it was awarding in its judgment, and the record did not provide any means for distinguishing the amounts awarded for each element of damage, the appellate court could not determine whether the trial court awarded damages based on the elements as to which there was no evidence. Thus, all of the damage awards had to be reversed.

### Outcome

The trial court's judgment as to liability was affirmed. All of the damage awards were reversed and remanded for a new trial on the issue of damages.

## LexisNexis® Headnotes

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Relief From Default

**HN1** A restricted appeal constitutes a direct attack on a default judgment. *Tex. R. App. P. 30.* A restricted appeal must: (1) be brought within six months after the trial court signs the judgment; (2) by a party to the suit; (3) who did not participate in the actual trial; and (4) the error complained of must be apparent from the face of the record.

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Relief From Default

Civil Procedure > Appeals > Standards of Review > General Overview

*HN2* Because a restricted appeal affords an appellant the same scope of review as an ordinary appeal, the legal and factual sufficiency of the evidence to support the judgment may be challenged.

Civil Procedure > ... > Default & Default Judgments > Default Judgments > Entry of Default Judgments

Civil Procedure > Remedies > Damages > General Overview

*HN3* When a no-answer default judgment is entered, the non-answering party is deemed to have admitted all facts properly pleaded. However, this presumption does not apply to unliquidated damages. A plaintiff alleging unliquidated damages must present competent evidence that is consistent with the cause of action pled. *Tex. R. Civ. P. 243*.

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Relief From Default

Civil Procedure > Remedies > Damages > General Overview

*HN4* One area where no-answer and post-answer default judgments differ greatly is what is considered admitted because of the default. In a post-answer default judgment, the defendant has filed an answer with the trial court, and the defendant does not abandon that answer or confess any issues because the defendant fails to pursue the remainder of the trial. The plaintiff must offer evidence and prove the entire case, including liability and damages. Thus, the lack of a reporter's record in a post-answer default judgment requires reversal. Such is not the case in a no-answer default judgment.

Civil Procedure > ... > Default & Default Judgments > Default Judgments > Entry of Default Judgments

Civil Procedure > Remedies > Damages > General Overview

*HN5* In a no-answer default context, judgment can be entered on the pleadings alone, and all facts properly pled are deemed admitted. While the plaintiffs must produce evidence of damages before a trial court may order a default judgment, those damages need not be presented with testimony. A trial court may award damages in a no-answer default judgment case based on affidavits. For liquidated damages, a trial court can render a default judgment if it can verify the damages by referring to the allegations in the petition and the written instruments. *Tex. R. Civ. P. 241*. For unliquidated damages, however, the trial court must hear evidence as to damages, but affidavits will satisfy the evidence requirement of *Tex. R. Civ. P. 243*.

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Relief From Default

Civil Procedure > Remedies > Damages > General Overview

Civil Procedure > Appeals > Standards of Review > General Overview

*HN6* The legal and factual sufficiency of the evidence to support an award of unliquidated damages may be challenged on appeal from a no-answer default judgment. Where a specific attack is made upon the sufficiency of the evidence to support the trial court's determination of damages in a default judgment, the appellate court must review the evidence produced.

Civil Procedure > Appeals > Standards of Review > General Overview

*HN7* The appellate court will sustain a legal sufficiency or "no evidence" challenge if the record shows one of the following: (1) a complete absence of a vital fact; (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. The appellate court considers the evidence in the light most favorable to the verdict and indulges every reasonable inference that supports it. The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. The appellate court credits favorable evidence if reasonable jurors could, and disregards contrary evidence unless reasonable jurors could not. In reviewing a factual sufficiency challenge, the appellate court examines all the evidence. The appellate court will reverse only if the finding is against the great weight and preponderance of the evidence.

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Default Judgments

Torts > ... > Compensatory Damages > Types of Losses > Medical Expenses

Torts > Remedies > Damages > Proof

*HN8* A claim for past medical expenses must be supported by evidence that such expenses were reasonable and necessary as a result of the injury. A default judgment does not relieve a plaintiff of this

burden. A plaintiff can prove reasonableness and necessity of past medical expenses through: (1) expert testimony on the issues of reasonableness and necessity; or (2) an affidavit prepared and filed in compliance with *Tex. Civ. Prac. & Rem. Code Ann. § 18.001* (1997).

Torts > Remedies > Damages > Proof

**HN9** See *Tex. Civ. Prac. & Rem. Code Ann. § 18.001* (1997).

Civil Procedure > Trials > Evidence & Testimony > Depositions

Evidence > Types of Evidence > Documentary Evidence > General Overview

**HN10** An affidavit is a statement of facts sworn to as the truth before an officer authorized to administer oaths. *Tex. Gov't Code Ann. § 312.011(1)* (2005).

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Relief From Default

Civil Procedure > Remedies > Damages > General Overview

**HN11** If a default judgment makes a single damage award based on more than one damage element, and if there is no evidence to support the award as to one of the elements upon which the award is based, then the appellate court must reverse and remand as to the entire award, even though one of the other elements might be sufficient to support the award.

**Counsel:** For APPELLANTS: Jason Andrew Powers, Houston, TX.

For APPELLEES: Melvin L. Lampley, Houston, TX.

**Judges:** Panel consists of Justices Anderson, Edelman, and Frost.

**Opinion by:** John S. Anderson

# Opinion

 **[\*219]**  This is a restricted appeal from a no-answer default judgment. Appellees, Lois Rose, John Rose, Jr., and John Rose, III ("the Roses"), sued appellant, Marcus Dunte Whitaker ("Whitaker"), for damages resulting from a car accident. Whitaker raises three issues on appeal. We affirm in part and reverse and

remand in part.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 20, 2003, Lois Rose ("Lois") drove her car with her son, John Rose, III ("John, III"), as a passenger. As she entered an intersection, her car was struck by Marcus Dunte Whitaker's vehicle. Whitaker's vehicle hit the Roses' vehicle on the driver's side after running a stop sign. Later that evening, Lois and John, III experienced pain and needed medical attention. The next day, Lois's husband, John Rose, Jr. ("John, Jr.") took his wife and son to a family clinic where they were examined. The doctor prescribed physical therapy and pain medication for both Lois and John, III. Lois **[\*\*2]** was unable to drive and did not return to work for 30 days. John, Jr. sought and received time off from work for approximately two and a half weeks in order to take care of his wife and son at home.

The Roses filed their original petition against Whitaker on November 20, 2003. Whitaker was properly served but failed to answer. The Roses moved for default judgment, and the trial court granted their motion. The trial court set a date to hear evidence of damages, but instead, it entered the default judgment based upon documentary evidence supplied by the Roses: Lois's affidavit and supporting documents, including her lost wages report and medical records for herself and John, III; and John, Jr.'s affidavit and supporting documents, including his lost wages report. The trial court entered the default judgment in the precise amounts requested by the Roses in their affidavits. Whitaker did not file any post-judgment motions, but he did file a restricted appeal one day prior to the six-month filing deadline.

## DISCUSSION

In his restricted appeal, Whitaker alleges three grounds for setting aside the default judgment and granting a new trial: (1) no reporter's record was made at the **[\*\*3]** default judgment hearing; (2) appellees failed to prove their damages; and (3) the judgment fails to distinguish between reversible and non-reversible damages.

### I. Standard of Review

**HN1** A restricted appeal constitutes a direct attack on a default judgment. *TEX. R. APP. P. 30*; *Gen. Elec. Co. v. Falcon Ridge Apartments Joint Venture, 811 S.W.2d 942, 943 (Tex. 1991)*. A restricted appeal must (1) be brought within six months after the trial court signs the

judgment, (2) by a party to the suit, (3) who did not participate in the actual trial, and (4) the error complained of must be apparent from the face of the record. *See TEX. R. APP. P. 30; Norman Commc'ns v. Tex. Eastman Co., 955 S.W.2d 269, 270 (Tex. 1997)*. Both parties agree Whitaker has met the first three elements. Therefore, this appeal considers whether the issues raised by Whitaker are apparent on the face [*220] of the record. The face of the record includes all papers on file in the appeal. *Norman Commc'ns, 955 S.W.2d at 270*. **HN2** Because a restricted appeal affords an appellant the same scope of review as an ordinary appeal, [**4] the legal and factual sufficiency of the evidence to support the judgment may be challenged.

**HN3** When a no-answer default judgment is entered, the non-answering party is deemed to have admitted all facts properly pleaded. *Morgan v. Compugraphic Corp., 675 S.W.2d 729, 732 (Tex. 1984); Jackson v. Gutierrez, 77 S.W.3d 898, 901 (Tex. App.--Houston [14th Dist.] 2002, no pet.)*. However, this presumption does not apply to unliquidated damages. *Tex. Commerce Bank, N.A. v. New, 3 S.W.3d 515, 516 (Tex. 1999); Novosad v. Cunningham, 38 S.W.3d 767, 773 (Tex. App.--Houston [14th Dist.] 2001, no pet.)*. A plaintiff alleging unliquidated damages must present competent evidence that is consistent with the cause of action pled. *TEX. R. CIV. P. 243; Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 83 (Tex. 1992)*.

### II. No Reporter's Record

In his first issue, Whitaker contends he is entitled to a new trial because the Roses failed to ensure a reporter's record was produced from a default judgment hearing. Whitaker argues a reporter's record is required for a no-answer default [**5] judgment, as it is required for a post-answer default judgment. This contention is incorrect.

**HN4** One area where no-answer and post-answer default judgments differ greatly is what is considered admitted because of the default. In a post-answer default judgment, the defendant has filed an answer with the trial court, and the defendant does not abandon that answer or confess any issues because the defendant fails to pursue the remainder of the trial. *See Stoner v. Thompson, 578 S.W.2d 679, 682 (Tex. 1979);*

*In re K.B.A., 145 S.W.3d 685, 690 (Tex. App.--Fort Worth 2004, no pet.)*. The plaintiff must offer evidence and prove the entire case, including liability and damages. *See Stoner, 578 S.W.2d at 682; Armstrong v. Benavides, 180 S.W.3d 359, 362 (Tex. App.--Dallas 2005, no pet.)*. Thus, the lack of a reporter's record in a post-answer default judgment requires reversal. *Carstar Collision, Inc. v. Mercury Finance Co., 23 S.W.3d 368, 370 (Tex. App.--Houston [1st Dist.] 1999, pet. denied)*. Such is not the case in a no-answer default judgment.

**HN5** In a no-answer default context, judgment can be entered on the pleadings [**6] alone, and all facts properly pled are deemed admitted. *Morgan, 675 S.W.2d at 732*. While plaintiffs must produce evidence of damages before a trial court may order a default judgment, those damages need not be presented with testimony. A trial court may award damages in a no-answer default judgment case based on affidavits. *Tex. Commerce Bank, 3 S.W.3d at 517; Naficy v. Braker, 642 S.W.2d 282, 285 (Tex. App.--Houston [14th Dist.] 1982, writ ref'd n.r.e.)*. For liquidated damages, a trial court can render a default judgment if it can verify the damages by referring to the allegations in the petition and the written instruments. *TEX. R. CIV. P. 241; BLS Limousine Servs, Inc. v. Buslease, Inc., 680 S.W.2d 543, 547 (Tex. App.--Dallas 1984, writ ref'd n.r.e.)*. For unliquidated damages, however, the trial court must hear evidence as to damages, but affidavits will satisfy the evidence requirement of *Texas Rule of Civil Procedure 243*. *See TEX. R. CIV. P. 243; Tex. Commerce Bank, 3 S.W.3d at 516-17*. Because the Roses provided the [**7] trial court with affidavits in support of their damages, the lack of a reporter's record in an appeal from a no-answer default judgment does [*221] not constitute error on the face of the record. We overrule Whitaker's first issue.

### Damages Awards

In Whitaker's second issue, he attacks several aspects of the Roses' damage award. He first contends the Roses did not prove liability [1] and causation. He next contends the evidence of the Roses' damages is legally and factually insufficient. In his third issue, Whitaker asserts he is entitled to a new trial because the judgment of the trial court fails to distinguish between reversible and non-reversible damages.

---

[1] Whitaker may not challenge liability here because, in a default context, the causal nexus between the conduct of the defendant and the event sued upon is admitted by default. *Morgan v. Compugraphic Corp., 675 S.W.2d 729, 732 (Tex. 1984)*. However, the causal nexus between the event sued upon and the plaintiff's alleged injuries is not admitted by default, and "proof of this causal nexus is necessary to ascertain the amount of damages to which the plaintiff is entitled." *Id.*

[**8] A. Evidence of Damages

HN6 The legal and factual sufficiency of the evidence to support an award of unliquidated damages may be challenged on appeal from a no-answer default judgment. *Argyle Mech., Inc. v. Unigus Steel, Inc., 156 S.W.3d 685, 687 (Tex. App.--Dallas 2005, no pet.)*. Where a specific attack is made upon the sufficiency of the evidence to support the trial court's determination of damages in a default judgment, the appellate court must review the evidence produced. *Dawson v. Briggs, 107 S.W.3d 739, 751 (Tex. App.--Houston [1st Dist.] 2003, no pet.)*.

HN7 We will sustain a legal sufficiency or "no evidence" challenge if the record shows one of the following: (1) a complete absence of a vital fact; (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex. 2005)*. We consider the evidence in the light most favorable to the verdict and indulge every reasonable inference [**9] that supports it. *Id. at 821-22*. The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *Id. at 827*. We credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *See id*. In reviewing a factual sufficiency challenge, we examine all the evidence. *Castanon v. Monsevais, 703 S.W.2d 295, 297 (Tex. App.--San Antonio 1985, no writ)*. We will reverse only if the finding is against the great weight and preponderance of the evidence. *Id*.

In the Roses' petition, Lois sought to recover the following damages:

(1) reasonable and necessary medical care in the past,

(2) reasonable and necessary medical care in the future,

(3) past physical pain and suffering,

(4) future physical pain and suffering,

(5) past physical impairment,

(6) physical impairment which, in all reasonable probability, will be suffered in the future,

(7) past lost earnings,

(8) lost earnings which, in all reasonable probability, will be suffered in the future,

(9) past loss of consortium,

(10) [**10] past loss of household services,

(11) past mental anguish, and

[*222] (12) future mental anguish.

Except for items (7) - (10) above, John, III asserted the same elements of damages as Lois. John, Jr. sought only to recover the following damages:

(1) past lost earnings,

(2) past loss of consortium,

(3) reasonable and necessary medical care in the past, and

(4) reasonable and necessary medical care in the future.

Though properly served with process, Whitaker did not answer the Roses' suit. The Roses moved for default judgment, and the trial court granted their motion. The trial court did not hold an evidentiary hearing regarding unliquidated damages, but instead, it rendered the default judgment based upon documentary evidence supplied by the Roses. In Lois's affidavit, she testified that she had suffered the following alleged damages: (1) past medical expenses totaling $ 2,994.65, (2) pain and suffering, mental anguish, and emotional distress in the amount of $ 6,000, and (3) lost wages in the amount of $ 2,653.84. Even though the total of these amounts exceeds $ 11,000, Lois also testified in her affidavit as follows: "My total damages when combined with inconvenience [**11] is $ 9,000."

Lois also testified in her affidavit as to the following alleged damages for John, III: (1) past medical expenses totaling $ 2,043.65 and (2) John, III's pain and suffering, mental anguish, and emotional distress in the amount of $ 4,000. Lois further testified that John, III "was inconvenienced because he was unable to carry on the usual and normal activities of a 14 year old student." Even though the total of the damages for John, III mentioned by Lois is $ 6,043.65, Lois stated in her affidavit that "[John, III's] total damages when combined with inconvenience is $ 6,500."

In his affidavit, John, Jr. stated that he suffered lost wages of $ 1,429.60 and that his "total damages when combined with inconvenience is $ 4,500."

The trial court rendered the default judgment in the precise amounts of "total damages" requested by Lois and John, Jr. in their affidavits--$ 9,000 for Lois, $ 6,500 for John, III, and $ 4,500 for John, Jr. The trial court did not specify the elements of damages upon which it based these awards, and the record does not provide any means for determining the elements of damages upon which the trial court relied. The affidavits provide no basis for [**12] distinguishing the elements of damages awarded by the trial court because, as noted above, the "total damages" requested by each of the Roses does not equal the sum of the amounts requested for specific elements of damages in the affidavits. [2] Therefore, neither the trial court's judgment, nor the affidavits of Lois and John, Jr. provide any means of distinguishing the amounts awarded by the trial court for specific elements of damages. Whitaker also contends the Roses' evidence of medical expenses does [*223] not comply with the affidavit requirement of *section 18.001 of the Texas Civil Practices and Remedies Code*, and in the absence of comporting affidavits, they are required to use expert testimony to prove their medical expenses were reasonable and necessary. Whitaker is correct. **HN8** A claim for past medical expenses must be supported by evidence that such expenses were reasonable and necessary as a result of the injury. See *Texarkana Mem'l Hosp., Inc. v. Murdock, 946 S.W.2d 836, 840 (Tex. 1997)*. A default judgment does not relieve a plaintiff of this burden. *Jackson, 77 S.W.3d at 902-03*. A plaintiff can prove reasonableness [**13] and necessity of past medical expenses through (1) expert testimony on the issues of reasonableness and necessity or (2) an affidavit prepared and filed in compliance with *section 18.001 of the Texas Civil Practice and Remedies Code*. *Texarkana Mem'l Hosp., Inc., 946 S.W.2d at 840*. Because the Roses only offered documentary evidence, they must meet the requirements of *section 18.001*. *Section 18.001* provides:

> **HN9** (b) Unless a controverting affidavit is filed as provided by this section, an affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was

necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary.

> (c) The affidavit must: (1) be taken before an officer with authority to administer oaths; (2) be made by: (A) the person who provided the service; or (B) the person in charge of records showing the service provided and charge made; and (3) include an itemized statement of the service and the charge.

*TEX. CIV. PRAC. & REM. CODE ANN. § 18.001(b)-(c)* [**14] (Vernon 1997).

The documentary evidence accompanying Lois's affidavit includes medical records, doctors' reports, pain assessment reports, and an itemized statement of services rendered and charges incurred. The doctors' reports consist of one report from an osteopathic physician and a second report [**15] from a radiologist.

This evidence does not satisfy the requirements set forth by *section 18.001* because neither of these reports are affidavits. **HN10** An affidavit is a statement of facts sworn to as the truth before an officer authorized to administer oaths. See *TEX. GOV'T CODE ANN. § 312.011(1)* (Vernon 2005). These doctors' reports are statements of facts about the medical care provided to Lois and John III, but they were not under oath, and therefore, they do not satisfy the affidavit requirement of *section 18.001*. See, e.g., *TEX. CIV. PRAC. & REM. CODE ANN. § 18.002(a)-(b)* (Vernon 1997) (example forms of affidavits for doctor or custodian of records evidencing the basic requirements of *section 18.001*). Accordingly, we find that there is legally insufficient evidence to support an award for reasonable and necessary medical care in the past as to Lois and John, III.

Likewise, there is no evidence of the following elements of damage for which Lois and John, III sought recovery:

> (1) reasonable and necessary medical care in the future,

---

[2] For example, Lois's affidavit alleges she suffered damages in the following amounts: $ 2,994.65 in medical expenses; $ 2,653.84 in lost wages; and $ 6,000.00 in pain and suffering, mental anguish, and emotional distress. Therefore, the sum of the amounts requested by Lois for specific elements of damages is $ 11,648.49. However, in her affidavit, Lois also alleges that her "total damages when combined with inconvenience is $ 9,000.00." The discrepancy between these amounts, coupled with the fact that the trial court awarded a lump sum of $ 9,000.00 to Lois, makes it impossible for us to determine, based upon evidence in the affidavits, the amount awarded by the trial court for any single element of damages.

(2) past physical impairment,

(3) physical impairment which, in all reasonable [**16] probability, will be suffered in the future,

(4) past mental anguish, and

(5) future mental anguish.

Furthermore, there is no evidence as to the following elements of damage for which Lois sought recovery:

[*224] (1) lost earnings which, in all reasonable probability, will be suffered in the future,

(2) past loss of consortium, and

(3) past loss of household services.

In addition, there is no evidence as to the following elements of damage for which John, Jr. sought recovery:

(1) past loss of consortium,

(2) reasonable and necessary medical care in the past, and

(3) reasonable and necessary medical care in the future.

## B. Separability of Damages

In his third issue, Whitaker asserts he is entitled to a new trial because the judgment fails to distinguish between reversible and non-reversible damages. In support of his argument, Whitaker cites *Rule 44.1(b) of the Texas Rules of Appellate Procedure* and this court's decision in *Jackson v. Gutierrez, 77 S.W.3d 898, 903-04 (Tex. App.--Houston [14th Dist.] 2002, no pet.)*.

In *Jackson*, this court held that **HN11** if a default judgment makes a single damage [**17] award based on more than one damage element and if there is no evidence to support the award as to one of the elements upon which the award is based, then this court must reverse and remand as to the entire award, even though one of the other elements might be sufficient to support the award. [3] *See id.* (citing *TEX. R. APP. P. 44.1(b)*). In *Jackson*, the trial court awarded a single amount for mental anguish and pain and suffering. *Id*. On appeal,

the evidence of mental anguish was held legally insufficient, and the record did not provide "any means" of distinguishing the amount awarded for mental anguish from that awarded for pain and suffering. *Id.* Therefore, the *Jackson* court concluded that "even if *an* award for pain and suffering was supported by the evidence, the precise amount of damages could not be determined. We therefore must also reverse the pain and suffering award." *Id.*

[**18] In the instant case, as in *Jackson*, there is no evidence of at least one possible damage element as to each of the three lump-sum awards. Further, because the trial court did not specify the damage elements it was awarding in its judgment, and the record does not provide any means for distinguishing the amounts awarded for each element of damage, we cannot determine whether the trial court awarded damages based on the elements as to which there is no evidence. Therefore, this court must reverse all of the damage awards and remand the claims for a new trial on unliquidated damages. *See id.*; *see also Holt Atherton, 835 S.W.2d at 86* (holding that when appellate court sustains no evidence point after an uncontested hearing on unliquidated damages following no answer default judgment, appropriate disposition is to remand for trial on issue of unliquidated damages). Because there is no evidence of the Roses' damages, we do not reach the issue of causal nexus. *See Morgan, 675 S.W.2d at 732* ("The causal nexus between the event sued upon and the plaintiff's injuries must be shown by competent evidence."). Accordingly, we sustain appellant's third issue [**19] and reverse all of the damage awards and remand the [*225] claims for a new trial on unliquidated damages and causal nexus.

## CONCLUSION

We affirm the trial court's judgment as to liability. We reverse all of the damage awards and remand for a new trial on the issue of damages.

/s/ John S. Anderson

Justice

Judgment rendered and Opinion filed February 6, 2007.

---

[3] Our holding in *Jackson* is based on the same principles applied by the Texas Supreme Court in *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 388 (Tex. 2000) (holding the trial court erred in submitting a jury charge which mixed valid and invalid theories of liability in a single broad-form submission, and that such error was harmful because it prevented the appellate court from determining whether the jury based its verdict on an invalid theory of liability).





Positive
As of: Mar 30, 2015

**Lydia Williams, Appellant v. Jackie Williams and K. W., Appellees**

**NO. 03-02-00723-CV**

**COURT OF APPEALS OF TEXAS, THIRD DISTRICT, AUSTIN**

*150 S.W.3d 436*; *2004 Tex. App. LEXIS 89*

**January 8, 2004, Filed**

**SUBSEQUENT HISTORY:** [**1]
Petition for review denied by *Williams v. Williams, 2004 Tex. LEXIS 803 (Tex., Sept. 10, 2004)*
Motion for rehearing on petition for review denied by *Williams v. Williams, 2004 Tex. LEXIS 1033 (Tex., Oct. 29, 2004)*

**PRIOR HISTORY:** FROM THE COUNTY COURT AT LAW OF BASTROP COUNTY. NO. 02-7380, HONORABLE BENTON ESKEW, JUDGE PRESIDING.

**DISPOSITION:** Reversed and remanded.

**COUNSEL:** Ms. Pamela E. George-[appellant], Houston, TX.

Mr. J. Paul Standefer-[ad litem-K.W.], Bastrop, TX.

Mr. Chris D. Cillon-[Jackie Williams], Bastrop, TX.

Mr. William H. Jenkins-[Jackie Williams], Bastrop, TX.

**JUDGES:** Before Chief Justice Law, Justices B. A. Smith and Puryear.

**OPINION BY:** David Puryear

**OPINION**

[*441] Appellee Jackie Williams [1] filed a petition to terminate the parent-child relationship between appellant Lydia Williams and her daughter, K.W. When Lydia failed to answer, the trial court granted a default judgment, terminating Lydia's parental rights. Lydia timely filed a motion for new trial, which the trial court overruled. She now appeals. We hold that although the citation with which Lydia was served failed to include the name of the petitioner, Jackie Williams, the record reflects that Lydia was properly served. We further hold that the evidence is legally insufficient to support the trial court's judgment terminating Lydia's parental rights. We therefore reverse the trial court's judgment. In the interest of justice, however, we remand the cause to the trial court for further proceedings.

> 1 Jackie Williams, maternal grandmother of K.W., is the only appellee who filed a brief with this Court.

[**2] **BACKGROUND**

These facts are compiled from the parties' briefs, their trial court pleadings, and the evidence from the motion for new trial hearing. This factual summary is included [*442] to provide a background for the discussion in this opinion but should not be construed as a conclusive finding of any fact for subsequent proceedings.

Lydia Williams is the natural mother of K.W., the child who is the subject of this appeal. Jackie is Lydia's mother and the child's grandmother. By an agreed order dated March 23, 2001, Jackie Williams was appointed

sole managing conservator of K.W., and Lydia was appointed possessory conservator. [2]

> [2] The record does not reveal what circumstances precipitated the rendition of the agreed order. It appears, however, that Child Protective Services (CPS) was involved, as the order dismisses CPS from the suit.

On June 6, 2002, Jackie filed a petition to terminate Lydia's parental rights to K.W., alleging (1) that Lydia engaged in conduct or knowingly placed her [**3] child with persons who engaged in conduct that endangers the physical or emotional well being of the child, (2) that she failed to support the child in accordance with her ability during the period of one year ending within six months of the date of the filing of the petition, and (3) that termination was in K.W.'s best interest. The petition also sought the termination of K.W.'s father's parental rights. Jackie requested in her petition that Thomas and Iris Cummins, prospective adoptive parents, be named K.W.'s managing conservators.

Lydia failed to file an answer in response to the petition. Consequently, the trial court held a default judgment hearing on August 2, 2002 and signed an order terminating Lydia's parental rights on August 13. On August 23, Lydia filed a pro se answer, and on September 12, she filed a motion for new trial. The trial court held a hearing on the motion for new trial, during which both Lydia and Jackie testified.

According to Lydia's testimony, she and Jackie maintained a strained relationship, although they saw each other regularly when Lydia visited her daughter, K.W., and they spoke frequently. When Lydia was served with the petition to terminate her [**4] parental rights, she spoke to her mother, and based on their conversation, assumed that her mother was not pursuing the petition. Later, Lydia learned from her brother that her mother hired a new attorney and was indeed pressing forward with the termination. Lydia claims that she subsequently contacted a legal hotline and was told that she would be served anew because her mother had hired a different attorney. Based on this advice, Lydia failed to file an answer to the petition. Although Lydia spoke to her mother before the August 2 termination hearing, Jackie never informed Lydia of the hearing date. Thus, Lydia did not learn of the termination of her parental rights until after the trial court rendered its judgment. She then hired a lawyer and filed her motion for new trial. As for her meritorious defense, Lydia alleged that the allegations in Jackie's petition were untrue and insufficient evidence exists to support them.

Following the presentation of evidence, the trial court overruled the motion for new trial. Lydia now appeals the trial court's judgment, challenging the sufficiency of the evidence, contending the trial court erred in overruling her motion for new trial, and claiming [**5] the citation with which she was served was defective.

## DISCUSSION

### Introduction

The natural right that exists between parents and their children is of constitutional [*443] dimensions. *Stanley v. Illinois, 405 U.S. 645, 652, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972)*; *Holick v. Smith, 685 S.W.2d 18, 20, 28 Tex. Sup. Ct. J. 230 (Tex. 1985)*. The United States Supreme Court has characterized the right to raise one's child as fundamental--a basic civil right far more precious than property rights. *Stanley v. Illinois, 405 U.S. at 651*. Because the involuntary termination of parental rights is complete, final, and irrevocable, termination proceedings must be strictly scrutinized. *Holick, 685 S.W.2d at 20*.

### Service of Citation

By her first issue, Lydia claims that the citation upon which the default judgment was based is defective, and thus, the judgment is void. She argues that (1) the citation failed to include the name of the petitioner, Jackie, and (2) it was not directed to a sheriff or constable.

Service of citation must be in strict compliance with the rules of civil procedure to establish jurisdiction over a defendant and support [**6] a default judgment. *Wilson v. Dunn, 800 S.W.2d 833, 836, 34 Tex. Sup. Ct. J. 60 (Tex. 1990)*; *Uvalde Country Club v. Martin Linen Supply Co., 690 S.W.2d 884, 885, 28 Tex. Sup. Ct. J. 423 (Tex. 1985)*; *Barker CATV Constr., Inc. v. Ampro, Inc., 989 S.W.2d 789, 792 (Tex. App.--Houston [1st Dist.] 1999, no pet.)*. If strict compliance is not shown, the service of process is invalid and of no effect. *Uvalde Country Club, 690 S.W.2d at 885*. We make no presumptions of valid issuance, service, or return of citation when examining a default judgment. *Id.*

To be valid, a citation must comply with twelve requirements. The citation must

> (1) be styled "The State of Texas,"
>
> (2) be signed by the clerk under seal of court,
>
> (3) contain name and location of the court,
>
> (4) show date of filing of the petition,
>
> (5) show date of issuance of citation,
>
> (6) show file number,
>
> (7) show names of parties,

(8) be directed to the defendant,

(9) show the name and address of attorney for plaintiff,

(10) contain the time within which these rules require the defendant to file a written answer with the clerk who issued citation,

(11) contain address [**7] of the clerk, and

(12) notify the defendant that in case of failure of defendant to file an answer, judgment by default may be rendered for the relief demanded in the petition.

Tex. R. Civ. P. 99(b).

In this case, the citation fails to include Jackie's name but complies with *rule 99* in all other respects. Instead of naming the parties, the citation includes the style of the case, which is "In the Interest of: [K.W.]." *See Tex. Fam. Code Ann. § 102.008(a)* (West 2002) (suit affecting parent child relationship must be styled, "In the interest of _____, a child"). It also correctly identifies Lydia and includes the name and address of Jackie's attorney. Jackie is named as the petitioner in the original petition to terminate the parent-child relationship, which was attached to the citation. Lydia does not claim on appeal that she was not properly identified on the citation. Nor does she claim that she was not served. Indeed, she filed an answer with the trial court, albeit after the court rendered judgment. Her complaint is that the citation did not include the name of Jackie, who was a party to the dispute, and therefore did not strictly [**8] comply with the rules of civil procedure.

We note that strict compliance with the rules does not require "obeisance [*444] to the minutest detail." *Ortiz v. Avante Villa at Corpus Christi, Inc., 926 S.W.2d 608, 613 (Tex. App.--Corpus Christi 1996, writ denied)*; *Herbert v. Greater Gulf Coast Enters., Inc., 915 S.W.2d 866, 871 (Tex. App.--Houston [1st Dist.] 1995, no writ)*. As long as the record as a whole, including the petition, citation, and return, shows that the citation was served on the defendant in the suit, service of process will not be invalidated. *Regalado v. State, 934 S.W.2d 852, 854 (Tex. App.--Corpus Christi 1996, no writ)*; *Ortiz, 926 S.W.2d at 613*; *Payne & Keller Co. v. Word, 732 S.W.2d 38, 41 (Tex. App.--Houston [14th Dist.] 1987, writ ref'd n.r.e.)*.

This case presents a unique issue. On one hand, the failure to include the name of a party, even if it is the name of the plaintiff and not the defendant, is not a minute detail. *Cf. Ortiz, 926 S.W.2d at 613* (omission of accent mark and of corporate designation and substitution of symbol " at " for word "at" are defects [**9] that do not invalidate service); *Cockrell v. Estevez, 737 S.W.2d 138, 140 (Tex. App.--San Antonio 1987, no writ)* (misspelling

of defendant's name in citation did not invalidate service); *Payne & Keller Co., 732 S.W.2d at 41* (judgment upheld where petition and citation reflected registered agent as "Philippe Petitfrere," and return reflected "Philipee Petitfreere"). On the other hand, there was no confusion about whether the correct party was actually served. *Compare Higginbotham v. General Life & Accident Ins. Co., 796 S.W.2d 695, 696-97, 34 Tex. Sup. Ct. J. 16 (Tex. 1990)* (although return did not recite method of service as required, record demonstrated strict compliance with valid method of service), *Dezso v. Harwood, 926 S.W.2d 371, 374 (Tex. App.--Austin 1996, writ denied)* (upholding default judgment even though wrong person was sued because record clearly showed proper defendant received service and knew she was intended defendant), *and Cockrell, 737 S.W.2d at 140* (although defendant's name was misspelled in citation and return, default judgment not void where defendant did not claim lack of service and was clearly not [**10] misled by spelling error), *with Uvalde Country Club, 690 S.W.2d at 885* (holding that where return showed Henry Bunting was served and petition alleged Henry Bunting, Jr. was proper registered agent of defendant, record did not show that correct person was served), *Hercules Concrete Pumping Serv., Inc. v. Bencon Mgmt. & Gen. Contracting Corp., 62 S.W.3d 308, 311 (Tex. App.--Houston [1st Dist.] 2001, pet. denied)* (where return reflected service on "Hercules Concrete Pumping" instead of "Hercules Concrete Pumping Service, Inc.," court held return failed to show service on proper defendant), *P&H Transp., Inc. v. Robinson, 930 S.W.2d 857, 859-60 (Tex. App.--Houston [1st Dist.] 1996, writ denied)* (reversing default judgment where evidence did not affirmatively show that person named in citation was person actually served), *and Avila v. Avila, 843 S.W.2d 280, 282 (Tex. App.--El Paso 1992, no writ)* (reversing default judgment where record failed to show that person served was person named in citation). Nor does Lydia claim confusion regarding who filed the suit.

Ultimately, although our jurisprudence requires strict adherence [**11] to the rules regarding service of citation, it does so to ensure that there is no question about whether the proper party has been served before a default judgment is rendered. Here, however, not only does the return reflect that Lydia was properly served, but Lydia admitted that she was properly served throughout her testimony during the motion for new trial hearing. She testified that she was served while she was in jail, that she carefully read all of "the papers" that were served on her in jail, and that she immediately contacted [*445] her father after she was served. Furthermore, when asked how she discovered the names of the prospective adoptive parents, she answered that their names were in "the papers I was served." Finally, in her affidavit supporting her motion for new trial, Lydia

averred that she was served while in jail, that her mother was the petitioner in the petition to terminate Lydia's parental rights, and that she drafted a response to the petition two weeks after she was served, but did not mail it until after the default judgment was rendered. Not only did her testimony make clear that she was properly served, but she also knew who the petitioner was in this suit. In [**12] light of the fact that there is no dispute as to whether Lydia was properly served and that the record establishes that she was aware of who filed the suit, we hold that the trial court did not err in assuming personal jurisdiction over Lydia. *See Higginbotham, 796 S.W.2d at 697* (evidence from motion for new trial hearing showed strict compliance with valid method of service); *Cockrell, 737 S.W.2d at 140* (where defendant claimed neither lack of service nor that he was misled by misspelled name, record did not reflect invalid service).

Lydia also relies on *rule of civil procedure 15* in support of her argument. That rule instructs that "process shall be directed to any sheriff or any constable within the State of Texas." *Tex. R. Civ. P. 15*. Citing *Barker CATV Construction, Inc. v. Ampro, Inc., 989 S.W.2d 789 (Tex. App.--Houston [1st Dist.] 1999, no pet.)*, Lydia argues that *rule 15*, when coupled with rule 99(b), which addresses the issuance and form of citation, requires the citation be addressed to both the defendant *and* a constable or sheriff. We disagree.

*Rule 15* instructs that all writs and process shall be directed to any sheriff [**13] or constable. *Tex. R. Civ. P. 15*. It does not address the form of the citation, however. *Rule 99*, on the other hand, specifies what the form of the citation shall include. It requires the citation be directed to the defendant, but says nothing about expressly addressing the citation to any sheriff or constable. *Tex. R. Civ. P. 99*.

In *Ampro*, the citation was addressed to both the defendant and "to any sheriff or constable or authorized person." *Ampro, 989 S.W.2d at 791*. The court recited that "failure to direct citation to the defendant as required by the rules results in a void citation, ineffective service, and a void default judgment." *Id. at 792*. In previous opinions, the court had held that citations that were directed to both the defendant and addressed to the sheriff or constable are confusing and do not strictly comply with the rules. *Id.* (citing *Medeles v. Nunez, 923 S.W.2d 659 (Tex. App.--Houston [1st Dist.] 1996, writ denied)*; *Faggett v. Hargrove, 921 S.W.2d 274 (Tex. App.--Houston [1st Dist.] 1995, no writ))*. The court reconsidered those prior holdings and in harmonizing *rules 15 and 99*, determined [**14] that the rules do allow citations to be directed to both the defendant and the sheriff or constable. *Id. at 792-93*. The court, however, did not hold that the citation *must* be addressed to both. Like the *Ampro* court, we too hold that citations *must* be

expressly directed to the defendant under *rule 99* and *may* also be addressed to the sheriff or constable under *rule 15*, but failure to include the sheriff or constable on the form of the citation will not render it void. Because the citation in this case was directed to Lydia, the defendant, we hold that the citation was not void and overrule Lydia's first issue.

## Default Judgments

Before we review the sufficiency of the evidence, we must determine the effect of Lydia's failure to file an answer [*446] with the trial court and her failure to appear at the termination hearing. Traditionally, no evidence is necessary to support a no-answer default judgment because the defendant's failure to answer is taken as admitting the allegations of the petition. *Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 83, 35 Tex. Sup. Ct. J. 881 (Tex. 1992)*. Indeed, it is well established that a default judgment operates as an admission [**15] of the material facts alleged in the plaintiff's petition. *Id.*; *Stoner v. Thompson, 578 S.W.2d 679, 684, 22 Tex. Sup. Ct. J. 258 (Tex. 1979)*.

Termination proceedings, however, are special. A court's primary consideration in cases involving parental rights is always the best interest of the child. *See Tex. Fam. Code Ann. § 153.002* (West 2002); *Wiley v. Spratlan, 529 S.W.2d 616, 617-18 (Tex. Civ. App.--Tyler 1975), rev'd on other grounds, 543 S.W.2d 349, 19 Tex. Sup. Ct. J. 385 (Tex. 1976)*. Before determining the best interest of a child, the court should ensure that it is as well-informed as the circumstances allow. Such a determination is rarely well-informed without consideration of the evidence and the perspective of the parents. *In re P.M.B., 2 S.W.3d 618, 624-25 (Tex. App.--Houston [14th Dist.] 1999, no pet.)*. Accordingly, the best interest of the child requires that issues be as fully developed as possible, and technical rules of pleading and practice are not of controlling importance. *Lohmann v. Lohmann, 62 S.W.3d 875, 879 (Tex. App.--El Paso 2001, no pet.)*; *Sexton v. Sexton, 737 S.W.2d 131, 133 [**16] (Tex. App.--San Antonio 1987, no writ)*; *Little v. Little, 705 S.W.2d 153, 154 (Tex. App.--Dallas 1985, writ dism'd w.o.j.)*; *Barrow v. Durham, 574 S.W.2d 857, 861 (Tex. Civ. App.--Corpus Christi 1978), aff'd, 600 S.W.2d 756, 23 Tex. Sup. Ct. J. 361 (Tex. 1980)*. Pertinent facts that may affect the best interest of the child should be heard and considered by the trial court regardless of the lack of diligence of the parties in their presentation of information to the court. *C. v. C., 534 S.W.2d 359, 361 (Tex. Civ. App.--Dallas 1976, writ dism'd w.o.j.)*.

Moreover, because terminating the parent-child relationship is such a drastic measure, termination proceedings include many procedural safeguards not found in

other civil trials. For example, termination hearings require clear and convincing evidence, a heightened burden of proof. *See Tex. Fam. Code Ann. § 161.001 (West 2002); In re G.M., 596 S.W.2d 846, 847, 23 Tex. Sup. Ct. J. 262 (Tex. 1980)*. They receive precedence over other civil trials and appeals. *Tex. Fam. Code Ann. §§ 105.004, 109.002, 161.202 (West 2002)*. They allow for the appointment [**17] of counsel for the child and indigent parents. *Id. §§ 107.011-.016 (West Supp. 2004)*. The trial court has only one year, plus one 180-day extension, within which to render a final order or dismiss the suit. *Id. § 263.401 (West 2002)*.

In summary, the termination of parental rights is unlike a traditional civil case, involving only two competing interests, the plaintiff's and the defendant's. The child's interest must also be considered and indeed is of paramount importance. The traditional no-answer default judgment rule takes into consideration only the actions of the defaulting parent; it leaves no room for the trial court to consider the child's best interest. *Cf. Lowe v. Lowe, 971 S.W.2d 720, 725-27 (Tex. App.--Houston [14th Dist.] 1998, pet. denied)* (criticizing the application of *Craddock* to suits affecting parent-child relationship). Thus, in light of the special characteristics of termination proceedings and the important interests they are designed to protect, we hold that the traditional rule--that evidence is unnecessary to support a default judgment because the failure to answer is taken as an admission of the allegations in [*447] the petition--does [**18] not apply to involuntary termination of parental rights proceedings.

As further support for our holding, we note that a petition for the termination of a parent-child relationship is "sufficient without the necessity of specifying the underlying facts if the petition alleges in the statutory language the ground for the termination and that termination is in the best interest of the child." *Tex. Fam. Code Ann. § 161.101 (West 2002)*. Thus, if we were to apply the traditional rule for no-answer default judgments, we would be compelled to hold that the allegations in a petition are legally sufficient to support a termination of parental rights where the respondent has failed to answer, even if there were no supporting facts alleged in the petition or developed at trial. Such a conclusion runs afoul of the oft-cited axiom that a court's primary consideration in these cases is always the best interest of the child, for it cannot be said that the best interest of the child has been served when a court reaches its conclusion based on traditional rules of pleading and practice rather than on a comprehensive review of the available evidence.

Moreover, under the [**19] traditional no-answer default judgment rule, a parent's failure to answer a petition to terminate her parental rights would be tantamount to a voluntary relinquishment of parental rights, as the parent would be deemed to have admitted the allegations

in the petition, and the court could then terminate the parental rights based solely on the deemed admissions. *Cf. id. § 161.001(1)(K); Marywood v. Vela, 17 S.W.3d 750, 758-59 (Tex. App.--Austin 2000, pet. denied)* (holding that petitioner must prove by clear and convincing evidence that affidavit of relinquishment was executed as provided in *section 161.103 and* that termination is in child's best interest). But even voluntary relinquishments of parental rights are subject to strict procedural requirements. For example, a petitioner must prove by clear and convincing evidence that an affidavit of voluntary relinquishment of parental rights was executed in accordance with *section 161.103 of the family code*; that statute requires, among other things, that the affidavit be witnessed by two credible persons and verified before a person authorized to take oaths. *Tex. Fam. Code Ann. § 161.103(a)(2)* [**20] *, (3) (West Supp. 2004)*. Furthermore, unless the affidavit expressly states that it is irrevocable, a parent may revoke a relinquishment in accordance with specified procedures. *Id. §§ 161.103(g), .1035 (West 2002 & Supp. 2004)*. And finally, it is well-established that relinquishment affidavits must be executed voluntarily and knowingly. *Marywood, 17 S.W.3d at 759*. Indeed, an involuntarily executed affidavit is a complete defense to a termination suit or decree based solely upon a finding under *section 161.001(1)(K) of the family code*. *Id*. These requirements must be adhered to before a court may terminate a parent-child relationship based solely on an affidavit of relinquishment. Yet, if a default judgment is rendered, under the traditional rule, a parent has in effect relinquished her parental rights, without the procedural protections provided by statute and without the opportunity to revoke that relinquishment. Such a rule, in the context of termination of parental rights, is too harsh given the constitutional dimension of the rights that are affected in these cases.

Finally, the practical complications of requiring the presentation of evidence before a [**21] no-answer default judgment can be rendered in termination cases are slight compared to the interests that must be protected. We note that many well-established legal doctrines include exceptions based on the public policy of the State [*448] when a child's best interest is at issue. *In re K.C., 88 S.W.3d 277, 280 (Tex. App.--San Antonio 2002, pet. denied)* (Hardberger, C. J., dissenting). In addition, requiring the presentation of evidence even though the opposing party has failed to respond is not a novel concept. *Cf. Heine, 835 S.W.2d at 83* (holding that court rendering default judgment must hear evidence of unliquidated damages); *Tex. Fam. Code Ann. § 6.701 (West 2002)* (if respondent fails to answer in divorce suit, petition may not be taken as confessed); *Considine v. Considine, 726 S.W.2d 253, 254 (Tex. App.--Austin 1987, no writ)* (holding that allegations in motion to modify conservatorship and support may not be taken as

confessed if respondent fails to answer); *see also Klap-prott v. United States, 335 U.S. 601, 612-13, 93 L. Ed. 266, 69 S. Ct. 384 (1949)* (reversing default judgment in denaturalization proceeding [**22] because rendered without evidentiary hearing). In *Considine*, this Court reasoned that the policy considerations underlying *section 6.701 of the family code*, which requires the petitioner to prove the allegations in a petition for divorce even if the respondent has failed to answer, should also apply in proceedings to modify provisions in prior divorce judgments that appoint conservators and set child support. *726 S.W.2d at 254*; *see also Armstrong v. Armstrong, 601 S.W.2d 724, 726 (Tex. Civ. App.--Beaumont 1980, writ ref'd n.r.e.)* (refusing to apply the traditional default judgment rule in reviewing modification of conservatorship). Similarly, we conclude that it cannot be in the child's best interest to determine whether his relationship with his parent should be terminated based solely on the parent's failure to file timely a response to the petition. We recognize that the parent's failure to respond may affect the trial court's consideration of the issues in the case, but it should not form the sole basis for the trial court's judgment.

We suspect that the facts presented in this case are anomalous and that this is a unique case. We note that the [**23] Department of Protective and Regulatory Services was not a party in this dispute, and no attorney ad litem was appointed to represent the parent. [3] In addition, Lydia claims her failure to appear was due in part to bad legal advice and misrepresentations made to her by her mother, who initiated this action. Finally, although Lydia filed a motion for new trial after the court rendered its judgment, the court overruled the motion, thus denying Lydia the opportunity to present her perspective about the allegations made against her. [4] Under these unusual circumstances, we would be remiss were we to rely only on the allegations in the petition as a basis for severing this parent-child relationship.

---

[3] This statement should not be construed to suggest that an attorney ad litem should be appointed to represent a parent whose parental rights are subject to termination without a showing of indigency. The record in this case does not reveal whether the issue of Lydia's indigency was ever raised before the court. We merely observe that often, even if the parent is not present at trial, an attorney ad litem usually is, thereby appearing for the parent and protecting the parent's rights. *In re K.C., 88 S.W.3d 277, 279 (Tex. App.--San Antonio 2002, pet. denied)* (holding that because party's attorney appeared at trial, even though party did not, there was no default judgment; case was tried on the merits).

[**24]

[4] Because we are reversing based on Lydia's legal insufficiency point, we do not reach her complaint that the trial court erred in failing to grant her motion for new trial and express no opinion on this issue.

## Legal Sufficiency Review

Because termination of parental rights is such a drastic remedy and is of such weight and gravity, due process requires the petitioner to justify termination [*449] by the heightened burden of proof of "clear and convincing evidence." *Tex. Fam. Code Ann. § 161.001*; *In re G.M., 596 S.W.2d at 846*. "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Tex. Fam. Code Ann. § 101.007* (West 2002); *accord In re C.H., 89 S.W.3d 17, 19, 25, 45 Tex. Sup. Ct. J. 1000 (Tex. 2002)*; *In re G.M., 596 S.W.2d at 847*. This standard is an intermediate standard, falling between the preponderance standard of ordinary civil proceedings [**25] and the reasonable doubt standard of criminal proceedings. *In re G.M., 596 S.W.2d at 847*.

The heightened "clear and convincing evidence" burden of proof alters our appellate legal sufficiency standard of review. *In re J.F.C., 96 S.W.3d 256, 256-66, 46 Tex. Sup. Ct. J. 328 (Tex. 2002)*; *In re C.H., 89 S.W.3d at 25*. This is because our traditional no-evidence standard of review does not adequately protect the parents' constitutional interests. *In re J.F.C., 96 S.W.3d at 264-65*. In conducting our legal sufficiency review in termination cases, we must review all the evidence in the light most favorable to the finding and the judgment to determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction" that the grounds for termination were proven. *Id. at 265-66*. In other words, we must assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so. *Id. at 266*. We must also disregard all evidence that a reasonable fact finder could have disbelieved or found to have been incredible. *Id.* This does not mean that a court [**26] must disregard all evidence that does not support the finding, as this could skew the analysis of whether there is clear and convincing evidence. *Id.* We must consider undisputed evidence even if it does not support the finding. *Id.* Following this review, if we determine that no reasonable fact finder could form a firm belief or conviction that the matter that must be proven is true, then we must conclude that the evidence is legally insufficient and render judgment in favor of the parent. *Id.*

### Termination of Parental Rights

A court may terminate parental rights if it finds that: (1) the parent has engaged in any of the specific conduct enumerated in the family code as grounds for termination, and (2) termination is in the best interest of the child. *Tex. Fam. Code Ann. § 161.001*; *Richardson v. Green, 677 S.W.2d 497, 499, 27 Tex. Sup. Ct. J. 466 (Tex. 1984)*. The fact finder must determine that clear and convincing evidence supports both elements; proof of one element does not relieve the burden of proving the other. *Holley v. Adams, 544 S.W.2d 367, 370, 20 Tex. Sup. Ct. J. 76 (Tex. 1976)* (quoting *Wiley v. Spratlan, 543 S.W.2d 349, 351, 19 Tex. Sup. Ct. J. 385 (Tex. 1976))*. [**27] The child's best interest is not the *sole* goal of involuntary termination proceedings; termination "may not be based solely upon what the trial court determines to be the best interest of the child." *Id.*

The trial court's final order states that it found by clear and convincing evidence (1) that Lydia has engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangers the physical or emotional well-being of the child, (2) that she failed to support the child in accordance with her ability during a period of one year ending within six months of the date of the filing of the petition, and (3) that termination of the parent-child relationship between Lydia and her child is in the best interest of the child.

[*450] **Dangerous Conduct**

Under *section 161.001(1)(E)*, a parent's rights may be terminated if it is established by clear and convincing evidence that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *Tex. Fam. Code Ann. § 161.001(1)(E)*. Under *subsection (E)*, we look exclusively to the parents' [**28] conduct, including actions, omissions, or the parents' failure to act. *In re D.M., 58 S.W.3d 801, 811 (Tex. App.--Fort Worth 2001, no pet.)*. Termination based on this subsection must be based on more than a single act or omission; a voluntary, deliberate, and conscious "course of conduct" that endangered the child's physical and emotional well-being is required. *Texas Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 534, 30 Tex. Sup. Ct. J. 352 (Tex. 1987)*; *In re D.M., 58 S.W.3d at 811*. "Endanger" means to expose to loss or injury, to jeopardize. *In re M.C., 917 S.W.2d 268, 270, 39 Tex. Sup. Ct. J. 373 (Tex. 1996)*. The endangering acts need not have been directed at the child, or have caused an actual injury or threat of injury to the child to constitute conduct that endangers the child's physical or emotional well-being. *In re M.C., 917 S.W.2d 268, 269, 39 Tex. Sup. Ct. J. 373 (Tex. 1996)*.

At the termination hearing, Jackie was the only witness who testified. She was asked by her attorney whether Lydia "engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangers the physical and emotional well being of the child," to which Jackie [**29] answered, "Yes." The child's attorney ad litem then cross-examined Jackie and asked for "some specifics about what Lydia has done to make you believe it's best that her parental rights be terminated." Jackie responded that Child Protective Services had previously investigated Lydia, and since then, Lydia "has not really made any changes in that area." According to Jackie, Lydia "still doesn't have a job. She has left them and she has another baby by another man that she's lived with that I believe is involved in drugs, and she comes to visit [K.W.] on occasion, but she takes no responsibility to be her mother." The ad litem further inquired whether the CPS investigation had to do with "an issue of physical neglect," to which Jackie responded, "Yes. She left [K.W.] alone by herself," when she was about six months old. This was the totality of the evidence adduced to support the allegation that Lydia engaged in conduct or placed her child with persons who engaged in conduct that endangered her daughter's well being.

Viewing the testimony in the light most favorable to the judgment, as we must, we conclude that a fact finder could not reasonably have formed a firm belief or conviction [**30] that this ground for termination was proven. In attempting to support the conclusory statement that Lydia engaged in conduct or placed her child with someone who engaged in conduct that endangered her child, Jackie sparingly described events from the past that led to CPS's involvement and Lydia's current conservatorship status. Jackie's testimony revealed about CPS's prior involvement only that Lydia had at one time left her child alone when the child was six months old. The record also reveals, however, that following that incident (about which we know very little), CPS did not seek termination of Lydia's parental rights, and indeed, was ultimately dismissed from the suit. Moreover, Lydia was named possessory conservator of her child. There is no evidence that any of Lydia's conduct directly resulted in endangerment to the child's physical or emotional well-being. Indeed, there is no evidence that the child's physical or emotional well-being [*451] was ever endangered. *In re D.T., 34 S.W.3d 625, 634 (Tex. App.--Fort Worth 2000, pet. denied)* (holding there must be evidence of endangerment to child's physical or emotional well-being as *direct result* of parent's conduct). [**31] Additionally, termination under this subsection must be based on more than a single act or omission; evidence of a voluntary "course of conduct" is required. *Id.* This simply was not established here. Finally, Jackie's statement that she believes Lydia lives with a man who is involved in drugs is no more than a mere surmise or suspicion, which is not the same as evidence. *See Kindred v.*

*Con/Chem, Inc., 650 S.W.2d 61, 63, 26 Tex. Sup. Ct. J. 383 (Tex. 1983)*. We therefore hold that there is no legally sufficient evidence to support the trial court's finding that Lydia engaged in conduct or placed her child with others who engaged in conduct that endangered the child's well-being.

### Failure to Support

Under *section 161.001(1)(F)*, the parent-child relationship may also be terminated if the court finds by clear and convincing evidence that the parent has failed to support the child in accordance with the parent's ability during a period of one year ending within six months of the date of the filing of the petition. *Tex. Fam. Code Ann. § 161.001(1)(F)* (West 2002). With regard to this basis for termination, Jackie offered no evidence, other than to [**32] track the statutory language and assert that Lydia "failed to support the child in accordance with her ability, during the period of one year, ending within six months of the date of filing this petition." We hold that no legally sufficient evidence exists to support the trial court's finding that Lydia failed to support her child in accordance with her ability for a period of one year.

### Best Interest of the Child

Although a strong presumption exists that the best interest of a child is served by keeping conservatorship in the natural parent, this presumption may be overcome by clear and convincing evidence of the parent's present unfitness. *In re D.M., 58 S.W.3d at 814*. The supreme court has listed several factors to be considered by a court in determining whether this presumption has been rebutted: (1) the desires of the child, (2) the present and future physical and emotional needs of the child, (3) the present and future emotional and physical danger to the child, (4) the parental abilities of the person seeking custody, (5) programs available to assist those persons in promoting the child's best interest, (6) plans for the child by those individuals [**33] or by the agency seeking custody, (7) the stability of the home or the proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not appropriate, and (9) any excuse for the acts or omissions of the parent. *Holley, 544 S.W.2d at 371-72*. In addition, a fact finder may infer that past conduct endangering the well being of a child may recur in the future if the child is returned to the parent. *In re D.L.N., 958 S.W.2d 934, 941 (Tex. App.--Waco 1997, pet. denied)*, *disapproved on other grounds by In re J.F.C., 96*

*S.W.3d 256, 46 Tex. Sup. Ct. J. 328*, and *In re C.H., 89 S.W.3d 17, 45 Tex. Sup. Ct. J. 1000*.

Again, the only evidence Jackie provided regarding the child's best interest was her own testimony that she believed termination of Lydia's parental rights and adoption of the child by Thomas and Iris Cummins would be in the child's best interest. No specifics were provided with regard to any of the enumerated factors listed above. And no evidence was adduced about the Cummins or their relationship with the child. We conclude that [*452] this testimony amounts to no evidence of the best interest of the child.

[**34] **CONCLUSION**

We conclude that although the citation failed to include Jackie's name as the petitioner, the record reveals that Lydia was properly served. We therefore overrule Lydia's first issue. Because we hold that the evidence is legally insufficient to support any of the bases relied on by the trial court in terminating Lydia's parental rights, we sustain Lydia's third and fourth issues. [5] Generally, when a legal insufficiency point is sustained, the reviewing court renders judgment in favor of the party bringing the point of error. *Heine, 835 S.W.2d at 86*; *Flores v. Brimex Ltd. P'ship, 5 S.W.3d 816, 821 (Tex. App.--San Antonio 1999, no pet.)*. When the interests of justice require a new trial for further development of the facts, however, the case can be remanded. *Tex. R. App. P. 43.3(b)*; *Flores, 5 S.W.3d at 821*. While we recognize the child's interest in having a quick and final resolution of this case and the need for stability in the child's life, we believe that because this case presented us with an issue of first impression in Texas and because we have announced a new rule in addressing that issue, the interests [**35] of justice are better served by remanding this case for further proceedings. It is also in the child's best interest for the trial court to fully develop the evidence and render a judgment following consideration of the evidence. Accordingly, we reverse the judgment of the trial court and remand this case for further proceedings consistent with this opinion.

> 5 Because we are reversing for legally insufficient evidence, we do not reach Lydia's remaining issues. *See Tex. R. App. P. 47.1* (opinion should be as brief as practicable and address every issue necessary to final disposition of appeal).

David Puryear, Justice





Caution
As of: Mar 30, 2015

**Gregorio ZAMARRIPA Appellant, v. Bianca SIFUENTES and Charles RAKOSKY Appellees.**

**Appeal No. 04-96-00145-CV**

**COURT OF APPEALS OF TEXAS, FOURTH DISTRICT, SAN ANTONIO**

**929 S.W.2d 655; 1996 Tex. App. LEXIS 4071**

**September 11, 1996, Delivered**
**September 11, 1996, Filed**

**PRIOR HISTORY:** [**1] Appeal from the 166th District Court of Bexar County. Trial Court No. 94-CI-09068. Honorable Andy Mireles, Judge Presiding.

**DISPOSITION:** DISMISSED FOR WANT OF JURISDICTION

**COUNSEL:** FOR APPELLANT: Joe R. Greenhill, Jr., Craig Andrew Nevelow, WRIGHT & GREENHILL, P.C., Austin, TX.

FOR APPELLEES: Bruce J. Mery, LAW OFFICES OF BRUCE J. MERY, Karl E. Hays, LAW OFFICES OF KARL E. HAYS, San Antonio, TX.

**JUDGES:** Opinion By: Catherine Stone, Justice. Sitting: Tom Rickhoff, Justice, Catherine Stone, Justice, Phil Hardberger, Justice.

**OPINION BY:** CATHERINE STONE

**OPINION**

[*656] The question presented in this appeal is whether the default judgment entered was interlocutory or final. We hold that the judgment entered in this case was interlocutory and we dismiss the appeal for want of jurisdiction.

**Procedural History**

Appellees, as plaintiffs below, took a default judgment on a personal injury claim on August 19, 1994. At some point that same day, appellant's counsel filed an answer to the petition. Thereafter, both sides engaged in written discovery and settlement negotiations. Appellant's counsel, however, did not learn that a default judgment had been taken in the case until [**2] April of 1995, whereupon he filed a motion to reconsider the default judgment. The trial court denied the motion to reconsider on the ground its plenary power in this case had expired, and defendant thereafter appealed.

Upon examination of the transcript, we questioned whether our jurisdiction had been invoked. The parties agree that the case must be dismissed for want of jurisdiction, but disagree on the grounds for the dismissal. Appellant argues that the default judgment is interlocutory and that the appeal should be dismissed for failure to bring a final appealable judgment. Appellees argue that the default judgment was final in 1994 and that this appeal should be dismissed as untimely filed.

**The Finality Issue**

A judgment must dispose of all parties and all issues before the trial court in order for it to be considered final and appealable. [*657] *Park Place Hosp. v. Estate of Milo, 909 S.W.2d 508, 510 (Tex. 1995)*. In contrast to a judgment entered following a trial on the merits, a de-

fault judgment carries no presumption of finality. *See Houston Health Clubs v. First Court of Appeals, 722 S.W.2d 692, 693 (Tex. 1986)*. To determine an issue of finality [**3] we are directed to divine the intention of the trial court "from the language of the decree and the record as a whole, aided on occasion by the conduct of the parties." *Continental Airlines, Inc. v. Kiefer, 920 S.W.2d 274, 277 (Tex. 1996)* (quoting 5 RAY W. MCDONALD, TEXAS CIVIL PRACTICE § 27:4[a] at 7 (John S. Covell, ed., 1992 ed.)).

The default judgment does not dispose of the prejudgment interest claim pled in plaintiff's petition. The judgment is completely silent on prejudgment interest and does not contain a Mother Hubbard clause. Appellees argue that these omissions do not render the judgment interlocutory because the awarding of prejudgment interest is mandatory in personal injury cases. *See* TEX. REV. CIV. STAT. ANN. art. 5069-1.05, § 6(a) (Vernon Supp. 1996) ("Judgments in ... personal injury ... cases must include prejudgment interest."); *Sisters of Charity v. Dunsmoor, 832 S.W.2d 112, 116 (Tex. App.--Austin 1992, writ denied)* ( § 6 amendment codified, modified, and overturned portions of *Cavnar v. Quality Control Parking, Inc., 696 S.W.2d 549 (Tex. 1985))*. They seek to distinguish the supreme court's 1982 opinion in *Hunt Oil Co. v. Moore* [**4] on two grounds -- it is not a personal injury case and it was rendered prior to the legislature's codification of mandatory prejudgment interest in 1987. *See Hunt Oil Co. v. Moore, 639 S.W.2d 459, 460 (Tex. 1982)*. It is clear that the court found the judgment in *Hunt Oil* to be interlocutory for two independent reasons. The summary judgment called for an accounting to be rendered at a future date and it did not address Moore's claim for prejudgment interest. *Id. at 460*. Either reason would render the judgment interlocutory.

Appellees urge us to treat a mandatory award of prejudgment interest in the same manner post-judgment interest is treated. *See Staff Industries v. Hallmark Contracting, 846 S.W.2d 542, 551 (Tex. App.--Corpus Christi 1993, no writ)* (post-judgment interest recoverable whether or not specifically awarded in judgment). This rationale is based on the fact that the calculation of post-judgment interest is purely a ministerial function. The amount of actual damages and the date of the judgment are reflected in the judgment itself and the method of calculating interest is set by statute. *See* TEX. REV. CIV. STAT. ANN. art. 5069-1.05, § 2. Although [**5] appellees cite no case law for support, the argument is tempting because the statute provides that the rate of prejudgment interest "shall be the same as the rate of postjudgment interest at the time of judgment." *Id.*, § 6(g).

The judgment, however, must be certain, so that it can be enforced by writ of execution. Ministerial officers must be able to carry the judgment into execution without having to ascertain any additional facts. *See H.E. Butt Grocery Co. v. Bay, Inc., 808 S.W.2d 678, 680 (Tex. App.--Corpus Christi 1991, writ denied)*. The statute which mandates prejudgment interest in wrongful death, personal injury, and property damage cases also provides for a tolling period during the time when a settlement offer is pending. *See id.*, § 6(b)-(f). The tolling provisions of § 6 (b) and (c) require the court to compare the amount of the settlement offer to the amount of judgment. They also require exact information on the period of time the settlement offer was pending. The record reflects that written settlement offers were exchanged by the parties on more than one occasion prior to the entry of the default judgment. Because the pending dates and amounts of such [**6] offers are not clear as part of the record, it is no mere ministerial act to calculate prejudgment interest. Taking these provisions into consideration, we are unable to ascertain from the judgment when prejudgment interest would begin to accrue. [1] [*658] The calculation of prejudgment interest involves factual issues which remain unresolved by the default judgment.

> 1 Appellant argues that appellees have not pled prejudgment interest under the statutory authority of Section 6 of Article 5069-1.05; rather, appellees seek interest based upon a calculation beginning six months from date of occurrence as prescribed in *Cavnar*. Regardless of the pleading deficiencies presented in this cause, the exclusive means of seeking prejudgment interest in a personal injury case is now found in TEX. REV. CIV. STAT. ANN. art. 5069-1.05, § 6

Appellees' counsel stated at the hearing on the motion for new trial that their petition only requests prejudgment interest in their prayer for relief. It is argued that because [**7] counsel did not put on evidence of prejudgment interest at the earlier hearing at which the default judgment was granted and the judgment does not grant prejudgment interest, that the judgment is somehow final. That sounds like appellees are attempting to abandon their claim for prejudgment interest. For purposes of finality on a default judgment, however, one cannot trigger appellate timetables unilaterally. As noted in *Farmer v. Ben E. Keith Co., 907 S.W.2d 495, 496 (Tex. 1995)*, "The appellate timetable *does not* commence to run other than by signed, written order, even when the signing of such an order is purely ministerial." The fact that appellees did not produce evidence at the hearing on default does not allow us to presume waiver or abandonment because there was no conventional trial on the merits. *See Strut Cam Dimensions, Inc. v. Sutton, 896 S.W.2d 799, 801 (Tex. App.--Corpus Christi 1995,*

writ denied) (presumption of finality only applies when conventional trial actually conducted); *H.E. Butt Grocery Co. v. Bay, Inc., 808 S.W.2d at 680* (no presumption of finality in default judgment). If appellees are attempting to abandon prejudgment interest, it is not [**8] clear when the abandonment occurred. *See Rosedale Partners v. 131 Judicial District Court,* 869 S.W.2d 643, 644 (Tex. App.--San Antonio 1994, orig. proceeding). As in *Rosedale Partners*, the record before us does not contain any amended petition deleting the claim for prejudgment interest, an affidavit explaining when the claim was abandoned, or any other evidence indicating an intent to abandon the remaining claim for prejudgment interest. As there is no presumption of finality, we can only conclude that the issue of prejudgment interest remains pending and the default judgment in interlocutory. We find it indistinguishable from *Hunt Oil Co. v. Moore, 639 S.W.2d 459, 460 (Tex. 1982).*

Lastly, the conduct of the parties led the trial court to question whether it intended the default judgment to be final. At the hearing on the new trial motion, counsel for appellees admitted to the trial court that after he took the default judgment he learned that appellant was represented by counsel who had filed an answer the same day judgment was taken. They engaged in settlement discussions and written discovery over the next eight months. The discovery involved standard questions concerned [**9] with liability and damages as opposed to post-judgment discovery. Appellees' counsel never discussed these issues with appellant's counsel in the context of the default judgment he had taken, in fact, he never mentioned the judgment at all. Appellees' counsel admitted to the trial court he did not discuss it because he had not determined for himself whether the answer was filed prior to or after the default was taken. The parties clearly acted as though the judgment was interlocutory.

**Conclusion**

We hold that the default judgment is interlocutory because the issue of prejudgment interest remains unresolved. The trial court erred when it denied appellant's motion for new trial on the default judgment for want of jurisdiction. Our holding does not intend to speak to the merits of the motion for new trial. That is something that is within the discretion of the trial court. We only declare that the trial court has jurisdiction to consider the motion for new trial on the merits.

This appeal is dismissed for want of jurisdiction.

CATHERINE STONE

JUSTICE

# *Zepeda v. Giraud*

Court of Appeals of Texas, Fourth District, San Antonio

June 29, 1994, Delivered ; June 29, 1994, Filed

Appeal No. 04-93-00378-CV

**Reporter**

880 S.W.2d 833; 1994 Tex. App. LEXIS 1983

Robert L. ZEPEDA, Appellant, v. Eugene L. GIRAUD & Margery F. GIRAUD, Appellants.

**Subsequent History:** [**1] Motion for Rehearing Denied July 27, 1994.

**Prior History:** Appeal from the County Court at Law No. 4 of Bexar County. Trial Court No. 207,755-A. Honorable H. Paul Canales, Judge Presiding

**Disposition:** DISMISSED FOR WANT OF JURISDICTION

## Core Terms

writ of error, default judgment, abandon, ordinary appeal, fail to file, perfecting an appeal, perfected, lack of jurisdiction, court of appeals, appeal bond, trial court, pursued

## Case Summary

### Procedural Posture

Appellant sought review by writ of error of a default judgment from the County Court at Law No. 4 of Bexar County (Texas), rendered against appellant and in favor of appellees in a civil suit. Appellees alleged in a counterpoint of error that the appellate court lacked jurisdiction to hear the appeal.

### Overview

A default judgment was entered in favor of appellees in a civil case in which the judgment or amount in controversy exceeded $ 100, exclusive of interest and costs. Appellant filed an appeal bond and thus perfected an ordinary appeal from the default judgment. Because appellant failed to file a transcript and statement of facts on time and his motion for extension to file the record was untimely, the ordinary appeal was dismissed. Defendant subsequently perfected an appeal by writ of error. Appellees alleged in a counterpoint that the court lacked jurisdiction to hear appellant's challenge by writ of error because appellant had already pursued an ordinary appeal from the same default judgment. An appeal or writ of error to the court of appeals from a final judgment of a district or county court was permitted under *Tex. Civ. Prac. & Rem. Code Ann. § 51.012* (1986). The code did not allow for both an appeal and a writ of error. Because appellant had not abandoned his prior appeal, he was not entitled to pursue a writ of error pursuant to *Tex. R. App. P. 5(b)(4)*. Therefore, the appeal was dismissed for want of jurisdiction.

### Outcome

An appeal by writ of error from a default judgment in a civil suit was dismissed for want of jurisdiction because appellant had previously perfected an ordinary appeal, which was dismissed by the court and not abandoned by appellant.

## LexisNexis® Headnotes

Civil Procedure > Appeals > Reviewability of Lower Court Decisions > General Overview

*HN1* The right to appeal by writ of error to the court of appeals is provided by *Tex. Civ. Prac. & Rem. Code Ann. § 51.012* (1986), which provides that in a civil case in which the judgment or amount in controversy exceeds $ 100, exclusive of interest and costs, a person may take an appeal or writ of error to the court of appeals from a final judgment of the district court or county court. That code provision also establishes the right to take an ordinary appeal.

Civil Procedure > Appeals > Reviewability of Lower Court Decisions > General Overview

*HN2* A litigant has the right to either an ordinary appeal or an appeal by writ of error but not both.

> Civil Procedure > ... > Pretrial Judgments > Nonsuits > Voluntary Nonsuits

> Civil Procedure > Remedies > Writs > General Overview

*HN3* A party may abandon an appeal and sue out a writ of error from the same judgment.

> Civil Procedure > Judgments > Pretrial Judgments > General Overview

> Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > General Overview

> Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Default Judgments

> Civil Procedure > Remedies > Writs > General Overview

> Civil Procedure > Appeals > Appellate Jurisdiction > General Overview

> Civil Procedure > Appeals > Notice of Appeal

> Governments > Legislation > Statutory Remedies & Rights

*HN4* A party suffering a default judgment may perfect an appeal, or abandon it and pursue his statutory rights under the writ of error.

**Counsel:** For Appellant: Pepos S. Dounson, 2109 San Pedro Avenue, San Antonio, TX 78212.

For Appellees: David L. Willis, JACOBS, WILLIS & WILKINS, 105 S. St. Mary's St., Suite 2300, San Antonio, TX 78205.

**Judges:** Sitting: Alfonso Chapa, Chief Justice, Tom Rickhoff, Justice, Phil Hardberger, Justice

**Opinion by:** PHIL HARDBERGER

# Opinion

 [*834] **OPINION**

Opinion by: Phil Hardberger, Justice

Robert Zepeda seeks review by writ of error of a default judgment rendered against him and in favor of Eugene and Margery Giraud. In one counterpoint of error, Appellees allege that this court lacks jurisdiction to hear Zepeda's appeal by writ of error because he has already pursued an ordinary appeal from the same default judgment.

The trial court rendered the default judgment on December 14, 1992. Zepeda timely perfected an ordinary appeal from the default judgment by filing an appeal bond on January 13, 1993. This court dismissed Zepeda's appeal because he failed to file **[**2]** his transcript and statement of facts on time and his motion for extension to file the record was also untimely. *Zepeda v. Giraud,* No. 04-93-00148-CV (Tex. App.--San Antonio, March 24, 1993) (not published).

On April 26, 1993, Zepeda filed his petition for writ of error, bond, designation for transcript and request for written statement of facts in the trial court thus perfecting the appeal by writ of error. Zepeda now asks this court to review the default judgment by writ of error.

*HN1* The right to appeal by writ of error to the court of appeals is provided by *Civil practice and Remedies Code section 51.012* which provides:

> In a civil case in which the judgment or amount in controversy exceeds $ 100, exclusive of interest and costs, a person may take an *appeal or writ of error* to the court of appeals from a final judgment of the district court or county court.

*TEX. CIV. PRAC. & REM. CODE ANN. § 51.012* (Vernon 1986) (emphasis supplied). This code provision also establishes the right to take an ordinary appeal. It is clear that the statute establishes the right to take either an ordinary appeal or an appeal by writ of error. *HN2* A litigant has the right to either an **[**3]** ordinary appeal or an appeal by writ of error but not both. *Id.*

This court has previously stated that *HN3* a party may abandon an appeal and sue out a writ of error from the same judgment. *Alejo v. Pellegrin, 616 S.W.2d 331, 333* (Tex. Civ. App.--San Antonio 1981, writ dism'd). The present case does not involve an abandoned appeal. Zepeda properly perfected his first appeal but failed to file his record on time and then compounded the error by failing to file his motion for extension of time within the deadline set out in *Texas Rule of Appellate Procedure 54(c)*. Zepeda's appeal was dismissed for failure to file his record in accordance with the Texas Rules of Appellate Procedure. Zepeda did not abandon his appeal, in fact Zepeda argued that his late filed transcript should be considered pursuant to *Texas Rule*

*of Appellate Procedure 5(b)(4)*. Therefore, the rule concerning abandoned appeals does not apply.

 [*835] In *Houtex Managing General Agency, Inc. v. Hardcastle, 735 S.W.2d 520* (Tex. App.--Houston [1st Dist.] 1987, writ ref'd n.r.e.), the court held that an appellant's attempted direct appeal from a default judgment, which was dismissed for lack of jurisdiction [**4] because the appeal bond was filed late, did not constitute an appeal so as to deprive the appellate court of jurisdiction to subsequently review the default judgment by writ of error. The *Houtex* court stated that "it is well settled that **HN4** a party suffering a default judgment may perfect an appeal, or abandon it and pursue his statutory rights under the writ of error." *Id. at 521*.

The instant case involves neither an abandoned appeal nor a failure to perfect an appeal. Zepeda perfected his appeal and pursued the appeal, albeit unsuccessfully, to the end. Zepeda is not entitled to a second bite at the apple.

This appeal is dismissed for want of jurisdiction.

PHIL HARDBERGER

JUSTICE





Positive
As of: Mar 30, 2015

**YUMIN ZHAO, Appellant v. LONE STAR ENGINE INSTALLATION CENTER, INC., Appellee**

**No. 05-09-01055-CV**

**COURT OF APPEALS OF TEXAS, FIFTH DISTRICT, DALLAS**

*2009 Tex. App. LEXIS 7767*

**October 6, 2009, Opinion Filed**

**SUBSEQUENT HISTORY:** Rehearing overruled by *Zhao v. Lone Star Engine Installation Ctr., Inc., 2009 Tex. App. LEXIS 8798 (Tex. App. Dallas, Nov. 5, 2009)* Petition for review denied by *Yumin Zhao v. Lone Star Engine Installation Ctr., Inc., 2010 Tex. LEXIS 290 (Tex., Apr. 9, 2010)* US Supreme Court certiorari denied by *Yumin Zhao v. Lone Star Engine Installation Ctr., 2010 U.S. LEXIS 8593 (U.S., Nov. 1, 2010)*

**PRIOR HISTORY:** [*1]
On Appeal from the 134th Judicial District Court, Dallas County, Texas. Trial Court Cause No. 08-10266.

**COUNSEL:** For APPELLANT: Yumin Zhao, Richardson, TX.

For APPELLEE: James N. Apostle, Dallas, TX.

**JUDGES:** Before Justices Wright, Richter, and Fillmore.

**OPINION**

**MEMORANDUM OPINION**

The Court has before it appellant's September 22, 2009 motion to extend time to file his notice of appeal and appellee's response in opposition to the motion. For the reasons set forth below, we deny the extension motion and dismiss the appeal.

The trial court's judgment was signed on May 20, 2009 and appellant filed a timely motion for new trial. Therefore, his notice of appeal was due by August 18, 2009. *See TEX. R. APP. P. 26.1(a)*. The notice of appeal was filed on September 2, 2009, within the fifteen-day period provided by *rule 26.3. See TEX. R. APP. P. 26.3(a)*. Therefore, we directed appellant to file a motion to extend time to file his notice of appeal setting forth a reasonable explanation for the need of the extension. *See TEX. R. APP. P. 10.5(b)*, *26.3(b)*; *Verburgt v. Dorner, 959 S.W.2d 615 (Tex. 1997)*.

In his extension motion, appellant asserted, "Plaintiff's motion for new trial was timely filed on June 19, 2009. The hear [sic] date of motion for new trial was set on Sept. 2nd, 2009; Therefore whether to appeal [*2] only could be determined after the hearing of motion for new trial." Appellee responded that appellant did not provide a reasonable explanation because the motion for new trial had already been overruled by operation of law on August 3, 2009, and appellant did not file his notice of appeal until the 105th day after the trial court's judgment was signed. We agree that appellant has not provided a reasonable explanation for the need of the extension.

The Texas Supreme Court has defined "reasonable explanation" to mean "'any plausible statement of circumstance indicating that failure to file within the [required] period was not deliberated or intentional, but was

the result of inadvertence, mistake, or mischance." *Garcia v. Kastner Farms, Inc., 774 S.W.2d 668, 669 (Tex. 1989)* (internal citation omitted). "Any conduct short of deliberate or intentional noncompliance qualifies as inadvertence, mistake, or mischance. . . ." *Id. at 670.*

Texas courts have rejected as unreasonable explanations that show a defendant's conscious or strategic decision to wait to file a notice of appeal, reasoning the explanations did not show inadvertence, mistake, or mischance. *See, e.g., Hykonnen v. Baker Hughes Bus. Support Servs., 93 S.W.3d 562, 563-64 (Tex. App.--Houston [14th Dist.] 2002, no pet.)* [*3] (holding unreasonable appellant's explanation he failed to file notice of appeal until he found attorney to represent him on appeal at little or no cost); *Rodman v. State, 47 S.W.3d 545, 548-49 (Tex. App.--Amarillo 2000, no pet.)* (holding unreasonable explanation that when State disclosed, after expiration of time for filing notice of appeal, its intent to indict appellant for other crimes, appellant decided to appeal to preserve eligibility for probation in upcoming trials); *Kidd v. Paxton, 1 S.W.3d 309, 310-13 (Tex. App.--Amarillo 1999, no pet.)* (op. on reh'g) (holding unreasonable explanations counsel miscalculated due date for filing notice of appeal when he failed to file notice of appeal on miscalculated date and counsel's preoccupation with other cases without detailed explanation of complexities and relevant deadlines of other cases);

*Weik v. Second Baptist Church of Houston, 988 S.W.2d 437, 439 (Tex. App.--Houston [1st Dist.] 1999, pet. denied)* (holding unreasonable appellant's explanation that his lawyer told him if he appealed case while trial court still had authority to reinstate case, trial court would reinstate case and appellant would have difficult time prosecuting [*4] claim because of trial court's displeasure with appellant). This Court has likewise rejected as unreasonable explanations that showed an appellant's decision to wait to file a notice of appeal was not due to inadvertence, mistake, or mischance, but was due to a conscious decision to ignore the appellate timetable in favor of the trial court's jurisdictional timetable. *See Crossland v. Crossland, No. 05-06-00228-CV, 2006 Tex. App. LEXIS 2881, 2006 WL 925032 (Tex. App.--Dallas Apr. 11, 2006, no pet.)* (mem. op.) (per curiam).

Because appellant's explanation in this case shows he was aware of the deadline for filing his notice of appeal, but consciously ignored the deadline in favor of waiting for a ruling on his motion for new trial, we conclude appellant has not provided a reasonable explanation for the need of the extension. We deny his motion to extend time to file his notice of appeal.

We dismiss the appeal for want of jurisdiction.

PER CURIAM

## *Tex. R. App. P. Rule 4*

This document is current through February 4, 2015

*Texas Court Rules* > *STATE RULES* > *TEXAS RULES OF APPELLATE PROCEDURE* > *SECTION ONE. GENERAL PROVISIONS*

# Rule 4 Time and Notice Provisions

**4.2** *No Notice of Trial Court's Judgment in Civil Case.*

**(a)** *Additional Time to File Documents.*

**(1)** *In General.* --If a party affected by a judgment or other appealable order has not - within 20 days after the judgment or order was signed - either received the notice required by *Texas Rule of Civil Procedure 306a.3* or acquired actual knowledge of the signing, then a period that, under these rules, runs from the signing will begin for that party on the earlier of the date when the party receives notice or acquires actual knowledge of the signing. But in no event may the period begin more than 90 days after the judgment or order was signed.

**(2)** *Exception for Restricted Appeal.* --Subparagraph (1) does not extend the time for perfecting a restricted appeal.

**(b)** *Procedure to Gain Additional Time.* --The procedure to gain additional time is governed by *Texas Rule of Civil Procedure 306a.5*.

**(c)** *The Court's Order.* --After hearing the motion, the trial court must sign a written order that finds the date when the party or the party's attorney first either received notice or acquired actual knowledge that the judgment or order was signed.

Texas Rules

Copyright © 2015 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

Texas Rules
Copyright (c) 2015 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through February 4, 2015 ***

STATE RULES
TEXAS RULES OF CIVIL PROCEDURE
PART II. RULES OF PRACTICE IN DISTRICT AND COUNTY COURTS
SECTION 2. Institution of Suit

*Tex. R. Civ. P. 26* (2015)

Rule 26 Clerk's Court Docket

Each clerk shall also keep a court docket in a permanent record that shall include the number of the case and the names of the parties, the names of the attorneys, the nature of the action, the pleas, the motions, and the ruling of the court as made.

*Texas Court Rules* > *STATE RULES* > *TEXAS RULES OF APPELLATE PROCEDURE* > *SECTION TWO. APPEALS FROM TRIAL COURT JUDGMENTS AND ORDERS*

## Rule 26 Time to Perfect Appeal

**26.1** *Civil Cases.* --The notice of appeal must be filed within 30 days after the judgment is signed, except as follows:

**(a)** the notice of appeal must be filed within 90 days after the judgment is signed if any party timely files:

**(1)** a motion for new trial;

**(2)** a motion to modify the judgment;

**(3)** a motion to reinstate under *Texas Rule of Civil Procedure 165a*; or

**(4)** a request for findings of fact and conclusions of law if findings and conclusions either are required by the Rules of Civil Procedure or, if not required, could properly be considered by the appellate court;

**(b)** in an accelerated appeal, the notice of appeal must be filed within 20 days after the judgment or order is signed;

**(c)** in a restricted appeal, the notice of appeal must be filed within six months after the judgment or order is signed; and

**(d)** if any party timely files a notice of appeal, another party may file a notice of appeal within the applicable period stated above or 14 days after the first filed notice of appeal, whichever is later.

**26.2** *Criminal Cases.*

**(a)** *By the Defendant.* --The notice of appeal must be filed:

**(1)** within 30 days after the day sentence is imposed or suspended in open court, or after the day the trial court enters an appealable order; or

**(2)** within 90 days after the sentence is imposed or suspended in open court if the defendant timely files a motion for new trial.

**(b)** *By the State.* --The notice of appeal must be filed within 20 days after the day the trial court enters the order, ruling, or sentence to be appealed.

**26.3** *Extension of Time.* --The appellate court may extend the time to file the notice of appeal if, within 15 days after the deadline for filing the notice of appeal, the party:

**(a)** files in the trial court the notice of appeal; and

**(b)** files in the appellate court a motion complying with Rule 10.5(b).

## History

Amended by Texas Court of Criminal Appeals, Misc. Docket No. 08-102, effective September 1, 2008; Amended by Texas Supreme Court, Misc. Docket No. 08-9115 and Texas Court of Criminal Appeals, Misc. Docket No. 08-103, effective September 1, 2008.

**Annotations**

Texas Rules

Copyright © 2015 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

## *Tex. R. App. P. Rule 30*

This document is current through February 4, 2015

*Texas Court Rules* > *STATE RULES* > *TEXAS RULES OF APPELLATE PROCEDURE* > *SECTION TWO. APPEALS FROM TRIAL COURT JUDGMENTS AND ORDERS*

## Rule 30 Restricted Appeal to Court of Appeals in Civil Cases

A party who did not participate - either in person or through counsel - in the hearing that resulted in the judgment complained of and who did not timely file a postjudgment motion or request for findings of fact and conclusions of law, or a notice of appeal within the time permitted by Rule 26.1(a), may file a notice of appeal within the time permitted by Rule 26.1(c). Restricted appeals replace writ of error appeals to the court of appeals. Statutes pertaining to writ of error appeals to the court of appeals apply equally to restricted appeals.

**Annotations**

## Notes

PUBLICATION REFERENCES. --See *Texas Litigation Guide*, Ch. 145, *Overview of the Appellate Process*; Ch. 151, *Appellate Proceedings in Supreme Court*; Ch. 154, *Restricted Appeals*.

Comment to 1997 change This is former Rule 45. The appeal by writ of error procedure is repealed. A procedure for an appeal filed within 6 months--called a restricted appeal--is substituted. This rule sets out who may take a restricted appeal. Rules 25.1 and 26.1 set out the method of perfection and the time for perfecting the appeal.

Texas Rules

Copyright © 2015 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

## *Tex. Civ. Prac. & Rem. Code § 38.004*

This document is current through the 2013 3rd Called Session

*Texas Statutes and Codes* > *CIVIL PRACTICE AND REMEDIES CODE* > *TITLE 2. TRIAL, JUDGMENT, AND APPEAL* > *SUBTITLE C. JUDGMENTS* > *CHAPTER 38. ATTORNEY'S FEES*

## § *38.004*. Judicial Notice

The court may take judicial notice of the usual and customary attorney's fees and of the contents of the case file without receiving further evidence in:

   **(1)** a proceeding before the court; or

   **(2)** a jury case in which the amount of attorney's fees is submitted to the court by agreement.

## History

Enacted by Acts 1985, 69th Leg., ch. 959 (S.B. 797), § 1, effective September 1, 1985.

**Annotations**

LexisNexis ® Texas Annotated Statutes
Copyright © 2015 by Matthew Bender & Company, Inc. a member of the LexisNexis Group All rights reserved.

Texas Rules
Copyright (c) 2015 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through February 4, 2015 ***

STATE RULES
TEXAS RULES OF CIVIL PROCEDURE
PART II. RULES OF PRACTICE IN DISTRICT AND COUNTY COURTS
SECTION 5. Citation

*Tex. R. Civ. P. 99* (2015)

Rule 99 Issuance and Form of Citation

a. *Issuance.* --Upon the filing of the petition, the clerk, when requested, must forthwith issue a citation and deliver the citation as directed by the requesting party. The party requesting citation shall be responsible for obtaining service of the citation and a copy of the petition. Upon request, separate or additional citations shall be issued by the clerk. The clerk must retain a copy of the citation in the court's file.

b. *Form.* --The citation shall (1) be styled "The State of Texas," (2) be signed by the clerk under seal of court, (3) contain name and location of the court, (4) show date of filing of the petition, (5) show date of issuance of citation, (6) show file number, (7) show names of parties, (8) be directed to the defendant, (9) show the name and address of attorney for plaintiff, otherwise the address of plaintiff, (10) contain the time within which these rules require the defendant to file a written answer with the clerk who issued citation, (11) contain address of the clerk, and (12) shall notify the defendant that in case of failure of defendant to file and answer, judgment by default may be rendered for the relief demanded in the petition. The citation shall direct the defendant to file a written answer to the plaintiff's petition on or before 10:00 a.m. on the Monday next after the expiration of twenty days after the date of service thereof. The requirement of subsections 10 and 12 of this section shall be in the form set forth in section c of this rule.

c. *Notice.* --The citation shall include the following notice to the defendant: "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

d. *Copies.* --The party filing any pleading upon which citation is to be issued and served shall furnish the clerk with a sufficient number of copies thereof for use in serving the parties to be served, and when copies are so furnished the clerk shall make no charge for the copies.

**HISTORY:** Amended by Texas Supreme Court, Misc. Docket No. 11-9250, effective January 1, 2012.

# Tex. R. Civ. P. 106

This document is current through February 4, 2015

*Texas Court Rules* > *STATE RULES* > *TEXAS RULES OF CIVIL PROCEDURE* > *PART II. RULES OF PRACTICE IN DISTRICT AND COUNTY COURTS* > *SECTION 5. Citation*

## Rule 106 Method of Service

**(a)** Unless the citation or an order of the court otherwise directs, the citation shall be served by any person authorized by Rule 103 by

**(1)** delivering to the defendant, in person, a true copy of the citation with the date of delivery endorsed thereon with a copy of the petition attached thereto, or

**(2)** mailing to the defendant by registered or certified mail, return receipt requested, a true copy of the citation with a copy of the petition attached thereto.

**(b)** Upon motion supported by affidavit stating the location of the defendant's usual place of business or usual place of abode or other place where the defendant can probably be found and stating specifically the facts showing that service has been attempted under either (a)(1) or (a)(2) at the location named in such affidavit but has not been successful, the court may authorize service

**(1)** by leaving a true copy of the citation, with a copy of the petition attached, with anyone over sixteen years of age at the location specified in such affidavit, or

**(2)** in any other manner that the affidavit or other evidence before the court shows will be reasonably effective to give the defendant notice of the suit.

## History

**SOURCE:**
Art. 2026.
Change: The officer is directed to note upon the copy of the citation, which he delivers to the defendant, the date of delivery. He delivers a copy of the petition in all cases.
Change by amendment effective January 1, 1976: Service "by registered or certified mail" is authorized in certain instances.
Change by amendment effective January 1, 1978: Subdivisions (b) and (e) are new. The rule is rewritten.
Change by amendment effective January 1, 1981: The rule is reorganized to clarify its meaning. Alternate methods of service are authorized if either (a)(1) or (a)(2) are tried without success. Both methods are not required.
Change by amendment effective January 1, 1988: Conforms to amendment to Rule 103.
PUBLICATION REFERENCES. --See *Texas Litigation Guide*, Ch. 31, *Service on Residents*; Ch. 32, *Personal Jurisdiction and Service on Nonresidents*.
  See also *Civil Practice & Remedies Code §§ 17.021*--*17.025*.

**Annotations**

Texas Rules
Copyright © 2015 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

Texas Rules
Copyright (c) 2015 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through February 4, 2015 ***

STATE RULES
TEXAS RULES OF CIVIL PROCEDURE
PART II. RULES OF PRACTICE IN DISTRICT AND COUNTY COURTS
SECTION 5. Citation

*Tex. R. Civ. P. 107*  (2015)

Rule 107 Return of Service

 (a) The officer or authorized person executing the citation must complete a return of service. The return may, but need not, be endorsed on or attached to the citation.

 (b) The return, together with any document to which it is attached, must include the following information:

 (1) the cause number and case name;

 (2) the court in which the case is filed;

 (3) a description of what was served;

 (4) the date and time the process was received for service;

 (5) the person or entity served;

 (6) the address served;

 (7) the date of service or attempted service;

 (8) the manner of delivery of service or attempted service;

 (9) the name of the person who served or attempted to serve the process;

 (10) if the person named in (9) is a process server certified under order of the Supreme Court, his or her identification number and the expiration date of his or her certification; and

 (11) any other information required by rule or law.

 (c) When the citation was served by registered or certified mail as authorized by Rule 106, the return by the officer or authorized person must also contain the return receipt with the addressee's signature.

 (d) When the officer or authorized person has not served the citation, the return shall show the diligence used by the officer or authorized person to execute the same and the cause of failure to execute it, and where the defendant is to be found, if ascertainable.

 (e) The officer or authorized person who serves or attempts to serve a citation must sign the return. If the return is signed by a person other than a sheriff, constable, or the clerk of the court, the return must either be verified or be signed under penalty of perjury. A return signed under penalty of perjury must contain the statement below in substantially the following form:

"My name is              , my date of birth is              

     (First)  (Middle)  (Last)

, and my address is     ,    ,   ,    , and

                   (Street)     (City)   (State)(Zip Code)

. I declare under penalty of perjury that the foregoing is true and correct.

  (Country)

Executed in       County, State of      , on the    day of      ,
.

(Month)      (Year)

Declarant"

(f) Where citation is executed by an alternative method as authorized by Rule 106, proof of service shall be made in the manner ordered by the court.

(g) The return and any document to which it is attached must be filed with the court and may be filed electronically or by facsimile, if those methods of filing are available.

(h) No default judgment shall be granted in any cause until proof of service as provided by this rule or by Rules 108 or 108a, or as ordered by the court in the event citation is executed by an alternative method under Rule 106, shall have been on file with the clerk of the court ten days, exclusive of the day of filing and the day of judgment.

**HISTORY:** Amended by Texas Supreme Court, Misc. Docket No. 11-9250, effective January 1, 2012.

Texas Rules
Copyright (c) 2015 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through February 4, 2015 ***

STATE RULES
TEXAS RULES OF CIVIL PROCEDURE
PART II. RULES OF PRACTICE IN DISTRICT AND COUNTY COURTS
SECTION 11. Trial of Causes
H. JUDGMENTS

*Tex. R. Civ. P. 306a*  (2015)

Rule 306a Periods to Run from Signing of Judgment

1.  *Beginning of Periods.* --The date of judgment or order is signed as shown of record shall determine the beginning of the periods prescribed by these rules for the court's plenary power to grant a new trial or to vacate, modify, correct or reform a judgment or order and for filing in the trial court the various documents that these rules authorize a party to file within such periods including, but not limited to, motions for new trial, motions to modify judgment, motions to reinstate a case dismissed for want of prosecution, motions to vacate judgment and requests for findings of fact and conclusions of law; but this rule shall not determine what constitutes rendition of a judgment or order for any other purpose.

2.  *Date to Be Shown.* --Judges, attorneys and clerks are directed to use their best efforts to cause all judgments, decisions and orders of any kind to be reduced to writing and signed by the trial judge with the date of signing stated therein. If the date of signing is not recited in the judgment or order, it may be shown in the record by a certificate of the judge or otherwise; provided, however, that the absence of a showing of the date in the record shall not invalidate any judgment or order.

3.  *Notice of Judgment.* --When the final judgment or other appealable order is signed, the clerk of the court shall immediately give notice to the parties or their attorneys of record by first-class mail advising that the judgment or order was signed. Failure to comply with the provisions of this rule shall not affect the periods mentioned in paragraph (1) of this rule, except as provided in paragraph (4).

4.  *No Notice of Judgment.* --If within twenty days after the judgment or other appealable order is signed, a party adversely affected by it or his attorney has neither received the notice required by paragraph (3) of this rule nor acquired actual knowledge of the order, then with respect to that party all the periods mentioned in paragraph (1) shall begin on the date that such party or his attorney received such notice or acquired actual knowledge of the signing, whichever occurred first, but in no event shall such periods begin more than ninety days after the original judgment or other appealable order was signed.

5.  *Motion, Notice and Hearing.* --In order to establish the application of paragraph (4) of this rule, the party adversely affected is required to prove in the trial court, on sworn motion and notice, the date on which the party or his attorney first either received a notice of the judgment or acquired actual knowledge of the signing and that this date was more than twenty days after the judgment was signed.

6.  *Nunc Pro Tunc Order.* --When a corrected judgment has been signed after expiration of the court's plenary power pursuant to Rule 316, the periods mentioned in paragraph (1) of this rule shall run from the date of signing the corrected judgment with respect of any complaint that would not be applicable to the original document.

7.  *When Process Served by Publication.* --With respect to a motion for new trial filed more than thirty days after the judgment was signed pursuant to Rule 329 when process has been served by publication, the periods provided by paragraph (1) shall be computed as if the judgment were signed on the date of filing the motion.

## *Tex. R. Civ. P. 683*

This document is current through February 4, 2015

*Texas Court Rules* > *STATE RULES* > *TEXAS RULES OF CIVIL PROCEDURE* > *PART VI. RULES RELATING TO ANCILLARY PROCEEDINGS* > *SECTION 5. Injunctions*

# Rule 683 Form and Scope of Injunction or Restraining Order

Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

Every order granting a temporary injunction shall include an order setting the cause for trial on the merits with respect to the ultimate relief sought. The appeal of a temporary injunction shall constitute no cause for delay of the trial.

**Annotations**

# Notes

*SOURCE:* Federal Rule 65(d), unchanged.
  *Change by amendment effective April 1, 1984:* The last paragraph is added.

PUBLICATION REFERENCES. --See *Texas Litigation Guide*, Ch. 50, *Injunction*.
  See also *Civil Practice & Remedies Code §§ 65.001--65.045*.

Texas Rules

Copyright © 2015 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.